UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| MMAS RESEARCH LLC, a Washington limited liability company,<br>Plaintiff,<br><br>v.<br><br>Boston Children's Hospital, MMAR LLC, Jacob Hartz, Hannah Palfrey, Sarah D de Ferranti, Donald Morisky DOES 1 through 10, inclusive,<br>Defendants. | NO. 1:24-cv-12108<br>COMPLAINT FOR DAMAGES<br><br>1. Breach of Contract<br>2. DMCA Section 1202 - Integrity of copyright management information<br>3. Tortious Interference with Contract<br>4. Trade Secret Misappropriation DTSA<br>5. 17 U.S. Code § 504 – Willful Statutory Infringement of Copyright<br><br>JURY TRIAL DEMANDED |
| --- | --- |

COMPLAINT FOR DAMAGES- 1

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Plaintiff, MMAS RESEARCH LLC (hereinafter "MMAS Research" or "Plaintiff"), by and through its undersigned attorneys, complains and alleges as follows:

## I.    **RELEVANT BACKGROUND**

1.    Plaintiff is a Washington limited liability company.

2.    Plaintiff is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright").

3.    The Morisky Widget is an electronic diagnostic assessment protocol to measure and identify medication adherence behaviors, as further described below, and which includes registered translations of the widely used "Morisky Medication Adherence Scale (8-item)" ("MMAS-8") and "Morisky Medication Adherence Scale (4-item)" ("MMAS-4") tests, along with other validated assessments, specifically the Clinically Useful Depression Outcome Scale ("CUDOS") and Clinically Useful Anxiety Outcome Scale ("CUXOS") assessments, which are included in the registered source code of the Morisky Widget as part of its federal copyright registration.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

4.    Plaintiff is the owner of the Global Medication Reconciliation Form (GMRF) Software. GMRF provides clinicians with the ability to monitor patients' prescription medication/illicit drug usage and correlate them with dangerous drug interactions. The Global Medication Reconciliation Form (GMRF) does this through a process of Verification, Clarification, and Reconciliation allowing clinicians to proceed with confidence of the effectiveness of their regimens or, alternatively, to provide interventions for patients who are at risk of harm.

5.    Defendant Boston Children's Hospital ("BCH") is a pediatric hospital and research institute in Boston Massachusetts.

6.    Defendant MMAR LLC is a Neveda Corporation that does business in Boston Massachusetts.

7.    Defendant Jacob Hartz is an employee of the BCH.

8.    Defendant Hannah Palfrey is an employee of BCH.

9.    Defendant Sarah D de Ferranti is an employee of BCH.

10.    Defendant Donald Morisky is the founder and manager of MMAR LLC.

COMPLAINT FOR DAMAGES- 3

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

11.   Plaintiff is informed and believes and thereon alleges that defendants DOES 1 through 10, inclusive (the "Doe Defendants," and collectively with the above-named defendants, the "Defendants")), are other parties not yet identified who have breached contracts that are the subject of this lawsuit. The true names, whether corporate, individual, or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues said defendants by such fictitious names, and will seek leave to further amend this complaint to show their true names and capacities when their identities have been determined.

12.   Plaintiff is informed, believes, and thereupon alleges that Doe Defendants were, and are, in some manner responsible for the actions, acts, and omissions alleged, and for the damages caused by Defendants and are, therefore, liable for the damages caused to Plaintiff.

13.   Plaintiff is informed, believes, and thereon alleges that Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damages to Plaintiff.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

14. Plaintiff is informed, believes, and thereon alleges that, at all relevant times, Defendants controlled, and participated in the acts or conducted alleged herein.

## II.   **JURISDICTION AND VENUE**

15. This action arises, in part, under the Copyright Infringement Under 17 U.S.C. §§ 101, including all sections created or amended by the Digital Millenium Copyright Act conferring federal question jurisdiction under U.S. Code §§ 101, and supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. § 1367.

16. Additionally, this Court has original jurisdiction over this controversy for misappropriation of trade secrets claims pursuant to 18 U.S.C. § 1836(c), and diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and there is a complete diversity of citizenship between the Parties.

17. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) because (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have, had, or will have had effect in this District; (c) the written

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

agreements identified and described more thoroughly below were entered into by the Parties in this District; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

18. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more defendants are amenable to personal jurisdiction in this District.

## A. MMAS Research LLC Morisky Widget MMAS-8

15. Dr. Donald Morisky (interchangeably referred to herein as "Dr. Morisky," "Morisky" and "Donald Morisky") relocated his California business, MMAS Research LLC to Washington State in December 2016.

16. It was registered as MMAS Research LLC with the Washington Secretary of State's Office on December 21, 2016.

17. Dr. Morisky, Steven Trubow and Dustin Machi collaborated on the creation of the Morisky Widget MMAS-8, and MMAS-4 software beginning in November 2016 and finished in February 2017. *See Exhibit 1.*

18. The Morisky Widget was first published on the internet in February 2017. The copyright was held by Dustin Machi, an individual

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

working as a software engineer at Virginia Tech University until he assigned it to MMAS Research LLC in December 2019. *See Exhibit 2*

19. Between February 2017- July 2019 MMAS Research LLC perpetually licensed the Morisky Widget software to over 200 pharmaceutical firms, hospitals, and universities worldwide.

20. In July 2019, Donald Morisky voluntarily left MMAS Research LLC and gave up his 50% ownership in the Morisky Widget software, Morisky Widget licenses. *See Exhibit 3.*

21. In January 2019, while a member of MMAS Research LLC, Donald Morisky formed MMAR LLC Nevada and developed a medication adherence software similar to the Morisky Widget.

22. From September 2019 until December 2020, MMAS Research LLC, Trubow, Morisky and MMAR LLC were engaged in litigation in Washington State and Nevada.

23. In December 2020, Morisky, MMAR LLC, Trubow, and MMAS Research LLC dismissed all previous complaints against each other with prejudice and signed a preliminary settlement agreement, CR2A. *See Exhibit 4.*

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

B. **The Morisky Widget Copyright**

24.  To protect the integrity of the Morisky Widget against counterfeiting, infringing, or unauthorized use, Plaintiff filed for and obtained a certificate of registration for the Morisky Widget from the United States Copyright Office. *See Exhibit 5*.

