# EXHIBIT 13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONALD E. MORISKY,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MMAS RESEARCH LLC, et al.,<br><br>　　　　　　Defendant. | CASE NO. 2:21-CV-1301-RSM-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: April 29, 2022 |

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge David W. Christel pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4. Before the Court is Plaintiff's Motion for a Preliminary Injunction (Dkt. 42).

BACKGROUND

Plaintiff, Donald Morisky (Plaintiff) is a professor emeritus at the University of California, Los Angeles Fielding School of Public Health. Dkt. 22 at 1-2. He claims to have created an assessment tool for clinicians to measure medication non-adherence in a variety of patient populations, called the "Morisky Medication Adherence Scale" (MMAS). *Id*. at 2. In the

REPORT AND RECOMMENDATION - 1

early 2000s Plaintiff obtained Copyright Registrations for variations of this assessment tool, called the MMAS-4 and the MMAS-8. *Id*. at 9. He also has a registered trademark in "MMAS". Dkt. 42-2.

In 2011, Plaintiff founded MMAS Research, LLC as a California limited liability company and began selling licenses to use his copyrighted products and providing training to licensees. *Id*. at 11. According to Plaintiff, from approximately 2011 to 2014 he licensed over 3000 clinics, practitioners, and organizations to use his copyrighted works. *Id*.

In April 2014, Plaintiff entered into a licensing agreement (the 2014 licensing agreement) with Steve Trubow, who owned a Washington limited liability company at the time called Olympic Labs, LLC. *Id*. at 12. One of the goals of this licensing agreement was for Steve Trubow to create an electronic version of the MMAS-4 and MMAS-8—now commonly referred to as "the Morisky Widget"—to "automatically" generate a diagnostic and intervention protocols from patient answers to the MMAS-4 or MMAS-8. Dkt. 21-5 at 16. The 2014 licensing agreement provided that the parties would share, fifty-fifty, the revenue derived from issuing third-party licenses to the Morisky Widget, but Plaintiff would "at all times remain the owner of the MMAS-8 and any associated intellectual property, patents, copyrights or derivatives derived from the use of the MMAS-8 … ". Dkt. 22 at 12.

In December 2016, Steve Trubow re-organized Olympic Labs LLC, as "MMAS Research LLC," a Washington limited liability company, listing himself and Plaintiff as "managers". Dkt. 21-5 at 19, 21; Dkt 22-7. However, Plaintiff alleges that Steve Trubow also formed international subsidiaries of MMAS Research LLC without consulting him. Dkt. 22 at 13.

Following a series of disagreements between the parties, in January 2019 Plaintiff formed his own company called Morisky Medication Adherence Research LLC (MMAR), a Nevada

limited liability company, and, according to Steve Trubow, "began to represent to clients of the jointly owned MMAS Research LLC that it no longer had rights to issue licenses to the Morisky Widget or any Morisky intellectual property." Dkt. 39 at 4. However, according to Plaintiff, on June 21, 2019 he notified Steve Trubow that he was voluntarily "withdrawing" from MMAS Research LLC. Dkt. 21-5 at 21. Hereinafter Steve Trubow and MMAS Research LLC will be referred to collectively as "Defendants".

On July 27, 2019 Defendants filed a Complaint against Plaintiff in King County Superior Court alleging breach of fiduciary duty and tortious interference. Dkt. 21-1. Plaintiff counterclaimed, asserting copyright and trademark infringement, among others claims. Dkt. 21-5.

On March 10, 2020, Plaintiff provided written notice to Defendants of their alleged breach of the 2014 licensing agreement, stating "the License [sic] Agreement will terminate on Friday, April 10, 2020" if Defendants fail to cure their breaches by: (1) Providing a full financial accounting of MMAS Research from 2017 to the present; (2) Paying Plaintiff all sums due and not paid under the License [sic] Agreement; and (3) Removing any claims of ownership to the MMAS-8 and all Morisky IP. Dkt. 22 at 14.

Defendants allegedly failed to comply with these terms. *Id*. at 14-15. Thus, on May 28, 2020 Plaintiff filed a Complaint against Defendants in the United States District Court of Nevada alleging copyright and trademark infringement, deceptive trade practices, and state law claims. Dkt. 21-13.

