**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MMAS RESEARCH  LLC, a Washington limited liability company, | Case No. 1:24-cv-12108-DHC |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| THE CHILDREN'S HOSPITAL CORPORATION, MORISKY MEDICATION ADHERENCE RESEARCH LLC, JACOB HARTZ, HANNAH PALFREY, DONALD MORISKY, and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff, MMAS Research LLC (hereinafter "Plaintiff" or "MMAS Research"), by and through its undersigned attorneys, complains and alleges as follows:

**INTRODUCTION**

1.     Plaintiff MMAS Research is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright"). Steven Trubow ("Trubow") is the CEO of MMAS Research.

2.     The Morisky Widget is a digital diagnostic assessment protocol to measure and identify medication nonadherence behaviors. In other words, it is a carefully constructed and easily adaptable digital questionnaire that allows doctors and healthcare providers to assess whether patients are taking their medications as prescribed.

3.     From January 2017 to July 2019, Trubow and Defendant Donald Morisky co-owned MMAS Research LLC, through which they trained and certified clinicians on the Morisky Widget MMAS assessments. They provided these services for over 200 leading pharmaceutical companies (clinical trials), hospitals (medication reconciliation for patients with chronic and infectious diseases, mental health disorders, and chemical dependency), and university

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

researchers who published Morisky Widget results in medical literature. Among the hundreds of Morisky Widget licensees that Morisky and Trubow trained and certified was Boston Children's Hospital.

4.     After Morisky's departure from MMAS in July 2019, he formed a competing entity, Morisky Medication Adherence Research LLC ("MMAR"), and attempted to undermine Plaintiff's business by interfering with existing licenses and falsely claiming ownership of the Widget's copyright. This interference included sending threatening legal notices to MMAS's licensees and BCH, which caused confusion and harm to MMAS Research's business relationships.

5.     Additionally, Boston Children's Hospital ("BCH") breached its license agreement with MMAS Research by using and modifying the Morisky Widget without proper authorization. Despite the license's requirement that all scoring and coding must be performed within the Morisky Widget software, BCH administered the Widget using paper-based tests and scored them outside the authorized platform. Further, BCH altered copyright management information on its clinical trial postings, removing MMAS Research's attribution and replacing it with Morisky's unauthorized version. These actions violated the Digital Millennium Copyright Act (DMCA) and led to unauthorized disclosure and misappropriation of MMAS Research's trade secrets, causing substantial harm to MMAS Research's business and its intellectual property rights.

6.     MMAS Research brings this complaint for damages against The Children's Hospital Corporation, Morisky Medication Adherence Research LLC, Donald Morisky, Jacob Hartz, Hannah Palfrey, and DOES 1 through 10, inclusive, for breach of contract, copyright infringement under the DMCA, tortious interference with contract, and trade secret misappropriation under the Defend Trade Secrets Act (DTSA), as detailed below. MMAS Research seeks damages, injunctive relief, and other remedies to address these violations.

## PARTIES

7.     Plaintiff MMAS Research LLC ("MMAS Research") is a Washington limited liability company in good standing which conducts business in Boston, Massachusetts.

8.     Defendant The Children's Hospital Corporation ("BCH") is a pediatric hospital and research institute in Boston Massachusetts.

FIRST AMENDED COMPLAINT- 2

9.      Defendant Morisky Medication Adherence Research is a Nevada Limited Liability Company that does business as MMAR LLC in Boston Massachusetts.

10.     Defendant Donald Morisky is the founder of Morisky Medication Adherence Research (d/b/a MMAR LLC).

11.     Defendant Jacob Hartz is an employee of BCH.

12.     Defendant Hannah Palfrey is an employee of BCH.

13.     Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10, inclusive (the "Doe Defendants," and collectively with the above-named defendants, the "Defendants"), are other parties not yet identified who have breached contracts that are the subject of this lawsuit. The true names, whether corporate, individual, or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues defendants by such fictitious names, and will seek leave to further amend this complaint to show their true names and capacities when their identities have been determined.

14.     Plaintiff is informed and believes, and thereupon alleges, that Doe Defendants were, and are, in some manner responsible for the actions, acts, and omissions alleged, and for the damage caused by Defendants and are, therefore, liable for the damage caused to Plaintiff.

15.     Plaintiff is informed and believes, and thereon alleges, that Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damage to Plaintiff.

16.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants controlled and participated in the acts or conducted alleged herein.

## JURISDICTION AND VENUE

17.     This action arises, in part, under the Copyright Infringement Under 17 U.S.C. §§ 101, including all sections created or amended by the Digital Millenium Copyright Act conferring federal question jurisdiction under U.S. Code §§ 101, and supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. § 1367.

18.     Additionally, this Court has original jurisdiction over this controversy for misappropriation of trade secrets claims pursuant to 18 U.S.C. § 1836(c), and diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and there is a complete diversity of citizenship between the Parties.

FIRST AMENDED COMPLAINT- 3

19.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) because (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have, had, or will have had effect in this District; (c) the written agreements identified and described more thoroughly below were entered into by the Parties in this District; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

20.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more defendants are amenable to personal jurisdiction in this District.

**MMAS Research LLC, Morisky Widget and MMAS-8**

21.     Dr. Donald Morisky (interchangeably referred to herein as "Dr. Morisky," "Morisky" and "Donald Morisky") relocated his California business, MMAS Research LLC to Washington State in December 2016.

22.     It was registered as MMAS Research LLC with the Washington Secretary of State's Office on December 21, 2016.

23.     Dr. Morisky, Steven Trubow and Dustin Machi collaborated on the creation of the Morisky Widget MMAS-8, and MMAS-4 software beginning in November 2016 and finished in February 2017. *See* Exhibit 1.

24.     The Morisky Widget was first published on the Internet in February 2017. The copyright was held by Dustin Machi, an individual working as a software engineer at Virginia Tech University who created the source code for the Morisky Widget until he assigned it to MMAS Research LLC in December 2019. *See* Exhibit 2.

25.     Between February 2017-July 2019 MMAS Research LLC licensed the Morisky Widget software to over 200 pharmaceutical firms, hospitals, and universities worldwide.

26.     In January 2019, while a member of MMAS Research LLC, Donald Morisky formed a competing company called Morisky Medication Adherence Research LLC in Nevada, which developed a medication adherence software similar to the Morisky Widget.

27.     In July 2019, Donald Morisky voluntarily left and relinquished his 50% ownership interest in MMAS Research LLC, leaving Steve Trubow 100% owner of MMAS Research LLC and the sole manager and Licensor of the 200+ Morisky Widget license agreements. *See* Exhibit 3.

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

28.    At the same time, in July 2019, Donald Morisky voluntarily relinquished and gave up his ownership in MMAS Research, and to the Morisky Widget software and Morisky Widget website.

