# EXHIBIT 1

**trubow1@gmail.com**

**Subject:**          FW: Requested changes in the Morisky Widget

**From:** Dustin Machi <dmachi@hapticscience.com>
**Date:** November 16, 2016 at 9:51:41 AM PST
**To:** DONALD MORISKY <dmorisky@ucla.edu>
**Cc:** Steve Trubow <trubow1@gmail.com>
**Subject: Re: Requested changes in the Morisky Widget**

Hi Don,

> Hi Dustin and here are some changes that need to be made on the
> Morisky Widget in which Steve and I went over today.  First, the name
> Morisky needs to be spelled correctly, which now reads "moriskey".

Where in the site are you seeing this?  I just took a look a moment ago and it seems to
be "morisky" everywhere so far, so if you can point me to where on the site you were
seeing this typo, I can fix.

> Next, the :Cancel box and Create Assessment Form- is not visible on the
> right side and needs to be moved up a space or two, Only the top of the
> box is visible.

I guess that the screen or the browser window is small and thats why you are seeing this
happen.  I will make it behave better.

> The Intentional and Unintentional scores are not correct. Currently,
> there are 3 and 5 and need to be changed to 4 and 4.  I have attached
> the listing of each item and its resultant categorization of "intentional
> and unintentional".

Is this a change from before?  It could certainly be a bug, but I copied the existing
morisky scoring code that we were using in MHIS. So if it is wrong here, then it is also
wrong in MHIS and has been wrong since that functionality was implemented.

> Finally, please make a screen name for Morisky and a password.

> Please send me the instructions for logging on.

Will do.  What is your preferred username?


Thanks,
Dustin



Thanks for all your hard work on this Widget.

Don

<Unintentional and Intentional Scoring Criteria_Generic2016.doc>

**trubow1@gmail.com**

**Subject:**              FW: updated protocol and workflow

**From:** Dustin Machi <dmachi@hapticscience.com>
**Sent:** Wednesday, December 7, 2016 6:01 AM
**To:** DONALD MORISKY <dmorisky@ucla.edu>
**Cc:** Steve Trubow <trubow1@gmail.com>
**Subject:** Re: updated protocol and workflow

When you launch the tests, they open in a new browser window/tab.  You can close that window after the test is complete.   Then, in the main window, you click on "assessments" at the top.   Then you will see a list of all the assessments.   You find the one you want to look at, and click the eye icon to open that assessment.  Then you will see that assessment.

I hope this helps.

Dustin



On Dec 7, 2016, at 8:41 AM, DONALD MORISKY <dmorisky@ucla.edu> wrote:

I got the widget to work but it does not go back to the results after I finish answering the MMAS questions.  Please send me the specific steps following data entry.

Thanks and sorry to bother you so early in the am....

On Wed, Dec 7, 2016 at 3:32 AM, Steve Trubow <trubow1@gmail.com> wrote:

Empty broswer

Sent from my iPhone

On Dec 6, 2016, at 10:35 PM, DONALD MORISKY <dmorisky@ucla.edu> wrote:

> hi Steve and Dustin and I am having problems in getting the widget to
> work.  I go to morisky.org and enter my email and password but
> nothing happens.  Please help,,,I have a presentation in the morining...
>
> Thanks,
>
> Don
>
> On Tue, Dec 6, 2016 at 7:07 PM, olympic labs <trubow1@gmail.com>
> wrote:
>
> <image001.jpg>

# EXHIBIT 2

## COPYRIGHT ASSIGNMENT

  This Assignment agreement is between Dustin Machi, an individual residing at 567 Wisteria Dr, Radford, VA 24141 ("Assignor"), and MMAS Research LLC, a Washington limited liability company located at 14725 NE 20th St. #D-53, Bellevue, WA 98007-3732 ("Assignee").

  WHEREAS Assignor is the creator and owner of the Work identified in **Exhibit A** and any and all modifications, versions, derivations, drafts and embodiments of such Work owned and/or created by Assignor (collectively, the "Work"). The Work was created with the parties' intent that ownership of copyright and all other rights to the Work would be owned by Assignee.

  Effective December 3, 2019, for good and valuable consideration, receipt of which is hereby acknowledged, Assignor assigns to Assignee all worldwide right, title and interest in and to the Work, including, but not limited to, the copyrights therein; the right to use the Works and copies and derivatives thereof in any manner Assignee chooses; and the right to all claims for any past, current or future infringement of the Work.

  This Assignment shall be binding upon and inure to the benefit of the parties and their respective successors, assigns, heirs and personal and legal representatives.

**ASSIGNOR**

Signature: _____

Name:  Dustin Machi

Dated:  December 3, 2019

1

# EXHIBIT A

The Work is identified as the MMAS Research Widget Code, its architecture, output screens (GUI's), and other associated materials.

# EXHIBIT 3

**Steve trubow**

---

**Subject:**          FW: Accept your offer of withdrawal

---

**From:** Donald Morisky <dmorisky@gmail.com>
**Sent:** Friday, June 21, 2019 12:37 PM
**To:** Steve Trubow <trubow1@gmail.com>
**Subject:** Accept your offer of withdrawal

Steve: After consideration, I have decided to accept the offer of withdrawal as a member contained in the February 14, 2019 e-mail from you to me. I have attached below a copy for your convenience. The offer "If you want to withdraw from MMAS Research LLC you are free to do so, but you will give up your 50% ownership in the Morisky Widget" is accepted. I hereby withdraw as a member and from all other of my roles on behalf of MMAS Research, LLC, effective June 21, 2019.  Thank you. "

# SOS

Office of the Secretary of State
Corporations & Charities Division

(360) 725 - 0377 | www.sos.wa.gov/corps

801 Capitol Way S, Olympia, WA 98504-0234

☐ Filing Fee $10

☐ Filing Fee with Expedite Services $60

| This Box For Office Use Only | Secretary of State<br>State of Washington<br>Date Filed: 07/05/2019<br>Effective Date: 07/05/2019<br>UBI No: 604 068 990 |
|---|---|

## AMENDED REPORT
### RCW 23.95.255

**All fields required unless otherwise specified**

**Entity Name:** MMAS Research, LLC          **UBI:** 604-068-990

**Has your registered agent changed?** ☐ YES  ☒ NO   If Yes, please be sure to complete page 2

| **Principal Office Street Address**<br>(Must be a physical address; No PO Box or PMB) | **Mailing Address** (optional)<br>☒ Check if mailing address is the same as street address. |
|---|---|
| **Address:** 14725 NE 20th Street, Suite D-53 | **Address:** |
| **Zip:** 98007   **City:** Bellevue | **Zip:** _____   **City:** _____ |
| **State:** WA   **Country:** USA | **State:** _____   **Country:** _____ |

**Phone:** (optional) 360-824-0701        **Email:** (optional) Trubow1@gmail.com

**Governor(s)** (list at least one, attach additional pages if necessary) *An entity cannot serve as its own Governor

**Name:** Steven Trubow        **Name:** Note: Donald Morisky is no longer a member or

**Name:** _____        **Name:** governor

**Name:** _____        **Name:** _____

**Nature of Business** (briefly describe the type of business your entity conducts in the state of Washington):

_____

This document is hereby executed under penalty of law and is to the best of my knowledge, true and correct.

**Signature of Authorized Person:** *Donald S Morisky*        **Date:** 6-25-19

**Print Name and Title** (if applicable): Donald Morisky

**Phone:** (optional) _____        **Email:** (optional) _____

Amended Report
Pg 1 | Revised 7.2018

Work Order #: 2019070100339323 - 1
Received Date: 07/01/2019
Amount Received: $10.00

# EXHIBIT 4

**CR 2A Agreement**

Pursuant to Washington Civil Rule 2A, the parties signing hereto comprising on the one hand Steven Trubow and MMAS Research, LLC (collectively, the "Trubow Party") and on the other hand Donald Morisky, Susan Morisky, Philip Morisky, Marty Morisky and Morisky Medication Adherence Research, LLC ("MMAR") (collectively, the "Morisky Party") (with the Trubow Party and the Morisky Party collectively identified as the "Parties" and individually as a "Party") have reached a preliminary settlement ("Agreement") and desire to consent and agree to the following terms and conditions, which shall be binding and enforceable in any court:

## I.      Background

A.      On July 29, 2019, MMAS Research, LLC and Steven Trubow filed a lawsuit in King County Superior Court against Defendants Donald Morisky, Susan Morisky, Philip Morisky, Marty Morisky and Morisky Medication Adherence Research, LLC. Defendant Donald Morisky asserted certain counterclaims against MMAS Research, LLC and Steven Trubow.

B.      On May 28, 2020, Donald Morisky filed a lawsuit against MMAS Research, LLC and Steven Trubow in Nevada federal district court asserting claims for copyright and trademark infringement.

C.      On June 19, 2020, MMAR filed a motion for attorney's fees and costs in the Washington lawsuit. Susan Morisky may also file, in the future, a motion for attorney's fees and costs in the Washington lawsuit, but has agreed to postpone doing so pending finalizing a settlement agreement.

1

D.      On or about July 2, 2020, the Parties reached a preliminary settlement agreement, the terms of which the Parties and their counsel agreed to formalize in a final, long-form written settlement agreement (the "Final Agreement" as defined herein).

E.      In the interim, the Parties desire to consent and stipulate to the following material terms and conditions that are to be fully set forth in the Final Agreement, but which shall be binding pursuant to CR 2A as follows;

Now, therefore, in consideration of the mutual promises and terms set forth below, the Parties agree as follows:

## II.      Settlement Terms and Conditions

1.      MMAS Research, LLC will forego any claims it has to and will acknowledge that Donald Morisky is the sole and exclusive owner of the federal copyrights in and to the MMAS-4 and the MMAS-8, together with any related trademarks, copyrights, derivatives to the same or other intellectual property rights associated with the Morisky Medication Adherence scales or protocols, including without limitation, the items set forth in **Exhibit 1** to this Agreement, (the "Morisky IP").  MMAS Research, LLC will assign the Morisky Widget and any related copyrights, trademarks and related intellectual property rights (the "MMAS IP") to Donald Morisky (or his assignees, collectively "Donald Morisky"), except for any and all copyrights, trademarks and related intellectual property for the Global Medication Reconciliation Form ("GMRF"). A written copy of the GMRF is attached hereto as **Exhibit 2**.   All copyrights, trademarks and related intellectual property for the GMRF ("GMRF IP") shall continue to be owned and controlled by Steven Trubow and/or MMAS Research, LLC; provided, however, that if MMAS Research, LLC is the holder of such GMRF IP, it may only do so under a different corporate name or DBA to

2

which it has up to 60 days from the execution of this Agreement to transition and that complies with Paragraph 8 of this Agreement (prohibiting, among other things, the use of the terms MORISKY or MMAS except in connection with actions related to "Claim Settlements" (as defined herein) in which MMAS Research, LLC is a party).  Steven Trubow represents that the GMRF does not contain any content that would infringe or qualify as a copyright derivative of any of the Morisky IP or the MMAS IP, and the Morisky Party is relying on that representation to enter into this Agreement.

2.    MMAS Research, LLC and/or Steven Trubow will receive fifty-five percent (55%) and Donald Morisky will receive forty-five percent (45%) (respectively, each Party's "Proceeds Percentage") of the "Net Proceeds" (as defined herein) generated from any "Claim Settlements" (as defined herein).  All proceeds of any Claim Settlement payment received from a third-party ("Gross Proceeds") shall be deposited into an attorney client trust account for the benefit of the Parties.  The net of such proceeds remaining after the payment of the attorney fees and recoverable costs incurred by the attorney(s) prosecuting any Claim Settlement ("Net Proceeds"), shall be disbursed from the attorney client trust account to the Parties in accordance with their respective Proceed Percentage along with a financial accounting of the same within thirty (30) days of the attorney's receipt of such Gross Proceeds.  The expenses of each Party incurred in connection with a Claim Settlement shall be exclusively born by that Party and shall not be deducted from the attorney client trust account, the Gross Proceeds, or the Net Proceeds prior to disbursement to the Parties.

3.    As used herein, the term "Claim Settlements" refers to any settlement agreement entered into by MMAS Research and/or Donald Morisky on the one hand and a third-party on the other hand alleged to have infringed the Morisky IP (as defined herein) and/or the MMAS IP, breached a contract or to be liable for any other claim related to or arising from use of the Morisky

IP, MMAS IP, or a license agreement for use of the Morisky IP and/or the MMAS IP after January 1, 2017, until the date on which this Agreement is signed by the Parties. The Claim Settlements at issue herein include any Claim Settlement agreements previously signed by Donald Morisky, now pending or existing investigations to be negotiated, finalized or executed in a final Claim Settlement at any time in the future, which concern refer or relate to the Morisky IP or the MMAS IP. The Claim Settlement *may include a retroactive license for the Morisky Widget and may include corrective measures to be performed by the licensee with the assistance of Steve Trubow, and training and certification to be done by Donald Morisky or Steve Trubow, at the option of Donald Morisky. Fees for training and certification shall be paid to the party training and certifying by the party receiving the training and certification.  The "Claim Settlements" are limited to those set forth and listed in **Exhibit 3**, attached to this Agreement, as of the date on which this Agreement is signed by the Parties.

4.      Donald Morisky authorizes MMAS Research, LLC through its attorney(s) to prosecute the Claim Settlements listed in Exhibit 3 from which a Claim Settlement may be sought related to the MMAS-4, MMAS-8, the Morisky Widget and any related intellectual property, and further agrees to cooperate in any existing investigations, claims and ensuing litigation of any such claims, whether now pending or to be litigated in the future, including the formal assignment of such claims, if necessary to MMAS Research, LLC.  With the exception of any filed, active, lawsuit then proceeding, all prosecution of Claim Settlements by MMAS Research, LLC through its attorney(s) must conclude within two (2) years of the expiration of the Transition Period as described in Paragraph 7 of this Agreement.  Any legal actions, including claims for infringement, may be filed in the name of Donald Morisky if required by law, as the owner(s) of the Morisky IP.

5.      Within thirty (30) days of the execution of this Agreement, MMAS Research, LLC and/or Steven Trubow or their counsel prosecuting any Claim Settlement shall disclose or make

available to Donald Morisky or his counsel, all information regarding any Claim Settlement set forth in Exhibit 3, including, without limitation, the nature of the infringement, the type of settlement sought (e.g. retroactive license, new license, etc.), the number of tests or assessments at issue, the estimated settlement payment, etc.  MMAS Research, LLC and/or Steven Trubow or counsel prosecuting the Claim Settlements shall in good faith entertain and address through counsel prosecuting the Claim Settlements any questions or concerns Donald Morisky may have regarding any Claim Settlements set forth in Exhibit 3 and shall dismiss or abandon any Claim Settlement shown to be without legal merit (e.g. a non-infringing use of an adherence scale in the public domain); provided, however, that the final decision as to whether the claim has legal merit shall be determined by the attorney or attorneys prosecuting the Claim Settlement at issue.  Donald Morisky (and/or his heirs, assigns, or successors in interest) further agrees to execute, sign, and cooperate in the finalization of any and all Claim Settlement agreements as directed by MMAS Research, LLC, Steven Trubow or the attorneys prosecuting the Claim Settlements; provided, however, that such Claims Settlement agreements will not impose future obligations on Donald Morisky or his assignees without Donald Morisky's consent, which consent shall not be unreasonably withheld.  MMAS Research, LLC and/or Steven Trubow shall indemnify Donald Morisky against any order, judgment, or award entered in, or any claim arising from, any Claim Settlement and against any costs or attorney's fees exceeding the sum recovered in any Claim Settlement.

6.     MMAS Research, LLC and/or Steven Trubow will assign the domain name for the "morisky.org" website to Donald Morisky or his assigns upon or prior to the completion of the "Transition Period" set forth herein.

7.     MMAS Research, LLC and Steven Trubow will provide access to and transfer the Morisky Widget software and database to Donald Morisky or his assignees. The Trubow Party

shall train the Morisky Party in the use of the Morisky Widget (including, without limitation, any code book or other instructional material, if any, identifying database variables and how they are scored) so that they may operate and maintain it as currently constituted and service licensees as presently done by the Trubow Party. Each Party will agree to cooperate in good faith and keep the existing morisky.org website available and running for a transition period to commence upon the execution of this Agreement and to conclude within 60 days of the date the Final Settlement Agreement becomes binding on the Parties in accordance with Paragraph 17 of this Agreement (the "Transition Period").  Therefore, it is agreed between the Parties that the Transition Period shall be for 120 days following execution of this Agreement unless otherwise modified by the written agreement of the Parties. Upon the completion of: (i) the transfer of the Morisky Widget software, database and all related information and content to Donald Morisky or his assignees sufficient to take over the management and operation of the same, and (ii) the termination of the Transition Period, MMAR shall indemnify MMAS Research, LLC and Steven Trubow from any claims by licensees arising from issues related to the access to or utilization of the Morisky Widget. The Morisky Party and MMAR agrees to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect, including adhering to all European Union Privacy regulations (including but not limited to GDPR) and HIPPA).

