1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   DONALD E. MORISKY,

11                          Plaintiff,

       v.
12

     MMAS RESEARCH LLC, et al.,
13

                         Defendant.
14

CASE NO. 2:21-CV-1301-RSM-DWC

REPORT AND RECOMMENDATION

Noting Date: September 4, 2024

15        Currently before the Court is Plaintiff Donald E. Morisky's Renewed Motion for

16   Sanctions. Dkt. 233. After consideration of the relevant record, the Court recommends Plaintiff's

17   Renewed Motion for Sanctions (Dkt. 233) be granted-in-part as follows: The Court recommends

18   Defendants' counterclaims be dismissed and Defendants be limited in their defenses at trial; the

19   destroyed license agreements be presumed to be unfavorable to Defendants and an adverse jury

20   instruction be provided to the jury that the destroyed agreements were unfavorable to

21   Defendants; this case proceed immediately to trial with no additional discovery or dispositive

22   motions practice; and adverse jury instructions be provided as needed based on Defendants'

23   failure to produce discovery.

24

## I.    Background

The factual background in this case has been detailed in previous orders. *See e.g.*, Dkts. 47, 48, 84. The Court, therefore, sets forth only the procedural background and evidence relevant to the instant motion.

On January 11, 2023, the Court stayed this matter pending a Ninth Circuit decision in a separate case. Dkt. 220. The parties notified the Court that the Ninth Circuit had issued its decision and, on April 24, 2024, the Court lifted the stay for the limited purpose of allowing Plaintiff to file a renewed motion for sanctions. Dkt. 229. On May 16, 2024, Plaintiff filed the Renewed Motion for Sanctions that is currently pending. Dkts. 233, 234 (supporting evidence). Defendants filed their Response and, on June 6, 2024, Plaintiff filed a Reply. Dkts. 238, 239-41 (supporting evidence), 242, 243 (supporting evidence).

On July 3, 2024, the Court directed Plaintiff to review the evidence that has been obtained in this case and provide the Court with a detailed list of items Plaintiff contends Defendants have failed to produce and Plaintiff has been unable to obtain through other sources. Dkt. 246. Plaintiff provided a response to the Court's Order on July 16, 2024. Dkts. 247, 248. The Court directed Defendants to file a response to Plaintiff's response. Dkt. 250. Defendants filed a response on August 6, 2024. Dkts. 253, 254.

## II.    Oral Argument

The parties requested oral argument. *See* Dkt. 233. The district court has discretion, but is not required, to hold an evidentiary hearing prior to imposing sanctions. *See Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983) ("When necessary, the district court may hold an evidentiary hearing on a motion for sanctions."). A sanctioned party's due process rights are fully satisfied through "[t]he opportunity to brief the [sanctions] issue." *Pac. Harbor*

1    *Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (internal citation

2    omitted). Here, the parties have had a full opportunity to brief the sanctions issue. The Court has

3    considered the relevant record and finds oral argument is not necessary; this matter can be

4    decided on the briefing alone.

5       **III.    Discussion**

6            In the Renewed Motion for Sanctions, Plaintiff requests case dispositive sanctions based

7    on Defendants' failure to engage in discovery, failure to comply with Court orders, spoliation of

8    evidence, and failure to pay the monetary sanctions imposed by this Court. Dkt. 233. Defendants

9    assert case dispositive sanctions are not warranted and request this Court fully lift the stay,

10   reopen the discovery period, and set a new scheduling order. Dkt. 238; *see also* Dkt. 253.

11          A.  *Evidence*

12          i.       Discovery process

13          On November 14, 2022, Plaintiff served his First Set of Requests for Production of

14   Documents on Defendants Steven Trubow, MMAS Research LLC, MMAS Research Italy SRL,

15   and MMAS Research France SAS. Dkt. 102. Defendants MMAS Research LLC, MMAS

16   Research Italy SRL, and MMAS Research France SAS provided written objections and

17   responses on December 12, 2022, along with 130 pages of documents, 102 of which had been

18   obscured with diagonal black bars. *Id.*; Dkt. 102-2.[1] Plaintiff filed a motion to compel

19   contending Defendants' objections failed to comply with the requirements of Rule 34(b)(2). Dkt.

20

21   _____

22          [1] The record reflects the First Set of Requests for Production of Documents were served on Defendants
     Trubow, MMAS Research LLC, MMAS Research Italy SRL, and MMAS Research France SAS. Dkt. 102-1. Only
23   MMAS Research LLC, MMAS Research Italy SRL, and MMAS Research France SAS responded to the discovery
     request. Dkt. 102-2. The record does not reflect Trubow responded with the other three defendants. *Id.*

24

REPORT AND RECOMMENDATION - 3

101, The Court denied the motion to compel because the parties had not satisfied the meet and confer requirements. Dkt. 113.

On March 14, 2023, Plaintiff filed a motion to compel and for sanctions, seeking an order finding all Defendants' objections had been waived and directing Defendants to provide complete responses to Plaintiff's Interrogatories by a date certain. Dkt. 111. Plaintiff further requested that Defendants be compelled to appear for depositions and be prepared to provide complete responses on the noticed topics by a date certain. *Id*. On March 31, 2023, Plaintiff filed a joint discovery submission, wherein Plaintiff sought an order directing Defendants to produce documents responsive to Plaintiff's requests for production prior to Defendants' depositions. Dkt. 120. The joint submission indicated Defendants were given an opportunity to respond in accordance with Local Civil Rule 37, but Defendants provided no response. *Id*.

Based on the record, on April 27, 2023, the Court concluded Defendants did not oppose the joint discovery submission; the Court granted the joint discovery submission and directed Defendants to provide discovery responses. *See* Dkts. 123, 124. The Court further directed Defendants to produce documents in response to all the requests for production and produce a privilege log by May 15, 2023. Dkt. 124. The Court also found that Plaintiff had shown an order compelling Defendants to attend depositions and respond to Plaintiff's interrogatories was warranted. Dkt. 123. The Court concluded all Defendants' objections to Plaintiff's interrogatories were waived. *Id*. at 7. The Court ordered Defendant Trubow to, on or before May 31, 2023, sit for two depositions: one on behalf of himself and one on behalf of Defendant MMAS Research, LLC pursuant to Rule 30(b)(6) and Local Civil Rule 30(b). *Id*. On June 15, 2023, as a result of Defendants' failure to respond to discovery, the Court entered an order

directing Defendants to pay Plaintiff attorney's fees in the amount of $31,386.23 and costs in the amount of $2,139.69 for a total award of $33,525.92. Dkt. 141.

