# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MMAS RESEARCH  LLC, a Washington limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, MORISKY MEDICATION ADHERENCE RESEARCH LLC, JACOB HARTZ, HANNAH PALFREY, DONALD MORISKY, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 1:24-cv-12108-DHC |

**PLAINTIFF MMAS RESEARCH LLC'S OPPOSITION TO THE HOSPITAL DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Ashkron Roozbehani (Bar No. 694483)
PERSEPOLIS LAW, PLLC
809 Washington St., Suite A
Newton, MA 02460
Telephone: (617) 431-4329
persepolaw@gmail.com

*Attorney for Plaintiff*
*MMAS Research LLC*

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ II

TABLE OF AUTHORITIES ................................................................................ III

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 1

STANDARD OF REVIEW ................................................................................... 2

ARGUMENT .......................................................................................................... 3

I.    The FAC states a claim for breach of contract because the copyright misuse doctrine does not apply, MMAS has alleged sufficient damages, and Dr. Hartz and Palfrey are bound as agents of BCH. ...................................... 3

    A.    The copyright misuse doctrine does not apply as a defense to breach of contract claims. ................................................................................ 3

    B.    MMAS Research has alleged sufficient damages for breach of contract based on harm to its business relationships and reputation. ......... 5

II.   MMAS has stated a claim for trade secret misappropriation because the scoring and coding algorithms of the Morsiky Widget are proprietary and confidential, and Defendants improperly disclosed them. .......................... 6

    A.    The Morsiky Widget's scoring and coding algorithms qualify as trade secrets due to their proprietary and confidential nature. .................. 6

    B.    BCH's unauthorized disclosure and use of the Morsiky Widget's proprietary scoring criteria constitutes trade secret misappropriation. ............................................................................... 10

III.  MMAS has stated a claim under the DMCA because Defendants removed and altered MMAS's copyright management information. .......................... 12

IV.   MMAS has adequately alleged that it owns the copyrights at issue and that Defendants' conduct constitutes copyright infringement. ......................... 15

V.    This Court should disregard Defendants' improper attempt to introduce facts and opinions from prior orders issued in separate actions through judicial notice. ......................................................................................... 15

VI.   Despite Defendants' reliance on a host of extraneous documents, this Court should not treat this as a motion for summary judgment without first allowing the parties to engage in discovery. ........................................... 17

CONCLUSION ..................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011)............................ 12, 13, 14

*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) ......................................... 3, 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 2

*Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178 (D. Kan. 2022) ........................ 7, 8

*Aware, Inc. v. Centillium Communications, Inc.*, 604 F.Supp.2d 306 (D. Mass. 2009).............. 6, 8

*BanxCorp v. Costco Wholesale Corp.*, 723 F.Supp.2d 596 (S.D.N.Y.2010) ............................... 12

*Cosenza v. City of Worcester, Massachusetts*, 355 F. Supp. 3d 81 (D. Mass. 2019)......... 14, 15, 16

*Davidson & Assocs., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164 (E.D. Mo. 2004) ............................................................................................................... 3, 4

*DeCastro v. Abrams*, No. 1:22-CV-11421-ABD, 2023 WL 4471834 (D. Mass. July 11, 2023) ........................................................................................................... 15

*EMC Corp. v. Pure Storage, Inc.*, No. CV 13-12789-JGD, 2016 WL 7826662 (D. Mass. Aug. 19, 2016) .................................................................................................... 6, 8

*Flexible Techs., Inc. v. SharkNinja Operating LLC*, No. CV 18-348-CFC, 2019 WL 1417465 (D. Del. Mar. 29, 2019).................................................................................. 6, 8

*Frank D. Wayne Assocs., Inc. v. Lussier*, 16 Mass. App. Ct. 986 (1983).................................. 4, 5

*Garcia-Catalán v. United States*, 734 F.3d 100 (1st Cir. 2013)....................................... 2

*Island Software & Comput. Serv. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005) .................... 15

*Janik v. SMG Media, Inc.*, No. 16CIV7308JGKAJP, 2018 WL 345111 (S.D.N.Y. Jan. 10, 2018) .......................................................................................................... 12

*Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020) ................................................................................................................11, 12, 13

*MultiTracks, LLC v. Palmer,* No. A-21-CV-00645-LY, 2022 WL 606721 (W.D. Tex. Mar. 1, 2022) .............................................................................................................................. 3, 4

*Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138 (D. Mass. 2023) ...................... 9

