**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MMAS RESEARCH  LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, MORISKY MEDICATION ADHERENCE RESEARCH LLC, JACOB HARTZ, HANNAH PALFREY, DONALD MORISKY, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:24-cv-12108-DHC<br><br>**DECLARATION OF STEVEN TRUBOW IN SUPPORT OF PLAINTIFF MMAS RESEARCH LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

I, Steven Trubow, declare and state as follows:

1.      I am the CEO of Plaintiff MMAS Research LLC. The following facts are true of my own personal knowledge, and if called upon and sworn as a witness, I could and would competently testify thereto.

2.      I submit this declaration in support of Plaintiff's Opposition to Defendants' Motion to Dismiss.

3.      This declaration is intended as a "correction of facts" in response to Defendants' motion to dismiss, meaning it specifically identifies and addresses factual inaccuracies or misinterpretations presented by Defendants in their motion, by providing accurate information and clarifying the true facts of the case as alleged in Plaintiff's First Amended Complaint ("FAC"), supported by evidence like my sworn statements and exhibits to the FAC, to demonstrate that Plaintiff's claims are legally viable despite Defendants' mistaken arguments for dismissal.

TRUBOW DECLARATION - 1

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

**Morisky and MMAR Bad Faith, Phase Out and Replacement of the Morisky Widget**

4.    In their Memorandum in Support of the Hospital Defendants (Memorandum), Defendants wrote that the amended complaint says nothing about what led to the split between Trubow and Morisky.

5.    To the contrary, the First Amended Complaint (FAC) provides a great deal of information about what led to the split between Trubow and Morisky.

6.    FAC paragraphs 26, 27 ,28, 29 and Exhibit 10 allege Morisky's worldwide efforts to destroy the Morisky Widget and sue for copyright infringement on any Morisky Widget licensee, including Defendants BCH, Hartz and Palfrey for continuing to use the Widget.

7.    FAC Paragraph 29 and Exhibit 4 reference the CR2A settlement agreement signed by Morisky and Trubow in December 2020 in which the Parties agree to dismiss the claims asserted in the Washington lawsuit and Nevada federal district court lawsuit now pending against each other with prejudice.

8.    FAC Paragraphs 70 and 71 allege that Morisky had previously agreed in the CR2A to provide full access to the Morisky Widget and support as needed to all Widget licensees as long as their licenses were in effect. Morisky reversed course from his CR2A obligations and began a public campaign to terminate all of the 200 Morisky Widget licenses he pledged to support in the CR2A, one of which was BCH. See Exhibits 4/10.

9.    Paragraphs 77-79 allege how Morisky backed out of his obligations in the CR2A which included termination of the BCH Morisky Widget license and substituting it with a separate MMAR LLC MMAS-8 license. The deceitfulness of the "phase out" progressed into treachery and tortious interference when Morisky declared all Morisky Widget licenses illegal and pledged to replace the Morisky Widget with his own MMAR LLC platform. The intensity of the treachery and inference increased to legal threats. On April 21, 2022, Morisky's attorney, Christopher Austin wrote a letter on that was both published on www.moriskyscale.com and also delivered by email to the 200 Morisky Widget licensees in Exhibit 4 of the CR2A. By emailing the Austin Letter to Widget licensees, it is clear that Morisky intentionally tried to terminate existing Widget licenses. Dr. Jacob Hartz received the Austin letter in April 2022, according to the first BCH Motion to Dismiss.

10.    Defendants wrote in the Memorandum, "In March 2024, the Ninth Circuit, reviewing a decision from the Western District of Washington, held that MMAS Research had

TRUBOW DECLARATION - 2

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

standing to sue for infringement of the Widget copyright because a 2020 settlement agreement, which supposedly transferred ownership of the Widget copyright from MMAS Research to Morisky, was "never finalized."" (Am. Compl. ¶ 36)**.**

11.     Defendants wrote in the Memorandum Footnote 4, "We assume for purposes of this motion that MMAS Research does own the Widget copyright." But that is still an <u>open question</u> after a remand from the Ninth Circuit, and things do not look good for MMAS Research. Defendant say they assume that MMAS Research owns the Widget but after a remand from the 9th Circuit "things do not look good for MMAS Research in the Western Washington Federal District Court to the matters at hand."

