UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MMAS RESEARCH LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>THE CHILDREN'S HOSPITAL<br>CORPORATION, et al.,<br><br>            Defendants. | Case No.: 1:24-cv-12108-DJC |

**DEFENDANTS MORISKY MEDICATION ADHERENCE RESEARCH LLC AND
DONALD MORISKY'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

Defendants Morisky Medication Adherence Research LLC ("MMAR LLC") and Dr. Donald Morisky ("Dr. Morisky") (collectively, the "Morisky Defendants") hereby move pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the Morisky Defendants from this action for lack of personal jurisdiction.

**I.     INTRODUCTION**

Plaintiff MMAS Research, LLC ("MMAS Research") alleges in its First Amended Complaint ("FAC") that the Morisky Defendants are subject to liability in this jurisdiction for the act of granting a free license to Defendant, The Children's Hospital Corporation (the "Hospital") to use Dr. Morisky's registered copyright (Reg. No. TX8632533) for assessing whether a patient is taking their medication as prescribed for use in a research study.[1]

To help a practitioner make this assessment of "medication adherence," Dr. Morisky developed the renowned "Morisky Medication Adherence Scale," and an eight-part questionnaire

---

[1] ECF No. 24 (FAC) at 95-99, 105, 125-133, 140.

and scoring protocol, the "MMAS-8" which Dr. Morisky registered with the United States Copyright office (Reg. No. TX8632533).[2]

Plaintiff's additional allegation in the FAC that the Morisky Defendants interfered with Plaintiff's contractual relationships by disclosing a letter written by their counsel[3] in connection with an earlier 2021 federal action in the Western District of Washington[4] cannot form the basis for personal jurisdiction. This is because the Washington federal district judge has dismissed ***with prejudice***[5] that same interference claim raised by MMAS Research in that earlier Washington federal suit based on the same facts and circumstances alleged in this action regarding that letter—that the distribution of the letter from counsel allegedly caused parties in contract with MMAS Research to terminate their contracts.[6]

---

[2] *See* Declaration of Philip Morisky ("Morisky Decl."), at ¶3, attached hereto as **Exhibit 1**.

[3] ECF No. 24 (FAC) at ¶ 75-77, 145 (identifying the Apr. 21, 2022, letter from counsel for Dr. Morisky, as the "Austin Letter"); *see also,* ECF 1-16 (copy of the Apr. 21, 2022 Austin Letter).

[4] *See* Second Amended Complaint [W.D. Wash. ECF No. 22], *Donald E. Morisky v. MMAS Research, LLC, et. al.,* No. 2:21-cv-1301-RSM-DWC (W.D. Wash., Nov. 19, 2021), attached hereto for the Court's convenience as **Exhibit 2**.

[5] *See* Order Adopting Report and Recommendation [W.D. Wash. ECF No. 257], *Morisky v. MMAS Research,* No. 2:21-cv-1301-RSM-DWC (W.D. Wash., Sep. 10, 2024) ("Defendants' counterclaims are dismissed with prejudice"), attached hereto for the Court's convenience as **Exhibit 3**; *see also,* Report and Recommendation [W.D. Wash. ECF No. 255 and 255-1], *Morisky v. MMAS Research,* No. 2:21-cv-1301-RSM-DWC (W.D. Wash., Aug. 20, 2024) (with Proposed Order), attached hereto for the Court's convenience as **Exhibit 4**.

[6] *See* Defendants' [MMAS Research, et. al.] Second Amended Answer to Second Amended Complaint, Second Amended Affirmative Defenses and Second Amended Counterclaims [W.D. Wash. ECF No. 94], *Morisky v. MMAS Research,* No. 2:21-cv-1301-RSM-DWC (W.D. Wash., Oct. 25, 2022), Second Amended Counterclaims (p.17) ¶¶ 4, 40-47, 56, Fifth Counterclaim Tortious Interferene with Business Expectancy (p. 34) ¶¶ 82-89 (alleging the letter from counsel, identified as the "Austin Letter" interfered with contracts MMAS Research had or sought with others), and Exh. N (copy of the Apr. 21, 2022 Austin Letter), attached hereto for the Court's convenience as **Exhibit 5.**

