UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, et al.,<br><br>    Defendants. | Case No. 1:24-cv-12108-DJC |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS
MORISKY MEDICATION ADHERENCE RESEARCH LLC AND DONALD MORISKY'S
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Ashkon Roozbehani (Bar No. 694483)
PERSEPOLIS LAW, PLLC
809 Washington St., Suite A
Newton, MA 02460
Telephone: (617) 431-4329
persepolaw@gmail.com

*Attorney for Plaintiff*
*MMAS Research LLC*

i

**INTRODUCTION**

This brief opposes the Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) filed by Defendants Donald Morisky and Morisky Medication Adherence Research LLC (collectively, the "Morisky Defendants"), demonstrating that this Court has personal jurisdiction over them under well-established principles of specific jurisdiction. The Amended Complaint alleges that the Morisky Defendants purposefully directed their conduct at Massachusetts by interfering with Plaintiff MMAS Research LLC's ("MMAS" or "Plaintiff") licensee relationships in the Commonwealth and by issuing a replacement license to Boston Children's Hospital ("BCH"), a Massachusetts institution.

The Morisky Defendants' actions, which include sending threatening communications to MMAS licensees in Massachusetts, asserting ownership rights over the Morisky Medication Adherence Scale (MMAS-8), and interfering in MMAS's existing licensing relationships with Massachusetts-based entities, were intentional, targeted, and had foreseeable legal and commercial consequences in the forum. These allegations satisfy the threshold for specific jurisdiction, as they establish both purposeful availment and a direct nexus between Defendants' conduct and the claims asserted.

Moreover, Defendants failed to comply with Local Rule 7.1(a)(2), which requires parties to confer in good faith before filing a dispositive motion.

**FACTUAL BACKGROUND**

Plaintiff MMAS is the exclusive licensor of the Morisky Medication Adherence Scale (MMAS-8) used to assess medication adherence in clinical studies. FAC ¶¶ 1–2, 33, 120.  In September 2019, MMAS entered into a perpetual license agreement with Boston Children's

1

Hospital ("BCH"), a Massachusetts-based institution, authorizing BCH to use the Morisky Widget MMAS-8. FAC ¶¶ 42–43, 111.

Defendant Donald Morisky is the original author of the MMAS-8 and founder of MMAR LLC. In 2020, Morisky and MMAR entered into a settlement agreement with MMAS Research (referred to as the "CR2A") in which they acknowledged and agreed to honor existing licenses, including those held by Massachusetts entities such as BCH. FAC ¶¶ 27–29, 139; Exhibit 2. As part of the CR2A, MMAS Research provided Defendants with a list of licensees, which included Boston Children's Hospital and other Massachusetts-based entities. See Exhibit 2.

Despite this, in April 2022, Dr. Morisky, through counsel, sent a letter to MMAS licensees, including BCH, asserting that MMAS Research's licenses were invalid and threatening legal action against any use of the MMAS-8 not authorized directly by him. FAC ¶¶ 75–76; Exhibit 1 (the "Austin Letter"). This letter caused BCH to alter its public-facing attribution of the MMAS-8 and eventually to accept a new license directly from MMAR. *See* FAC ¶¶ 77–79, 95–97.

This new license, issued by MMAR in early 2023, was explicitly directed at BCH and authorized its use of the MMAS-8 for a study conducted in Massachusetts. FAC ¶¶ 95–99. The license was subsequently cited by BCH in materials published on ClinicalTrials.gov and in connection with its research activities. FAC ¶¶ 95–97, 133. The new MMAR license was not merely duplicative and was aimed to displace MMAS Research's pre-existing license with BCH, which remained in effect. FAC ¶¶ 95–99, 139.

Defendants were aware that BCH is located in Massachusetts and that the consequences of their actions would be felt there. Dr. Morisky's counsel had previously reviewed a list of MMAS Research's licensees as part of the 2020 settlement agreement, and that list included BCH and other Massachusetts entities. FAC ¶¶ 76, 139(d); Exhibit 2.

