UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MMAS RESEARCH LLC,<br><br>Plaintiff<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, et al.,<br><br>Defendants. | Case No. 24-cv-12108-DJC |

## MEMORANDUM AND ORDER

**CASPER, C.J.**                                                                                                         **August 12, 2025**

## I.   Introduction

Plaintiff MMAS Research LLC ("MMAS") has filed this lawsuit against Defendants The Children's Hospital Corporation ("Boston Children's Hospital" or "BCH"), Jacob Hartz ("Hartz") and Hannah Palfrey ("Palfrey") (collectively, the "BCH Defendants"), Donald Morisky ("Morisky") and Morisky Medication Adherence Research LLC ("MMAR") (collectively, the "Morisky Defendants") and Does 1 through 10 (the "Doe Defendants") (collectively, "Defendants") alleging breach of contract (Count I as to the BCH Defendants), violations of the Digital Millenium Copyright Act ("DMCA") (Count II as to the BCH Defendants and Count III as to the Morisky Defendants), tortious interference with contractual relations (Count IV as to the Morisky Defendants) and misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") (Count V as to the BCH Defendants). D. 24. The BCH Defendants have now moved to dismiss MMAS's claims against them (Counts I, II and V) for failure to state a

1

claim. D. 25. For the reasons stated below, the Court ALLOWS the BCH Defendants' motion to dismiss, D. 25, as to Count II (DMCA claim) and Count V (DTSA claim), D. 25, and ALLOWS it as to Count I (breach of contract) only as to Hartz and Palfrey, but DENIES the motion to dismiss Count I as to BCH.

## II.     Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## III.    Factual Background

### A.     Factual Allegations

The following facts are drawn from MMAS's amended complaint and exhibits, D. 24, D. 24-1, and exhibits to BCH Defendants' motion to dismiss of which the Court takes judicial

notice, D. 26-1; D. 26-2; D. 26-3; D. 26-4.[1] The facts are accepted as true for the purpose of resolving the motion to dismiss.

### 1. MMAS and the Morisky Widget

MMAS is a Washington limited liability company which conducts business in Boston, Massachusetts. D. 24 ¶¶ 7, 22. MMAS was co-owned by Steven Trubow, the current Chief Executive Officer, and Defendant Donald Morisky, from January 2017 to July 2019. Id. ¶¶ 1, 3. Between November 2016 and February 2017, Trubow, Morisky and Dustin Machi ("Machi")

---

[1] At the motion to dismiss stage, the Court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). First, the Court takes judicial notice of the certificate of registration for the MMAS-8 copyright, D. 26-1. See DeCastro v. Abrams, No. 22-cv-11421-ADB, 2023 WL 4471834, at *3 n.4 (D. Mass. July 11, 2023) (noting that "[t]he district court was entitled to take judicial notice of [defendant]'s federal copyright registrations, as published in the Copyright Office's registry") (quoting Island Software & Comput. Serv. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005). Second, "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)). Although a Court may take judicial notice of the existence of other judicial decisions because their authenticity is not subject to reasonable dispute, it may not do so for the truth of the facts asserted therein. See Cosenza v. City of Worcester, Mass., 355 F. Supp. 3d 81, 87 n.1 (D. Mass. 2019). Accordingly, the Court takes note of the Report and Recommendation in the copyright infringement and breach of contract action between Morisky and MMAS in the Western District of Washington at Tacoma, D. 26-2; the district court's adoption of the Report and Recommendation, D. 26-3; and that court's denial of MMAS's motion for reconsideration, D. 26-4, for the limited purpose of noting the existence of these rulings and the date on which they were issued. See Exelero Corp. v. Cambece, No. 23-cv-12301-PBS, 2024 WL 1007836, at *6 (D. Mass. Feb. 28, 2024).

