UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MMAS RESEARCH LLC,

        Plaintiff,

v.

THE CHILDREN'S HOSPITAL CORPORATION,
et, al.,

        Defendants.

Case No.: 1:24-cv-12108-DJC

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS MORISKY MEDICATION ADHERENCE RESEARCH LLC AND DONALD MORISKY'S MOTION TO DISMISS**

**I.    RELEVANT FACTS**

Dr. Donald Morisky and Dr. Jacob Hartz were professional colleagues before the events underlying this action.[1] Dr. Morisky resigned from MMAS Research in July 2019.[2] Several months later, MMAS Research entered into a new license agreement with Boston Children's Hospital ("BCH") for use of the Widget Code.[3]

On April 21, 2020, attorney Chris Austin, acting on behalf of Dr. Morisky and Morisky Medication Adherence Research, LLC (MMAR), prepared the "Austin Letter" addressed to "Colleagues" of Dr. Morisky, not to BCH.[4] Dr. Hartz is not listed on Exhibit 4 of the CR2A as a licensee.[5] The Austin Letter was then mass emailed to of such colleagues.[6]

Afterward, BCH acknowledged Dr. Morisky as the licensor of the MMAS-8 questionnaire it used.[7] On July 4, 2022, Trubow contacted BCH, asserting that it was in breach for failing to

---

[1] First Amended Complaint (FAC) (ECF 24) ¶3.
[2] FAC ¶¶ 25-27.
[3] FAC ¶42.
[4] FAC ¶¶75-77, *Morisky v. MMAS Rsch. LLC*, No. 2:21-cv-01301-RSM, ECF No. 90-1, at 181–83 (Ex. N) (W.D. Wash. Aug. 29, 2025) (Austin Letter). Because the small-font copy of the Austin Letter previously filed is illegible, Defendants request that the Court take judicial notice of the same Austin Letter, attached by MMAS Research in connection with its Second Amended Counterclaims in Morisky v. MMAS Rsch. LLC, No. 2:21-cv-01301-RSM, a true and correct copy of which is attached hereto as **Exhibit A.**
[5] FAC, Ex. 1 (ECF 24-1) at 42.
[6] FAC, ¶ 75.
[7] FAC ¶¶ 95.

identify MMAS Research as the licensor.[8] BCH promptly corrected the attribution to MMAS Research.[9] Nothing in the Austin Letter instructed BCH that it could not score the MMAS-8 through the Widget calculator,[10] and the FAC alleges no further complaints from Trubow after BCH's corrective actions until BCH changed the licensor to MMAR in January 2023.[11]

In late December 2022, Philip Morisky on behalf of MMAR sent BCH a demand email for using Dr. Morisky's Registered MMAS-8 (USCO Reg. No. TX 8-816-517) without authorization, and thereafter granted BCH a no-fee retroactive license resolving that infringement allegation.[12] That MMAR license did not prohibit BCH from using the Widget calculator to score the questionnaires, and there is no allegation in the FAC to the contrary.[13] On January 10, 2023, BCH amended its published authorization to show MMAR as the licensor.[14]

The allegations in the FAC confirm there is no causal link between the April 2022 Austin Letter and any purported breach by BCH. Dr. Hartz, not BCH, was the recipient of the Austin Letter, and BCH promptly corrected any alleged breach of its license in July 2022 to Plaintiff's satisfaction regardless of having received the Austin Letter months prior. As set forth in the FAC, BCH's decision to change the attribution for use of the MMAS-8 to MMAR in January 2023 was the result of the demand email from Philip Morisky in late 2022, <u>not the Austin Letter</u>.

## II. LEGAL ARGUMENT

The April 2022 Austin Letter is immune from tort liability under both the Massachusetts litigation privilege and its federal counterpart, the Noerr-Pennington doctrine.

