## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MMAS RESEARCH LLC,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Case No. 24-cv-12108-DJC** |
| ) | |
| **THE CHILDREN'S HOSPITAL** ) | |
| **CORPORATION, et. al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT OF DEFENDANTS MORISKY MEDICATION ADHERENCE RESEARCH LLC AND DONALD MORISKY IN RESPONSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Morisky Medication Adherence Research LLC ("MMAR") and Dr. Donald Morisky ("Dr. Morisky") (collectively, the "Morisky Defendants" or "Defendants") hereby file their answer, counterclaims and third-party complaint in response to Plaintiff MMAS Research LLC's ("MMAS Research") First Amended Complaint (D. 24).

## ANSWER

The Morisky Defendants answer the First Amended Complaint seriatim as follows.

1.    Defendants admit the 2019 U.S. Copyright registration TX 8-816-517 is for the "MMAS Research Widget Code" (herein "Widget Code") and that Trubow is the CEO of Plaintiff.  Defendants deny all other allegations of this paragraph.

2.    Denied. The Widget Code copyright is merely for a software program used to display Dr. Morisky's 2016 U.S. Copyright registration TX 8-285-390 for the "Morisky Medication Adherence Scale (4-item)" ("MMAS-4") and to display Dr. Morisky's 2018 U.S. Copyright registration TX 8-632-533 "Morisky Medication Adherence Scale (8-item)"

("MMAS-8). The Widget Code copyright registration expressly notes on the registration certificate that it does not include and is limited by the prior registrations of the MMAS-4 and MMAS-8 in favor of Dr. Morisky, which MMAS-4 and MMAS-8 are the assessment protocol to measure and identify medication nonadherence behaviors. Not the Widget Code that merely digitally displays the MMAS-4 and MMAS-8.

3.      Admitted.

4.      Defendants admit only that Dr. Morisky formed MMAR and deny all remaining allegations of this paragraph.

5.      Denied.

6.      Paragraph 6 is not an allegation of fact to which an answer is required. To the extent an answer is required, Defendants deny the allegations of paragraph 6.

7.      Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

12.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

13.     This paragraph is not an allegation of fact to which an answer is required. To the extent an answer is required, Defendants deny the allegations of this paragraph.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Admitted.

18.    Admitted.

19.    Admitted.

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Defendants admit that Dr. Morisky and Dustin Machi collaborated on the creation of the Widget Code digital derivative to display Dr. Morisky's long previously authored and copyrighted MMAS-4 and MMAS-8 and deny all remaining allegations of this paragraph.

24.    Defendants admit only that the Widget Code was published and that the copyright was held by Dustin Machi and assigned to Plaintiff in 2019. Defendants deny all remaining allegations of this paragraph.

25.    Admitted.

26.    Defendants admit only that in January 2019, Dr. Morisky formed MMAR, and deny all remaining allegations of this paragraph.

27.    Defendants admit only that in July 2019, Dr. Morisky resigned as a governor of MMAS Research and relinquished is 50% ownership interest in MMAS Research and deny all remaining allegations of this paragraph.

28.    Denied.

29.    Defendants admit the first three sentences of this paragraph and deny the allegations of the last sentence of this paragraph purporting to interpret the CR2A Settlement Agreement between Dr. Morisky and MMAS Research.

30.    Defendants admit only that the Widget Code copyright registration was obtained and deny all remaining allegations of this paragraph.

31.    Denied.

32.    Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

33.     Denied.

34.     Defendants admit Dr. Morisky sued MMAS Research and others in September 2021 in the federal district court for the Western District of Washington, case no. 2:21-cv-1301 (the "Washington Case") and admit that Dr. Morisky's motion for a temporary restraining order against the defendants in the Washington Case was denied.  Defendants deny all remaining allegations of this paragraph.

35.     Defendants admit that the magistrate judge issued a report and recommendation attached as Exhibit 13 and state that the report and recommendation speaks for itself. Defendants deny any remaining allegations in this paragraph.

36.     Defendants admit that the Court of Appeals for the Ninth Circuit issued a decision on March 13, 2024, in case no. 23-55202, to which Defendants were not parties, and that the quotation in paragraph 36 appears in the decision. Defendants deny the decision confirmed MMAS Research owned the copyright to the Widget Code.

37.     Defendants admit the Plaintiff purports to license the Widget Code but deny all remaining allegations of this paragraph as Plaintiff has no rights in or to the MMAS-4 and MMAS-8 "diagnostic assessments" or to the "coding and scoring" of the MMAS-4 and MMAS-8.

38.     Defendants admit the Plaintiff assert such restrictions but deny all remaining allegations of this paragraph as Plaintiff has no rights in or to the MMAS-4 and MMAS-8 "diagnostic assessments" or to the "coding and scoring" of the MMAS-4 and MMAS-8.

39.     Denied. The only license Plaintiff can offer is to a code to display copyrighted works in which Plaintiff has no rights: the MMAS-4 and MMAS-8, exclusively owned by MMAR.

40.     Defendants admit the Plaintiff purports to license the Widget Code but deny Plaintiff has any rights in or to the MMAS-4 and MMAS-8 "diagnostic assessments" or to the "coding and scoring" of the MMAS-4 and MMAS-8, deny the final sentence of this paragraph,

deny that the "Morisky Widget MMAS-8 is differentiated" from the MMAS-8 owned by MMAR, and deny any remaining allegations of this paragraph.

