# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, HARVARD MEDICAL SCHOOL, MORISKY MEDICATION ADHERENCE RESEARCH LLC, JACOB HARTZ, DONALD MORISKY, and F. CHRISTOPHER AUSTIN and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:24-cv-12108-DHC<br><br>[PROPOSED]<br><br>**SECOND AMENDED COMPLAINT**<br><br><br><br>JURY TRIAL DEMANDED |

Plaintiff, MMAS Research LLC (hereinafter "Plaintiff" or "MMAS Research"), by and through its undersigned attorneys, complains and alleges as follows:

## I.      JURISDICTION AND VENUE

1.      This action arises, in part, under the Copyright Infringement Under 17 U.S.C. §§ 101, including all sections created or amended by the Digital Millenium Copyright Act conferring federal question jurisdiction under U.S. Code §§ 101, and supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. § 1367.

2.      Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and there is a complete diversity of citizenship between the Parties.

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) because (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this

District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have, had, or will have had effect in this District; (c) the written agreements identified and described more thoroughly below were entered into by the Parties in this District; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

4.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more defendants are amenable to personal jurisdiction in this District.

## II.     INTRODUCTION

5.     Plaintiff MMAS Research is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright"). Steven Trubow ("Trubow") is the CEO of MMAS Research.

6.     The Morisky Widget provides validated diagnostic risk assessments for medication adherence, depression, anxiety, chemical dependency and suicide.

7.     From January 2017 to July 2019, Trubow and Defendant Donald Morisky co-owned MMAS Research LLC, through which they trained and certified clinicians on the correct use of the Morisky Widget diagnostic assessments. They provided predictive risk diagnostic assessments for over 200 leading pharmaceutical companies, hospitals and universities who administered the Widget's diagnostic assessments to patients in clinical trials, hospitals, clinics and federally qualified health centers worldwide. Many of the clinicians published Morisky Widget results on the NIH ClinicalTrials.gov website, and in the medical literature. Among the hundreds of Morisky Widget licensees that Trubow trained and certified on the Morisky Widget was Boston Children's Hospital.

8.     After Morisky's departure from MMAS in July 2019, he formed a competing entity, Morisky Medication Adherence Research LLC ("MMAR"), and attempted to undermine Plaintiff's business by interfering with existing Widget licenses and falsely claiming ownership of the Widget's copyright. This interference included conduct on the part of Morisky's personal lawyer, F. Christopher Austin and his Nevada LLC, MMAR. This conduct included sending threatening letters to Boston Children's Hospital ("BCH") that contained false claims regarding MMAS's rights, which caused confusion and harm to MMAS Research's business relationship with BCH.

9.     As a result of this interference and, upon information and belief, for reasons of its own, BCH breached its license agreement with MMAS Research by creating an unauthorized Morisky Widget MMAS-8 derivative with a different MMAS-8 scoring and coding criteria for the enrollment protocol of their study. Despite the license's requirement that all scoring and coding must be performed within the Morisky Widget software, BCH administered a Morisky Widget MMAS-8 derivative, using paper-based tests and scored them outside the authorized Morisky Widget platform.

10.     Further, because of the conduct of Morisky, Austin and MMAR, BCH terminated its Morisky Widget License without good cause and executed a new MMAS-8 license with MMAR LLC. BCH subsequently published reports on the NIH ClinicalTrials.Gov website in 2023-2024 broadcasting to many of MMAS Research LLC licensees and prospective clients that BCH had severed its relationship with MMAS Research LLC and relicensed its study with Defendants Donald Morisky and MMAR LLC.

11.     One year after the original complaint was filed in the instant matter, Defendants BHS, HMS and Hartz published an article in the medical literature that informed anyone with

3

access to the internet that MMAS Research LLC and Steven Trubow was suing BCH and personally suing the articles' authors from BCH, HMS and the National Institute of Health, without also informing readers of the basis of that lawsuit and the wrongful conduct that caused it.

12.     These actions caused substantial financial harm to MMAS Research's business and its intellectual property rights, damaged its reputation and interfered with both existing and prospective business relationships and opportunities.

13.     Steven Trubow, the CEO of MMAS Research was a victim of defamatory libel which has caused Trubow, a 75-year-old man significant physical and psychological damage by inducing severe emotional distress and chronic stress responses, which manifest in various clinically recognized symptoms.

14.     Because of the foregoing, MMAS Research brings this complaint for damages against The Children's Hospital Corporation, Harvard Medical School, Morisky Medication Adherence Research LLC, Donald Morisky, F. Christopher Austin and Jacob Hartz, and DOES 1 through 10, inclusive, for breach of contract, willful copyright infringement, tortious interference and defamation as detailed below. MMAS Research seeks damages, injunctive relief, and other remedies to address these breaches of contract, copyright infringements, tortious interference and defamation and libel.

### III.    PARTIES

15.     Plaintiff MMAS Research LLC ("MMAS Research") is a Washington limited liability company in good standing which conducts business in Boston, Massachusetts.

16.     Defendant The Children's Hospital Corporation ("BCH") is a pediatric hospital and research institute in Boston Massachusetts.

17.    Defendant Harvard Medical School ("HMS") is a medical school and research center in Boston Massachusetts.

18.    Defendant Morisky Medication Adherence Research is a Nevada Limited Liability Company that does business as MMAR LLC in Boston Massachusetts.

19.    Defendant Donald Morisky is the founder of Morisky Medication Adherence Research and does business as MMAR LLC.

20.    Defendant Jacob Hartz is a former employee of BCH and HMS.

21.    Defendant F. Christopher Austin (AUSTIN) is a lawyer in Las Vegas Nevada and the author of the "Austin Letter" which is a central threat in this litigation.

22.    Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10, inclusive (the "Doe Defendants," and collectively with the above-named defendants, the "Defendants"), are other parties not yet identified who have breached contracts that are the subject of this lawsuit. The true names, whether corporate, individual, or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues defendants by such fictitious names, and will seek leave to further amend this complaint to show their true names and capacities when their identities have been determined.

23.    Plaintiff is informed and believes, and thereupon alleges, that Doe Defendants were, and are, in some unlawful manner responsible for the actions, acts, and omissions alleged, and for the damage caused by Defendants and are, therefore, liable for the damage caused to Plaintiff.

24.    Plaintiff is informed and believes, and thereon alleges, that Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damage to Plaintiff.

25.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants controlled and participated in the acts or conducted alleged herein.

## IV.     FACTS RELEVANT TO ALL ALLEGATIONS

### A.  Background On The Morisky Widget, MMAS-4, MMAS-8

26.     On information and belief, in December 2016, Donald Morisky moved his California LLC, MMAS Research, to the State of Washington to establish MMAS Research LLC.

27.     On information and belief, Donald Morisky, and Steven Trubow, the equal co-owners of MMAS Research LLC of Washington jointly created the new work, the MMAS Widget Source Code with the assistance of Dustin Machi, a computer programmer from Virginia Tech University. A true and correct copy of email correspondence between Steven Trubow, Donald Morisky and Dustin Machi is attached as Exhibit 1.

### B.  The Material Differences Between the MMAS-8 andMMAS-4 on the One Hand, and The Morisky Widget MMAS-8 And MMAS-4 on the Other

28.     The development of the Morisky Widget began when Donald Morisky, a Public Health Professor at UCLA, and Steven Trubow, a former Apple Computer Inc. Software Engineer and United States Department of Defense contractor, combined their respective works.

29.     Morisky contributed his paper generic Morisky Medication Adherence Scales (MMAS) 4 and 8 and Trubow contributed predictive analytic risk assessment software that transformed the MMAS 4 and 8 scales from uncopyrightable blank forms to the Morisky Widget's specific expressive source code implementation of predictive tertiary and secondary risk assessments based on new MMAS 8/4 scoring and coding criteria as illustrated below and in Exhibit 2.



30.    The Morisky Widget features a trade secret test editor that allowed Defendants BCH and Jacob Hartz to convert the original 2006 MMAS-8 static questions to dynamic medication or condition specific questions with much higher specificity and higher sensitivity in near real time, in over 80 languages. See the Morisky Widget test editor below used by Defendants Hartz and BCH. Exhibit 3.



31.    The Morisky Widget MMAS-8 and MMAS-4 were jointly developed by

Plaintiff and Defendant Donald Morisky, granting both authors joint ownership under § 201(a) of the Copyright Act (17 USC § 201(a)).

32.    Under the Copyright Act, the authors of a joint work are co-owners of copyright in the work.

33.    On information and belief, on January 6, 2021, Defendants Donald Morisky and Austin signed an infringement authorization in accordance with the December 4, 2020  CR2A settlement agreement, which stated, "In accordance with the December 4, 2020, agreement between Dr. Morisky and Steve Trubow and MMAS Research, LLC, I, Dr. Donald E. Morisky hereby authorize Steve Trubow, MMAS Research, LLC, or any attorney working on their behalf or designated by either of them to represent my interests in pursuing, settling and litigating any claim I have for infringement of my intellectual property rights to the MMAS-4, MMAS-8, and Morisky Widget, as well as contract claims related to licenses issued to use the MMAS-4, MMAS-8 or Morisky Widget, accruing on or before December 3, 2020." Exhibit 4

34.    Notwithstanding the fact that both Defendants Donald  Morisky and Austin gave their explicit authorization for  Steve Trubow, and MMAS Research, LLC, to represent my interests in pursuing, settling and litigating any contract claims related to licenses issued to use the MMAS-4, MMAS-8 or Morisky Widget, accruing on or before December 3, 2020." , in the April 21, 2022 Austin letter, Defendant Austin wrote, **"As such, neither Trubow nor MMAS Research has any right to use or license the Morisky Widget copyright, which includes use or licensure of the Morisky Widget program."** Exhibits 4 and 5.

35.    The December 4, 2020 CR2A settlement agreement provides a list of Morisky Widget licensees that were executed on or before December 3, 2020. Defendant BCH is listed

on Exhibit 4 on p. 30. Exhibit 5.

36.    While § 201(a) of the Copyright Act establishes Plaintiff and Defendant Morisky as co-owners, the specific principle that they share ownership equally (as tenants in common) is derived from longstanding common law principles that the statute left undisturbed, rather than being explicitly written in the text of the Act itself.  Pursuant to these principles, unless the joint authors have a written agreement specifying otherwise, each owns an undivided interest in the entire work, regardless of their individual contribution's quantity or quality, and has a duty to account for any profits to the other co-owners.

