UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MMAS RESEARCH, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, et al.,<br><br>        Defendants | Civ. A. No. 1:24-cv-12108-DJC |

**THE CHILDREN'S HOSPITAL AND JACOB HARTZ'S OPPOSITION TO
MMAS RESEARCH LLC'S MOTION TO AMEND**

The Hospital and Dr. Hartz oppose MMAS Research's motion for leave to file a second amended complaint. The copyright claim should be disallowed as a matter of discretion. MMAS Research asserted the claim in its original complaint and its first amended complaint but then, on the verge of having to argue a motion to dismiss the claim, it formally withdrew it in open court. Having made that strategic choice, MMAS Research should not be allowed to reassert the claim. Both of the claims MMAS wants to assert against them—the copyright claim, and a claim for defamation based on a 2025 article Dr. Hartz and others wrote—are also futile and thus fail to meet the liberal standard of Rule 15.

FACTS

Dr. Morisky, Steven Trubow, and Dustin Mahachi created a software program called the "Morisky Widget" in 2016 and 2017. (¶ 27).[1] Dr. Morisky contributed his MMAS-4 and MMAS-8 tests, while Trubow contributed "predictive analytic risk assessment software." (¶ 29). Dr.

---

[1] References to paragraph numbers, without an ECF number, are references to the proposed second amended complaint.

1

Morisky had created the MMAS-8 in 2006 and registered his copyright in it in 2018.[2] The Widget allows users to convert "static questions" from the MMAS-8 into "dynamic medication or condition specific questions" by inputting the relevant medication and condition into the Widget. (¶¶ 30, 90). The Widget takes that input and outputs eight questions to be asked. (¶¶ 81, 84-87).

Dr. Jacob Hartz, then a Hospital employee, administered a paper version of the MMAS-8 to patients. (¶¶ 91, 97-98). Exhibit 17 of the proposed second amended complaint is the version the Hospital used, and paragraph 88 reproduces the 2006 Morisky version. The Court can see for itself that the questions are essentially identical. For example, Morisky's question 1 was: "Do you sometimes forget to take your <health condition> pills?" The Hospital's question 1 was: "Do you sometimes forget to take your prescription cholesterol medication?" A table showing all the differences in the text of the questions is attached as Exhibit 2. The proposed second amended complaint alleges that the screener test was "referenced" in BCH's report to the ClinicalTrials.gov website and reported the results of the screener test a document available on the ClinicalTrials.gov website. (¶¶ 105, 173-174). But it does not allege that a copy of the screener was sent or posted to the ClinicalTrials.gov website.

On August 14, 2025, the Hospital published an article titled, "In the Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence to Statins and Blood Pressure-Lowering Medication in Adolescents with Familial Hypercholesterolemia or Hypertension:

---

[2] A true copy of the certificate of registration for the "Morisky Medication Adherence Scale (8-item)," registration no. TX 8-623-533, is attached as Exhibit 1. The Court may take judicial notice of the copyright registration. *See DeCastro v. Abrams,* No. 1:22-cv-11421-ABD, 2023 U.S. Dist. LEXIS 118575, at *8 n.4 (D. Mass. July 11, 2023) (citing *Island Software & Comput. Serv. v. Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir. 2005)).

Protocol for a Pre-Post Cohort Study". (¶ 112 & Ex. 20).[3] The Article included the following "Acknowledgments" statement:

> Boston Children's Hospital and the authors personally have been named as defendants in a lawsuit brought by MMAS Research, LLC, which is ongoing, that concerns the attribution of the Morisky Medication Adherence Scale (MMAS). We have received competing demands from MMAS Research LLC, and another entity, Morisky Medication Adherence Research, LLC, concerning the proper attribution for the MMAS. Because we are uncertain how the MMAS should be attributed and who owns the intellectual property rights, we are providing the attribution that both MMAS Research LLC, and Morisky Medication Adherence Research, LLC, have demanded that we use.

(¶ 18 & Ex. 20 at p. 7).

The August 2025 article also refers to an article from 2008 titled "Predictive validity of a medication adherence measure in an outpatient setting" which was co-authored by Dr. Morisky and published by the Journal of Clinical Hypertension. The August 2025 article's reference to the 2008 article includes the following: "Morisky Widget MMAS, Steven Trubow, MMAS Research LLC…" (¶ 121). The reference also includes a "[FREE Full text]" link that, MMAS Research alleges, brings a reader to a free copy of the 2008 article. (¶ 123). The 2008 article was retracted after Dr. Michael Ortiz write a letter to the editor in April 2021 stating that "the MMAS-8 scores may be no more accurate in detecting patients with uncontrolled BP, than tossing a coin to decide." (¶¶ 125-129). The proposed second amended complaint alleges that the mention of MMAS Research and Trubow harmed their economic relations and opportunities, and "caused Steven Trubow significant physiological damage, which in turn has worsened his physical ailments due to the intense stress and social consequences inflicted upon him from this article." (¶¶ 130-131).

