UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MMAS RESEARCH LLC, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Case No. 24-cv-12108-DJC** |
| | ) | |
| THE CHILDREN'S HOSPITAL | ) | |
| CORPORATION, et. al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**MORISKY DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
TO FILE A SECOND AMENDED COMPLAINT**

## I.    INTRODUCTION

Plaintiff MMAS Research LLC moves for leave to file a Second Amended Complaint under Federal Rule of Civil Procedure 15(a)(2). The proposed amendment seeks to add Harvard Medical School and F. Christopher Austin (hereinafter "Austin") as new defendants, revive a previously dismissed copyright infringement claim, and assert new tort claims based on facts that were known to Plaintiff at the outset of this action or shortly thereafter. The amendment would add two new defendants, revive one dismissed copyright claim, and introduce three new tort claims, dramatically expanding the scope of the litigation. Plaintiff's motion should be denied because it violates mandatory procedural rules, reflects undue delay and improper motive, would cause substantial prejudice in an advanced case, and seeks to add claims against Austin that are futile as a matter of law.

This action was filed on August 15, 2024, and is now more than seventeen months old. Discovery closes on May 8, 2026. Yet Plaintiff seeks, at the eleventh hour, to expand the case

dramatically by adding new parties and claims based on the "April 2022 Austin Letter" (Dkt. No. 98, Ex. 10), October 2024 communications with Sanofi, and an August 2025 Harvard publication. Plaintiff has long been aware of each of these facts and had ample opportunity to plead them earlier. It offers no legitimate explanation for waiting until the final day of the amendment deadline to do so.

Plaintiff's motion is also procedurally defective as Plaintiff failed to comply with Local Rule 15.1(b)'s mandatory requirement that proposed new parties be served with the amended complaint at least fourteen days before filing a motion for leave.

Granting leave to amend would unduly prejudice the Morisky Defendants by forcing them to divert resources to new motion practice and discovery in this Court while preparing for a trial set to commence March 2, 2026, against Plaintiff at the U.S. District Court for the Western District of Washington. The proposed amendment would also target long-standing defense counsel for conduct undertaken in a privileged attorney representation capacity, threatening disqualification and disruption at a critical stage of both proceedings.

Finally, an amendment to add Austin as a party would be futile. This Court lacks personal jurisdiction over him, the claims based on the Austin Letter are time-barred and do not relate back, and the challenged communications are protected by absolute litigation privilege and Noerr-Pennington immunity, and are not defamatory. The Sanofi-based allegations likewise fail for lack of inducement or cognizable damages.

Although Rule 15 favors amendment in appropriate circumstances, leave is properly denied here. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019).

## II.    RESERVATION OF RIGHTS

This filing is made on behalf of the Morisky Defendants only by their counsel, Mr. Austin, and not in his personal capacity.  Austin's role as counsel for these defendants in preparing this Opposition, including his declaration in support of it, is not and shall not be construed as a general appearance by Austin in his personal capacity.

Austin specifically contests that this Court may exercise personal jurisdiction over him and expressly declines to submit to the jurisdiction of this Court in his personal capacity.[1] Nothing in this Opposition, including any argument addressed to the proposed claims, constitutes a waiver of any defense under Federal Rule of Civil Procedure 12(b), including lack of personal jurisdiction, improper venue, or insufficient service of process.

## III.    LEGAL ARGUMENT

Leave to amend is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that courts "should freely give leave when justice so requires." That standard, however, is not boundless. The Supreme Court has leave may properly be denied for undue delay, bad faith or dilatory motive, undue prejudice to the opposing party, and futility of amendment. *Foman*, 371 U.S. at 182. The First Circuit applies this framework and has emphasized "[i]n the decisional calculus, the moving party's diligence or lack of diligence serves as the 'dominant criterion.' *Miceli*, 914 F.3d at 86. Protracted delay based on facts known from the outset gives the court more reason to deny an amendment. *Id*. The *Miceli* court further cautioned that a court should not "be expected to look kindly upon a plaintiff who seeks belatedly to amend her complaint based on 'information

---

[1] Any discussion of the proposed claims against Austin, including arguments that amendment would be futile for among other things lack of personal jurisdiction, is made solely for the purpose of demonstrating that leave to amend should be denied and is without prejudice to, and does not waive, any jurisdictional or other defenses that Austin may assert if he is ever added as a party.

that [she] had or should have had from the outset of the case.'" *Id.*, quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008).