25.  The Morisky Widget copyright, as alluded to above, includes the Morisky Widget diagnostic assessments, the MMAS-4, MMAS-8 among other diagnostic assessments.

26.  Plaintiff has complied in all respects with the Copyright Act and Digital Millennium Copyright Act, as well as all other laws governing copyrights, as to the Morisky Widget copyright.

27.  Thus, Plaintiff has been, and still is, the author and exclusive holder of all rights, title, and interest in, and to, the copyrights to the Morisky Widget.

C. **Plaintiff's Successful Defense of Rights to the Morisky Widget**

28.  In September 2021, Donald Morisky filed case no. 2:21-CV-1301-RSM-DWC, a copyright infringement and breach of contract (CR2A) complaint against MMAS Research LLC in the United States District Court, Western District of Washington at Tacoma.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

29.   On April 15, 2022, Morisky's motion for a temporary restraining order against MMAS Research using the Morisky Widget was dismissed by the Court. United States Magistrate Judge David W. Christel of the United States District Court, Western District of Washington at Tacoma, issued a Report and Recommendation which acknowledged that "MMAS Research LLC holds the Copyright Registration to the Morisky Widget…." Exh. 1 on page 6, line 22.   Further, the Magistrate Judge acknowledged that "the Morisky Widget is exclusively in [MMAS Research LLC's] control…" Id. at page 8, line 16.  See Exhibit 13.

30.   The Ninth Circuit Court of Appeals issued a memorandum on March 13, 2024, in case no. No. 23-55202 confirming that MMAS Research owned the copyright to the Morisky Widget, stating:

"The district court erred in concluding that MMAS lacked standing to sue for copyright infringement. The district court found that a 2020 preliminary settlement agreement (CR2A) from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky Widget from MMAS to Dr. Morisky. But that agreement—which simply outlined terms MMAS and Dr. Morisky "desire[d] to consent and agree to" sometime in the future—was never finalized. MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget. Similarly, because the

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

agreement was a private contract between Dr. Morisky and MMAS, and because it was never finalized, it was not an abandonment of MMAS's right to sue Charité for copyright infringement. *See Exhibit 6.*

E.     **Licensing of the Morisky Widget**

31.    Plaintiff permits the use of the Morisky Widget, licensing its copyright and diagnostic assessments, only through a licensing program memorialized in a licensing agreement. Under the licensing program, use of the Morisky Widget source code is authorized by Plaintiff and only in compliance with Plaintiff's strict coding and scoring in the Morisky Widget.

32.    Restrictions on the use and disclosure of the coding and scoring of the Morisky Widget diagnostic assessments are key limitations om the licenses.

33.    The terms of the licenses granted by Plaintiff are designed not only to protect federally registered rights, but also to protect patients and health care providers from counterfeit or scientifically incorrect diagnostic assessments and inaccurate results.

34.    All Morisky Widget licensees are required to score and code diagnostic assessments, MMAS-4 and MMAS-8 tests in the Morisky Widget and to be trained and certified on the use of the Morisky Widget

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

before administering it to patients. The reasons for training and certification are that whereas the traditional MMAS-8 test was a measure of medication

adherence, the Morisky Widget MMAS-8 is a diagnostic assessment of medication behavior.

F. **MMAS Program for Licensee Training and Certification on Use of Morisky Widget**

35. Training and certification are essential to ensure that the Morisky Widget licensee analyzes and report the MMAS results correctly to benefit the patients taking the assessments and the presentation of the Morisky Widget MMAS-8 results in the medical literature.

36. Licenses for the Morisky Widget are typically structured as a fee for a perpetual license, and there is a charge for each Morisky Widget test administered by a licensee, in addition to those included in the cost of the license.

37. Plaintiff charges fees for training and certification in use of the Morisky Widget.

38. BCH was trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8. Dr Hartz customized a Morisky Widget MMAS-8 medication specific test for the BCH study.

Persepolis Law, PLLC
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

39.  Dr Hartz clearly understood differences between the Morisky Widget MMAS-8 tests published in 2017 and the original MMAS-8 tests published in the <u>Journal of Clinical Hypertension</u> article which was retracted for academic fraud in 2023.

G.  **The Night and Day Differences between the 2006 MMAS-8 and the 2017 Morisky Widget MMAS-8.**

40.  It is important to distinguish the differences between the traditional MMAS-8 scoring and coding criteria and that of the Morisky Widget MMAS-8. In 2023, the <u>Journal of Clinical Hypertension</u> retracted Morisky's MMAS-8 validation article because the Journal confirmed that Morisky made false claims about the sensitivity and specificity of the MMAS-8 scale.

41.  It is also important to identify that the foregoing does not apply to the Morisky Widget MMAS-8 because unlike the never changing static 8 questions of the MMAS-8, the Morisky Widget MMAS-8 assessment is dynamic with constantly changing MMAS-8 questions that are condition and medication specific. See Exhibit 7.

COMPLAINT FOR DAMAGES- 12

42.   Beginning with the publication of the Morisky Widget in January 2017, <u>Morisky abandoned the static 2006 MMAS-8 test</u> and instead was only willing to license the 2017 Morisky Widget MMAS-8 for its greater validity, <u>much higher sensitivity, and specificity than its 2006 predecessor.</u>

43.   The 2006 MMAS-8 was simply a measure of medication adherence, the 2017 Morisky Widget was a diagnostic assessment of medication taking behavior with the ability to not only measure raw medication adherence, but able to identify WHY the patient was non-adherent to their medication regimen for their specific health condition.