With two cases pending—one brought by Defendants against Plaintiff in Washington state court, the other brought by Plaintiff against Defendants in Nevada federal court—the parties reached a verbal settlement agreement on July 2, 2020 that sought to resolve all outstanding

REPORT AND RECOMMENDATION - 3

1  claims and counterclaims "with prejudice." *Id*. at 15; Dkt. 22-6 at 1, 8. This agreement was
2  reduced to writing and signed by the parties on December 6, 2020 (the SA). Dkt. 22-6.

3      The SA sets out certain rights and obligations of each party. Unsatisfied with each other's
4  performance, shortly after agreeing to the SA the parties began discussing dispute resolution as
5  required by paragraph 17 of the SA. Dkt. 22 at 17. Relations became so strained that during the
6  process of attempting to schedule dispute resolution, yet another dispute arose regarding what
7  type of dispute resolution was required by paragraph 17: binding arbitration or mediation. *Id*.

8      Defendants returned to King County Superior Court on May 11, 2021 seeking to enforce
9  or rescind the SA. Dkt. 39 at 7; Dkt. 21-22. In response, Plaintiff's moved to compel mediation
10 and dismiss Defendants' case without prejudice, which the King County Superior Court granted
11 on July 9, 2021. Dkt. 21-27. On August 20, 2021 the King County Superior Court issued an
12 order affirming and upholding its July 9, 2021 order, and finding that section 17 of the SA
13 contains a "mediation clause as a precondition of entering a legal cause of action alleging
14 breach." Dkt. 21-32. Nevertheless, the parties remained at an impasse regarding the type of
15 alternative dispute resolution to employ, and have never engaged in post-SA mediation. Dkt. 22
16 at 18. Plaintiff initiated this action on September 24, 2021. Dkt. 1.

17     While Defendants' Motion to Dismiss (Dkt. 39) was pending and not yet decided by the
18 Court[1], on March 10, 2022 Plaintiff filed the instant motion for a Preliminary Injunction Dkt. 42.
19 In the motion, he asks the Court to issue an order prohibiting Defendants from using and selling
20 all "Morisky IP" because, according to Plaintiff, Defendants are not limiting their use to "pursuit
21 of previously existing infringement claims" as permitted by paragraph 4 of the SA. Dkt. 42 at 6.

---

[1] The undersigned filed a Report and Recommendation on April 8, 2022 recommending the Motion to Dismiss be denied. Dkt. 47.

REPORT AND RECOMMENDATION - 4

Instead, Plaintiff alleges Defendants are escalating their infringement of Morisky IP and have formed a new company—called Medication Safety Healthcare LLC—and updated the Morisky.org website to offer perpetual licensing of the Morisky Widget, in violation of both the SA and Plaintiff's copyrights. Dkt. 42 at 6.; Dkt. 42-7 at 4.

Defendants oppose Plaintiff's motion because they insist no infringement is occurring as their only use of Morisky IP is strictly in keeping with the terms of the SA. Dkt. 44. Defendants also question (for the first time in this case) the validity of Plaintiff's copyrights, contending they were obtained by fraudulent representations to the Copyright Office. *Id*. In his reply, Plaintiff defends the validity of his Copyright Registrations to the MMAS-4 and the MMAS-8, and maintains that he is suffering irreparable harm by Defendants' actions. Dkt. 46.

## STANDARD

The Copyright Act provides that a court "may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Thus, injunctive relief to prevent copyright infringement is available as an equitable remedy at the district court's discretion. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006). Such discretion should be "exercised consistent with traditional principles of equity." *Id*.

The court may issue a preliminary injunction where a party establishes (1) a likelihood of success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and showing the balance of hardships tips sharply in its favor. *Alliance for the*

*Wild Rockies v. Cottrell Eyeglasses*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011); *Riverside Publishing Co. v. Mercer Publishing LLC*, Case No. C11–1249RAJ, WL 3420421, *3 (W.D. Wash. Aug. 4. 2011).

The party seeking the injunction bears the burden of proof as to each of these elements. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.")