29.    From September 2019 until December 2020, MMAS Research LLC, Trubow, Morisky and MMAR LLC were engaged in litigation in Washington State and Nevada. The 2019 litigation filed in the King County Courts filed against Dr. Morisky by MMAS Research LLC was for tortious interference. Dr. Morisky moved the case to the Western Washington Federal District Court based on a copyright infringement complaint against MMAS Research LLC. The Washington Federal District Court remanded the case back to the King County Superior Court dismissing Morisky's copyright claim. Morisky then refiled a second copyright claim against MMAS Research LLC in May 2019 in Nevada. The CR2A signed by Morisky and Trubow in December 2020 states each of the Parties agree to dismiss the claims asserted in the Washington lawsuit and Nevada federal district court lawsuit now pending against each other with prejudice and without any award of costs or attorneys' fees in any action. *See* Exhibit 4.

### The Morisky Widget Copyright

30.    To protect the integrity of the Morisky Widget against counterfeiting, infringing, or unauthorized use, Plaintiff filed for and obtained a certificate of registration for the Morisky Widget from the United States Copyright Office. See Exhibit 5.

31.    The Morisky Widget copyright, as registered, is comprised of and includes the Morisky Widget diagnostic assessments, the MMAS-4, MMAS-8 among other diagnostic assessments.

32.    As to the Morisky Widget copyright registration. Plaintiff has complied in all respects with the Copyright Act and Digital Millennium Copyright Act, as well as all other applicable laws.

33.    Plaintiff has been and continues to be the author and exclusive holder of all rights, title, and interest in, and copyright to the Morisky Widget.

### Plaintiff's Successful Defense of Rights to the Morisky Widget Copyright

34.    In September 2021, Donald Morisky filed case no. 2:21-CV-1301-RSM-DWC, a copyright infringement and breach of contract (CR2A) complaint against MMAS Research LLC in the United States District Court, Western District of Washington at Tacoma.

FIRST AMENDED COMPLAINT- 5

On April 15, 2022, Morisky's motion for a temporary restraining order against MMAS Research from using the Morisky Widget was dismissed by the Court.

35.    In that dismissal, United States Magistrate Judge David W. Christel of the United States District Court, Western District of Washington at Tacoma, issued a Report and Recommendation which acknowledged that "MMAS Research LLC holds the Copyright Registration to the Morisky Widget…." Exh. 1 on page 6, line 22.  Further, the Magistrate Judge acknowledged that "the Morisky Widget is exclusively in [MMAS Research LLC's] control…" Id. at page 8, line 16. See Exhibit 13.

36.    The Ninth Circuit Court of Appeals issued a memorandum on March 13, 2024, in case No. 23-55202 confirming that MMAS Research owned the copyright to the Morisky Widget, stating:

> The district court erred in concluding that MMAS lacked standing to sue for copyright infringement. The district court found that a 2020 preliminary settlement agreement (CR2A) from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky Widget from MMAS to Dr. Morisky. But that agreement—which simply outlined terms MMAS and Dr. Morisky "desire[d] to consent and agree to" sometime in the future—was never finalized. MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget. Similarly, because the agreement was a private contract between Dr. Morisky and MMAS, and because it was never finalized, it was not an abandonment of MMAS's right to sue Charité for copyright infringement. *See* Exhibit 6.

### Licensing of the Morisky Widget

37.    Plaintiff permits the use of the Morisky Widget, licensing its copyright and diagnostic assessments, only through a licensing program memorialized in a licensing agreement. Under the licensing program, use of the Morisky Widget source code is authorized by Plaintiff and only in compliance with Plaintiff's strict coding and scoring in the Morisky Widget.

38.    Restrictions on the use and disclosure of the coding and scoring of the Morisky Widget diagnostic assessments are explicit limitations of the licenses.

39.    The terms of the licenses granted by Plaintiff are designed not only to protect federally registered rights, but also to protect patients and health care providers from counterfeit or scientifically incorrect diagnostic assessments and inaccurate results.

FIRST AMENDED COMPLAINT- 6

40.     All Morisky Widget licensees are explicitly required to score and code diagnostic assessments, MMAS-4 and MMAS-8 tests in the Morisky Widget and to be trained and certified on the use of the Morisky Widget before administering it to patients. The reasons for training and certification are that whereas the traditional MMAS-8 test was a measure of medication adherence, the Morisky Widget MMAS-8 is differentiated as a diagnostic assessment of medication behavior.

41.     Among the hundreds of pharmaceutical firms, hospitals, and universities that Trubow and Morisky licensed, trained, and certified was Boston Children's Hospital, Jacob Hartz, and Hannah Palfrey. *See* Exhibit 4.

BMS Italy
Bayer NL
Berlin Chemie
Boehringer Ingelheim China
Boehringer Ingelheim GmbH
Boston Children's Hospital
Bristol University
Bristol-Myers Squibb USA
Brussels Free University School of Public Health

(Excerpt from CR2A Exhibit 4)

### BCH Morisky Widget License.

42.     On September 4, 2019, Boston Children's Hospital (BCH) executed a perpetual MORISKY Widget MMAS-8 license with MMAS Research LLC (MMAS) of Bellevue Washington. *See* Exhibit 8.

43.     The BCH MMAS Morisky Widget License specified that Licensee BCH can use the Morisky Widget, Morisky Kiosk Apple I Phone APP, and the Morisky API to administer Morisky Widget MMAS tests. With Licensor approval, BCH can use MMAS paper or electronic questionnaires, but all scoring and coding must be done in the Morisky Widget.

### Background and Leadup to the Morisky Widget License Agreement as Signed and Executed between BCH and Dr Morisky

44.     On July 29, 2018, Dr. Jacob Hartz, the director of the preventive cardiology clinic at Boston Children's Hospital and an instructor in pediatrics at Harvard Medical School wrote to Dr. Donald Morisky:

> I am an early career pediatric cardiologist at Boston Children's Hospital and applying for a NIH Career Development Award to improve medication adherence in adolescents with familial

FIRST AMENDED COMPLAINT- 7

hypercholesterolemia. In an effort to accurately identify patients, we were wondering if the MMAS-8 would be appropriate. _If it could be, what training would we need and what licensing would be needed as well_. *See* Exhibit 22.

45.     On the same day, July 29, 2018, Dr. Morisky responded to Dr. Hartz's (above) request for an MMAS-8 license and the required training and certification, writing:

> Thank you Dr. Hartz for your interest in using my copyrighted and trademarked intellectual property (IP), the MMAS diagnostic adherence assessment instrument. We are currently in Asia conducting training and certification for hundreds of practicing clinicians who are implementing the correct use _of the Morisky Widget_ into the patient health-care delivery system. We plan to be on the east coast in September and October so please fill out the following questionnaire so we can best serve you. My Chief Investigator, Mr. Steve Trubow, will be able to assist you in obtaining your MMAS License. _Below are the new training and certification requirements_.