8.      With the exception of facilitating any existing investigation, litigation, negotiation, finalization or execution of any Claim Settlements, MMAS Research, LLC and/or Steven Trubow each agree, represent and warrant each will no longer use the Morisky IP, the MMAS IP, or the MORISKY name for business purposes, including as part of the name of the company, or transact any business utilizing in whole or in conjunction with other terms, the following terms: "Morisky, Morisky Widget, MMAS, MMAS-8, or MMAS-4".

9.      Neither Steven Trubow nor MMAS Research, LLC shall make any assignment of any Claim Settlement to any other person without the express written permission of Donald Morisky or his assigns.

10.      MMAS Research, LLC and/or Steven Trubow agree to assign to Donald Morisky and to provide a copy to Donald Morisky of the license agreements for all licenses for the Morisky Widget with third parties, including retroactive license agreements, agreements previously executed by MMAS Research, LLC and/or Donald Morisky (the "License Agreements") that are assignable on their terms. With regard to any License Agreements that are not assignable, the Trubow Party shall work in good faith to transition the servicing of such License Agreements to the Morisky Party, including without limitation, providing relevant introductions and authorizing the Morisky Party to be an authorized agent of MMAS Research, LLC for the purpose of so servicing such License Agreements through their term.   Revenue generated on all License Agreements will belong entirely to the Morisky Party. The list of Morisky Widget licensees set forth in **Exhibit 4** to this Agreement represents the minimum number of all such License Agreements. Donald Morisky agrees to assume all ongoing obligations and responsibilities under all License Agreements assigned or serviced by Donald Morisky by the completion of the Transition Period.

11.      With the exception of privileged communications, MMAS Research, LLC and/or Steven Trubow shall forward to Donald Morisky and/or MMAR all communications (including without limitation, all social media communications, texts, emails, draft agreements, etc.) received from any person regarding Donald Morisky, the MMAS-4, the MMAS-8, or the Morisky Widget in perpetuity and/or if such accounts are held in the name of the MMAS Research, LLC, shall transfer or assign all accounts from which all such information is received (including without limitation, email, social media accounts) to Donald Morisky and/or MMAR.

12.     MMAS Research, LLC and Steven Trubow shall forward all information and communications with prospective licensees of the Morisky IP or the MMAS IP ("Prospective Licensees") and shall work in good faith during the Transition Period to effectuate the transfer and referral of such Prospective Licensees to Donald Morisky and/or MMAR.

13.     MMAS Research, LLC, Steven Trubow, Donald Morisky, Susan Morisky, Phillip Morisky, Marty Morisky and Morisky Medication Adherence Research, LLC, together with its affiliates MMAS Research, Italy, and MMAS Research, France, each agree to release one another and their respective beneficiaries, trustees, owners, predecessors, successors, assigns, agents, officers, employees, servicers, representatives, attorneys, and affiliates, present and former heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouse, insurers, and all persons acting by, through, under, or in concert with any of the aforesaid persons or entities, or any of them (the "Releasors") from any claims they may have against each other and their respective beneficiaries, trustees, owners, predecessors, successors, assigns, agents, officers, employees, servicers, representatives, attorneys, and affiliates, present and former heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouse, insurers, and all persons acting by, though, under, or in concert with any of the aforesaid persons or entities, or any of them (the "Releasees) or any of them, whether known or unknown, asserted or unasserted that could have been made that relate to, arise out of, or are connected in any way with any claim or dispute raised by any Party against another. Each of the Parties also further agree to dismiss the claims asserted in the Washington lawsuit and Nevada federal district court lawsuit now pending against each other with prejudice and without any award of costs or attorneys' fees in any action.

14.     Each Party covenants and agrees to not make any public defamatory statement about any party to this Agreement.

15.     The Parties agree to cooperate and take all reasonable steps necessary to effectuate the terms of this Agreement and the Final Agreement, including without limitation, identifying and executing all documents necessary to facilitate any assignment or transfers to Donald Morisky contemplated by this Agreement or as set forth in the Final Agreement, including without limitation, any copyrights in the Morisky Widget, MMAS IP, the Morisky kiosk apple iPhone app, MABU robot used in the Morisky Protocol, the morisky.org domain name and website together with any third-party agreements related to any content or services identified thereon, and all known potential, prospective or unexecuted license agreements or infringement claims.

16.     Steven Trubow and/or MMAS Research, LLC hereby warrant and represent that they have all right, title and authority to the MMAS IP and the morisky.org domain name transferred and assigned to Donald Morisky and indemnify Donald Morisky and his assigns against any claims by third-parties to the same.

17.     Unless extended by a written agreement of the Parties, the Parties agree to enter into a long-form, final settlement agreement, formalizing all the terms set forth herein (the "Final Agreement") on or before 5:00 p.m. (Pacific Time) sixty (60) days after the date this Agreement is executed ("Final Agreement Deadline").  If the Parties are unable to agree upon any provision or content of the Final Agreement, then no later than the Final Agreement Deadline, the Parties shall identify and appoint an agreed upon neutral mediator with the Seattle office of JDR as an "Appointed Decider" to hear and finally resolve all such disputed issues.  If the Parties cannot agree on upon a single Appointed Decider by the Final Agreement Deadline, each Party may identify a single mediator of the Seattle office of JDR, and the mediators so identified, or—in the event a Party fails to identify a mediator by the Final Agreement Deadline—the sole mediator identified by the Final Agreement Deadline, shall be the Appointed Decider.  Within thirty (30) days of appointment, the Appointed Decider shall produce and sign the Final Agreement on behalf

of the Parties, which Final Agreement shall be binding upon the Parties regardless of whether they ultimately execute it. The Parties shall equally bear the costs and fees of the Appointed Decider.

18.     The Parties agree that if any legal action or other proceeding brought by the Parties to enforce this Agreement, or the Final Agreement or to recover damages or equitable relief for a breach of this Agreement or the Final Agreement, the prevailing party shall recover its costs and reasonable attorneys' fees incurred in any such action or proceeding, including the proceeding to resolve any dispute over the terms of the Final Agreement by the Appointed Decider.

DATED this 4th day of December 2020

By:_____
Steven Trubow

By:_____
MMAS Research, LLC, Washington
limited liability Company

Steven Trubow, its Managing Member

By:_____
Donald Morisky

By:_____
Susan Morisky

By:_____
Philip Morisky

By:_____
Marty Morisky

By:_____
Morisky Medication Adherence Research,
LLC, A Nevada limited liability company

Philip Morisky, Its Managing Member

of the Parties, which Final Agreement shall be binding upon the Parties regardless of whether the

to enforce this Agreement, or the Final Agreement or to recover damages or equitable relief for a

reasonable attorneys' fees incurred in any such action or proceeding, including the proceeding to

DATED this ___ day of December 2020

Steven Trubow

MMAS Research, LLC, Washington
limited liability Company

Steven Trubow, its Managing Member

Donald Morisky

Susan Morisky

Philip Morisky

Marty Morisky

Morisky Medication Adherence Research.

of the Parties, which Final Agreement shall be binding upon the Parties regardless of whether they ultimately execute it.  The Parties shall equally bear the costs and fees of the Appointed Decider.

18.     The Parties agree that if any legal action or other proceeding brought by the Parties to enforce this Agreement, or the Final Agreement or to recover damages or equitable relief for a breach of this Agreement or the Final Agreement, the prevailing party shall recover its costs and reasonable attorneys' fees incurred in any such action or proceeding, including the proceeding to resolve any dispute over the terms of the Final Agreement by the Appointed Decider.

DATED this ___ day of December 2020

By:_____
    Steven Trubow

By:_____
    MMAS Research, LLC, Washington
    limited liability Company

    Steven Trubow, its Managing Member

By:_____
    Donald Morisky

By:_____
    Susan Morisky

By:_____
    Philip Morisky

By:_____
    Marty Morisky

By:_____
    Morisky Medication Adherence Research,
    LLC, A Nevada limited liability company

    Philip Morisky, Its Managing Member

of the Parties, which Final Agreement shall be binding upon the Parties regardless of whether they ultimately execute it.  The Parties shall equally bear the costs and fees of the Appointed Decider.

18.     The Parties agree that if any legal action or other proceeding brought by the Parties to enforce this Agreement, or the Final Agreement or to recover damages or equitable relief for a breach of this Agreement or the Final Agreement, the prevailing party shall recover its costs and reasonable attorneys' fees incurred in any such action or proceeding, including the proceeding to resolve any dispute over the terms of the Final Agreement by the Appointed Decider.

DATED this ___ day of December 2020

By:_____          By:_____
   Steven Trubow                                  Donald Morisky

By:_____          By:_____
   MMAS Research, LLC, Washington                 Susan Morisky
   limited liability Company
                                       By:_____
   Steven Trubow, its Managing Member             Philip Morisky

                                       By: _Marty Morisky_____
                                          Marty Morisky

                                       By:_____
                                          Morisky Medication Adherence Research,
                                          LLC, A Nevada limited liability company

                                          Philip Morisky, Its Managing Member

# EXHIBIT 1

## Morisky Intellectual Property

**1.      Registered Copyrights**

- (MMAS-4 Scale) TX0008285390 Copyright (06-12-2016)
- (MMAS-8 Scale) TX0008632533 Copyright (09-21-2018)

**2.      MMAS Morisky Protocol-2015, including as part of such protocol the following:**

- Subjective and Objective Measurement of Adherence
- Social Desirability, Response Bias
- Validity, Sensitivity and Specificity, MMAS health condition(s) and Medication Specific health condition(s)
- Criterion Related Validity, Patient Outcomes (following educational counseling, outcome measures including appointment-keeping behavior, 30-day hospital readmissions, quality of life, morbidity, and mortality).
- Baseline and Follow up Assessments, Never One-Off
- Diagnosis of Medication Taking Behavior, Intentional and Unintentional Non-Adherence
- Translational Research, Sustainability, Self-Management.
- Polypharmacy
- MMAS-8 scoring algorithm

**3.      Morisky Medication Adherence Protocol, including as part of such protocol the following:**

- A Beneficence
- B Evidence-Based
- C Determinants of Non-Adherence
- D Chronic Care Mgmt. and Medication Reconciliation
- E Tailored and Targeted Intervention
- F Disease Control, Remission of Mental Health and Substance Use Disorders

**4.      Trademarks/Service Marks.** The following marks have attained common law trademark rights in connection with the provision of diagnostic procedures to assess adherence to medication protocols, and in connection with identifying and proscribing compliance and intervention protocols and other related goods and services offered in connection with the same:

- MORISKY
- MORISKY MEDICATION ADHERENCE SCALE
- MORISKY SCALE
- MORISKY MEDICATION ADHERENCE PROTOCOL
- MORISKY PROTOCOL
- MMAS
- MMAS-4
- MMAS-8

# EXHIBIT 2

**GMRF**

| NEW GMRF | MGL (Public) |
|---|---|
| 1. If you feel worse when you take [name of medication], do you stop taking it? | 4. Sometimes you feel worse, when you take the medicine, do you stop taking it? |
| 2. Do you ever forget to take your [name of medication]? | 1. Do you ever forget to take your medicine? |
| 3. When you feel better, do you sometimes stop taking your [name of medication]? | 3. When you feel better do you sometimes stop taking your medicine? |
| 4. Do you ever forget to take your [name of medication], because you are using other medications? | 1. Do you ever forget to take your medicine? |

# EXHIBIT 3
## Claim Settlements

1. University of California Irvine agrover3@uci.edu 2020

2. Virginia Commonwealth 2020 Donna Wilson

3. Kings College 2 new cases Weinmen and Khan 2020

4. Li-Hui Zhu, Hunan Hospital 2020

5.yulhamin@gmail.com korea 2020

6. Shen@waldenuniversity.edu; Subocz@waldenuniversity.edu 2020

7.kkruetzf@its.jnj.com 2020

8. Ghada_thabet@aun.edu.eg mbioph@dir.bg; JHMN@iiste.org 2020

9. cecile.gaujoux.viala@chu-nimes.fr 2020 NCT03642795

   10 Jiancheng Xiu, MD NCT04409210 2020

11.  NCT04442776  Montse Cañabate, Cardenal Herrera University 2020

12.dhouha.khalifa@hotmail.fr

13. NCT04532528 Boehringer Ingelheim clintriage.rdg@boehringer-ingelheim.com

14. Zhan Shi Beijing Chao-yang Hospital, Capital Medical University,
15 m.omar2218@yahoo.com; port said university infringement on the mmas-8

16. Ospedale Regina Montis Regalis 2020 infringement

17.Xue WANG, Aiqin LV vd6n3d@163.com ijph@tums.ac.ir tyc@sdu.edu.cn

18. Hanoi Vietnam 2016 MMAS-8 license 2020 infringement
19 michael conley mmas psoterpresntatoin 2019

20. lbiganzoli@usl4.toscana.it , gina nightingale

**21. three posterprsentation infringers 2020  and 2017 mmas-8 article mercer**

**22.  MedSentry system Timothy M Hale Joseph C Kvedar**

23. Mrs. Katrin Kruetzfeldt Janssen-Cilag GmbH

24 'Geraldine Leguelinel'marion warembourg'

25. zjhzyyfy@163.com AUGUST-AHF Study>; Dr. Zhang

26. pulsewatch timmothy fitzgibbons umass mmas-8

27. abbvie austria mmas-4 andy brooks

28Mackenzie Salisbury, Walden bruce roberts dissertation

29. Iranian Transfer Nora.Kellock@ed.ac.uk University Edinburgh Morisky Widget  License

30 Daiichi Sankyo Morisky Widget License

31.Xiaona Jia  18811195613@163.com Pharmacy,  First Hospital, Beijing, China.

32. agrover3@uci.edu <agrover3@uci.edu>; ucal irvine

33. silvia.rabotti@infomed-online.it IRS

34. Jack Bernard <bernar@umich.edu> paula casey morisky widget license

35.pnj5@hotmail.com

36. wislon massey cancer center virginia commonwealth Morisky Widget license poster pres

 37. mmas-8 phillip morisky license  Bratislava 2020 peter valkovic

38 grammercy research group Melicia C. Whitt-Glover, Ph.D.

39. aozaydin26@hotmail.com MMAS-4 NCT04301128 koc university

40 Merck KGaA, Darmstadt, Germany NCT02921035

41. akelleher@kirby.unsw.edu.au  NCT04132479  jhanson@kirby.unsw.edu.au

42 NCT03185858 Lijing.yan@duke.edu duke university china

  43. brewer.laprincess@mayo.edu NCT04554147

44. Devin Mann, MD, MSIcahn School of Medicine at Mount Sinai NCT00548639

45. NCT02234713 E. Ann Yeh, The Hospital for Sick Children

46 Jonathan Knights Jonathan.Knights@otsuka-us.com

47Carolyn Bostros NCT03077711

48 g.eguchi@ommc-hp.jp; ymaeda@ommc-hp.jp,y_kanai@ommc-hp.jp mmas-9

49.  Souad.Moudallel@uzbrussel.be patricia.vanderniepen@uzbrussel.be matt stratton

50 patientslikeme morisky widget license Rich.russo@healthtell.com 'Stratton, Matthew

51.tsaejyy@ntunhs.edu.tw  taiwan

52. mcastenosis@gmail.com; mspark@chonnam.ac.kr

53 gerlando.natalello@gmail.com belligerent

54 <aozaydin26@hotmail.com,vemren@hotmail.com

55. tsegahunm@gmail.com; yimtubezenash.wamanuel@aau.edu.et

56. NCT04017559 complaints@belfasttrust.hscni.net

57 argi@cogeco.ca; annajhussey@gmail.com rodondo

58. malshibani@kau.edu.sa; mohannad_ah@hotmail.com

 59Caroline.Fabry@astrazeneca.com> kantar health morisky widget

60 bayer italy Rivaroxaban Treatment Discontinuation Rates 

61habouma1@jhmi.edu Hanan Aboumatar, MD 

62Montse Cañabate, Cardenal Herrera University NCT04442776,

63g.eguchi@ommc-hp.jp; ymaeda@ommc-hp.jp; g.eguchi@ommc-hp.jp

64. thkim@hanyang.ac.kr

65nadine.houede@chu-nimes.fr

66.vozzhaev-av@rudn.ru

67 info@annedeveer.com; j.ten.berg@antoniusziekenhuis.nl

68 groningen 3 morisky widget license 2020

69 barcelona dialcat morisky widget licenswe

70 liuyong2099@126.com counterfeit scoring and coding clinical trials. Gov

71 Qing-qing SONG hunan

72 'Ayse Ozkaraman' <aozaydin26@hotmail.com>  Turkey

73. mspark@chonnam.ac.kr morisky widget

74michael.crawford@howard.edu

75m.crawford@imperial.ac.uk

76john.weinman@kcl.ac.uk;

77. Muhammet Furkan Korkmaz

78 unchalee.permsuwan@gmail.com

79 Cristian M. Garmendia, cm.garmendia@gmail.com

80 Assistance Publique - Hôpitaux de Paris (Dr. Valeyrie)

81Assistance Publique - Hôpitaux de Paris (MELBASE)

82 National Cheng Kung University Hospital (Dr. Ou)

83 Wayne State University (Aranha and Patel)

84 Assistance Publique Hopitaux De Marseille

85 marta.baviera@marionegri.it  NCT03921905 Mario Negri Institute

86. henri.gonde@chu-rouen.fr,Ms. Monchablon, Anne.dandeville@univ-rouen.fr
France Open Cases at the NIH CLINICAL TRIAL.GOV WEBSITE