Between July 11, 2023 and July 19, 2023, Plaintiff filed three motions for sanctions. *See* Dkts. 154, 156, 158. In the first motion, Plaintiff sought an order holding Defendants in contempt for failing to comply with the Court's discovery orders and for destroying relevant evidence. Dkt. 154. Evidence submitted in support of the motions for sanctions showed that, on May 15, 2023, Defendants served revised responses to Plaintiff's first set of requests for production and interrogatories. Dkt. 155, Bruss Dec., ¶ 14. Defendants' May 15, 2023 response to the requests for production states that documents *have been or will be* produced. Dkt. 155-4. Plaintiff's counsel argued Defendants reasserted objections that had been overruled by this Court. Dkt. 155, Bruss Dec., ¶ 14. Plaintiff's counsel also argued Defendants never produced any responsive documents with the revised response. *Id*. Plaintiff contended that, between May 16 and May 28, 2023, Defendants produced twenty-six documents, nearly all of which had already been produced or had been or were subsequently filed as exhibits to pleadings. *Id*. at ¶ 16. Plaintiff's counsel also asserts Defendants merely did a document dump; Defendants' production was not Bates numbered and did not indicate which documents were responsive to which request for production. *Id*. at ¶ 17; *see also* Dkt. 244 at 47. A review of the responses to the requests for production also showed Defendants did not respond to Requests for Production 13 through 20. *See* Dkt. 155-4 at 13-14.[2]

---

[2] During a previous oral argument, Defendants' counsel has previously stated that she and Trubow sat down and responded to each request for production and produced all the documents in his possession related to each request. She did not, however, know why there were no responses to Requests for Production 13-20 and offered to re-check the responses and documents produced. *See* Dkt. 244 at 59-60.

A review of Defendants' responses to the interrogatories showed Defendants objected to interrogatories numbered 12 and 13 as the documents were publicly available, interrogatory number 19 as the request was overbroad and unanswerable, and interrogatory number 22 as the information was in Plaintiff's possession. Defendants' response to interrogatories numbered 20 and 21 was that the questions were unanswerable. Dkt. 155-7.

It was Plaintiff's position that Defendant Trubow testified that he had a Dropbox that contained documents going back to 2017, but he did not have time to go through it, so he did not produce any of it. Dkt. 155, Bruss Dec., ¶ 28. Trubow also stated that all the licenses and related agreements Defendants issued were maintained on a hard drive. *Id*. at ¶ 29. The evidence shows the laptop that contained the hard drive "died" and Trubow could not afford to have it backed up. Dkt. 155-8 at 36; *see also* Dkt. 155, Bruss Dec., ¶ 29. Plaintiff's counsel also states Trubow testified that his accountant, who is also a member of MMAS Research LLC, Rodney Watkins, "had a stack of banking and other financial records for Defendants approximately two feet high that Defendants did not produce." Dkt. 155, Bruss Dec., ¶ 30.

On May 25, 2023, Trubow testified as the Rule 30(b)(6) deponent for MMAS Research. *See* Dkt. 155-8. During the deposition, Trubow stated that he could not testify on 11 of the 14 Rule 30(b)(6) topics. *See id*. at 8-12. Trubow stated that he received documents from Attorney Kenneth Gross going back to 2017 in a Dropbox, but Trubow testified the Dropbox expired and he did not download the documents because it was so big. *Id*. at 37. Based on the record before the Court at that time, the Court declined the request for case dispositive sanctions, but ordered Defendants to produce specific discovery on or before December 1, 2023. Dkt. 195.

In the second motion for sanctions, Plaintiff requested the Court sanction Defendants and their counsel for failing to honor their agreement to pay the court reporter fees incurred when

1   Trubow failed to appear at depositions on May 30 and 31, 2023. Dkt. 156. The Court granted-in-

2   part the second motion by ordering Defendants' counsel to pay $1,320.00 to Plaintiff's counsel

3   on or before December 1, 2023 for fees related to the cancellation of the May 30 and 31, 2021

4   depositions. Dkt. 195.

5       Finally, in the third motion for sanctions, Plaintiff sought sanctions because Defendants

6   had not paid the fees and costs awarded to Plaintiff in conjunction with Plaintiff's earlier filed

7   motions to compel. Dkt. 158. The Court found, after a review of the record, that Defendants,

8   particularly Trubow, may have some financial difficulties paying the fee award. *See* Dkt. 195.

9   The Court also found that Defendants had been attempting to appeal the Court's order; however,

10  Defendants had not taken proper steps to appeal. *Id*. Defendants failed to pay the fee award or

11  seek relief from the deadline. But, because Defendants had been attempting to appeal the order,

12  the Court found only a small monetary sanction for failing to timely pay was appropriate. *Id*. The

13  Court granted the third motion and imposed a $1,500.00 sanction for the failure to timely pay.

14  The Court ordered Defendants to pay Plaintiff $35,025.92 ($33,525.92 plus $1,500.00) on or

15  before December 1, 2023. *Id*.

16      On November 21, 2023, Defendants requested the Court stay the orders directing

17  Defendants and their counsel to pay monetary sanctions until this matter has been resolved. Dkt.

18  198. On December 21, 2023, the Court denied Defendants' request to stay the obligations to pay

19  because Defendants did not produce sufficient evidence of their inability to pay. Dkt. 214. The

20  Court directed Defendants and their counsel to pay the sanctions on or before January 12, 2024.

21  *Id*. Plaintiff filed a notice with the Court on January 25, 2024, stating that the sanctions had not

22  been paid. Dkt. 221. Plaintiff's attorney provided evidence that Trubow stated he "would never

23  pay a dollar of sanctions, or any judgment entered against him to Dr. Morisky. [Trubow] further

24

1    gleefully noted that the only result of this process would be to drain Dr. Morisky's funds." Dkt.