*Nollet v. Justices of the Trial Court*, 83 F. Supp. 2d 204 (D. Mass. 2000) ................................... 2

*Ocasio- Hernández v. Fortuño-Burset*, 640 F.3d 1 (1st Cir. 2011) ................................................. 2

*Oveissi v. Islamic Republic of Iran*, 879 F.Supp.2d 44 (D.D.C. 2012) ................................. 15, 16

*Perrier-Bilbo v. United States*, 346 F. Supp. 3d 211 (D. Mass. 2018), *aff'd*, 954 F.3d 413 (1st Cir. 2020) ................................................................................................................ 17, 18

*Redgrave v. Bos. Symphony Orchestra, Inc.*, 855 F.2d 888 (1st Cir. 1988) ................................ 4, 5

*Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76 (1st Cir. 2008) .................................................... 2

*Sahu v. Union Carbide Corp.*, 548 F.3d 59 (2d Cir. 2008) ........................................................... 17

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012) ................................. 2

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29 (1st Cir. 2012) ............ 3, 4

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410 (3d Cir. 1999) ................................................................................................................. 15, 16

*Sutra, Inc. v. Iceland Exp.*, No. 04-11360-DPW, 2008 WL 2705580 (D. Mass. July 10, 2008) .............................................................................................................................. 6, 8

**Statutes**

17 U.S.C. § 1202 ...............................................................................................................11, 13

18 U.S.C. § 1839 ................................................................................................................. 6, 9

Fed. R. Civ. P. 12(d) ............................................................................................................... 17

Fed. R. Evid. 201(b)...........................................................................................................14, 15, 16

**INTRODUCTION**

This brief opposes Defendants The Children's Hospital Corporation ("Boston's Children's Hospital" or "BCH"), Jacob Hartz ("Dr. Hartz"), and Hannah Palfrey (collectively, "Defendants")'s motion to dismiss, demonstrating that Plaintiff MMAS Research ("Plaintiff" or "MMAS") has adequately stated claims for breach of contract, trade secret misappropriation, violations under the Digital Millennium Copyright Act ("DMCA"), and copyright infringement. First, the copyright misuse doctrine does not apply to breach of contract claims, and Defendants cannot invoke it to avoid liability. In addition, MMAS sufficiently alleges consequential damages, including reputational harm and lost business opportunities.

Further, the FAC establishes that the Morisky Widget's scoring and coding algorithms qualify as trade secrets, which Defendants misappropriated through unauthorized use and disclosure. The FAC also properly alleges that Defendants violated the DMCA by removing and altering MMAS's copyright management information without authorization. Moreover, MMAS sufficiently alleges copyright infringement, asserting ownership of the copyrights in question and Defendants' unauthorized reproduction and distribution of the copyrighted works. Finally, Defendants' reliance on extraneous materials improperly seeks to circumvent the pleadings standard, and the Court should disregard them.

**FACTUAL BACKGROUND**

The factual background of this case requires a detailed correction of the facts misstated in Defendants' motion to dismiss by a witness with personal knowledge. Accordingly, Plaintiff directs this Court to the Declaration of Steven Trubow ("Trubow Declaration"), attached hereto, which includes a "correction of facts" that provides accurate information and clarifies the true facts of

the case, as alleged in Plaintiff's First Amended Complaint. *See* Trubow Declaration ("Decl.") ¶¶ 1-73.

## STANDARD OF REVIEW

To decide a motion to dismiss for failure to state a claim, the Court must determine if the well-pled facts alleged "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "The plaintiff need not demonstrate she is likely to prevail" at this stage, only that her claims are facially plausible. *Garcia-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013). Plausible means "more than a sheer possibility," and permits the Court to incorporate a contextual analysis of the facts. *Id*. at 102-03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This determination requires a two-step inquiry. *Id.* at 103. First, the Court must distinguish the factual allegations from the conclusory legal allegations in the complaint. *Id.* Second, taking plaintiff's allegations as true, the Court should be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678); *Ocasio- Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011).

In deciding a motion to dismiss, the Court is limited to the "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken." *Nollet v. Justices of the Trial Court*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000). Dismissal is appropriate only if MMAS's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## ARGUMENT

I.  **The FAC states a claim for breach of contract because the copyright misuse doctrine does not apply, MMAS has alleged sufficient damages, and Dr. Hartz and Palfrey are bound as agents of BCH.**

A.  **The copyright misuse doctrine does not apply as a defense to breach of contract claims.**

The copyright misuse doctrine is "a judicially crafted affirmative defense to *copyright infringement*." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011) ("*Apple*") (emphasis added). Repeatedly, the First Circuit has declined to adopt the doctrine, even in the traditional context of its invocation as a defense to copyright infringement claims. *See e.g.*, *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 65 (1st Cir. 2012) ("*Gregory*"). Thus, there is no binding precedent that supports its application here.