12.     FAC Paragraph 36 and Exhibit 34 state, The Ninth Circuit Court of Appeals issued a memorandum on March 13, 2024, in case No. 23-55202 in the Central District of California United States Federal Court, (<u>not in the Western Washington Federal District Court as alleged by Defendant</u>.)

13.     The Ninth Circuit Court of Appeals  confirmed that MMAS Research owned the copyright to Morisky Widget, stating: The district court erred in concluding that MMAS lacked standing to sue for copyright infringement. The district court found that a 2020 preliminary settlement agreement (CR2A) from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky Widget from MMAS to Dr. Morisky. But that agreement—which simply outlined terms MMAS and Dr. Morisky "desire[d] to consent and agree to" sometime in the future—was never finalized. MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget. Similarly, because the agreement was a private contract between Dr. Morisky and MMAS, and because it was never finalized, it was not an abandonment of MMAS's right to sue Charité for copyright infringement. *See* Exhibit 34.

14.     Defendants wrote in the Memorandum; the amended complaint does not allege that MMAS Research owns the copyright in either MMAS-4 or MMAS-8. Defendants wrote MMAS Research's infringement claim is that the Hospital Defendants infringed its copyright by administering an older version of the assessment whose copyright MMAS Research doesn't own instead of the newer, supposedly better, copyrighted version.

15.     FAC PARAGRAPH 31 states that the Morisky Widget copyright, as registered, is comprised of and includes the Morisky Widget diagnostic assessments, the MMAS-4, MMAS-8 among other diagnostic assessments. See Exhibit 5.

TRUBOW DECLARATION - 3

16.     Defendants wrote in the Memorandum, "In other words, MMAS Research concedes what anyone can see by looking." The questions the Hospital Defendants allegedly put on the clinicaltrials.gov website is essentially the same as the questions from the 2006 version of the MMAS-MMAS Research do not even allege any act of infringement of its own copyright.

17.     FAC Paragraph 105 alleges that the replacement of BCH licensed and copyright Morisky Widget MMAS-8 medication specific tests with Morisky's 2006 copyrighted MMAS-8 generic tests as published on the ClinicalTrials.gov website constitutes willful infringement of MMAS Research LLC registered Morisky Widget copyright.

18.     FAC Paragraph 63 alleges during their training and certification, Defendants Hartz and Palfrey created a Morisky Widget MMAS-8 condition and medication(s) specific assessment that was night and day different than the 2006 MMAS-8 test. See Exhibit 24.

19.     Defendants wrote in the Memorandum, "The contract forbids the Hospital to use the 2006 version of the MMAS-8 as a condition of licensing the Morisky Widget, even though MMAS Research doesn't own the copyright in the older MMAS-8. That is the kind of restrictive licensing agreement that courts refuse to enforce under the doctrine of copyright misuse.

20.     Defendants grossly exaggerate in the Memorandum, both the MMAS Research Widget copyright registration and the terms and conditions of the BCH Morisky Widget License to characterize the BCH Morisky Widget license as copyright misuse.

21.     FAC Paragraph 68 alleges the copyright registration for the MMAS Research Widget Code includes the MMAS-8, and the BCH Morisky Widget license states changes or any modifications to the wording, phrasing, or scoring of the MMAS require certification on the Morisky Widget editor and translator. See Exhibits 9 and 27.