Neither of the Morisky Defendants reside in or conduct business in Massachusetts.[7] Dr. Morisky is an Emeritus UCLA professor of Public Health and founder of Morisky Medication Adherence Research, LLC (MMAR) which facilitates the licensure of his copyrights and trademarks.[8] Dr. Morisky retired in 2017, and resides in Las Vegas, Nevada.[9] MMAR is a Nevada limited liability company operated from Nevada and remotely by Dr. Morisky's son, Philip Morisky, MBA, CEO MMAR, from Philip Morisky's home in California.[10]

In the fall of 2022, Philip Morisky sent a permission letter to the Hospital licensing it to use the MMAS-8 without charge in connection with a single study the Hospital was undertaking to determine the efficacy of a monetary incentive on medication adherence.[11]

As set forth herein, the very limited action of giving a free copyright license to the Hospital for a single research study is insufficient under the law to engender either general or specific personal jurisdiction over the Morisky Defendants.

## II.    FACTUAL BACKGROUND

Dr. Morisky received a Master of Science degree in 1977 and a Doctor of Science degree in 1981, both from Johns Hopkins School of Hygiene and Public Health (Behavioral Sciences and Health Education).[12] Dr. Morisky concluded his full-time professorship at UCLA in 2017, after approximately 35 years of distinguished service as a Tenured Professor, a Vice Chair, and later Chair of the Department of Community Health Sciences, and as the Program Director for the Masters of Public Health for Health Professionals Program (MPH-HP).[13] He has published over

---

[7] *Id.* at ¶4.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at ¶5.
[12] *Id.* at ¶6.
[13] *Id.*

30 books, book chapters or monograms and has authored or co-authored over 300 articles in peer-reviewed journals, in addition to numerous seminar presentations and speaking engagements for over three decades.[14]

Dr. Morisky is known worldwide as the foremost expert on identifying and remediating the life-threatening risks associated with the failure of patients to comply with medication protocols.[15] Medical practitioners and clinicians have long known that patients too often die from avoidable complications with terminal or chronic illnesses simply because they fail to take their medication as prescribed.[16]

In 1986, after engaging in numerous research focus group sessions with patients, Dr. Morisky identified four simple yet critical questions that upon clinical study, proved to effectively predict medication adherence.[17] This four-part questionnaire became known as the "Morisky Medication Adherence Scale" or "MMAS" and is now known as the "MMAS-4" (US Copyright Reg. No. TX8285390).[18]

From 1993 to 1997, Dr. Morisky worked as an external consultant on a NIH (National Institutes of Health) to refine and improve the MMAS.[19] The focus of this research was not merely to identify potentially non-compliant patients, but importantly, to inform the medical practitioner of exactly "why" the patient was not likely to take the prescribed medication.[20] The result was Dr. Morisky's development of a simple eight-part questionnaire called the "MMAS-8" (US Copyright

---

[14] *Id.*
[15] *Id.* at ¶7.
[16] *Id.*
[17] *Id.* at ¶8.
[18] *Id.*
[19] *Id.* at ¶9.
[20] *Id.*

Reg. No. TX8632533).[21] The Morisky Scales are considered the "Gold Standard" world-wide in peer-reviewed journals for the assessment and remediation of patient medication adherence.[22]

These scales, and particularly the MMAS-8, have been licensed to various universities, hospitals, and pharmaceutical companies worldwide for studies to assess medical adherence with regard to discrete medications.[23] Because of the ubiquitous use of the Morisky Scales in such studies, it was not uncommon for such institutions to publish an intent to use the Morisky Scales in a proposed study before obtaining a license from Dr. Morisky.[24]