## **LEGAL STANDARD**

To establish personal jurisdiction over a non-resident defendant in a diversity case, a federal court sitting in Massachusetts must determine: (1) whether the state's long-arm statute authorizes jurisdiction; and (2) whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002). Because Massachusetts courts interpret the state's long-arm statute coextensively with the limits of constitutional due process, courts may proceed directly to the constitutional analysis. *Id*.

Due process requires that a non-resident defendant have "certain minimum contacts" with the forum such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This may be satisfied by a showing of either general or specific jurisdiction. General jurisdiction exists where a defendant's affiliations with the forum are "so continuous and systematic" as to render it essentially at home in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). In contrast, specific jurisdiction applies when the suit arises out of or relates to the defendant's contacts with the forum and the defendant has purposefully availed itself of the privilege of conducting activities there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360-62 (2021).

The First Circuit applies a three-prong test for specific jurisdiction:

1) Relatedness: the claim must arise out of or relate to the defendant's forum-state activities;

3

2) Purposeful Availment: the defendant must have purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws; and

3) Reasonableness: the exercise of jurisdiction must be reasonable under the so-called "Gestalt factors."

*See Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 144 (1st Cir. 1995); *Burger King*, 471 U.S. at 476-77.

The plaintiff bears the burden of establishing that jurisdiction exists under this framework. *See Foster-Miller, Inc.*, 46 F.3d at 145. When a motion to dismiss is decided on the pleadings and affidavits under the "prima facie" standard, the court must take the plaintiff's properly supported facts as true and construe them in the light most favorable to the plaintiff. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016).

## ARGUMENT

**I. Plaintiff does not assert general jurisdiction, and the Morisky Defendants lack the continuous and systematic contacts required for it.**

Plaintiff does not assert that this Court has general jurisdiction over the Morisky Defendants. Nevertheless, because Defendants raise and attempt to rebut the issue, Plaintiff briefly addresses it here to avoid waiver or confusion.

General jurisdiction allows a court to hear any claim against a defendant, even if the events giving rise to the claim occurred elsewhere, but only if the defendant's connections to the forum are so continuous and systematic that the defendant is effectively "at home" in that state. *Daimler AG*, 571 U.S. at 137. For individuals, this typically requires domicile in the forum; for entities, it requires incorporation or a principal place of business in the forum state. *Id.*

Defendants concede that the criterion for general jurisdiction are not met. Dr. Morisky is domiciled in Nevada, and MMAR LLC is a Nevada limited liability company operated from Nevada and California. Defendants' Motion to Dismiss, ECF No. 54 at 3. Plaintiff does not dispute that these facts preclude general jurisdiction over the Morisky Defendants in Massachusetts. Accordingly, the Court should proceed to the analysis of specific jurisdiction, which is the proper basis for exercising jurisdiction here.

## II. Defendants are subject to specific jurisdiction because the claims arise from Massachusetts-directed conduct, Defendants purposefully availed themselves of the forum, and jurisdiction is reasonable.

### A. The Claims Arise Out of or Relate to Defendants' Forum-Directed Conduct

The first requirement for specific jurisdiction is that the plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum. *See Ford Motor Co.*, 592 U.S. at 360–62; *Foster-Miller*, 46 F.3d at 144. This standard is flexible and does not require strict but-for causation. As the Supreme Court made clear in *Ford*, the "relate to" language permits jurisdiction where the defendant's forum conduct is closely connected to the dispute, even if it is not the exclusive cause of the plaintiff's harm. *Ford*, 592 U.S. at 361.

Here, Plaintiff's claims arise directly from the Morisky Defendants' conduct aimed at Massachusetts. Plaintiff alleges that in April 2022, counsel for Dr. Morisky sent a letter to Boston Children's Hospital ("BCH"), located in Massachusetts, asserting that any use of the MMAS-8 without Dr. Morisky's authorization would violate federal copyright law. The letter prompted BCH to alter its public attribution and ultimately led BCH to obtain a replacement license from MMAR LLC, interfering with Plaintiff's existing license relationship.