The Court, however, will not consider the declaration by Steven Trubow ("Trubow"), see D. 28-1 at 1-14, and six new exhibits (Exhibits 28, 30-31, 33-35), D. 29 at 73-105, filed with MMAS's opposition and not previously filed with the amended complaint, D. 24. Where this affidavit and the exhibits do not fall within any of the exceptions for considering documents outside of the complaint on a Rule 12(b)(6) motion, the Court has not considered them in deciding the present motion to dismiss. See Gulf Coast Bank & Tr. Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004).

collaborated to create the Morisky Widget MMAS-8 and the MMAS-4 software. Id. ¶ 23. As alleged, MMAS owns the "MMAS REASEARCH WIDGET CODE" (the "Morisky Widget"), a digital diagnostic assessment protocol to measure and identify medication nonadherence behaviors that allows doctors and healthcare providers to assess whether patients are taking their medications as prescribed. Id. ¶¶ 1-2. MMAS registered the Morisky Widget with the U.S. Copyright Office and obtained a certificate of registration that comprised of the Morisky Widget diagnostic assessments, the MMAS-4, MMAS-8 and other diagnostic assessments. Id. ¶¶ 30-31; D. 24-1 at 47.

In February 2017, the Morisky Widget was first published on the internet. D. 24 ¶ 24. Machi, creator of the source code for the Morisky Widget, owned the copyright until December 2019 when it was assigned to MMAS. Id. MMAS alleges it has been and continues to be the author and exclusive holder of all rights, title, interest in, and copyright to the Morisky Widget. Id. ¶ 33.

        2.     *MMAS-8 and the Morisky Widget*

The MMAS-8 was created by Morisky in 2006. D. 26-1 at 1-3. Morisky registered his copyright in the MMAS-8 in 2018. Id. Whereas the MMAS-8 is comprised of 8 static questions, the Morisky Widget MMAS-8 assessment is "dynamic with constantly changing MMAS-8 questions that are condition and medication specific." D. 24 ¶ 54. The MMAS-8 was "a measure of medication adherence," and the Morisky Widget was "a diagnostic assessment of medication taking behavior" with the ability to measure raw medication adherence and identify why the patient was nonadherent in their medication regime. Id. ¶ 56. Using the Morisky Widget Software test editor, "a user can enter a health condition, medication and dosing information for a medication protocol, and the Morisky Widget software algorithm will create a specific Morisky Widget

MMAS-8 assessment accordingly, with the dynamically adjusted language regarding both condition and medication and timing of testing to be measured." Id. ¶ 60. As alleged, the Morisky Widget source code incorporates trade secret scoring and coding algorithms and a trade secret editor translator. Id. ¶ 65; see D. 24-1 at 126. Further, the Morisky Widget source code contains trade secret scoring and coding and algorithms that determine whether nonadherence is intentional or not. D. 24 ¶ 66.

Between February 2017 and July 2019, MMAS licensed the Morisky Widget software to over 200 pharmaceutical companies and firms, universities and hospitals, including BCH. Id. ¶¶ 3, 25. Trubow and Morisky trained and certified clinicians on the Morisky Widget. Id. ¶ 3.

    3.  *Licensing Agreement with BCH and Training of the Morisky Widget*

On September 4, 2019, BCH executed a perpetual Morisky Widget MMAS-8 license with MMAS. Id. ¶ 42. The BCH MMAS Morisky Widget License specified that Licensee BCH could use the Morisky Widget, Morisky Kiosk Apple I Phone APP, and the Morisky API to administer Morisky Widget MMAS tests. Id. ¶ 43. With MMAS's approval, BCH could use MMAS paper or electronic questionnaires, "but all scoring and coding must be done in the Morisky Widget." Id. In November 2019, BCH personnel were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8, and the training included certification on the Morisky Widget trade secret scoring and coding algorithm and test editor/translation algorithm. Id. ¶¶ 49, 51. Hartz and Palfrey customized a Morisky Widget MMAS-8 medication and condition specific test for the BCH study. Id. ¶¶ 49, 52. As alleged, in their Morisky Widget licensing agreement, BCH and Hartz agreed that changes or any modifications to the wording, phrasing, or scoring of the MMAS require certification on the Morisky Widget editor and translator. Id. ¶ 68; D. 24-1 at 58.