### A. Litigation Privilege

Under Massachusetts law, statements made by an attorney while engaged in their function as an attorney are protected by absolute litigation privilege, whether such statements are made in

---

[8] FAC ¶¶ 82.
[9] FAC ¶ 83, 93-94, Ex. 11 to Ex. 1 (ECF 24-1) at 70-76.
[10] ECF 54-1 (P. Morisky Decl.)
[11] FAC ¶¶ 95.
[12] ECF 54-1 (P. Morisky Decl.)
[13] Id.
[14] FAC ¶¶ 95-96.

the institution or conduct of litigation or in communications preliminary to litigation.[15] This protection prevents a plaintiff from using the *content* of such statements to establish liability against the party who made the statement.[16] The litigation privilege applies to the statements themselves and is not defeated merely because the recipient of the attorney's statement is a nonparty to the litigation; instead, the privilege applies so long as the statement is pertinent to the proceedings.[17]

Here, the Austin Letter states that Dr. Morisky is the copyright owner of the MMAS-8, that the Widget is a derivative of MMAS-8, which requires under copyright law a license from Dr. Morisky to use it, and that since Dr. Morisky has not licensed Plaintiff to use his copyrighted MMAS-8 in connection with the Widget, anyone that uses the MMAS-8 (even in connection with the Widget) without Dr. Morisky's permission would be in violation of federal copyright law.[18] As this statement was made in the course of and in furtherance of the then ongoing federal lawsuit filed by Dr. Morisky against Plaintiff in the Western District of Washington, the "statement" itself is privileged and cannot support a claim for intentional interference as a matter of law.

### B. *Noerr-Pennington* Doctrine:

The Austin Letter is independently immune under the federal counterpart to the litigation privilege, the Noerr-Pennington Doctrine ("Doctrine"), which shields litigation from liability.[19] This protection extends beyond the filing of court papers to incidental conduct such as press releases, warning letters, customer notices, and threats of suit, provided the underlying activity is

---

[15] *Larson v. Perry*, No. 19-cv-10203-IT, 2020 WL 1495883, at *15 (D. Mass. Mar. 27, 2020) (quoting *Blanchette v. Cataldo*, 734 F.2d 869, 877 (1st Cir. 1984)).
[16] *Id.* at *15–16 (quoting *58 Swansea Mall Drive, LLC v. Gator Swansea Prop., LLC*, No. CV 15-13538-RGS, 2016 WL 5946872, at *1 (D. Mass. Oct. 12, 2016)). While not alleged in the FAC, courts have declined to extend this privilege where the statements are a sham made to achieve unlawful ends, rather than as the basis for holding the party liable for the content itself. *Id.,* at *2.
[17] *Loomis v. Tulip, Inc*., 9 F. Supp. 2d 22, 25 (D. Mass. 1998) ("The fact that [a third-party] is not a party to the litigation does not necessarily render all communications made to it unprivileged.").
[18] *See supra,* fn. 4.
[19] *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) (holding that defendants' worldwide publication of notices and initiation of lawsuits claiming title to Libyan crude oil was protected by petitioning immunity).

not objectively baseless.[20] The Doctrine applies to tortious interference with contract and unfair competition claims.[21] This immunity extends to communications directed at third parties, including: demand letters sent to sellers of a manufacturers' products,[22] infringement notices and communications,[23] title claims to crude oil,[24] and indirect threats to sue a retailer's customers.[25] Where the communication itself reasonably relates to the existence or substance of ongoing or contemplated litigation, it falls within Noerr-Pennington protection.[26]

The Austin Letter falls squarely within the litigation privilege provided under the Noerr-Pennington Doctrine. It is a communication that is incidental to and arising directly in connection with, the ongoing litigation between Morisky and MMAS/Trubow filed in September 2019.[27] It is akin to a press release or a warning letter, or at most a demand letter; all actions protected under the Doctrine. Its content mirrors the immunized "threats of litigation" and "notices" to customers in cases like *Coastal States* and *Kemin Foods*, where communications alerting parties to infringement risks were shielded under the Doctrine.[28]