41.    Admitted.

42.    Defendants admit MMAR and Boston Children's Hospital ("BCH") entered into a purported license agreement but deny that Exhibit 8 is the executed copy of that license agreement.

43.    Defendants state that the license speaks for itself and deny any characterization of the document, and otherwise deny the remaining allegations of this paragraph.

44.    Admitted.

45.    Admitted.

46.    Admitted.

47.    Admitted.

48.    Admitted.

49.    Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

50.    Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

51.    Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

52.    Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

53.    Denied.

54.    Denied.

55.    Denied.

56.    Denied.

57.     Defendants admit the MMAS-8 comprises the questions listed, deny the MMAS-8 is "static" in comparison to the same MMAS-8 displayed by the Widget Code, and deny the remaining allegations of this paragraph.

58.     Defendants admit the first question of the MMAS-8 is as quoted, deny the quoted portions of the MMAS-8 constitute "limitations," and deny the remaining allegations of the paragraph.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Defendants admit this paragraph accurately quotes the BCH memorandum in support of BCH's motion to dismiss and deny all other allegations of this paragraph.

63.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Defendants state that the license speaks for itself, deny any characterization of the document, and otherwise deny the allegations of this paragraph.

68.     Defendants state that the license speaks for itself, deny any characterization of the document, and otherwise deny the allegations of this paragraph.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Admitted.

73.     Denied.

74.     Denied.

75.     Defendants admit that on April 21, 2022, counsel for Defendants wrote the referenced letter, that it was published on the <moriskyscale.com> website and sent to colleagues and licensees of Dr. Morisky's MMAS-4 and MMAS-8, and that the paragraph accurately quotes a part of the letter. Defendants deny all other allegations of this paragraph.

76.     Defendants deny that Plaintiff was authorized to service the BCH Morisky Widget license under the terms of the CR2A and all other allegations of this paragraph.

77.     Defendants admit that this paragraph accurately quotes BCH's memorandum in support of its first motion to dismiss and admit that the letter was addressed to colleagues of Dr. Morisky. Defendants deny that Dr. Morisky's lawyer wrote a letter to any Morisky Widget Code licensee, including the Hospital. Defendants state that the letter speaks for itself and deny any characterization of the document. Defendants deny all other allegations of this paragraph.

78.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

79.     Defendants deny the first sentence of this paragraph. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation contained in the second paragraph and therefore deny the same.

80.     Denied.

81.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

82.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

83.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

84.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

85.     Denied.

86.     Denied.

87.     Defendants admit that copyright registration applicants can submit redacted source code to the Copyright Office in some circumstances and otherwise deny the allegations of this paragraph.

88.     Defendants admit that the Widget Code source code was redacted and otherwise deny the allegations of this paragraph.

89.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation, deny there is such a thing as a "Morisky Widget MMAS-8" as the Widget Code merely displays the MMAS-8 registered to Dr. Morisky, and otherwise deny the remaining allegations of this paragraph.

90.     Defendants deny there is such a thing as a "Morisky Widget MMAS-8" as the Widget Code merely displays the MMAS-8 registered to Dr. Morisky. Defendants deny the 8 questions listed in this paragraph are not substantially similar to and are, therefore, not a copy of Dr. Morisky's registered MMAS-8. Defendants otherwise do not understand the allegation of this paragraph and, therefore, deny the same.

91.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

92.     Defendants deny there is such a thing as a "Morisky Widget MMAS-8" as the Widget Code merely displays the MMAS-8 registered to Dr. Morisky and otherwise deny the allegations of this paragraph.

93.     Defendants state that the license speaks for itself and denies any characterization of the document. Otherwise, Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

94.     Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and therefore deny the same.

95.    Defendants lack knowledge or information sufficient to form a belief about the allegation set forth in the first sentence of this paragraph. Defendants admit the remaining allegations of this paragraph.

96.    Admitted.

97.    Admitted.

98.    Admitted.

99.    Denied.

100.    Defendants admit that Defendant MMAR is registered as a Nevada LLC. Defendants deny the remaining allegations of this paragraph.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Defendants deny the first sentence of this paragraph. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that the first chart is a copy of the "BCH Morisky Widget MMAS-[sic]" and therefore deny the same. Defendants deny there is such a thing as a "Morisky Widget MMAS-8" as the Widget Code merely displays the MMAS-8 registered to Dr. Morisky. Defendants admit the second chart is an accurate copy of the "Morisky Medication Adherence Scale$^{TM}$ (8-Item MMAS$^{TM}$ Instrument) Copyright 2006 Donald E. Morisky." Defendants deny all remaining allegations of this paragraph.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## FIRST CAUSE OF ACTION

### Breach of Contract

(As to Defendant BCH Only)[1]

106.    Defendants incorporate by reference their answers to all prior paragraphs.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Defendants admit that this paragraph accurately quotes the license agreement but deny that the license agreement imposes binding obligations on BCH.

111.    Defendants deny there is such a thing as a "Morisky Widget MMAS-8" as the Widget Code merely displays the MMAS-8 registered to Dr. Morisky and otherwise deny the allegations of this paragraph.

112.    Defendants admit that this paragraph accurately quotes the license agreement but deny that the license agreement imposes binding obligations on BCH.

113.    Defendants deny there is such a thing as a "Morisky Widget MMAS-8" as the Widget Code merely displays the MMAS-8 registered to Dr. Morisky. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph and therefore deny the same.

114.    Defendants admit that this paragraph accurately quotes the license agreement but deny that the license agreement imposes binding obligations on BCH. Defendants deny there is such a thing as a "Morisky Widget MMAS-8" as the Widget Code merely displays the MMAS-8 registered to Dr. Morisky. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph and therefore deny the same.