37.    Under § 201(a), Plaintiff and Defendant Morisky had an undivided interest in the Morisky Widget, each having the right to license non-exclusive uses of the Morisky Widget and to transfer their individual ownership interests.

38.    Morisky wrote, in a June 21, 2019 email to Steven Trubow, as follows (Exhibit 6):

> Subject: Accept your offer of withdrawal
>
> Steve: After consideration, I have decided to accept the offer of withdrawal as a member contained in the February 14, 2019, e-mail from you to me. I have attached below a copy for your convenience. The offer "If you want to withdraw from MMAS Research LLC you are free to do so, but you will give up your 50% ownership in the Morisky Widget" is accepted. I hereby withdraw as a member and from all other of my roles on behalf of MMAS Research, LLC, effective June 21, 2019. Thank you.

39.    Morisky and Trubow developed the Morisky Widget to correct deficiencies in the original works, the MMAS-4 and the MMAS-8, that made the two diagnostic assessments not only unreliable but even dangerous when used to measure the medication adherence of patients with chronic and infectious diseases.

40.    On information and belief, in a 2017 systematic review and meta-analysis, the MMAS-8 scale's performance was evaluated.

41.    The pooled sensitivity of 43% (ability to correctly identify non-adherent patients) and specificity of 73% (ability to correctly identify adherent patients) using a cut-off score of 6 were identified in this context. See, https://pmc.ncbi.nlm.nih.gov/articles/PMC9581089/#:~:text=These%20values%20are%20remarkably%20similar,%E2%80%9378%25%5D%2C%20respectively).

42.    On information and belief, before the development of the Morisky Widget, an MMAS-4 or MMAS-8 test would misdiagnose the medication adherence of at least 25% of the patients.  Such misdiagnosis put at risk the health and lives of heart, cancer, diabetes, HIV or other seriously ill patients, increased hospitalization time, and increased the risk of adverse medical events or even death.

43.    Aware of the debate in the medical literature on the risks to patient safety posed by the use of the MMAS-4 and MMAS-8, beginning on January 1, 2017 and through to June 21, 2019, Morisky informed all prospective licensees including Defendant Jacob Hartz and past licensees of the original MMAS 8/4 that, beginning January 1, 2017, all MMAS-8 and MMAS-4 licenses are administered through the Morisky Widget. A true and correct copy of email correspondence between Donald Morisky and third parties is attached as Exhibit 7.

44.    During this time, Morisky made it crystal clear to anyone interested in using the MMAS-4 or MMAS-8, including Defendants BCH and Jacob Hartz, that there would be no MMAS-4 or MMAS-8 licenses without the use of the Morisky Widget due to patient safety reasons. *See* Exhibit 7.

**C.  Susan Morisky, Phillip Morisky, MMAR LLC Declare the Morisky Widget Dead and Lawyer Christopher Austin Wrongfully Threatens to Sue Anyone for Using the Morisky Widget for Copyright Infringement.**

45.    On information and belief, by April 2022, Donald Morisky was suffering from

Alzheimer's Disease.

46.    On information and belief, Donald Morisky's wife, son, Phillip Morisky, his MMAR Nevada LLC and his lawyer, Defendant Christopher Austin, began a worldwide campaign to convince Morisky Widget licensees that Plaintiff did not own the Morisky Widget copyright with overt threats that anyone who used the Morisky Widget would be sued by Defendant Morisky for copyright infringement. (Exhibit 8).



47.    On information and belief, on April 21, 2022, a letter from Donald Morisky's lawyer, Christopher Austin, was broadcast worldwide via the Internet by being posted on www.moriskyscale.com and transmitted by email to over 200 Morisky Widget licensees, including Defendants BCH and Jacob Hartz.  Austin's letter stated (Exhibits 8, 9 and 10):

> Further, the MMAS Research copyright in the Morisky Widget code is an unlawfully obtained derivative of Dr. Morisky's MMAS-4 and MMAS-8 registered copyrights (as noted by the U.S. Copyright Office's reference to Dr Morisky's registered copyrights on the Morisky Widget registration). As such, neither Trubow nor MMAS Research has any right to use or license the Morisky Widget copyright, which includes use or licensure of the Morisky Widget program.
>
> ANY PERSON THAT USES OR LICENSES THE MORISKY WIDGET, MMAS-4 SCALE OR MMAS-8 SCALE WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR. MORISKY WILL BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW FOR COPYRIGHT INFRINGEMENT."



48. According to Defendant BCH's Memorandum of Law in Support of Motion to Dismiss (Doc. 21), "In April 2022, Dr. Morisky's lawyer wrote a letter to Morisky Widget licensees, including the Hospital, asserting that Dr. Morisky owned the Widget copyright and implicitly threatening legal action against anyone who dealt with Trubow. (Compl. ¶ 54 & Ex. 16). This was a source of "confusion for Morisky Widget licensees" (Compl. ¶ 55), evidently including the Hospital." In a footnote to this text on page 7, the submission continues, "The complaint is silent about who received the letter, but it was addressed to Dr. Morisky's 'colleagues' (Compl. Ex. 16) and in fact went to Dr. Hartz."

49. Contrary to the assertion in Defendant's Austin April 21, 2022 letter, the December 2020 CR2A settlement agreement provides in Section 2, # 7, at page 6, that the Morisky Party and MMAR agree to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect, including adhering to all European Union Privacy regulations (including but not limited to GDPR) and HIPPA. (Exhibit 5).

50.     Plaintiff and Defendants Donald Morisky and MMAR and the Plaintiff agreed to dismiss the claims asserted in the Washington lawsuit and Nevada federal district court lawsuit now pending against each other with prejudice and without any award of costs or attorneys' fees in any action. (Exhibit 5).

51.     The December 2020 CR2A settlement agreement also provides, in Section 2, # 14, at page 8, "Each Party covenants and agrees to not make any public defamatory statement about any party to this Agreement." (Exhibit 5).

52.     Notwithstanding this provision, Defendant Austin's April 21, 2022, letter to Defendants BCH and Jacob Hartz made public defamatory statements about Trubow and MMAS Research that included "Further, the MMAS Research copyright in the Morisky Widget code is an unlawfully obtained derivative of Dr. Morisky's MMAS-4 and MMAS-8 registered copyrights (as noted by the U.S. Copyright Office's reference to Dr Morisky's registered copyrights on the Morisky Widget registration). As such, neither Trubow nor MMAS Research has any right to use or license the Morisky Widget copyright, which includes use or licensure of the Morisky Widget program." (Exhibit 10).

53.     In their March 19, 2025, response to Defendants' Donald Morisky and MMAR LLC motion to dismiss, Defendant BCH states, "But if any claim against the Hospital Defendants survives, the Hospital Defendants may decide to bring a cross-claim against Dr. Morisky and MMAR on a tortious interference theory or a similar theory. The Hospital Defendants find themselves embroiled in the dispute between Dr. Morisky and Trubow because the Hospital changed the text regarding attribution of the MMAS-8 assessment on a government website after receiving threatening correspondence from Dr. Morisky's lawyers." Document 56 at 1.

54.     On October 24, 2025, counsel for the parties appeared for oral argument on MMAR and Morisky's motion to dismiss, during which Defendant Austin, counsel for those parties, relied primarily on novel legal arguments based on the Massachusetts litigation privilege and immunity under the Noerr-Pennington doctrine as grounds for dismissing MMAR and Morisky.

55.     These arguments by Defendant Austin were not only novel under the law but were new to the case, not having been raised in any way in the motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) by MMAR and Morisky, Document 54.

56.     This omission was noticed not only by counsel for Plaintiff but by the Court, which asked Austin whether the issue had been briefed or only raised at oral argument.  Austin responded that it had been, and the Court asked him to make a supplemental submission to apprise the Court of where these issues, which do not even bear on personal jurisdiction but are substantive defenses, had been raised in the briefing.

57.     Austin was not truthful when he responded to the Court's inquiry.

58.     On October 28, 2025, Defendant Austin filed Document 77, styled a "Supplemental Motion to Dismiss for Lack of Jurisdiction," purportedly in response to the Court's request that he provide documentation to support his representation to the Court at oral argument on that motion that the litigation privilege and Noerr-Pennington doctrine arguments had ever been raised in this matter.

59.     Instead of responding to this request for the Court to substantiate his representation, however, Austin used the Court's invitation to make a supplemental filing as an opportunity to file an entirely new motion based on these new legal grounds of immunity,

14

arguing that because his conduct – specifically, his transmission of legally actionable cease and desist letters to BCH in this District – was supposedly legally privileged, it could not constitute "purposeful availment" grounds for imposing this Court's jurisdiction on MMAR and Morisky.

60.    Defendants did not request leave to brief this new argument as grounds for dismissal under Fed. R. Civ. P. 12(b)(2).

61.    The Court rejected Defendants' new argument, writing, its Memorandum and Order dated December 3, 2025, "Although the Austin Letter did not explicitly demand that licensees 'cease and desist' from infringement, the letter nonetheless made clear that '[a]ny person that uses or licenses the Morisky Widget, MMAS-4 Scale or MMAS-8 scale without express written authorization of Dr. Morisky will be in violation of U.S. federal copyright law for copyright infringement' and '[a]ny person that uses any of [Dr. Morisky's] marks without the express written authorization of Dr. Morisky will be in violation of U.S. federal trademark law.'" (Document 77).

## D.  The 9th Circuit Court of Appeals Rules that MMAS Research LLC Is the Owner of the Morisky Widget

62.    In a March 13, 2024, Memorandum for Case: 23-55202, 03/13/2024, the United States Court of Appeals for the Ninth Circuit wrote:

63.    "The district court erred in concluding that MMAS lacked standing to sue for copyright infringement.  The district court had found that a 2020 preliminary settlement agreement from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky Widget from MMAS to Dr. Morisky.  But that agreement (CR2A)—which simply outlined terms MMAS and Dr. Morisky 'desire[d] to consent and agree to' sometime in the future—was never finalized. MMAS thus never

transferred its copyright and remains the registered owner of the Morisky Widget." A true and correct copy of the United States 9th Circuit Court of Appeals Memorandum dated March 13, 2024, is attached as Exhibit 11.