---

[3] This allegation misunderstands how scientific publication works. The Hospital did not "publish" the paper; the authors did, or rather, they wrote it and submitted it for publication. But nothing turns on this now.

ARGUMENT

Leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). But the Court can deny leave for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant" or "undue prejudice to the opposing party by virtue of allowance of the amendment," as well as futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Court should consider the totality of the circumstances in exercising its discretion. *See Quaker State Oil Refining Corp. v. Garrity Oil Co.,* 884 F.2d 1510, 1517 (1st Cir. 1989).

**A. The Court should not allow the amendment to the extent it adds a copyright infringement claim.**

**1. MMAS Research should not be allowed to amend its complaint to re-add a claim that it brought, then appeared to drop, then confirmed to the Court that it had dropped during the hearing on the motion to dismiss, after the Hospital had briefed it and was prepared to argue it.**

MMAS Research brought the copyright infringement claim when it first brought its lawsuit a year and a half ago, along with two other claims carrying the possibility of statutory damages and attorney's fees: a claim under the Digital Millennium Copyright Act and a claim under the Defending Trade Secrets Act. (ECF 1.). The Hospital moved to dismiss the complaint. MMAS amended its complaint, dropping the count for copyright infringement but continuing to allege copyright infringement in the body of the amended pleading (ECF 24 at ¶ 105). The Hospital, unsure whether the claim was in or out, again briefed it when it moved to dismiss. MMAS Research's opposition argued that "MMAS has adequately alleged that it owns the copyrights at issue and that Defendants' conduct constitutes copyright infringement," though its only argument on the point was a citation to a declaration that it submitted with its opposition, which the Court rightly disregarded. (ECF 28 at 15; ECF 64 at 3 n.1). So the Hospital prepared to argue the issue. But at the hearing on the motion to dismiss, counsel told the Court that his

4

client was not pursuing the claim, and so it was not argued and the Court did not decide it. (ECF 51 at 7:22-8:6). The Court dismissed the other statutory claims, leaving only a breach of contract claim against the Hospital—a claim that the Hospital argued, unsuccessfully at the Rule 12 stage, did not support any plausible claim for actual damages.

Rule 15 gives plaintiffs the right to one "do-over" in the face of a motion to dismiss, even though that can result in more cost and effort for the defendant. Under Rule 15(a)(1)(B), a plaintiff can amend a complaint as of right once, within 21 days after service of the motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). MMAS Research took advantage of the "do-over." It amended its complaint significantly after the Hospital first moved to dismiss it. Although it omitted a numbered count for copyright infringement, it alleged copyright infringement (ECF 24 at ¶ 105) and sought "statutory damages for copyright infringement and/or willful copyright infringement" (*Id*. at 30). But on the day of the argument, after the Hospital had to brief the issue again and prepare to argue it, MMAS Research made it clear that it had withdrawn the claim. Now it wants another "do-over." It wants the Hospital to have to brief and argue the issues again.

There is nothing of importance in the proposed second amended complaint about copyright infringement that could not have been pleaded in the first amended complaint or in the original complaint. MMAS Research says its proposed amendment contains "additional factual allegations reflecting significant developments including the Ninth Circuit's March 2024 ruling," which bears on ownership of the Morisky Widget copyright. Leaving aside the Ninth Circuit decision's lack of preclusive effect (because the Hospital was not a party to the case) and the procedural posture of the case—an appeal from a motion to dismiss that affirmed the dismissal of MMAS Research's claims—the decision is not new: MMAS Research made allegations about it in the First Amended Complaint, filed in October 2024. (ECF 24 ¶ 36). And the Hospital has

5

always conceded, for purposes of its motions to dismiss only, that MMAS Research owns the Widget copyright. (ECF 26 at 9 n.4). MMAS Research also points to a 2025 district court decision in Nevada holding that the copyright to MMAS-8 is invalid. But the validity or invalidity of that copyright is irrelevant to the issue of infringement in this case, and as we show below, if anything, its invalidity strengthens rather than weakens the Hospital's case.

The case is like *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020), in relevant respects. Sonner had two claims: a claim for damages and an equitable claim for restitution. She voluntarily abandoned the claim for damages for a strategic reason: she wanted the claim tried to the court and not to a jury. But the strategy backfired, because the court dismissed the equitable claim. She then sought to amend the complaint to re-add the claim she had dropped. The lower court denied the motion to reallege the abandoned claim, noting that allowing it would be unfair and prejudicial and an "abuse of the court system." *Id.* at 838. The Ninth Circuit affirmed, noting that Sonner had dropped the claim strategically and citing the *Foman* factors. *See id.* at 845.