An amendment is futile where it fails to state a claim upon which relief can be granted. *Glassman v. Computervision Corp.*, 90 F.3d 617, 622-23 (1st Cir. 1996). As detailed below, each *Foman* factor weighs against amendment.

### A.    Procedural Violations

Plaintiff's motion for leave to amend violates two fundamental procedural requirements and should be denied on that basis alone.

First, Plaintiff failed to comply with Local Rule 15.1(b), which mandates that a party seeking leave to add new defendants must serve the proposed amended complaint on those new parties at least 14 days before filing the motion.[2]  Plaintiff emailed the Proposed Second Amended Complaint on Harvard Medical School and Austin only one day before filing, on January 14, 2026.[3] *See* Pltf's Cert. of Compliance with Local Rule 15.1 attached to Dkt. 98. A court may deny leave to amend where the moving party fails to satisfy applicable procedural requirements governing amendment. *See Ali v. Univ. of Mass. Med. Ctr.*, 140 F. Supp. 2d 107, 110 (D. Mass. 2001) (denying leave to amend because plaintiff "did not serve the motion on the [new] defendants" as required by Local Rule 15.1). As *Ali* demonstrates, the 14-day service rule is a substantive notice requirement, not a mere technicality. Plaintiff's noncompliance with Local Rule 15.1(b) provides an independent basis for denial here.

Plaintiff's memorandum attempts to justify the amendment by invoking purported "significant developments," including a March 2024 Ninth Circuit ruling and the August 2025 Harvard publication. *See* Dkt. 100 at 1–2. Those far prior "developments" do not excuse Plaintiff's

---

[2] The Morisky Defendants' have briefed this issue in Dkt. 97, filed on January 15, 2026.
[3] Formal service on Austin, who resides in Las Vegas, Nevada has never been effectuated.

procedural failures or delay, where Plaintiff disclosed its intent to amend as early as December 8, 2025. *See* Dkt. 94, Folkman Decl. Ex. 1.

The combined procedural defects and late informal delivery on proposed new parties reflects a lack of diligence and disregard for the Court's rules.  These violations are not mere technicalities. They deprive proposed new parties of the notice required by local rule, undermine the scheduling order to which the parties stipulated and interfere with the Court's ability to manage the case in an orderly and fair manner, and for these reasons, the motion should be denied.

### B.    Undue Delay

Plaintiff has unduly delayed seeking leave to amend without any colorable justification and has failed to demonstrate the diligence required under both Federal Rule of Civil Procedure 15(a)(2) and the good cause standard governing modification of scheduling orders—which will be required given the dramatic expansion of the scope and parties of this case—under Rule 16(b)(4). The First Circuit has repeatedly held that leave to amend should be denied where the moving party engages in protracted delay based on facts it had or should have had from the outset of the litigation. *Miceli*, 914 F.3d at 86, quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008). As the delay lengthens, denial becomes increasingly appropriate, because protracted delay, together with its attendant burdens on both the opposing party and the court, is itself sufficient reason to withhold permission to amend. *Id*.

The core factual predicates for the proposed amendments, namely the April 2022 Austin Letter and the alleged interference and defamation arising from it, were fully known to Plaintiff well prior to August 15, 2024, when the original complaint was filed, and were reiterated in the First Amended Complaint filed in October 2024. The original complaint referenced the underlying alleged interference conduct, and the First Amended Complaint expressly alleged Morisky's post-

2019 interference through the April 2022 Austin Letter sent to licensees and Boston Children's Hospital, which allegedly caused confusion and harm to business relationships. The Proposed Second Amended Complaint relies on the same April 2022 Austin Letter as the primary factual basis for the new interference and defamation claims against Austin. Plaintiff, therefore, not only knew these facts but pleaded them as background in its Complaint and First Amended Complaint, while deliberately electing not to name Austin or assert personal claims against him either time.

Plaintiff's delay is particularly unjustified given that the factual predicate for the proposed claims, the April 2022 Austin Letter, has already been litigated and rejected on privilege grounds in prior actions. As discussed in Section E, the Letter is protected attorney petitioning activity, rendering Plaintiff's belated attempt to revive claims based on it both untimely and futile.