44.   The MMAS-8 Widget software consists of a list of questions that distinguish between the underlying cause of non-adherence as being intentional or unintentional allocate numerical value for each. Questions 2, 3, 6, and 7 assess individuals' intentional nonadherence whereas the remaining 1, 4 5 and 8 assess the unintentional adherence behaviors. The generated MMAS-8 scores were based on intentional and unintentional non-adherence, to determine adherences based on intentional cause for not taking their medications or unintentional cause such as cognitive impairment, worries about the consequences of taking them, or loss of motivation to self-care.[1]

---

[1] This significant difference was clarified by Donald Morisky in an email he wrote to a

COMPLAINT FOR DAMAGES- 13

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

## H.    **BCH Morisky Widget License.**

45.    On September 4, 2019, Jacob Hartz, Boston Children's Hospital (BCH)

executed a perpetual MORISKY Widget MMAS-8 license with MMAS search

---

    researcher at Temple University on September 8, 2017.  Morisky wrote:
    "*Thank you very much, Gabiel, regarding your interest in obtaining a license to use*
    *the MMAS-8 diagnostic adherence instrument. Beginning January 2017*, all data
    collection of the MMAS adherence scales must use the Morisky Widget.  All MMAS-
    8 and MMAS-4 licenses are administered through the Morisky Widget.  The Morisky
    Widget provides anywhere, anytime, patient-centered, medication adherence
    diagnostic assessments using the Morisky Medication Adherence Scale (MMAS-8 &
    MMAS-4). The Morisky Widget automatically scores, and reports adherence levels &
    the risk of intentional/unintentional non-adherence into databases and electronic
    medical records (EMR) where they are correlated with primary markers of adherence,
    timely physiological measures and with the prescribed medication for medication
    reconciliation. Another HUGE ADVANTAGE of the Morisky Widget is the option to
    select from 110 <u>MMAS-8 condition specific which offer a sensitivity of 93% as</u>
    <u>compared to the generic MMAS-8</u> at 83% <u>sensitivity (including condition-specific</u>
    <u>MMAS tests for all chronic and long-term infectious diseases.</u>

Sincerely, Dmorisky Donald E. Morisky. See Exhibit 15

COMPLAINT FOR DAMAGES- 14

LLC (MMAS) of Bellevue Washington.



*See Exhibit 8.*

46.  The BCH MMAS Morisky Widget License specified that Licensee BCH can use the Morisky Widget, Morisky Kiosk Apple I Phone APP, and the Morisky API to administer Morisky Widget MMAS tests. With Licensor approval, BCH can use MMAS paper or electronic questionnaires, but all scoring and coding must be done in the Morisky Widget.

47.  In November 2019, MMAS Research LLC traveled to Boston at their own expense, to train and certify Jacob Hartz and his colleague on BCH use of the Morisky Widget software to score and code MMAS-8 tests for the Mobile Health Technology and Behavioral Economics to Encourage

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Adherence in Adolescents study. In the November 2019 training and certification on the Morisky Widget, BCH learned the night and difference between the traditional MMAS-8 which was a measure of medication adherence and the Morisky Widget which is a diagnostic assessment of medication taking behavior.



48. BCH was trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8. Dr Hartz customized a Morisky Widget MMAS-8 medication specific test for the BCH study.

49. Dr Hartz clearly understood differences between the Morisky Widget MMAS-8 tests published in 2017 and the original MMAS-8 tests published in the <u>Journal of Clinical Hypertension</u> article which was retracted for academic fraud in 2023.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Morisky and MMAR Phase Out and replacement of the Morisky Widget



50. On October 31, 2021, Don Morisky wrote on his www.moriskyscale.com website that he has phased out the Morisky Widget.

51. Morisky stated that the phase out was because Steven Trubow MMAS Research LLC was required to transfer the Morisky Widget, Morisky.org, all language translations, all licenses, including Morisky Widget sub-licenses, and copyright registration to MMAS-4 and 8 widget software that bear the name of Morisky.

Morisky added,

The Morisky Party and MMAR agrees to provide full access to the Morisky Widget and support as needed to all licenses as long as

Persepolis Law, PLLC
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

their licenses to the Monsky Widget are in effect, including adhering to all European Union Privacy regulations (Including but not limited to GDPR and HIPM) You can reach us on our website at www monskyscale com. See Exhibit 9.

52. Morisky's "phase out" was in  bad faith and contravention of his CR2A pledge to provide full access and to all licenses as long as their licenses to the Morisky Widget are in effect.

53. The deceit of a "phase out" progressed into treachery and tortious interference when Morisky declared all Morisky Widget licenses illegal and pledged to replace the Morisky Widget with his own MMAR LLC platform.

54. The intensity of the inference increased to legal threats. On April 21, 2022, Moriskys attorney, Christopher Austin wrote a letter on Weide and Miller letterhead that was both published on www.moriskyscale.com and also delivered by email to the 200 Morisky Widget licensees in Exhibit 4 of the CR2A. which included BCH. Austin wrote:

*ANY PERSON THAT USES OR LICENSES THE MORISKY WIDGET, MMAS-4 SCALE OR MMAS-8 SCALE WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR. MORISKY WILL*

Persepolis Law, PLLC
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

*BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW FOR*

*COPYRIGHT INFRINGEMENT.*

See Exhibit 16



*See Exhibit 10.*

55.     An example of the confusion for Morisky Widget licensees caused by Morisky, MMAR and the Austin letter can be illustrated by a very recent correspondence from the Clermont Ferrand Hospital in Clermont Ferrand France. As an existing licensee under the CR2A Clermont

56.     Ferrand was confused by Morisky's promulgation of first, negativity, and then threats. This licensee, Clermont Ferrand reacted as follows:

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

On June 10, 2024, the hospitals legal officer wrote to Steve Trubow,

*Dear Steve,*

*Good to hear from you, even if the subject isn't very pleasent.*

*Regarding the complaint sent last sunday evening , I have some questions :*

*I just have an additionnal question : in fact I*

*am questionning myself since we have received a mail on May 22th*

*2022 mentionning that only Dr. MORISKY was entitled to*

*grant license on the MMAS 8 Scale. I was wondering if you are*

*aware of that ? We did not answer to this mail,*

*since we've paid our license to you in a regular manners.*

*Would you mind telling us what we are supposed to do with the mail*

*from Weide & Miller  who is supposed to be Dr. Morisky Lawyer.*

*Sincerly, Marie Cousseau*

*Marie-Anne COURTOUX -COUSSEAU*

*Responsable Affaires Juridiques Recherche & Valorisation*

*Référente Admnistrative Fédération de Greffes*

*Secteur Affaires Juridiques & Valorisation DRCI*

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

*CENTRE HOSPITALIER UNIVERSITAIRE DE CLERMONT-FERRAND*

*Direction de la Recherche Clinique et de l'Innovation*

Bâtiment Dunant - 3è étage

**58** ue Montalembert - 63003 Clermont-Ferrand

See Exhibit 22

57.    In contrast to licensee Clement Ferrand, BCH engaged in actions that constitute breach of their License Agreement with MMAS, as described  below.