## DISCUSSION

Plaintiff seeks a preliminary injunction "prohibiting Defendants from using and selling the Morisky IP." Dkt. 42 at 16. Plaintiff contends he is entitled to an injunction because he meets all the elements of the *Winter* test with respect to his Copyright Infringement and Trademark Infringement claims. The Court disagrees.

A party seeking a preliminary injunction must demonstrate that irreparable injury is likely unless injunctive relief is granted. *See Winter*, 555 U.S. at 22. Therefore, Plaintiff must establish that he faces a likelihood of irreparable harm if Defendants are not enjoined from using and selling all "Morisky IP", including but not limited to the Morisky Widget to which Plaintiff does not currently hold the Copyright Registration.[2] Plaintiff argues that without an injunction he will lose non-compensable time to "benefit or exploit his copyrights", his copyrights will lose value

---

[2] Pursuant to the SA Defendant MMAS Research LLC holds the Copyright Registration to the Morisky Widget and "will assign" it to Plaintiff at the expiration of the "transition period" and provide Plaintiff with all the information needed for him to take over the business of servicing sublicensees of the Morisky Widget. Dkt. 22-6 at 4-7.

REPORT AND RECOMMENDATION - 6

because "they are intrinsically connected with [his] world-wide 40-year reputation in the field", and he will lose the "ability to control his copyrights." Dkt. 42 at 14; Dkt. 46 at 12.

In considering whether these allegations rise to the level of "irreparable harm" the record does not contain any evidence upon which the Court could find these harms are likely to occur. For instance, Plaintiff has not provided any evidence that he is unable to sell licenses to the MMAS-4 or MMAD-8 copyrights, or that they have lost value. Nor has he shown evidence of harm to his reputation caused by anything Defendants are doing. *See Fox Broadcasting Co. v. Dish Network, L.L.C.*, 905 F. Supp. 2d 1088, 1110 (C.D. Cal. 2012), *aff'd* 747 F.3d 1060 (9th Cir. 2013)(finding the harm alleged by plaintiff did not "flow from" the conduct plaintiff sought to enjoin); *see also Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011) (Perfect 10 did not prove a sufficient causal connection between irreparable harm to its business and Google's search service).

More importantly, he has not shown evidence that Defendants are actually infringing Plaintiff's registered copyrights. Defendants aver that they only use the Morisky Widget and associated Morisky IP to facilitate Claim Settlements with the parties listed in Exhibit 3 to the SA and to establish a mental-health specific survey that Plaintiff's counsel signed off on as non-infringing. Dkt. 44 at 7[3]; Dkt. 22-6 at 6. Defendants indicate that their obligation under the SA to pursue Settlement Claims with known infringers of the Morisky Widget is not yet complete and they cannot fulfill their obligation without retaining the Registered Copyright to the Morisky

---

[3] Defendants state, "Beyond the securing and service of the licenses in accord with the [SA], the only other activity by [Defendants] has been the administration of a distinct four question survey known as the Global Medication Reconciliation Form ("GMRF"). The GMRF was specifically designed to enable MMAS to market and establish the GMRF as a non-infringing survey once the tasks set out in the [SA] as to be completed in a transition period are to be, in fact, complete."

REPORT AND RECOMMENDATION - 7

Widget because Copyright law prohibits assigning enforcement rights to a third party. Doc. 39 at 15; Dkt. 41 at 3-4.

However, even assuming for the sake of argument that Defendants are selling licenses to the Morisky Widget in contravention of the SA, Plaintiff still could not prove Copyright Infringement because as provided under the SA he does not hold the Copyright Registration to the Morisky Widget. In other words, even if Plaintiff proves to be correct on this claim, it bears no causal connection to Plaintiff's alleged loss of control over his copyrights to the MMAS-4 or the MMAS-8, or trademark of "MMAS."

Should it be determined that Defendants *have* breached the SA, Plaintiff can be made whole with money, because the cost of any "illegal" licenses Defendants might be selling is easily quantifiable. *But cf. California Pharmacists Ass'n v. Maxwell–Jolly*, 563 F.3d 847, 851–52 (9th Cir. 2009)("irreparable harm is established when a plaintiff is unlikely to be made whole by an award of monetary damages or some other legal remedy at a later date, in the ordinary course of litigation") rev'd on other grounds by *Douglas v. Independent Living Center of Southern California, Inc*., 565 U.S. 606 (2012).