**Morisky Widget & Morisky Medication Adherence Protocol Training**

MMAS Fundamentals
A. Subjective and Objective Measurement of Adherence
B. Social Desirability, Response Bias
C. Validity, Sensitivity and Specificity, MMAS Condition and Medication Specific
D. Criterion Related Validity, Patient Outcomes
E. Baseline and Follow up Assessments, Never One-Off
F. Diagnosis of Medication Taking Behavior, Intentional and Unintentional Non-Adherence
G. Translational Research, Sustainability, Self Management.
H. Polypharmacy
Morisky Medication Adherence Protocol
A Beneficence
B Evidence Based
C Determinants of Non-Adherence
D Chronic Care Mgmt. and Medication Reconciliation
E Tailored and Targeted Intervention
F Disease  Control, Remission of Mental Health and Substance Use Disorders

*See* Exhibit 22.

46.     Neither Morisky nor Trubow heard from Dr. Hartz until August 7, 2019, when Hartz wrote, "Steve, I am sorry that I was not able to complete this (application) earlier, but we did not know if we had funding for the study, which we do now. _I have completed the application for the Morisky Widget below_," accompanied by the following

Morisky Widget APPLICATION Date August 7, 2019

Completed by Jacob Hartz, MD, MPH

Name and Address of Organization: Boston Children's Hospital

Point of Contact: Jacob Hartz (617-355-0955, fax: 617-730-0600)

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

When do you want to begin using the perpetual Morisky Widget license? January 2020

Are there any third-party organizations that will operate the <u>Morisky Widget?</u> No

How many <u>Morisky Widget diagnostic assessments</u> in total do you plan to administer? 80 patients (4-5 times each)

How do you plan to administer <u>the Morisky Widget diagnostic assessments</u> by paper or the Morisky Widget or Morisky Kiosk Apple I-Phone App? We would like to use it by paper and iPhone app if possible. If only one option is available, we would prefer paper.

What health conditions, diseases and specific medications are you trying to assess for medication adherence? <u>Adolescents with Familial Hypercholesterolemia who are taking a statin.</u>

Please describe in detail the interventional research design or clinical protocol for using the Morisky Widget? The Morisky Widget will be used to measure baseline adherence, adherence after receiving the first of two interventions, following a "wash-out" period, and finally at the end of the intervention. If possible, we would also use the Morisky Widget to measure adherence 6 months after the intervention ends to determine if there is a "legacy effect." statin, type and dose of statin prescribed, and if any adverse effects are present.

How many times will each patient be given the Morisky Widget? We expect each patient to use it 4 times. Possibly five if we are able to extend the trial. *See* Exhibit 23.

47.    Trubow, having received Hartz's application for a perpetual Morisky Widget license wrote:

Jake, The offer of a free perpetual Morisky Widget license for Boston Children's Hospital is dedicated to my sister Sandra Fairbank of Cambridge who has supported the Morisky Widget MMAS since the outset. The cost of the training and certification if it can be scheduled in Boston in late October or early November 2019 will be $5000.00. After certification, MMAS Research LLC will provide Boston Children's Hospital with <u>25,000 complimentary Morisky Widget MMAS condition and medication specific tests</u> for clinical applications or translational, sustainable interventional studies for children with chronic and infectious disease. If you wish us to prepare a draft license, please let me know or if you have any other questions. Best  Steve in Tokyo

48.    On August 8, 2019, Hartz wrote to Trubow:

FIRST AMENDED COMPLAINT- 9

This sounds great. I love that your sister is involved. We should all have dinner! Let's draft a license! -Jake Jacob Hartz, MD, MPH Department of Cardiology  Boston Children's Hospital. *See* Exhibit 23.

49.    In November 2019, after the acceptance of the application BCH personnel were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8. Dr. Hartz and Ms. Palfrey customized a Morisky Widget MMAS-8 medication and condition specific test for the BCH study.

50.    MMAS Research LLC traveled to Boston at its own expense, to train and certify Jacob Hartz and his colleagues on BCH use of the Morisky Widget software to create a condition and medication assessment of medication taking behaviors for the Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents study.



51.    Defendants Jacob Hartz and Hannah Palfrey, pictured above, were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8. The training included certification on the Morisky Widget trade secret scoring and coding algorithm and test editor/translation algorithm.

52.    Hartz and Palfrey used the Widget's test editor algorithm to customize a Morisky Widget MMAS-8 medication and condition specific test for the BCH study.

53.    Hartz and Palfrey clearly understood the differences between the Morisky Widget MMAS-8 tests published in 2017 and the original MMAS-8 tests published in the Journal of Clinical Hypertension article in 2008 (which was retracted for academic fraud in 2023).

FIRST AMENDED COMPLAINT- 10

### The Night and Day Differentiation of the 2006 MMAS-8 and from the 2017 Morisky Widget MMAS-8

54.    It is important to distinguish the differences between the traditional MMAS-8 scoring and coding criteria and that of the Morisky Widget. It is also important to identify that the foregoing does not apply to the Morisky Widget MMAS-8 because unlike the never changing static 8 questions of the MMAS-8, the Morisky Widget MMAS-8 assessment is dynamic with constantly changing MMAS-8 questions that are condition and medication specific. See Exhibit 7.

55.    Beginning with the publication of the Morisky Widget on www.morisky.org in January 2017, Morisky abandoned the static 2006 MMAS-8 test and instead was only willing to license the 2017 Morisky Widget MMAS-8 for its greater validity, much higher sensitivity, and specificity than its 2006 predecessor.

56.    The 2006 MMAS-8 was simply a measure of medication adherence; whereas, the 2017 Morisky Widget was a diagnostic assessment of medication taking behavior with the ability to not only measure raw medication adherence, but able to identify WHY the patient was non-adherent to their medication regimen for their specific health condition.

57.    The original, static MMAS-8 comprises the following questions:

| |
|---|
| 1.  Do you sometimes forget to take your <health condition> pills? |
| 2.  People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your <health condition> medicine? |
| 3.  Have you ever cut back or stopped taking your medication without telling your doctor, because you felt worse when you took it? |
| 4.  When you travel or leave home, do you sometimes forget to bring along your <health condition> medication? |
| 5.  Did you take your <health condition> medicine yesterday? |
| 6.  When you feel like your <health condition> is under control, do you sometimes stop taking your medicine? |
| 7.  Taking medication everyday is a real inconvenience for some people. Do you ever feel hassled about sticking to your <health condition> treatment plan? |

58.    As one can see, the questions are limited to medications that are administered through "pills" and daily ("yesterday").