87 NCT03753035

88 NCT02422602

89 NCT02856542

90 NCT02926560

91 NCT02060747

92 NCT01509989

93 NCT03492476

94 NCT03454971

95 NCT03606850

96 NCT02364310

97 NCT02828449

98 NCT02611440

99. NCT03240341

100 NCT03561467

101 NCT03630692

102 NCT02147938

103 NCT02733965

104 NCT03296150

105 NCT02143479

106 NCT03145051

107 NCT02356367

108 NCT02322450

109 NCT03257969

110 NCT03642795

111 NCT01774630

112 NCT02687594

113 NCT01244750

114 avorder@umass.edu; quill004@mc.duke.edu

115. Society of Geriatric Oncology (SIOG) taskforce recommendations Laura Biganzoli

116.vanitharani.n@sriramachandra.edu.in elsevier

117.Jessica Núñez-Rodríguez and Co-authors jessica.nr92@gmail.com

118.Mulat Tirfie mulatbonny@gmail.com elsevier

119.z_azul@hotmail.com elsevier

120.yac.achouri@gmail.com elsevier

121. ouahchiyacine@gmail.com elsevier

122. shakibazadeh@tums.ac.ir elsevier

123. Nicholas Rodondi

124.dr.tayseeer@hotmail.com

125 s5854@medimail.co.kr University of Ulsan pred1054@naver.com

126. complaints@belfasttrust.hscni.net NIH study

127. NIH study FARMA-CANP NCT04391218 rmarinello@cittadellasalute.to.it

128. alma.au@polyu.edu.hk mmas-4 infringement nih website

129. michael.marschollek@plri.de

130 jose.mira@umh.es Universidad Miguel Hernandez   NCT04159558

131. NCT03753035 Nancy Hospital   barbara.girard54@gmail.com

132.Juliet N Sekandi, MD, MS, DrPHUniversity of Georgia NCT04134689

133.Ping Huang, Zhejiang Cancer Hospital NCT03455023

134.François GERNIER <f.gernier@baclesse.unicancer.fr>  NCT04554927

135.National Cheng-Kung University Hospital huihua@mail.ncku.edu.tw  NCT04488172

136 Boehringer Ingelheim   wslin545@ms27.hinet.net   tri-service general hospital taiwan scoring

137.NCT04253639 sublimed scoring and coding contact@subli-med.comfrance

138.olivia.lesaux@gmail.com, claire.falandry@chu-lyon.fr NCT03296150 lyon

139 Kalicort NCT04107246 Centre Hospitalier Universitaire de Saint Etienne philippe.gain@chu-

140 MARLENE COUPE, MD University Hospital, Montpellier   stephane.vignes@cognacq-jay.fr

141 Mario Negri Institute for Pharmacological Research NCT03921905 counterfeit marta.baviera

142 NCT03541109  Shervin Ghaffari Hoseini, MD,PhD shghaffari@yahoo.com sfa.yazdekhasti@

143  sungyk@hanyang.ac.kr modified morisky 6 hanyang unversity NCT04449224

144. Murdoch Childrens Research Institute alison.boast@gmail.com amanda.gwee@rch.org.au

`145. UNC Chapel Hill cabjones@email.unc.edu NCT04131816

146.Dott.ssa RENATA MARINELLO, rmarinello@cittadellasalute.to.it NCT04391218

147 University Hospital, Bordeaux NC1U4043052 (MMAS-6) igor.sibon@chu-bordeaux.fr

148. Judith A. Cook, University of Illinois at Chicago morisky widget 312-355-3921jcook@uic.edu NCT04028609

149. Morisky Widget License Julie Wright-Nunes, University of Michigan counterfeit jcolbert@me

150.Ana-Maria Vranceanu,Massachusetts General Hospital,Harvard case6 NCT04537728avran

151. NCT04499950 jsheng7@jhmi.edujohnshopkins 2 mmas-4

152.Centre Hospitalier Universitaire de Nîmes NCT03642795 cecile.gaujoux.viala@chu-nimes.fr

153.Ms. Savannah Cunningham and Dr. Joshua D. Kinsey of Mercer University

154. Linda Simenrio similx@upmc.edu, krall, stottsj@upmc.edu,NCT03999268

155.: NCT04560062 Lucy Anne Parker, Universidad Miguel Hernandez de Elche counterfeit lpar

156.Diego Ardissino, Azienda Ospedaliero-Universitaria di Parma ALLEPRE gpaoli@ao.pr.it,mar

157.NCT04409210Nanfang Hospital of Southern Medical University xiujc@126.com

158.amoreno1@imim.es Parc de Salut Mar NCT03848858

159.Mohammed N Meah m.meah@ed.ac.uk, d.e.newby@ed.ac.uk,University of Edinburgh, Mor

160.Centre Leon Berard NCT04070443 franck-emmanuel.nicolini@lyon.unicancer.fr

161.Radboud nienke.devries-farrouh@radboudumc.nl NCT03830190

162.International University of La Rioja,NCT03161249 anabelen.calvo@unir.net

163.Henrik Nielsen, Aalborg University Hospital NCT04140903 counterfeit henrik.nielsen@rn.dk.

164.Boehringer Ingelheim Beijing NCT04180813 Mori Widget  doctorgw@163.com

165  wslin545@ms27.hinet.net Boehringer Ingelheim taiwan counterfeit MWid NCT04532528

166.vconti@unisa.it

167.jntobin@cdnetwork.org albert einstein morisky wid

168.hynesd@oregonstate.edu; aporte3@uic.edu morisky widget license illinois

169.magee medstar georgetown morisky widget license pcori

170. moser barksdale vcu morisky widget hudasn@squ.edu.om

171.Joseph Colbert 734-936-5515jcolbert@med.umich.edu morisky widget nih counterfeit

172.chen_yanhua25@163.com sichuan

173 h-inoue@saiseikai-toyama.jp daiichi sankyo 2

174 'François GERNIER' <f.gernier@baclesse.unicancer.fr>

175.Northwell Berstein Steger 2018

176.University of Penn (Stein) Fraser Brier  Tuteja and Radner)  anti Morisky website 2017-2019

177.  University of Mass (Boucher Zerillo Goldberg McManus Fitzpat plus 3 other cases 2017-20

178  mathew scarbourough oxford berstein lawsuit 2 PUBLICATIONS

179  Breast Cancer Trials (Australia)(New Zeland Gross Berstein mbuckingham@tglaw.com.au

180 J Barner (2) University of Texas  3 cases 2017-2019 gross berstein ramirezag@uthsca.edu

181lidia.moura@mgh.harvard.edu,tmhale@mgh.harvard.eduBerstein Letter Gross File Morisky

182.  drinkard iskandar dunbar plus two other cases emory berstein gross

 183 Yale University  Connecticut VA Hospital Berstein letter nicholas.xanthakos@va.gov Yale

184 10 Duke University School of Medicine 7 cases 2016-2019 license gross 2017-2018 bernste

185. conend@mcmaster.ca> gross settlement june 2019

186. david.farabee@nyulangone.org

187. University of Western Ontario (Cecilia Sandoval)

188 Pfizer Stenger 8 cases

189  Dana Farber Stenger

190 Miami Stenger

191. Humana Gross Dana Drzayich Jankus <ddrzayichjankus@humana.com>

192 . Astra Zeneca Gross MORISKY WIDGET 3 LICENSES

193.  USF Gross

194 Dr. Hamilton University of Bristol Morisky Widget anna.davies@bristol.ac.uk;

195Essmann.Claudia@mh-hannover.de;; baum.christopher@mh-hannover.de; michael.marscho

196 UMASS STENGER 4 CASES 1 LICENSE

197  candace feldman brigham womens hospital harvard gross berstein lawsuit

198 . william Patterson University for Pamela Foju Kem Louie steger gross

199  Hannover Medical School gross 2018

200  Leukemia Patient Advocates Foundation (Sharf) gross berstein

201 Nationwide Children Hospital, Inc. gross berstein

202  Michigan State University (Erin Sarzynski, M.D.) gross berstein

203 AUSTRALIA NEW ZEALEND CANCER

204 South Shore Neurologic Associates morisky widget gross berstein

205<conend@mcmaster.ca berstein gross june 2019

206 French Social Security gross berstein french lawyers 2017-2019

207 University of Parma Gross DaVide

208 Sapeinza University Rome Gross Davide ;carlo.lai@uniroma1.it, pa.aceto@gmail.com

209 Chiesi Italy Chiesi Germany Morisky Widget Berlin Chemie

210 Miranda Murray GSKO'Donnell, Brian" Gross Berstein

211. Massachusetts General Hospital (Dr. Mateen & Dr. Barry) Dr. Hale & Dr. Jethwani berstein

212 Dr. Deepak Voora, M.D. Dr Patel Brian Duscha Verizon Duke Gross Bertstein lawsuit

213 unc Chapel Hill serial

214 Doyle Cummings Gross Berstein serial infringer 4 years Jia-Rong Wu,dewalt

215  Korb Salvodeli Gross Berstein French Lawyer 4 years serial infrigner

216  Cuevas Serial Infringer 4 years gross

217 Cabral Serial Infringer 4 years refile lawsuit

218 naloudah@KSU.EDU.SA university of aberdeen gross berstein 2018

219 observia settled in March 2019 geoffroy.vergez@observia-group.com>

220  Dr. Vorderstrasse, Dr. Quillian and Dr. Krauss Duke

221 Chonbuk National University Youngran13@jbnu.kr berstein final letter

222 .bojing.cai@iqvia.com IQVIA DURHAM nc BERSTEINfinal letter

223  jizan universitymjyo545@hotmail.com  berstein final letter

224 eva.joelsson-alm@sll.se Karolinska Institute Morisky Widget Berstein finalletter

225 Chia-Yi Jenny Wu National Taiwan University jenycyw@ntu.edu.tw berstein final letter

226 .Shingo Kato Saitama Medical University skato@saitama-med.ac.jp  bernstein letter

227 aaranha@med.wayne.edu berstein final letter lawsuit

228 Katherine Holmes University of Marylandkholmes@umaryland.edu berstein final letter kgros

229. Mayo Clinic 1 2017 and 2 2019 Kane Sunanda;Becker Brenda;Klemp Ellen;Caines Jake;Ca

229. LaPrincess C. Brewer, Mayo Clinic NCT04554147 brewer.laprincess@mayo.edu

230.E. Ann Yeh, MDUniversity of Toronto, The Hospital for Sick Children NCT02234713

231.thurston_mm@mercer.edu

232.thomas jefferson university poster presentation gina nightingale

233.Mohannad Alshibani,  King Abdulaziz University, Jeddah, Saudi Arabia

234.https://www.hal.inserm.fr/inserm-00663888/file/1472-6874-10-26-S2.PDF

235.'Wang, Tina' <twang@wiley.com>

236.the university of georgia  juliet.sekandi@uga.edu morisky widget

237 igor.sibon@chu-bordeaux.fr bordeaux mmas-6

238.tsegahunm@gmail.com emory

239.jsheng7@jhmi.edu hopkins 2

240. Bayer Clinical Trials (+)1-888-84 22937clinical-trials-contact@bayer.com mmas-8

Five Moore Drive P.O. 13398 Research Triangle Park, NC 27709-3398,NCT02227238

243.Tammy Toscos, Research Scientist, Informatics, Parkview Health NCT02690649

244.Athena Philis-Tsimikas, Scripps Whittier Diabetes Institute NCT02643797

245.marta.baviera@marionegri.it mmas-8 counterfeit NCT03921905

246.Dott.ssa RENATA MARINELLO  NCT04391218

247.Eliane Boucher, PhDHappify Inc. julia@happify.com

248 University Hospital of North Norway NCT02770599

249 inda Siminerio, University of Pittsburgh NCT03999268

250. john.billimek@uci.edu NCT04585594

251. NCT03830190 radboud nienke.devries-farrouh@radboudumc.nl

252.info@deltahealthalliance.org,NCT03374098

253.franck-emmanuel.nicolini@lyon.unicancer.fr NCT04070443

254.: Ana Calvo, PI anabelen.calvo@unir.net NCT03161249

255. z.jalal@bham.ac.uk university of birmingham

256.Jenni Sheng <jsheng7@jhmi.edu>, Spaulding, Erin Murdock

257.MEAH Mohammed <m.meah@ed.ac.uk>

258.Anne.dandeville@univ-rouen.fr

259.ragna.anne.lind@helse-bergen.no

260.claire.falandry@chu-lyon.fr clinical trials.gov

261.janssen johnson and johnson

262.G. Natalello E. De Lorenzi  Catholic University of the Sacred Heart, Institute

263.jblitstein@rti.org <jblitstein@rti.org>;

264.yulhamin@gmail.com university of chuncheon korea

265. Ghada_thabet@aun.edu.eg Assiut University, Egypt Ghada Thabet Mohammed

267.marco.proietti@unimi.it,;Deirdre.Lane@liverpool.ac.uk

268 m.e.t.mcmurdo@dundee.ac.uk; miles.witham@ncl.ac.uk

269 texas tech alexander morisky widget license

270 'SEVDA EFİL' <sevda_efil@hotmail.com> istanbul

271 nadia_shams@yahoo.com

271 beata.jankowska-polanska@am.wroc.pl scoring and coding incorrect

272 schira@uta.edu, d brown texas

273 Lane, Deirdre <Deirdre.Lane@liverpool.ac.uk> marco.proietti@unimi.it

274 Nagoya 2

275 swhan@dsmc.or.kr Keimyung University Korea

276 ahmad.naddaf@iu.edu.jo jordan

277 kkruetzf@its.jnj.com

278 Caterina Bucca morisky widget

279 tilahunabdeta@gmail.com ethiopia mmas-4 scoring and coding

280.Yong Huo, Peking University First Hospital NCT03565978

281 kevin.dolgin@observia-group.com

282 timothy.welty@drake.edu

     283. julius.katzmann@medizin.uni-leipzig.de

284.Furkan Korkmaz <korkmazmfurkan@gmail.com>

     285.argi@cogeco.ca; annajhussey@gmail.com

286. merve.kolcu@sbu.edu.tr

287.Shandong University YAO Jing-jing, SUN Qiang, LI Qi, et al

288. Chomgqing university lijingfang@hospital.cqmu.edu.cn disclosed scoring

289.duanjinju@163.com Second Hospital of Shanxi Medical

290.m.eisele@uke.de hamburg

291.university of british columbia

292.danielt@arsiun.edu.et franco.veglio@unito.it

293.prorektoratfw@uni-halle.de Bleidorn@med.uni-jena.de

294.Jia-RongWu, sandra dunbar  unc emory https://www.sciencedirect.com/science/article/abs/p

295.burra@unipd.it

296 Géraldine Leguelinel-Blache University of Montpellier

297. akosobucka@wp.pl

298. jfarrellhcc@yahoo.com umass

299. goates@uab.edu

300. tawben11@hotmail.com qatar hamadi medical center

301 romagnoli_alessia@libero.it <romagnoli_alessia@libero.it>;

302.a.chatziefstratiou@yahoo.gr Papataxiarchou Katerina <k.papataxiarchou@elpen.gr> morisk

303.Ahmad Naddaf Jordan MMAS-8

304.mdsrinopiyani@yahoo.com, sri.nopiyani@unud.ac.id  mmas-8 without license

305.Valerio.neiviller@fmc-ag.com

306.nasib.babaei@yahoo.com iran mmas-8 unlicensed

307.leigh.Edward@svha.org.au

308.Karen-leigh.Edward@svha.org.au <Karen-leigh.Edward@svha.org.au>;

309.6-item Morisky Medication Adherence Scale (MMAS-6) drhopper@ikoob.com catholic unive

310.Branislava Krstic <branka022@yahoo.co.uk>

311 ra.mazzill@gmail.com <ra.mazzill@gmail.com>;Morisky widget license university of pisa

312.heloisiq@gmail.com <heloisiq@gmail.com>;Ms. Heloise Helena Siqueira brazil

313.asjarab@just.edu.jo mmas jordan mmas-4

314.angelina_wibowo@yahoo.com

315.angelina_wibowo@yahoo.com indonesia

316.Abedi.a@ArakMU.ac.ir abedi30@yahoo.co.uk

317.Ilaria Aredano,Caterina Bucca,IRS Morisky Widget

318.farmaciaalaxe@galicia.com Andrea Leites-Docío university of santigago mmas-8 scoring an

319.yxk12@ewha.ac.kr younhee kang

320.dr.hazimraffaa@gmail.com KING KHALID

321.amalsaied19@yahoo.com Mahmoud

322.juwagner@uchc.edu, Buckley, Thomas <thomas.e.buckley@uconn.edu>UCONN

323.vozzhaev-av@rudn.ru,pokrovskii@bsu.edu.ru

324.nc.ten.362@oaynai fuwai

325.claudia.giavoli@unimi.it <claudia.giavoli@unimi.it>;