2    204, Austin Dec., ¶ 7.

3    In their Response to the Renewed Motion for Sanctions, Defendants submitted the

4    Declaration of Rodney Watkins, MMAS Research's and Trubow's Certified Personal

5    Accountant from 2018 through the present. *See* Dkt. 241, Watkins Dec. Watkins states that he

6    reviewed financial records in his possession, but does not state what records he reviewed. *Id*. He

7    states that, as of May 22, 2024, MMAS Research had $2,510.00 in total assets and Trubow had

8    $5,414.44 in total assets. *Id*. at ¶¶ 6-7. Watkins states that, to the best of his knowledge, MMAS

9    Research nor Trubow had any credit card accounts, revolving credit loans, or securable assets.

10   *Id*. at ¶¶ 8-9. At this time, Defendants nor their counsel have paid the Court ordered sanctions.

11   Patricia Ray, counsel for Defendants, also provided a declaration in response to the

12   pending Motion stating she complied with all items ordered by the Court. Dkt. 239, Ray Dec.,

13   ¶3. In an email to Plaintiff's counsel, Ray appeared to provide a link to the Dropbox, a list of

14   joint representation attorneys, and links to financial information. *See* Dkt. 239. The

15   correspondence from Ray to Plaintiff's counsel was not signed under penalty of perjury. It

16   appears Austin was not aware the Dropbox link was imbedded in the correspondence and

17   Amanda Bruss, counsel for Plaintiff, objected to the production because, among other objections,

18   it did not contain Bates numbering. *See* Dkt. 243, Austin Dec., ¶ 13. Attorney Kenneth Gross

19   provided Austin with access to the Dropbox link on May 24, 2024. Dkt. 240, Gross Dec., ¶ 3.

20   Evidence also indicates that Plaintiff is 78 years old and has had a sharp decline in his

21   mental and physical faculties over the last year. Dkt. 234, Austin Dec., ¶ 5. Because Defendants

22   have failed to comply with this Court's orders and has failed to pay the sanctions, Plaintiff and

23   his family have lost faith in the process and finds the Court has little to no ability to enforce its

24

1 orders. *Id*. at ¶ 6. Rather, it is Plaintiff's position that the justice system favors noncompliance

2 and rewards delaying a case. *Id*.

3       ii.     Spoliation of electronically stored evidence

4       Beyond the general discovery disputes, Plaintiff also raises an issue related to the

5 spoliation of evidence. Evidence related to this issue shows Trubow stated that all the licenses

6 and related agreements Defendants issued were maintained on a hard drive that Trubow

7 knowingly failed to preserve. Dkt. 155, Bruss Dec., ¶ 29; *see also* Dkt. 155-8 at 36, 39-44.

8       Defendant Trubow testified, as the Rule 30(b)(6) deponent for MMAS Research, that all

9 the license agreements in his possession were contained on a hard drive, the hard drive died, and

10 he "couldn't afford to have it backed up." Dkt. 155-8 at 36. Trubow stated the records for 200

11 licensee and settlement agreements were lost in April of 2022 when the computer crashed. *Id*.

12 Trubow testified, "I have the laptop with the dead thing still. It's an ASUS (sic) computer." *Id*.

13       Later in the deposition, counsel for Plaintiff asked if Trubow would produce the laptop.

14 Dkt. 155-8 at 39. Trubow responded, "No, I won't." *Id*. Counsel stated he would attempt to have

15 the Court compel production and Trubow said, "Go ahead. Good luck." *Id*. Then, Trubow stated

16 the laptop was in three or four different pieces and part of it is at another house and so no longer

17 in his possession. *Id*. After more dialogue about the location of the hard drive, Trubow stated it

18 was in the dump. *Id*.

19       In a later-filed declaration, Trubow stated that he used an ASIS laptop from 2017 until

20 2022 to train clinicians all over the world on how to use the Morisky Widget software. Dkt. 167,

21 Trubow Dec., ¶ 4. In early 2022, the ASIS laptop fell out of Trubow's knapsack, shattering the

22 screen and popping out the keyboard; he was unable to reboot the laptop. *Id*. at ¶ 5. Trubow

23 replaced the laptop and was unable to recover the hard drive from the ASIS laptop. *Id*. He placed

24

1   the ASIS laptop in a box in his detached garage and, when he was moving residences, the

2   movers disposed of several boxes, including the box that contained the ASIS laptop. *Id*. Trubow

3   states "[t]here were never any business records, financial records, bank statement stored on the

4   ASIS laptop." *Id*. at ¶ 9. He further asserts that he attempted to say that he did not have any

5   financial documents during his deposition, but was cut off from finishing his answer. *Id*. at ¶ 17.

6   Trubow testified that,

7           The ASIS nor any other laptop or computer in my possession never had any
financial information and records regarding profit, losses, costs dealing with all the
8           (Morisky Widget) license agreements and the revenue that was generated from each
license agreement.

9

10        . . . [T]he financial and legal details of CR2A retroactive Morisky Widget licensing,
the settlement of CR2A claims, and the collection of money and payouts to MMAS
Research LLC and Plaintiff were handled exclusively by the joint representation
11        lawyers and [Trubow] did not retain documentation relating to them.

12   *Id*. at ¶¶ 18-19.

13        Trubow contends that "[a] large majority of the 212 Morksiy Widget license agreements

14   in the CR2A were signed and executed by Plaintiff himself." Dkt. 254, Trubow Dec., ¶ 6.

15   Trubow's citation to the CR2A provides a list of license agreements, but does not show Plaintiff

16   has the agreements or signed the agreements. *See* Dkt. 253-10. Evidence indicates Plaintiff has

17   not been able to recover the licensee and settlement agreements from other sources. *See* Dkt.

18   243, Austin Dec. For example, Plaintiff's counsel contacted two attorneys regarding agreements

19   they negotiated on behalf of Defendants. *Id*. at ¶ 11. One attorney, Hoeller, has not produced any

20   files. *Id*.

21        B.  *Failure to Comply with Court Orders*

22        First, Plaintiff asserts additional sanctions are warranted based on Defendants' failure to

23   comply with Court orders. Dkt. 233.