Even those circuits that have adopted the doctrine have refused to apply it to state law claims, such as breach of contract claims. *See Apple*, 658 F.3d at 1159 (explaining that the Ninth Circuit had made it "clear" that the copyright misuse doctrine "is not a defense to state law claims"); *see also Davidson & Assocs., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164, 1182–83 (E.D. Mo. 2004) ("*Davidson*") (refusing "to apply the copyright misuse defense as a defense to a contract claim, because the defense is normally used in copyright infringement actions"). Indeed, no circuit has recognized the copyright misuse doctrine as a defense to breach of contract claims. *See MultiTracks, LLC v. Palmer,* No. A-21-CV-00645-LY, 2022 WL 606721, at *4 (W.D. Tex. Mar. 1, 2022) ("*MultiTracks*") (collecting cases and finding no case that applied the copyright misuse doctrine to a breach of contract claim).

Here, there is no precedent that supports Defendants' request for this Court to apply the copyright misuse doctrine as a defense to MMAS's breach of contract claim. The First Circuit has declined to adopt the doctrine in its traditional context as a defense to copyright infringement

claims, *see Gregory*, 689 F.3d at 65, and those circuits who have adopted the doctrine have expressly refused to apply it to breach of contract claims. *See Apple*, 658 F.3d at 1159 (explaining that the copyright misuse doctrine "is not a defense to state law claims); *Davidson*, 334 F.Supp.2d at 1182-83 (refusing "to apply the copyright misuse defense as a defense to a contract claim, because the defense is normally used in copyright infringement actions"); *MultiTracks*, 2022 WL 606721, at *4 (refusing "to apply the copyright misuse defense as a defense to a contract claim, because the defense is normally used in copyright infringement actions"). Accordingly, there is no merit to Defendants' argument that the FAC's breach of contract claim should be dismissed on the basis of a doctrine that has not been adopted by this Circuit and has never been applied to dismiss a breach of contract claim.

Regardless, MMAS's license with BCH does not seek to expand its rights beyond those that were provided by the Copyright Act. MMAS's license requires only that the Widget MMAS questionnaire be conducted within the Widget itself. It does not preclude paper use of the 2006 MMAS-8 copyrighted questionnaire, because that questionnaire is fundamentally different than Widget MMAS questionnaire as set forth in the FAC. MMAS requires that the electronic widget be utilized for administrating and scoring the questionnaire to aid it in tracking questionnaire distribution and use for royalty and licensing purposes, and ensures that the questionnaire is administered and scored properly, thereby protected MMAS's reputation and resulting goodwill. Administration outside of the Widget allows for the manipulation of the questions, scoring, and other essential elements which harms both the administration of the questionnaire and its effectiveness.

### B. MMAS Research has alleged sufficient damages for breach of contract based on harm to its business relationships and reputation.

To recover consequential damages for breach of contract based upon reputational harm, a plaintiff must show a "basis for an inference of fact that the plaintiff has actually been damaged," and allege facts sufficient to enable "the fact finder . . . to compute the compensation by rational methods upon a firm basis of facts." *Redgrave v. Bos. Symphony Orchestra, Inc.*, 855 F.2d 888, 896 (1st Cir. 1988) (internal citations and quotations omitted). On the latter requitement, while quantifying consequential damages can be a "particularly difficult and elusive" task, "[d]amages are not, however, precluded" for this reason alone. *Frank D. Wayne Assocs., Inc. v. Lussier*, 16 Mass. App. Ct. 986, 988 (1983) ("*Lussier*") (internal quotations and citations omitted). Rather, "where lost profits have to be valued, mathematical accuracy of proof is not required, and estimates are in order." *See id.* (internal citations omitted).

The FAC alleges facts sufficient to demonstrate that MMAS is entitled to consequential damages resulting from Defendants' breach of contract. *See Redgrave*, 855 F.2d at 896. Specifically, it alleges a "basis for an inference of fact that the plaintiff has actually been damaged," *see id*, including interference with MMAS's business relationships, loss of control over proprietary information, and reputational harm. *See* FAC ¶¶ 5, 52, 65, 69, 80-83. Further, it alleges facts sufficient to enable "the fact finder . . . to compute the compensation by rational methods upon a firm basis of facts." *See Redgrave*, 855 F.2d at 896. The value of MMAS's licensing agreements is ascertainable, and it follows that MMAS may prove an estimate at trial of the certain number of opportunities to enter into such agreements that were almost certainly lost as a result of Defendants' breach of contract. *See Lussier*, 16 Mass. App. Ct. at 988 (internal citations omitted) ("[W]here lost profits have to be valued, mathematical accuracy of proof is not required, and estimates are in order").