22.     Defendants wrote in the Memorandum that on the National Institute of Health ClinicalTrials gov website, He (Hartz) described the MMAS as "validated" and stated that the "inclusion criteria," that is, the criteria used to determine whether someone could participate in the study, included a "Morisky Medication Adherence Scale score of $\leq 6$." (less than or equal to 6). But he did not include the text of all or any part of any version of the MMAS." Defendant wrote that the amended complaint does not allege that the criterion Hartz mentioned **(a score of 6 or more)** was included in the Widget source code, and in fact, Hartz himself decided on the inclusion criteria for his study, as one would expect.

TRUBOW DECLARATION - 4

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

23.     In the Morisky Widget MMAS-8 a score of six (6) or more is considered moderate adherence, while a score of ≤ 6 is considered low adherence. Hartz' "inclusion criteria" of a MMAS-8 score of ≤ 6 is included in the Morisky Widget MMAS-8 Source code. Below is an example of a Morisky Widget MMAS-8 test. The top line and the red bar show a score of 3 which is considered low adherence based on Dr. Hartz inclusion criteria.



24.     Defendants wrote in the Memorandum "that the amended complaint goes to great lengths to try to differentiate the 2006 version of the MMAS-8, a "static" eight-question assessment that can be given on paper (Am. Compl. ¶ 57), from the Widget. The Widget has an interface called a "test editor" that allows the user to input a health condition, a medication, and dosing information. The Widget then uses an algorithm to output eight questions to be asked. (Am. Compl. ¶ 60). "The text of the questions that the Widget outputs are not found in the source code of the Widget." Defendants wrote that Common sense shows that the source code could not contain the text of all the possible questions it could output, because there must be an almost infinite number of combinations of medications, conditions for which they are prescribed, and dosages.

25.     Defendants' misinformation and outlandish speculation in the Memorandum  that the text of the Morisky Widget MMAS-8 medication and condition specific questions are not found in the MMAS Research Widget Code is misleading and false.

26.     Defendants wrote in the Memorandum that Hartz administered a paper version of MMAS-8 to patients. (Am. Compl. ¶ 91). Paragraph 105 of the amended complaint gives the text of the version of the assessment the Hospital administered and the version Morisky created in 2006 and published in 2008. The Court can see for itself that the questions are essentially identical. For example, Morisky's question 1 was: "Do you sometimes forget to take your <health condition> pills?" The Hospital's question 1 was: "Do you sometimes forget to take your prescription cholesterol medication?" (Am. Compl. ¶ 105).

TRUBOW DECLARATION - 5

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

27.     FAC Paragraph 91 alleges that Hartz administered a modified Morisky Widget MMAS-8 health condition and medication specific test to patients that was night and day different that the 2006 MMAS-8.

28.     Below is a table with the scoring and coding of Morisky Widget MMAS-8 condition and medication specific tests. The MMAS-8 HIV tests use the same scoring and coding for the tests administered and scored by Hartz and Palfrey in the Morisky Widget. See Exhibit

29.     Whereas the 2006 MMAS-8 reported a single score to measure medication adherence, the Morisky Widget MMAS-8 produces three scores that not only **measure** adherence but **identify** the reasons why the patient is not taking their medicines.



See Exhibits 21, 24, and 25.

30.     In the Memorandum, the Defendants compare a single question from the 2006 MMAS-8 test. This single question does not begin to show the differences between the 2006 MMAS-8 questions and the Morisky Widget MMAS-8 medication and condition specific questions.

31.     FAC Paragraph 53 alleges Hartz and Palfrey clearly understood the differences between the Morisky Widget MMAS-8 tests published in 2017 and the original MMAS-8 tests published in 2006.

32.     The most significant difference between the 2006 MMAS and the MMAS Widget assessments are their respective validity and sensitivity. Dr. Morisky wrote to a colleague in March 2017, "Thank you very much, Ms. NG Yen Peng, regarding your interest in obtaining a license to use the MMAS-8 diagnostic adherence instrument. Beginning January 2017, all data collection of the MMAS adherence scales must use the Morisky Widget. My Chief Investigator,

TRUBOW DECLARATION - 6

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

Mr. Steve Trubow, will be in touch with you regarding how this revolutionary paradigm shift is used <u>not only for measuring the level of non-adherence, but also provides a diagnostic assessment as to why the patient is non-adherent.</u> All MMAS-8 and MMAS-4 licenses are administered through the Morisky Widget."