In late 2022, Philip Morisky learned that the Hospital was conducting a study to assess adherence level in adolescents with a prescribed statin drug "using the Morisky Medication Adherence Scales (MMAS)".[25] After confirming that no license had been granted to the Hospital for such a study, Mr. Morisky contacted Dr. Jacob Hartz who was identified as the person at the Hospital overseeing the study.[26] Dr. Hartz confirmed that the Hospital intended to use the MMAS-8 for its study and that it did not have a license from Dr. Morisky.[27] To remedy this, Mr. Morisky emailed from his home in California a permission letter licensing the Hospital to use the MMAS-8 without charge for the study, which also authorized and provided that the Hospital attribute to Dr. Morisky the license for use of the registered MMAS-8 in its report on the study.[28]

---

[21] *Id.*
[22] *Id.*
[23] *Id.* at ¶10.
[24] *Id.*
[25] *Id.* at ¶11.
[26] *Id.*
[27] *Id.* at ¶12.
[28] *Id.*

### III. ARGUMENT

#### A. Legal Standard

Under Massachusetts law, jurisdiction over a non-resident is only appropriate if it is both authorized by the Commonwealth's long-arm statute and consistent with due process requirements of the United States Constitution. *Bond Leather Co., Inc.v. Q.T. Shoe Mfg. Co. Inc.*, 764 F.2d 928, 931 (1st Cir. 1985). The plaintiff bears the burden of proving the existence of personal jurisdiction. *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995). Under the prima facie standard for analyzing a motion to dismiss for want of personal jurisdiction, the plaintiff cannot rely on mere allegations, but rather must offer specific affirmative support for its claim that personal jurisdiction is proper over a non-resident defendant. *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).

The Massachusetts long-arm statute has been interpreted as coextensive with the limits permitted by the Constitution, and thus it is appropriate in this case to "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002 (*citing "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 280 N.E.2d 423, 424 (1972).

A plaintiff must establish either general or specific jurisdiction over a non-resident defendant. The elements of general and specific jurisdiction are co-extensive with the Due Process Clause and require that the defendant have certain "minimum contacts" with the forum such that the suit does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). General jurisdiction requires affiliations "so continuous and systematic" as to render the defendant "essentially at home" in the forum State. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (internal citations omitted).

If general jurisdiction is not found, the Court must then find specific jurisdiction, which requires that (1) the suit "arise out of or relate to" the defendant's contacts with the forum; (2) there was purposeful activity or availment in the forum state, therefore subjecting the defendant to the state's regulations; (3) the defendant had certain minimum contacts with the forum state; and (4) the suit does not offend traditional notions of fair play and substantial justice. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 256 (2017); *Int'l Shoe Co.*, 326 U.S. at 316.

### B.  This Court lacks general jurisdiction over MMAR LLC and Dr. Morisky

For an individual, the "paradigm forum for the exercise of general jurisdiction" is the individual's domicile, whereas for a corporation or an LLC, it is subject to general jurisdiction (1) in its place of incorporation and its principal place of business, or (2) when its contacts with a forum state are so systematic and continuous that it is "at home" in the jurisdiction. *Daimler*, 571 U.S. at 137 (internal citations omitted).

Neither criteria are met here. Dr. Morisky does not live in Massachusetts or operate any business in Massachusetts.[29] Rather, Dr. Morisky is retired, living in Las Vegas, Nevada.[30] MMAR is incorporated in Las Vegas which is also its principal place of business.[31] As such the first prong does not support a finding of general jurisdiction.

Similarly, neither Morisky Defendant has contacts with the state that are so systematic and continuous to warrant a finding of general jurisdiction. Dr. Morisky has been retired since 2017.[32] Aside from the activities of his company, MMAR, headed by Philip Morisky, he personally has not engaged in any business activities at all in Massachusetts, and never did so at

---

[29] *See,* Morisky Decl., at ¶4.
[30] *Id.*
[31] *Id.*
[32] *Id.*

any time relevant to this action.[33] Aside from granting the Hospital a free license to use the MMAS-8 on behalf of Dr. Morisky in 2022 for a single study, MMAR has not engaged in any business activities in Massachusetts at all.[34] Such a single grant of a free license cannot constitute the "systematic or continuous" contacts required to find that these Defendants are effectively "at home" in Massachusetts. There is no general jurisdiction over the Morisky Defendants.