The Morisky Defendants knew BCH was located in Massachusetts and acted with the intention of influencing its conduct within the state. They inserted themselves into Plaintiff's contractual relationships with Massachusetts-based licensees and caused foreseeable injury in Massachusetts. These facts satisfy the relatedness requirement because Plaintiff's tort claims stem directly from this Massachusetts-directed interference. *See Foster-Miller*, 46 F.3d at 144 (claim must "directly arise out of, or relate to" forum-state activities); *see also Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 9 (1st Cir. 2009).

## B. The Morisky Defendants Purposefully Availed Themselves of the Massachusetts Forum

The second prong of the specific jurisdiction analysis requires that the defendant's forum-related conduct amount to "purposeful availment." This ensures that jurisdiction is based on the defendant's own deliberate actions, not on the unilateral activity of a third party. *See Burger King Corp.*, 471 U.S. at 475; *Foster-Miller*, 46 F.3d at 144. Purposeful availment requires that the defendant "deliberately has engaged in significant activities within a state" or has "created continuing obligations between himself and residents of the forum." *Burger King*, 471 U.S. at 475–76. Here, the Morisky Defendants purposefully availed themselves of the Massachusetts forum by (1) sending a threatening letter to Massachusetts-based licensees, including BCH, and (2) issuing a new license directly to a Massachusetts institution.

### 1. Threatening Legal Action Against a Massachusetts Licensee

The Morisky Defendants plainly engaged purposeful conduct aimed at Massachusetts. They affirmatively reached into the state by contacting Boston Children's Hospital (BCH), knowing it was located in Massachusetts, and threatened legal action unless the Hospital ceased using the MMAS-8 under its license with MMAS Research.

Sending threatening communications to forum residents, asserting intellectual property rights, and soliciting business relationships, even if the communications originate out of state, can constitute purposeful availment. *See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66–67 (1st Cir. 2014); *Astro-Med*, 591 F.3d at 10 (holding that a defendant's intentional interference with a contract governed by forum law and involving a forum-based company, despite occurring out of state, satisfied both the relatedness and purposeful availment prongs of the jurisdictional analysis).

Here, the Defendants' conduct was targeted not just at BCH, but at all MMAS licensees, including others in Massachusetts. The April 2022 letter (the "Austin Letter") was sent by Defendants' attorney to MMAS Widget licensees, including BCH, and threatened:

> **"ANY PERSON THAT USES OR LICENSES THE MORISKY WIDGET, MMAS-4 SCALE OR MMAS-8 SCALE WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR. MORISKY [WILL BE] IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW."** FAC ¶ 75; Exhibit 1.

The letter explicitly attempted to redirect licensees away from MMAS Research and toward Morisky's own entities. Moreover, Defendants had actual knowledge that BCH was located in Massachusetts because Plaintiff had previously provided Defendants with a list of licensees, including BCH, as part of a 2020 settlement agreement (the "CR2A"), which was drafted by Defendants' own attorney. FAC ¶ 76; Exhibit 2. As BCH stated in its March 2025 Motion to Dismiss, "…the Hospital changed the text regarding attribution of the MMAS-8 assessment on a government website after receiving threatening correspondence from Dr. Morisky's lawyers." FAC ¶ 77; Exhibit 1. This confirms that the letter had a real and disruptive effect within the forum.

Far from being passive recipients of out-of-state events, the Defendants intentionally initiated contact designed to disrupt Massachusetts-based contractual arrangements. That conduct meets the standard for purposeful availment.

**2. Issuing a License to a Massachusetts Institution**

In their Motion to Dismiss, the Defendants themselves acknowledge issuing a new license directly to BCH in January 2023. That license required attribution to Dr. Morisky and directly interfered with MMAS's existing licensing arrangement. This action was not incidental, and it established a new legal relationship with a known Massachusetts entity and further embedded the Defendants in the forum.