On October 31, 2021, Morisky wrote on his website that he had phased out the Morisky Widget. Id. ¶ 72. MMAS alleges Morisky attempted to undermine MMAS by interfering with existing licenses and falsely claiming ownership of the Morisky Widget's copyright. Id. ¶ 4. MMAS also alleges the interference included MMAR sending threatening legal notices, causing confusion and harm to MMAS's business relationships. Id. ¶ 4.

In April 2022, Morisky's lawyer wrote to Morisky Widget licensees, including BCH, asserting that he owned the Morisky Widget copyright. Id. ¶ 77. On July 3, 2022, Trubow and MMAS emailed Hartz and Palfrey to address alleged breaches of the BCH Morisky Widget license and referenced a ClinicalTrials.gov website. Id. ¶ 82; see D. 24-1 at 74-75. The following day, Hartz emailed Trubow stating that BCH had updated the BCH Clinical Trials article and listed MMAS as a collaborator. D. 24 ¶ 83. On July 5, 2022, Hartz and Palfrey sent MMAS a copy of the Morisky Widget MMAS-8 paper test they were administering. Id. ¶ 89; D. 24-1 at 120. As alleged, Hartz and Palfrey administered scored and coded a paper Morisky Widget MMAS-8 test that utilized and divulged scoring and coding criteria. D. 24 ¶ 91. On January 10, 2023, Hartz removed the MMAS notification from ClinicalTrials.gov without MMAS's permission, id. ¶ 95, and updated the website again on January 24, 2024 noting a license for the MMAS-8 was available from MMAR, id. ¶¶ 97-98.

MMAS alleges BCH Defendants breached the licensing agreement by using and modifying the Morisky Widget without proper authorization, including by administering the Morisky Widget using paper tests and scoring them outside the Morisky Widget software. Id. ¶ 5. MMAS alleges BCH Defendants altered copyright management information on its clinical trial postings by removing and replacing MMAS's copyright attribution for Morisky's copyright attribution despite the license's requirement that all scoring and coding be performed within the Morisky Widget

6

software.  Id.  MMAS also alleges that BCH Defendants' actions led to unauthorized disclosure and misappropriation of MMAS's trade secrets, in violation of the DMCA, and caused substantial harm to MMAS's business and intellectual property rights.  Id.

        4.      *Related Lawsuits*

MMAS, MMAR, Morisky and Trubow have been engaged in litigation in Washington State and Nevada since September 2019.  See id. ¶¶ 29, 34-36.  On September 4, 2024, U.S. Magistrate Judge Christel issued a Report and Recommendation in the copyright infringement and breach of contract action between Morisky and MMAS in the Western District of Washington at Tacoma.  D. 26-2.  The Report and Recommendation was adopted by U.S. District Judge Martinez on September 10, 2024 and the court imposed sanctions against MMAS and Trubow, including dismissing with prejudice MMAS's copyright infringement counterclaims, limiting MMAS's copyright infringement defenses at trial, ruling that the destroyed license and settlement agreements are to be presumed unfavorable to MMAS and Trubow and that the jury would receive adverse jury instructions regarding those agreements.  D. 26-3 at 1.  On October 17, 2024, Judge Martinez denied MMAS's motion for reconsideration of this ruling.  D. 26-4.

## IV.  Procedural History

MMAS instituted this action on August 15, 2024.  D. 1.  On October 21, 2024, MMAS filed an amended complaint.  D. 24.  The BCH Defendants have now moved to dismiss the claims against them, Counts I, II and V, of the amended complaint.  D. 25.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 46.