---

[20] *Id*. at 1366–67 (holding that the publicity and threats of litigation were protected by petitioning immunity where the litigation was in good faith, and rejecting a per se rule that threats or publicity vitiate immunity); *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp*., Inc., 634 F. Supp. 316, 325–26 (D. Kan. 1986) (granting summary judgment where a litigant's conduct in bringing suit and publicizing the same was protected, including attendant press releases and litigation threats); *Kemin Foods*, 384 F. Supp. 2d at 1348–49 (holding that press releases, notices to customers, and warning letters issued in the context of patent enforcement are protected under Noerr-Pennington unless objectively baseless).
[21] *Capital Health Sys. v. Veznedaroglu*, No. 15-8288 (MAS) (LHG), 2017 U.S. Dist. LEXIS 28390, at *40 (D.N.J. Feb. 27, 2017) (dismissing defamation and tortious interference claims based on republication of court filings and related publicity, and noting that courts "generally" apply Noerr-Pennington to bar such torts, including press releases, unless the original petitioning is a sham).
[22] *ABC Int'l Trader*s, 1993 U.S. Dist. LEXIS 20947, at *14–16 & n.11 (holding that sending cease and desist letters to several sellers was protected as potentially viable causes of action).
[23] *Kemin Foods*, 384 F. Supp. 2d at 1348–49 (extending immunity to notices sent to customers).
[24] *Coastal States*, 694 F.2d at 1366–67 (holding that worldwide publication of notices to third parties was protected by petitioning immunity).
[25] *Aircapital Cablevision*, 634 F. Supp. at 325–26 (holding that indirect threats to third-party customers were incidental to the lawsuit and protected).
[26] *ABC Int'l Trader*s, 1993 U.S. Dist. LEXIS 20947, at *14–16 & n.11 (in gray-market trademark litigation, holding that publication of the fact and content of lawsuits is protected when the lawsuits themselves are not shams, and limiting immunity only where publicity is unrelated to the substance of the litigation); *Aircapital,* 634 F. Supp. at 325 (holding that publicity that is incidental to the lawsuit is protected).
[27] *See supra,* fn. 4.
[28] *Kemin Foods*, 384 F. Supp. 2d at 1349; *Coastal States*, 694 F.2d at 1367.

Even though sent third-party licensees, the Letter's content remains tied to the Washington Litigation's substance without veering into unrelated matters.[29] In *MMAS Research LLC v. University of Wolverhampton* (C.D. Cal., 2023), the court dismissed the same intentional interference claims raised by Plaintiffs in this action, holding the Austin Letter (along with website notices and correspondence concerning ongoing litigation and licensing) were protected by the Noerr-Pennington doctrine and the California litigation privilege.[30] The court found the Austin Letter and other statements were "posted after [the] Washington lawsuit and reflect[ed] [the] party's legal position regarding the ongoing litigation," and, therefore, fell squarely within the scope of protected petitioning activity.[31]

### C. The Austin Letter Cannot Sustain Personal Jurisdiction

Because the Austin Letter is immune from liability under the litigation privilege and the Noerr-Pennington Doctrine, the intentional interference claim cannot as a matter of law "arise from" the Austin Letter nor can the Letter evidence "purposeful availment," baring the Letter from qualifying as a jurisdictional contact.[32]

### D. The Late 2022 MMAR Demand Letter Cannot Sustain Personal Jurisdiction

As set forth in the Motion, demand letters alone, without more, do not constitute "purposeful availment" and cannot, therefore, subject the sender to personal jurisdiction.[33]

## III. CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court grant their Motion to Dismiss for Lack of Personal Jurisdiction.

---

[29] FAC ¶ 79; BCH received via Dr. Hartz.
[30] No. 2:22-cv-05141-AB-JC (C.D. Cal. Feb. 10, 2023)
[31] *MMAS Rsch. LLC v. Univ. of Wolverhampton*, No. 2:22-cv-05141-AB-JC, Dkt. No. 56, at 12–13 (C.D. Cal. Feb. 10, 2023) (Order Granting Mot. to Dismiss) a true and correct copy attached as **Exhibit B** hereto.
[32] *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1153 (Fed. Cir. 2021).
[33] *Cognex Corp. v. Lemelson Med., Ed., & Res. Found., Ltd. P'ship*, 67 F. Supp. 2d 5, 7 (D. Mass. 1999) ("Federal Circuit precedent is clear, however, that such letters, by themselves, are insufficient to satisfy the personal jurisdiction requirements of the Due Process Clause.") (citing *Akro Corporation v. Luker*, 45 F.3d 1541, 1548-49 (Fed. Cir. 1995)).

Dated: October 28, 2025

                                        **LEX TECNICA, LTD.**

                                        <u>/s/ *F. Christopher Austin*</u>
                                        F. CHRISTOPHER AUSTIN, ESQ.
                                        Nevada Bar No. 6559
                                        10161 Park Run Drive, Suite 150
                                        Las Vegas, Nevada 89145

**Certificate of Service**

   I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on October 28, 2025.

Dated: October 28, 2025       Respectfully submitted,

                 */s/ Brianna Show*