---

[1] Pursuant to the Court's August 12, 2025, Order (D. 64), this Cause of Action was dismissed as to Defendants Hartz and Palfrey).

Morisky Defendants Response to
First Amended Complaint

Lex Tecnica Ltd.
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145

115.    Defendants admit that this paragraph accurately quotes the license agreement but deny that the license agreement imposes binding obligations on BCH.

116.    Denied.

117.    Denied.

118.    Denied.

## SECOND CAUSE OF ACTION

### Breach of Contract

(DISMISSED BY COURT ORDER (D. 64))

119.    Defendants incorporate by reference their answers to all prior paragraphs.

120.    The Court has dismissed Count Two for failure to state a claim on which relief can be granted. Further, as this claim applies to other defendants, no answer is required of Defendants. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count Two.

121.    The Court has dismissed Count Two for failure to state a claim on which relief can be granted. Further, as this claim applies to other defendants, no answer is required of Defendants. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count Two.

122.    The Court has dismissed Count Two for failure to state a claim on which relief can be granted. Further, as this claim applies to other defendants, no answer is required of Defendants. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count Two.

123.    The Court has dismissed Count Two for failure to state a claim on which relief can be granted. Further, as this claim applies to other defendants, no answer is required of Defendants. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count Two.

124.    The Court has dismissed Count Two for failure to state a claim on which relief can be granted. Further, as this claim applies to other defendants, no answer is required of Defendants. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count Two.

### THIRD CAUSE OF ACTION

### Violation of DMCA (17 U.S.C. 1202(a), (b)

125.    Defendants incorporate by reference their answers to all prior paragraphs.

126.    Defendants admit that Dr. Morisky was the sole holder of all copyrights to the MMAS-4 and MMAS-8 and deny the remaining allegations of this paragraph.

127.    Denied.

128.    Denied.

129.    This paragraph is not an allegation of fact to which an answer is required. To the extent an answer is required, Defendants deny the allegations of this paragraph.

130.    This paragraph is not an allegation of fact to which an answer is required. To the extent an answer is required, Defendants deny the allegations of this paragraph.

131.    Denied.

132.    This paragraph is blank, containing no allegation of fact to which an answer is required.

133.    Denied.

134.    Denied.

135.    Denied.

### FOURTH CAUSE OF ACTION

### Tortious Interference with Contractual Relations

136.    Defendants incorporate by reference their answers to all prior paragraphs.

137.    Denied.

138.    Denied.

139.    Denied (including all subparts).

140.    Denied (including all subparts).

141.    Denied.

142.    Denied.

143.    Denied.

144.    Denied.

145.    Denied (including all subparts).

## FIFTH CAUSE OF ACTION

### Trade Secret Misappropriation

146.    Defendants incorporate by reference their answers to all prior paragraphs.

147.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

148.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

149.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

150.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

151.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

152.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

153.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

154.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

155.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

156.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

157.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

158.    The Court has dismissed Count Five for failure to state a claim on which relief can be granted. No answer is required. To the extend an answer is required, Defendants deny the allegations of all paragraphs in Count.

159.    This paragraph is not an allegation of fact to which an answer is required. To the extent an answer is required, Defendants deny the allegations of this paragraph.

/ / /

/ / /

/ / /

## **OTHER DEFENSES**

Defendants assert the following additional and affirmative defenses:

1.      The claims are barred by the doctrine of copyright misuse. Plaintiff's attempt to enforce the Widget Code copyright as encompassing Defendants registered MMAS-8 content extends monopoly beyond statutory scope, barring claims.

2.      The claims are barred by the doctrine of unclean hands to the extent they seek equitable relief.

3.      The claims are barred by the doctrine of laches to the extent they seek equitable relief.

4.      Plaintiff has neither sufficiently alleged nor actually suffered any damages.

5.      The claim for breach of contract is barred by the doctrine of mutual mistake or unilateral mistake.

6.      Plaintiff's Widget copyright is a derivative limited by 17 U.S.C. § 103(b) to display code only, granting no rights to MMAR's MMAS-4/MMas-8. Unauthorized use of the underlying works voids any "license."

7.      Plaintiff never owned a valid copyright in the work it licensed, the MMAS-8, because the work is a derivative of an earlier registered copyright, the MMAS-8, owned by Defendants that was licensed without the consent of Defendants.

8.      Plaintiff's acts constitute infringement of Defendant MMAR's copyrights in the MMAS-4 and MMAS-8.

9.      Plaintiff's acts constitute infringement of Defendant MMAR's trademarks.

10.     The license agreement lacked consideration. The purported license fails as a contract because Plaintiff provided no consideration—rights to Defendants registered MMAS-8 content it did not own.

11.     What BCH received—the right to use the MMAS-8 assessment—was not a copyright Plaintiff owned or had any right to license to BCH, as the MMAS-8 was and remains

the intellectual property of Defendants, and Plaintiff had no right to prevent or interfere with Defendants licensure of its exclusive copyrights to BCH or anyone.

12.    Fraudulent or negligent misrepresentation. Plaintiff affirmatively represented, or implied by granting a license in the MMAS-8, that it owned or controlled the copyright in the MMAS-8, inducing Defendant BCH to enter the license, when Plaintiff knew or should have known that it had no rights in the MMAS-8 it purported to license.