**E. The Nevada Federal District Court Invalidates the MMAS-8 and MMAS-4 Copyrights, Not The Morisky Widget MMAS-8 and MMAS-4 Copyrights.**

64.    In their motion to dismiss (Document 21), Defendants BCH, Jacob Hartz and Hannah Palfry's Document 21, claimed that there was no copyright infringement because "MMAS Research does not own the copyright in the version of the of the MMAS Dr Hartz administered." If they infringed any copyright, they argued, it was the copyright in the older, paper-based MMAS-8, which copyright MMAS Research does not claim to own.

65.    On June 25, 2025, however, the copyrights for MMAS-4 and MMAS-8—the ones Defendants BCH, Hartz and Palfry urge were the only ones they could have infringed—were invalidated by the U.S. District Court for the District Court of Nevada in a case styled *Adherence v. CVS Pharmacy, Inc.* (Case No. 2:24-cv-1590-JCM (NJK), in an order signed by U.S. District Judge James McMahan. In that case the Plaintiff, Adherence, asserted ownership of federally registered copyrights in the MMAS-4 and MMAS-8 adherence scales. The Nevada court determined that the 2007 MMAS-4 and 2006 MMAS-8 are not copyrightable subject matters. (Exhibit 12).

66.    Plaintiff does, in fact, own the version of the MMAS-8 that Dr. Hartz administered as both a screener and a medication adherence test, and claims to have possibly infringed. (Exhibit 3).

**F. Licensing Of the Morisky Widget**

67.    Plaintiff permits the use of the Morisky Widget, licensing its copyright and diagnostic assessments, only through a licensing program memorialized in a licensing

agreement. Under the licensing program, use of the Morisky Widget source code is authorized by Plaintiff and only in compliance with Plaintiff's strict coding and scoring in the Morisky Widget.

68.    Restrictions on the use and disclosure of the coding and scoring of the Morisky Widget diagnostic assessments are explicit limitations of the licenses.

69.    The terms of the licenses granted by Plaintiff are designed not only to protect federally registered rights, but also to protect patients and health care providers from counterfeit or scientifically incorrect diagnostic assessments and inaccurate results.

70.    All Morisky Widget licensees are explicitly required to score and code diagnostic assessments, MMAS-4, MMAS-8, Clinically Useful Depression Outcome Scales (CUDOS), Clinically Useful Anxiety Outcome Scales (CUXOS), the Columbia-Suicide Severity Rating Scale (C-SSRS), and the NIDA-Modified ASSIST (NM-ASSIST) substance abuse scale in the Morisky  Widget and to be trained and certified on the use of the Morisky Widget before administering any of the Widget diagnostic assessment to patients.

71.    Among the hundreds of pharmaceutical firms, hospitals, and universities that Plaintiff licensed, trained, and certified was Defendant Boston Children's Hospital. *See* Exhibit 5 at 30.

BMS Italy
Bayer NL
Berlin Chemie
Boehringer Ingelheim China
Boehringer Ingelheim GmbH
Boston Children's Hospital
Bristol University
Bristol-Myers Squibb USA
Brussels Free University School of Public Health

(Excerpt from CR2A Exhibit 4)

**G.  BCH Morisky Widget License**

72.    On September 4, 2019, Boston Children's Hospital (BCH) executed a perpetual MORISKY Widget MMAS-8 license with MMAS Research LLC (MMAS) of Bellevue Washington. (Exhibit 13).

73.    On information and belief, the BCH MMAS Morisky Widget License specified that Licensee BCH can use the Morisky Widget, Morisky Kiosk Apple I Phone APP, and the Morisky API to administer Morisky Widget MMAS tests. With Licensor approval, BCH can use MMAS paper or electronic questionnaires, but all scoring and coding must be done in the Morisky Widget. (Exhibit 13).

**H.  Background and Leadup to the Morisky Widget License Agreement as Signed and Executed between BCH and MMAS Research LLC**

74.    On July 29, 2018, Dr. Jacob Hartz, then director of the preventive cardiology clinic at Boston Children's Hospital and an instructor in pediatrics at Harvard Medical School, wrote to Dr. Donald Morisky:

> I am an early career pediatric cardiologist at Boston Children's Hospital and am applying for a NIH Career Development Award to improve medication adherence in adolescents with familial hypercholesterolemia. In an effort to accurately identify patients, we were wondering if MMAS-8 would be appropriate. If it could be, what training would we need and what licensing would be needed as well.

*See* Exhibit 14.

75.    On the same day, July 29, 2018, Dr. Morisky responded to Dr. Hartz's (above) request for an MMAS-8 license and the required training and certification, writing:

> Thank you Dr. Hartz for your interest in using my copyrighted and trademarked intellectual property (IP), the MMAS diagnostic adherence assessment instrument. We are currently in Asia conducting training and certification for hundreds of practicing clinicians who are implementing the correct use of the Morisky Widget into the patient health-care delivery system. We plan to be on the east coast in September and October so please fill out the following questionnaire so we

can best serve you. My Chief Investigator, Mr. Steve Trubow, will be able to assist you in obtaining your MMAS License. Below are the new training and certification requirements.



*See* Exhibit 14.

76.    Neither Morisky nor Trubow heard from Dr. Hartz until August 7, 2019, when Hartz wrote, "Steve, I am sorry that I was not able to complete this (application) earlier, but we did not know if we had funding for the study, which we do now. I have completed the application for the Morisky Widget below," accompanied by the following:

*Morisky Widget APPLICATION Date August 7, 2019*

*Completed by:* Jacob Hartz, MD, MPH

*Name and Address of Organization:* Boston Children's Hospital

*Point of Contact*: Jacob Hartz (617-XXX-XXXX, fax: 617-XXX-XXX)

*When do you want to begin using the perpetual Morisky Widget license?* January 2020

*Are there any third-party organizations that will operate the Morisky Widget?* No

*How many Morisky Widget diagnostic assessments in total do you plan to administer?* 80 patients (4-5 times each)

*How do you plan to administer the Morisky Widget diagnostic assessments by paper or the Morisky Widget or Morisky Kiosk Apple I-Phone App?* We would like to use it by paper and iPhone

app if possible. If only one option is available, we would prefer paper.

*What health conditions, diseases and specific medications are you trying to assess for medication adherence?* Adolescents with Familial Hypercholesterolemia who are taking a statin.

*Please describe in detail the interventional research design or clinical protocol for using the Morisky Widget?* The Morisky Widget will be used to measure baseline adherence, adherence after receiving the first of two interventions, following a "wash-out" period, and finally at the end of the intervention. If possible, we would also use the Morisky Widget to measure adherence 6 months after the intervention ends to determine if there is a "legacy effect." statin, type and dose of statin prescribed, and if any adverse effects are present.

*How many times will each patient be given the Morisky Widget?* We expect each patient to use it 4 times. Possibly five if we are able to extend the trial. *See* Exhibit 15.

77.     Trubow, having received Hartz's application for a perpetual Morisky Widget

license wrote:

> Jake, The offer of a free perpetual Morisky Widget license for Boston Children's Hospital is dedicated to my sister Sandra Fairbank of Cambridge who has supported the Morisky Widget MMAS since the outset. The cost of the training and certification if it can be scheduled in Boston in late October or early November 2019 will be $5000.00. After certification, MMAS Research LLC will provide Boston Children's Hospital with 25,000
> complimentary Morisky Widget MMAS condition and medication specific tests for clinical applications or translational, sustainable interventional studies for children with chronic and infectious disease. If you wish us to prepare a draft license, please let me know or if you have any other questions. Best Steve in Tokyo

78.     On August 8, 2019, Hartz wrote to Trubow:

> This sounds great. I love that your sister is involved. We should all have dinner! Let's draft a license! -Jake Jacob Hartz, MD, MPH  Department of Cardiology Boston Children's Hospital. *See* Exhibit 15.

79.     In November 2019, after the acceptance of the application BCH personnel were

trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8. Dr. Hartz

and Ms. Palfrey customized a Morisky Widget MMAS-8 medication and condition specific test for the BCH study.

80.    MMAS Research LLC traveled to Boston at its own expense, to train and certify Jacob Hartz and his colleagues on BCH use of the Morisky Widget software to create a condition and medication assessment of medication taking behaviors for the Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents study.

81.    Defendants Jacob Hartz and Hannah Palfrey were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8. The training included certification on the Morisky Widget trade secret scoring and coding algorithm and test editor/translation algorithm.

82.    Hartz and Palfrey used the Widget's test editor algorithm to customize a Morisky Widget MMAS-8 medication and condition specific test for the BCH study that Defendants BCH and Jacob Hartz later converted to an unauthorized Morisky Widget MMAS-8 screener to use in their study's enrollment protocol to find patients with low adherence to their cholesterol medication. Exhibit 3

83.    On information and belief, Defendants BCH and Hartz clearly understood the differences between the Morisky Widget MMAS-8 assessment they created during their Morisky training and certification in November 2019 and the original MMAS-8 tests published in the *Journal of Clinical Hypertension* article in 2008 which was retracted from the medical literature in 2023 Exhibit 16

## I.    The Material Differentiation of the 2006 MMAS-4/8 Scales From The 2017 Morisky Widget MMAS-4/8 Diagnostic Assessments of Medication Behavior.

84.    The original MMAS-4/8 scoring and coding algorithms are functional measurements. They produce a binary or quantitative status, the MMAS-4 from 0-4 and the

21

MMAS-8 from 0-8. The original Morisky scales answer the questions, how often the patient takes their medication or not.

85.    The Morisky Widget MMAS-4/8 algorithms are both functional and expressive. Whereas the Morisky Widget MMAS-4/8 produces a raw score for medication adherence. The      Morisky      Widget      MMAS-4/8      algorithms      are      diagnostic assessment of medication taking behaviors. They quantify why the patients is not taking their medication, producing scores of the patients intentional and non-intentional medication non-adherence. The Morisky Widget algorithms can measure the underlying drivers of medication nonadherence, such as the severity of depression.

86.    The Morisky Widget MMAS 4/8 expressive algorithms and additional Morisky Widget assessments such as the Clinically Useful Depression Outcome Scale (CUDOS) diagnose the specific behavioral archetype of the patient that go far beyond the original MMAS-4/8 functional adherence algorithms by categorizing why and how patients interact with their prescriptions. Unlike the MMAS-4/8 functional algorithms, the Morisky Widget algorithms express actionable psychological profiles that clinicians use to tailor interventions to reduce the risk of hospitalization, adverse medical events and even death from medication non-adherence.