MMAS Research likewise had a good strategic reason to drop its claim. It had other theories that carried with them the possibility of statutory damages and attorney's fees, which are critical to giving the case any *in terrorem* value. And it could hardly expect the hearing to go well if it was forced to argue, as its prior lawyers had argued in their opposition to the motion to dismiss, that the reason the copyright claim should not be dismissed for failure to state a claim was to be found only in an improperly submitted declaration. But when the Court dismissed the other statutory claims, MMAS Research was left with a contract claim with no real value. Shortly after the dismissal of its statutory claims, when the time came to make its mandatory settlement offer under the Local Rules, it sent the following message to the Hospital:

6

> Plaintiff will ask the Court, before discovery begins, for leave to amend the FAC to add a cause of action for willful copyright infringement against Jacob Hartz and Boston Children's Hospital.  It will rely in part on the attached article, "The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence to Statins and Blood Pressure–Lowering Medication in Adolescents with Familial Hypercholesterolemia or Hypertension: Protocol for a Pre-Post Cohort Study.
>
> This can and of course all be avoided if we resolve the matter before expenses start to mount. …
>
> We hope BCH will revert with an appropriate response that reflects not only its exposure in this matter but the expense and inconvenience of litigation.

(Folkman Decl. Ex. 1). The message was that the case was not worthless, because MMAS Research still had a claim that carried with it statutory damages and attorney's fees. The Hospital pushed back vigorously, asserting that such a claim would be frivolous because Dr. Hartz's new paper did not reproduce any text that could even arguably be protected by copyright, and it threatened to bring a motion under Rule 11 if MMAS Research's lawyers brought such a claim. (Folkman. Decl. Ex. 2). MMAS Research decided against bringing the frivolous infringement claim it had threatened. But it needed a statutory claim in the case. So it simply realleged the claim it had previously brought, failed to argue for, and abandoned.

Allowing the copyright infringement claim back into the case would be unfair and prejudicial for the same reasons the court gave in *Sonner*. All lawyers have had times when they wished they could have a do-over on their papers. But MMAS Research made a reasonable, smart decision to drop its claim, and the Court should not countenance gamesmanship. Rule 15 does not require the Court to allow serial re-pleading of claims that were briefed and then withdrawn.

### 2. The copyright infringement claim is futile.

Futility is judged under the Rule 12(b)(6) standard. *See Hatch v. Dept. for Children,* 274 F.3d 12, 19 (1st Cir. 2001).

7

The Widget is a software program. Copyright infringement means violation of "any of the exclusive rights of the copyright owner as provided by sections 106 through 122." 17 U.S.C. § 501(a). The only potentially relevant exclusive rights here are the right to reproduce a copyrighted work, the right to prepare derivative works based on the copyrighted work, and the right to distribute copies of the copyrighted work. *See* 17 U.S.C. § 106(1)-(3). To infringe the Widget copyright therefore requires copying or distributing all or part of the software program. If the Court sets aside all the allegations about the Hospital's supposed misattribution of the copyright or misuse of the Widget in ways that allegedly breached the terms of the license agreement, where are the allegations that the Hospital copied anything or distributed copyrighted material?

The only allegation of copying is that the Hospital copied a "derivative Morisky Widget MMAS-8 paper test they were administering to patients as a screener." (¶ 97).[4] Thus the allegation is that the Hospital copied the questionnaire reproduced in the proposed second amended complaint following ¶ 104 and described in ¶ 105 as the "unauthorized Morisky Widget MMAS-8 screener." But it is immediately apparent that the questionnaire text is essentially identical to the text of the MMAS-8 that preceded the Widget by many years. (See Ex. 2).

Under the Copyright Act, a work "based upon one or more pre-existing works" is a "derivative work." 17 U.S.C. § 101. Copyright in a derivative work "extends only to the material contributed by the author of such work … and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). As the First Circuit has explained, "the copyright in a

---

[4] The allegation, incidentally, is that the Hospital made one copy, which it sent to MMAS Research itself. Later, the proposed second amended complaint alleges, falsely, that the Hospital "administered" the written MMAS-8 test hundreds of times. (¶¶ 173, 175). But the allegation is that the Hospital administered the test hundreds of times, not that it made hundreds of copies of the questions.

derivative work only protects the original elements contributed by the author of the derivative work." *Gamma Audio & Video, Inc. v. Ean-Chea,* 11 F.3d 1106, 1112 (1st Cir. 1993).

MMAS Research points to a new Nevada decision holding that the original MMAS-8 copyright was invalid. That argument fails. Eliminating Dr. Morisky's exclusive rights over the preexisting MMAS-8 does not give MMAS Research exclusive rights to the text the Nevada court held could not be copyrighted. Consider an example. No one can copyright the following text:

> Shall I compare thee to a summer's day?
> Thou art more lovely and more temperate.