The purportedly "new developments" cited by Plaintiff do not justify the delay. The Ninth Circuit's March 13, 2024, ruling affirming the never contested fact that Plaintiff received a copyright registration of the Morisky Widget predates the original complaint by five months and does not introduce any new operative facts. Not only does it predate filing, but it affirms the alleged derivative rights consistent with Defendants' position—hardly a basis for new claims. Plaintiff characterizes the ruling as a "significant development[]" rejecting Morisky's claims, but the ruling is consistent with the Austin Letter's derivative-rights position and does not contradict it. *See* Dkt. 100 at 3–4. The Morisky Defendants have never alleged that Plaintiff lacks ownership of the registered copyright in the Widget.  Rather, they have alleged that because the Widget is a derivative of the Morisky copyrights, Plaintiff has no right **to use or license** the Widget or the underlying Morisky copyrights (MMAS-4/8) without Morisky's permission. Dkt. 98-2, at 144 (April 2022 Austin Letter).

Plaintiff's reliance on the October 2024 Sanofi communications also does not excuse its delay. Plaintiff was aware of those communications before filing the First Amended Complaint and elected not to assert claims against Austin at that time. As explained in Section E, the Sanofi communications do not give rise to any viable claim, underscoring that Plaintiff's delay was strategic rather than compelled by new facts.

The August 2025 Harvard publication, although postdating the First Amended Complaint, also does not excuse the delay. Events occurring after the filing of a complaint are typically addressed through a supplemental pleading under Rule 15(d), not by retroactive amendment. *See Cortés-Ramos*, 956 F.3d at 44. Plaintiff's memorandum characterizes the publication as a "significant development[]" supporting the defamation claim, but delayed any action on it for five months. *See* Dkt. 96, Ex. 3. That delay undercuts any claim of diligence.

Plaintiff was aware of its intent to amend and add parties no later than December 8, 2025, (Dkt. 94, Folkman Decl. Ex. 1), but waited until the January 15, 2026, deadline to file. This record reflects tactical procrastination in a case that is already more than seventeen months old with discovery set to close on May 8, 2026. The First Circuit has made clear that such a delay is fatal to a motion to amend. *Miceli*, 914 F.3d at 86. This lack of diligence, when combined with Plaintiff's reliance on long-known facts, independently compels denial of leave to amend.

C.    **Bad Faith**

Plaintiff's motion is brought in bad faith and is designed to harass the Morisky Defendants and obtain a tactical advantage in parallel litigation. Courts may infer bad faith where a motion to amend reflects an improper purpose, including harassment of the opposing party, unnecessary delay, or the needless increase of litigation costs. *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016) (concluding Plaintiff did not meet his burden of providing a valid

reason for delay when three years had passed since filing the initial lawsuit); see also *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 538 (1st Cir. 2011) (upholding district court's undue delay determination where motion to amend was filed "nearly a year after the motion to dismiss was filed"); see also *ACA Fin. Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) ("Plaintiffs may not, having the needed information, deliberately wait in the wings . . . with another amendment to a complaint should the court hold the first amended complaint was insufficient. Such an approach would impose unnecessary costs and inefficiencies on both the courts and party opponents."). The record here demonstrates precisely that motive.

### i.    Plaintiff Manipulated the Scheduling Order to Maximize Disruption

Plaintiff filed the motion on January 15, 2026, the last possible day permitted under the agreed scheduling order, despite having agreed to an expedited discovery in this action to maximize the disruption of this action on the Morisky Defendants who Plaintiff knew would be preparing for trial or in trial through the first week of March, 2026.

### ii.    Plaintiff Seeks to Re-Litigate Claims Repeatedly Rejected Elsewhere

Second, the proposed amendments seek to revive claims that Plaintiff has already litigated and lost in multiple jurisdictions based on the same April 2022 Austin Letter. Those claims were withdrawn or dismissed on privilege and procedural grounds in New Jersey, in the Central District of California in both the *Wolverhampton* (*MMAS Research LLC v. University of Wolverhampton*, Case No. 2:22-cv-05141-AB-JC) (C.D. Cal.) (attached hereto as Exhibit B) and *IQVIA* (*MMAS Research LLC, v. IQVIA Holdings,* Case No. 2:25-cv-01057-RGK-DFM (C.D. Cal.) (attached hereto as Exhibit C) actions, and in the Western District of Washington (*Morisky v. MMAS Research LLC*, Case No. 2:21-cv-01301-RSM-DWC (W.D. Wash.) (attached hereto as Exhibit D).