BCH Breaches of their Morisky Widget License and its Conjunction with Threats, Infringement and Other Misdeeds under the CR2A by the Morisky Parties

58.   On July 3, 2022, Steven Trubow, MMAS Research LLC wrote an email to Jacob Hartz and Hannah Palfrey, to address breaches of the BCH Morisky Widget license. BCH failed to include the Morisky Widget licensing, trademark, and copyright information on the National Institutes of Health ClinicalTrials gov posting for NCT04458766 The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence in

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

<u>Adolescents</u> See Exhibit 11

---

59.  On July 4, 2022, Jacob Hartz responded to Trubow and ccd Hannah Palfrey. Jacob Hartz wrote that BCH updated the clinicaltrials.com website for NCT04458766, as shown below, listing MMAS Research LLC as a collaborator on the study.

**Sponsor/Collaborators**

Sponsor: Boston Children's Hospital
Responsible Party: Principal Investigator
Investigator: Jacob Hartz
Official Title: Staff Cardiologist and Instructor of Pediatrics
Affiliation: Boston Children's Hospital
Collaborators: Wellth Inc.
MMAS Research LLC

https://classic.clinicaltrials.gov/ct2/history/NCT04458766?V_5=View#StudyPageTop  See Exhibit 17

Trade Secret Infringement by BCH

60.  Additional breaches of the BCH Morisky Widget license contract included the misappropriation of trade secret Morisky Widget MMAS-8 scoring and coding as a result of BCH administering, scoring, and coding

COMPLAINT FOR DAMAGES- 22

their customized Morisky Widget MMAS-8 test outside of the Morisky Widget.

61.   On Jul 5, 2022, Steve Trubow wrote Jacob Hartz. *Sorry for the inconvenience, one more question. <u>How will the MMAS-8 tests be administered ? Please remember if you administer MMAS-8 tests outside of the Morisky Widget, it requires Licensor approval, to use MMAS paper or electronic questionnaires.</u>*

62.   On Jul 5, 2022, email, Jacob Hartz attached to the email a Morisky Widget MMAS-8 condition and medication specific MMAS-8 paper test, that they created.

63.   BCH administered scored and coded a paper Morisky Widget MMAS-8 test that utilized and divulged trade secret scoring and coding criteria, See the Morisky Widget MMAS-8 below. On the bottom it states How *<u>many answers did they give that are in</u> Bold Uppercase <u>(YES) >2 ELIGIBLE. (except for question #5 where the trade secret scoring and coding is reversed.)</u>*

COMPLAINT FOR DAMAGES- 23

Patient name:                                    Date:
MRN:

| | |
|---|---|
| 1) Do you sometimes forget to take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 2) People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 3) Have you ever cut back or stopped taking your prescription cholesterol medication without telling your doctor because you felt worse when you took it? | ☐ YES<br>☐ No |
| 4) When you travel or leave home, do you sometimes forget to bring along your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 5) Did you take all your prescription cholesterol medication last time you were supposed to take it? | ☐ Yes<br>☐ NO |
| 6) When you feel like your symptoms are under control, do you sometimes stop taking your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 7) Taking medicine every day is a real inconvenience for some people. Do you ever feel hassled about sticking to your cholesterol treatment plan? | ☐ YES<br>☐ No |
| 8) How often do you have difficulty remembering to take all your prescription medications to lower your cholesterol level? | ☐ Never/rarely<br>☐ Once in a while<br>☐ Sometimes<br>☐ Usually<br>☐ ALL THE TIME |

How many answers did they give that are in BOLD UPPERCASE? _____ (≥ 2 → ELIGIBLE)

See Exhibit 19.

64.    One of the most important and protected Morisky Widget trade secrets is that unlike all other medication adherence assessments the MMAS-8 questions # 1,2,3,4,5,6,7, are designed to remove socially desirable responses, the tendency to give overly positive responses that threaten the validity of the MMAS 8 and 4 assessments.

Persepolis Law, PLLC
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

65. Most patients try to please their doctor when answering questions. So, when a Doctor asks them if they are taking their medications as prescribed, the most common answer is YES DOCTOR, even if they are not taking their medication.

66. The MMAS trade secret is to remove the social desirability influence by making a patients YES answers to questions 1,2,3,4,6,and 7 a negative response, meaning that they are non-adherent to their prescribed medications, thus BCH divulged on a paper Morisky Widget MMAS-8 test, _How many answers did they give that are in_ _Bold Uppercase (YES) >2 ELIGIBLE._ See Exhibit 19

67. Another MMAS-8 trade secret divulged on the BCH MMAS-8 paper test shows that for MMAS-8 question # 5, the scoring and coding is reversed, and NO is bold not Yes. See Exhibit 19

68. In their Morisky Widget License, BCH agreed that changes or any modifications to the wording, phrasing, or scoring of the MMAS, require certification on the Morisky Widget editor and translator. BCH agreed that coding and scoring criteria of the MMAS are trade secrets of MMAS and as such can never be divulged in any publication. _See Exhibit 8._

Persepolis Law, PLLC
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

69.    On July 6, 2022, Jacob Hartz wrote to Steven Trubow:

*We have administered 4 (MMAS-8) tests. Our enrollment protocol was answering a positive (i.e., consistent with lower adherence) to at least one question.* (emphasis added) *If any of this is serious breach of contract and you feel it necessary to end our agreement, we would understand. We certainly did not mean to do anything incorrectly and it was always our intention to follow our contract entirely. It would be a tremendous loss to our study, but we want to respect our agreement and your organization.* See Exhibit 20.