The fact the Morisky Widget is exclusively in Defendants' control is a particularly salient point here because the purpose of a preliminary injunction is to preserve the status quo until the case can be heard on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1422 (9th Cir. 1984). "The status quo is the last uncontested status which preceded the pending controversy." *Westinghouse Elec. Corp. v. Free Sewing Mach. Co*., 256 F.2d 806 (7th Cir. 1958). Here the last uncontested status preceding this case is clearly spelled out by the SA.

| | |
|---|---|
| 1 | Paragraph four of the SA authorizes Defendants to pursue retroactive licensing agreements for |
| 2 | the Morisky Widget with the entities listed in exhibit three attached thereto. Dkt. 22-6 at 4.[4] |
| 3 | Were the Court to issue a preliminary injunction this status quo would be upset by halting the |
| 4 | process of Defendants pursuing retroactive licensing agreements, and as a result, the relief the |
| 5 | SA ultimately affords Plaintiff (including the assignment of the Morisky Widget and any related |
| 6 | intellectual property to him (Dkt. 22-6 at 2)) would only be further delayed. |


Paragraph four of the SA authorizes Defendants to pursue retroactive licensing agreements for the Morisky Widget with the entities listed in exhibit three attached thereto. Dkt. 22-6 at 4.[4] Were the Court to issue a preliminary injunction this status quo would be upset by halting the process of Defendants pursuing retroactive licensing agreements, and as a result, the relief the SA ultimately affords Plaintiff (including the assignment of the Morisky Widget and any related intellectual property to him (Dkt. 22-6 at 2)) would only be further delayed.

Finally, Plaintiff's delay in seeking injunctive relief is inconsistent with his claim of irreparable harm. Defendants point out that Plaintiff waited six months since the inception of this case to file for injunctive relief. Dkt. 44 at 14. It is well established that the Court may infer from delay in seeking injunctive relief that irreparable harm is not present. *See Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Valeo Intell. Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) (three-month delay belied claims of irreparable harm; "[a] three-month delay in seeking injunctive relief is inconsistent with Valeo's insistence that it faces irreparable harm."). Requesting injunctive relief six months into the parties' third lawsuit involving substantially similar facts and claims is reason enough to deny Plaintiff's motion. *See e.g., Garcia v. Google, Inc.,* 786 F.3d 733, 746 (9th Cir. 2015)(citing Nimmer on Copyright § 14.06[A][3][c] (noting unreasonable delay can defeat irreparable injury and the length of time "need not be great")); *see also Edge Games, Inc. v. Electronic Arts, Inc.*,

---

[4] Paragraph Four of the SA states, "Donald Morisky authorizes MMAS Research, LLC through its attorney(s) to prosecute the Claim Settlements listed in Exhibit 3 from which a Claim Settlement may be sought related to the MMAS-4, MMAS-8, the Morisky Widget and any related intellectual property, and further agrees to cooperate in any existing investigations, claims and ensuing litigation of any such claims, whether now pending or to be litigated in the future, including the formal assignment of such claims, if necessary to MMAS Research, LLC. With the exception of any filed, active, lawsuit then proceeding, all prosecution of Claim Settlements by MMAS Research, LLC through its attorney(s) must conclude within two (2) years of the expiration of the Transition Period as described in Paragraph 7 of this Agreement. Any legal actions, including claims for infringement, may be filed in the name of Donald Morisky if required by law, as the owner(s) of the Morisky IP."

745 F.Supp. 2d 1101, 1118 (N.D. Cal., October 1, 2010)(delay of 21 months before seeking injunctive relief since alleged infringing product offered for sale to the public was unreasonable).

Since Plaintiff has not shown he is "'likely to suffer irreparable harm in the absence of preliminary relief,' *Winter*, 129 S.Ct. at 374, [the Court] need not address the . . . remaining elements of the preliminary injunction standard." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

<u>CONCLUSION</u>

For the reasons stated above, the Court recommends Plaintiff's Motion for Preliminary Injunction (Dkt. 42) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April 29, 2022, as noted in the caption.

Dated this 15th day of April, 2022.

David W. Christel
United States Magistrate Judge