FIRST AMENDED COMPLAINT- 11

59.     This presented a problem when diagnosing medication taking behaviors in that not all treatments are administered through daily taking of pills.

60.     Using the Morisky Widget Software test editor, a user can enter a health condition, medication and dosing information for a medication protocol, and the Morisky Widget software algorithm will create a specific Morisky Widget MMAS-8 assessment accordingly, with the dynamically adjusted language regarding both condition and medication and timing of testing to be measured.

61.     This is exactly what was needed by BCH, which was studying adherence in patients taking cholesterol medication according to a non-daily treatment plan.

62.     In Defendant's BCH MTD, they claim that there was no copyright infringement because "MMAS Research does not own the copyright in the version of the of the MMAS Dr Hartz administered. If the Hospital infringed any copyright, it infringed the copyright in the older, paper-based MMAS-8—the copyright that MMAS Research does not allege it owns. Hartz asked the questions from the 2006 MMAS-8 with only minor changes.  <u>The MMAS-8 test has eight simple questions. Seven are yes/no questions, for example, "Do you sometimes forget to take your <health condition> pills?" and "Did you take all your <health condition> medicine yesterday?" (Compl. ¶ 72). The eighth question asks, "How often do you have difficulty remembering to take all your medications?" and has several possible answers, from "Never/rarely" to "All the time" (Id.).</u>

63.     In fact, during their training and certification, Defendants Hartz and Palfrey created a Morisky Widget MMAS-8 condition and medication(s) specific assessment that was night and day different than the 2006 MMAS-8 test. Below is a screenshot of the BCH Morisky Widget test editor which shows the 2006 MMAS-8 and 2019 Morisky Widget MMAS-8 tests side by side. Even an uninformed observer can hardly miss the sharp contrast between the two MMAS-8 tests!

FIRST AMENDED COMPLAINT- 12

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

*See* Exhibit 27

64.     Additionally, the Morisky Widget MMAS-8 Test measure factors that the original MMAS-8 never measured. Several questions of the Morisky Widget MMAS-8 Test are used to determine whether a patient's nonadherence to a medication protocol was intentional or unintentional.

65.     The Morisky Widget source code incorporates trade secret scoring and coding algorithms and a trade secret editor translator shown above whose modification of Morisky Widget MMAS-8 condition and medication specific questions and scoring criteria  derives economic value due to their confidential nature. See Exhibit 27

66.     The Morisky Widget source code contains trade secret scoring, and coding, algorithms that determines whether a patient's nonadherence is intentional or unintentional.  .

67.     In their Morisky Widget license BCH and Jacob Hartz agreed that coding and scoring criteria of the Morisky Widget can never be divulged in any publication, presentation, or website without written permission from MMAS. See Exhibit 8

68.     In their Morisky Widget license BCH and Jacob Hartz agreed that changes or any modifications to the wording, phrasing, or scoring of the MMAS require certification on the Morisky Widget editor and translator. See Exhibit 8

FIRST AMENDED COMPLAINT- 13

69.     BCH, Jacob Hartz and Hannah Palfrey breached their duty to maintain secrecy by misappropriating and using the Morisky Widget source code trade secrets without the Plaintiff's consent.

**Morisky and MMAR Bad Faith, Phase Out and Replacement of the Morisky Widget**

70.     Contrary to his commitments in the CR2A, including the BCH License, Morisky reversed course from his obligations and began public campaign to terminate all of the 200 Morisky Widgets Licenses in the CR2A.

71.     Morisky had previously agreed in the CR2A to provide full access to the Morisky Widget and support as needed to all licenses as long as their licenses to the Morisky Widget are in effect Morisky began to back out of these obligations.

72.     On October 31, 2021, Don Morisky wrote on his www.moriskyscale.com website that he has phased out the Morisky Widget. See Exhibit 9.

73.     Morisky's "phase out" was pernicious and in bad faith and contravention of his CR2A pledge to provide full access and to all licenses as long as their licenses to the Morisky Widget are in effect.

74.     The deceitfulness of the "phase out" progressed into treachery and tortious interference when Morisky declared all Morisky Widget licenses illegal and pledged to replace the Morisky Widget with his own MMAR LLC platform.

75.     The intensity of the treachery and inference increased to legal threats. On April 21, 2022, Morisky's attorney, Christopher Austin wrote a letter on that was both published on www.moriskyscale.com and also delivered by email to the 200 Morisky Widget licensees in Exhibit 4 of the CR2A. which included BCH. Austin wrote:

> ANY PERSON THAT USES OR LICENSES THE MORISKY WIDGET, MMAS-4 SCALE OR MMAS-8 SCALE WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR. MORISKY WILL BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW FOR COPYRIGHT INFRINGEMENT. *See* Exhibit 10.

FIRST AMENDED COMPLAINT- 14

*See Exhibit 10.*

76.     These communications were made despite Morisky's awareness that MMAS was authorized to service the BCH Morisky Widget license under the terms of the CR2A; See Exhibit 4.

77.     According to Defendant BCH Motion to Dismiss, Document 21, "In April 2022, Dr. Morisky's lawyer wrote a letter to Morisky Widget licensees, including the Hospital,4 asserting that Dr. Morisky owned the Widget copyright and implicitly threatening legal action against anyone who dealt with Trubow. (Compl. ¶ 54 & Ex. 16). This was a source of "confusion for Morisky Widget licensees" (Compl. ¶ 55), evidently including the Hospital."(footnote 4) *The complaint is silent about who received the letter, but it was addressed to Dr. Morisky's "colleagues" (Compl. Ex. 16)* <u>*and in fact went to Dr. Hartz.*</u>

78.     Plaintiff did not learn that BCH or Hartz had received the April 2022 Austin letter until they read the BCH MTD.

79.      By emailing the Austin Letter to Widget licensees, it is clear that Morisky intentionally tried to terminate existing Widget licenses. Dr. Jacob Hartz received the Austin letter in April 2022, according to the BCH Motion to Dismiss.

**<u>BCH Breach of its Morisky Widget License in Parallel with Threats, Infringement and Other Misdeeds by Morisky</u>**

80.     BCH's license with MMAS Research requires BCH to score and code all MMAS-8 tests in the Morisky Widget software.

81.     To date, that has not happened.

82.     On July 3, 2022, Trubow and MMAS Research—unaware that Dr. Hartz received the threatening letter from Donald Morisky's attorney—wrote an email to Jacob Hartz and

FIRST AMENDED COMPLAINT- 15

Hannah Palfrey to address breaches of the BCH Morisky Widget license, pointing to BCH's failure to include the Morisky Widget licensing, trademark, and copyright information on the National Institutes of Health's ClinicalTrials.gov posting for NCT04458766 The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents (the BCH Clinical Trials Article"). *See* Exhibit 11.