326.yenpingng@hotmail.com malaysia

327.sametsancarkaya@hotmail.com

328. fusaunga@gmail.com S
fsn299@gmail.com

329. wafaa_ramadan27@yahoo.com

330.manuel_cappellari@libero.it

331.Manuel.Schwanda@fhstp.ac.at

332.y_kanai@ommc-hp.jp

333.mohamedizham@gu.edu.qa,arafatyara@gmail.com

334.RENATA MARINELLO, Azienda Ospedaliera Città della Salute e della Scienza di Torino:NC

335.cecile.gaujoux.viala@chu-nimes.fr  NCT03642795

336.yenbinliu@gmail.com,wslin545@ms27.hinet.net BI Taiwan NCT04532528

337.barbara.girard54@gmail.com   NCT03753035

338.clinical-trials-contact@bayer.com NCT04174859, mmas-8 (Non-valvular Atrial Fibrillation, N

339.montserrat.canabate@uchceu.es NCT04442776

340.similx@upmc.edu NCT03999268 siminelo

341.sandra.michiels@bordet.be

342.G Natalello morisky

343.Jing Xiao jxiaont@163.com

344.giuseppe.procopio@istitutotumori.mi.it

345.mahmoud.hassanein@alexmed.edu.eg

346.Nathalie TEXIER <nathalie.texier@kappasante.com> portel

347.info@annedeveer.com; j.ten.berg@antoniusziekenhuis.nl

348.allison.gibson@uky.edu

349.greg.rosenfeld@me.com

350.moustafaesraa0@gmail.com

351.manesh.patel@duke.edu; brian.duscha@duke.edu

352.rondi.beth.gelbard@emory.edu; info@memorahealth.com

353.sadeghimasoumeh@gmail.com; shghaffari@yahoo.com

354.albcicero@gmail.com; uisllorentepeters57@gmail.com

355.nriera@chv.cat

356.Indiana tarab@iu.edu; tarahb@iu.edu

357.chenyan72_72@zju.edu.cn

358.r.paterson, napier

359.lujiao801@163.com

360.Amanda Gethman mercer

361.northeastern university poster

362.swhan@dsmc.or.kr,'황종민' <dsmcep@gmail.com>

363.Anna.Mislang@sa.gov.au nightingale mercer 'Stratton, Matthew

364.M.Tomassen@nivel.nl matthew stratton

365.'DiMezza, Danielle' <Danielle.DiMezza@umassmed.edu>

366.abigail.crocker@uvm.edu mmas-4

367.soxl@musc.edu <soxl@musc.edu>;

368.smansberger@deverseye.org
369.Zhan Shi, Liang Shi Chao-yang Hospital, Capital Medical University,

370.michellehyczy@gmail.com

CARBP

372.brunaeibel@gmail.com clinical trials NCT04475367

373.olivia.lesaux@gmail.com NCT03296150

374.ssbunova@mail.ru <ssbunova@mail.ru>;

375.kto0440@paik.ac.kr

376.'宋青青' <zimoqingqing1226@163.com>

377.annedeveer@outlook.com
378.rachel.a.elliott@manchester.AC.UK
ac.uk

378.LU UNIVERSITY OF TEXAS AUSTIN SOUTH TEXAS VA MORISKY

379.J. Seelig & M. E. W. Hemels

380.mehdi_zoghi@hotmail.com turkey

381.manuel.schwanda@fhstp.ac.at

382.ianyao@263.net.cn fuwai hospital

383. libya saved in trubow picture asus

384.audrey-castet@chu-montpellier.fr> NCT02422602
Korchmaros,Jeannie K. Lee, Susan J. Shaw Krista K. Stone
University of Massachusetts President's Office

387. Dana Opas dopas@humancaresystems.com, jholley@humancaresystems.com

388.Yale University  Connecticut VA Hospital Nicholas D. Xanthakos (nicholas.xanthakos@va.g

389.Georges.Mayeux@groupecen.com

390.Michel Bernier PIVOT Dr. Alain Larouche, Concerto Groupe Santé MMAS-4 INFRINGEMEN

12.NCT04391218  Torino
with
Medication Adherence and Asthma Control in Hispanic
Adults with Asthma?

393. Susan Feyerabend praxis@studienurologie.de HAMBURG JANSSEN MMAS4

394.  Neighborcare Health AIMS UW COMPASS cneely@icsi.org DISTRIBUTOR

395. minami VESS-Program saint louis university .Hataka R. Minami

396. University of western ontario sandoval asalmoni@uwo.ca (Professor Alan Salmoni

397.Packard, Katie A <KatiePackard@creighton.edu>

398.ahmedmajly@yahoo.com mmas-9,Ahmed Mjalia

399.giada.pietrabissa@unicatt.it

400.Astellas Pharma laurence.dubel@astellas.com; Sue.Sargeant@astellas.com lyon and mars

401.francoise.laroche2@aphp.fr

402. tawben11@hotmail.com hamed medical corp qatar

403.Ana Aguiar : anaaguiar590@gmail.com

404.TANG Xiang, ZHANG Jian-lin Guangzhou

405.krb747@gmail.com Rock Bum Kim

406. shuper@bsmu.edu.ua ukrainian mmas-8 wrong scoring and coding
407.Nadine Hellmann DelfinoValerim Teixeira Remor

## EXHIBIT 4

## Morisky Widget Licensees

**Licensees**

AbbVie Canada
Abbvie
Adelphi
Albert Einstein College of Medicine
Ankara Yildirim Beyazit University
Ascensia Diabetes Care
Assurex Health
AstraZeneca Greece
AstraZeneca Kantar
AstraZeneca Latin America
Astrazeneca Russia
Azienda Ospedaliero Universitaria di Modena

BMS Italy
Bayer NL
Berlin Chemie
Boehringer Ingelheim China
Boehringer Ingelheim GmbH
Boston Children's Hospital
Bristol University
Bristol-Myers Squibb USA
Brussels Free University School of Public Health

CARIM/Maastricht University
CHIESI GmbH
CHU de Clermont-Ferrand
Caritas Medical Center
Catalia Health
Centre François Baclesse, Caen
Charing Cross Hospital - Imperial College
Chiesi Poland
China Crohns & Colitis Foundation
Chonnam National University
Clermont-Ferrand 2
Clermont-Ferrand 3
Click Therapeutics
Columbia University Medical Center
Columbia University Medical Center, Department of Psychiatry
Community Health Initiatives FQHC Brooklyn NY
Consorci Hospitalari de Vic
Consorci Sanitari de Terrassa
Copenhagen University Hospital

Daiichi-Sankyo
Denmark IBD

Department of Emergency Medicine, University of Illinois at Chicago
Dilla University Referral Hospital
Duhok University-Kurdistan,Iraq
Duke-NUS Medical School
Duquesne University School of Pharmacy

ELPEN
Ethiopia National

Federico II University
Ferring Pharmaceuticals
Florida Orthopaedic Institute
Fukuoka University Chikushi Hospital
Fundació Althaia
Fundació Mútua de Terrassa
Fundació Privada Hospital Asil de Granollers
Fundació Universitària del Bages
Fuwai Hospital

G.I. Research Institute
GSK Spain
German Liver Foundation
Gimema
Gustave Roussy

Hospital Robert Debre
Hospital de Clinicas de Porto Alegre
Hospital for Special Surgery
Huazhong University of Science and Technology
Hunan Children's Hospital
Hôpital Claude Huriez
Hôpital de la Cavale Blanche

IGES Institut GmbH
Imperial College London
Inje University Haeundae Paik Hospital
Institute Cancer De La Loire Lucien Neuwirth
Intarcia

Janssen Pharmaceutical Companies of Johnson & Johnson Japan
Jawaharlal Institute
Johnson and Johnson USA
Julius Maximilian University of Wurzburg
Kameda General Hospital

Kappa Sante
Karolinska Institute 2
Keelung Hospital Taiwan
King Faisal Specialist Hospital
King Saud University
King's College
Kyoto University Hospital

Laboratoires Théa
Lifespan
Louis Mourier Hospital
Lurie Childrens Hospital of Chicago

MSD KK
Maastricht University GROW School for Oncology
Mamara University
Marmara University
Mbarara University of Science and Technology
McGovern Medical School-UTHealth
MedStar
MediNeos Observational Research
Medical University of South Carolina
Medpace, Inc
Menarini France
Merck Greece
Michael E DeBakey VA Medical Center
Michigan State University
Mitsubishi Tanabe Pharma Corporation
Montefiore
Morgan Stanley Children's Cancer Center

NYU College of Global Public Health
NYU School of Medicine
NYU Taylor
Nihon Chouzai
Nippon Medical School
Nordic Pharma SAS
Northwell Health
Norway IBD
Novartis Pharma GmbH
Novartis South Korea PrimeCore
Novartis UK
Novo Nordisk

OPIS
Odenplans Medical Center
Open Vie UK
OptiNose
Oslo University Hospital
Oslo University Hospital 2
Oslo University Hospital Department of Gastroenterology
Otsuka Pharmaceutical Co

Parc Sanitari Pere Virgili
Partizan Health
Peking University First Hospital
People of Rwanda
People's Hospital of Guizhou Province
Pfizer France

Roche Diabetes Care
Rocky Mountain Suicide Prevention VA
Rush University Medical Center
Rīga Stradiņš University

S. Anna of Pisa Management Institute
SANOFI
SANOFI China
Sarawak Research Society
Saudi Stroke Society
Servier Global Medical Affairs
Servier Russia
Shanghai Clinical Center for Endocrine and Metabolic Diseases
Shanghai Institute of Endocrine and Metabolic Diseases
Shinshu University School of Medicine
Singapore Clinical Research Institute
Societa Italiana di Pneumologia
South Shore Neurologic
Southside Medical Center
Spain IBD
St George's Hospital
St Olavs University Hospital
Suqian First Hospital
Sweden IBD

Taiwan Society of Preventive Medicine
Takeda Greece
Texas Tech El Paso Medical Center
Tianjin University
Tufts Medical Center

U.S. Department of Veteran Affairs Geriatric Research, Education and Clinical Center
Gainesville
UCLA Integrated Substance Abuse Programs
UOC Farmacia Ospedaliera di Rovigo
USC School of Pharmacy
Ulster University
United Christian Hospital
Universal Medica
University College London
University Hospital, Heinrich-Heine University Dusseldorf
University Medical Center Groningen
University of Bari
University of Brescia
University of British Columbia
University of Edinburgh
University of Groningen
University of Ljubljana, Faculty of pharmacy
University of Michigan
University of Modena
University of Pisa

University of Wolverhampton
Université de Bordeaux
Uniwersytet Jagielloński – Collegium Medicum

VA Greater Los Angeles
VCU
Vall d'Hebron Institut de Recerca
Value Outcomes Organization CZ
Vatche and Tamar Manoukian Division of Digestive Diseases, David Geffen School of Medicine, UCLA

Wake Forest Health
West China School of Nursing & West China Hospital
West China Sichuan Women's and Children's Hospital
Western Wayne FQHC

Xi'an Jiaotong University Hospital

Yeshiva

Zuckerberg San Francisco General Hospital

# EHXIBIT 5

Start Over | Titles | History | Search | Help

previous | next

Labeled View

## MMAS Research Widget Code.

9-12-03

dget Code.
dget Code.
ice)

C, Transfer: By written agreement. Address: 14725 NE 20th St. #D-53 Bellevue, WA 98007-3732.

; Domicile: United States; Citizenship: United States. Authorship: computer program.

0.
3.

Fishman Stewart PLLC, 800 Tower Drive, Suite 610, Troy, MI, 48098, United States, (248) 594-0650, docketing@fishstewip.com

# EXHIBIT 6

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 13 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| MMAS RESEARCH, LLC, a Washington Limited Liability Company,<br><br>        Plaintiff-Appellant,<br><br>v.<br><br>THE CHARITE; ANIKA STEINER; ELISABETH THEISSEN, Dr.; SMARTPATIENT GMBH, a German corporation; MY THERAPY; DOES, 1-50, inclusive,<br><br>        Defendants-Appellees. | No.   23-55202<br><br>D.C. No.<br>2:21-cv-01406-MWF-JPR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted February 13, 2024
Pasadena, California

Before: W. FLETCHER, NGUYEN, and LEE, Circuit Judges.

This case involves a copyright dispute between MMAS Research, a medical

software company, and The Charité, a German hospital. MMAS alleges that Charité

infringed its copyright to the Morisky Widget, a medical software program, by using

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

the Morisky Widget in unauthorized medical studies. The district court dismissed the suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), finding that MMAS lacked standing to pursue a copyright claim because it did not own the Morisky Widget and that MMAS failed to allege a copyright violation.

MMAS raises three arguments on appeal. First, MMAS argues that the district court erred in concluding it lacked standing to sue. Second, MMAS argues that the district court erred in analyzing its copyright claim under the Copyright Act rather than the Digital Millenium Copyright Act (DMCA). Third, MMAS argues that the district court erred in dismissing its state law claims because there was diversity jurisdiction over those claims.[1] We have jurisdiction under 28 U.S.C. § 1291 and affirm.

1. <u>The district court erred in concluding that MMAS lacked standing to sue for copyright infringement.</u> The district court found that a 2020 preliminary settlement agreement from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky Widget from MMAS to Dr. Morisky. But that agreement—which simply outlined terms MMAS and Dr. Morisky "desire[d] to

---

[1] MMAS also argues that the district court should have considered Charité's unclean hands before dismissing MMAS's claims. Because unclean hands are a defense against a party seeking equitable relief, not a reason to find that a complaint plausibly alleged a claim, this argument is meritless. *See Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985), *abrogated on other grounds by Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1527 (9th Cir. 1993).

consent and agree to" sometime in the future—was never finalized. MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget. Similarly, because the agreement was a private contract between Dr. Morisky and MMAS, and because it was never finalized, it was not an abandonment of MMAS's right to sue Charité for copyright infringement. *See Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (finding abandonment where copyright owner's actions demonstrated the intent to "surrender the[ir] rights and allow the public to copy").

2. <u>The district court did not err in analyzing MMAS's copyright claim under the Copyright Act rather than the DMCA.</u> The district court analyzed MMAS's claim under the Copyright Act, concluding that MMAS failed to state a claim because it had not alleged any domestic acts of infringement. On appeal, MMAS does not contend that Charité infringed its copyright under the Copyright Act or argue that the district court erred in concluding that MMAS failed to allege a Copyright Act violation. Instead, MMAS argues that the district court should have analyzed its claims under the DMCA. Although MMAS referenced the DMCA in the caption of its operative pleading, MMAS did not allege facts that prove a DMCA violation, make a DMCA argument to the district court, or otherwise alert the district court that it was pursuing a claim under the DMCA. For example, although MMAS contends on appeal that Charité violated the DMCA's "prohibition on the removal

or alteration of copyright management information," MMAS never mentioned copyright management information in its operative pleading or district court briefing. MMAS instead presented its claims as if they were traditional copyright infringement claims. The district court thus did not err in analyzing MMAS's complaint under the Copyright Act rather than the DMCA.

3. <u>The district court did not err in dismissing the state law claims.</u> MMAS argues that the district court erred in dismissing its state law claims because there was diversity jurisdiction over those claims. MMAS did not allege the citizenship of the parties other than smartpatient GmbH in its operative complaint, and its allegation that "there is a complete diversity of citizenship" is insufficient to invoke the court's jurisdiction. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857–58 (9th Cir. 2001). Although "[d]effective allegations of jurisdiction may be amended," *id.* at 858 (quoting 28 U.S.C. § 1653), the district court previously put MMAS on notice that its jurisdictional allegations were defective, and MMAS did nothing to correct them. The district court thus did not err in dismissing those claims.

**AFFIRMED.**

# EXHIBIT 7

**From:** DONALD MORISKY <dmorisky@ucla.edu>
**Date:** March 1, 2017 at 7:50:53 AM PST
**To:** Thejus Thomas <thejusthmz@gmail.com>
**Cc:** olympic labs <trubow1@gmail.com>
**Subject: Re: Request for License**

Thank you very much, Mr. Thomas, regarding your interest in obtaining a license to use the MMAS-8 diagnostic adherence instrument.

Beginning January 2017, all data collection of the MMAS adherence scales must use the Morisky Widget, which is a digital data entry process using any digital electronic device. My Chief Investigator, Mr. Steve Trubow who works with Olympic Labs, will be in touch with you regarding how this revolutionary paradigm shift is used not only for measuring the level of non-adherence, but also provides a diagnostic assessment as to why the patient is non-adherent and provides a tailored educational counseling session to address these reasons.

<u>All MMAS-8 and MMAS-4 licenses</u> are administered through the Morisky Widget pictured above.

The Morisky Widget provides anywhere, anytime, patient-centered, medication adherence diagnostic assessments using the validated  Morisky Medication Adherence Scale (MMAS-8 & MMAS-4). The Morisky Widget automatically administers (to any internet connected device) MMAS-tests in   over 80 languages with zero clinician and minimum patient burden. The Morisky Widget automatically scores, and reports adherence levels & the risk of intentional/unintentional non-adherence into databases and electronic medical records (EMR) where they are correlated with primary markers of adherence, timely physiological measures and with the prescribed medication for medication reconciliation. Another HUGE ADVANTAGE of the Morisky Widget is the option to select from 110 MMAS-8 condition specific tests with MAPI validated translations which offer a sensitivity of 93% as compared to the generic MMAS-8 at 83% sensitivity (including condition-specific MMAS tests for all chronic and long-term infectious diseases.