24

As detailed above, on June 15, 2023, as a result of Defendants' failure to respond to discovery, the Court awarded costs and fees to Plaintiff in the amount of $33,525.92 and directed Defendants to pay Plaintiff within 30 days of the date of the order, or by July 15, 2023. Dkt. 141. The Court also ordered Defendants' counsel to pay $1,320.00 to Plaintiff's counsel on or before December 1, 2023 for fees related to the cancellation of the May 30 and 31, 2022 depositions. Dkt. 195. The Court has directed Defendants and their counsel to pay the sanctions on at least three occasions. Dkts. 141, 195, 214. The Court even imposed an additional $1,500.00 sanction for Defendants' failure to comply with the Court's orders, which they have not paid. Dkt. 195.

It has been more than a year since Defendants were first ordered to pay the sanctions. The Court has, on several occasions, directed Defendants to pay the sanctions and has even increased the monetary amount based on Defendants' lack of compliance with the Court's Order. The record reflects Defendants and their counsel do not intend to comply with this Court's orders directing payment of sanctions.

Additionally, Defendants have consistently failed to comply with this Court's Local Civil Rules ("LCR"). Beginning in June of 2023, the Court notified Defendants that their filings did not comply with the LCRs. *See* Dkt. 137. The Court ordered the parties to comply with the LCRs. *Id*. The Court has also made note that many filings are not in compliance with the Court's *pro hac vice* rules. Dkt. 226. In addition to the LCR violations, the Court has been required to warn Defendants and strike filings that improperly contained attorney-client communications. *See* Dkt. 113, 146.

Defendants have continued to file documents that violate the LCRs and the Court has struck the filings. *See* Dkts. 140, 151, 184, 226. And, even after the Court's multiple warnings, the Response (Dkt. 238) to the Renewed Motion for Sanctions still violates the LCRs. The

1  Response exceeds the page limitations detailed in LCR 7 and fails to include the word count.

2  Dkt. 238. It appears the Response exceeds the word count allowed under LCR 7. Defendants

3  have also filed additional documents that contain attorney-client communications. *See* Dkt. 238

4  (with attachments). Despite multiple warnings and the Court striking filings, Defendants'

5  counsel do not appear to take this Court's orders seriously and have not ensured their filings

6  comply the LCRs and this Court's orders.

7      The Court finds Defendants' and their counsels' failure to comply with Court orders and

8  the LCRs is concerning and weighs in favor of sanctions.

9      C.  *Discovery Violations*

10      Next, Plaintiff states case dispositive sanctions are warranted based on Defendants'

11  discovery violations. Dkt. 233. In the Response to the Court's Order directing Plaintiff to provide

12  more detailed information about what discovery has not been produced, Plaintiff states

13  Defendants have failed to produce: (1) a Rule 30(b)(6) witness ; (2) documents evidencing

14  Defendants' damages; (3) an unredacted copy of the Code Copyright Deposit; (4) 199 of 212

15  license and settlement agreements; (5) agreements in which Plaintiff was wrongfully excluded;

16  (6) all documents regarding Defendants' legal actions; and (7) all relevant financial records and

17  bank statements. Dkt. 247 (ordered in list of Court's discussion below, not as identified by

18  Plaintiff).

19      First, Plaintiff states Defendants have not provided a Rule 30(b)(6) witness. Dkt. 247.

20  Defendants appear to respond to this by simply saying that they do not have additional

21  information to provide under the deposition request and Plaintiff could obtain the information

22  from a third-party subpoena. Dkt. 253 at 5.

23

24

1    The language of Rule 30 requires the person designated as the Rule 30(b)(6) witness to

2    testify as to matters known or reasonably available to the organization. The party seeking

3    discovery through a Rule 30(b)(6) deposition is required to describe "with reasonable

4    particularity the matters on which examination is requested." *Great Am. Ins. Co. of New York v.*

5    *Vegas Const. Co.*, 251 F.R.D. 534, 538 (D. Nev. 2008) ("*Great American*"). Once served with

6    the deposition notice under Rule 30(b)(6), the responding party is required to produce one or

7    more witnesses knowledgeable about the subject matter of the noticed topics. *Id.* The duty to

8    produce a prepared witness on designated topics extends to matters not only within the personal

9    knowledge of the witness but on matters reasonably known by the responding party. *Alexander v.*

10   *Federal Bureau of Investigation*, 186 F.R.D. 137, 141 (D.D.C. 1998).

11   A corporation has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable

12   in order to provide "binding answers on behalf of the corporation". *Starlight International, Inc.*

13   *v. Herlihy,* 186 F.R.D. 626, 638 (D.Kan. 1999). Moreover, a corporation has "a duty to make a

14   conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6)

15   depositions and to prepare them to fully and unevasively answer questions about the designated

16   subject matter." *Starlight,* 186 F.R.D. at 639. By its very nature, a Rule 30(b)(6) deposition

17   notice requires the responding party to prepare a designated representative so that he or she can

18   testify on matters not only within his or her personal knowledge, but also on matters reasonably

19   known by the responding entity." *Great American*, 251 F.R.D. at 539.

20   Rule 37(d)(1) specifically authorizes a court to issue sanctions when a party or its

21   representative, or a person designated under Rule 30(b)(6) or 31(a)(4), fails to appear for that

22   person's deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Several courts "have held that a party's

23   failure to produce a Rule 30(b)(6) designee who is adequately educated and prepared to testify

24

REPORT AND RECOMMENDATION - 13

1  regarding the enumerated topics amounts to a nonappearance sufficient to warrant the imposition

2  of sanctions." *Zeitlin v. Bank of Am., N.A.*, 2021 WL 5236939, at *7 (D. Nev. Oct. 21, 2021)

3  (gathering cases).

4         On May 25, 2023, Trubow testified as the Rule 30(b)(6) deponent for MMAS Research.

5  *See* Dkt. 155-8. During the deposition, Trubow stated that he could not testify on 11 of the 14

6  Rule 30(b)(6) noticed topics. *See id.* at 8-12.[3] Now, rather than having arranged to produce a

7  Rule 30(b)(6) designee who is adequately educated and prepared to testify regarding the noticed

8  topics, Defendants state that Plaintiff can obtain the information from third-party subpoenas.