Thus, the FAC sufficiently alleges facts to enable MMAS to establish consequential damages resulting from Defendants' breach of contract because it alleges interference with MMAS's business relationships, loss of control over proprietary information, and reputational harm, *see* FAC ¶¶ 5, 52, 65, 69, 80-83, the value of which can easily be calculated with estimates based on the standard value of MMAS's licensing agreements. *See Redgrave*, 855 F.2d at 896; *Lussier*, 16 Mass. App. Ct. at 988.

In addition to the foregoing arguments, MMAS refers the Court to the correction of facts contained in the Trubow Declaration. *See* Trubow Decl. ¶¶ 10-49.

## II. MMAS has stated a claim for trade secret misappropriation because the scoring and coding algorithms of the Morisky Widget are proprietary and confidential, and Defendants improperly disclosed them.

### A. The Morisky Widget's scoring and coding algorithms qualify as trade secrets due to their proprietary and confidential nature.

The DTSA defines "trade secret" broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." 18 U.S.C. § 1839(3). To qualify as a trade secret, (1) the owner must take "reasonable measures" to keep the information secret, and (2) the information must derive "independent economic value" from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from its disclosure or use. *Id.*

Generally speaking, the issue of whether a pleading adequately identifies a trade secret presents a question of fact that is not appropriate to resolve at the motion to dismiss stage. *See Flexible Techs., Inc. v. SharkNinja Operating LLC*, No. CV 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) ("[T]rade secrets need not be disclosed in detail in a complaint alleging

6

misappropriation for the simple reason that such requirement would result in public disclosure of the purported trade secrets."); *Aware, Inc. v. Centillium Communications, Inc.*, 604 F.Supp.2d 306, 313 (D. Mass. 2009) (claims for misappropriation of trade secrets are not subject to a heightened pleading standard).

In addition, a unique application or combination of information in the public domain or know-how in an industry qualifies as a trade secret. *See Sutra, Inc. v. Iceland Exp.*, No. 04-11360-DPW, 2008 WL 2705580, at *4 (D. Mass. July 10, 2008) (citation omitted) ("A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret."); *see also EMC Corp. v. Pure Storage, Inc.*, No. CV 13-12789-JGD, 2016 WL 7826662, at *6 (D. Mass. Aug. 19, 2016) (citation omitted) ("A trade secret need not have the novelty that is requisite for a patent, it must only confer a competitive advantage on its possessor.").

For example, in *Assessment Techs. Inst., LLC v. Parkes*, the court held that proctored nursing exams qualify as trade secrets under the DTSA, even though they are presented to the public who take the exam. *See Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1211-13 (D. Kan. 2022) ("*Parkes*"). In so holding, the court found that exam's "specific combination of questions and answers, and the presentation of those questions and answers," rather than the facts themselves, met the DTSA's definition of a "trade secret." *Id.* Further, it reasoned that the exam company had taken "reasonable measures" to keep its trade secret confidential by requiring proctors to "undergo training regarding the proper procedures to administer the exam," and requiring exam takers to "expressly agree to the ATI Proctored Exam Terms that prohibit disclosure of any information contained within the proctored exam." *Id*. Lastly, the court had no difficulty in

finding that the proctored exams had an "independent economic value" from not being generally known, as the exam company profits from administering its exam, the value of which is derived from the "controlled, proctored environment," and the "specific combination of questions and answers." *Id.* at 1211, 1216, fn. 136.

The same is true with the Morisky Widget. Just as with a proctored exam, the "specific combination of questions and answers, and the presentation of those questions and answers" meet the DTSA's definition of "trade secret." *See Parkes*, 588 F. Supp. 3d at 1211-13; FAC ¶¶ 65-68. Additionally, MMAS has taken reasonable measures to protect its trade secret by requiring licensees to "undergo training regarding the proper procedures to administer the [Morisky Widget]," and to "expressly agree to the [MMAS's terms] that prohibit disclosure [or unauthorized alteration] of [the Widget's scoring criteria]." *See id*. And like a proctored exam, MMAS derives "independent economic value" from its licensing of the Widget, the value of which depends on its proper administration of its "specific combination of questions and answers." *See id.* at 1211, 1216, fn. 136.