33.    Another HUGE ADVANTAGE of the Morisky Widget is the option to select from 110 MMAS-8 condition specific tests with MAPI validated translations <u>which offer a sensitivity of 93% as compared to the generic MMAS-8 at 83% sensitivity (including condition-specific MMAS tests for all chronic and long-term infectious diseases.</u> See Exhibit 35

34.    Defendants wrote in the Memorandum that He (Hartz) and Palfrey sent MMAS Research a copy of the test they had administered. (Am. Compl. ¶ 89 & Ex. 24). At the bottom, the document had the following text, which restated, in different words, the inclusion criterion Hartz has posted on clinicaltrials.gov. This should be read as How many answers did, they give that are in BOLD UPPERCASE ___ ($\geq 2 \rightarrow$ ELIGIBLE).

35.    The FAC Paragraph 89 allege that on July 5, 2022, Hartz and Palfrey sent MMAS Research a copy of the Morisky Widget MMAS-8 condition and medication specific assessment they created in the Test Editor of the Morisky Widget. Dr. Hartz with Palfrey wrote, "We were planning on having a copy of the questions in case we do not have immediate access to the widget (our wifi and cell service in the clinic can be spotty)." All questions would then be entered using the widget. See Exhibit 28

36.    Defendants wrote in the Memorandum Hartz administered a paper version of the MMAS-8 to patients. The Court can see for itself that the questions are essentially identical. For example, Morisky's question 1 was: "Do you sometimes forget to take your <health condition> pills?" The Hospital's question 1 was: "Do you sometimes forget to take your prescription cholesterol medication?" (Am. Compl. ¶ 105).

37.    The 2006 MMAS-8 generic questions Hartz and Palfrey converted to health condition and medication specific questions in the Morisky Widget were far from identical. See the Exhibit Morisky Widget Test Editor below that Hartz and Palfrey used. Please note the difference between the 2006 MMAS-8 question #4, Did you take your medication yesterday? and the Morisky Widget MMAS-8 question #4 Did you take all your prescription cholesterol the last time you were supposed to take it. These two assessments are far from identical.

TRUBOW DECLARATION - 7

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329



38.     Defendants wrote in the Memorandum, MMAS Research is saying that by copying or distributing those questions instead of the output of the Morisky Widget, the Hospital Defendants infringed the copyright in the work that they did not use.

39.     FAC Paragraph 111 alleges BCH, Hartz and Palfrey created a condition and medication specific Morisky Widget MMAS-8 that was used to screen for low adherence during enrollment. This Morisky Widget MMAS-8 screener was referenced on the ClinicalTrials.gov website.

40.     FAC Paragraphs 89 and 90 allege that Hartz admits in email correspondence in July 2022 that Defendants administered the Morisky Widget MMAS-8 health and medication specific test they created in the Morisky Widget during training and certification in 2019. See Exhibit 28.

41.     FAC Paragraph 61 alleges that by creating, distributing, and using their pre-enrollment Morisky Widget MMAS-8 screener, BCH, Hartz, and Palfrey has infringed upon Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. § 106, including, but not limited, to the rights to reproduce, prepare derivative works, distribute copies, and display the work publicly.