### C. The Court lacks specific jurisdiction over MMAR LLC and Dr. Morisky

The First Circuit uses a three-prong inquiry to determine whether specific jurisdiction exists:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992).

#### 1. MMAS's allegations do not arise out of or relate to the Defendants' contacts with Massachusetts.

Under the first prong, the plaintiff's claims must "arise out of or relate to the defendant's contacts" with the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). Plaintiff's claim does not arise from the mere fact that the Morisky Defendants while in Nevada and California gave the Hospital a free license to use Dr. Morisky's MMAS-8 copyright in connection with its research study. Plaintiff's primary claim is that the Hospital breached its contract with the Plaintiff by taking a free license from Defendants to use Dr. Morisky's MMAS-8 rather than using a separate license Plaintiff alleges it had with the Hospital. Neither Dr.

---

[33] *Id.* at ¶13.
[34] *Id.*

Morisky nor MMAR were parties to that contract. As the copyright holder for the MMAS-8, Dr. Morisky has a right to enforce his copyrights. *Combat Zone, Inc. v. Does 1-84,* No. 12-30085-MAP, 2013 U.S. Dist. LEXIS 35439, at *24 (D. Mass. Feb. 20, 2013) ("To be clear, the Court acknowledges that copyright holders have a right to enforce their copyrights."), *report and recommendation adopted* at 2013 U.S. Dist. LEXIS 35432 (D. Mass. Mar. 14, 2012). As such, even if the Court finds the issuance of a free license from Nevada to a Massachusetts party a forum related activity, it cannot give rise to Plaintiff's claims because the Morisky Defendants have an independent federal right to enforce their copyrights.

Further, the granting of a license from without the forum does not constitute doing business within the forum. In *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1361 (Fed. Cir. 1998), the Federal Circuit held that it was unreasonable to find that "cease-and-desist letters" themselves could serve as basis for finding personal jurisdiction. In reaching this decision, the Federal Circuit looked at licensing agreements with companies doing business in the forum and held that the agreements did not constitute a contact between the parties, reasoning that "doing business with a company that does business in [a forum] is not the same as doing business in [a forum]." *Id.* at 1361.

The Morisky Defendants efforts to ensure Dr. Morisky's MMAS-8 copyrighted scale is not infringed—a privilege granted by federal law—by granting a free license from Nevada to use that copyright does not amount to doing business in the forum. This prong does not support a finding of specific jurisdiction over the Morisky Defendants.

> **2.    The Morisky Defendants have not purposefully availed themselves of conducting business in Massachusetts.**

Under the second prong, to establish purposeful availment in the forum state, the defendant's contacts must be voluntary—not based on another party's unilateral actions—such

that the defendant would reasonably anticipate being subjected to litigation in that forum. *Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007) (*citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Courts will also look at whether the defendant "deliberately has engaged in significant activities" or has "continuing obligations" in the forum to determine if there was availment of conducting business in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-6 (1985).

The mere sending of a "cease and desist" letter does not constitute purposeful availment. *See Cognex Corp. v. Lemelson Med., Educ. & Research Found., Ltd. P'ship,* 67 F.Supp.2d 5, 7 (D. Mass. 1999) (cease and desist letters sent from defendant to plaintiff's customers in Massachusetts were insufficient to establish purposeful contacts that arose out of or related to the defendant's contacts in the forum). At best, the inquiry by Philip Morisky to assess whether the Hospital had the requisite license from Dr. Morisky to use the MMAS-8 for its study is akin to such a demand letter. Absent a license—albeit freely given—the Hospital would be an alleged infringer of Dr. Morisky's copyright in the MMAS-8.

Axiomatically, the granting of a license or "settlement" arising from such a "cease and desist" alone is also insufficient to constitute purposeful availment under the law. A contract alone cannot establish minimum contacts. *Burger King Corp.,* 471 U.S. at 463. Burger King developed a "'contract-plus' analysis" which requires courts to evaluate "prior negotiations and contemplated future consequences, along with … the parties' actual course of dealing … to be evaluated in determining whether the defendant has minimum contacts with the forum." *Id.* at 479. The concept of minimum contacts protects defendants from the burden of litigating in inconvenient forums.