Plaintiff's First Amended Complaint provides further context: Dr. Morisky had personally authorized Boston Children's Hospital's original MMAS-8 license through MMAS Research back in 2019. FAC ¶ 139. That license remained in place until January 2023, when Defendants abruptly issued a replacement license through MMAR—just as the Hospital changed its attribution. FAC ¶ 118. The inference is clear: the attribution change was the direct result of Defendants' interference, not coincidence. By substituting their own license for the existing Massachusetts-based contractual relationship, Defendants purposefully disrupted MMAS's business expectations in this forum.

Dr. Jacob Hartz, a researcher affiliated with BCH, confirms the factual record of Defendants' purposeful forum contacts. Dr. Hartz states that BCH intended to use the MMAS-8 for its study and lacked a license from Dr. Morisky. In response, Phillip Morisky, CEO of MMAR, emailed BCH from California with a letter granting the Hospital a license to use the MMAS-8 at no charge, but only on the condition that the Hospital attribute the tool to Donald Morisky. This condition was intended to publicly elevate Morisky's role and bypass MMAS. BCH's response to

8

Defendants' Motion to Dismiss further confirms that BCH received threats from Defendants concerning attribution changes, corroborating the targeted and disruptive nature of their conduct.

The Morisky Defendants' attempts to downplay the license as "free" or insignificant are unavailing. A copyright license, even if uncompensated, can carry substantial legal and commercial significance. Here, the license required public attribution to Dr. Morisky, diminished MMAS's role as licensor, and generated reputational benefits for Defendants. These terms had tangible commercial implications and were not merely symbolic.

Moreover, the license was not an isolated or passive act. It knowingly disrupted an existing business relationship between MMAS and a Massachusetts-based institution, and was issued with full awareness that it would have legal and practical consequences in this forum. In Massachusetts, the issuance of a license, particularly one involving intellectual property, creates contractual obligations governed by state law. By authorizing the use of MMAS-8 in a Massachusetts-based study, the Morisky Defendants deliberately invoked the benefits and protections of Massachusetts law.

Additionally, the license was cited on ClinicalTrials.gov, a federally maintained research registry viewed by clinicians, researchers, universities, pharmaceutical firms, and hospitals worldwide. Its presence on this platform conferred reputational and promotional value on the Defendants and amplified the commercial reach of their activities into Massachusetts. Defendants knowingly authorized the use of MMAS-8 in a Massachusetts-based study, thereby reinforcing that this was not a passive act, but a deliberate engagement with the forum.

### C. Exercising Jurisdiction Is Reasonable Under the Gestalt Factors

The final prong of the specific jurisdiction analysis requires that the exercise of jurisdiction be reasonable in light of certain fairness factors, often referred to as the "Gestalt factors." These include:

1. The burden on the defendant;
2. The forum state's interest in adjudicating the dispute;
3. The plaintiff's interest in obtaining convenient and effective relief;
4. The judicial system's interest in efficient resolution of controversies; and
5. The shared interest of the states in furthering substantive social policies.

*See Foster-Miller, 46 F.3d at 150; Burger King, 471 U.S. at 477.*

Here, none of these factors weigh against jurisdiction:

- **Burden on Defendants:** Defendants are sophisticated copyright licensors with legal counsel. Defending a lawsuit in Massachusetts poses no undue burden. Travel or litigation inconvenience alone does not render jurisdiction unreasonable. *See Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994).

- **Forum Interest:** Massachusetts has a strong interest in adjudicating a dispute involving interference with the contractual rights of a Massachusetts-based institution (BCH) and intentional conduct directed at businesses operating within its borders.

- **Plaintiff's Interest:** Plaintiff has a legitimate interest in obtaining relief in the forum where the harm occurred and where its commercial relationships were targeted and disrupted.

- **Judicial Efficiency:** This action involves co-defendants, facts, and events centered in Massachusetts. Fragmenting the dispute would be inefficient.

- **Social Policy:** Preventing misuse of IP claims to destabilize ongoing commercial relationships serves public policy and discourages abusive forum shopping.

Accordingly, exercising jurisdiction over the Morisky Defendants is both fair and constitutionally sound. See *Foster-Miller*, 46 F.3d at 150 ("Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.")