## V.  Discussion

### A. MMAS Has Not Plausibly Alleged a Breach of Contract Claim Against Hartz and Palfrey but Has Done So as to BCH (Count I)

To succeed on a breach of contract claim under Massachusetts law, a plaintiff must "show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013). With respect to the first three elements, BCH does not dispute that a valid contract existed between BCH and MMAS, that MMAS was "ready, willing, and able to perform" or that MMAS has alleged a breach of contract. D. 26 at 19-24; D. 36 at 4-5; D. 51 at 5-6. In fact, BCH Defendants state that "[f]or the sake of argument, the Court should assume that MMAS Research has alleged a breach of the contract." D. 26 at 23. Instead, BCH Defendants argue as an initial matter that Hartz and Palfrey cannot be liable for breach of contract because they are not parties to the licensing agreement between BCH and MMAS and instead they were agents acting on behalf of BCH. Id. at 19-20. MMAS asserts Hartz and Palfrey are bound by the contract as agents of BCH, D. 28 at 8, but it has not developed any arguments in support of its claims or cited any relevant authority. See D. 28 at 8-11.

Hartz and Palfrey are not liable for breach of contract for the contract between BCH and MMAS. "It has long been settled in Massachusetts that, [u]nless otherwise agreed, a person making or purporting to make a contract for a disclosed principal does not become a party to the contract." APB Realty, Inc. v. Georgia-Pacific LLC, No. 15-cv-13142-NMG, 2016 WL 11481747, at *10 (D. Mass. Aug. 19, 2016) (quoting Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 993 (1st Cir. 1988)) (internal quotation marks omitted); Porshin v. Snider, 349 Mass. 653, 655 (1965). Here, the amended complaint alleges that BCH and MMAS executed a licensing agreement allowing BCH to use the Morisky Widget. D. 24 ¶¶ 42, 108; see D. 24-1 at 58-62. Although Hartz and Palfrey are employees of BCH, D. 24 ¶¶ 11-12,

8

and Hartz completed the application for the Morisky Widget license on behalf of BCH, id. ¶ 46; D. 24-1 at 111-17, there is no allegation that the parties agreed that Hartz and Palfrey would be parties to the licensing agreement. Hartz and Palfrey, therefore, cannot be held liable for breach of contract of the licensing agreement because, as a matter of law, they are not parties to the contract and the employees acted on behalf of a disclosed principal. See Bratcher v. Moriarty, Donoghue & Leja, P.C., 54 Mass. App. Ct. 111, 116 (2002) (affirming denial of plaintiff's motion to amend complaint where plaintiff could not state a viable claim against attorney because attorney was acting as an agent for his client). Accordingly, the Court ALLOWS the motion to dismiss the breach of contract claim, Count I against Hartz and Palfrey.

The BCH Defendants also contend that the Court should dismiss this claim against BCH on the basis that it has not plausibly alleged an actual injury. D. 26 at 23-24; D. 36 at 4. That is, BCH does not dispute that MMAS has alleged a breach of contract by BCH, D. 26 at 23; D. 51 at 5-6, but any viable claim for same would only be for nominal damages which MMAS has not alleged. D. 26 at 24. MMAS counters that they have sufficiently alleged facts regarding consequential damages resulting from the BCH Defendants' alleged breach of contract, including "interference with [its] business relationships, loss of control over proprietary information, and reputational harm," D. 28 at 10-11, and at any rate, it should have the opportunity to prove damages, D. 51 at 13, at the summary judgment or trial stage.

Here, at the motion to dismiss stage, the Court concludes that MMAS has sufficiently alleged damages for BCH's breach of contract even if the matter of whether it is entitled to anything more than nominal damages remains a live issue. "The usual rule for damages in a breach of contract case is that the injured party should be put in the position they would have been in had the contact been performed." Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 880

(2000). "So-called 'direct damages' are 'the natural and probable consequences of the breach, that is, those arising naturally according to the usual course of things, from such breach of contract itself." In re LastPass Data Sec. Incident Litig., 742 F. Supp. 3d 109, 126-27 (D. Mass. 2024) (quoting Boylston Hous. Corp. v. O'Toole, 321 Mass. 538, 562 (1947)). "Consequential damages are damages that do not arise naturally or ordinarily from a breach of contract, but which arise because of the intervention of special circumstances.'" Id. (quoting Chestnut Hill Dev. Corp. v. Otis Elevator Co., 739 F. Supp. 692, 701 (D. Mass. 1990)). "[T]o receive consequential damages, the plaintiff must establish a basis for an inference of fact that the plaintiff has actually been damaged" and "the factfinder must be able to compute the compensation by rational methods upon a firm basis of facts." Redgrave v. Boston Symphony Orchestra, Inc., 855 F.2d 888, 896 (1st Cir. 1988) (internal citation and quotation marks omitted).