13.    The claim for intentional interference is barred under the Norre-Pennington Doctrine.

14.    The claim for intentional interference is barred under the Litigation Privilege.

15.    The claim for intentional interference is privileged by the Defendants' right to exercise its federally granted rights to enforce its copyrights as authorized by 17 U.S.C.§§ 501-512 and therefore are not "improper" interference, which federal right preempts state-law interference claims.

16.    Defendants had a legitimate privilege to compete for licenses of its own work, and any interference was incidental to lawful competition for business grounded in Defendants' valid copyrights.

17.    The claim for violation of the DMCA is barred because the requested attribution of the copyright to Defendants was made to correct a misattribution by Plaintiff because Plaintiff had no rights to the MMAS-8 copyright and not to facilitate misattribution or infringement.

## **COUNTERCLAIMS/THIRD-PARTY COMPLAINT**

Defendant/Counterclaimant Morisky Medication Adherence Research LLC (hereinafter, "MMAR") hereby alleges its counterclaims against Counterclaim Defendant MMAS Research LLC (hereinafter, "MMAS Research") and its third-party complaint against Third-Party Defendant Steven Trubow (hereinafter, "Trubow") (collectively hereinafter, "Counterclaim Defendants") as follows:

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the counterclaims arise under federal law, including the Copyright Act, 17 U.S.C. § 101 et seq., and the Lanham Act, 15 U.S.C. § 1051 et seq. This Court has supplemental jurisdiction over the related state law counterclaims and third-party claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the federal claims and the original action.

2.      This Court has personal jurisdiction over Counterclaim Defendant MMAS Research LLC because it voluntarily invoked the jurisdiction of this Court by filing the Complaint in this action and thereby consented to personal jurisdiction for purposes of counterclaims arising out of the same case or controversy.

3.      This Court has personal jurisdiction over Third-Party Defendant Steven Trubow because he has sufficient minimum contacts with this forum, and the third-party claims against him arise out of or relate to those contacts, such that the exercise of personal jurisdiction comports with due process. In addition, the Court has supplemental subject matter jurisdiction over the third-party claims pursuant to 28 U.S.C. § 1367(a) and Fed. R. Civ. P. 14(a).

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims, counterclaims, and third-party claims occurred, and because defendants are subject to personal jurisdiction in this District. Venue for the copyright counterclaims is additionally proper pursuant to 28 U.S.C. § 1400(a). Venue for the trademark counterclaims is governed by 28 U.S.C. § 1391.

/ / /

/ / /

/ / /

**THE PARTIES**

5.      Counterclaimant Morisky Medication Adherence Research LLC ("MMAR") is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada.

6.      Counterclaim Defendant MMAS Research LLC is a Washington limited liability company with its principal place of business in Petaluma, California.

7.      Third-Party Defendant Steven Trubow is an individual residing in California. He is the principal of MMAS Research LLC.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**A.      Origin of the Morisky Medication Adherence Scales**

8.      Dr. Morisky received a Master of Science degree in 1977 and a Doctor of Science degree in 1981, both from Johns Hopkins School of Hygiene and Public Health (Behavioral Sciences and Health Education).

9.      He then led a 36-year career as a professor and visiting professor at prestigious health and science universities, including Johns Hopkins University, University of Hawaii, China Medical University (Taiwan), National Yang-Ming University (Taiwan), and the University of California at Los Angeles (UCLA).

10.     Dr. Morisky concluded his full-time professorship at UCLA in 2017 after approximately 35 years of distinguished service as a Tenured Professor, a Vice Chair, and later Chair of the Department of Community Health Sciences, and as the Program Director for the Masters of Public Health for Health Professionals Program (MPH-HP).

11.     He now serves as Professor Emeritus at UCLA Fielding School of Public Health and holds distinguished visiting appointments at several international institutions.

12.     Over the course of his career, Dr. Morisky has received NIH research grants, numerous awards, and has authored or co-authored over 300 peer-reviewed articles. His

work has defined best practices in assessing and intervening in medication adherence behavior worldwide.

13.     His doctoral research in the early 1980s led to the publication of adherence intervention methods in the *American Journal of Public Health* and *Medical Care*, laying the groundwork for what would become the Morisky Scales.

14.     In 1986, based on further research and patient interviews, Dr. Morisky introduced a four-item questionnaire known as the "MMAS-4," later followed by an enhanced, eight-question version, the "MMAS-8."

15.     These tools, collectively the "Morisky Medication Adherence Scales," were designed to not only identify whether a patient was noncompliant, but also to guide the provider as to why.

16.     The scoring protocols, known as the "Morisky Medication Adherence Protocol," provide structured interpretations and actionable steps for patient intervention.

17.     Since their development, the MMAS instruments have been used and validated in hundreds of peer-reviewed studies covering an expansive range of diseases and patient populations, and have been translated into more than 80 languages.

**B.     Copyright, Trademark, and Licensing History**

18.     Dr. Morisky is the author of a body of works protected under U.S. copyright law, including the MMAS-4 and MMAS-8.

19.     The MMAS-4 was registered with the U.S. Copyright Office on June 12, 2016 (Reg. No. TX0008285390), and the MMAS-8 was registered on September 21, 2018 (Reg. No. TX0008632533).

20.     Dr. Morisky also owns rights in the "MORISKY," "MMAS," and "MORISKY MEDICATION ADHERENCE SCALE" marks, which are recognized trademarks in commerce and the subject of federal registration.

21.     On June 8, 2023, Dr. Morisky assigned all of his intellectual property rights, including copyrights, trademarks, and all goodwill to MMAR.