87.    Beginning with the launch of the Morisky Widget on www.morisky.org in January 2017, Defendant Morisky abandoned the original MMAS-4/8  functional algorithms and was only willing to license the 2017 Morisky Widget MMAS-4/8 for the Widget tertiary and secondary quantifiable risk assessment of medication taking behaviors with alerts to clinicians that an intervention was urgently required to prevent a failure in the patient's medication treatment regimen to prevent hospital admissions, adverse medical events or even

death.

88.    The original, 2006 static MMAS-8 comprises the following questions:

| | |
|---|---|
| 1. | Do you sometimes forget to take your \<health condition> pills? |
| 2. | People sometimes miss taking their medications for reasons other than forgetting. Thinking over the past two weeks, were there any days when you did not take your \<health condition> medicine? |
| 3. | Have you ever cut back or stopped taking your medication without telling your doctor, because you felt worse when you took it? |
| 4. | When you travel or leave home, do you sometimes forget to bring along your \<health condition> medication? |
| 5. | Did you take your \<health condition> medicine yesterday? |
| 6. | When you feel like your \<health condition> is under control, do you sometimes stop taking your medicine? |
| 7. | Taking medication everyday is a real inconvenience for some people. Do you ever feel hassled about sticking to your \<health condition> treatment plan? |

89.    Question #1 and question #5 are limited to medications that are administered through "pills" and daily ("yesterday"). If a patient is taking a medication administered through an injection or a spray, or if a patient is taking a medication once a week, or twice a month, both the MMAS-8 specificity and sensitivity decrease and increase the risk for a misdiagnosis of a patient's medication adherence.

90.    Using the Morisky Widget test editor, the Licensee can enter condition(s), medication(s) specific MMAS assessments with the correct dosing information and timing of administration to maximize the Widget's specificity and sensitivity. This is impossible with the original MMAS-8 static/generic questions.

91.    On information and belief, this is exactly what was needed by BCH, which was studying adherence in patients taking cholesterol medication according to a non-daily treatment plan. During their training and certification on the Morisky.

92.    On information and belief, during their training and certification, Defendants

Hartz and Palfrey created a Morisky Widget MMAS-8 condition and medication(s) specific assessment that was night and day different than the 2006 MMAS-8 test. For question #4 instead of asking, "Did your take your MEDICATION yesterday", they used the Morisky Widget to change question #4 to "Did you take all your prescription cholesterol medication the last time you were supposed to take it" Exhibit 3.

93.     Below is a screenshot of the BCH Morisky Widget test editor which shows the 2006 MMAS-8 and 2019 Morisky Widget MMAS-8 tests side by side. Even an uninformed observer can hardly miss the sharp contrast between the two MMAS-8 tests.



Exhibit 3.

94.     The Morisky Widget MMAS-8 measures factors that the original MMAS-8 never measured. Several questions of the Morisky Widget MMAS-8 Test are used to determine whether a patient's nonadherence to a medication protocol was intentional or unintentional.

95.     In their Morisky Widget license, BCH and Jacob Hartz agreed that coding and scoring criteria of the Morisky Widget can never be divulged in any publication, presentation,

or website without written permission from MMAS. Exhibit 13.

96.    In their Morisky Widget license, Defendants BCH and Jacob Hartz agreed that changes or any modifications to the wording, phrasing, or scoring of the MMAS require certification on the Morisky Widget editor and translator. Exhibit 13.

97.    On July 5, 2022, Dr Hartz and Ms. Palfrey sent MMAS Research LLC a copy of a derivative Morisky Widget MMAS-8 paper test they were administering to patients as a screener. Exhibit 17.

98.    On information and belief, Defendants BCH and Jacob Hartz used the MMAS-8 condition and medication specific MMAS-8 test they created in their Morisky Widget to use as a pre-enrollment MMAS-8 screener with a derivative MMAS-8 scoring and coding criteria. Exhibit 17.

99.    Defendants BCH and Jacob Hartz' unauthorized alteration and modification of the MMAS-8 scoring and coding criteria to use as a screener for enrollment for their study was done without explicit permission of the Plaintiff.

100.    Defendants BCH and Jacob Hartz's creation and use of an unauthorized derivative work breached their Morisky Widget license and constitutes willful copyright infringement and their unauthorized changing to the MMAS-8 scoring and coding criteria jeopardized patient safety and the scientific validity of the Morisky Widget MMAS-8 scale. Exhibits 13, 17.

101.    On July 5, 2022, Plaintiff sent Defendant Hartz an email asking for a status report on the use of the Morisky Widget MMAS-8 tests so far in the study. Plaintiff wrote, "Dr Hartz, Thank you for the prompt response. We can discuss the use of MMAS-8 paper tests in cases when the internet is not available. However, before we begin

the discussion, please answer the questions below. How many MMAS-8 tests have been administered to date ? How were the MMAS-8 tests administered scored and coded ? When were the MMAS-8 tests first administered ? When will the last MMAS-8 test be administered? Best Steve in Tokyo Steven Trubow MMAS Research LLC USA." Exhibit 18.

102.    On July 6, 2022, Defendant Jacob Hartz responded to Steven Trubow and copied Hannah Palfrey. In this email, Hartz admitted that he had modified the Morisky Widget MMAS-8 scoring and coding criteria to meet the requirements of their enrollment process and has administered, scored and coded four Morisky Widget MMAS-8 tests outside of the Morisky Widget.

103.    At this time, Hartz appeared to realize that this was a serious breach of the BCH Morisky Widget license and offered to end the use of the MMAS-8 in the study. Hartz added that MMAS Research LLC had now been added as a collaborator on the BCH NIH ClinicalTrials.gov website as a collaborator, writing:

> Hi,
>
> We have administered 4 tests. The tests were administered from memory. Our enrollment protocol was answering a positive (i.e., consistent with lower adherence) to at least one question. and then I had planned on entering and scoring the tests on the widgets. I will need to confirm the date of the first enrollee and have the details in my office but am not there today. The last MMAS will be administered within the next 2 years once we have completed enrollment. If any of this is serious breach of contract and you feel it necessary to end our agreement, we would understand. We certainly did not mean to do anything incorrectly and it was always our intention to follow our contract entirely. It would be a tremendous loss to our study, but we want to respect our agreement and your organization. Although the citation was included in our references, we have now added you as a "Collaborator" because this appears to be best place to signal your role. If there is a preferred place, please let me know and I can change it.
>
> Thank you. Again, our sincerest apologies if this was done incorrectly. –
>
> Jake Jacob Hartz, MD, MPH Director of Preventive Cardiology Department of Cardiology. (Exhibit 19)

104.   Below is the updated BCH Clinical Trials Report for NCT04458766, as shown below, listing MMAS Research LLC as a collaborator on the study. See, https://clinicaltrials.gov/study/NCT04458766?tab=history&a=5#                  StudyPageTop.



105.   This unauthorized Morisky Widget MMAS-8 screener met the BCH Study's AIM 1.1 enrollment criteria. The pre-enrollment Morisky Widget MMAS-8 screener shown

below is referenced as APPROACH AIM 1.1 in BCH ClinicalTrials Report on August 21, 2024, https://clinicaltrials.gov/study/N

CT04458766?term=jacob%20hartz&rank=1&tab=history&a=6#version-content-panel ("The investigators will determine the baseline adherence level in adolescents with FH prescribed a statin using the Morisky Medication Adherence Scale (MMAS). Patients who are found to have low adherence according to the MMAS in Aim 1.1 will be enrolled into an intervention using the Wealth® mobile health application").

106. On information and belief, in January 2023 and again in January 2024, Defendants BCH and Jacob Hartz updated the ClinicalTrials.gov website for NCT04458766 and included the following notification, The MMAS-8 scale, content, name and trademarks are protected by US Copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR LLC. See https://clinicaltrials.gov/study/ NCT04458766?term=%20NCT04458766%20&rank=1

107. On information and belief, Defendants Morisky, Austin and MMAR registered Nevada LLC is Morisky Medication Adherence Research LLC, not MMAR LLC. The copyright notification and license for NCT04458766, lists "MMAR LLC," which is an unregistered firm fictitious name (FFN).

108. On information and belief, MMAR LLC is not a legal entity. According to Nevada Revised Statutes Chapter 602, Doing Business Under Assumed or Fictitious Name, Donald Morisky's Nevada registered company Morisky Medication Adherence Research LLC was required to file a fictitious firm certificate (FFC) in Clark County NV, no later than one month after the commencement of business under an assumed or fictitious name. To date, according to the Clark County NV

Clerk's Office, there has not been any FFC issued to Morisky Medication Adherence Research LLC, for MMAR LLC.

109.    BCH's contracts/licenses/copyright notifications with MMAR LLC on the ClinicalTrials.gov website are not legal contracts or legal documents because in Nevada, using an unregistered fictitious name in a contract or legal document is a violation of Nevada Revised Statutes Chapter 602.090, which make it a misdemeanor to use an unregistered fictitious name in a contract or legal document.

110.    The BCH Morisky Widget perpetual license requires Defendant BCH to include, in all articles, presentations, web postings, reports and submitted manuscripts that present the Morisky Widget MMAS results or in the Acknowledgment Section of manuscripts submitted for publication, a footnote reading, "A Morisky Widget license agreement is available from MMAS Research LLC 14725 NE 20th St., Bellevue Washington or strubow@morisky.org." (Exhibit 13).

111.    The BCH Morisky Widget perpetual license requires BCH to submit to Plaintiff all presentations and manuscripts being considered for abstracts/poster presentations or publication to make certain that all copyright and trademark requirements are included in all manuscripts submitted for publication. This requirement was included to protect Defendant BCH as Plaintiff has encountered many violations of federal and international copyright laws from clients as well as individuals who use MMAS intellectual property without following the required copyright and trademark guidelines. (Exhibit 13).

112.    On information and belief, on August 14, 2025, Defendants BCH, HMS, and Jacob Hartz published the study article, "In The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence to Statins and Blood Pressure–Lowering

Medication in Adolescents with Familial Hypercholesterolemia or Hypertension: Protocol for a Pre-Post Cohort Study," available online at https://www.researchprotocols.org/2025/1/e65105 (Accused Study).  (Exhibit 20)

113.   According to the article, the four authors and their affiliations for the Accused Study article were Jacob Hartz, Boston Children's Hospital and Harvard Medical School, Hannah Chiert, Boston Children's Hospital, Sarah de Ferranti, Boston Children's Hospital and Harvard Medical School and Tiffany Powell-Wiley, National Institutes of Health. (Exhibit 20).

114.   The National Institutes of Health is a federal agency within the U.S. Department of Health and Human Services (HHS).