If a software program outputs those lines of verse, then copying that output does not infringe a copyright, no matter how inventive the program or whether the text of the verses appears in the source code. Even if no one can copyright the questions in the original MMAS-8 questionnaire, including the questions in a new copyrighted work does not give the author of the new work any exclusive rights to the old questions. *See Harney v. Sony Pictures TV, Inc.*, 704 F.3d 173, 178-179 (1st Cir. 2013) ("it is permissible to mimic the non-copyrightable elements of a copyrighted work").

## B. The defamation claim is futile.

MMAS Research's defamation claim "is based on statements in the August 14, 2025 publication," a scientific paper by Dr. Hartz and others, "that allegedly misrepresented MMAS Research's copyright ownership and the nature of the ongoing litigation." (ECF 100 at 9). The claim rests on two statements: the "Acknowledgment" statement quoted above (¶ 18 & Ex. 20 at 7), and a bibliographic reference to a retracted 2008 article.

Every sentence in the "Acknowledgment" statement is either substantially true or a statement of opinion. None is actionable.

First: MMAS Research did sue Dr. Hartz, Ms. Chiert, and Dr. De Ferranti. (ECF 1). It is fair for MMAS Research to point out that it did not sue the fourth author of the 2025 paper, Dr. Powell-Wiley (¶ 218), but the statement is nevertheless true in substance. No possible harm to MMAS Research's reputation turns on whether it sued three of the paper's authors, or all four of them.

Second: the lawsuit is ongoing, and it concerns the attribution of the MMAS.

Third, Dr. Hartz did receive competing demands for attribution from Mr. Trubow and his representatives, and from Dr. Morisky and his representatives. The proposed second amended complaint says as much. (¶¶ 8, 47-52 & Ex. 18). This lawsuit itself is effectively a demand for attribution.

Finally: the authors' statement that they "are uncertain how the MMAS should be attributed and who owns the intellectual property rights" after they note that they faced competing demands and had been sued is a non-actionable statement of opinion. "[W]hen an opinion is accompanied by factual statements, it is understood as an opinion based on those factual statements. In that situation, no matter how unreasonable the opinion, it has no defamatory impact when the recipient can judge the reasonableness of the opinion having heard the facts underlying it." *Lawless v. Estrella,* 99 Mass. App. Ct. 16, 21 (2020) (citations omitted). Anyone reading that the authors had been sued and that they faced competing claims can judge for themselves how reasonable it was for the authors to express uncertainty about the truth of the competing claims to ownership.

The second supposedly actionable statement is the reference to "Morisky Widget MMAS, Steven Trubow, and MMAS Research LLC" in footnote 46 of the 2025 paper. Here is the relevant text from the paper (Ex. 20 4, ECF 98-2 at 208): "If the participant was interested, the

10

clinician determined the patient's eligibility based on self-reported adherence [46,47]." Here are the two footnotes (Ex. 20):

46. Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich). May 2008;10(5):348-354. Berlowitz DR, Foy CG, Kazis LE, Bolin L, Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed. [FREE Full text] [doi: 10.1111/j.1751-7176.2008.07572.x] [Medline: 18453793]
47. Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich). May 2008;10(5):348-354. Retracted in: J Clin Hypertens (Greenwich). 2023 Sep;25(9):889. [doi: 10.1111/jch.14718] [Medline: 37594022]

The proposed second amended complaint alleges that the reference made "it appear to the reader that a free article on the Morisky Widget was available to users clicking on the words 'full free text.'" (¶ 123). But anyone who clicked the link would see that MMAS Research and Trubow were not authors of the retracted 2008 article. In any case, the retracted article has nothing to do with the Widget. So even if the footnotes were, in some way, inaccurate concerning attribution, they are not defamatory. *See Yohe v. Nugent*, 321 F.3d 35, 41 (1st Cir. 2003) (a false statement is not necessarily actionable because "inaccuracy by itself does not make a statement defamatory").

## CONCLUSION

For these reasons, the court should deny the motion with prejudice.

REQUEST FOR ORAL ARGUMENT

The Hospital and Dr. Hartz request oral argument on this motion. The motion seeks leave to replead a withdrawn claim and is therefore out of the ordinary. The Hospital and Dr. Hartz believe oral argument would assist the Court.

Respectfully submitted,

THE CHILDREN'S HOSPITAL
CORPORATION and DR. JACOB HARTZ

By their attorneys:

*/s/ Theodore J. Folkman*

Theodore J. Folkman (BBO No. 647642)
Elizabeth L. Gardon (BBO No. 711867)
RUBIN AND RUDMAN, LLP
53 State St.
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com
egardon@rubinrudman.com

Dated: January 29, 2026