Plaintiff has known these facts since 2022 and pleaded them as background allegations in the original Complaint and the First Amended Complaint, yet deliberately chose not to name Austin or assert personal claims against him either time. FAC ¶¶ 75-79. The "significant developments" cited in Plaintiff's memorandum do not justify this revival. The Ninth Circuit's March 2024 ruling predates the original complaint by five months and is consistent with, rather than contrary to, the Austin Letter's derivative-rights position. *See* Dkt. 100 at 3–4. The August 2025 Harvard publication address post-filing events that must be addressed, if at all, through a supplemental pleading under Rule 15(d), not through amendment and have no claimed nexus to Austin. *See* Dkt. 96 at 1-2.

### iii.    Plaintiff is Targeting Defense Counsel for Privileged Litigation Conduct

The claims asserted against Austin are based entirely on attorney communications that are protected by absolute litigation privilege and the Noerr-Pennington doctrine, as set forth in Section E below. Plaintiff's decision to reassert claims premised on privileged conduct, after having lost similar challenges elsewhere, supports the inference that the amendment is designed to harass and disrupt rather than to advance the merits of this action.

### D.    Unduly Prejudicial

Granting leave to amend would unduly prejudice the Morisky Defendants by imposing immediate and substantial burdens in an advanced case with a compressed discovery schedule. The First Circuit has cautioned that "the longer a plaintiff delays, the more likely the motion to amend will be denied," because "protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004), quoting *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52–53 (1st Cir. 1998). Motions to amend are "particularly disfavored" when

their timing prejudices the opposing party by "requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy . . . ." *Id*. Here, the Proposed Second Amended Complaint does exactly that, reasserting dismissed claims, adding parties, and creating targeted burdens that align with Plaintiff's pattern of tactical harassment.

The proposed amendment would unduly increase defense costs by requiring retention of new counsel if Austin is added as a party. More importantly, it threatens significant disruption to case management and efficiency by forcing the Morisky Defendants to address new party-specific motion practice and discovery midstream. This burden is particularly acute given the age of the case, now more than seventeen months old, the partial dismissals already entered by the Court, *see* Dkt. 64, and the proximity of the Washington trial set to commence March 2, 2026.

Plaintiff attempts to minimize prejudice by characterizing the proposed amendments as driven by "significant developments," including the Ninth Circuit ruling and the Harvard publication are without merit as discussed above. *See* Dkt. 100 at 1–4. The net effect of the amendment is not clarification, but escalation and strategic disruption at a late stage of the litigation. Leave to amend should therefore be denied.

### E.    Futility Argument

Leave to amend may be denied where the proposed amendment would be futile, meaning it fails to state a claim upon which relief can be granted. *Glassman*, 90 F.3d at 622. The proposed claims against Austin are futile on multiple independent grounds, including lack of personal jurisdiction, expiration of the statute of limitations without relation back, absolute litigation privilege and Noerr-Pennington immunity, and failure to plead actionable conduct or cognizable harm.

i.     **The Court Lacks Personal Jurisdiction over Austin**

First, this Court lacks personal jurisdiction over Austin in his individual capacity because Plaintiff has not alleged facts satisfying either purposeful availment or foreseeability. Due process requires that a defendant "purposefully avail[] himself of the privilege of conducting activities within the forum State," such that he could reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). The First Circuit has consistently held that such out-of-state attorney conduct, standing alone, is insufficient to establish personal jurisdiction. In *Sawtelle v. Farrell*, the court rejected jurisdiction where the alleged contacts consisted of letters, telephone calls, and even in-person visits, explaining that an attorney does not purposefully avail himself of a forum merely by representing a client with forum connections. *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995). Courts in this District have applied the same principle, holding that an attorney-client relationship with a forum resident, without more, does not create a reasonable expectation of being hailed into a Massachusetts court. *See Kenney v. Hoover*, 909 F. Supp. 34, 38 (D. Mass. 1995).