BCH Breach in Conjunction with Morisky and MMAR

70.    Contrary to the above statement by Jacob Hartz in July 2022, on January 10, 2023, BCH removed the MMAS Research copyright notification from ClinicalTrials.gov without the Licensor's permission. BCH updated the clinicaltrials.gov website for NCT04458766 with a notification that *the MMAS-8 was used with permission from Dr. Morisky. The MMAS-8 scale, content, name and trademarks are protected by US Copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR LLC*

COMPLAINT FOR DAMAGES- 26

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Sponsor/Collaborators

Sponsor: Boston Children's Hospital
Responsible Party: Principal Investigator
Investigator: Jacob Hartz
Official Title: Staff Cardiologist and Instructor of Pediatrics
Affiliation: Boston Children's Hospital
Collaborators: Wellth Inc.
MMAS-8 with permission from Dr Donald Morisky. as written below

Type: MMAS-8 with permission from Dr Donald Morisky. as written below:

URL: http://www.moriskyscale.com [↗]

The MMAS-8 Scale, content, name, and trademarks are protected by US copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR, LLC. See Exhibit18.

71.    On January 24, 2024, BCH again updated the ClinicalTrials.gov website for NCT04458766 and against included the following notification. *The MMAS-8 scale, content, name and trademarks are protected by US Copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR LLC*

72.    The replacement of BCH licensed and copyright Morisky Widget MMAS-8 medication specific tests with Morisky's 2006 copyrighted generic condition tests as published on the Clinical Trials gov website constitutes willful infringement of MMAS Research LLC registered Morisky Widget

COMPLAINT FOR DAMAGES- 27

copyright. Below are copies of the BCH Morisky Widget created MMAS-8 medication specific test and Morisky 2006 copyrighted generic condition test that is filed in the United States Copyright office.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Patient name:                                    Date:
MRN:

| | | |
|---|---|---|
| 1) | Do you sometimes forget to take your prescription cholesterol medication? | ☐ **YES**<br>☐ No |
| 2) | People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your prescription cholesterol medication? | ☐ **YES**<br>☐ No |
| 3) | Have you ever cut back or stopped taking your prescription cholesterol medication without telling your doctor because you felt worse when you took it? | ☐ **YES**<br>☐ No |
| 4) | When you travel or leave home, do you sometimes forget to bring along your prescription cholesterol medication? | ☐ **YES**<br>☐ No |
| 5) | Did you take all your prescription cholesterol medication last time you were supposed to take it? | ☐ Yes<br>☐ **NO** |
| 6) | When you feel like your symptoms are under control, do you sometimes stop taking your prescription cholesterol medication? | ☐ **YES**<br>☐ No |
| 7) | Taking medicine every day is a real inconvenience for some people. Do you ever feel hassled about sticking to your cholesterol treatment plan? | ☐ **YES**<br>☐ No |
| 8) | How often do you have difficulty remembering to take all your prescription medications to lower your cholesterol level? | ☐ Never/rarely<br>☐ Once in a while<br>☐ Sometimes<br>☐ Usually<br>☐ **ALL THE TIME** |

See Exhibit 19

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

## Morisky Medication Adherence Scale™ (8-Item MMAS™ Instrument)
Copyright 2006 Donald E. Morisky. All rights reserved.

You indicated that you are taking medication for your <health condition . Individuals have identified several issues regarding their medication-taking behavior and we are interested in your experiences. There is no right or wrong answer. Please answer each question based on your personal experience with your <health condition> medication.

| | (Please check your response below) | |
|---|:---:|:---:|
| | No | Yes |
| 1. Do you sometimes forget to take your <health condition> pills? | | |
| 2. People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your <health condition> medicine? | | |
| 3. Have you ever cut back or stopped taking your medication without telling your doctor, because you felt worse when you took it? | | |
| 4. When you travel or leave home, do you sometimes forget to bring along your <health condition> medication? | | |
| 5. Did you take your <health condition> medicine yesterday? | | |
| 6. When you feel like your <health condition> is under control, do you sometimes stop taking your medicine? | | |
| 7. Taking medication everyday is a real inconvenience for some people. Do you ever feel hassled about sticking to your <health condition> treatment plan? | | |

8. How often do you have difficulty remembering to take all your medications?
**(Please circle your response below)**

Never/Rarely……………………………………....4

Once in a while…………………………………..3

Sometimes…………………………………….....2

Usually…………………………………………..1

All the time………………………………………0

See Exhibit 21

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

73. The foregoing connects BCH breach of its MMAS License Agreement to the intentional acts of interference and infringement by the Morisky Parties in contravention of their commitments and obligations under the CR2A Agreement.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
## AS TO ALL DEFENDANTS)

74. MMAS Research realleges each allegation contained in the preceding paragraphs.

75. This cause of action for breach of contract is established by the prima facie elements of (1) existence of contractual obligation and (2) facts demonstrating breach thereof.

76. A contractual obligation was established by the execution of a license agreement between Defendant BCH and Plaintiff, ("the License Agreement"), which License Agreement permitted use of the Morisky Widget under specific conditions.

77. Under the License Agreement, BCH as licensee is required to score and code diagnostic assessments, MMAS-4 and MMAS-8 tests in only with the Morisky Widget and to be trained and certified on the use of the Morisky Widget before administering it to patients.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

78.  Under the License Agreement, BCH was required to score and code diagnostic assessments, MMAS-4 and MMAS-8 tests in only with the Morisky Widget and to be trained and certified on the use of the Morisky Widget before administering it on patients.

79.  Instead, BCH scored and coded MMAS-4 and MMAS-8 tests outside of the Morisky Widget, which not only violates the terms of the License Agreement but also potentially put patients being studied at risk for potentially inaccurate scoring and coding of these adherence tests.