83.    On July 4, 2022, Jacob Hartz responded to Trubow (with cc to Hannah Palfrey) stating that BCH had updated the BCH Clinical Trials Article for NCT04458766, as shown below, listing MMAS Research LLC as a collaborator on the study. *See* https://classic.clinicaltrials.gov/ct2/history/NCT04458766?V_5=View#StudyPageTop

**Sponsor/Collaborators**

Sponsor:  Boston Children's Hospital

Responsible Party:  Principal Investigator
Investigator: Jacob Hartz
Official Title: Staff Cardiologist and Instructor of Pediatrics
Affiliation: Boston Children's Hospital

Collaborators:  Wellth Inc.
MMAS Research LLC

### Trade Secret Infringement by BCH

84.    Plaintiff reasonably assumes, and is likely to show at trial, that such change was caused by Defendant Morisky's influence over BCH's employee Dr. Hartz, leading Dr. Hartz to change the copyright attribute information for the appropriate MMAS test used for the study (the dynamically created cholesterol- and non-daily-focused Morisky Widget MMAS-8 Test instead of the original, static MMAS-8 Test).

85.    In addition to the breach of the terms of BCH Morisky Widget License Agreement, BCH, Hartz and Palfrey misappropriated trade secrets therein relating to the Morisky Widget source code scoring and coding algorithm which Hartz and Palfrey learned during the training and certification process on the use of the Morisky Widget.

86.    One of the most important and protected Morisky Widget trade secrets is the scoring and coding algorithm that determines the intentionality of medication non-adherence. This trade secret Morisky Widget software algorithm has never been divulged.

87.    Fortunately, the United States Copyright Office permits registration applicants to modify their software code deposits in ways to protect the trade secrets.

FIRST AMENDED COMPLAINT- 16

88.    The  deposit of the Morisky Widget source code in the United States Copyright office was redacted to protect the trade secret Morisky Widget scoring and coding algorithm. *See* Exhibit 26.

89.    On July 5, 2022, Dr Hartz and Ms. Palfrey sent MMAS Research LLC a copy of a Morisky Widget MMAS-8 paper test they were administering to patients as a screener. *See* Exhibit 24.

90.    This unauthorized Morisky Widget MMAS-8 "screener met BCH Study's AIM 1.1 enrollment criteria. The pre-enrollment Morisky Widget MMAS-8 screener shown below is referenced as APPROACH AIM 1.1 in BCH ClinicalTrials Report on August 21, 2024, https://clinicaltrials.gov/study/NCT04458766?term=jacob%20hartz&rank=1&tab=history&a=6 #version-content-panel (APPROACH Aim 1.1 The investigators will determine the baseline adherence level in adolescents with FH prescribed a statin using the Morisky Medication Adherence Scale (MMAS). Patients who are found to have low adherence according to the MMAS in Aim 1.1 will be enrolled into an intervention using the Wealth® mobile health application).

FIRST AMENDED COMPLAINT- 17

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Patient name:                                               Date:
MRN:

| | | |
|---|---|---|
| 1) | Do you sometimes forget to take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 2) | People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 3) | Have you ever cut back or stopped taking your prescription cholesterol medication without telling your doctor because you felt worse when you took it? | ☐ YES<br>☐ No |
| 4) | When you travel or leave home, do you sometimes forget to bring along your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 5) | Did you take all your prescription cholesterol medication last time you were supposed to take it? | ☐ Yes<br>☐ NO |
| 6) | When you feel like your symptoms are under control, do you sometimes stop taking your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 7) | Taking medicine every day is a real inconvenience for some people. Do you ever feel hassled about sticking to your cholesterol treatment plan? | ☐ YES<br>☐ No |
| 8) | How often do you have difficulty remembering to take all your prescription medications to lower your cholesterol level? | ☐ Never/rarely<br>☐ Once in a while<br>☐ Sometimes<br>☐ Usually<br>☐ ALL THE TIME |

How many answers did they give that are in **BOLD UPPERCASE?** _____ (≥ 2 → ELIGIBLE)

91.     Hartz and Palfrey administered scored and coded a paper Morisky Widget MMAS-8 test that utilized and divulged scoring and coding criteria. *See* the Morisky Widget MMAS-8, *below*. On the bottom, it states, "*How many answers did they give that are in Bold Uppercase (YES) >2 ELIGIBLE. (except for question #5 where the Morisky Widget scoring and coding is reversed.)*." *See* Exhibit 24.

92.     Additional scoring and coding criteria is divulged on the BCH Morisky Widget MMAS-8 paper test or MMAS-8 question # 5, the scoring and coding is reversed, and NO is bold not Yes. *See* Exhibit 24.

FIRST AMENDED COMPLAINT- 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Jacob Hartz Admission of  Breaching the BCH Morisky Widget License**

93.    In the BCH Morisky Widget License, Jacob Hartz agreed any modifications to the wording, phrasing, or scoring of the MMAS, require certification on the Morisky Widget editor and translator. *See Exhibit 8.*

94.    On July 6, 2022, Jacob Hartz wrote to Trubow:

> We have administered 4 (MMAS-8) tests. Our enrollment protocol
> was answering a positive (i.e., consistent with lower adherence) to
> at least one question. (emphasis added). If any of this is serious
> breach of contract and you feel it necessary to end our agreement,
> we would understand. We certainly did not mean to do anything
> incorrectly and it was always our intention to follow our contract
> entirely. It would be a tremendous loss to our study, but we want to
> respect our agreement and your organization. *See* Exhibit 25.

**BCH Breach and DMCA Infringement in Conjunction with Morisky/ MMAR LLC, an Unregistered Fictitious DBA**

95.     On January 10, 2023, Jacob Hartz removed the MMAS Research notification from ClinicalTrials.gov without the Licensor's permission. BCH   updated the clinicaltrials.gov website for NCT04458766 with a notification that the  MMAS-8 was used with permission from Dr. Morisky and licensed by MMAR LLC. The MMAS-8 scale, content, name and trademarks are protected by US Copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR LLC. Type: MMAS-8 with permission from Dr Donald Morisky. as written below: URL: http://www.moriskyscale.com.



96.    The MMAS-8 Scale, content, name, and trademarks are protected by US copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR, LLC. *See* Exhibit18.

97.    On January 24, 2024, BCH again updated the ClinicalTrials.gov website for NCT04458766 and included the following notification.

FIRST AMENDED COMPLAINT- 19

98.     The MMAS-8 scale, content, name and trademarks are protected by US Copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR LLC.