Thank you again for your interest in using my validated diagnostic adherence tool.

Sincerely,

Dmorisky

Donald E. Morisky, Sc.D., M.S.P.H., Sc.M.
Professor and Former Chair
Distinguished Chair Professor at Kaohsiung University, Taiwan
Department of Community Health Sciences
UCLA Fielding School of Public Health
650 Charles E. Young Drive South
Room 46-071  CHS
Los Angeles, CA 90095-1772

email: dmorisky@ucla.edu
Phone: .(310) 825-8508
Fax: .(310) 794-1805

On Wed, Mar 1, 2017 at 6:52 AM, Thejus Thomas <thejusthmz@gmail.com > wrote:

> Respected Sir,

Myself Thejus Salomy Thomas Pharm-D student along with 3 of my team members from Krupanidhi College of Pharmacy,Bangalore,India are doing a project on "IMPACT OF PHARMACIST ASSISTED PATIENT COUNSELING IN IMPROVING MEDICATION ADHERENCE AND QUALITY OF LIFE IN EPILEPTIC PATIENTS -AN EDUCATIONAL INTERVENTIONAL STUDY".As we conducted a literature survey for the study we found that in most of the studies investigators have used MMAS-8 questionnaire for determining medication adherence.Upon analysis we found that MMAS-8 scale is easy to use,and it provides the adequate information which would provide an immense support for our project.So we would like to get a license for using MMAS-8.

Kindly accept our request and we hope to get a positive reply as soon as possible.


Thanking you.
Yours Faithfully
Thejus Salomy Thomas and Team

# EXHIBIT 8

Morisky Widget MMAS Retroactive and Perpetual  License

The following shall constitute a perpetual (indefinite term) MORISKY Widget MMAS-8 license between the licensee, Boston Children's Hospital (BCH), 300 Longwood Avenue, Boston MA 02115 and the licensor, MMAS Research LLC (MMAS), 14725 NE 20th Avenue, Bellevue Washington 98007 made this day August 24, 2019.

SECTION 1. TERMS OF USAGE

Ownership and Fees: Morisky Widget software is the intellectual property of MMAS Research LLC.

Translations: Permission will only be granted to use MMAS certified translations from the Morisky Widget or with special arrangements approved and signed by the MMAS. There are no exceptions.

Changes or any modifications to the wording, phrasing or scoring of the MMAS, CUDOS and CUXOS require certification on the Morisky Widget editor and translator.

Coding and scoring criteria of the MMAS are trade secrets of MMAS and as such can never be divulged in any publication, presentation, or website without written permission from MMAS. If BCH divulges Morisky Widget scoring and coding criteria it will be considered a breach of the Morisky Widget license and MMAS will have the right to suspend or terminate the Agreement.

Trademark & Copyright: Permission to use the copyright and trademark protected Morisky Widget MMAS is not and will not be granted for any unauthorized use or translations of the MMAS or other MORISKY intellectual property, in whole or in part. No electronic questionnaires, analyses, research results or publications based on unauthorized use of the Morisky Widget will be permitted. The MMAS required citations and licensing statement provided in Appendix 1 must be included in all manuscripts, web postings or other publication containing Morisky Widget MMAS descriptions or results.

In case of scientific, administrative or intellectual properly misconduct in using the MORISKY Widget diagnostic

assessments, MMAS reserves the right to withdraw permission
for use and to pursue all legal remedies. This Agreement shall be
governed by and construed under the laws of Massachusets.
The Morisky Widget agreed to in this license are non-
transferrable from the BCH

BCH must submit to MMAS all presentations and manuscripts that are
being considered for abstracts/poster presentations or publication to
make certain that all copyright and trademark requirements are
included in all manuscripts submitted for publication. This is to protect
BCH as MMAS has encountered many violations of federal and
international copyright laws from clients as well as individuals who use
MMAS intellectual property without following the required copyright and
trademark guidelines.

SECTION 2. FEES

In consideration of MMAS granting BCH a free perpetual Morisky
Widget MMAS license, BCH agrees to pay MMAS a one-time training
and certification fee of $5000.00 .The six-hour training and certification
will take place in Boston in late October 2019 for up to 35 participants.
After certification, MMAS will provide  10,000 complimentary Morisky
Widget MMAS tests. After the 10,000 complimentary test have been
used, additional MMAS condition and medication specific tests are
$1.00 each. Any additional required training and certification of
additional BCH clinicians who wish to use the Morisky Widget
MMAS will be at BCH  expense.

SECTION 3. DUTIES OF BCH

BCH can use the Morisky Widget, Morisky Kiosk Apple I Phone
APP, and the Morisky API to administer Morisky Widget MMAS
tests. With Licensor approval, BCH can use MMAS paper or
electronic questionnaires but all scoring and coding must be done in
the Morisky Widget.

SECTION 4. DUTIES OF MMAS

MMAS will provide BCH with a perpetual license that can used by
any trained and certified clinician, physician, pharmacist, nurse,
psychologist or health care professional at BCH. Only BCH
employees trained and certified by the Licensor may use the

Morisky Widget MMAS.

MMAS will provide BCH with their own secure Morisky Widget with 10,000 complimentary Morisky Widget MMAS tests after training and certification in Boston.

## SECTION 5. TERMS and TERMINATION

In case of scientific, administrative or intellectual property misconduct in using the Morisky Widget, MMAS reserves the right to withdraw permission for us and to pursue all legal remedies. BCH may terminate this license with or without cause at any time.

## SECTION 6. PAYMENT OF FEES

All fees must be paid by November 30 , 2019 . License fee will be wired to the MMAS Chase bank account.

## SECTION 7. RESULTS

All Morisky Widget data or results will become the sole property of BCH.

Boston Children's Hospital

By:

_____

Date

_____

MMAS Research LLC

By: _____

Date _____

Appendix 1
Required citations, acknowledgement and footnote for the 8-item
MMAS are as follows:
Morisky DE, Ang A, Krousel-Wood M, Ward H. Predictive Validity of
a Medication Adherence Measure in a Patient Setting. J Clin Hyper
2008; 10(5):348-354. Berlowitz DR, Foy CG, Kazis LE, Bolin L,

Conroy LB, Fitzpatrick P, Gure TR, Kimmel PL, Kirscner K, Morisky DE, Newman J, Okney C, Oparil S, et al. for the SPRINT Study Research Group. Impact of Intensive Blood Pressure Therapy on Patient-Reported Outcomes: Outcomes Results from the SPRINT Study. N Engl J Med 2017; 377:733-44.

Morisky DE, DiMatteo MR. Improving the measurement of self-reported medication nonadherence: Final response. J Clin Epidem 2011; 64:258-263.

The footnote below is required in all articles, presentations, web postings, reports and submitted manuscripts, and on the first table or figure which present the Morisky Widget MMAS results or in the Acknowledgment Section of manuscripts submitted for publication:

A Morisky Widget  license agreement is available from MMAS Research LLC 14725 NE 20th St., Bellevue Washington or strubow@morisky.org

# EXHIBIT 9

# EXHIBIT 9



STUDENT PRICING    MMAS LICENSE PRICING    BLOG    LOG IN

### Significant legal developments with phasing-out the Morisky Widget

10/30/2021                                                 <u>0 Comments</u>

Effective November 2021, I have phased-out the Morisky Widget. Under the settlement agreement with Steven Trubow, MMAS Research LLC was required to transfer the Morisky Widget (all MMAS 4 and 8 derivatives) to Dr. Morisky by September 2021. The derivatives include the Morisky Widget, Morisky.org, all language translations, all licenses including Morisky widget sub-licenses, and copyright registrations relating to MMAS4 and 8 widget software that bear the name Morisky, etc.

While, Steven Trubow has very limited authorization to investigate and pursue infringement cases prior to December 2020, his involvement will completely terminate in 2023. I remain the sole developer/owner/licensor of the Morisky Medication Scales 4 and 8

We are transitioning all Morisky Widget users who request it to a new upgraded HIPAA and GDPR compliant digital format - the MMAR digital platform - within the next 45 days. You may receive an email from Philip Morisky, CEO of MMAR LLC, if you would like to commence the process. The Morisky Party and MMAR agrees to provide full access to the Morisky Widget and support as needed to all licenses as long as their licenses to the Morisky Widget are in effect, including adhering to all European Union Privacy regulations (including but not limited to GDPR and HIPAA). You can reach us on our website at www.moriskyscale.com.

Thank you very much for your understanding and cooperation as we transition widget licenses into our company's operations.

Dr. Donald Morisky
President MMAR, LLC

# EXHIBIT 10







# EXHIBIT 11

On Jul 5, 2022, at 1:47 PM, Steve trubow <trubow1@gmail.com> wrote:

**Dr Hartz,**

**Thank you for the prompt response.**

**We can discuss the use of MMAS-8 paper tests in cases when the internet is not available.**

**However, before we begin the discussion, please answer the questions below.**

**How many MMAS-8 tests have been administered to date ?**

**How were the MMAS-8 tests administered scored and coded ?**

**When were the MMAS-8 tests first administered ?**

**When will the last MMAS-8 test be administered?**

Best
Steve in Tokyo
Steven Trubow
MMAS Research LLC USA
Petaluma California
MMAS Research France SAS
Paris France
MMAS Research Italy SRL
Vicenza Italy
(+1)360-824-0701
www.morisky.org
www.medicationsafety.healthcare
https://eu.medicationsafety.healthcare/

**From:** Jacob Hartz <jacob.hartz@icloud.com>
**Sent:** Tuesday, July 5, 2022 10:01 AM
**To:** Steve trubow <trubow1@gmail.com>
**Cc:** Hannah Palfrey <Hannah.Palfrey@cardio.chboston.org>;
thad@scrogginsesq.com; Peter Hoeller <peter.hoeller@bjfip.com>
**Subject:** Re: NCT04458766

We plan on administering the questions through the widget. We were
planning on having a copy of the questions in case we do not have
immediate access to the widget (our wifi and cell service in clinic can be
spotty). All questions would then be entered using the widget.

Would that be okay.


Jacob Hartz, MD, MPH
Department of Cardiology
Boston Children's Hospital
jacob.hartz@cardio.chboston.org


> On Jul 5, 2022, at 12:11 AM, Steve trubow
> <trubow1@gmail.com> wrote:
>
> Dr Hartz,
>
> Sorry for the inconvenience, one more question.
>
> How will the MMAS-8 tests be administered ?
>
> Please remember if you administer MMAS-8 tests outside of
> the Morisky Widget, it requires Licensor approval, to use
> MMAS paper or electronic questionnaires.
>
> Best
> Steve in Tokyo
> Steven Trubow
> MMAS Research LLC USA
> Petaluma California
> MMAS Research France SAS
> Paris France
> MMAS Research Italy SRL
> Vicenza Italy
> (+1)360-824-0701
> www.morisky.org
> www.medicationsafety.healthcare

https://eu.medicationsafety.healthcare/

---

**From:** Steve trubow <trubow1@gmail.com>
**Sent:** Monday, July 4, 2022 8:58 PM
**To:** jacob.hartz@icloud.com;
Hannah.Palfrey@cardio.chboston.org
**Cc:** thad@scrogginsesq.com; 'Peter Hoeller'
<peter.hoeller@bjfip.com>; 'Steve trubow'
<trubow1@gmail.com>
**Subject:** FW: NCT04458766

**Hi Dr. Hartz,**

**Thank you for your prompt response.**

**Please update the clinical trials website with the required reference to the Morisky Widget. When it is updated, please send me a link.**

**Thank you for your cooperation.**

Best
Steve in Tokyo
Steven Trubow
MMAS Research LLC USA
Petaluma California
MMAS Research France SAS
Paris France
MMAS Research Italy SRL
Vicenza Italy
(+1)360-824-0701
www.morisky.org
www.medicationsafety.healthcare
https://eu.medicationsafety.healthcare/

**From:** Jacob Hartz jacob.hartz@icloud.com
**Sent:** Monday, July 4, 2022 7:34 PM
**To:** Steve trubow trubow1@gmail.com
**Cc:** thad@scrogginsesq.com; peter.hoeller@bjfip.com;
Hannah Palfrey Hannah.Palfrey@cardio.chboston.org

**Subject:** Re: NCT04458766

Hi,

Hannah and I are the only ones who are administering MMAS. No one at Wellth will be administering this test. Wellth uses a different mechanism to measure adherence through a photograph and will not take part in MMAS or have results of the MMAS.

I will include the listing.

Thank you.

---

**From:** Steve trubow <trubow1@gmail.com>
**Sent:** Sunday, July 3, 2022 5:17 PM
**To:** 'jacob.hartz@icloud.com' <jacob.hartz@icloud.com>
**Cc:** 'thad@scrogginsesq.com' <thad@scrogginsesq.com>; 'peter.hoeller@bjfip.com' <peter.hoeller@bjfip.com>; 'Steve trubow' <trubow1@gmail.com>
**Subject:** NCT04458766

<image001.png>

Dear Dr Hartz,

I hope this email finds you well.

MMAS Research is very concerned about the unauthorized use of the Wellth App in "The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents NCT04458766 study." On the clinical trial website for NCT04458766 , you reported that "Lastly, the investigators will test the subject's adherence (using the Morisky Medication Adherence Scale and Wellth App) during the 60 days following discontinuation of the incentives to determine if any effect of the incentive persists after the incentive is discontinued.

---

In the BCH Morisky Widget license, you agreed that only BCH employees trained and certified by the Licensor may use the Morisky Widget MMAS.  BCH can use the Morisky Widget, Morisky Kiosk Apple I Phone
APP, and the Morisky API to administer Morisky Widget MMAS tests. With Licensor approval, BCH can use MMAS paper or electronic questionnaires, but all scoring and coding must be done in the Morisky Widget.

As I recall the only persons trained and certified to use the Morisky Widget MMAS were you and your associate. I have no recollection of training, certifying or authorizing the use of the MMAS-8 by Wellth.

In addition Appendix 1 of your attached license requires that the footnote below is required in all <u>web postings</u>,

A Morisky Widget license agreement is available from MMAS Research LLC 14725 NE 20th St., Bellevue Washington or strubow@morisky.org

Can you please provide an explanation ?

Thank you in advance for your prompt response.

Best
Steve
Steven Trubow
MMAS Research LLC USA
Petaluma California
MMAS Research France SAS
Paris France
MMAS Research Italy SRL
Vicenza Italy
(+1)360-824-0701
www.morisky.org
www.medicationsafety.healthcare
https://eu.medicationsafety.healthcare/

From: trubow1@gmail.com <trubow1@gmail.com>
Sent: Wednesday, October 23, 2019 9:13 AM
To: 'Jacob Hartz' <jacob.hartz@icloud.com>
Cc: trubow1@gmail.com; 'KENNETH I GROSS' <kgross@kigrosslaw.com>
Subject: invoice for BCH license and training

Dr. Hartz,

Please find attached an invoice, 2019 w-9 and wire instructions.

I also attached a slide deck for the training.
Looking forward to meeting you and your colleagues in Boston.
Please let me know if you have any questions.

Steven Trubow
MMAS Research LLC USA
Coronado California
MMAS Research France SAS
Paris France
MMAS Research Italy SRL
Vicenza Italy
(+1)360-824-0701
www.morisky.org
SEE the new I-Phone Morisky Kiosk in the APP Store

# EXHIBIT 12

# The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents

NCT04458766

**Sponsor/Collaborators**

Sponsor: Boston Children's Hospital
Responsible Party: Principal Investigator
Investigator: Jacob Hartz
Official Title: Staff Cardiologist and Instructor of Pediatrics
Affiliation: Boston Children's Hospital
Collaborators: Wellth Inc.
MMAS-8 with permission from Dr Donald Morisky. as written below

Type: MMAS-8 with permission from Dr Donald Morisky. as written below:
URL: http://www.moriskyscale.com
The MMAS-8 Scale, content, name, and trademarks are protected by US copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR, LLC.

Responsible Party:                    Jacob Hartz, Staff Cardiologist and Instructor of Pediatrics, **Boston Chil**
We will test the subject's adherence prior to the use of incentives (using the Morisky Medication Adherence Scale and the Wellth Mobile Application) and during the period of time the incentives are provided. Lastly, we will test the subject's adherence (using the Morisky Medication Adherence Scale

APPROACH Determine the efficacy of a monetary incentive to improve medication adherence. Aim 1.1 We will determine the baseline adherence level in adolescents with FH prescribed a statin using the Morisky Medication Adherence Scale (MMAS).

Adherence will be measured by two methods. The first will be through the Morisky Medication Adherence Scale (MMAS) and the second will be using the proportion of prescribed pills taken.

The choice to measure adherence with two methods is because we only want to include patients who have poor adherence in the study. As self-reported adherence may be inaccurate, we will use the validated Morisky Medication Adherence Scale (MMAS) to assess baseline adherence. However, during the study period, adherence will be measured much more accurately through the use of the Wellth App. As the score of the MMAS cannot be converted to the proportion of prescribed pills taken, we will simply measure changes in MMAS score throughout the study as well as measure changes in the proportion of prescribed days taken. We provide power calculations for both scenarios below.

riteria:   Inclusion Criteria:

1. Diagnosis of FH based on National Lipid Association (NLA) criteria and/or genetic testing
2. Prescribed a statin
3. Be able to provide written, informed consent or have a parent/guardian provide written, info
4. Be able to use a mobile phone and application
5. Morisky Medication Adherence Scale score of ≤ 6

APPROACH Determine the efficacy of a monetary incentive to improve medication adherence. Aim 1.1 The investigators will determine the baseline adherence level in adolescents with FH prescribed a statin using the Morisky Medication Adherence Scale (MMAS).