9  Dkt. 253. The obligation is on Defendants to produce a witness(es) that can knowledgeably

10 respond to the noticed topics. As Defendants have refused to designate a knowledgeable witness,

11 the Court finds Defendants' conduct has amounted to a nonappearance sufficient to warrant

12 sanctions. *See Elan Microelectronics Corp. v. Pixcir Microelectronics Co. Ltd.*, 2013 WL

13 4101811, * 9 (August 13, 2013) (precluding evidence from trial or motion practice where the

14 Rule 30(b)(6) designee was not prepared to address and provide meaningful answers binding the

15 defendant to details concerning revenues, sales, costs, profits, and expenses).

16        Second, Plaintiff contends that Defendants have failed to produce any documents

17 evidencing Defendants' damages. Dkt. 247 at 7. In their Second Amended Counterclaims

18 ("SAC"), Defendants seek declaratory judgment that Trubow is the owner of the Morisky

19 Widget and that Trubow and MMAS Research are entitled to two years of uninterrupted and

20

21        [3] In response to the Renewed Motion for Sanctions, Defendants state Trubow's deposition was continued to

22 June of 2023 and that deposition included testimony as a Rule 30(b)(6) witness. Dkt. 238 at 7. Defendants have not
   provided a copy of the deposition transcript and have not provided any evidence that refutes Plaintiff's evidence that

23 Trubow was unable to testify regarding nearly all of the noticed topics. Therefore, the Court is not persuaded by
   Defendants' conclusory argument that Defendants have presented a knowledgeable Rule 30(b)(6) witness.

24

unopposed performance of the CR2A. Dkt. 94. Defendants also seek monetary damages for

breach of the CR2A, tortious interference with business expectancy, tortious and malicious abuse

of process, copyright infringement, unfair business practices, and breach of implied covenant of

good faith and fair dealing. *Id*. Defendants do not provide a specific response to Plaintiff's

assertion that Defendants failed to provide documentation related to their damages. Dkt. 253.

Rule 26(a)(1)(A) requires a party to make certain initial disclosures "without awaiting a

discovery request." Pursuant to subsection 26(a)(1)(A)(iii), a party must provide "a computation

of each category of damages claimed" and must "make available for inspection and copying as

under Rule 34 the documents or other evidentiary material, unless privileged or protected from

disclosure, on which each computation is based[.]" The record before the Court indicates that

Defendants have not produced evidence related to damages as required by Rule 26(a). Further,

Plaintiff requested evidence for all damages claimed in the SAC. Dkt. 247-3 at 14. The Court

ordered Defendants to produce this information. Dkt. 124 at 5. Defendants' response to the

request for production merely referenced the SAC (Dkt. 94) and a spreadsheet that identified

license agreements where Defendants allegedly suffered damages. Dkt. 247-2 at 14-15; *see also*

Dkt. 247-4. The spreadsheet appears to be a list of agreements on one page and a second page

that contains four columns (economic loss, mental anguish, discomfort, and inconvenience) and

approximately 35 dollar amounts listed under each column. Dkt. 247-4 at 3. The spreadsheet

does not provide documentation to support the alleged damages or support each computation.

Further, it does not sufficiently connect the alleged damages to any agreement.

A party is required to disclose a computation of damages under the Federal Rules of Civil

Procedure and a failure to do so prevents the use of the damage computations at trial. *Hoffman v.*

*Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) (Failure to disclose

damage calculations in wage and hour claim required forbidding use at trial even if doing so precluded the plaintiff's entire cause of action.). "Evidence of damage is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture...." *Clayton v. Wilson*, 168 Wash.2d 57, 227 P.3d 278, 285 (2010) (en banc) (citation omitted). Here, the evidence of damages Defendants produced fails to meet the requirements of the Federal Rules of Civil Procedure and appears to be based on mere speculation and conjecture. Accordingly, sanctions are warranted for Defendants' failure to produce sufficient discovery related to their alleged damages.

Third, Plaintiff states Defendants have not produced an unredacted copy of the Code Copyright Deposit. Dkt. 247 at 6. In his declaration, Trubow states that Plaintiff was given access to "detailed Morisky Widget licensing information as early as January 4, 2021, though his counsel Kenneth Gross." Dkt. 254, Trubow Dec., ¶¶ 7-9. This does not show Defendants provided an unredacted copy of the copyright deposit. Further, the email that Trubow relies on to show Plaintiff received an unredacted copy of the Code Copyright Deposit is insufficient. Rather, the email shows that Dustin Machi sent an email to Kenneth Gross stating he was attaching a dump of the current database and a copy of the source code. Dkt. 253-8. The email at issue, dated January 4, 2021, was sent after the CR2A. In the email, Machi states Trubow or Gross can provide the materials to "the Moriskys" when Trubow and Plaintiff reach a settlement. *Id*. at 2. There is no indication Gross or Trubow ever provided this information to Plaintiff, that Plaintiff knew Gross had the information, or that Plaintiff was in a position to obtain the information from Gross. Rather, the email appears to show that Gross would not provide the "source code" to Plaintiff until after a settlement had been reached.

Additionally, on April 27, 2023, this Court ordered Defendants to produce the entire source code as it existed between December 6, 2020 to the present. Dkt. 124. Defendants' response that Plaintiff had a copy of the source code in January 2021 indicates Defendants failed to comply with this Court's April 2023 Order.

For these reasons, the evidence fails to show Defendants have provided an unredacted copy of the Code Copyright Deposit or the source code. Without providing the required discovery related to the copyright deposit and source code, Defendants should not be permitted to purse copyright infringement claims and defenses.