Moreover, Defendants' claim that MMAS has not adequately identified the trade secret it claims presents a question of fact that is not appropriate for resolution at the motion to dismiss stage. *See Flexible Techs., Inc.*, 2019 WL 1417465, at *2 ("[T]rade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such requirement would result in public disclosure of the purported trade secrets."); *Aware, Inc.*, 604 F.Supp.2d at 313 (claims for misappropriation of trade secrets are not subject to a heightened pleading standard). At its core, the trade secrets asserted by MMAS constitute a unique application or combination of information in the public domain or know-how in an industry, which qualify as trade secrets protected under the law. *See Sutra, Inc.*, 2008 WL 2705580, at *4 ("A trade secret can exist in a

combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret"); *EMC Corp.*, 2016 WL 7826662, at *6 ("A trade secret need not have the novelty that is requisite for a patent, it must only confer a competitive advantage on its possessor").

In addition, Defendants Hartz and Palfrey were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8, and were trained specifically on the Morisky Widget's proprietary scoring and coding algorithms and test editor/translation algorithm. *See* FAC ¶ 51 ("Defendants Jacob Hartz and Hannah Palfrey . . . were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8. The training included certification on the Morisky Widget trade secret scoring and coding algorithm and test editor/translation algorithm"). Both Hartz and Palfrey had their own individual logins and passwords to access these trade secret algorithms in the Morisky Widget software source code. *See id*. This demonstrates that MMAS took reasonable measures to protect its trade secrets by providing individualized access to its proprietary algorithms and requiring specific certification for their use.

Accordingly, although Defendants disparage the value of the Widget's proprietary scoring criteria in an attempt to undermine its perceived value, MMAS's scoring criteria is proprietary and valuable. The Widget's scoring criteria was developed over years of research and is based upon extensive experience in the diagnostic field. To allow it to be freely misappropriated threatens the protections that the DTSA affords to all scoring criteria systems. The fact that the test is brief and asks seemingly intuitive questions is intentional: it is designed to quickly elicit accurate responses from all types of patients and be utilized numerous times. Still, the Widget meets the DTSA's definition of "trade secret," and is protected under the DTSA because MMAS takes reasonable

measures to keep its scoring criteria confidential, and because the scoring criteria derives an "independent economic value" from not being generally known. Were it otherwise, competitors could mimic its method and MMAS would have nothing of value to offer its licensees.

**B. BCH's unauthorized disclosure and use of the Morsiky Widget's proprietary scoring criteria constitutes trade secret misappropriation.**

Under the DTSA, misappropriation is defined as "the disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret."  18 U.S.C. § 1839(5)(B); *see Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 158 (D. Mass. 2023).

Here, Defendants administered paper versions of the Morisky Widget that violated their contractual duty to maintain the secrecy of the Widget's proprietary scoring criteria. *See* FAC ¶¶ 89-9, ¶ 91 ("Hartz and Palfrey administered scored and coded a paper Morisky Widget MMAS8 test that utilized and divulged scoring and coding criteria"). Additionally, Defendants Hartz and Palfrey used the Widget's trade secret test editor algorithm to customize a Morisky Widget MMAS-8 medication and condition-specific test for the BCH study, a clear violation of their duties under the licensing agreement. *See* FAC ¶ 49 ("In November 2019, after the acceptance of the application BCH personnel were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8. Dr. Hartz and Ms. Palfrey customized a Morisky Widget MMAS-8 medication and condition specific test for the BCH study"); ¶¶ 50-52. The Morisky Widget scoring and coding criteria were considered trade secrets of MMAS under the BCH Morisky Widget license, and BCH agreed that these criteria would never be divulged in any publication or presentation without MMAS's written permission. *See* FAC ¶¶ 67-68 ("In their Morisky Widget

license BCH and Jacob Hartz agreed that coding and scoring criteria of the Morisky Widget can never be divulged in any publication, presentation, or website without written permission from MMAS," and "agreed that changes or any modifications to the wording, phrasing, or scoring of the MMAS require certification on the Morisky Widget editor and translator"). Despite these protections, Defendants breached their duty of secrecy, misappropriating and using the trade secret scoring and coding algorithms without MMAS's consent.