TRUBOW DECLARATION - 8

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

42.     Defendants' modification of the Morisky Widget MMAS-8 scoring and coding criteria, How many answers did they give that are in BOLD UPPERCASE ___ (≥2 → ELIGIBLE) is a breach of the BCH Morisky Widget license. See Exhibit 9

43.     The FAC Paragraph 93 alleges in the BCH Morisky Widget License, Defendants agreed any modifications to the wording, phrasing, or scoring of the MMAS, require certification on the Morisky Widget editor and translator. *See Exhibit 8.*

44.     The FAC Paragraph 94 alleges that Jacob Hartz wrote to Trubow: We have administered 4 (MMAS-8) tests. Our enrollment protocol was answering a positive (i.e., consistent with lower adherence) to at least one question. (emphasis added). If any of this is serious breach of contract and you feel it necessary to end our agreement, we would understand. We certainly did not mean to do anything incorrectly and it was always our intention to follow our contract entirely. It would be a tremendous loss to our study, but we want to respect our agreement and your organization. See Exhibit 25.

45.     The FAC Paragraph 67 and 68 allege that BCH and Hartz agreed when they executed the Morisky Widget license that MMAS scoring and coding criteria, and as such can never be divulged in any publication, presentation, or website without written permission from MMAS. If BCH divulges Morisky Widget scoring and coding criteria it will be considered a breach of the Morisky Widget license and MMAS will have the right to suspend or terminate the Agreement. See Exhibit 9

46.     Defendants wrote in the Memorandum that in 2019, one of its researchers, Dr. Hartz, acting on the Hospital's behalf, licensed the MMAS from an entity controlled by Trubow: the plaintiff, MMAS Research, LLC. Defendant's description of how Hartz obtained the perpetual BCH Morisky Widget license in 2019 is a misrepresentation that ignores a licensing process that lasted over a year in which Hartz applied for a Morisky Widget license in response to Donald Morisky's hard requirement for only licensing MMAS-8 with the Morisky Widget!

47.     Defendant ignored or disregarded the FAC Paragraphs #44, #45, #46, which detailed a yearlong correspondence beginning in July 2018 that explained in great detail how Hartz and BCH obtained from Donald Morisky and Steven Trubow a Morisky Widget license with the required Morisky Widget training and certification and not a license to use the original 2006 MMAS-8 paper test.

TRUBOW DECLARATION - 9

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

1

2

3

4

5

48.     In July 2018, Morisky wrote, Thank you Dr. Hartz for your interest in using my copyrighted and trademarked intellectual property (IP), the MMAS diagnostic adherence assessment instrument. We are currently in Asia conducting training and certification for hundreds of practicing clinicians who are implementing the correct use of the Morisky Widget into the patient health-care delivery system. We plan to be on the east coast in September and October so please fill out the following questionnaire so we can best serve you. See Exhibit 22

6

7

8

49.     In August 2019, MMAS Research LLC received Hartz' application for a Morisky Widget license. Hartz wrote, "Steve, I am sorry that I was not able to complete this (application) earlier, but we did not know if we had funding for the study, which we do now. I have completed the application for the Morisky Widget below," accompanied by the following application.

9

10

**Name and Address of Organization: Boston Children's Hospital Point of Contact: Jacob Hartz (617-355-0955, fax: 617-730-0600)**

11

When do you want to begin using the perpetual Morisky Widget license? **January 2020**

12

13

How many Morisky Widget diagnostic assessments in total do you plan to administer? **80 patients (4-5 times each)**

14

15

16

How do you plan to administer the Morisky Widget diagnostic assessments by paper or the Morisky Widget or Morisky Kiosk Apple I-Phone App? **We would like to use it by paper and iPhone app if possible. If only one option is available, we would prefer paper.**

17

18

19

What health conditions, diseases and specific medications are you trying to assess for medication adherence? **Adolescents with Familial Hypercholesterolemia who are taking a statin.**

20

21

22

23

24

25

Please describe in detail the interventional research design or clinical protocol for using the Morisky Widget? The Morisky Widget will be used to measure baseline adherence, adherence after receiving the first of two interventions, following a "wash-out" period, and finally at the end of the intervention. If possible, we would also use the Morisky Widget to measure adherence 6 months after the intervention ends to determine if there is a "legacy effect." statin, type and dose of statin prescribed, and if any adverse effects are present.