Thus, the request that the Hospital take a license for free to avoid infringement of Dr. Morisky's MMAS-8 copyright and the granting of that license as a consequence are insufficient to constitute the "purposeful availment" required to support a finding of specific jurisdiction over the Morisky Defendants.

### 3. It is unreasonable to subject Dr. Morisky and MMAR to jurisdiction in Massachusetts.

Under the third prong, the Supreme Court has provided "gestalt factors" used to determine whether it is reasonable for an out-of-state defendant to litigate in a forum:

> [T]he defendant's burden of appearing, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several States in furthering fundamental substantive social policies.

*Astro-Med, Inc. v. Nihon Kohden Am., Inc.,* 591 F.3d 1, 10 (1st Cir. 2009) (*citing Burger King Corp.*, 471 U.S. at 477).

These factors do not warrant the exercise of personal jurisdiction over the Morisky Defendants. As a copyright holder, Dr. Morisky has the right to make sure his copyrighted work–developed over a 40-year profession—is protected and used in accordance with his guidance, even if the license is free. This is necessary to maintain the stellar reputation the Morisky Scales have in academia and with institutions nationally and world-wide as an effective tool for assessing medication adherence. In each instance in which the Morisky Defendants are involved in licensing the use of the Morisky Scales, they did not choose the forum. It was chosen by the institution or the entity performing the study or otherwise seeking to use the Scales.

That is the case here. Neither Defendant sought out to engage in business in Massachusetts. Rather, the Hospital in Massachusetts chose to use Dr. Morisky's MMAS-8 as part of a study which necessitated its obtaining of a license from Defendants in Nevada. The same

is true in every instance. As such, it would be unreasonable that the Morisky Defendants would ever have reasonably foreseen or believed that they could be haled into court in every jurisdiction in which a license was required by the licensee in that forum for the benefit of that licensee. Similarly, it is unreasonable to exercise personal jurisdiction over the Morisky Defendants in this jurisdiction because the Hospital decided to do a study using Dr. Morisky's copyrighted MMAS-8. The Morisky Defendants did not choose Massachusetts, the Hospital did.

As such, the exercise of jurisdiction over the Morisky Defendants in this jurisdiction would violate the notions of fair play and substantial justice. This Court lacks either general or specific jurisdiction over the Morisky Defendants.

## IV.  CONCLUSION

For the reasons set forth above, the Morisky Defendants respectfully request that this Court grant their Motion to Dismiss Plaintiff's Complaint against them for lack of personal jurisdiction with prejudice.

Dated: March 6, 2025                                     Respectfully submitted,

*s/ Jeremy P. Oczek*
Jeremy P. Oczek (BBO# 647509)
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 416-7037
Email: jpoczek@bsk.com

*Counsel for Defendants Donald Morisky and Morisky Medication Adherence Research LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on March 6, 2025.

Dated: March 6, 2025                                               Respectfully submitted,

                                                                    *s/ Jeremy P. Oczek*
                                                                    Jeremy P. Oczek


**LOCAL RULE 7.1(A)(2) CERTIFICATION**

I, Jeremy P. Oczek, counsel for Defendants Dr. Donald Morisky and Morisky Medication Adherence Research LLC in the above captioned action, hereby certify that, pursuant to Rule 7.1(A)(2) of the Local Rules of the United States District Court for the District of Massachusetts, that counsel for the Morisky Defendants and Plaintiff's counsel conferred via email on March 5, 2025. Ashkon Roozbehani, counsel for Plaintiff, responded that Plaintiff had filed an opposition to Defendants' request for an extension of time to answer the Amended Complaint that same day. Accordingly, Plaintiff is opposing the present Motion to Dismiss for Lack of Personal Jurisdiction.

Dated: March 6, 2025                                               Respectfully submitted,

                                                                    *s/ Jeremy P. Oczek*
                                                                    Jeremy P. Oczek