## III. The Court Should Disregard Defendants' Improper Reliance on Prior Litigation and Extrinsic Materials

Defendants attempt to evade personal jurisdiction by citing prior litigation in the Western District of Washington involving similar factual allegations. Specifically, they argue that a sanctions ruling and dismissal in that matter somehow preclude this Court from asserting jurisdiction over the same conduct. This argument is flawed both substantively and procedurally.

As a substantive matter, jurisdiction depends on Defendants' conduct in this forum and not on outcomes in another. The central issue here is whether Defendants purposefully availed themselves of the Massachusetts forum through targeted conduct, including licensing activity and interference with Plaintiff's Massachusetts licensees. A ruling in a different case involving overlapping facts does not negate the legal significance of Defendants' Massachusetts-directed activity in this one.

Defendants also ask the Court to take judicial notice of the Washington court's findings. While a court may take notice of the existence of a judicial opinion, it may not adopt that opinion's factual conclusions for the truth of the matters asserted. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[W]e may take judicial

11

notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion"); *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 54 (D.D.C. 2012) (findings in another case "represent merely a court's probabilistic determination as to what happened, rather than a first-hand account of the actual events").

Even if the Court were to consider the factual exhibits attached to Defendants' Motion to Dismiss (Exhibits 2–5), those materials are outside the pleadings. Under Rule 12(d), such consideration would convert this motion into one for summary judgment, requiring notice and an opportunity to respond. See Fed. R. Civ. P. 12(d); *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) ("Ordinarily, this means that a district court must give notice to the parties before converting a motion to dismiss… into one for summary judgment").

The Court should therefore disregard Defendants' improper attempt to resolve factual disputes based on unauthenticated documents from a separate proceeding. The proper focus remains the allegations in the First Amended Complaint and the conduct establishing Defendants' purposeful availment of Massachusetts.

## IV. Defendants Did Not Satisfy Local Rule 7.1's Meet-and-Confer Requirement

Local Civil Rule 7.1(a)(2) requires that "[b]efore filing a motion, the moving party shall confer or attempt to confer with opposing counsel in a good faith effort to resolve or narrow the issues." The Morisky Defendants did not comply with this requirement before filing their Motion to Dismiss. While Defendants requested Plaintiff's position on an extension of time to respond to the Complaint (which Plaintiff opposed), they filed the Motion to Dismiss before the Court had ruled on that request and without any attempt to confer about the substance of the motion itself. A request for an extension of time does not satisfy the obligation to confer about the actual issues raised in a dispositive motion.

Courts in this Circuit have repeatedly emphasized the importance of Rule 7.1 as more than a formality. See *Converse Inc. v. Reebok Int'l Ltd.*, 328 F. Supp. 2d 166, 169 (D. Mass. 2004); *Martinez v. Hubbard*, 172 F. Supp. 3d 378, 382 (D. Mass. 2016). While the Court has since allowed the motion to proceed, the lack of meaningful conferral is worth noting and weighs against permitting the Defendants to benefit from a motion filed in contravention of basic procedural rules.

At minimum, this failure underscores the impropriety of any attempt to introduce extrinsic evidence or facts outside the pleadings, since the required procedural guardrails were never observed.

## CONCLUSION

For the foregoing reasons, MMAS Research LLC respectfully requests that this Court deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction in its entirety.

Respectfully submitted,

**Persepolis Law, PLLC**

By: */s/ Ashkon Roozbehani*
    Ashkon Roozbehani (Bar No. 694483)
    Persepolis Law, PLLC
    809 Washington St., Suite A
    Newton, MA 02460
    Telephone: (617) 431-4329
    persepolaw@gmail.com

    *Attorney for Plaintiff*
    *MMAS Research LLC*

Dated: June 12, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 12, 2025.

        Respectfully submitted,

By: */s/ Ashkon Roozbehani*
      Ashkon Roozbehani (Bar No. 694483)
      Persepolis Law, PLLC

Dated: June 12, 2025