Here, MMAS has sufficiently alleged damages in the amended complaint. D. 24 ¶¶ 5, 52, 65, 69, 80-83, 151; see id. ¶ 159 (seeking "actual damages in an amount according to proof at trial") and the Court does not conclude that these allegations are "too meager, vague or conclusory," Douglas v. Hirshon, 63 F. 4th 49, 55 (1st Cir. 2023) (internal citation and quotation marks omitted), to warrant dismissal.[2]

---

[2] Moreover, dismissal as to any of the BCH Defendants also is not compelled by the doctrine of copyright misuse, as they urge in the alternative. D. 26 at 20-23; D. 36 at 4-5. "Copyright misuse occurs when a copyright owner restrains competition in the sale of an item that is not within the scope of the privilege granted under the copyright." Shirokov v. Dunlap, Grubb & Weaver, PPLC, No. 10-cv-12043-GAO, 2012 WL 1065578, at *31 (D. Mass. Mar. 27, 2012) (internal citation omitted). The doctrine is a "'defense to copyright infringement' and 'not a defense to [] state law claims.'" Splunk Inc. v. Cribl, Inc., No. 22-cv-07611-WHA, 2024 WL 2701628, at *2 (N.D. Cal. May 24, 2024) (quoting Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1090 (9th Cir. 2005)). As BCH Defendants and MMAS both recognize, D. 26 at 20; D. 28 at 8, the First Circuit has neither affirmatively adopted nor rejected copyright misuse as a defense even as to copyright infringement. See Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 65 (1st Cir. 2012); Garcia-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 21

For the aforementioned reasons, the Court ALLOWS the motion to dismiss, D. 25, as to breach of contract claim (Count I) against Hartz and Palfrey but DENIES the motion to dismiss this claim against BCH.

### B. MMAS Has Not Plausibly Alleged a Violation of the DMCA Against BCH Defendants (Count II)

BCH Defendants argue that MMAS have failed to allege a violation of the DMCA where MMAS has not alleged that BCH Defendants removed or altered copyright management information ("CMI") from a copy of the Morisky Widget. D. 26 at 15-16; D. 36 at 2-3. BCH Defendants contend that MMAS "misunderstands" the statutory definition of CMI and that MMAS's allegation that Morisky "induced [BCH] to alter the CMI in the BCH Clinical Trials Report, changing the attribution from [MMAS's] copyrighted Morisky Widget MMAS-8 Test to Defendant Morisky's original MMAS-8 Test," D. 24 ¶ 133, is directed at the Morisky Defendants. D. 26 at 16. Further, the BCH Defendants assert that MMAS "cannot identify any copy of the work that had CMI either within it or associated with it that the [BCH] Defendants removed or altered, because there was none." D. 36 at 3; see D. 26 at 16.

Section 1202(b) of the DMCA "prohibits (1) the unauthorized removal or alteration of CMI, (2) the distribution of CMI with missing or altered information, and (3) the distribution of works with missing or altered CMI." Howarth v. Carsanaro Landscaping, Inc., No. 22-cv-10998-DLC, 2023 WL 5978298, at *4 (D. Mass. July 21, 2023); 17 U.S.C. § 1202(b). CMI is statutorily defined as "information conveyed in connection with copies . . . of a work, including in digital form," 17 U.S.C. § 1202(c), and "is limited to eight categories of information, including the title of a work, the author of a work, the copyright owner of a work, and the terms and conditions for

---

n.7 (1st Cir. 2005). Given that the First Circuit has not yet recognized the copyright misuse doctrine, dismissal on this basis is not warranted here.

using a work, among others," ICONICS, Inc. v. Massaro, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) (citing 17 U.S.C. § 1202(c)).  The DMCA's prohibition on removal or alteration of CMI "has three elements:  'the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally.'"  Howarth, 2023 WL 5978298, at *4 (internal citation and quotation marks omitted).