22.     MMAR now holds all exclusive rights to license, enforce, and protect the Morisky Scales and Protocols.

23.     MMAR was formed to expand clinical applications of the MMAS instruments. In addition to research use, MMAR now licenses MMAS tools directly to clinics, integrated health systems, and international study sponsors.

**C.     Counterclaim Defendants' Misrepresentations to Third Parties**

24.     By at least early May 2025, MMAR became aware that Steven Trubow, acting through an entity known as "MMAS Research LLC," was contacting existing MMAS-8 licensees under false pretenses. In multiple communications, Trubow misrepresented himself and his entity as the rightful owner of the "MMAS-4" and "MMAS-8" instruments and demanded third parties that had licensed the MMAS-4 or MMAS-8 pay Defendants a settlement fee to avoid being sued by Defendants for infringement of Defendants' copyright.

25.     Trubow claimed MMAS Research LLC owned a copyright to the MMAS-4 and MMAS-8 by virtue of having obtained a derivative copyright to certain computer code to electronically display the MMAS-4 and the MMAS-8.  He called the derivative the "MORISKY WIDGET" (hereinafter, the "Widget Code").

26.     As noted by the U.S. Copyright Office on the Widget Code copyright registration, the registration of the Widget Cod copyright is expressly "limited" by the prior registered copyrights for the MMAS-4 and MMAS-8 in favor of Dr. Morisky.

27.     This means the derivative Morisky Widget does not and cannot as a matter of copyright law include the prior registered MMAS-4 and MMAS-8 as part of the Widget Code copyright.  The Widget Code copyright protect only that part of the code that permits it to display content (in this case the content was the MMAS-4 and MMAS-8).  The Widget

Code copyright registration does not give the holder any right to the content itself—just the code used to display some content.

28.    This is because the holder of a derivative to a prior copyrighted work only has rights to that which is added or derived from the prior copyrighted work—not to the prior copyrighted work itself.  The prior copyrighted work remains the exclusive property of the copyright holder of that work, not to the holder of the derivative.

29.    Thus, absent a license from the holder of the underlying copyrighted work, the derivative holder may not use or license the underlying copyrighted work.

30.    Further, the holder of the derivative work will be liable for copyright infringement if the holder of the derivative copies, displays, or uses the underlying prior copyrighted work or anything "substantially similar" to the prior copyrighted work without authorization from the copyright owner of the underlying work.

31.    Here, neither Trubow nor MMAS Research LLC have any right to copy, license or use the MMAS-4 or MMAS-8 or "anything substantially similar" to them (which by law includes any and all translations of the MMAS-4 and MMAS-8).  Neither Trubow nor MMAS Research are licensees of MMAR's MMAS-4 or MMAS-8 copyrighted works.

32.    Thus, the only work covered by the Widget Code copyright is the code itself, not the MMAS-4 or MMAS-8 nor any translations of the MMAS-4 or the MMAS-8. Counterclaim Defendants simply do not have any rights whatsoever in the MMAS-4 or the MMAS-8.

33.    Counterclaim Defendants representations to third parties that they have such rights is false, fraudulent, and damages MMAR.

34.    Counterclaim Defendants threat to sue third-parties if they do not pay Defendants a settlement amount not only infringes MMAR's rights, it interferes with MMAR's existing and prospective contractual rights as the exclusive holder of the copyrighted MMAS-4 and MMAS-8 to license such copyrighted works to such third parties.

**35.** Nevertheless, on or about May 8, 2025, Trubow sent a direct message to Dr. Héctor Bueno, a physician affiliated with Fundación Casa del Corazón in Madrid, Spain, demanding that Dr. Bueno produce a copy of the license for use of MMAS-8 in a study registered on ClinicalTrials.gov. The message claimed that MMAS Research LLC held a registered United States copyright in the MMAS-8 and threatened legal action for infringement if no license documentation was received.

36.   At the time of Trubow's message, Dr. Bueno and his institution held a valid and fully executed license from MMAR to use the MMAS-8, issued upon receipt of payment, and bearing Certificate No. 7484-3425-8284-1558-9188. Dr. Bueno contacted MMAR on May 20, 2025, to clarify the situation and expressed confusion and concern over Trubow's claims.

37.   MMAR confirmed that Trubow and MMAS Research LLC held no rights or authority to license or enforce the MMAS tools and instructed Dr. Bueno to disregard the unauthorized demand and forward any further correspondence. MMAR is informed and believes that Trubow issued similar messages to other licensed researchers.

38.   On May 8, 2025, Trubow sent a separate series of emails to personnel affiliated with the East and North Hertfordshire NHS Trust in the United Kingdom, including a graduate student researcher and oncology staff, regarding the use of MMAS-8 in a 2024 audit. In the message, Trubow again falsely claimed Defendant MMAS Research LLC owned a copyright in the MMAS-8, that NHS Trust had incorrectly used the MMAS-8 and must receive a "retroactive and corrective" license from MMAS Research LLC to use the MMAS-8 to avoid legal action being taken by Counterclaim sDefendants.

39.   On May 10, 2025, Trubow sent a follow-up message in the same correspondence chain, stating that the matter had been turned over to "Patricia Ray, our litigation counsel," for settlement or legal action in the United States federal courts. In the

same message, Trubow stated that "there are two organizations" authorized to license the MMAS-8—MMAR, and his own MMAS Research LLC.