115.   On information and belief, the Accused Study was submitted for publication on January 20, 2025.

116.   On information and belief, lead author of the Accused Study, Jacob Hartz, completed his tenue at BCH and HMS in late 2024, Hartz joined Atrium Health Levine Children's Hospital in January 2025 and was subsequently appointed as Assistant Professor at the affiliated Wake Forest University School of Medicine. Verified patient reviews and faculty profiles confirm he was active in this role at Wake Forest/Atrium Health by at least April 2025.

117.   On August 12, 2025, two days before the Accused Study article was published, this Court granted the motion to dismiss the breach of contract claim (Count I) against Defendants Jacob Hartz and Hannah Palfrey (Chiert) and denied the motion to dismiss the breach of contract claim against Defendant BCH (Document 64).

118.   In the Accused Study article, Defendants BCH, HMS, and Jacob Hartz wrote as follows:

Boston Children's Hospital, and the authors personally have been named as defendants in a lawsuit brought by MMAS Research, LLC, which is ongoing, that concerns the attribution of the Morisky Medication Adherence Scale (MMAS). We have received competing demands from MMAS Research, LLC, and another entity, Morisky Medication Adherence Research, LLC, concerning the proper attribution for the MMAS. Because we are uncertain how the MMAS should be attributed and who owns the intellectual property rights, we are providing the attribution that both MMAS Research, LLC, and Morisky Medication Adherence Research, LLC, have demanded that we use.

Exhibit 20.

119.    In fact, Accused Study article author Tiffany Powell-Wiley was never named as a defendant in any lawsuit brought by MMAS Research LLC.

120.    This statement, which is still available online as of the date of hereof, is false in numerous respects, including the following:

a)    The ownership of the Morisky Widget MMAS-8 copyright was affirmed by the U.S. Court of Appeals for the Ninth Circuit in March of 2024;

b)    The ownership of the Morisky Widget MMAS-8 copyright is not being contested by Defendants BCH, HMS, and Jacob Hartz in the instant or any other matter;

c)    The statement, "we are providing the attribution that both MMAS Research, LLC, and Morisky Medication Adherence Research, LLC, have demanded that we use" is false because Plaintiff has not demanded that this statement be used.

d)    On information and belief, in the Accused study article Defendants BCH, HMS, and Jacob Hartz wrote "If the participant was interested, the clinician determined the patient's eligibility based on self-reported adherence [46,47]." Exhibit 20.

121.    The Accused Study article also attributes Plaintiff's Morisky Widget MMAS-8 and Defendant MMAR LLC MMAS-8 test to 'self-reported adherence measure to references [46,47]," which in turn cite the following articles in the medical literature:

46. Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich). May 2008;10(5):348-354. Berlowitz DR, Foy CG, Kazis LE, Bolin L, Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed. [FREE Full text] [CrossRef] [Medline]

47. Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich). May 2008;10(5):348-354. Retracted in: J Clin Hypertens (Greenwich). 2023 Sep;25(9):889. [CrossRef] [Medline]

122.    On information and belief, the cited 2017 NEJM article had this acknowledgement "Use of the Morisky Medication Adherence Scale is protected by U.S. copyright laws. Permission for its use is required; address inquiries to Dr. Morisky at dmorisky@gmail.com.  https://www.nejm.org/doi/full/10. 1056/NEJMoa1611179

123.    Defendants BCH, HMS, and Jacob Hartz published a confusing and meaningless attribution to the Morisky Widget at the end of reference # 46 that followed the citation of  a *New England Journal of Medicine* article authored by Donald Morisky with his formal copyright notification and license, while making a false and humiliating attribution of copyright for the Morisky Widget for MMAS Research and Steven Trubow—making it appear to the reader that a free article on the Morisky Widget was available to users clicking on the words "free full text."



124.   In [...] fact,   readers clicking   that [...] hyperlink   are redirected to a web page, found at   https://europepmc.org/article/_MED/18453793, which indicates that the article was retracted.  A screen shot of the relevant portion of that page is shown at right.

125.   Reference #47 of the Accused study article repeats the citation of the 2008 *Journal of Clinical Hypertension* MMAS-8 validation article.

126.   Specificity in MMAS-8 measures how well the MMAS-8 correctly identifies patients who *do not* have medication non-adherence – essentially the MMAS-8's ability to produce true negative results and avoid false positives (incorrectly labeling patients that are medication adherent as patients who are not medication adherence.

127.   In contrast, sensitivity in MMAS-8 measures its ability to correctly identify people who *are* medication adherent or non-adherent (true positives), minimizing false negatives; a highly sensitive MMAS-8 test can

33

identify which patients are at risk of adverse medical events for medication non-adherence.

128.    In an April 2021 letter to the editor of the *Journal of Clinical Hypertension*, which published the validation article for the MMAS-8 in 2008, Dr. Michael Ortiz wrote, "the MMAS-8 scores may be no more accurate in detecting patients with uncontrolled BP, than tossing a coin to decide." (Exhibit 21)

129.    This led, in September 2023, to the *Journal of Clinical Hypertension* publishing a notice retracting Defendant Donald Morisky's 2008 MMAS-8 validation article due to its grossly overstating the sensitivity (true positive) and specificity (true negative) values in the MMAS-8 medication adherence scale and a lack of confidence in the study's conclusions. Exhibit 22

130.    The false copyright attribution by Defendants BCH, HMS and Jacob Hartz of the Morisky Widget was harmful to the reputation of MMAS Research and Steven Trubow and harmed the company's economic relations and opportunities.

131.    Defendants BCH, HMS and Jacob Hartz defamatory libel caused Steven Trubow significant psychological damage, which in turn has worsened his physical ailments due to the intense stress and social consequences inflicted upon him from this article..

132.    Defendants BCH breached their Morisky Widget perpetual license, by failing to use the agreed upon acknowledgment, "A Morisky Widget license agreement is available from MMAS Research LLC 14725 NE 20th St., Bellevue Washington or strubow@morisky.org." (Exhibit 13)

133.    Defendants' failure to properly attribute the Morisky Widget copyright was willful copyright infringement, because Defendants BCH, HMS, and Jacob Hartz knew it violated the Plaintiff's exclusive rights under the perpetual BCH Morisky Widget license.

Exhibit 13.

134.   On information and belief, to date, Defendants BCH, HMS, and Jacob Hartz scored and coded a total of ten (10) Morisky Widget MMAS-8 tests in the Morisky Widget as shown below in the Morisky Widget.

| 1090 | Boston Children's Hospital | | 10000 | 0 | 12 |
|------|----------------------------|----------------------------------|------|-----------------------|---|
| 1091 | strubow_bch | trubow1+bch@gmail.com | | 2019-10-27T19:45:19.251Z | 3 |
| 1092 | hannahb | hannah.palfrey@cardio.chboston.org | | 2019-11-01T16:31:24.263Z | 3 |
| 1093 | jacobhartz | jacob.hartz@cardio.chboston.org | | 2019-11-01T16:32:12.414Z | 7 |

135.   On information and belief, Defendants BCH, HMS, and Jacob Hartz scored and coded hundreds of Morisky Widget MMAS-8 screeners with  Defendant Hartz derivative MMAS-8 scoring and coding criteria and administered MMAS- tests on low adherent seriously ill patients using the discredited  MMAS-8 scoring and coding criteria which was found to have low specificity and low sensitivity by Dr. Ortiz and the Editor of the Journal of Clinical Hypertension. Exhibits 21, 22.

136.   By this conduct, Defendants BCH not only breached their Morisky Widget license by scoring and coding a modified Morisky Widget MMAS-8 screener and Morisky Widget MMAS-8 diagnostic assessments outside of their Morisky Widget license but more importantly compromised the Accused Study's validity and reliability by using the discredited MMAS-8 scoring and coding criteria which has been removed from the medical literature by the *Journal of Clinical Hypertension*. Exhibits 16, 22.

137.   The MMAS-8 scoring and coding criteria, Defendants BCH and Jacob Hartz used to score and code Morisky Widget MMAS-8 screeners and the discredited MMAS-8 tests in the Accused Study risked misdiagnosing the medication adherence and medication non-adherence of seriously ill patients. Such a misdiagnosis could lead to improper medical

treatment, hospitalization and putting patients at risk of adverse medical events or even death.

138.   Defendants BCH, HMS, and Jacob Hartz had a professional and ethical duty to inform patients and readers of the Accused Study article that the Journal of Clinical Hypertension had retracted the MMAS-8 validation article because they did not have confidence in the validity of the MMAS-8 scale.

139.   The use by Defendants BCH, HMS, and Jacob Hartz of an invalid MMAS-8 scoring and coding criteria that could lead to a misdiagnosis of the patient's medication adherence and increase the risk of patient experiencing adverse medical events, injury or death, could serve as the basis for a medical negligence claim if patients were wrongly diagnosed on MMAS-8 tests and experienced adverse medical events, hospitalization or death.

140.   Two months after the instant case began, the CEO of Defendant MMAR, Phillip Morisky, and Defendant Austin engaged into a correspondence with attorneys for Sanofi, a pharmaceutical firm that executed an agreement with Plaintiff on August 23, 2024 settling breaches of the perpetual Sanofi France Morisky Widget license, curing copyright infringements of the MMAS Digital Source Code, and remedying violations of the trade secret MMAS-8 scoring and coding criteria for the ELIPRO study. (Exhibit 23).

141.   On September 19, 2024, Phillip Morisky, the CEO for Defendant MMAR in the instant matter, wrote an email to Sanofi lawyers Matthew Sachs and Carrie Love with the subject 2298300 MMAS RESEARCH LLC Bank detail confirmation CONFIDENTIAL. Phillip Morisky wrote to Sanofi:

> Matthew and Carrie,
>
> There is currently a Federal copyright case in the state of Washington.
>
> 2:2021cv01301 Morisky v MMAS Research et al.

We allege that Trubow does not own any rights to the MMAS-4 and MMAS-8 scales and that the "widget" is illegally hosting the MMAS scales. We have filed an infringement case in 2019.

I have included our attorney Chris Austin to comment. I am unsure if SANOFI was aware of this but any settlement for alleged use of the actual MMAS Morisky questionnaire can only be authorized by my father Dr Donald Morisky and myself as the company responsible for the rights of the MMAS.

Please put my attorney and myself in touch with the legal representative who is authorizing this.

Philip Morisky, MBA

Chief Optimus

Adherence.