Austin is a Nevada resident who acted exclusively in his capacity as counsel for non-resident clients, the Morisky Defendants. He has no alleged contacts with Massachusetts apart from routine attorney conduct performed on behalf of those clients. The only contacts identified in the Proposed Second Amended Complaint are the April 2022 Austin Letter, which was prepared and delivered only to the client in Nevada and no one else in response to the false allegations Plaintiff was then making with regard to Washington Court's rulings and the Morisky Defendants' claims in the Washington case. *See* Austin Decl., Ex. A, ¶¶ 5-7.  The October 2024 communications with Sanofi, which were initiated by Sanofi who contacted Austin in Nevada, were limited to providing litigation status and public court filings. *See* Austin Decl., Ex. A, ¶¶ 8-

10.  Neither contact reflects forum-directed conduct by Austin or any deliberate effort to invoke the benefits or protections of Massachusetts law.

Critically, Plaintiff does not allege that Austin targeted Massachusetts, directed communications into the forum for his own benefit, or sought to create continuing obligations there. Nor does Plaintiff allege facts supporting an "effects" theory of jurisdiction. Austin did not personally distribute the April 2022 letter to any third party. He transmitted the letter only to his client, at the client's request, in response to false allegations by Plaintiff regarding an ongoing litigation, and any subsequent dissemination to the Hospital was undertaken solely by the client. Under settled First Circuit law, such attenuated and derivative contacts cannot support personal jurisdiction.  Because Plaintiff has failed to allege facts establishing purposeful availment or foreseeability, the Court lacks personal jurisdiction over Austin, and amendment to add him as a defendant would be futile.

### ii.     The Claims Based on the 2022 Austin Letter Are Time-Barred

Second, the proposed interference and defamation claims based on the April 2022 Austin Letter are time-barred. Massachusetts imposes a three-year statute of limitations on defamation claims, Mass. Gen. Laws ch. 260, § 4, and on tortious interference and other tort claims, Mass. Gen. Laws ch. 260, § 2A. The Letter was sent April 2022; therefore, the limitations period expired in April 2025. Plaintiff filed the original complaint in August 2024 and the First Amended Complaint in October 2024 without naming Austin as a party or asserting these claims against him personally. Federal Rule of Civil Procedure 15(c)(1)(C) governs whether an amendment adding a new party relates back to the date of the original pleading for statute of limitations purposes. Relation back is permitted only where the amendment asserts a claim arising out of the same conduct set out in the original pleading and, within the period provided by Rule 4(m), the newly

added party received notice of the action and knew or should have known that, but for a mistake concerning the proper party's identity, the action would have been brought against that party. *See* Fed. R. Civ. P. 15(c)(1)(C).

That standard is not satisfied here. Plaintiff did not make a mistake concerning Austin's identity. Plaintiff knew that Austin authored the April 2022 letter in April of 2022, pleaded the underlying facts as background in the First Amended Complaint, and nevertheless made a deliberate choice not to name Austin as a defendant. Deliberate omission or tactical decision-making does not constitute the type of "mistake" permitted for relation back. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010). Because the claims against Austin do not relate back, they are time-barred.

### iii. Austin is Immune Under the Noerr-Pennington Doctrine and Massachusetts Litigation Privilege

#### a. *Noerr-Pennington Doctrine*

The Noerr-Pennington doctrine, grounded in the First Amendment right to petition the government, immunizes genuine efforts to seek governmental action, including the filing of lawsuits and pre-litigation communications undertaken to assert or enforce legal rights. *See A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250 (1st Cir. 2001) (recognizing that Noerr-Pennington immunity extends to petitioning activity, including litigation, unless the activity constitutes a sham). Petitioning conduct falls outside the doctrine's protection only where it is both objectively baseless and subjectively intended to interfere with a competitor through the use of the governmental process rather than to obtain a favorable outcome. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).