80.  The License Agreement clearly set out that the scoring and coding of the MMAS tests were "trade secrets of MMAS and as such can never be divulged in any publication, presentation, or website without written permission from MMAS [Research]."

81.  To the contrary, BCH published the scoring and coding of the MMAS-8 on the National Institutes of Health website, clinical.trials.gov, without written permission from MMAS Research.

82.  Also, to the contrary, as shown below, BCH appears to have emphasized the scoring of the MMAS-8 tests in the tests themselves by bolding answers to the test's questions that result in a score of 1 versus 0:

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Patient name:                                        Date:
MRN:

| | | |
|---|---|---|
| 1) | Do you sometimes forget to take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 2) | People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 3) | Have you ever cut back or stopped taking your prescription cholesterol medication without telling your doctor because you felt worse when you took it? | ☐ YES<br>☐ No |
| 4) | When you travel or leave home, do you sometimes forget to bring along your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 5) | Did you take all your prescription cholesterol medication last time you were supposed to take it? | ☐ Yes<br>☐ NO |
| 6) | When you feel like your symptoms are under control, do you sometimes stop taking your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 7) | Taking medicine every day is a real inconvenience for some people. Do you ever feel hassled about sticking to your cholesterol treatment plan? | ☐ YES<br>☐ No |
| 8) | How often do you have difficulty remembering to take all your prescription medications to lower your cholesterol level? | ☐ Never/rarely<br>☐ Once in a while<br>☐ Sometimes<br>☐ Usually<br>☐ ALL THE TIME |

How many answers did they give that are in BOLD UPPERCASE? _____ (≥ 2 → ELIGIBLE)

83.   Additionally, question 5 of the unauthorized test created by BCH above implies the scoring for question 5 was switched, which, along with the scoring for the Yes and No, represents a well-kept trade secret of MMAS.

84.   In the License Agreement, both BCH and MMAS mutually agreed that if "BCH divulges Morisky Widget scoring and coding criteria it will be considered a breach of the Morisky Widget license and MMAS

COMPLAINT FOR DAMAGES- 33

[Research] will have the right to suspend or terminate the Agreement."

85. Moreover, the above MMAS-8 test was created by BCH and given as a paper test to patients without any permission by MMAS; yet the License Agreement specifically requires "Licensor approval" for BCH to "use MMAS paper or electronic questionnaires."

86. The above MMAS-8 test was created by BCH and given as a paper test to patients and scored outside of the Morisky Widget; yet the License Agreement specifically requires that all "scoring and coding must be done in the Morisky Widget."

87. The License Agreement required BCH to acknowledge MMAS Research as the owner of the Morisky Widget in all publications of testing results and provide attribution (including copyright and the trademark notices) as provided in the License Agreement's Appendix 1.

88. BCH has breached the License Agreement by using the Morisky Widget license in violation of the foregoing conditions by the following actions and failures to act and has accordingly violated those obligations:

89. None of the publications by BCH that reference the MMAS tests were published with the proper attribution notices in Appendix 1 of the License Agreement.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

90.   For at least these acts, Defendants have breached the License Agreement, and MMAS Research is entitled to damages determined at trial and specific relief to retract the disclosures of trade secret and proprietary information.

## SECOND CAUSE OF ACTION
## DCMA Section 1202, Violation Of The
### Integrity Of Copyright Management
## (AS TO ALL DEFENDANTS)

91.   MMAS Research realleges each allegation contained in the preceding paragraphs.

92.   At all times relevant hereto, MMAS Research was the owner of all rights to assert copyright claims for the Morisky Widget.

93.   MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq., and all other laws governing copyright.

94.   Copyright law restricts the removal or alteration of copyright management information ("CMI") — information such as the title, the

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

author, the copyright owner, the terms, and conditions for use of the work, and other identifying information set forth in a copyright notice or conveyed in connection with the work. See 17 U.S.C. § 1202(b)-(c). A party may be held liable for providing or distributing false Copyright Management information (CMI) "knowingly and with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a); Baronius Press Ltd. v. Faithlife Corp. (WWDC 2024_January 31, 2024, 2024 U.S. Dist. LEXIS 1719

95. More specifically, removal or alteration of the name and other indicia of ownership from a Work, and distribution with a reasonable basis to know that such actions would induce, enable, facilitate, or conceal copyright infringement constitutes a DMCA violation. Stevens v. Corelogic, Inc., 899 F.3d. 666, 673 (9th Cir. 2018).

96. MMAS Research is informed and believes that Defendants misattributed and otherwise changed the attribution of the Morisky Widget copyrighted work in web postings on the United States National Institute of Health website, intentionally in violation of 1202(a).

COMPLAINT FOR DAMAGES- 36

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

97.   MMAS Research is informed and believes and thereon alleges that Defendants have infringed the Morisky Widget under DCMA Section 1202 by using, copying, counterfeiting, distributing, or otherwise exploiting the same contrary to the limited-use licenses granted in the License Agreement.

98.   MMAS Research is informed and believes and thereon alleges that Defendants have infringed the Morisky Widget copyright under DCMA Section 1202 by using, copying, counterfeiting, distributing, or otherwise exploiting the same in the course of NCT04458766, The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents.

99.   MMAS Research is informed and believes and thereon alleges that Defendants have infringed the Morisky Widget copyrights by using, copying, counterfeiting, distributing, or otherwise exploiting the same in publications in the medical literature and on the United States National Institute of Health website.

100.  Such copyright infringement was willful given the License Agreement and its required attribution notices, as well as clear reference to MMAS Research's ownership of the Morisky Widget.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

101. As a direct result BCH's infringement, MMAS Research has sustained damages in an amount to be determined at trial.

102. Pursuant to 17 U.S.C. §§ 502, 503, 504, and 505, MMAS Research is entitled to an award of actual damages, injunctive relief, the impoundment, and destruction of the infringing materials, and MMAS Research's attorneys' fees and costs.

103. In addition, MMAS Research is further entitled to statutory damages for infringement and willful infringement of BCH.