99.     Upon information and belief, the MMAR LLC's license with BCH gave MMAR supervisory/control rights that allowed them to compel BCH to place false copyright and licensing information on the Clinical Trials.gov website.

100.     Defendant Morisky's registered Nevada LLC is Morisky Medication Adherence Research LLC, not MMAR LLC. The copyright notification and license  for NCT04458766, lists "MMAR LLC," which is an unregistered firm fictitious name (FFN).

101.     **MMAR LLC is not a legal entity**. According to Nevada Revised Statutes (NRS) CHAPTER 602 - DOING BUSINESS UNDER ASSUMED OR FICTITIOUS NAME, Donald Morisky's Nevada registered company Morisky Medication Adherence Research LLC was required to file a fictitious firm certificate (FFC) in Clark County NV, no later than 1 month after the commencement of business under an assumed or fictitious name. To date, according to the Clark County NV Clerk's Office, there has not been any FFC issued to Morisky Medication Adherence Research LLC, for MMAR LLC.

102.     BCH's contracts/licenses/copyright notifications with MMAR LLC on the ClinicalTrials.gov website are not legal contracts or legal documents. In Nevada, using an unregistered fictitious name in a contract or legal document is a violation of Chapter 602 of the Nevada Revised Statutes (NRS): It is a misdemeanor to use an unregistered fictitious name in a contract or legal document under NRS 602.090. See Exhibit 18.

103.     According to Nevada Revised Statutes (NRS) CHAPTER 602 - DOING BUSINESS UNDER ASSUMED OR FICTITIOUS NAME, Morisky's Nevada LLC was required to file a fictitious firm certificate (FFC) in Clark County NV, no later than 1 month after the commencement of business under an assumed or fictitious name. To date, according to the Clark County NV Clerk's Office, there has not been any FFC issued to Morisky Medication Adherence Research LLC, for MMAR LLC.

104.     Moreover, in Nevada, using an unregistered fictitious name in a contract or legal document is a violation of Chapter 602 of the Nevada Revised Statutes (NRS): In Nevada, it is a misdemeanor to use an unregistered fictitious name in a contract or legal document under NRS 602.090.

FIRST AMENDED COMPLAINT- 20

105. The replacement of BCH licensed and copyright Morisky Widget MMAS-8 medication specific tests with Morisky's 2006 copyrighted generic condition tests as published on the ClinicalTrials.gov website constitutes willful infringement of MMAS Research LLC registered Morisky Widget copyright. Below are copies of the BCH Morisky Widget MMAS-

Patient name:                                                    Date:
MRN:

| | | |
|---|---|---|
| 1) | Do you sometimes forget to take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 2) | People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 3) | Have you ever cut back or stopped taking your prescription cholesterol medication without telling your doctor because you felt worse when you took it? | ☐ YES<br>☐ No |
| 4) | When you travel or leave home, do you sometimes forget to bring along your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 5) | Did you take all your prescription cholesterol medication last time you were supposed to take it? | ☐ Yes<br>☐ NO |
| 6) | When you feel like your symptoms are under control, do you sometimes stop taking your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 7) | Taking medicine every day is a real inconvenience for some people. Do you ever feel hassled about sticking to your cholesterol treatment plan? | ☐ YES<br>☐ No |
| 8) | How often do you have difficulty remembering to take all your prescription medications to lower your cholesterol level? | ☐ Never/rarely<br>☐ Once in a while<br>☐ Sometimes<br>☐ Usually<br>☐ ALL THE TIME |

created MMAS-8 medication and condition specific test and Morisky's 2006 copyrighted generic condition test that is filed in the United States Copyright office. See Exhibits 21, 24.

FIRST AMENDED COMPLAINT- 21

**Morisky Medication Adherence Scale™ (8-Item MMAS™ Instrument)**
Copyright 2006 Donald E. Morisky.  All rights reserved.

You indicated that you are taking medication for your <health condition .
Individuals have identified several issues regarding their medication-taking
behavior and we are interested in your experiences.  There is no right or wrong
answer.  Please answer each question based on your personal experience with your
<health condition> medication.

| (Please check your response below) | | |
|---|---|---|
| | **No** | **Yes** |
| 1. Do you sometimes forget to take your <health condition> pills? | | |
| 2.  People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your <health condition> medicine? | | |
| 3. Have you ever cut back or stopped taking your medication without telling your doctor, because you felt worse when you took it? | | |
| 4. When you travel or leave home, do you sometimes forget to bring along your <health condition> medication? | | |
| 5. Did you take your <health condition> medicine yesterday? | | |
| 6. When you feel like your <health condition> is under control, do you sometimes stop taking your medicine? | | |
| 7. Taking medication everyday is a real inconvenience for some people. Do you ever feel hassled about sticking to your <health condition> treatment plan? | | |

8. How often do you have difficulty remembering to take all your medications?
**(Please circle your response below)**

Never/Rarely………………………………………..4

Once in a while……………………………………..3

Sometimes…………………………………………..2

Usually……………………………………………...1

All the time………………………………………...0

## **FIRST CAUSE OF ACTION**

### **Breach of Contract**

### **(As To Defendants BCH, Jacob Hartz, And Hannah Palfrey)**

106.   MMAS Research realleges each allegation contained in the preceding paragraphs.

107.   This cause of action for breach of contract is established by the prima facie elements of (1) existence of contractual obligation and (2) facts demonstrating breach thereof.

FIRST AMENDED COMPLAINT- 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

108.   A contractual obligation was established by the execution of a license agreement between Defendants BCH and Plaintiff, ("the License Agreement), which License Agreement permitted use of the Morisky Widget under specific conditions.

109.   Under the License Agreement, BCH as licensee is required to score and code Morisky Widget MMAS-8 tests only with the Morisky Widget

110.   In the License Agreement, BCH and MMAS mutually agreed that if "BCH divulges Morisky Widget scoring and coding criteria it will be considered a breach of the Morisky Widget license and MMAS [Research] will have the right to suspend or terminate the Agreement."

111.   BCH created a condition and medication specific Morisky Widget MMAS-8 test in the Morisky Widget.

112.   The BCH Morisky Widget License Agreement specifically requires "Licensor approval" for BCH to "use MMAS paper or electronic questionnaires."

113.   BCH administered a paper Morisky Widget MMAS-8 to patients without any permission by MMAS;

114.   The Morisky Widget MMAS-8 paper test shown below was created by BCH and given as a paper test to patients and scored outside of the Morisky Widget; yet the License Agreement specifically requires that all "scoring and coding must be done in the Morisky Widget."