Aim 1.2 The investigators will determine the efficacy of a monetary incentive on medication adherence. Patients who are found to have low adherence according to the MMAS in Aim 1.1 will be enrolled into an intervention using the Wellth® mobile health application (Wellth App).

Aim 1.3 Next, the investigators will determine adherence 60 days after the incentives have been discontinued using the tracking features in the Wellth App and the MMAS.

1. Intervention (Days 15-74): Subjects will use Wellth app for 60 days, with incentives provided at the 30- and 60-day mark. At the end of the intervention period (Day 60), the subject will attend a clinic visit with the medical provider and a fasting lipid panel and MMAS will also be collected at this time.
2. Post-intervention (Days 74-134): Subjects will continue to use the Wellth app and receive reminders, but with no incentives provided, for 60 days. A clinic visit, fasting lipid profile, and MMAS will also be collected following the post-intervention period.

# EXHIBIT 13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD E. MORISKY,

          Plaintiff,

   v.

MMAS RESEARCH LLC, et al.,

          Defendant.

CASE NO. 2:21-CV-1301-RSM-DWC

REPORT AND RECOMMENDATION

Noting Date: April 29, 2022

     The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge David W. Christel pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4. Before the Court is Plaintiff's Motion for a Preliminary Injunction (Dkt. 42).

<u>BACKGROUND</u>

     Plaintiff, Donald Morisky (Plaintiff) is a professor emeritus at the University of California, Los Angeles Fielding School of Public Health. Dkt. 22 at 1-2. He claims to have created an assessment tool for clinicians to measure medication non-adherence in a variety of patient populations, called the "Morisky Medication Adherence Scale" (MMAS). *Id.* at 2. In the

1    early 2000s Plaintiff obtained Copyright Registrations for variations of this assessment tool,

2    called the MMAS-4 and the MMAS-8. *Id*. at 9. He also has a registered trademark in "MMAS".

3    Dkt. 42-2.

4    　　　　In 2011, Plaintiff founded MMAS Research, LLC as a California limited liability

5    company and began selling licenses to use his copyrighted products and providing training to

6    licensees. *Id*. at 11. According to Plaintiff, from approximately 2011 to 2014 he licensed over

7    3000 clinics, practitioners, and organizations to use his copyrighted works. *Id*.

8    　　　　In April 2014, Plaintiff entered into a licensing agreement (the 2014 licensing agreement)

9    with Steve Trubow, who owned a Washington limited liability company at the time called

10   Olympic Labs, LLC. *Id*. at 12. One of the goals of this licensing agreement was for Steve

11   Trubow to create an electronic version of the MMAS-4 and MMAS-8—now commonly referred

12   to as "the Morisky Widget"—to "automatically" generate a diagnostic and intervention protocols

13   from patient answers to the MMAS-4 or MMAS-8. Dkt. 21-5 at 16. The 2014 licensing

14   agreement provided that the parties would share, fifty-fifty, the revenue derived from issuing

15   third-party licenses to the Morisky Widget, but Plaintiff would "at all times remain the owner of

16   the MMAS-8 and any associated intellectual property, patents, copyrights or derivatives derived

17   from the use of the MMAS-8 … ". Dkt. 22 at 12.

18   　　　　In December 2016, Steve Trubow re-organized Olympic Labs LLC, as "MMAS Research

19   LLC," a Washington limited liability company, listing himself and Plaintiff as "managers". Dkt.

20   21-5 at 19, 21; Dkt 22-7. However, Plaintiff alleges that Steve Trubow also formed international

21   subsidiaries of MMAS Research LLC without consulting him. Dkt. 22 at 13.

22   　　　　Following a series of disagreements between the parties, in January 2019 Plaintiff formed

23   his own company called Morisky Medication Adherence Research LLC (MMAR), a Nevada

24

1   limited liability company, and, according to Steve Trubow, "began to represent to clients of the

2   jointly owned MMAS Research LLC that it no longer had rights to issue licenses to the Morisky

3   Widget or any Morisky intellectual property." Dkt. 39 at 4. However, according to Plaintiff, on

4   June 21, 2019 he notified Steve Trubow that he was voluntarily "withdrawing" from MMAS

5   Research LLC. Dkt. 21-5 at 21. Hereinafter Steve Trubow and MMAS Research LLC will be

6   referred to collectively as "Defendants".

7        On July 27, 2019 Defendants filed a Complaint against Plaintiff in King County Superior

8   Court alleging breach of fiduciary duty and tortious interference. Dkt. 21-1. Plaintiff

9   counterclaimed, asserting copyright and trademark infringement, among others claims. Dkt. 21-

10  5.

11       On March 10, 2020, Plaintiff provided written notice to Defendants of their alleged

12  breach of the 2014 licensing agreement, stating "the License [sic] Agreement will terminate on

13  Friday, April 10, 2020" if Defendants fail to cure their breaches by: (1) Providing a full financial

14  accounting of MMAS Research from 2017 to the present; (2) Paying Plaintiff all sums due and

15  not paid under the License [sic] Agreement; and (3) Removing any claims of ownership to the

16  MMAS-8 and all Morisky IP. Dkt. 22 at 14.

17       Defendants allegedly failed to comply with these terms. *Id*. at 14-15. Thus, on May 28,

18  2020 Plaintiff filed a Complaint against Defendants in the United States District Court of Nevada

19  alleging copyright and trademark infringement, deceptive trade practices, and state law claims.

20  Dkt. 21-13.

21       With two cases pending—one brought by Defendants against Plaintiff in Washington

22  state court, the other brought by Plaintiff against Defendants in Nevada federal court—the parties

23  reached a verbal settlement agreement on July 2, 2020 that sought to resolve all outstanding

24

1   claims and counterclaims "with prejudice." *Id*. at 15; Dkt. 22-6 at 1, 8. This agreement was

2   reduced to writing and signed by the parties on December 6, 2020 (the SA). Dkt. 22-6.

3        The SA sets out certain rights and obligations of each party. Unsatisfied with each other's

4   performance, shortly after agreeing to the SA the parties began discussing dispute resolution as

5   required by paragraph 17 of the SA. Dkt. 22 at 17. Relations became so strained that during the

6   process of attempting to schedule dispute resolution, yet another dispute arose regarding what

7   type of dispute resolution was required by paragraph 17: binding arbitration or mediation. *Id*.

8        Defendants returned to King County Superior Court on May 11, 2021 seeking to enforce

9   or rescind the SA. Dkt. 39 at 7; Dkt. 21-22. In response, Plaintiff's moved to compel mediation

10   and dismiss Defendants' case without prejudice, which the King County Superior Court granted

11   on July 9, 2021. Dkt. 21-27. On August 20, 2021 the King County Superior Court issued an

12   order affirming and upholding its July 9, 2021 order, and finding that section 17 of the SA

13   contains a "mediation clause as a precondition of entering a legal cause of action alleging

14   breach." Dkt. 21-32. Nevertheless, the parties remained at an impasse regarding the type of

15   alternative dispute resolution to employ, and have never engaged in post-SA mediation. Dkt. 22

16   at 18. Plaintiff initiated this action on September 24, 2021. Dkt. 1.

17        While Defendants' Motion to Dismiss (Dkt. 39) was pending and not yet decided by the

18   Court[1], on March 10, 2022 Plaintiff filed the instant motion for a Preliminary Injunction Dkt. 42.

19   In the motion, he asks the Court to issue an order prohibiting Defendants from using and selling

20   all "Morisky IP" because, according to Plaintiff, Defendants are not limiting their use to "pursuit

21   of previously existing infringement claims" as permitted by paragraph 4 of the SA. Dkt. 42 at 6.

22

23   _____

24      [1] The undersigned filed a Report and Recommendation on April 8, 2022 recommending the Motion to
Dismiss be denied. Dkt. 47.

REPORT AND RECOMMENDATION - 4

1 Instead, Plaintiff alleges Defendants are escalating their infringement of Morisky IP and have

2 formed a new company—called Medication Safety Healthcare LLC—and updated the

3 Morisky.org website to offer perpetual licensing of the Morisky Widget, in violation of both the

4 SA and Plaintiff's copyrights. Dkt. 42 at 6.; Dkt. 42-7 at 4.

5       Defendants oppose Plaintiff's motion because they insist no infringement is occurring as

6 their only use of Morisky IP is strictly in keeping with the terms of the SA. Dkt. 44. Defendants

7 also question (for the first time in this case) the validity of Plaintiff's copyrights, contending they

8 were obtained by fraudulent representations to the Copyright Office. *Id*. In his reply, Plaintiff

9 defends the validity of his Copyright Registrations to the MMAS-4 and the MMAS-8, and

10 maintains that he is suffering irreparable harm by Defendants' actions. Dkt. 46.

11 <u>STANDARD</u>

12       The Copyright Act provides that a court "may ... grant temporary and final injunctions on

13 such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17

14 U.S.C. § 502(a). Thus, injunctive relief to prevent copyright infringement is available as an

15 equitable remedy at the district court's discretion. *eBay, Inc. v. MercExchange, LLC*, 547 U.S.

16 388, 394 (2006). Such discretion should be "exercised consistent with traditional principles of

17 equity." *Id*.

18       The court may issue a preliminary injunction where a party establishes (1) a likelihood of

19 success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary

20 relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an

21 injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A party

22 can also satisfy the first and third elements of the test by raising serious questions going to the

23 merits of its case and showing the balance of hardships tips sharply in its favor. *Alliance for the*

24

1  *Wild Rockies v. Cottrell Eyeglasses*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011); *Riverside*

2  *Publishing Co. v. Mercer Publishing LLC*, Case No. C11–1249RAJ, WL 3420421, *3 (W.D.

3  Wash. Aug. 4. 2011).

4      The party seeking the injunction bears the burden of proof as to each of these elements.

5  *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine*

6  *Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely

7  allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate

8  threatened injury as a prerequisite to preliminary injunctive relief.")

9                                    DISCUSSION

10     Plaintiff seeks a preliminary injunction "prohibiting Defendants from using and selling

11  the Morisky IP." Dkt. 42 at 16. Plaintiff contends he is entitled to an injunction because he meets

12  all the elements of the *Winter* test with respect to his Copyright Infringement and Trademark

13  Infringement claims. The Court disagrees.

14     A party seeking a preliminary injunction must demonstrate that irreparable injury is likely

15  unless injunctive relief is granted. *See Winter*, 555 U.S. at 22. Therefore, Plaintiff must establish

16  that he faces a likelihood of irreparable harm if Defendants are not enjoined from using and

17  selling all "Morisky IP", including but not limited to the Morisky Widget to which Plaintiff does

18  not currently hold the Copyright Registration.[2] Plaintiff argues that without an injunction he will

19  lose non-compensable time to "benefit or exploit his copyrights", his copyrights will lose value

20

21  _____

22      [2] Pursuant to the SA Defendant MMAS Research LLC holds the Copyright Registration to the Morisky
    Widget and "will assign" it to Plaintiff at the expiration of the "transition period" and provide Plaintiff with all the
23  information needed for him to take over the business of servicing sublicensees of the Morisky Widget. Dkt. 22-6 at
    4-7.
24

1  because "they are intrinsically connected with [his] world-wide 40-year reputation in the field",

2  and he will lose the "ability to control his copyrights." Dkt. 42 at 14; Dkt. 46 at 12.

3       In considering whether these allegations rise to the level of "irreparable harm" the record

4  does not contain any evidence upon which the Court could find these harms are likely to occur.

5  For instance, Plaintiff has not provided any evidence that he is unable to sell licenses to the

6  MMAS-4 or MMAD-8 copyrights, or that they have lost value. Nor has he shown evidence of

7  harm to his reputation caused by anything Defendants are doing. *See Fox Broadcasting Co. v.*

8  *Dish Network, L.L.C.*, 905 F. Supp. 2d 1088, 1110 (C.D. Cal. 2012), *aff'd* 747 F.3d 1060 (9th

9  Cir. 2013)(finding the harm alleged by plaintiff did not "flow from" the conduct plaintiff sought

10  to enjoin); *see also Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 982 (9th Cir. 2011) (Perfect 10

11  did not prove a sufficient causal connection between irreparable harm to its business and

12  Google's search service).

13       More importantly, he has not shown evidence that Defendants are actually infringing

14  Plaintiff's registered copyrights. Defendants aver that they only use the Morisky Widget and

15  associated Morisky IP to facilitate Claim Settlements with the parties listed in Exhibit 3 to the

16  SA and to establish a mental-health specific survey that Plaintiff's counsel signed off on as non-

17  infringing. Dkt. 44 at 7[3]; Dkt. 22-6 at 6. Defendants indicate that their obligation under the SA to

18  pursue Settlement Claims with known infringers of the Morisky Widget is not yet complete and

19  they cannot fulfill their obligation without retaining the Registered Copyright to the Morisky

---

22     [3] Defendants state, "Beyond the securing and service of the licenses in accord with the [SA], the only other activity by [Defendants] has been the administration of a distinct four question survey known as the Global Medication Reconciliation Form ("GMRF"). The GMRF was specifically designed to enable MMAS to market and establish the GMRF as a non-infringing survey once the tasks set out in the [SA] as to be completed in a transition period are to be, in fact, complete."

1  Widget because Copyright law prohibits assigning enforcement rights to a third party. Doc. 39 at

2  15; Dkt. 41 at 3-4.

3      However, even assuming for the sake of argument that Defendants are selling licenses to

4  the Morisky Widget in contravention of the SA, Plaintiff still could not prove Copyright

5  Infringement because as provided under the SA he does not hold the Copyright Registration to

6  the Morisky Widget. In other words, even if Plaintiff proves to be correct on this claim, it bears

7  no causal connection to Plaintiff's alleged loss of control over his copyrights to the MMAS-4 or

8  the MMAS-8, or trademark of "MMAS."

9      Should it be determined that Defendants *have* breached the SA, Plaintiff can be made

10 whole with money, because the cost of any "illegal" licenses Defendants might be selling is

11 easily quantifiable**. *But cf. California Pharmacists Ass'n v. Maxwell–Jolly*, 563 F.3d 847, 851–52

12 (9th Cir. 2009)("irreparable harm is established when a plaintiff is unlikely to be made whole by

13 an award of monetary damages or some other legal remedy at a later date, in the ordinary course

14 of litigation") *rev'd on other grounds by Douglas v. Independent Living Center of Southern*

15 *California, Inc*., 565 U.S. 606 (2012).

16     The fact the Morisky Widget is exclusively in Defendants' control is a particularly salient

17 point here because the purpose of a preliminary injunction is to preserve the status quo until the

18 case can be heard on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d

19 1415, 1422 (9th Cir. 1984). "The status quo is the last uncontested status which preceded the

20 pending controversy." *Westinghouse Elec. Corp. v. Free Sewing Mach. Co*., 256 F.2d 806 (7th

21 Cir. 1958). Here the last uncontested status preceding this case is clearly spelled out by the SA.

22

23

24

1  Paragraph four of the SA authorizes Defendants to pursue retroactive licensing agreements for

2  the Morisky Widget with the entities listed in exhibit three attached thereto. Dkt. 22-6 at 4.[4]

3  Were the Court to issue a preliminary injunction this status quo would be upset by halting the

4  process of Defendants pursuing retroactive licensing agreements, and as a result, the relief the

5  SA ultimately affords Plaintiff (including the assignment of the Morisky Widget and any related

6  intellectual property to him (Dkt. 22-6 at 2)) would only be further delayed.

7  Finally, Plaintiff's delay in seeking injunctive relief is inconsistent with his claim of

8  irreparable harm. Defendants point out that Plaintiff waited six months since the inception of this

9  case to file for injunctive relief. Dkt. 44 at 14. It is well established that the Court may infer from

10 delay in seeking injunctive relief that irreparable harm is not present. *See Oakland Trib., Inc. v.*

11 *Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Valeo Intell. Prop., Inc. v. Data*

12 *Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) (three-month delay belied claims

13 of irreparable harm; "[a] three-month delay in seeking injunctive relief is inconsistent with

14 Valeo's insistence that it faces irreparable harm."). Requesting injunctive relief six months into

15 the parties' third lawsuit involving substantially similar facts and claims is reason enough to

16 deny Plaintiff's motion. *See e.g., Garcia v. Google, Inc.,* 786 F.3d 733, 746 (9th Cir. 2015)(citing

17 Nimmer on Copyright § 14.06[A][3][c] (noting unreasonable delay can defeat irreparable injury

18 and the length of time "need not be great")); *see also Edge Games, Inc. v. Electronic Arts, Inc.*,

19

20

---

21 [4] Paragraph Four of the SA states, "Donald Morisky authorizes MMAS Research, LLC through its
   attorney(s) to prosecute the Claim Settlements listed in Exhibit 3 from which a Claim Settlement may be sought

22 related to the MMAS-4, MMAS-8, the Morisky Widget and any related intellectual property, and further agrees to
   cooperate in any existing investigations, claims and ensuing litigation of any such claims, whether now pending or

23 to be litigated in the future, including the formal assignment of such claims, if necessary to MMAS Research, LLC.
   With the exception of any filed, active, lawsuit then proceeding, all prosecution of Claim Settlements by MMAS
   Research, LLC through its attorney(s) must conclude within two (2) years of the expiration of the Transition Period

24 as described in Paragraph 7 of this Agreement. Any legal actions, including claims for infringement, may be filed in
   the name of Donald Morisky if required by law, as the owner(s) of the Morisky IP."