Fourth, Plaintiff states Defendants have not provided license and settlement agreements. Dkt. 247 at 3. In response, Defendants do not assert they have provided the documents; rather, Trubow contends that "[a] large majority of the 212 Morisky Widget license agreements in the CR2A were signed and executed by Plaintiff himself." Dkt. 254, Trubow Dec., ¶ 6. Trubow's citation to the CR2A provides a list of agreements, but does not show Plaintiff has all the agreements. *See* Dkt. 253-10. Further, "the fact that the documents may be available elsewhere does not relieve parties of their duty to produce documents within their possession, custody, or control." *TIW Holdings LLC v. Evo Brands LLC*, 2024 WL 2107379, at *8 (C.D. Cal. May 6, 2024). Therefore, simply because Trubow asserts that Plaintiff signed and executed a "large majority" of the agreements does not absolve Defendants from producing the agreements.

Finally, Plaintiff contends Defendants have not provided all bank statements and financial records, agreements in which Plaintiff was wrongfully excluded, and all documents regarding Defendants' legal actions. Dkt. 247. Defendants assert that they have produced all financial records and agreements that excluded Plaintiff after the execution of the CR2A, and Defendants state they do not have documents of all legal actions within their possession and

1   control. Dkt. 253. Defendants contend Plaintiff should subpoena joint counsel records to obtain

2   documents related to legal actions. Dkt. 253 at 5.

3         Based on the record, it is difficult to discern if Defendants have actually produced all the

4   documents that are in their possession or control. For example, there is some evidence

5   Defendants have not produced a two-foot-high stack of banking documents and other financial

6   records. *See* Dkt. 155, Bruss Dec., ¶ 30 (the Court recognizes Trubow testified as to these

7   documents prior to the December 2023 deadline to produce). There is also evidence Defendants

8   never produced Umpqua and Bank of America records. *See* Dkt. 248 Austin Dec, ¶ 17 (as of

9   May 15, 2024, Plaintiff's counsel states Defendants never produced records). Defendants

10  summarily state that they did produce records from Chase records from 2017-2019 and 2021 and

11  from Umpqua. *See* Dkt. 253 at 5. Defendants do not appear to assert Bank of America records

12  were produced. The record does not indicate Defendants have produced *all* required banking and

13  financial documents.

14        Moreover, Defendants appear to refuse to produce discovery that is not in Trubow's

15  actual possession. *See* Dkt. 254, Trubow Dec., ¶ 4. Trubow provides no information explaining

16  what documents cannot be produced because they are not in his possession nor does he provide

17  information about who has possession of the documents. *See id*. Further, actual possession,

18  custody or control is not required. "A party may be ordered to produce a document in the

19  possession of a non-party entity if that party has a legal right to obtain the document or has

20  control over the entity who is in possession of the document." *Soto v. City of Concord,* 162

21  F.R.D. 603, 620 (N.D.Cal. 1995); *Axler v. Scientific Ecology Group, Inc.,* 196 F.R.D. 210, 212

22  (D.Mass. 2000) (A "party must produce otherwise discoverable documents that are in his

23  attorneys' possession, custody or control."). "A party has control if the party to whom the request

24

is made has a legal right to obtain the documents, even though he has no copy." *Physical Excellence, Inc. v. Dow*, 2005 WL 8161146, at *2 (D. Ariz. Aug. 11, 2005).

The Court has ordered Defendants to produce all documents related to legal actions involving any of the MMAS parties, all documents related to the Morisky Widget and MMAS, including pre-settlements and agreements, from July 2020 through "the present," and all financial documents. Dkt. 124. The Court's Order did not limit this production to only documents that were in Trubow's possession. For example, Watkins, a member of MMAS Research, has financial documents in his possession. *See* Dkt. 241, Watkins Dec.; *see also* Dkt. 155, Bruss Dec., ¶ 30. Defendants have not shown that MMAS Research, as a defendant, would not have an obligation to produce documents that are in the possession, custody, or control of a member. Therefore, simply because Trubow does not have physical possession of a document does not excuse Defendants from their duty and responsibility to produce documents that may be in the possession of an entity or person under any of the Defendants' control.

Trubow states "Defendants are justified in not providing superfluous discovery responses of documents, and information that are within Plaintiff knowledge and/or was a party to the agreement and had access through his lawyers or other third parties." Dkt. 254, Trubow Dec. ¶ 30 (grammatical structure and errors in original). Trubow continues by stating, "These matters have been equally accessible by Plaintiff. Defendants should not be sanctioned for not providing discovery on what Plaintiff has had equal access." *Id*. Trubow's position is misplaced. First, as stated above, just because "documents may be available elsewhere does not relieve parties of their duty to produce documents within their possession, custody, or control." *TIW Holdings LLC*, 2024 WL 2107379 at *8. Second, Defendants could have objected to discovery requests. However, they did not and this Court ordered Defendants to produce *all* discovery regardless of

whether the requests were duplicative or difficult for Defendants to produce. Defendants'

responses to discovery requests that state the documents are in Plaintiff's possession, are in joint

counsel's possession, or in the possession of Defendants' former lawyers does not meet the

discovery requirements in this case. *See* Dkt. 247-3. Defendants should, in fact, be sanctioned for

failing to meaningfully engage in the discovery process and for failing to comply with Court

orders directing Defendants to produce documents.

For the above stated reasons, the Court finds Plaintiff has shown Defendants failed to

produce a Rule 30(b)(6) witness and failed to produce discovery in violation of the Federal Civil

Rules of Procedure and this Court's Orders. Therefore, Defendants' conduct warrants sanctions.

D. *Electronically Stored Information*

Finally, Plaintiff asserts Defendant Trubow's destruction of Electronically Stored

Information ("ESI") supports case dispositive sanctions. Dkt. 233. Plaintiff alleges Defendant

Trubow destroyed a laptop that contained evidence relevant to this case after this case was

initiated. Dkts. 154, 233. On October 31, 2023, the Court determined Plaintiff had not shown the

information on the laptop could not be obtained through discovery from other sources and the

record, at that time, did not warrant finding Trubow intended to deprive Plaintiff of the use of the

information on the laptop. Dkt. 195. Plaintiff asserts he has not been able to obtain the

information through other sources and Plaintiff has now produced additional arguments related

to Trubow's motivations in destroying the ESI. *See* Dkt. 233. Therefore, the Court will evaluate

whether sanctions related to the destruction of ESI is now warranted.