On July 5, 2022, Dr. Hartz and Ms. Palfrey sent MMAS Research LLC a copy of the Morisky Widget MMAS-8 paper test they were administering to patients as a screener. FAC ¶ 89. They also administered this version of the Morisky Widget pre-enrollment screener on the ClinicalTrials.gov website, violating their duty to maintain confidentiality and using the trade secret without permission. *See* FAC ¶ 90.

In sum, MMAS has adequately stated a claim for trade secret misappropriation under the DTSA, as Defendants Hartz and Palfrey disclosed and used MMAS's proprietary algorithms without consent. Despite agreeing to keep the Widget's trade secrets confidential and to obtain MMAS's written permission for any disclosures or modifications, Defendants disclosed the proprietary scoring and coding criteria through unauthorized paper tests and public postings on ClinicalTrials.gov. These breaches expose MMAS's trade secrets to potential competitors, damaging MMAS's competitive edge and its ability to monetize the Widget. As demonstrated above, the allegations in the FAC clearly show that Defendants' actions constitute a misappropriation of MMAS's trade secrets, resulting in harm to MMAS's business. As such, the claim for trade secret misappropriation is sufficiently pled to survive Defendants' motion to dismiss.

III. **MMAS has stated a claim under the DMCA because Defendants removed and altered MMAS's copyright management information.**

Section 1202(b) of the Digital Millenium Copyright Act ("DMCA") provides that "[n]o person shall, without the authority of the copyright owner or the law—(1) intentionally remove or alter any copyright management information, (2) distribute . . . copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute . . . works, [or] copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b).

In interpreting this provision, courts have held that copyright management information ("CMI") does not need to appear on the work itself in order for Section 1202(b)'s protections to apply. *See Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020) ("*BuzzFeed*") (holding that Section 1202(b) "does not require the CMI to appear on the work itself") (quoting *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011) ("*Morel*")); *see also Janik v. SMG Media, Inc.*, No. 16CIV7308JGKAJP, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018) (noting that the legislative history of the DMCA explains that Section 1202 uses the term "'conveyed' . . . in its broadest sense" and that it "is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed") (quoting S. REP. 105-190 at 35 (1998)). In *BuzzFeed*, for example, the court held that removal of a photographer's "gutter credits"—or the placement of his name beneath a photograph but above the article's text—qualified as CMI protected by the DMCA because the statute does not require that CMI be a physical part of the work itself. *See BuzzFeed*, 356 F. Supp. 3d at 377-78.

12

Further, because it presents a question of fact, the issue of whether CMI is "connected to a work" should not be resolved on a motion to dismiss. *See Morel*, 769 F.Supp.2d at 305 ("While the location of CMI may go to [plaintiff] and the Third–Party Defendants' intent, that fact issue cannot be resolved on a motion to dismiss") (citing *BanxCorp v. Costco Wholesale Corp.*, 723 F.Supp.2d 596, 610–11 (S.D.N.Y.2010) (noting in denying a motion to dismiss that, "[a]t summary judgment, Defendants will have the opportunity to present evidence that the placement of the CMI either indicated that it did not refer to the [work], or was sufficiently removed to demonstrate that Defendants lacked the intent required to show a violation of the DMCA").

Here, MMAS has adequately alleged that Defendants removed and altered its CMI in violation of the DMCA. Specifically, MMAS asserts that BCH removed the attribution to MMAS Research from its clinical trial postings and replaced it with Morisky's unauthorized attribution. FAC ¶ 5 ("BCH altered copyright management information on its clinical trial postings, removing MMAS Research's attribution and replacing it with Morisky's unauthorized version"), ¶ 95 ("On January 10, 2023, Jacob Hartz removed the MMAS Research notification from ClinicalTrials.gov without the Licensor's permission"), ¶¶ 96-99, ¶¶ 119-120, ¶ 121 ("Without authorization, Defendants BCH, Hartz, and Palfrey created and utilized a version of the Morisky Widget MMAS-8 Test for the BCH Clinical Trial Study. In doing so, BCH, Hartz, and Palfrey reproduced, distributed, and displayed a derivative work that incorporates substantial and original elements of the copyrighted Morisky Widget MMAS-8 Test"), ¶¶ 122-124. This constitutes an alteration of CMI, which is prohibited by Section 1202(b) of the DMCA. 17 U.S.C. § 1202(b).