How many times will each patient be given the Morisky Widget? We expect each patient to use it 4 times. Possibly five if we are able to extend the trial.

TRUBOW DECLARATION - 10

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

See Exhibit 23.

50.    Defendant writes in the Memorandum The DMCA claim fails, because MMAS Research has not alleged that the Hospital Defendants removed or altered any copyright management information.

51.    FAC paragraph 95 alleges that on January 10, 2023, Jacob Hartz removed the MMAS Research notification from ClinicalTrials.gov without the Licensor's permission. BCH updated the clinicaltrials.gov website for NCT04458766 with a notification that the MMAS-8 was used with permission from Dr. Morisky and licensed by MMAR LLC. The MMAS-8 scale, content, name and trademarks are protected by US Copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR LLC. Type: MMAS-8 with permission from Dr Donald Morisky. as written below: URL: http://www.moriskyscale.com. Exhibits 17 and 18.

52.    FAC paragraph 99 alleges that the MMAR LLC's license with BCH gave MMAR supervisory/control rights that allowed them to compel BCH to place false copyright and licensing information on the Clinical Trials.gov website. See FAC Exhibits 17 and 18.

53.    The DMCA, under 17 U.S.C. § 1202(a), prohibits a person or business from providing false copyright information and or distributing false copyright information to conceal infringement. Plaintiff believes that in discovery they can prove that Defendants Morisky and Hartz provided false copyright information on the ClinicalTrial Gov website to conceal their infringement of the Morisky Widget copyright.

54.    Defendants wrote in the Memorandum "the only use of the Widget MMAS Research alleges is Hartz and Palfrey's creation of a questionnaire using the Widget's "test editor." (Am. Compl. ¶¶ 49-52). That use could hardly be unauthorized, because Hartz and Palfrey created the questionnaire "during their training and certification," that is, with MMAS Research present and before they allegedly did anything wrong or contrary to the license agreement. (Am. Compl. ¶ 63). And the Hospital did not administer that version of the questionnaire to patients, so MMAS Research cannot allege that the Hospital Defendants used the supposed secrets by administering the test.

55.    FAC paragraph 89 alleges that on July 5, 2022, Dr Hartz and Ms. Palfrey sent MMAS Research LLC an email with a copy of a Morisky Widget MMAS-8 paper test they were administering to patients as a screener. Hartz wrote in the email that, "We were planning having

TRUBOW DECLARATION - 11

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

a copy of the questions in case we do not have immediate access to the widget (our Wi-Fi and cell service in the clinic can be spotty). All questions would be entered using the widget. Would that be okay?  See Exhibit 30

56.    FAC paragraph 94 alleges that in an email on July 6, 2022 from Hartz to Palfrey, Trubow, Peter Hoeller a lawyer who jointly represented Trubow and Morisky and Thad Scroggins a lawyer representing MMAS Research LLC, Hartz wrote, We have administered 4 tests. The tests were administered from memory. Our enrollment protocol was answering a positive (i.e., consistent with lower adherence) to at least one question. and then I had planned on entering and scoring the tests on the widgets. I will need to confirm the date of the first enrollee and have the details in my office but am not there today. The last MMAS will be administered within the next 2 years once we have completed enrollment.  See Exhibit 33

57.    Defendants wrote in the Memorandum that **"The trade secret claim fails, because MMAS Research does not allege a misappropriation and <u>because there is no secret to be protected. "</u>

58.    Plaintiff vigorously objects to this false statement and can prove the existence of Morisky Widget trade secret algorithms in MMAS Research Widget Code.

59.    Unless Defendants have managed to extract the redacted MMAS Research Widget Code on deposit in the United States Copyright Office, their statement, "<u>there is no secret to be protect" is</u> without merit.  See below and Exhibit 26.