The Court agrees with the BCH Defendants' challenge to this claim.  As to whether the DMCA claim has sufficiently alleged that BCH Defendants removed and/or altered CMI that was "conveyed in connection with copies . . . of a work," i.e., the Morisky Widget, see 17 U.S.C. § 1202(c); Janik v. SMG Media, Inc., No. 16-cv-7308-JGKAJP, 2018 WL 345111, at *13 (S.D.N.Y. Jan. 10, 2018) (noting that "the term 'conveyed' . . . merely requires that the information be accessible in conjunction with, or appear with, the work being accessed") (quoting S. REP. 105-190 at 35 (1998)), MMAS and the BCH Defendants agree that CMI does not need to appear on the work itself to warrant the application of section 1202(b).  See D. 28 at 17; D. 36 at 2; Mango v. Buzzfeed, Inc., 356 F. Supp. 3d 368, 377-78 (S.D.N.Y. 2019) (determining that "gutter credit" printed near, instead of on, a photograph qualified as CMI protected by the DMCA), aff'd, 970 F.3d 167 (2d Cir. 2020).

Even taking the allegations as true (as alleged against the BCH Defendants and not Morisky), they do not sufficiently allege a DMCA claim as to CMI.  MMAS alleges that the BCH Defendants "altered [CMI] on its clinical trial postings, removing [MMAS's] attribution and replacing it with Morisky's unauthorized version," D. 24 ¶ 5; see D. 24-1 at 92, 94, that "Hartz removed the [MMAS] notification from ClinicalTrials.gov without the Licensor's permission," D. 24 ¶ 95, that "BCH again updated the ClinicalTrials.gov website" noting a license for the MMAS-8 scale was "available from MMAR LLC," id. ¶¶ 97-98, and that BCH "created and utilized [an

unauthorized] version of the Morisky Widget MMAS-8 Test for its clinical study" and "reproduced, distributed, and displayed a derivative work that incorporates substantial and original elements of the copyrighted Morisky Widget MMAS-8 Test," id. ¶ 121. Even reading the amended complaint in the light most favorable to MMAS and considering the cases it relies upon, Mango and Agence France Presse, MMAS has not sufficiently alleged a violation of the DMCA. See Mango, 356 F. Supp. 3d at 377-78; Agence France Presse, 769 F. Supp. 2d at 305-06. Both Mango and Agence France Presse involved the republishing of photographs (the copyrighted work) with either removed or altered CMI and there was no dispute that the photographs subsequently published with the removed and/or altered CMI were copies of the copyrighted work. Id. MMAS's amended complaint does not plausibly allege a violation of the DMCA where there are no facts alleged that suggest a reasonable inference that BCH Defendants altered and/or removed CMI from a copy of the Morisky Widget that it then distributed. D. 26 at 15-16; D. 36 at 3; see D. 51 at 9-10.

Accordingly, the Court ALLOWS the BCH Defendants' motion to dismiss, D. 25, as to the DMCA claim (Count II).

### C. MMAS Has Not Plausibly Alleged Misappropriation of Trade Secrets in Violation of the DTSA Against BCH Defendants (Count V)

The DTSA creates a private right of action for the "owner of a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1). "[T]he DTSA both require a plaintiff to demonstrate: (i) the existence of a trade secret; (ii) that the plaintiff 'took reasonable steps to protect' its confidentiality; and (iii) the defendant 'used improper means, in breach of a confidential relationship, to acquire and use the trade secret.'" T.H. Glennon Company, Inc. v. Monday, No. 18-cv-30120-WGY, 2020 WL 1270970, at *13 (D. Mass. Mar. 17, 2020) (quoting Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 357 (D. Mass. 1993)).

MMAS alleges that BCH Defendants violated the DTSA by misappropriating its trade secrets, including "the copyrighted Morisky Widget source code scoring and coding as well as the trade secret editing and translation algorithms."  D. 24 ¶ 149.  The BCH Defendants contend that MMAS's claim fails because there are no trade secrets, and MMAS has failed to allege misappropriation.  See D. 26 at 16-19.