40.    The assertion that multiple organizations may issue licenses for MMAR's copyrighted MMAS instruments is false.

41.    The holder of a U.S. Copyright has the exclusive right to use the copyrighted work.  As to the MMAS-4 and MMAS-8, that holder is exclusively MMAR. MMAS Research LLC has no rights in the MMAS-4 or the MMAS-8 whatsoever.

42.    The communications sent by Trubow to NHS personnel and Dr. Bueno are consistent with other reports received by MMAR in which Trubow contacts third-party researchers or institutional partners, misrepresents his rights, and issues threats of litigation or demands for retroactive licensing.

43.    These events have caused confusion among MMAR's licensees, disrupted the company's relationship with its licensees, required internal resources to be diverted to address the resulting harm. As of the date of filing, MMAR estimates the resulting economic harm to exceed $75,000, with reputational and operational effects ongoing.

## FIRST CLAIM FOR RELIEF

(Copyright Infringement – 17 U.S.C. § 501)

(Against Counterclaim Defendant and Third-Party Defendant)

44.    MMAR repeats and realleges the allegations in the previous Paragraphs as if fully set forth and incorporates them herein by reference.

45.    MMAR is the owner and exclusive rights holder of valid and federally registered copyrights in the MMAS-4 and MMAS-8 instruments, including Registration Nos. TX0008285390 and TX0008632533 (collectively hereinafter, the "Morisky Copyrights").

46.    Counterclaim Defendants have copied, incorporated copies of, solicited payment for licensure of, threatened to sue for infringement of, and have licensed MMAR's

copyrighted works, the MMAS-4 and MMAS-8, or works "substantially similar" thereto, to third parties, without any authorization or right from MMAR. These actions constitute direct infringement of MMAR's exclusive rights under 17 U.S.C. § 106(1–3), including the rights of reproduction, creation of derivative works, and distribution.

47.    On information and belief, Counterclaim Defendants had actual knowledge of MMAR's exclusive rights in the Morisky Copyrights and nevertheless continued their infringing conduct.

48.    In addition to direct infringement, Counterclaim Defendants have contributorily infringed MMAR's copyrights by intentionally inducing or materially contributing to the unauthorized use of the MMAS materials by third parties through false assertions of licensing authority.

49.    Counterclaim Defendants are also vicariously liable for the infringement of the Morisky Copyrights in that they had the right and ability to control the infringing conduct and have derived a direct financial benefit therefrom.

50.    Each instance of infringement by Counterclaim Defendants was willful, intentional, and committed with actual knowledge of MMAR's ownership, or with reckless disregard or willful blindness to MMAR's exclusive rights.

51.    MMAR has no adequate remedy at law. Defendants' ongoing infringement has caused and continues to cause imminent and irreparable harm to MMAR's licensing relationships, reputation, and enforcement rights. MMAR is entitled to preliminary and permanent injunctive relief under 17 U.S.C. § 502.

52.    MMAR is further entitled to an order under 17 U.S.C. § 503 requiring Counterclaim Defendants to destroy all infringing copies of the Widget Code, in any form, including in computer databases files, source code, marketing materials, and derivative products.

53.     Pursuant to 17 U.S.C. § 504, MMAR is entitled to recover statutory damages for each act of infringement in the amount of $150,000 per work infringed, as the infringement was willful, or alternatively, actual damages and profits attributable to the infringement, estimated to exceed $100,000.

54.     Pursuant to 17 U.S.C. § 505, MMAR is entitled to an award of its reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

(False Designation of Origin – 15 U.S.C. § 1125(a))

(Against Counterclaim Defendant and Third-Party Defendant)

55.     MMAR repeats and realleges the allegations in the previous Paragraphs as if fully set forth and incorporates them herein by reference.

56.     MMAR is the exclusive owner and licensee of federally registered and common law rights in the marks MMAS, MORISKY, and MORISKY MEDICATION ADHERENCE SCALE, which are used in connection with validated adherence assessment instruments and associated licensing services.

57.     These marks are widely recognized in the fields of public health, pharmacy, and clinical research as identifiers of origin and quality associated with the Morisky Scales and have acquired secondary meaning through decades of continuous use and commercial licensing.

58.     Counterclaim Defendants have used the MMAS and MORISKY marks in commerce, including in emails, outreach, and licensing solicitations to third parties in the U.S. and abroad, while falsely claiming ownership or exclusive rights in those marks.

59.     These statements were made to vendors, researchers, and potential licensees with the intent to divert or confuse third parties about the true source, sponsorship, or authorization of MMAS-based instruments.

60.    Counterclaim Defendants' use of the MMAS and MORISKY marks was likely to, and did, cause confusion, mistake, or deception among consumers and third parties regarding the affiliation, connection, or association of Counterclaim Defendants with MMAR, and the origin or approval of Counterclaim Defendants' purported licensing services.

61.    Counterclaim Defendants' conduct constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

62.    Counterclaim Defendants acted willfully and with actual or constructive knowledge of MMAR's prior rights in the MMAS and MORISKY marks.

63.    MMAR has suffered harm to its business reputation, licensing program, and customer relationships, and has no adequate remedy at law.

64.    MMAR is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), as well as damages, disgorgement of profits, and attorneys' fees under 15 U.S.C. § 1117(a).

**THIRD CLAIM FOR RELIEF**

(Unfair Business Practices – M.G.L. Ch. 93A, § 2, 11)

(Against Counterclaim Defendant and Third-Party Defendant)

65.    MMAR repeats and realleges the allegations in the previous Paragraphs as if fully set forth and incorporates them herein by reference.