(Exhibit 24).

142.   On October 8, 2024, Phillip Morisky wrote to Defendant Sanofi lawyers Sachs, Love, and Manardo, and copied Defendant Austin. Phillip Morisky wrote "Here is the motion to dismiss for the Boston Case." Phillip Morisky was referring to the instant matter. (Exhibit 24).

143.   On October 8, 2024, Sanofi lawyer Matthew Sachs wrote to Phillip Morisky, Carrie Love, and Susan Manardo and copied Defendant Austin. Sachs wrote, "Thanks for sending (and Chris thanks for sending in your other email). We will review and discuss internally." (Exhibit 24).

144.   On November 26, 2024, Phillip Morisky again wrote to Sanofi lawyers Sachs, Love, and Manardo, and copied Defendant Austin, as follows:

Hi Matthew,

I am checking in to see if Sanofi has made any decision on Trubow matters. I am attaching recent motions in the Boston case as well as additional sanctions in the Washington case which will ultimately prove that Trubow does not own any rights to the MMAS and the widget and that any settlements regarding the MMAS must go through our party. I believe that December 16 is the 90 days, so please let me know prior to.

Happy Thanksgiving, Philip Morisky, MBA.

145.   On June 6, 2025, in Case 2:21-cv-01301-RSM Document 276, the Declaration of Phillip Morisky, the CEO of MMAR LLC was filed in the Western Washington District Court that contained the email correspondence between Phillip Morisky and Sanofi. (Exhibit 24).

146.   More than three years after the "Austin Letter," Defendants MMAR and Austin continued to tortiously interfere with the Plaintiff's Morisky Widget Licenses, confidential settlement agreements and using the pleadings in the instant matter to convince Sanofi to breach the Sanofi Morisky Widget License and recent Settlement Agreement and turn over the financial proceeds to Defendants MMAR and Austin or face a lawsuit.

147.   In order to get Sanofi to honor the Settlement Agreement in light of the interference by Defendants MMAR and Austin, on December 3, 2024 Plaintiff and Sanofi executed an Amendment to the MMAS Research and Sanofi Settlement Agreement that states:

> MMAS and its successors agree to indemnify and hold Sanofi harmless against any and all claims asserted by Donald E. Morisky, Philip Morisky, Marty Morisky, Susan Morisky, Morisky Medication Adherence Research, LLC ("MMAR LLC") (collectively "Morisky"), or any successors, agents or licensees of Donald E. Morisky, Philip Morisky, Marty Morisky, Susan Morisky, MMAR LLC or its Affiliates, regarding use of the Morisky Widget in any manner. In the event that a Morisky Claim is asserted against Sanofi, Sanofi shall control the defense and resolution of the Morisky Claim and SWI shall have the right but not the obligation to hire counsel of its choice.

(Exhibit 25).

### FIRST CAUSE OF ACTION
### BREAK OF CONTRACT
#### (As to Defendants BCH, Donald Morisky and MMAR)

148.   MMAS Research re-alleges each allegation contained in the preceding paragraphs.

149.   This claim for relief for breach of contract is established by the prima facie

elements of (1) existence of a valid contractual obligation, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages to plaintiff.

150.    A contractual obligation was established by the execution of a license agreement between Defendants BCH and Plaintiff, (the License Agreement), which License Agreement permitted use of the Morisky Widget under specific conditions.

151.    Plaintiff performed or was willing to perform its obligations under the License Agreement.

152.    Under the License Agreement, BCH as licensee is required to score and code Morisky Widget MMAS-8 tests only with Morisky Widget. In the License Agreement, BCH and MMAS mutually agreed that if "BCH divulges Morisky Widget scoring and coding criteria it will be considered a breach of the Morisky Widget license and MMAS [Research] will have the right to suspend or terminate the Agreement."

153.    During Defendant's BCH training and certification on the Morisky Widget Defendant, BCH created a condition and medication specific Morisky Widget MMAS-8 test. BCH later modified their Morisky Widget MMAS-8 condition and medication specific test into a Morisky Widget MMAS-8 screener with its own MMAS-8 scoring and coding criteria which was used in the Accused Study enrollment process too select patients who only answered questions that showed low adherence. BCH never had authorization from Plaintiff to create a derivative Morisky Widget MMAS-8 Screener which breached their Morisky Widget licenses requirement that changes or any modifications to the wording, phrasing or scoring of the MMAS, require certification on the Morisky Widget editor and translator.

154.    Defendant BCH breached their Morisky Widget License Agreement "by using a paper their Morisky Widget MMAS-8 screener on paper questionnaire without the Plaintiff's

permission.

155.   Defendant BCH breached their Morisky Widget License Agreement by scoring and coding the unauthorized Morisky Widget MMAS-8 screener outside of the Morisky Widget with their own derivative MMAS-8 scoring and coding criteria.

156.   Defendant BCH breached their Morisky Widget License Agreement by publishing the unauthorized Morisky Widget MMAS-8 screener derivative MMAS-8 scoring and coding criteria on the Clinical Trials.gov website and in the June 2025 Accused Study Article.

157.   Defendant BCH breached their Morisky Widget License Agreement by failing to publish the required acknowledgement of the MMAS Research as the owner and licensor of the Morisky Widget (including copyright and the trademark notices) per the NIH ClinicalTrials.Gov website and in the acknowledgement for the June 2025 Accused Study article as was required in Defendant BCH Morisky Widget License in Appendix 1.

158.   BCH has breached their Morisky Widget license in violation of the foregoing conditions by the following actions and failures to act and has accordingly violated those obligations. None of the publications by BCH that reference the MMAS tests were published with the proper attribution notices in Appendix 1 of Defendant's Morisky Widget License Agreement.

159.   BCH has breached their Morisky Widget License that they agreed was non-transferable from BCH and transferred Morisky Widget MMAS-8 tests to Defendants Donald Morisky and MMAR LLC.

160.   For at least these acts, Defendants have willfully breached the License Agreement, and MMAS Research is entitled to damages determined at trial and specific relief

for the unauthorized modification and disclosure of Morisky Widget MMAS-8 scoring and coding criteria.

161.   A valid contractual obligation was established by the execution of a settlement agreement, the CR2A between Defendants Donald Morisky and MMAR LLC and Plaintiff MMAS Research LLC in December 2020. The CR2A settlement agreement constitutes a binding contract, under applicable law, enforceable in any Court in the United States.

162.   Plaintiff performed or was willing to perform its obligations under the CR2A settlement agreement.

163.   Defendants Donald Morisky and MMAR LLC breached the CR2A by failing to meet their obligations under Section 2 #7 which stated "The Morisky Party and MMAR agree to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect." On page 29 of the CR2A, Boston Children's Hospital was listed as having a Morisky Widget License before the execution of the CR2A, but Defendants Donald Morisky, MMAR LLC and Austin induced BCH under the threat of a copyright infringement lawsuit to terminate their Morisky Widget license and re-license Morisky Widget MMAS-8 tests to Donald Morisky and MMAR LLC.

164.   Defendants Donald Morisky and MMAR LLC breached the CR2A by failing to meet their obligations under Section 2 #14 which stated Each Party covenants and agrees to not make any public defamatory statement about any party to this Agreement by posting defamatory statements about Steven Trubow and MMAS Research LLC    on the www.moriskyscale.com website, sending the "Austin Letter" with defamatory statement about Steven Trubow and MMAS Research LLC to Morisky Widget Licensees including Boston Children's Hospital, and as the Plaintiff in a lawsuit against MMAS Research and Steven

Trubow,  submitting correspondence with defamatory  statements about Steven Trubow and MMAS Research LLC to the Western Washington District Court in a pleading.

165.   Defendants Donald Morisky and MMAR LLC breached the CR2A by failing to meet their obligations under Section 2 #7 by failing to get trained and certified in the use of the Morisky Widget so that they may operate and maintain it as currently constituted and service     licensees     as     presently     done     by     the     Trubow Party. Despite several failed efforts to train and certify Donald Morisky and MMAR to service Morisky Widget licensees, as a result of this breach, Plaintiff was required by the terms of their 200+ perpetual Morisky Widget Licenses including BCH, to service their Morisky Widget Licensees to the present time.

166.   For at least these acts, Defendants Donald Morisky and MMAR have willfully breached the CR2A Agreement, and MMAS Research and Steven Trubow are entitled to damages determined at trial and specific relief for inducing hundreds of Morisky Widget licensees to terminate their licenses without cause.

## SECOND CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101, *ET SEQ.*
### (*As to Defendants BCH, Hartz, Harvard Medical School*)

167.  MMAS Research realleges each allegation contained in the preceding paragraphs.

168.   At all times relevant hereto, MMAS Research was the owner of all copyright rights or rights to assert copyright claims for the MMAS Widget Source Code.

169.   MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and all other laws governing copyright. By reason of the copyright infringements described below, Plaintiff is entitled to recover from Defendants statutory

damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

170.    Defendants BCH, Hartz, and Harvard Medical School willfully violated 17 U.S.C. §501, *et seq.*

171.    The claims by Defendants BCH, Harvard Medical School and Jacob Hartz to have not infringed on the Morisky Widget copyright because they had a license and administered the 2006 MMAS-8 copyright are proved false by the MMAS-8 screener and test they wrote in the Morisky Widget test editor as well as the Nevada District Court's decision that the 2006 MMAS-8 test is not copyright protectable subject matter.

172.    MMAS Research LLC granted BCH and Harvard Medical School a limited-use license to use the copyrighted Morisky Widget MMAS-8 solely if they were scored and coded in the Morisky Widget by clinicians who were trained and certified on the Morisky Widget.

173.    BCH, Harvard Medical School and Hartz administered, scored and coded hundreds of unauthorized Morisky Widget MMAS-8 Screener tests with an unauthorized derivative MMAS-8 scoring and coding criteria developed by Jacob Hartz and BCH and Harvard Medical School and reported the derivative screener and scoring and coding criteria on the United States Library of Medicine National Institutes of Health ClinicalTrials.gov website.

174.    BCH and Harvard Medical School administered, scored and coded Morisky Widget MMAS-8 paper tests outside the Morisky Widget with the discredited 2006 MMAS-8 scoring and coding criteria and reported the results in the June 2025 Accused Study article.

175.    Defendants BCH, MMAR and Jacob Hartz willfully committed hundreds of infringements of the MMAS Widget Source Code including in 2023, 2024, and 2025..