The April 2022 Austin Letter and the October 2024 communications with Sanofi fall within the scope of this protection. The Letter responded to false allegations of Plaintiff regarding the

Washington litigation, clarified the status of the Washington litigation, and restated the claims asserted by Dr. Morisky in that then ongoing judicial proceeding. Likewise, the Sanofi communications were responsive to an unsolicited inquiry and were limited to providing information regarding the status and pleadings of the Washington litigation. *See* Austin Decl., Ex. A, ¶¶ 8-10. Specifically, Sanofi, unsolicited, emailed to Dr. Morisky the settlement agreement it entered into with Plaintiff and requested court orders and filings regarding the Washington Court's issuance of sanctions against Plaintiff for discovery abuses in that action, including striking Plaintiff's counterclaims and awarding over $80,000 in fees and costs to Dr. Morisky. *See* Austin Decl., Ex. A, ¶¶ 8-10.  Such communications regarding litigation proceedings are part of the ordinary process of asserting and defending legal rights in an ongoing lawsuit and qualify as protected petitioning activity. Plaintiff does not allege, and cannot plausibly allege, that the Washington litigation is objectively baseless or that the challenged communications were undertaken as a sham. To the contrary, the Washington litigation remains ongoing and will go to trial on Dr. Morisky's claims for breach of contract, breach of the covenant of good faith and fair dealing, trademark infringement and copyright infringement..   Notably, Plaintiff asserted a counterclaim in the Washington action for interference arising from the April 2022 Austin Letter. That counterclaim was dismissed with prejudice by the Court, just as other courts have similarly done.[4]

---

[4] Plaintiff also has a documented history of litigating identical interference claims based on the Austin Letter in multiple forums beginning in 2022, all of which failed on privilege or procedural grounds, yet waited until now to reassert them in this action. In New Jersey in 2022, Plaintiff alleged interference and withdrew the claim when faced with a motion to dismiss based on litigation privilege and Noerr-Pennington immunity. In the Central District of California in the *Wolverhampton* action in 2022, Plaintiff alleged interference and the claim was dismissed on litigation privilege and Noerr-Pennington grounds. Dismissal, attached as Ex. B. In the Central District of California in the *IQVIA* action in 2022, Plaintiff alleged interference and the claim was dismissed on first-to-file grounds. Dismissal, attached as Ex. C. In the

b.    *Litigation Privilege*

Massachusetts law provides parallel and independent protection through the absolute litigation privilege for the same conduct protected by the Noerr-Pennington Doctrine. The Massachusetts absolute litigation privilege bars claims for defamation, interference, or related torts based on such conduct. *See Correllas v. Viveiros*, 410 Mass. 314, 320 (1991). Crucially, Plaintiffs cannot evade this privilege by recasting attorney statements as "conduct" or "schemes." *Bassichis v. Flores*, 490 Mass. 143, 158, 189 N.E.3d 626, 638 (2022) ("Characterizing the defendant's statements as 'orchestrating' a fraud does not allow the plaintiffs to redefine the 'statements' as 'conduct' to avoid the privilege."). The Massachusetts Supreme Judicial Court held that attorney communications threatening litigation or made in contemplation of judicial proceedings are absolutely privileged, even when sent to third parties or in connection with an out-of-state proceeding. *See,* Restatement (Second) Torts § 587. "The litigation privilege extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding." *Visnick v. Caulfield*, 73 Mass.App. Ct. 809, 812, 901 N.E.2d 1264).

In *Correllas v. Viveiros*, the court relied on its earlier decision in *Sriberg*, where "an attorney mailed a letter to the plaintiff in which the attorney accused the plaintiff of misconduct and threatened an action against the plaintiff," and "a copy of the letter was sent to the plaintiff's bank." 410 Mass. at 321. Although the plaintiff sued for defamation, the court held that "the statements in the attorney's letter were absolutely privileged because the attorney's letter was written in the context of the institution of judicial proceedings." *Id.* The court reaffirmed the

---

Western District of Washington action, which has been pending since 2020, Plaintiff alleged interference and the claim was dismissed with prejudice. Dismissal, attached as Ex. D.

governing rule in unqualified terms: "We have hitherto held that statements by a party, counsel, or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." *Id.* (emphasis added).

The Austin Letter and the Sanofi responses satisfy that standard. Both were made by counsel on behalf of a litigant, were directly related to the claims then asserted in the Washington litigation and that relate to both that proceeding and this one. The fact that these communications sought to clarify legal rights and deter alleged infringement does not remove them from the privilege; it places them squarely within its core purpose. Plaintiff's claims for tortious interference, defamation, and related theories are based entirely on these protected communications. Imposing liability on counsel for such conduct would chill the legitimate assertion of legal rights and undermine both the First Amendment right to petition and the protections afforded by Massachusetts litigation privilege. Because the challenged conduct is immune as a matter of law, the proposed claims against Austin are futile.