## THIRD CAUSE OF ACTION
### Tortious Interference With Contract
### (As To Defendants MMAR LLC, DONALD MORISKY)

104. MMAS Research realleges each allegation contained in the preceding paragraphs. At all times relevant hereto, MMAS Research was the owner of all rights to assert claims for the Morisky Widget.

104. MMAS Research claims Donald Morisky and MMAR LLC intentionally interfered with the Morisky Widget license contract between Plaintiff and Boston's Children's Hospital.

105. In December 2020, Morisky, MMAR LLC, Trubow, and MMAS Research LLC dismissed all previous complaints against each other with

Persepolis Law, PLLC
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

prejudice and signed a preliminary settlement agreement, CR2A. *See* Exhibit 4.

106. The CR2A  was supposed to protect Plaintiff from Morisky interfering with existing Morisky Widget licenses

107. Instead Morisky in spite of his legal obligations under the CR2A tortiously interfered with Plaintiffs 200 CR2A Morisky Widget licensees which included Boston Children's Hospital.

**EXHIBIT 4**

**Morisky Widget Licensees**

Licensees

Boston Children's Hospital
Bristol University
Bristol-Myers Squibb USA
Brussels Free University School of Public Health

108. On March 10, 2022 in Case 2:21-cv-01301-RSM-DWC  in the Western District Court of Washington, Morisky filed the instant motion for a Preliminary Injunction. In the motion, he asks the Court to issue an order prohibiting Defendants from using and selling all "Morisky IP" because, according to Morisky, MMAS Research are not limiting their use to "pursuit of previously existing infringement claims" as permitted by Exhibit 3 of the CR2A. Exhibit 13

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

109. On April 15, 2022, the Western Washington Federal District Court recommended Morisky's Motion for Preliminary Injunction be denied. *The fact the Morisky Widget is exclusively in Defendants' control is a particularly salient point here because the purpose of a preliminary injunction is to preserve the status quo until the case can be heard on the merits. Here the last uncontested status preceding this case is clearly spelled out by the CR2A. Paragraph four of the settlement (CR2A) authorizes Defendants to pursue retroactive licensing agreements for the Morisky Widget. Were the Court to issue a preliminary injunction this status quo would be upset by halting the process of MMAS Research pursuing retroactive licensing agreements, and as a result, the relief the (CR2A) ultimately affords Morisky (including the assignment of the Morisky Widget and any related intellectual property to him would only be further delayed.* See Exhibit 13.

110. The CR2A, Exhibit 4, listed a minimum number of 200 perpetual Morisky Widget licenses that were executed before the CR2A was executed in December 2020. The Morisky Widget licensees in the CR2A Exhibit 4 included Boston Children's Hospital.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

111. The CR2A was an enforceable contract, that was supposed to protect Plaintiff from Morisky tortiously interfering with  the CR2A Exhibit 4 Morisky Widget  licensees.

112. In the CR2A section II *the parties agreed that the list of Morisky Widget licensees set forth in Exhibit 4 to this Agreement represents the minimum number of all such License Agreements.* Exhibit 4

113. In the CR2A section II the parties agreed *the Trubow Party shall train the Morisky Party in the use of the Morisky so that they may operate and maintain it as currently constituted and service licensees as presently done by the Trubow Party.* Exhibit 4.

114. By their own choice, the Moriskys refused all attempts by the Plaintiff to train Morisky and MMAR to obtain certification on the Morisky Widget so that they could  provide service to the Morisky Widget licensees in the CR2A Exhibit 4 including Boston Children's Hospital.

115. In the CR2A section II *Donald Morisky agreed to assume all ongoing obligations and responsibilities under all License Agreements* Exhibit 4

116. From the execution of the CR2A  in December 2020 to the present day. MMAS Research has operated the Morisky Widget to service

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Exhibit IV licensees, despite tortious interference by the Morisky party and MMAR., which is the cause of action in this complaint.

117. In the CR2A section II, *The Morisky Party and MMAR agrees to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect.*

118. This included Boston Children's Hospital whose license, Morisky replaced with his own MMAR LLC MMAS-8 license in January 2023.

119. From the execution date in December 2020 to the present day MMAS Research has operated the Morisky Widget to service Exhibit IV licensees, without the support of Donald Morisky and MMAR.

120. Morisky and his counsel had knowledge of his obligation under the terms of the CR2A and consented to memorialize the expectancies in Exhibit 4 to the CR2A.

121. By various publications either on the Internet or in various email communications with Boston Children's Hospital listed in Exhibit 4 to the CR2A, Morisky and his counsel intentionally disparaged Trubow and MMAS Research and their ability to effectuate the terms of the CR2A and the respective BCH Morisky Widget license.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

122. As evidenced by the allegations and Exhibits attached hereto, Morisky and his counsel have repeatedly and intentionally interfered with Trubow and MMAS Research's ability to perform the agreed terms of the CR2A and to effectuate settlements and licenses provided by the CR2A.

123. Morisky is well aware that Defendants were authorized to service licensees under the terms of the CR2A; Morisky was aware because he was a party to the CR2A. By emailing the Austin Letter to Widget licensees, it is clear that Morisky is intentionally trying to terminate existing Widget licenses.

124. In the case of the BCH Morisky Widget license, it was replaced with MMAR LLC MMAS-8 license as evidenced on several ClinicalTrials gov postings,

125. It is also clear that Morisky's end goal was to transition the 200+ existing Widget licensees over to his MMAR platform, which was not the intent of these licensees when they signed up nor was it the intent of Morisky and Defendants when the CR2A was signed. In fact, Section 7 of the CR2A specifically requires Morisky "to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect, including adhering to all

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

European Union Privacy regulations (including but not limited to GDPR) and HIPPA),". Exhibit 4

126. Morisky and his counsel have interfered for an improper purpose or used improper means outside of the scope of the CR2A.

127. Trubow and MMAS Research have lost expected revenue resulting from the intentional tortious actions of Morisky and his counsel in a sum to be proven at trial, but in a sum no less than $5,000,000.