FIRST AMENDED COMPLAINT- 23

Patient name:                                                Date:
MRN:

| 1) | Do you sometimes forget to take your prescription cholesterol medication? | ☐ YES<br>☐ No |
|---|---|---|
| 2) | People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 3) | Have you ever cut back or stopped taking your prescription cholesterol medication without telling your doctor because you felt worse when you took it? | ☐ YES<br>☐ No |
| 4) | When you travel or leave home, do you sometimes forget to bring along your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 5) | Did you take all your prescription cholesterol medication last time you were supposed to take it? | ☐ Yes<br>☐ NO |
| 6) | When you feel like your symptoms are under control, do you sometimes stop taking your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 7) | Taking medicine every day is a real inconvenience for some people. Do you ever feel hassled about sticking to your cholesterol treatment plan? | ☐ YES<br>☐ No |
| 8) | How often do you have difficulty remembering to take all your prescription medications to lower your cholesterol level? | ☐ Never/rarely<br>☐ Once in a while<br>☐ Sometimes<br>☐ Usually<br>☐ ALL THE TIME |

How many answers did they give that are in **BOLD UPPERCASE?** _____ ($\geq 2 \rightarrow$ **ELIGIBLE**)

115.   The License Agreement required BCH to acknowledge MMAS Research as the owner of the Morisky Widget in all publications of testing results and provide attribution (including copyright and the trademark notices) per the License Agreement's Appendix 1.

FIRST AMENDED COMPLAINT- 24

116.   BCH has breached the License Agreement by using the Morisky Widget license in violation of the foregoing conditions by the following actions and failures to act and has accordingly violated those obligations:

117.   None of the publications by BCH that reference the MMAS tests were published with the proper attribution notices in Appendix 1 of the License Agreement.

118.   For at least these acts, Defendants have breached the License Agreement, and MMAS Research is entitled to damages determined at trial and specific relief for the unauthorized modification and disclosure of Morisky Widget MMAS-8 scoring and coding criteria.

### SECOND CAUSE OF ACTION
### Violation of DMCA (17 U.S.C. § 1202(b))
### (As To Defendants BCH and Jacob Hartz )

119.   MMAS Research reasserts and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

120.   Plaintiff is the sole author and exclusive owner of the copyright in the Morisky Widget MMAS-8 Test, which is registered with the United States Copyright Office under Registration No. TX 8-816-517. This registration encompasses all rights to the Morisky Widget MMAS-8 Test, including its software, coding, and scoring criteria.

121.   Without authorization, Defendants BCH, Hartz, and Palfrey created and utilized a version of the Morisky Widget MMAS-8 Test for the BCH Clinical Trial Study. In doing so, BCH, Hartz, and Palfrey reproduced, distributed, and displayed a derivative work that incorporates substantial and original elements of the copyrighted Morisky Widget MMAS-8 Test.

122.   By creating, distributing, and using their version of the Morisky Widget MMAS-8 Test, BCH, Hartz, and Palfrey has infringed upon Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. § 106, including but not limited to the rights to reproduce, prepare derivative works, distribute copies, and display the work publicly.

123.   The actions of BCH, Hartz and Palfrey were undertaken with knowledge of Plaintiff's copyright ownership and rights, or with reckless disregard for the same. BCH, Hartz and Palfrey's  actions were willful, intentional, and done with full knowledge that such actions infringed upon Plaintiff's exclusive rights.

FIRST AMENDED COMPLAINT- 25

124.   As a direct and proximate result of  BCH, Hartz and Palfrey's infringement, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to lost licensing fees, harm to its business reputation, and market confusion regarding the Morisky Widget MMAS-8 Test.

### THIRD CAUSE OF ACTION

### Violation of DMCA (17 U.S.C. §§ 1202(a), (b))

### (As To Defendants Morisky Medication Adherence Research LLC and Donald Morisky)

125.   MMAS Research realleges each allegation contained in the preceding paragraphs.

126.   At all times relevant hereto, MMAS Research and Morisky was the owner of all rights to assert copyright claims for the Morisky Widget.

127.   At all times relevant hereto, MMAS Research was the owner of all rights to assert copyright claims for the Morisky Widget MMAS-8 Test.

128.   MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq., and all other laws governing copyright, including the Digital Millennium Copyright Act (DMCA).

129.   The DMCA, under 17 U.S.C. § 1202(b), prohibits the removal or alteration of copyright management information (CMI) that identifies the work, its author, or copyright owner, if such actions are done with the intent to induce, enable, facilitate, or conceal infringement.

130.   The DMCA, under 17 U.S.C. § 1202(a), prohibits a person or business from providing false copyright information and or distributing false copyright information to conceal infringement.

131.   MMAR LLC, an illegal business entity placed false copyright and licensing information on the Clinical Trials.gov website that claimed an MMAS-8 license is available from MMAR LLC. See Exhibit 18.

132.

133.   Defendant Donald Morisky knowingly and intentionally induced Boston Children's Hospital (BCH) to alter the CMI in the BCH Clinical Trials Report, changing the attribution from MMAS Research's copyrighted Morisky Widget MMAS-8 Test to Defendant Morisky's original MMAS-8 Test.

FIRST AMENDED COMPLAINT- 26

134.   This alteration of the CMI was done with the intent to induce, enable, facilitate, and/or conceal infringement of MMAS Research's copyright in the Morisky Widget MMAS-8 Test.

135.   Pursuant to 17 U.S.C. §§ 502, 503, 504, and 505, MMAS Research is entitled to an award of actual damages, injunctive relief, the impoundment, and destruction of the infringing materials, and MMAS Research's attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**

**Tortious Interference With Contractual Relations**

**(As To Defendants Morisky Medication Adherence Research LLC and Donald Morisky)**

136.   MMAS Research realleges each allegation contained in the preceding paragraphs.

137.   At all times relevant hereto, MMAS Research was the owner of all rights to assert claims for the Morisky Widget.

138.   MMAS Research claims Donald Morisky and MMAR LLC intentionally interfered with the Morisky Widget license contract between Plaintiff and BCH.

139.   Interference with the Morisky Widget License:

   a) In December 2020, Morisky, MMAR LLC, Trubow, and MMAS Research LLC dismissed all previous complaints against each other with prejudice and signed a preliminary settlement agreement, CR2A. This agreement was meant to protect Plaintiff from Morisky interfering with existing Morisky Widget licenses.

   b) Despite these agreements, Morisky dishonored his legal obligations under the CR2A and tortiously interfered with Plaintiff's 200 CR2A Morisky Widget licenses, including Boston Children's Hospital's 2019 Morisky Widget license which Morisky himself authorized in 2018.

   c) The CR2A, through its provisions, was an enforceable contract that precluded Morisky from interfering with the CR2A Exhibit 4 Morisky Widget licenses, including BCH.

   d) Morisky was aware of his obligation under the CR2A terms and consented to memorialize the expectations in Exhibit 4 to the CR2A.