745 F.Supp. 2d 1101, 1118 (N.D. Cal., October 1, 2010)(delay of 21 months before seeking injunctive relief since alleged infringing product offered for sale to the public was unreasonable).

Since Plaintiff has not shown he is "'likely to suffer irreparable harm in the absence of preliminary relief,' *Winter*, 129 S.Ct. at 374, [the Court] need not address the . . . remaining elements of the preliminary injunction standard." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

<u>CONCLUSION</u>

For the reasons stated above, the Court recommends Plaintiff's Motion for Preliminary Injunction (Dkt. 42) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April 29, 2022, as noted in the caption.

Dated this 15th day of April, 2022.

David W. Christel
United States Magistrate Judge

# EXHIBIT 17

**· Sponsor/Collaborators**

| | |
|---|---|
| Sponsor: | Boston Children's Hospital |
| Responsible Party: | Principal Investigator |
| | Investigator: Jacob Hartz |
| | Official Title: Staff Cardiologist and Instructor of Pediatrics |
| | Affiliation: Boston Children's Hospital |
| Collaborators: | Wellth Inc. |
| | MMAS Research LLC |

https://classic.clinicaltrials.gov/ct2/history/NCT04458766?V_5=View#StudyPageTop

# EXHIBIT 18

# The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents

NCT04458766

**Sponsor/Collaborators**

Sponsor: Boston Children's Hospital

Responsible Party: Principal Investigator

Investigator: Jacob Hartz

Official Title: Staff Cardiologist and Instructor of Pediatrics

Affiliation: Boston Children's Hospital

Collaborators: Wellth Inc.

MMAS-8 with permission from Dr Donald Morisky. as written below

Type: MMAS-8 with permission from Dr Donald Morisky. as written below:

URL: http://www.moriskyscale.com

The MMAS-8 Scale, content, name, and trademarks are protected by US copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR, LLC.

Responsible Party:                    Jacob Hartz, Staff Cardiologist and Instructor of Pediatrics, **Boston Chil**

We will test the subject's adherence prior to the use of incentives (using the Morisky Medication Adherence Scale and the Wellth Mobile Application) and during the period of time the incentives are provided. Lastly, we will test the subject's adherence (using the Morisky Medication Adherence Scale

APPROACH Determine the efficacy of a monetary incentive to improve medication adherence. Aim 1.1 We will determine the baseline adherence level in adolescents with FH prescribed a statin using the Morisky Medication Adherence Scale (MMAS).

Adherence will be measured by two methods. The first will be through the Morisky Medication Adherence Scale (MMAS) and the second will be using the proportion of prescribed pills taken.

The choice to measure adherence with two methods is because we only want to include patients who have poor adherence in the study. As self-reported adherence may be inaccurate, we will use the validated Morisky Medication Adherence Scale (MMAS) to assess baseline adherence. However, during the study period, adherence will be measured much more accurately through the use of the Wellth App. As the score of the MMAS cannot be converted to the proportion of prescribed pills taken, we will simply measure changes in MMAS score throughout the study as well as measure changes in the proportion of prescribed days taken. We provide power calculations for both scenarios below.

riteria:  Inclusion Criteria:

1. Diagnosis of FH based on National Lipid Association (NLA) criteria and/or genetic testing
2. Prescribed a statin
3. Be able to provide written, informed consent or have a parent/guardian provide written, info
4. Be able to use a mobile phone and application
5. Morisky Medication Adherence Scale score of ≤ 6

APPROACH Determine the efficacy of a monetary incentive to improve medication adherence.
Aim 1.1 The investigators will determine the baseline adherence level in adolescents with FH prescribed a statin using the Morisky Medication Adherence Scale (MMAS).

Aim 1.2 The investigators will determine the efficacy of a monetary incentive on medication adherence. Patients who are found to have low adherence according to the MMAS in Aim 1.1 will be enrolled into an intervention using the Wellth® mobile health application (Wellth App).

Aim 1.3 Next, the investigators will determine adherence 60 days after the incentives have been discontinued using the tracking features in the Wellth App and the MMAS.

1. Intervention (Days 15-74): Subjects will use Wellth app for 60 days, with incentives provided at the 30- and 60-day mark. At the end of the intervention period (Day 60), the subject will attend a clinic visit with the medical provider and a fasting lipid panel and MMAS will also be collected at this time.
2. Post-intervention (Days 74-134): Subjects will continue to use the Wellth app and receive reminders, but with no incentives provided, for 60 days. A clinic visit, fasting lipid profile, and MMAS will also be collected following the post-intervention period.

# EXHIBIT 20

**From:** "Hartz, Jacob" <Jacob.Hartz@cardio.chboston.org>
**Date:** July 6, 2022 at 2:22:50 PM PDT
**To:** Steve trubow <trubow1@gmail.com>
**Cc:** "Palfrey, Hannah" <Hannah.Palfrey@cardio.chboston.org>,
thad@scrogginsesq.com, Peter Hoeller <peter.hoeller@bjfip.com>
**Subject: Re: NCT04458766**

 Hi,

We have administered 4 tests. The tests were administered from memory. Our enrollment protocol was answering a positive (i.e., consistent with lower adherence) to at least one question. and then I had planned on entering and scoring the tests on the widgets. I will need to confirm the date of the first enrollee and have the details in my office, but am not there today. The last MMAS will be administered within the next 2 years once we have completed enrollment.

If any of this is serious breach of contract and you feel it necessary to end our agreement, we would understand. We certainly did not mean to do anything incorrectly and it was always our intention to follow our contract entirely. It would be a tremendous loss to our study, but we want to respect our agreement and your organization. Although the citation was included in our references, we have now added you as a "Collaborator" because this appears to be best place to signal your role. If there is a preferred place, please let me know and I can change it.

Thank you. Again, our sincerest apologies if this was done incorrectly.

- Jake


Jacob Hartz, MD, MPH
Director of Preventive Cardiology
Department of Cardiology
Boston Children's Hospital

**From:** Jacob Hartz <jacob.hartz@icloud.com>
**Sent:** Tuesday, July 5, 2022 10:01 AM
**To:** Steve trubow <trubow1@gmail.com>
**Cc:** Hannah Palfrey <Hannah.Palfrey@cardio.chboston.org>;
thad@scrogginsesq.com; Peter Hoeller
<peter.hoeller@bjfip.com>
**Subject:** Re: NCT04458766

We plan on administering the questions through the widget.

We were planning on having a copy of the questions in case we do not have immediate access to the widget (our wifi and cell service in clinic can be spotty). All questions would then be entered using the widget.

Would that be okay.


Jacob Hartz, MD, MPH
Department of Cardiology
Boston Children's Hospital
jacob.hartz@cardio.chboston.org


> On Jul 5, 2022, at 12:11 AM, Steve trubow <trubow1@gmail.com> wrote:
>
> Dr Hartz,
>
> Sorry for the inconvenience, one more question.
>
> How will the MMAS-8 tests be administered ?
>
> Please remember if you administer MMAS-8 tests outside of the Morisky Widget, it requires Licensor approval, to use MMAS paper or electronic questionnaires.
>
> Best
> Steve in Tokyo
> Steven Trubow
> MMAS Research LLC USA
> Petaluma California
> MMAS Research France SAS
> Paris France
> MMAS Research Italy SRL
> Vicenza Italy
> (+1)360-824-0701
> www.morisky.org
> www.medicationsafety.healthcare
> https://eu.medicationsafety.healthcare/
>
>
> **From:** Steve trubow <trubow1@gmail.com>

**Sent:** Monday, July 4, 2022 8:58 PM
**To:** jacob.hartz@icloud.com; Hannah.Palfrey@cardio.chboston.org
**Cc:** thad@scrogginsesq.com; 'Peter Hoeller'
<peter.hoeller@bjfip.com>; 'Steve trubow'
<trubow1@gmail.com>
**Subject:** FW: NCT04458766

**Hi Dr. Hartz,**

**Thank you for your prompt response.**

**Please update the clinical trials website with the
required reference to the Morisky Widget. When
it is updated, please send me a link.**

**Thank you for your cooperation.**

Best
Steve in Tokyo
Steven Trubow
MMAS Research LLC USA
Petaluma California
MMAS Research France SAS
Paris France
MMAS Research Italy SRL
Vicenza Italy
(+1)360-824-0701
www.morisky.org
www.medicationsafety.healthcare
https://eu.medicationsafety.healthcare/

**From:** Jacob Hartz jacob.hartz@icloud.com
**Sent:** Monday, July 4, 2022 7:34 PM
**To:** Steve trubow trubow1@gmail.com
**Cc:** thad@scrogginsesq.com; peter.hoeller@bjfip.com;
Hannah
Palfrey Hannah.Palfrey@cardio.chboston.org
**Subject:** Re: NCT04458766

Hi,

Hannah and I are the only ones who are
administering MMAS. No one at Wellth will be
administering this test. Wellth uses a different

mechanism to measure adherence through a photograph and will not take part in MMAS or have results of the MMAS.

I will include the listing.

Thank you.

---

**From:** Steve trubow <trubow1@gmail.com>
**Sent:** Sunday, July 3, 2022 5:17 PM
**To:** 'jacob.hartz@icloud.com' <jacob.hartz@icloud.com>
**Cc:** 'thad@scrogginsesq.com' <thad@scrogginsesq.com>; 'peter.hoeller@bjfip.com' <peter.hoeller@bjfip.com>; 'Steve trubow' <trubow1@gmail.com>
**Subject:** NCT04458766

<image001.png>

Dear Dr Hartz,

I hope this email finds you well.

MMAS Research is very concerned about the unauthorized use of the Wellth App in "The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents NCT04458766 study." On the clinical trial website for NCT04458766 , you reported that "Lastly, the investigators will test the subject's adherence (using the Morisky Medication Adherence Scale and Wellth App) during the 60 days following discontinuation of the incentives to determine if any effect of the incentive persists after the incentive is discontinued.

---

In the BCH Morisky Widget license, you agreed that only BCH employees trained and certified by the Licensor may use the Morisky Widget MMAS. BCH can use the Morisky Widget, Morisky Kiosk Apple I Phone
APP, and the Morisky API to administer Morisky Widget MMAS tests. With Licensor approval, BCH can use MMAS paper or electronic questionnaires, but all scoring and coding must be done in the

Morisky Widget.

As I recall the only persons trained and certified to use the Morisky Widget MMAS were you and your associate. I have no recollection of training, certifying or authorizing the use of the MMAS-8 by Wellth.

In addition Appendix 1 of your attached license requires that the footnote below is required in all web postings,

A Morisky Widget license agreement is available from MMAS
Research LLC 14725 NE 20th St., Bellevue Washington or strubow@morisky.org

Can you please provide an explanation ?

Thank you in advance for your prompt response.

Best
Steve
Steven Trubow
MMAS Research LLC USA
Petaluma California
MMAS Research France SAS
Paris France
MMAS Research Italy SRL
Vicenza Italy
(+1)360-824-0701
www.morisky.org
www.medicationsafety.healthcare
https://eu.medicationsafety.healthcare/

From: trubow1@gmail.com <trubow1@gmail.com>
Sent: Wednesday, October 23, 2019 9:13 AM
To: 'Jacob Hartz' <jacob.hartz@icloud.com>
Cc: trubow1@gmail.com; 'KENNETH I GROSS' <kgross@kigrosslaw.com>
Subject: invoice for BCH license and training

Dr. Hartz,

Please find attached an invoice, 2019 w-9 and wire instructions.
I also attached a slide deck for the training.
Looking forward to meeting you and your colleagues in Boston.
Please let me know if you have any questions.

Steven Trubow
MMAS Research LLC USA
Coronado California
MMAS Research France SAS
Paris France
MMAS Research Italy SRL
Vicenza Italy
(+1)360-824-0701
www.morisky.org
SEE the new I-Phone Morisky Kiosk in the APP Store

# EXHIBIT 21

## Morisky Medication Adherence Scale™ (8-Item MMAS™ Instrument)

Copyright 2006 Donald E. Morisky. All rights reserved.

You indicated that you are taking medication for your <health condition . Individuals have identified several issues regarding their medication-taking behavior and we are interested in your experiences. There is no right or wrong answer. Please answer each question based on your personal experience with your <health condition> medication.

| | (Please check your response below) | |
|---|---|---|
| | **No** | **Yes** |
| 1. Do you sometimes forget to take your <health condition> pills? | | |
| 2. People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your <health condition> medicine? | | |
| 3. Have you ever cut back or stopped taking your medication without telling your doctor, because you felt worse when you took it? | | |
| 4. When you travel or leave home, do you sometimes forget to bring along your <health condition> medication? | | |
| 5. Did you take your <health condition> medicine yesterday? | | |
| 6. When you feel like your <health condition> is under control, do you sometimes stop taking your medicine? | | |
| 7. Taking medication everyday is a real inconvenience for some people. Do you ever feel hassled about sticking to your <health condition> treatment plan? | | |

8. How often do you have difficulty remembering to take all your medications?

**(Please circle your response below)**

Never/Rarely………………………………….…..4

Once in a while…………………………………..3

Sometimes………………………………………...2

Usually……………………………………………1

All the time………………………………………..0

# EXHIBIT 22

**From:** DONALD MORISKY <dmorisky@ucla.edu>
**Date:** July 29, 2018 at 8:15:36 PM PDT
**To:** Jacob.Hartz@cardio.chboston.org
**Cc:** olympic labs <trubow1@gmail.com>
**Subject: Re: NIH Career Development Award and correct use of Morisky Medication Adherence Scale (MMAS-8)**


Thank you Dr. Hartz for your interest in using my copyrighted and trademarked intellectual property (IP), the MMAS-8 diagnostic adherence assessment instrument. Individual licenses are no longer given to an individual, only institutions and health care organizations are permitted to use the MMAS IP and hands-on, in-person training is required. We are currently in Asia conducting training and certification for hundreds of practicing clinicians who are implementing the correct use of the Morisky Widget (see Morisky.org) into the patient health-care delivery system. We plan to be on the east coast in September and October so please fill out the following questionnaire so we can best serve you.


**Morisky Widget MMAS APPLICATION**

**Date**


**We NEVER License individuals or individual studies.**


**Please answer all items below if your Organization wants to obtain a perpetual indefinite term Morisky Widget MMAS** License and will participate in training and certification on the Morisky Widget and the **Morisky Medication Adherence Protocol**


 **Please return by email to <ins>trubow1@gmail.com</ins> to receive consideration for a Morisky Widget MMAS License**

- Name and Address of Organization:

- Point of Contact:

- Have you ever used the Morisky Medication Adherence Scales?

- If so give some detailed descriptions of When, Where, How, What and Why did you or your organization used the MMAS? Please send an attached signed MMAS license.

- When do you want to begin using the perpetual Morisky Widget MMAS license?

- Will you use the MMAS for translational research or clinical applications such as chronic care management or medication reconciliation?

It for clinical research.

- Are there any third-party organizations that will operate the Morisky Widget or administer MMAS paper or electronic questionnaires?

  - Do you need to use MMAS Tests in LANGUAGES OTHER THAN ENGLISH? Name the specific translation (s) required.

- How many MMAS-8 or MMAS-4 tests in total do you plan to administer?

- How do you plan to administer the MMAS diagnostic assessments by paper or electronic questionnaire?

- What health conditions, diseases and specific medications are you trying to assess for medication adherence?

mmm   Do you track the dynamic level of medication adherence with changing physical measures of disease or the severity of mental health conditions? i.e. BP, HbA1C, GFR, LDL, HIV Viral Load Depressive Severity?

- Please describe in detail the translational research design or clinical protocol for using the MMAS.

- How many times will each patient be given the MMAS?

  - Will you establish a baseline measurement of adherence and do follow up reassessment over time to measure changes?

- Is the MMAS included with other assessments in your clinical application? If so, please list

  - Is your organization a university, government agency, hospital, clinic, or other? Please be specific.

Below are the new training and certification requirements:

## Morisky Widget & Morisky Medication Adherence Protocol Training

### MMAS Fundamentals
A. Subjective and Objective Measurement of Adherence
B. Social Desirability, Response Bias
C. Validity, Sensitivity and Specificity, MMAS Condition and Medication Specific
D. Criterion Related Validity, Patient Outcomes
E. Baseline and Follow up Assessments, Never One-Off
F. Diagnosis of Medication Taking Behavior, Intentional and Unintentional Non-Adherence
G. Translational Research, Sustainability, Self Management.
H. Polypharmacy

### Morisky Medication Adherence Protocol
A Beneficence
B Evidence Based
C Determinants of Non-Adherence
D Chronic Care Mgmt. and Medication Reconciliation
E Tailored and Targeted Intervention
F Disease Control, Remission of Mental Health and Substance Use Disorders

My Chief Investigator, Mr. Steve Trubow, will be able to assist you in obtaining your MMAS License.