Rule 37(e) is the exclusive remedy for spoliation of ESI. *Fast v. GoDaddy.com LLC*, 340

F.R.D. 326, 335 (D. Ariz. 2022). Rule 37(e) states,

REPORT AND RECOMMENDATION - 20

Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party ailed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1)     upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2)     only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A)     presume that the lost information was unfavorable to the party;

(B)     instruct the jury that it may or must presume the information was unfavorable to the party; or

(C)     dismiss the action or enter a default judgment.

Courts in this circuit have indicated the moving party must establish spoliation by a preponderance of the evidence. *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951, at *28 (S.D. Cal. Dec. 4, 2019) ((following Ninth Circuit precedent permitting intent under Rule 37(e)(2) by preponderance of the evidence, not clear and convincing evidence) (citing *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. May 23, 2017) ("[t]he applicable standard of proof for spoliation motions in the Ninth Circuit is the preponderance of evidence"); *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 16, 2020). Further, a court "may make factual findings and assess the credibility of witnesses." *WeRide Corp.*, 2020 WL 1967209, at *9.

After review of the record as a whole, the Court finds sanctions under 37(e) are now warranted based on the destruction of Trubow's ASIS laptop. Trubow provided conflicting testimony. During Trubow's May 2023 deposition, he testified that he kept the 200+ licensee and settlement agreements on an ASIS laptop. Dkt. 155-8 at 34-36. As the deposition continued and in a later-filed declaration, Trubow changed his position and stated there was no relevant information on the laptop. *See* Dkt. 167, Trubow Dec., ¶¶ 8-9 (stating there was some licensing

information, only five or six post CR2A documents, and no business records, financial records, or bank statements on the ASIS). Trubow's initial response regarding the location of the licensee and settlement agreements is the most credible and the Court no longer finds Trubow's claims that there was limited or no relevant information on the laptop credible. Therefore, Plaintiff has shown the laptop contained ESI that should have been preserved in the anticipation or conduct of litigation.

Further, the laptop was destroyed in April of 2022. This lawsuit was initiated in September of 2021 and the parties had entered into the CR2A in December of 2020. Therefore, at the time the laptop was destroyed, Trubow knew about this lawsuit and knew that the information on the laptop was relevant to this case and would be discoverable. Additionally, Trubow provided inconsistent testimony about the whereabouts of the laptop. Initially, he testified the laptop was in his possession, but no longer functional. Dkt. 155-8 at 36 ("I have the laptop with the dead thing still"). Plaintiff's counsel asked if Trubow would produce the laptop and Trubow stated "no." *Id*. at 39. Plaintiff's counsel stated they would move forward with a court order to compel production and Trubow said, "Go ahead. Good luck." *Id.* Counsel then asked Trubow why he would not produce it and Trubow stated the laptop was in several pieces and no longer in his possession. *Id*. The Court finds Trubow's testimony that he did not knowingly fail to preserve the ESI after the initiation of this lawsuit not credible. Therefore, the record shows the ESI on the laptop was lost because Trubow failed to take reasonable steps to preserve it.

In October 2023, the Court found Plaintiff failed to show the information on the laptop could not be restored or replaced through additional discovery. Dkt. 195. However, now, Plaintiff has attempted, but been unable, to recover the contents of the laptop through additional

1    discovery. Without information contained on the laptop, Plaintiff cannot prove his case or the

2    damages related to the alleged unauthorized use of the Morisky Widget, MMAS-4, and/or

3    MMAS-8. Plaintiff is, therefore, prejudiced by Trubow's destruction of the ESI. Accordingly,

4    pursuant to Rule 37(e), the Court finds it appropriate to cure the prejudice caused by the

5    destruction of the evidence.

6          Previously, the Court found there was insufficient evidence to support a finding that

7    Trubow intended to deprive Plaintiff of the information on the laptop. Dkt. 195. However, the

8    Court has reassessed the evidence in this case and finds sanctions under Rule 37(e)(2) are

9    appropriate. As discussed above, the evidence shows Trubow has inconsistently reported about

10   the contents of the laptop and the location of the laptop. Based on his deposition, Trubow

11   initially conceded 200 licensee and settlement agreements were located on his laptop. Dkt. 155-8

12   at 36. He said he still had the laptop in his possession, but it had died more than a year after the

13   CR2A was signed and months after this lawsuit was initiated. After being told Plaintiff's counsel

14   would ask the Court to compel production, Trubow's testimony shifted and he testified that the

15   hard drive was in several pieces and in a dump in California. *Id*. at 40. After his deposition and

16   after a motion for sanctions was filed, Trubow stated there was limited information related to this

17   case on the laptop. Because Trubow's initial testimony was that he possessed the laptop and it

18   contained relevant information, the Court finds this testimony to be the most credible. Plaintiff

19   has shown, at least by a preponderance of the evidence, that Trubow intended to deprive Plaintiff

20   of the contents of the hard drive.[4]

21

22

23         [4]While Defendants assert that Plaintiff had access to these agreements through other means and signed
       some of the destroyed agreements, Defendants have not provided evidence to support this assertion.

24

REPORT AND RECOMMENDATION - 23

The Court, therefore, recommends sanctions under Rule 37(e)(2) be imposed against Defendants. Specifically, the Court recommends the destroyed license agreements be presumed to be unfavorable to Defendants and an adverse jury instruction be provided to the jury that the destroyed agreements were unfavorable to Defendants.

E.   Sanctions

"Federal Rule of Civil Procedure (Rule) 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Under Rule 37(b), a court may strike pleadings in whole or in part or enter default judgment where a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)[.]" Fed. R. Civ. P. 37(b)(2)(A). Before imposing terminating sanctions, the court must weigh the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Dist.*, 69 F.3d 337, 348 (9th Cir. 1995)). Courts should not apply these factors mechanically; the factors supply a framework to guide the Court's decision. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

Although the Court is not required to make explicit findings as to each factor, a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper. *Leon*, 464 F.3d at 958. "Due process concerns further require that there exist a relationship between the sanctioned

party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Anheuser-Busch*, 69 F.3d at 348.

Considering the five factors, the Court finds that only Factor 4 -- the public policy favoring disposition of cases on their merits – does not weigh in favor of dispositive sanctions.