Notwithstanding the clarity of MMAS's allegations, Defendants mischaracterize the FAC entirely, stating that MMAS merely claims that Morisky and MMAR altered CMI, not the BCH Defendants themselves. *See* Defs. Br. at 12. It goes without stating that Defendants' selective

misreading of the FAC does not alter the allegations themselves. *See* FAC ¶¶ 5, 95-99, 119-124. While the FAC does allege that the BCH Defendants were urged by Morisky to alter MMAS's CMI, that alone does nothing to absolve them from liability under the DMCA. Thus, it is Defendants' argument on this point which quite literally "has no basis." *See* Defs. Br. at 12.

Further, there is no merit to Defendants' contention that MMAS's DMCA claim fails because its CMI did not appear on a copy of the work itself. *See* Defs. Br. at 12. As explained, CMI need not appear on the work itself for DMCA protections to apply. *See BuzzFeed*, 356 F. Supp. 3d at 378. MMAS's allegation that BCH removed its attribution and replaced it with Morisky's unauthorized version is analogous to the removal of a gutter credit in *BuzzFeed*: in neither instance did the CMI appear on the work itself, yet both present examples of CMI protected under the DMCA. *See id*.

Moreover, as courts have noted, whether CMI is connected to a work is a question of fact, which should not be resolved on a motion to dismiss. *See Morel*, 769 F. Supp. 2d at 305. MMAS has sufficiently alleged that the removal and alteration of its CMI was connected to its copyrighted work. *See* FAC ¶¶ 5, 95-99, 119-124. This inherently factual question should be explored further in discovery, not dismissed at this stage of litigation. *See Morel*, 769 F. Supp. 2d at 305.

Accordingly, MMAS has stated a valid claim under the DMCA by alleging that the BCH Defendants removed and altered its CMI in violation of Section 1202(b). That Morisky told them to do so, or that the CMI does not appear on the work itself, does not shield them from liability. At a minimum, the question of whether MMAS's CMI was "connected" to the work presents a factual issue that should only be addressed with the benefit of discovery.

MMAS further refers this court to the correction of facts regarding its DMCA claim contained in the Trubow Declaration. *See* Trubow Decl. ¶¶ 50-73.

IV.    **MMAS has adequately alleged that it owns the copyrights at issue and that Defendants' conduct constitutes copyright infringement.**

Given the host of factual inaccuracies in Defendants' motion to dismiss, MMAS refers the Court to the Trubow Declaration in support of its allegations that it owns the underling copyrights at issue in this litigation, and that Defendants' conduct constitutes copyright infringement. *See* Trubow Decl. ¶¶ 10-49.

V.    **This Court should disregard Defendants' improper attempt to introduce facts and opinions from prior orders issued in separate actions through judicial notice.**

Judicial notice is only proper for facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Facts, reasoning, and conclusions drawn in another court's opinions do not meet this standard—judicial notice is only proper for the existence of the opinion itself, not its factual content or legal conclusions. *See Cosenza v. City of Worcester, Massachusetts*, 355 F. Supp. 3d 81, 87, fn. 1 (D. Mass. 2019) ("As for the prior opinions, while this Court may take judicial notice of judicial decisions, taking judicial notice of a decision in another court ... is not the same as taking judicial notice of a fact within the decision. Thus, even when a copy of a judicial decision is placed in the record, it is not evidence nor is it fact") (quotation marks and citation omitted) (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—*not for the truth of the facts recited therein*, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity"); *Oveissi v. Islamic Republic of Iran*, 879 F.Supp.2d 44, 50 (D.D.C. 2012) ("[I]t cannot be said that" factual findings in a prior proceeding "are not subject to reasonable dispute. Specifically, such findings represent merely a court's probabilistic determination as to what happened, rather than a first-hand account of the actual events.") (quotation marks and citation omitted)).

Defendants attempt to introduce four documents that they assert this Court can and should take judicial notice of: (1) the certificate of registration for the MMAS-8 copyright, *see* Defs. Br. at 3, fn. 3;[1]   (2) the magistrate's Report and Recommendation on Morisky's motion for sanctions in the District of Washington action, *see id.* at 5, fn. 4; (3) the District of Washington's order adopting the magistrate's report and recommendation, *see id.*; and (4) the District of Washington's order denying MMAS's motion for reconsideration. *See id.*

The facts, reasoning, and conclusions from the District of Washington's order are not proper subjects for judicial notice, however, because they do not meet the standard of facts "not subject to reasonable dispute." *See* Fed. R. Evid. 201(b); *see also Cosenza*, 355 F. Supp. 3d at 87, fn. 1 ("As for the prior opinions, while this Court may take judicial notice of judicial decisions, taking judicial notice of a decision in another court ... is not the same as taking judicial notice of a fact within the decision. Thus, even when a copy of a judicial decision is placed in the record, it is not evidence nor is it fact") (quotation marks and citation omitted); *Southern Cross Overseas Agencies, Inc.*, 181 F.3d at 426 ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—*not for the truth of the facts recited therein*, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity"); *Oveissi*, 879 F.Supp.2d at 50 ("[I]t cannot be said that" factual findings in a prior proceeding "are not subject to reasonable dispute. Specifically, such findings represent merely a court's probabilistic determination as to what happened, rather than a first-hand account of the actual events") (quotation marks and citation omitted).