60.    Defendants wrote in the Memorandum, MMAS Research claims that the Hospital Defendants "misappropriated" its trade secrets, including "the copyrighted Morisky Widget

TRUBOW DECLARATION - 12

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

source code scoring and coding as well as the trade secret editing and translation algorithms." (Am. Compl. ¶ 149). The claim arises under the Defend Trade Secrets Act. (Id. ¶¶ 18, 148). There is no allegation that the Hospital Defendants ever saw or had access to the Morisky Widget source code, and in fact they did not, so the claim cannot be that they wrongfully disclosed the source code itself to anyone or otherwise.

61.   FAC Paragraph 149 alleges that Defendants BCH, Hartz, and Palfrey misappropriated Morisky Widget trade secret scoring and coding algorithms as well as the trade secret Widget editing and translation algorithms.

62.   Defendants Jacob Hartz and Hanah Palfrey had access to the MMAS Research Widget Code at www.morisky.org which contains the Morisky Widget application.

63.   Hartz and Palfrey had their own respective Widget log in authorization and passwords to utilize the Morisky Widget trade secret scoring and coding and test editor algorithms in the MMAS Research Widget Code.

64.   FAC paragraph 51 alleges that Defendants Jacob Hartz and Hannah Palfrey, were trained and certified on the Morisky Widget in November 2019.  The training included certification on the Morisky Widget trade secret scoring and coding algorithm and test editor/translation algorithm.

65.   FAC alleges Hartz and Palfrey used the Widget's trade secret test editor algorithm to customize a Morisky Widget MMAS-8 medication and condition specific test for the BCH study. See Exhibit 24 and Exhibit 27.

66.   Under the License Agreement between Plaintiff and Defendant BCH acknowledged and agreed that any modifications to the wording, phrasing, or scoring of the MMAS tests required the Licensor's written permission.  See Exhibit

67.   FAC paragraph 150 alleges Under the License Agreement between Plaintiff and Defendant, BCH and Hartz acknowledged and agreed that any modifications to the wording, phrasing, or scoring of the MMAS tests required the Licensor's written permission.]

68.   FAC Paragraphs 67 and 68 allege that in In their Morisky Widget license BCH and Jacob Hartz agreed that coding and scoring criteria of the Morisky Widget can never be divulged in any publication, presentation, or website without written permission from MMAS. See Exhibit 9

TRUBOW DECLARATION - 13

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329

69.     FAC Paragraph 69 alleges that BCH, Jacob Hartz and Hannah Palfrey breached their duty to maintain secrecy by misappropriating MMAS Research Widget trade secrets without the Plaintiff's consent,

70.     Hartz and Paltry trained, certified, and authorized to use the Morisky Widget trade secret scoring and coding algorithms. They created a Morisky Widget screener using the trade secret Widget test editor algorithms. See Exhibit 24 and Exhibit 27.

71.     FAC Paragraph 89 alleges that on July 5, 2022, Dr Hartz and Ms. Palfrey sent MMAS Research LLC a copy of a Morisky Widget MMAS-8 paper test they were administering to patients as a screener. *See* FAC Exhibit 24.

72.     FAC Paragraph 90 alleges that Defendants referenced their Morisky Widget pre-enrollment screener for National Institutes of Health study's AIM 1.1 enrollment criteria on the ClinicalTrials.gov website.

73.     Defendants wrote on ClinicalTrials, "Aim 1.1 The investigators will determine the baseline adherence level in adolescents with FH prescribed a statin using the Morisky Medication Adherence Scale (MMAS)." See Exhibit 31.

74.     Although the exhibit numbers have changed, nearly all of the exhibits referenced herein were included as attachments to the FAC.

I declare under penalty of perjury and all applicable laws and rules that the foregoing is true and correct. Executed this day in Pasadena, California.

Dated: November 18, 2024                    By:  */s/ Steven Trubow*
                                                 Steven Trubow

TRUBOW DECLARATION - 14

**Persepolis Law, PLLC**
809 Washington Street, Suite A
Newton, Massachusetts 02460
(617) 431-4329