Although the parties dispute whether MMAS has sufficiently alleged the Morisky Widget is, or encompasses, trade secrets, the Court will assume without deciding that it has for the purposes of resolving the motion to dismiss.  The Court does so because even assuming *arguendo* that MMAS has sufficiently alleged the existence of trade secrets, the Court concludes that it has not plausibly alleged the misappropriation of same, the third element for Count V.

### 1. *Misappropriation*

The BCH Defendants assert that there are no allegations that they had access to the Morisky Widget source code, that they improperly acquired and disclosed trade secrets or that they used the alleged trade secrets to support MMAS's claim of misappropriation.  D. 26 at 16, 18-19.  The DTSA defines "misappropriation" as the "disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret; [or]. . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret."  18 U.S.C. § 1839(5)(B)(i), (ii); Allscripts Healthcare, LLC v. DR/Decision Resources, LLC, 386 F. Supp. 3d 89, 94 (D. Mass. 2019) (quoting 18 U.S.C. § 1839(5)(B)(ii)).  As noted, MMAS must establish that the BCH Defendants "'used improper means, in breach of a confidential relationship, to acquire and use the

trade secret.'" T.H. Glennon Company, Inc., 2020 WL 1270970, at *13 (quoting Data Gen. Corp., 825 F. Supp. at 357).

First, MMAS alleges that Hartz and Palfrey "were trained and certified [by MMAS] on the Morisky Widget MMAS-8," that "[t]he training included certification on the Morisky Widget trade secret scoring and coding algorithm and test editor/translation algorithm," and that they "customized a Morisky Widget MMAS-8 medication and condition specific test for the BCH study." D. 24 ¶¶ 49, 50-52. MMAS argues the creation of the customized test for the study was "a clear violation of their duties under the licensing agreement," D. 28 at 15, but the amended complaint asserts that the creation of the customized test occurred during the training and certification led by MMAS, see D. 24 ¶ 63, which does present a reasonable inference that such activity was not unauthorized by MMAS or improper.

Next, MMAS argues that the BCH Defendants agreed in its licensing agreement never to divulge MMAS's trade secrets related to the Morisky Widget's scoring and coding criteria "in any publication, presentation or website without written permission from MMAS." D. 24 ¶¶ 67-68. Although MMAS asserts that the BCH Defendants "violated their contractual duty to maintain the secrecy of the Widget's proprietary scoring criteria," D. 28 at 15, the allegations it relies upon in the amended complaint, D. 24 ¶¶ 89-91, do not indicate that source code or other trade secrets for the Morisky Widget was disclosed or distributed by the BCH Defendants to anyone, thereby constituting misappropriation. Even reading the amended complaint in the light most favorable to MMAS, it has failed to plausibly allege misappropriation of trade secrets in violation of the DTSA.

Accordingly, the Court ALLOWS the BCH Defendants' motion to dismiss, D. 25, as to DTSA claim (Count V).

        1.     *Morisky's Departure from MMAS and Founding of MMAR*

In 2019, Morisky founded Morisky Medication Adherence Research LLC ("MMAR"), a company in Nevada which developed a medication adherence software similar to the Morisky Widget. Id. ¶¶ 4, 26. In July 2019, Morisky voluntarily left MMAS and relinquished his 50% interest in the company, the Morisky Widget software, and Morisky Widget website. Id. ¶¶ 27-28. Trubow remained as 100% owner of MMAS and the sole manager and licensor of the over two hundred Morisky Widget license agreements. Id. ¶ 27.

## VI. Conclusion

For the reasons stated below, the Court ALLOWS the BCH Defendants' motion to dismiss in part, D. 25, and dismisses Counts I (breach of contract claim) as Hartz and Palfrey, Counts II and V (as to the BCH Defendants) of the amended complaint, D. 24. It DENIES the motion as to Count I (breach of contract claim) against BCH and, accordingly, this claim remains.

**So Ordered.**

/s Denise J. Casper
United States District Judge

16