66.    MMAR is a Nevada limited liability company engaged in the licensing and enforcement of intellectual property rights, including the MMAS-4 and MMAS-8 adherence instruments developed by Dr. Donald Morisky.

67.    Counterclaim Defendants have made and continue to make false and misleading representations in commerce regarding the source, sponsorship, approval, and affiliation of MMAS-4 and MMAS-8 licensing services.

68.     Specifically, Counterclaim Defendants have contacted third parties in the marketplace, including medical institutions, research entities, and academic vendors, while falsely claiming that Counterclaim Defendants possess exclusive rights to license or enforce MMAS-based instruments and asserting that MMAR is unauthorized or unrelated to the MMAS tools.

69.     These representations are knowingly false and were made with the intent to divert prospective licensing revenue from MMAR and to improperly position Counterlcaim Defendants as the source or certifying body for MMAS-related services.

70.     Such conduct constitutes unfair trade practices, as it involves:

    a.   False representations as to the source, sponsorship, and approval of goods or services;

    b.   False representations of affiliation, connection, or association with MMAR;

    c.   Representations that Countclaim Defendants' services or authority to license MMAS content were approved when they were not.

71.     Counterclaim Defendants' conduct has caused and continues to cause harm to MMAR's business relationships, reputation, and licensing interests within the State of Nevada and globally.

72.     MMAR seeks preliminary and permanent injunctive relief to restrain Counterclaim Defendants from further Unfair Business Practices under Massachusetts law.

73.     As a direct and proximate result of Counterclaim Defendants' unfair business practice, MMAR has suffered actual harm, including the delay or loss of anticipated licensing revenue, disruption of established negotiations, and reputational injury within the professional and scientific community.

74.     MMAR is entitled to recover all actual damages caused by Counterclaim Defendants' interference, and to injunctive relief enjoining Counterclaim Defendants from

making further misleading or unauthorized assertions to MMAR's existing or prospective clients.

75.    MMAR further seeks its attorneys' fees and costs associated with enforcing this claim, and such other relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

(Tortious Interference with Advantageous Business Relations – Mass. Common Law)

(Against Counterclaim Defendant and Third-Party Defendant)

76.    MMAR repeats and realleges the allegations in the previous Paragraphs as if fully set forth and incorporates them herein by reference.

77.    MMAR maintains ongoing and prospective economic relationships with health systems, academic research institutions, and international vendors involving the licensing and authorized use of the MMAS-4 and MMAS-8 adherence instruments.

78.    Counterclaim Defendants knew or had reason to know of MMAR's existing and prospective business relationships, including but not limited to MMAR's licensing discussions with Alliance Foundation Trials, Fundacion Casa del Corazon, and Dr. Pablo Gulayin.

79.    With knowledge of MMAR's rights and business model, Counterclaim Defendants intentionally interfered with these relationships by contacting third parties with whom MMAR either had an existing contractual relationship (a licensee) or a prospective contractual relationship and demanding that such third-parties contract with Counterclaim Defendants to avoid an infringement suit, when Counterclaim Defendants had no ownership or licensing rights in the MMAS tools.

80.    Counterclaim Defendants' conduct included issuing threats of legal action, offering "corrective licenses," and instructing third parties to disregard communications from MMAR, all without lawful basis.

81.     Counterclaim Defendants had no legal justification or privilege to interfere with MMAR's rights or relationships and acted with the intent to disrupt MMAR's business for their own commercial gain.

82.     As a direct and proximate result of Counterclaim Defendants' interference, MMAR has suffered actual harm, including the delay or loss of anticipated licensing revenue, disruption of established negotiations, and reputational injury within the professional and scientific community.

83.     MMAR is entitled to recover all actual damages caused by Counterclaim Defendants' interference, and to injunctive relief enjoining Counterclaim Defendants from making further misleading or unauthorized assertions to MMAR's existing or prospective clients.

## <u>FIFTH CLAIM FOR RELIEF</u>

(Unjust Enrichment or, in the Alternative, Conversion – Mass. Common Law)

(Against Counterclaim Defendant and Third-Party Defendant)

84.     MMAR repeats and realleges the allegations in the previous paragraphs as if fully set forth and incorporates them herein by reference.

85.     MMAR is the exclusive rights holder to the copyrighted and trademarked MMAS-4 and MMAS-8 instruments and the associated intellectual property, including the right to control licensing, enforcement, and commercialization of those works.

86.     Without authorization, Counterclaim Defendants have demanded and attempted to collect monetary payments from third parties by falsely asserting that they possess ownership or licensing rights in the MMAS tools.

87.     Between May 8-10, 2025, Counterclaims Defendants asked NHS Trust Chain to remit payment for purported use of MMAS-8 content.

88.     Counterclaim Defendants accepted and/or sought to retain the economic benefit of these demands without justification and at the expense of MMAR, who holds the lawful right to those revenues.

89.     As such, Counterclaim Defendants have been unjustly enriched by wrongfully appropriating the licensing value of MMAR's intellectual property and enforcement position.

90.     In the alternative, to the extent Counterclaim Defendants wrongfully asserted control over specific payments, licensing relationships, or contract proceeds belonging to MMAR, such conduct constitutes conversion of MMAR's identifiable economic rights.

91.     MMAR has suffered damages including lost revenue, distortion of licensing channels, and resource diversion caused by Counterclaim Defendants' unjust and unauthorized assertions of dominion over MMAR's proprietary interests.