176.   Because of the copyright infringements described above, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

### THIRD CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C.A. § 1202, *et seq.*
### (*As to Defendants MMAR, Donald Morisky, and Austin*)

177.   MMAS Research realleges each allegation contained in the preceding paragraphs.

178.   In the December 2020 CR2A Settlement, Defendants Donald Morisky and MMAR recognized the Plaintiff owner the MMAS Widget Source Code.

179.   Defendant Austin had actual knowledge of this recognition.

180.   Defendants Donald Morisky and MMAR willfully committed copyright infringements by falsely claiming ownership of the MMAS Widget Source Code and putting their MMAS-8 copyright notice on Morisky Widget MMAS-8 tests on the United States Library of Medicine National Institutes of Health ClinicalTrials.gov website.

181.   Defendant Austin, in the worldwide distributed "Austin Letter" willfully committed copyright infringement by falsely claiming ownership of the MMAS Widget Source Code, providing copyright management information that is false with the intent to "induce, enable, facilitate, or conceal infringement" in violation of 17 U.S.C.A. § 1202 with respect to the identity of the copyright owner, the author of the work, or terms and conditions for use of the work.

182.   Defendant Austin has continued to publish to third persons the same assertions regarding copyright infringement as in the Austin Letter through at least 2025.

## FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (*As to Defendants Donald Morisky, Austin and MMAR*)

183.  MMAS Research realleges each allegation contained in the preceding paragraphs.

184.  At all times relevant hereto, MMAS Research was the owner of all rights to assert claims for the Morisky Widget License Contract

185.  MMAS Research claims Donald Morisky, MMAR LLC and Austin intentionally interfered with the Morisky Widget license contract between Plaintiff and BCH.

186.  In December 2020, Morisky, MMAR LLC, Trubow, and MMAS Research LLC dismissed all previous complaints against each other with prejudice and signed a preliminary settlement agreement, CR2A. This agreement was meant to protect Plaintiff from Morisky interfering with existing Morisky Widget licenses.

187.  Despite these agreements, Morisky and MMAR LLC dishonored his legal obligations under the CR2A and tortiously interfered with Plaintiff's 200 CR2A Morisky Widget licenses, including Boston Children's Hospital's 2019 Morisky Widget license which Morisky himself authorized in 2018.

188.  The CR2A, through its provisions, was an enforceable contract that precluded Morisky from interfering with the CR2A Exhibit 4 Morisky Widget licenses, including BCH.

189.  Morisky and MMAR were aware of their obligation under the CR2A terms and consented to memorialize the expectations in Exhibit 4 to the CR2A.

190.  Defendants Morisky, MMAR LLC and Austin knowingly induced BCH to alter the copyright management information (CMI) in the BCH Clinical Trials Report, changing the attribution from MMAS Research's copyrighted Morisky Widget MMAS-8 Test to

Defendant Morisky's original MMAS-8 Test.

191.  This change in attribution terminated the contractual relationship between MMAS Research and BCH, and it misrepresented the Morisky Widget copyright ownership rights in the public domain, thereby causing confusion and damage to MMAS Research's reputation and contractual rights.

192.  As evidenced by the allegations and attached Exhibits, Defendants Morisky, MMAR and Austin through the Austin Letter and their correspondence with Sanofi have repeatedly and intentionally interfered with Trubow and MMAS Research's ability to perform the agreed terms of the CR2A and to effectuate settlements and faithfully execute Morisky Widget licenses provided by the CR2A. This interference has resulted in MMAS Research losing expected revenue and suffering damage to litigation in the Western Washington District Court, its business, scientific, and medical reputation and contractual relationships, with BCH, Sanofi, and over two hundred Morisky Widget licensees.

193.  Morisky, MMAR and Austin have tortiously interfered for an improper purpose, to financially gain from the termination of Morisky Widget licenses, settlement agreement and litigation.

194.  Trubow and MMAS Research have lost expected revenue resulting from the intentional tortious actions of Morisky MMAR, and Austin in a sum to be proven at trial, but in a sum no less than $10,000,000.

195.  To the contrary, instead of meeting "*all ongoing obligations and responsibilities under all Morisky Widget License Agreements,*" Donald Morisky and MMAR have tortiously interfered with Plaintiff's obligations to service, train and otherwise support BCH Morisky Widget license and other Morisky Widget licensees under

the CR2A.

196.    Such interference has not only been entirely their obligations but has been directed to cause harm to Plaintiff. These tortious actions have included:

a)  Attempts to destroy the Morisky Widget;

b)  Interfere with existing licenses and sub-licenses, settlement agreements and litigation concerning the Morisky Widget.

c)  Direct threats to existing licenses;

d)  Postings on www.moriskyscale.com and other websites that delivered general threats concerning use of the Morisky Widget; and the distribution of the Austin Letter threatening BCH and other Morisky Widget Licensees with copyright infringement lawsuits if they continued to use the Morisky Widget (Exhibit 10); and

e)  Replacing attribution to the Morisky Widget and MMAS in publications as evidenced by the replacement of the BCH Morisky Widget License with an MMAR License on the United States Library of Medicine National Institutes of Health, ClinicalTrials.gov website.

197.    The tortious actions by Defendants Donald Morisky, MMAR, and Austin have caused untold damage to Plaintiff, have destroyed ongoing efforts to support the licensees under the CR2A and have damaged the efforts to provide access to the significant benefits of the Morisky Widget to the medical community and to public health.

199.    Plaintiff seeks compensatory damages, including lost profits, out-of-pocket losses expectation damage, and consequential damages.

200.    Plaintiff seeks tort-specific damages for the specific harm caused by Defendants Austin, Morisky and MMAR including   reputational damage, compensation for harm to MMAS Research business's goodwill and brand reputation in the medical, scientific and pharmaceutical communities, emotional distress damages to help Plaintiff recover from the psychological, physical, and emotional impact the interference has had on the 75 years old

Plaintiff, Steven Trubow.

201.   Plaintiff seeks Attorneys' Fees because the willful and malicious tortious interference of Defendants Austin, Morisky and MMAR forced the plaintiff to sue defendant BCH to protect their rights under the BCH Morisky Widget license.

202.   Plaintiff seeks temporary, preliminary, and permanent injunctive relief from Defendants BCH and Jacob Hartz to stop them from publishing any future articles, reports, or presentations that use MMAS-8 results.

203.   Plaintiff seeks temporary, preliminary, and permanent injunctive relief from Defendants Austin, Morisky and MMAR to stop them from tortiously interfering with any Morisky Widget licensee including those licensees listed in Exhibit IV of the CR2A agreement.

## FIFTH CAUSE OF ACTION
## DEFAMATION (LIBEL)
### (A*s to Defendants BCH, Harvard Medical School, Jacob Hartz, Donald Morisky, MMAR LLC, and Austin*)

204.   MMAS Research realleges each allegation contained in the preceding paragraphs as though fully set forth herein.

205.   Defendants BCH entered into a License Agreement with Plaintiff MMAS Research specifically agreeing and acknowledging Plaintiff as the owner of the MMAS-8 tests that were ultimately used in the Accused Study. (Exhibit 13)

206.   Defendants BCH entered into a License Agreement with Plaintiff MMAS Research specifically agreeing The footnote below is required in all articles, presentations, web postings, reports and submitted manuscripts, and on the first table or figure which present the Morisky Widget MMAS results or in the Acknowledgment Section of manuscripts submitted for publication: A Morisky Widget license agreement is available from MMAS

Research LLC 14725 NE 20th St., Bellevue Washington or strubow@morisky.org.

207.   Defendants BCH entered into a License Agreement with Plaintiff MMAS Research specifically agreeing that BCH must submit to MMAS all presentations and manuscripts that are being considered for abstracts/poster presentations or publication to make certain that all copyright and trademark requirements are included in all manuscripts submitted for publication.

208.   On information and belief, as of 2026, the ClinicalTrials.gov website is an essential, high-traffic resource for the global scientific and medical communities. It serves as the world's largest public clinical research registry, maintaining records for over 560,000 studies across 225 countries.

209.   On information and belief, medical journal articles from JMIR Publications, published by institutions like BCH, Harvard Medical School (HMS), and the National Institutes of Health (NIH) are considered top-tier, highly influential resources that are standard reading for global medical professionals.

210.   As alleged above, on July 4, 2022, Defendants BCH and Jacob Hartz responded to Trubow (with cc to Hannah Palfrey) stating that BCH had updated the BCH Clinical Trials Article for NCT04458766, as shown below, listing MMAS Research LLC as a collaborator on the study.

211.   As alleged above, on January 10, 2023, Defendants BCH and Jacob Hartz removed the MMAS Research notification from ClinicalTrials.gov without the Plaintiff's knowledge or permission. BCH updated the clinicaltrials.gov website for NCT04458766 with a notification that the MMAS-8 was used with permission from Dr. Morisky and licensed by MMAR LLC.

212.   As alleged above, on January 24, 2024, Defendants BCH and Jacob Hartz again updated the ClinicalTrials.gov website for NCT04458766 and included the following notification, "The MMAS-8 scale, content, name and trademarks are protected by US Copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR LLC."

213.   The removal of Plaintiff MMAS Research LLC's attributions on the BHS study ClinicalTrials.gov website and its replacement by Donald Morisky's and MMAR LLC copyright notification and license on a platform as public and critical as ClinicalTrials.gov was defamatory and damaging because attribution in such contexts is prime academic and professional currency.

214.   Removing MMAS Research from ClinicalTrials.gov suggested a lack of ownership in MMAS-8 copyright and in the legitimacy of BCH Morisky Widget license.

215.   Defendants' conduct created a perception among healthcare professionals and researchers of misconduct on the part of the Plaintiff.

216.   On information and belief, on or about August 14, 2025, Defendants BCH, HMS, and Hartz published the "Accused Study" which included libelous and defamatory false statements of fact concerning MMAS Research and its CEO, Steven Trubow. (Exhibit 20)

217.   In the Accused Study article, Defendants BCH, HMS, and Jacob Hartz wrote as follows:

> Boston Children's Hospital, and the authors personally have been named as defendants in a lawsuit brought by MMAS Research, LLC, which is ongoing, that concerns the attribution of the Morisky Medication Adherence Scale (MMAS). We have received competing demands from MMAS Research, LLC, and another entity, Morisky Medication Adherence Research, LLC, concerning the proper attribution for the MMAS. Because we are uncertain how the MMAS should be attributed and who owns the intellectual property rights.

Exhibit 20.