### iv.    The Sanofi Claim Lacks Viability

Fourth, the Sanofi-based claim fails as a matter of law. Sanofi contacted Austin in October 2024 seeking information regarding the status of the Washington litigation. *See* Austin Decl., Ex. A, ¶¶ 8-10.  Austin responded to Sanofi's inquiry by providing requested public court filings and orders. Austin did direct Sanofi to breach any agreement, withhold payment, or alter its contractual obligations. *See* Austin Decl., Ex. A, ¶¶ 8-10. Plaintiff alleges no facts showing that Austin induced any actionable conduct by Sanofi. Critically, Plaintiff does not plead any cognizable damages arising from these communications. The mere possibility of future indemnification does not constitute a present injury. *See Fall River Hous. Authority v. H.V. Collins Co.*, 414 Mass. 10, 13 (1992) ("When there is an *express* agreement of indemnity in a contract, a claim for indemnity

accrues when there is a breach of that provision.")  Plaintiff does not allege that any indemnification has been triggered, or that any claim has been asserted. Absent actual loss or at worst an alleged basis for a claim, an indemnification clause alone does not constitute cognizable damage and cannot support a tortious interference claim. *Id.*

v.    **The Libel Claim is Futile**

Trade libel is a publication, of a statement concerning the Plaintiff which is false and causes damage. requires a false statement of fact, published to a third-party. *Yohe v. Nugent,* 321 F.3d 35, 39 (1st Cir. 2003). As set forth above, not only did Austin not publish the Austin Letter to the Hospital, the statements in the letter truthfully restate the Morisky Defendants' claims in the Washington matter, and the allegations of those claims are per se statements of opinion, not facts.

The Washington Court has already found the allegations set forth in the Austin Letter are true:

> While the Court finds some of the language in the communications Defendants [MMAS Research parties] seek to enjoin may be confusing to recipients (all of whom are users of [Morisky's] intellectual property), **most appear to be accurate statements of Plaintiff's contentions in this lawsuit, which is a matter of public record.** Dkt. 69 at 4, 22. For instance, the statement that Plaintiff has filed a federal lawsuit alleging Defendants are infringing registered copyrights in the MMAS-4 and MMAS-8 is true. This allegation encompasses Defendants' copyright registration in the Morisky Widget, which Plaintiff claims Defendants improperly registered to MMAS Research and which Defendants have agreed to reassign to Plaintiff under paragraph seven of the SA [CR2A Settlement Agreement]. See Dkt. 69 at 61.

Christel R&R, Case No. 2:21-cv-01301-RSM-DWC, ECF No. 84, at 9-10 (W.D. Wash. Aug. 22, 2022), adopted by Martinez, ECF No. 85. (emphasis added).  Further, such statements by counsel accurately restating the allegations in the Washington action are not actionable. They are statements of opinion "based on disclosed or assumed nondefamatory

facts" which are "not itself sufficient for an action of defamation," *Yohe v. Nugent,* 321 F.3d 35, 42 (1st Cir. 2003).

Finally, Austin was not involved in the August 2025 Harvard publication, rendering any claim tied to that publication futile as to him. *See* Austin Decl., Ex. A, ¶¶ 11-12. Plaintiff's memorandum broadly asserts "false and defamatory statements" arising from the Austin Letter and the Sanofi communications. *See* Dkt. 100 at 1, 4. As discussed above, the Austin Letter is truthful and privileged, and the Sanofi communications do not support claims for tortious interference or defamation against Austin. Because Plaintiff has not alleged inducement, proximate causation, or cognizable damages, the Sanofi-based claim fails independently and further confirms the futility of amendment as to Austin.

**CONCLUSION**

For the foregoing reasons, the Morisky Defendants respectfully request that the Court deny Plaintiff's motion for leave to file the Proposed Second Amended Complaint.

Dated: January 29, 2026

Respectfully submitted,

**LEX TECNICA, LTD.**

/s/ *F. Christopher Austin*
F. CHRISTOPHER AUSTIN, ESQ.
Nevada Bar No. 6559
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on January 15, 2026.


Dated: January 29, 2026                    Respectfully submitted,

                                            */s/ Brianna Show*_____