128. To the contrary, instead of meeting "*all ongoing obligations and responsibilities under all Morisky Widget License Agreements*" Donald Morisky and MMAR have tortiously interfered with Plaintiff's obligations to service, train and otherwise support BCH Morisky Widget license under the CR2A.

129. Such interference has not only been entirely their obligations but has been directed to cause harm to Plaintiff. These tortious actions have included:

A.    Attempts to destroy the Morisky Widget.

B.    Interfere with existing licenses and sub-licenses concerning the Morisky Widget.

C.    Direct threats to existing licensees.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

D.    Postings on  www.moriskyscale.com  and other websites that delivered general threats concerning use of the Morisky Widget; and

130. Replacing attribution to the Morisky Widget and MMAS in publications.

The tortious actions by Defendants Donald Morisky and MMAR have caused untold damage to Plaintiff, have destroyed ongoing efforts to support the licensees under the CR2A and have damaged the efforts to provide access to the significant benefits of the Morisky Widget to the medical community and to public health.

## FOURTH CAUSE OF ACTION
### Trade Secret Misappropriation
### (As To Defendants BCH AND JACOB HARTZ)

131. MMAS Research realleges each allegation contained in the preceding paragraphs.

132. The Under the Defend Trade Secrets Act 18 U.S.C.S. § 1839(3). A trade secret consists of three elements: (1) information; (2) that is valuable because it is unknown to others; and (3) that the owner has attempted to keep secret.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

133. Plaintiff has asserted trade secret rights in information that is valuable, unknown to others and to which Plaintiff has kept secret. Namely Plaintiff possesses and asserts trade secret rights in the wording, phrasing, or scoring of the Morisky Widget which are designed to remove socially desirable responses, the tendency to give overly positive responses that threaten the validity of the MMAS 8 and 4 assessments.

134. To succeed on a claim for misappropriation of trade secrets under the Defend Trade Secrets Act, a plaintiff must prove: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 9th Circuit Court of Appeals, 978 F.3d 653 (9th Cir 2020).

135. MMAS Research does not permit licensees to disclose scoring and coding, let alone the flipping of how Question 5 of the MMAS-8 is scored. Yet, BCH provided paper tests to patients with answers that provide specific scoring bolded in a way that the scoring could be detected and Question 5's scoring could be identified.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

136. As mentioned above, BCH agreed to the existence of trade secrets and that changes or any modifications to the wording, phrasing, or scoring of the MMAS, require certification on the Morisky Widget editor and translator.

137. In the License Agreement, BCH agreed that changes or any modifications to the wording, phrasing, or scoring of the MMAS, require certification on the Morisky Widget editor and translator. BCH agreed that coding and scoring criteria of the MMAS are trade secrets of MMAS and as such can never be divulged in any publication. (See above Para 57).

138. Defendant Jacob Hartz, admitted to knowingly violating the trade secret rights of Plaintiff by making changes to the wording phrasing and scoring criteria while using the Morisky Widget on behalf of BCH.

139. Accordingly, Defendants BCH and Jacob Hartz have no basis for challenging the cause of action for Trade Secret Misappropriation.

140. Defendants BCH and Jacob Hartz misappropriated MMAS Research's trade secrets.

141. MMAS Research has over 200 licensees of its software, to some of the largest pharmaceutical, clinical research organizations, hospitals,

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

and universities in the world. Divulging trade secret scoring and coding reduces the value of the widely used Morisky Widget software.

142. BCH misappropriated MMAS Research's confidential, proprietary, and trade secret information by disclosing MMAS-8 coding criteria in the unauthorized MMAS paper tests. This misappropriation of MMAS Research's confidential, proprietary, and trade secret information was intentional, knowing, willful, and malicious.

143. As the direct and proximate result of BCH's conduct, MMAS Research has suffered and, if BCH's conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because MMAS Research's remedy at law is inadequate, MMAS Research seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests. Plaintiffs' business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

144. Plaintiff MMAS Research has been damaged by the foregoing and is entitled to an award of exemplary damages and attorney's fees.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachussetts 02460
(617) 431-4329

# FIFTH CAUSE OF ACTION

## 17 U.S. Code § 504 – Willful Statutory

## Infringement Of Copyright Of Morisky Widget MMAS-8

## <u>(AS TO ALL DEFENDANTS)</u>

145. MMAS Research realleges each allegation contained in the preceding paragraphs.

146. Defendants intentionally violated the rights of Plaintiff as the copyright holder of the Morisky Widget, preventing Plaintiff from displaying the MMAS-8 results of the Morisky Widget.

147. Defendants knowingly infringed by abandoning the Plaintiff's license and executing a traditional MMAS-8 license to replace the Plaintiff's Morisky Widget MMAS-8 license.

148. Defendants acted recklessly by disregarding MMAS Research LLC registered copyright by continuing to infringe the Morisky Widget after the United State 9th Circuit Court upheld Plaintiff's ownership of the same.

149. By these acts, Defendants have breached MMAS' exclusive rights as a copyright owner to license, maintain, publish, and distribute its copyrighted work.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

### III.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and against Defendants as follows:

1.    For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff MMAS Research's copyright in the Morisky Widget, in accordance with proof at trial.

2.    For statutory damages for copyright infringement and/or willful copyright infringement by Defendants.

3.    For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from: using the Widget Tests or the Morisky Widget copyrighted work until a license is obtained, including the maintenance on websites, posted on the Internet, or in any publication, articles, and reports described herein, or any such articles, publication, and reports in the future that use or reference the Widget Tests, MMAS-8, or the Morisky Widget;

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

4. Order that Defendants file with this Court and serve upon Plaintiffs within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply.

5. For costs of suit herein incurred.

6. For attorneys' fees.

7. For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

8. For such other and further relief, the Court deems just and proper.

Respectfully submitted this _____ day of _____, 2024.


_____
Ashkon Roozbehani
Massachusetts Bar # 694483
Persepolis Law, PLLC
809 Washington St., Suite A
Newton, MA 02460
Telephone: (617) 431-4329
persepolaw@gmail.com

Persepolis Law, PLLC
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329