140.   Interference through Alteration of Copyright Management Information:

FIRST AMENDED COMPLAINT- 27

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

a) Defendant Morisky knowingly induced BCH to alter the copyright management information (CMI) in the BCH Clinical Trials Report, changing the attribution from MMAS Research's copyrighted Morisky Widget MMAS-8 Test to Defendant Morisky's original MMAS-8 Test.

b) This change in attribution terminated the contractual relationship between MMAS Research and BCH, and it misrepresented the Morisky Widget copyright ownership rights in the public domain, thereby causing confusion and damage to MMAS Research's reputation and contractual rights.

141.   As evidenced by the allegations and attached Exhibits, Morisky and his counsel have repeatedly and intentionally interfered with Trubow and MMAS Research's ability to perform the agreed terms of the CR2A and to effectuate settlements and licenses provided by the CR2A. This interference has resulted in MMAS Research losing expected revenue and suffering damage to its business reputation and contractual relationships, especially with BCH.

142.   Morisky and his counsel have interfered for an improper purpose or used improper means outside of the scope of the CR2A.

143.   Trubow and MMAS Research have lost expected revenue resulting from the intentional tortious actions of Morisky and his counsel in a sum to be proven at trial, but in a sum no less than $5,000,000.

144.   To the contrary, instead of meeting "*all ongoing obligations and responsibilities under all Morisky Widget License Agreements*" Donald Morisky and MMAR have tortiously interfered with Plaintiff's obligations to service, train and otherwise support BCH Morisky Widget license under the CR2A.

145.   Such interference has not only been entirely their obligations but has been directed to cause harm to Plaintiff. These tortious actions have included:

a) Attempts to destroy the Morisky Widget.

b) Interfere with existing licenses and sub-licenses concerning the Morisky Widget.

c) Direct threats to existing licenses.

d) Postings on www.moriskyscale.com and other websites that delivered general threats concerning use of the Morisky Widget; and

FIRST AMENDED COMPLAINT- 28

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

e)  Replacing attribution to the Morisky Widget and MMAS in publications. The tortious actions by Defendants Donald Morisky and MMAR have caused untold damage to Plaintiff, have destroyed ongoing efforts to support the licensees under the CR2A and have damaged the efforts to provide access to the significant benefits of the Morisky Widget to the medical community and to public health.

## FIFTH CAUSE OF ACTION

### Trade Secret Misappropriation

### (As To Defendants BCH, Jacob Hartz, and Hannah Palfrey)

146.   MMAS Research realleges each allegation contained in the preceding paragraphs.

147.   Plaintiff MMAS Research possesses and asserts trade secret rights in the software algorithms of the Morisky Widget MMAS-8 Test, which are valuable, not generally known to others, and have been subject to reasonable efforts by Plaintiff to maintain their secrecy.

148.   Under the Defend Trade Secrets Act 18 U.S.C.S. § 1839(3). A trade secret consists of three elements: (1) information; (2) that is valuable because it is unknown to others; and (3) that the owner has attempted to keep secret.

149.   The trade secrets BCH, Hartz, and Palfrey misappropriated include the copyrighted Morisky Widget source code scoring and coding as well as the trade secret editing and translation algorithms.

150.   Under the License Agreement between Plaintiff and Defendant BCH acknowledged and agreed that any modifications to the wording, phrasing, or scoring of the MMAS tests required the Licensor's written permission.

151.   As a direct and proximate result of BCH, Hartz and Palfrey's  conduct, MMAS Research has suffered and will continue to suffer severe competitive harm, irreparable injury, and significant damages, including but not limited to loss of competitive advantage and diminution in the value of the Morisky Widget MMAS-8 software.

152.   MMAS Research seeks damages in an amount to be proven at trial, as well as temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests.

153.   Plaintiff MMAS Research is entitled to an award of damages and attorney's fees and costs incurred as a result of BCH's misappropriation of trade secrets.

Persepolis Law, PLLC
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

154.   Plaintiff has asserted trade secret rights in information that is valuable, unknown to others and to which Plaintiff has kept secret. Namely Plaintiff possesses and asserts trade secret rights in the wording, phrasing, and scoring and coding algorithm of the Morisky Widget.

155.   To succeed in a claim for misappropriation of trade secrets under the Defend Trade Secrets Act, a plaintiff must prove: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Inteliclear, LLC v. ETC Global Holdings, Inc.*,9th Circuit Court of Appeals, 978 F.3d 653 (9th Cir 2020).

156.   As the direct and proximate result of BCH, Hartz and Palfrey's conduct, MMAS Research has suffered and, if this conduct is not stopped, MMAS Research will continue to suffer severe competitive harm, irreparable injury, and significant damage, in an amount to be proven at trial.

157.   Because MMAS Research's remedy at law is inadequate, MMAS Research seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests. Plaintiffs' business operates in a competitive market and will continue suffering irreparable harm and absent injunctive relief.

158.   Plaintiff MMAS Research has been damaged by the foregoing and is entitled to an award of damages and attorney's fees.

## PRAYER FOR RELIEF

159.   WHEREFORE, Plaintiff prays that this Court enter judgment in their favor and against Defendants as follows:

a) For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff MMAS Research's copyright in the Morisky Widget, in accordance with proof at trial.

b) For statutory damages for copyright infringement and/or willful copyright infringement by Defendants.

c) For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and

FIRST AMENDED COMPLAINT- 30

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

restraining them from: using the Widget Tests or the Morisky Widget copyrighted work until a license is obtained, including the maintenance on websites, posted on the Internet, or in any publication, articles, and reports described herein, or any such articles, publication, and reports in the future that use or reference the Widget Tests, MMAS-8, or the Morisky Widget;

d)   Order that Defendants file with this Court and serve upon Plaintiffs within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply.

e)   For costs of suit incurred.

f)   For attorneys' fees.

g)   For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law;

h)   For injunctive relief enjoining Defendant Morisky from further violations of the DMCA with respect to the Morisky Widget MMAS-8 Test;

i)   For statutory damages for the willful violation of the DMCA, in an amount to be determined at trial;

j)   For MMAS Research's costs and attorneys' fees incurred herein;

k)   For such other and further relief as the Court deems just and proper; and

l)   For such other and further relief, the Court deems just and proper.

Respectfully submitted this 21st day of October, 2024.

Persepolis Law, PLLC

By: _____

Ashkon Roozbehani
Massachusetts Bar # 694483
PERSEPOLIS LAW, PLLC
809 Washington St., Suite A
Newton, MA 02460
Telephone: (617) 431-4329
persepolaw@gmail.com
*Attorney for Plaintiff*
*MMAS Research LLC*

FIRST AMENDED COMPLAINT- 31