Best, Don and Steve in Hong Kong

Dmorisky

Donald E. Morisky, Sc.D., M.S.P.H., Sc.M.
Research Professor and Former Chair
Lifetime Career Award, American Public Health Association
Department of Community Health Sciences
UCLA Fielding School of Public Health

On Sun, Jul 29, 2018 at 4:59 PM Hartz, Jacob <Jacob.Hartz@cardio.chboston.org> wrote:

Dr. Morisky,

I am an early career pediatric cardiologist at Boston Children's Hospital and applying for a NIH Career Development Award that incorporates behavioral economics to improve medication adherence in adolescents with familial hypercholesterolemia. In an effort to accurately identify patients, we were wondering if the MMAS-8 would be appropriate. If it could be, what training would we need and what licensing would be needed as well.

Thank you very much for your help.

- Jake

Jacob Hartz, MD, MPH
Preventive Cardiology
Department of Cardiology
Boston Children's Hospital
jacob.hartz@cardio.chboston.org

# EHXIBIT 23

 Outlook

---

**Fwd: Request for licensure for Morisky Scale [EXTERNAL]**

---

From  Steve Trubow <trubow1@gmail.com>
Date  Fri 10/4/2024 4:15 PM
To    Steve Trubow <trubow1@gmail.com>; Peter Hoeller <phoeller@hoellerllc.com>; Patricia ray <raypatricia@yahoo.com>


Sent from my iPhone

Begin forwarded message:


> **From:** "Hartz, Jacob" <Jacob.Hartz@cardio.chboston.org>
> **Date:** August 17, 2019 at 9:37:34 AM PDT
> **To:** trubow1@gmail.com
> **Subject: Re: Request for licensure for Morisky Scale  [EXTERNAL]**
>
>  Of course. I understand.
>
> I'm from New Mexico and my father and mother live there. Maybe they can help make  sure she get the most out of a very relaxing state?
>
> -Jake
>
> Jacob Hartz, MD, MPH
> Department of Cardiology
> Boston Children's Hospital
>
> On Aug 17, 2019, at 10:32 AM, "trubow1@gmail.com" <trubow1@gmail.com> wrote:
>
>> <image001.png>
>>
>>
>> Hi Jacob,
>>
>> Thank you for your patience.
>> We finished three months of non-stop training this week in Los Angeles at USC and the Los Angeles VA Hospital.
>> We are headed to New Mexico and Colorado for some much needed rest.
>> I will send you a draft license and our requirements shortly.
>> We are looking forward to meeting you in Boston in October.
>>
>> Best
>>
>> Steve
>>
>> MMAS Research LLC USA
>> Coronado California
>> MMAS Research France SAS
>> Paris France
>> MMAS Research Italy SRL
>> Vicenza Italy
>> (+1)360-824-0701
>> www.morisky.org

SEE the new I-Phone Morisky Kiosk in the APP Store

---

**From:** Hartz, Jacob <Jacob.Hartz@cardio.chboston.org>
**Sent:** Thursday, August 15, 2019 6:44 AM
**To:** trubow1@gmail.com
**Subject:** Re: Request for licensure for Morisky Scale [EXTERNAL]

Terrific.
I want to make sure you have everything you need when you get here. What do I need to arrange for training? Do we need a conference room with AV support? How many people need to be there for training?

Thank you so much.

-Jake

Jacob Hartz, MD, MPH
Department of Cardiology
Boston Children's Hospital

On Aug 15, 2019, at 8:44 AM, "trubow1@gmail.com" <trubow1@gmail.com> wrote:

> Hi Jake,
>
> We are in Los Angeles training and certifying Morisky licensees at the
> University of Southern California School of Pharmacy.
> I will send you a draft license this weekend or early next week.
> We can confirm training in Boston on October 31 or November 1, 2019.
>
> Best
> Steve
>
>> **From:** "Hartz, Jacob" <Jacob.Hartz@cardio.chboston.org>
>> **Date:** August 8, 2019 at 7:48:24 PM GMT+9
>> **To:** "trubow1@gmail.com" <trubow1@gmail.com>
>> **Subject: Re: Request for licensure for Morisky Scale**
>> **[EXTERNAL]**
>>
>> This sounds great. I love that you me sister is involved. We should
>> all have dinner! Let's draft a license!
>>
>> -Jake
>>
>> Jacob Hartz, MD, MPH
>> Department of Cardiology
>> Boston Children's Hospital
>>
>> On Aug 7, 2019, at 10:26 PM, "trubow1@gmail.com"
>> <trubow1@gmail.com> wrote:
>>
>>> <image001.png>
>>>
>>> <image002.png>

Jake,

The offer of a free perpetual Morisky Widget license for
Boston Children's Hospital is dedicated to my sister
Sandra Fairbank of Cambridge who has supported the
Morisky Widget MMAS since the outset.
The cost of the training and certification if it can be
scheduled in Boston in late October or early November,
2019  will be $5000.00.  After certification, MMAS
Research LLC will provide Boston Children's Hospital with
25,000 complimentary Morisky Widget MMAS condition
and medication specific tests for clinical applications or
translational, sustainable interventional studies for children
with chronic and infectious disease.
If you wish us to prepare a draft license, please let me
know or if you have any other questions.

Best

Steve in Tokyo

**From:** Hartz, Jacob <Jacob.Hartz@cardio.chboston.org>
**Sent:** Wednesday, August 7, 2019 6:23 PM
**To:** trubow1@gmail.com
**Subject:** Re: Request for licensure for Morisky Scale
[EXTERNAL]

Steve,

Thank you for your prompt response. I am sorry that I was
not able to complete this earlier, but we did not know if we
had funding for the study, which we do now.

I have completed the application below. Please let me
know if you need more information.

What would be our next steps?

- Jake

Jacob Hartz, MD, MPH
Department of Cardiology
Boston Children's Hospital
jacob.hartz@cardio.chboston.org

On Aug 7, 2019, at 8:20 PM,
trubow1@gmail.com wrote:

<image001.png>
<image002.png>

Hi Jake,

Greetings from Tokyo where we are finishing three months of training on the Morisky Widget in the North America, Europe, and Asia.

Thank you for your renewed interest in the Morisky Widget MMAS.

MMAS Research LLC
only grants licenses for the Morisky Widget to health care organizations to improve medication adherence for patients with chronic and infectious disease.

We only license clinical applications and interventional studies that are sustainable and benefit the patient.

The Morisky Widget's conditional and medication specific MMAS assessment not only measures the level of medication adherence, (low, medium and high) with 93% sensitivity, it is also a diagnostic assessment of medication taking behaviors that identifies why the patient is not taking their medications.

The Morisky Widget quantifies two dimensions of medication taking  behavior, intentional and unintentional non-adherence and the barriers to adherence (polypharmacy/determinants/disease impact).

Every Morisky Widget licensee must participate in five hours of face to face training and certification on the Morisky Widget before use on patients. See attached slide deck.

We are still willing to provide a free perpetual Morisky Widget license to Boston Children's Hospital. The only cost would be for face to face training and certification and MMAS tests after 3000 complimentary tests are completed.

If you wish to apply for license, please complete the application below

Please let me know if you have any questions,

<image003.png>

Morisky Widget  APPLICATION
Date_____August 7, 2019_____

Completed by_____Jacob Hartz, MD, MPH_____

We only license organizations and approved interventional studies or clinical applications NO EXCEPTIONS

Please answer all items below if your Organization wants to obtain a perpetual indefinite term Morisky Widget MMAS License and will participate in training and certification on the Morisky Widget

Please return by email to trubow1@gmail.com to receive consideration for a Morisky Widget License

**Name and Address of Organization:** Boston Children's Hospital
**Point of Contact:** Jacob Hartz (617-355-0955, fax: 617-730-0600)
**Have you ever used the Morisky Medication Adherence Scales?** No
If so give some detailed descriptions of When, Where, How, What and Why did you or your organization used the MMAS? Please send an attached signed MMAS license.
**When do you want to begin using the perpetual Morisky Widget license?** January 2020
**Will you use the Morisky Widget for an interventional research study or clinical applications such as patient coaching, chronic care management or medication reconciliation?** Yes. We are using it to assess pre- and post-adherence in
**Are there any third-party organizations that will operate the Morisky Widget?** No
**Do you need to use MMAS Tests in LANGUAGES OTHER THAN ENGLISH? Name the specific translation (s) required.** We would like it in Spanish as well.
**How many Morisky Widget diagnostic assessments in total do you plan to administer?** 80 patients (4-5 times each)
**How do you plan to administer the Morisky Widget diagnostic assessments by paper or the Morisky Widget or Morisky Kiosk Apple I-Phone App?** We would like to use it by paper and iPhone app if possible. If only one option is available, we would prefer paper.
**What health conditions, diseases and specific medications are you trying to assess for medication adherence?** Adolescents with Familial Hypercholesterolemia who are taking a statin. Depending on recruitment for the study,

we may also recruit adolescents with hypertension who are treated with a medication. **Do you track the dynamic level of medication adherence with changing physical measures of disease or the severity of mental health conditions? i.e. BP, HbA1C, GFR, LDL, HIV Viral Load Depressive Severity?** Yes. We will be checking adherence using a fasting lipid profile. We will also be testing adherence using the Wellth® iPhone app in which patients will take a picture of the pill prior to taking it to receive a reward.

**Please describe in detail the interventional research design or clinical protocol for using the Morisky Widget?** I hope that I am providing sufficient detail and can provide more if needed, but I wanted to make it brief as well. The objective of the study is to determine if financial incentives will increase medication adherence in adolescents taking a statin for Familial Hypercholesterolemia. We will test two different financial incentives in a randomized, cross-over trial that are delivered through the mobile health application, Wellth®, which hope to use in our clinic if it is effective at improving medication adherence. The Morisky Widget will be used to measure baseline adherence, adherence after receiving the first of two interventions, following a "wash-out" period, and finally at the end of the intervention. If possible, we would also use the Morisky Widget to measure adherence 6 months after the intervention ends to determine if there is a "legacy effect." We will be able to control for baseline LDL cholesterol, age, gender, race/ethnicity, comorbidities, time since first being prescribed a statin, type and dose of statin prescribed, and if any adverse effects are present.

**How many times will each patient be given the Morisky Widget?** We expect each patient to use it 4 times. Possibly five if we are able to extend the trial.
**Will you establish a baseline measurement of adherence and do follow up reassessment over time to measure changes?** Yes.
**Is your organization a university, government agency, hospital, clinic, or other? Please be specific.** We are an academic hospital.

Best
Steve in Tokyo
Steven Trubow
MMAS Research LLC USA
Coronado California

MMAS Research France SAS
Paris France
MMAS Research Italy SRL
Vicenza Italy
(+1)360-824-0701
www.morisky.org
SEE the new I-Phone Morisky Kiosk in the APP
Store

From: Hartz, Jacob
<Jacob.Hartz@cardio.chboston.org>
Sent: Wednesday, August 7, 2019 3:03 PM
To: trubow1@gmail.com
Subject: Request for licensure for Morisky Scale

Mr. Steve Trubow,

We spoke about one year ago about using
obtaining training for the adherence scale
developed by Dr. Morisky. I was wondering if it
would still be possible to have face-to-face
training and obtain a license.

Thank you very much.

- Jake

Jacob Hartz, MD, MPH
Department of Cardiology
Boston Children's Hospital

<morisky widget training deck summer 2019 ucsf
and usc.pdf>



Merck MSD Tokyo Japan



USC School Of Pharmacy
VA Greater Los Angeles Healthcare System



UCSF & Zuckerberg San Francisco General Hospital



Johnson &
Johnson
Japan



Chinese Academy of Medical Sciences
West China  Womens and Children's Hospital

Peking University First Hospital



Shanghai Institute of Endocrine and Metabolic Disease

# EXHIBIT 24

Patient name:                                          Date:

MRN:

| | |
|---|---|
| 1) Do you sometimes forget to take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 2) People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 3) Have you ever cut back or stopped taking your prescription cholesterol medication without telling your doctor because you felt worse when you took it? | ☐ YES<br>☐ No |
| 4) When you travel or leave home, do you sometimes forget to bring along your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 5) Did you take all your prescription cholesterol medication last time you were supposed to take it? | ☐ Yes<br>☐ NO |
| 6) When you feel like your symptoms are under control, do you sometimes stop taking your prescription cholesterol medication? | ☐ YES<br>☐ No |
| 7) Taking medicine every day is a real inconvenience for some people. Do you ever feel hassled about sticking to your cholesterol treatment plan? | ☐ YES<br>☐ No |
| 8) How often do you have difficulty remembering to take all your prescription medications to lower your cholesterol level? | ☐ Never/rarely<br>☐ Once in a while<br>☐ Sometimes<br>☐ Usually<br>☐ ALL THE TIME |

How many answers did they give that are in **BOLD UPPERCASE?** _____ ($\geq 2 \rightarrow$ **ELIGIBLE**)

# EXHIBIT 25

**From:** "Hartz, Jacob" <Jacob.Hartz@cardio.chboston.org>
**Date:** July 6, 2022 at 2:22:50 PM PDT
**To:** Steve trubow <trubow1@gmail.com>
**Cc:** "Palfrey, Hannah" <Hannah.Palfrey@cardio.chboston.org>,
thad@scrogginsesq.com, Peter Hoeller <peter.hoeller@bjfip.com>
**Subject: Re: NCT04458766**

 Hi,

We have administered 4 tests. The tests were administered from memory. Our
enrollment protocol was answering a positive (i.e., consistent with lower
adherence) to at least one question. and then I had planned on entering and
scoring the tests on the widgets. I will need to confirm the date of the first
enrollee and have the details in my office, but am not there today. The last
MMAS will be administered within the next 2 years once we have completed
enrollment.

If any of this is serious breach of contract and you feel it necessary to end our
agreement, we would understand. We certainly did not mean to do anything
incorrectly and it was always our intention to follow our contract entirely. It
would be a tremendous loss to our study, but we want to respect our agreement
and your organization. Although the citation was included in our references, we
have now added you as a "Collaborator" because this appears to be best place to
signal your role. If there is a preferred place, please let me know and I can change
it.

Thank you. Again, our sincerest apologies if this was done incorrectly.

- Jake


Jacob Hartz, MD, MPH
Director of Preventive Cardiology
Department of Cardiology
Boston Children's Hospital

# EXHIBIT 26



```
                          st1250lines
var defer     quire("prom       se").defer;
var          re("promise    o/promise ).when;
var R        re("dactic/

module.exp
     "^mm          ion(test,cu           language){

                      = require(               );
         va              DataModel.

     var Sc              ction(test,
                         Do Scoring:
              var
              var 1
              var uni
     testData.             ch(function
              var          stions[idx])
              conso            q);
              var sv=
              q.answers             (ans){
                   cons           king for ",
                   conso          ing ", ans,
                   if (answ           value){
                        sv
```

(c) mmms Research LLC
1 of 25 pages of mmms Research Widget Gde

# EXHIBIT 27

**EDIT mmas-8 Translation**

**EDIT Type: mmas-8 Condition: cholesterol Language: english**

### Instructions

Your provider has indicated that you are taking medication to address a health concern. Individuals have identified several issues regarding their medication-taking behavior and we are interested in your experiences. There is no right or wrong answer. Please answer each question based on your personal experience with your cholesterol medication.

### Questions

**Q0   Do you sometimes forget to take your MEDICATION?**

Do you sometimes forget to take your prescription cholesterol medication?

**Q1   Over the past two weeks, were there any days when you did not take your MEDICATION?**

People sometimes miss taking their medications for reasons other than forgetting.  Thinking over the past two weeks, were there any times when you did not take your prescri

**Q2   Have you ever cut back or stopped taking your MEDICATION without telling your doctor because you felt worse when you took it?**

Have you ever cut back or stopped taking your prescription cholesterol without telling your doctor because you felt worse when you took it?

**Q3   When you travel or leave home, do you sometimes forget to bring along your MEDICATION?**

When you travel or leave home, do you sometimes forget to bring along your prescription cholesterol medication?

**Q4   Did you take your MEDICATION yesterday?**

Did you take all your prescription cholesterol the last time you were supposed to take it?

**Q5   When you feel like your CONDITION is under control, do you sometimes stop taking your MEDICATION?**

When you feel like your symptoms are under control, do you sometimes stop taking your prescription cholesterol medicine?

**Q6   Taking medication every day is a real inconvenience for some people. Do you ever feel hassled about sticking to your CONDITION treatment plan?**

Taking medicine regularly is a real inconvenience for some people. Do you ever feel hassled about sticking to your cholesterol treatment plan?

**Q7   How often do you have difficulty remembering to take all of your MEDICATION?**

How often do you have difficulty remembering to take all your cholesterol medicine?

### Answers

| YES: | NO: | Never/rarely: | Once in a while: | Sometimes: | Usually: | All the time: |
|------|-----|---------------|------------------|------------|----------|---------------|
| YES  | NO  | Never/rarely  | Once in a while  | Sometimes  | Usually  | All the time  |