Factor 1, the public's interest in expeditious resolution of litigation, warrants dispositive sanctions. This case has been pending since September 24, 2021, approximately three years. *See* Dkt. 1. This case is not complex and yet, at this time, the parties have still not finished discovery, have not completed dispositive motions, and there is no trial date set. As Defendants have taken the position that they have sufficiently complied with this Court's orders and the discovery requests, the Court finds reopening the discovery period will be fruitless and will further delay this case. Defendants' refusal to meaningfully engage in discovery and comply completely with Court orders has and will continue to impede the expeditious resolution of this case. Therefore, Factor 1 weighs in favor of case dispositive sanctions.

Factor 2, the court's need to manage its docket, weighs in favor of case dispositive sanctions. As stated above, this case has been pending for approximately three years. The Court has been unable to set a trial date based on the discovery disputes. Further, the amount of motions practice in this case has been voluminous. The Court has been required to address multiple motions to compel, motions for sanctions, and additional discovery disputes. At the request of the parties, the Court has addressed emergency discovery disputes by phone, has held lengthy hearings (wherein Defendants had technical difficulties), and has issued multiple orders and report and recommendations. Despite the Court's heavy involvement in this case, the necessary discovery has not been produced and Defendants' conduct indicates this case will not resolve without Court intervention. The record reflects case dispositive sanctions are necessary

1  to allow the Court to manage its docket. Therefore, Factor 2 weighs in favor of case dispositive

2  sanctions.

3        Plaintiff has shown Factor 3, the risk of prejudice to Plaintiff, warrants case dispositive

4  sanctions. Despite this Court's attempts to compel Defendants to produce all documents owed to

5  Plaintiff and to compel a Rule 30(b)(6) witness, Defendants have not produced discovery or a

6  knowledgeable Rule 30(b)(6) witness. Defendants have refused to produce discovery they

7  believe is superfluous or available from another source. Plaintiff has lost faith in the Court

8  system, is aging, and cannot endure an additional discovery period. This case has been delayed

9  and, based on Defendants' conduct, will continue to be delayed without production of the

10  discovery owed to Plaintiff. The delays and litigation over discovery disputes has cost Plaintiff

11  thousands of dollars and has yet to result in production of all the necessary discovery. Along

12  with the delays, Defendants have not been responsive to discovery requests that Plaintiff believes

13  are necessary to prove his case. Therefore, the Court finds Factor 3 weighs in favor of case

14  dispositive sanctions.

15        Plaintiff has shown Factor 5, the availability of less drastic sanctions, weighs in

16  Plaintiff's favor. Based on the record, this Court has imposed monetary sanctions and has warned

17  Defendants regarding failures to comply with Court orders and failures to produce discovery. For

18  example, it has been more than a year since the Court ordered Defendants to pay a monetary

19  sanction for discovery violations. Defendants have not paid and have not provided adequate

20  evidence that excuses the lack of payment. Trubow has also made statements that he will not

21  pay. Moreover, Defendants' counsel has refused to pay a minor monetary sanction. And,

22  Defendants' counsel has repeatedly failed to comply with this Court's Orders and the LCRs.

23  Last, the Court has already ordered Defendants to produce additional discovery and Defendants

24

have failed to comply. For illustration, Defendants failed to produce documents despite orders to do so and failed to produce a Rule 30(b)(6) witness after this Court directed Trubow to sit for the deposition. The Court has spent over a year ordering Defendants to properly engage in the discovery process. The Court finds less drastic sanctions are no longer available. Therefore, Factor 5 weighs in favor of case dispositive sanctions.

Finally, the record reflects the necessary "willfulness, fault, or bad faith," which would make dismissal proper. *See Leon*, 464 F.3d at 958. The Court finds Defendants have failed to conscientiously respond to discovery. Defendants and their counsel have knowingly refused to meaningfully engage in the discovery process. For example, Defendants did not properly prepare a Rule 30(b)(6) witness. Trubow knowingly failed to preserve ESI. Defendants have refused to provide discovery when Trubow feels the discovery requests are superfluous or when Trubow does not have physical possession of a document, regardless of this Court's orders to produce the discovery. Defense counsel previously stated that the Court-imposed sanctions were effective in ensuring Defendants complied with the discovery requests. However, from the record before the Court, the Court-imposed sanctions have had little or no impact on Defendants' conduct. Rather, evidence shows Trubow "would never pay a dollar of sanctions, or any judgment entered against him to Dr. Morisky." Dkt. 204, Austin Dec., ¶ 7. He said "the only result of this process would be to drain Dr. Morisky's funds." *Id*. Finally, both Defendants and their counsel have willfully refused to pay the monetary sanctions. Accordingly, the Court finds case dispositive sanctions should be issued.

In summation, based on the record before the Court, case dispositive sanctions are warranted because Defendants have repeatedly failed to comply with Court orders and the LCRs, Defendants have repeatedly failed to produce the required discovery, including a Rule 30(b)(6)

witness, and Defendants intentionally deprived Plaintiff of ESI. Therefore, the Court recommends the following sanctions:

1. Defendants' counterclaims be dismissed with prejudice and Defendants be limited in the defenses presented at trial;

2. Under Rule 37(e)(2), the destroyed ESI (the license and settlement agreements) be presumed to be unfavorable to Defendants and an adverse jury instruction be provided to the jury that the destroyed agreements were unfavorable to Defendants;

3. This case proceed immediately to trial with no additional discovery or dispositive motions practice; and

4. At trial, adverse jury instructions be provided so that any lack of proof should be inferred favorably to Plaintiff based on Defendants' failure to produce discovery.

## IV. Conclusion

For the above stated reasons, the Court recommends Plaintiff's Renewed Motion for Sanctions (Dkt. 233) be granted-in-part. In addition to the sanctions detailed above, the Court also recommends Defendants be ordered to pay Plaintiff's costs and fees for bringing the Renewed Motion for Sanctions. As the Court recommends this case proceed immediately to trial, the Court recommends the referral to the undersigned be terminated.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on

September 4, 2024, as noted in the caption.

Dated this 20th day of August, 2024.

David W. Christel
United States Magistrate Judge