---

[1] MMAS does not contest Defendants' introduction of the certificate of registration for the MMAS-8 copyright or the Court's discretion to take judicial notice of it. *See DeCastro v. Abrams*, No. 1:22-CV-11421-ABD, 2023 WL 4471834, at *3 (D. Mass. July 11, 2023) (citing *Island Software & Comput. Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("The district court was entitled to take judicial notice of [defendant]'s federal copyright registrations, as published in the Copyright Office's registry").

Thus, the Court may only take judicial notice of the fact that a District of Washington opinion exists which granted Morisky's motion for sanctions. *See* Fed. R. Evid. 201(b); *see also Cosenza*, 355 F. Supp. 3d at 87, fn. 1; *Southern Cross Overseas Agencies, Inc.*, 181 F.3d at 426; *Oveissi*, 879 F.Supp.2d at 50. It may not take judicial notice of the opinions' factual content or legal conclusions. *See id.*

Consequently, the Court may not take judicial of the following facts and opinions that Defendants rely on the District of Washington's opinions to establish: that whether MMAS Research owns the widget copyright "is still an open question, . . . and things do not look good for MMAS Research; or that MMAS "failed to provide discovery" or that Trubow committed "spoliation of evidence." *See* Defs. Br. at 5, fn. 4. As explained above, these facts and opinions are not proper subjects for judicial notice and should be disregarded by the Court on this motion to dismiss, which should be decided almost exclusively on the pleadings.

**VI.    Despite Defendants' reliance on a host of extraneous documents, this Court should not treat this as a motion for summary judgment without first allowing the parties to engage in discovery.**

Federal Rule of Civil Procedure ("FRCP") 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Should this occur, the Rule further states that "[a]ll parties must be given a reasonable opportunity to present material that is pertinent to the motion." *Id.* "Ordinarily, this means that a district court must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (internal quotations and citation omitted); *accord Perrier-Bilbo v. United States*, 346 F. Supp. 3d 211, 218 (D. Mass. 2018), *aff'd*, 954 F.3d 413 (1st Cir. 2020).

17

Here, Defendants introduced a series of exhibits in support of their motion to dismiss, including a redlined comparison of the Hospital Questionnaire and the 2006 MMAS-8, a Certificate of Registration for the MMAS-8 copyright, and three orders from Donald Morisky's action against MMAS Research in the Western District of Washington. *See* Dkt. 26-1–26-5. As explained above, the latter three orders from the Western District of Washington and the Certificate of Registration for the MMAS-8 copyright are not proper subjects for judicial notice and should not be considered.

However, for the Court to consider Defendants' extraneous material, it would need to convert Defendants' motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Consequently, the Court would be required to provide notice to the parties that Defendants' motion had been converted, and provide them with an opportunity to present all relevant material. *See id.*; *see also Sahu*, 548 F.3d at 67 ("Ordinarily, this means that a district court must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading") (internal quotations and citation omitted); *accord Perrier-Bilbo*, 346 F. Supp. 3d at 218.

Accordingly, should this Court consider the extraneous material submitted by Defendants, it would convert Defendants' motion into a motion for summary judgment, and MMAS would be entitled to notice of the conversion and an opportunity to present its own extraneous materials to counter those that Defendants' have introduced.

## **<u>CONCLUSION</u>**

For the foregoing reasons, MMAS Research respectfully requests that Defendants' motion to dismiss be denied in its entirety.

Dated: November 18, 2024                    Respectfully submitted,

                                            **Persepolis   Law,   PLLC**

                                            By: _/s/ Ashkon Roozbehani_
                                                  Ashkon Roozbehani (Bar No. 694483)
                                                  Persepolis Law, PLLC
                                                  809 Washington St., Suite A
                                                  Newton, MA 02460
                                                  Telephone: (617) 431-4329
                                                  persepolaw@gmail.com

                                                  _Attorney for Plaintiff_
                                                  _MMAS Research LLC_

19