92.     MMAR seeks an award of compensatory damages, restitution, and disgorgement, together with all other equitable relief the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

(Declaratory Judgment – 28 U.S.C. § 2201)

(Against Counterclaim Defendant and Third-Party Defendant)

93.     MMAR repeats and realleges the allegations in the previous Paragraphs as if fully set forth and incorporates them herein by reference.

94.     This is an action for declaratory judgment pursuant to the Declaratory Judgment Act (28 U.S.C § 2201) for purposes of determining the rights of the Parties to the MMAS-4 (TX0008285390) and MMAS-8 (TX0008632533) copyrights and the Morisky Trademarks and to confirm the Widget Code copyright does not include any right to digital versions of the MMAS-4 and MMAS-8 as alleged by Counterclaim Defendants.

95.     There is an actual, substantial, and judiciable controversy among the parties concerning who is the rightful owner of the Morisky Trademarks.

96.    MMAR requests a declaration that it is the sole and exclusive owner of the Morisky Trademarks and that MMAS Research has no rights to use or license the same.

97.    There is an actual, substantial, and judiciable controversy among the parties concerning who is the rightful owner of the MMAS-4 (TX0008285390) and MMAS-8 (TX0008632533) copyrights.

98.    MMAR requests a declaration that it is the sole and exclusive owner of the MMAS-4 (TX0008285390) and MMAS-8 (TX0008632533) copyrights, and all related property.

99.    There is an actual, substantial, and justiciable controversy among the parties concerning the allegation by Counterclaim Defendants that the Widget Code copyright includes and covers a copyright to a digital version of the MMAS-4 and MMAS-8.

100.    MMAR requests a declaration that the Widget Code copyright does not grant any rights to the digital version of the MMAS-4 and MMAS-8 displayed by the Widget Code and that such digital versions of the MMAS instruments are and remain the exclusive copyrighted works of MMAR.

## PRAYER FOR RELIEF

WHEREFORE, MMAR respectfully requests that this Court enter judgment in its favor and grant the following relief:

1.    <u>Declaratory Relief</u>: A declaration pursuant to 28 U.S.C. § 2201 that:

   a.  MMAR is the exclusive owner of all copyright, trademark, and related intellectual property rights in the MMAS-4 and MMAS-8 instruments, including U.S. Copyright Registration Nos. TX0008285390 and TX0008632533, and U.S. Trademark Registration No. 5837273, and that MMAR is the exclusive owner of the digital versions of the MMAS-4 and MMAS-8 instruments displayed by the Widget Code.

       b.  Counterclaim Defendants have no ownership, licensing, enforcement, or commercial rights in the MMAS-4 or MMAS-8, including the digital versions of these instruments used in the Widget Code.

2.   <u>Injunctive Relief</u>: Temporary, preliminary, and permanent injunctive relief under Fed. R. Civ. P. 65, 15 U.S.C. § 1116(a), 17 U.S.C. § 502(a) enjoining Counterclaim Defendants and all persons acting in concert with them from:

       a.  Reproducing, distributing, creating derivative works, or otherwise infringing MMAR's MMAS-4 and MMAS-8 copyrights.

       b.  Using, licensing, or asserting any rights in the MMAS, MORISKY, or MORISKY MEDICATION ADHERENCE SCALE marks.

       c.  Using, licensing, or asserting any claim of ownership to any copyright in the MMAS-4 or MMAS-8, including, without limitation, any claim of right to use or license the digital versions of the MMAS-4 or MMAS-8 with the Widget Code derivative work.

       d.  Interfering with MMAR's existing or prospective licensing relationships, including contacting third parties to offer unauthorized licenses or threaten legal action.

3.   <u>Destruction of Infringing Materials</u>: An order under 17 U.S.C. § 503 and 15 U.S.C. § 1118 requiring Counterclaim Defendants to deliver up for destruction all infringing materials, including communications, digital assets, and any copies or derivatives of the MMAS-4 or MMAS-8 that were created, used, or distributed without authorization;

4.   <u>Monetary Relief</u>:

       a.  <u>Copyright Infringement</u>: Statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of $150,000 per work infringed for willful infringement, or, alternatively, actual damages and Defendants' profits attributable to the infringement, estimated to exceed $100,000;

b. <u>False Designation of Origin</u>: Damages, disgorgement of Counterclaim Defendants' profits, and treble damages for willful violations pursuant to 15 U.S.C. § 1117(a);

c. <u>Deceptive Trade Practices</u>: Compensatory damages and equitable relief pursuant to M.G.L. Ch. 93A, § 2, 11.

d. <u>Tortious Interference</u>: Compensatory damages for lost licensing revenue and reputational harm caused by Counterclaim Defendants' interference.

e. <u>Unjust Enrichment/Conversion</u>: Restitution and disgorgement of all sums wrongfully obtained by Counterclaim Defendants, including payments demanded from third parties.

5. <u>Attorneys' Fees and Costs</u>: An award of MMAR's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a).

6. An award of pre-judgment and post-judgment interest as permitted by law; and

7. Any and all other relief to which MMAR may be entitled at law, in equity, or under federal or state statutes, and such further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Defendant/Counterclaimant and Third-Party Plaintiff, Morisky Medication Adherence Research LLC, hereby demands trial by jury

DATED: December 18, 2025.

**LEX TECNICA LTD**

*/s/ F. Christopher Austin*

F. Christopher Austin, Esq.
10161 Park Run Drive, Ste. 150
Las Vegas, Nevada 89145
(702) 518-5535
*Attorneys for Defendant /*
*Counterclaimant MMAR*