218.   In fact, Accused Study article author Tiffany Powell-Wiley was never named as a defendant in any lawsuit brought by MMAS Research LLC.

219.   This statement, which is still available online as of the date of hereof, is false in numerous respects, including the following:

a)   The ownership of the Morisky Widget MMAS-8 copyright was affirmed by the U.S. Court of Appeals for the Ninth Circuit in March of 2024;

b)   The ownership of the Morisky Widget MMAS-8 copyright is not being contested by Defendants BCH, HMS, and Jacob Hartz in the instant or any other matter;

c)   The statement, "we are providing the attribution that both MMAS Research, LLC, and Morisky Medication Adherence Research, LLC, have demanded that we use" is false because Plaintiff has not demanded that this statement be used;

d)   On information and belief, in the Accused study article Defendants BCH, HMS, and Jacob Hartz wrote "If the participant was interested, the clinician determined the patient's eligibility based on self-reported adherence [46,47]." Exhibit 20

220.   The Accused Study article also attributes Plaintiff's Morisky Widget MMAS-8 and Defendant MMAR LLC MMAS-8 test to 'self-reported adherence measure to references [46,47]," which in turn cite the following articles in the medical literature:

46. Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich). May 2008;10(5):348-354. Berlowitz DR, Foy CG, Kazis LE, Bolin L, Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed. [FREE Full text] [CrossRef] [Medline]

47. Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich). May 2008;10(5):348-354. Retracted in: J Clin Hypertens (Greenwich). 2023 Sep;25(9):889. [CrossRef] [Medline]

221.   On information and belief, the cited 2017 NEJM article had this acknowledgement "Use of the Morisky Medication Adherence Scale is protected by U.S. copyright laws. Permission for its use is required; address inquiries to Dr. Morisky at dmorisky@gmail.com. https://www.nejm.org/doi/full/10. 1056/NEJMoa1611179

222.   Defendants BCH, HMS, and Jacob Hartz published a confusing and meaningless attribution to the Morisky Widget at the end of reference # 46 that followed the citation of a *New England Journal of Medicine* article authored by Donald Morisky with his formal copyright notification and license, while making a false and humiliating attribution of copyright for the Morisky Widget for MMAS Research and Steven Trubow—making it appear to the reader that a free article on the Morisky Widget was available to users clicking on the words "free full text."



223.   In fact, readers clicking that hyperlink are redirected to a web page, found at https://europepmc.org/article/ MED/18453793, which indicates that the article was retracted. A screen shot of the relevant portion of that page is shown at right.

224.   Reference #47 of the Accused study article repeats the citation of the 2008 *Journal of Clinical Hypertension* MMAS-8 validation article.

225.   Specificity in MMAS-8 measures how well the MMAS-8 correctly identifies patients who *do not* have medication non-adherence – essentially the MMAS-8's ability to

produce true negative results and avoid false positives (incorrectly labeling patients that are medication adherent as patients who are not medication adherence.

226.   In contrast, sensitivity in MMAS-8 measures its ability to correctly identify people who *are* medication adherent or non-adherent (true positives), minimizing false negatives; a highly sensitive MMAS-8 test can identify which patients are at risk of adverse medical events for medication non-adherence.

227.   In an April 2021 letter to the editor of the *Journal of Clinical Hypertension*, which published the validation article for the MMAS-8 in 2008, Dr. Michael Ortiz wrote, "the MMAS-8 scores may be no more accurate in detecting patients with uncontrolled BP, than tossing a coin to decide." (Exhibit 21).

228.   This led, in September 2023, to the *Journal of Clinical Hypertension* publishing a notice retracting Defendant Donald Morisky's 2008 MMAS-8 validation article due to its grossly overstating the sensitivity (true positive) and specificity (true negative) values in the MMAS-8 medication adherence scale and a lack of confidence in the study's conclusions. Exhibit 22.

229.   The false copyright attribution by Defendants BCH, HMS and Jacob Hartz of the Morisky Widget was harmful to the reputation of MMAS Research and harmed its economic relations and opportunities.

230.   By submitting the Accused Study for publication and approving its content, Defendants BCH, HMS, and Hartz published the above-described false statements of fact about MMAS Research to innumerable third parties.

231.   In addition, as alleged above at ¶¶126–130, Defendants BCH, HMS, and Hartz published within the reference section of the Accused Study a confusing and misleading

attribution entry immediately following a New England Journal of Medicine citation, which read: "Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed. [FREE Full text] [doi: 10.1111/j.1751-7176.2008.07572.x] [Medline: 18453793]." (Exhibit 20).

232.   On information and belief, this "FREE Full text" attribution falsely suggested to readers that Plaintiff and Trubow had improperly claimed or manipulated copyright attribution or were offering the Morisky Widget MMAS content for free in a manner inconsistent with legitimate licensing, thereby further defaming MMAS Research and Trubow in the eyes of readers.

233.   At all relevant times, MMAS Research and Trubow were, and are, private figures for purposes of Massachusetts defamation law. On information and belief, Defendants BCH, HMS, and Hartz acted at least negligently, and in reckless disregard of the truth, in publishing the defamatory statements described above.

234.   Defendants knew of, or were reckless in disregarding, the Ninth Circuit's March 13, 2024 Memorandum affirming MMAS Research as the registered owner of the Morisky Widget, the terms of the BCH Morisky Widget license, and the procedural posture of this and related                                   litigation.                        Despite                                this knowledge, Defendants chose to characterize the ownership and attribution of the Morisky intellectual property as "uncertain" and to imply that MMAS Research and Trubow were engaged in improper or illegitimate conduct, without undertaking reasonable care to ensure that these statements were accurate.

235.   The defamatory statements in the Accused Study were not made in pleadings, motions, or other filings in this or any other judicial proceeding but instead were made in an "extrajudicial" journal article published in JMIR. No absolute or qualified privilege applies to

shield Defendants from liability for these statements.

236.   On information and belief, in the December 2020 CR2A settlement agreement in Section 2, #14, p.8, Donald Morisky, MMAR LLC, and Plaintiff covenants and agrees to not make any public defamatory statement about any party to this Agreement. (Exhibit 5).

237.   On information belief, the Austin letter which was sent to over 200 Morisky Widget licensees including Defendant BCH, and broadcast to anyone in the world with access to the internet, contained false and malicious defamatory statements about MMAS Research LLC and Steven Trubow whose reputation, as the principal of MMAS Research LLC, bears on its reputation as well.

238.   As alleged above, Plaintiff executed a confidential settlement agreement with Sanofi, a pharmaceutical firm to settle breaches of their perpetual Sanofi France Morisky Widget license, cure copyright infringements of the MMAS Widget Source Code, and remedy violations of the trade secret Morisky Widget MMAS-8 scoring and coding criteria for the ELIPRO study. (Exhibit 23)

239.   On information and belief, Defendants MMAR and Austin used Defendant BCH Motion to Dismiss pleadings from the instant matter as well as false factual statements outside the pleadings to persuade Sanofi that Plaintiff was not the owner of the Morisky Widget copyright and to cancel or rescind the settlement agreement. (Exhibit 24)

240.   On information and belief, Defendants MMAR and Austin acted with malice, aiming to harm MMAS Research LLC and Steven Trubow's reputation and credibility in an unsuccessful attempt to get Sanofi to turn over a payment of $115,000 to Defendants MMAR and Austin rather than present legal arguments in the public record and allow the matter to be decided on the merits.

241.   On information and belief defamation hinges on proving a false statement of fact, publication of that fact to a third party, and actual harm, elements that negate litigation privilege.

242.   On information and belief, Defendants MMAR and Austin's presented false information to Sanofi, twisted the facts, added lies, to damage MMAS Research LLC and Steven Trubow business and reputation and take over MMAS Research LLC $115,000 payment from Sanofi.

243.   On information and belief, in order to receive the $115,000 payment due MMAS Research, Plaintiff had to amend the  settlement agreement with the condition that MMAS Research and its successors agreed to indemnify and hold Sanofi harmless against any and all claims asserted by Donald E. Morisky, Philip Morisky, Marty Morisky, Susan Morisky, MMAR LL, or any successors, agents or licensees of Donald E. Morisky, Philip Morisky, Marty Morisky, Susan Morisky, MMAR LLC or its Affiliates, regarding use of the Morisky Widget in any manner. (Exhibit 25)

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in their favor and against Defendants as follows:

A.    For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff MMAS Research's copyright in the Morisky Widget, in accordance with proof at trial.

B.    For statutory damages for copyright infringement and/or willful copyright infringement by Defendants.

C.    For issuance of preliminary and permanent injunctive relief against

Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from: using the Widget Tests or the Morisky Widget copyrighted work until a license is obtained, including the maintenance on websites, posted on the Internet, or in any publication, articles, and reports described herein, or any such articles, publication, and reports in the future that use or reference the Widget Tests, MMAS-8, or the Morisky Widget;

D.      Order that Defendants file with this Court and serve upon Plaintiffs within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply.

E.      For costs of suit incurred.

F.      For attorneys' fees pursuant to the Copyright Act and as otherwise provided by law.

G.      For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law;

H.      For injunctive relief enjoining Defendant Morisky from further violations of the DMCA with respect to the Morisky Widget MMAS-8 Test;

I.      For statutory damages for the willful violation of the DMCA, in an amount to be determined at trial;

J.      For MMAS Research's costs and attorneys' fees incurred herein;

K.      For such other and further relief as the Court deems just and proper; and

L.      For such other and further relief, the Court deems just and proper.

Respectfully submitted this _____ day of _____, 2026.

                                        Respectfully submitted,

                                        MMAS RESEARCH LLC,
                                        By its Attorneys,


                                        _____
                                        A. Neil Hartzell, BBO #544752
                                        Freeman Mathis & Gary, LLP
                                        One Boston Place
                                        201 Washington Street, Suite 2200
                                        Boston, MA 02108
                                        Tel: (617) 963-5966
                                        neil.hartzell@fmglaw.com


                                        _____
                                        Ronald D. Coleman (*pro hac vice*)
                                        COLEMAN LAW FIRM, PC
                                        50 Park Place, Suite 1105
                                        Newark, NJ 07102
                                        973-264-9611
                                        rcoleman@colemanlaw-pc.com

                                        *Attorneys for Plaintiff*
                                        *MMAS Research LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this __ day of January 2026, I caused a true and correct copy of the foregoing to be served via electronic mail upon all counsel of record in this case.

_____

A. Neil Hartzell