# EXHIBIT B

# EXHIBIT B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF WOLVERHAMPTON et al.,<br><br>Defendants. | Case No. 2:22-cv-05141-AB-JC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

### I. INTRODUCTION

Before the Court is Defendants Donald E. Morisky and Morisky Adherence Research LLC's a Motion to Dismiss, which Philip Morisky joined on December 2, 2022 ("Motion," Dkt. Nos. 32, 40). Plaintiff MMAS Research, LLC ("Plaintiff") filed an opposition (Dkt. No. 38). Defendants Donald E. Morisky, Philip Morisky, and Morisky Adherence Research LLC (collectively, the "Morisky Defendants") filed a Reply (Dkt. No. 41). The Court took the matter under submission on January 25, 2023. For the foregoing reasons, the Motion is **GRANTED**.

//

## II. BACKGROUND

### A. Factual Background

The following allegations are derived from Plaintiff's FAC.

Plaintiff alleges that it is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No TX 8-816-517. FAC ¶ 2. The Morisky Widget is an electronic diagnostic assessment protocol to measure and identify medication adherence behaviors. *Id.* Plaintiff grants limited-use, perpetual licenses for the Morisky Widget to clinics, practitioners, and similar organizations. FAC ¶ 33.

In 2016, Defendant Donald Morisky closed his California-based MMAS Research LLC and moved it to Washington. FAC ¶ 43. Defendant Donald Morisky agreed to equally share the profits and liabilities of MMAS Research with Steven Trubow, who is alleged to be one of Plaintiff's founders. FAC ¶¶ 19, 43. In 2017, Plaintiff developed a new software program that included diagnostic assessment for depression, anxiety, suicide, substance abuse, and medication adherence. FAC ¶ 44. The software was meant to measure medication behavior, rather than medication adherence. *Id.* This new software was called the Morsiky Widget because it used the Morisky Medication Adherence Scale (8-item) ("MMAS-8") and Morisky Medication Adherence Scale (4-item) ("MMAS-4"). *Id.* Plaintiff alleges that it holds the copyright to the Morisky Widget. FAC ¶ 98.

In June 2019, Defendant Donald Morisky left Plaintiff and voluntarily gave up his 50% ownership of the Morisky Widget. FAC ¶ 47. On June 25, 2019, he filed an "Amended Annual Report" with the Washington Secretary of State, stating that he was no longer a member or governor of Plaintiff. FAC ¶ 49.

Plaintiff alleges that Morisky Defendants have been attempting to put Plaintiff out of business. Plaintiff alleges that on or about January 22, 2019, Defendant Donald Morisky, along with his son Defendant Philip Morisky, formed a limited liability company in Nevada called the Morisky Medical Adherence Research, LLC

("MMAR"). FAC ¶ 49. Plaintiff alleges the Morisky family diverted licenses away from Plaintiff, lists Plaintiff's customers as its own, and uses Plaintiff's business materials. FAC ¶ 49. These efforts resulted in a lawsuit in 2019, and eventually lead to a settlement agreement in 2020. FAC ¶ 49.

Approximately a year after the settlement, and after Defendant Donald Morisky initiated a lawsuit in the Western District of Washington, Morisky Defendants published on their website the following statement on October 16, 2021:

> Effective November 2021, I have phased-out the Morisky Widget. Under the settlement agreement with Steven Trubow, MMAS Research LLC was required to transfer the Morisky Widget (all MMAS 4 and 8 derivatives) to Dr. Morisky by September 2021. The derivatives include the Morisky Widget, Morisky.org, all language translations, all licenses including Morisky widget sublicenses, and copyright registrations relating to MMAS4 and 8 widget software that bear the name Morisky, etc.
>
> While, Steven Trubow has very limited authorization to investigate and pursue infringement cases prior to December 2020, his involvement will completely terminate in 2023. I remain the sole developer/owner/licensor of the Morisky Medication Scales 4 and 8.
>
> We are transitioning all Morisky Widget users who request it to a new upgraded HIPAA and GDPR compliant digital format – the MMAR digital platform - within the next 45 days. You may receive an email from Philip Morisky, CEO of MMAR LLC, if you would like to commence the process. The Morisky Party and MMAR agrees to provide full access to the Morisky Widget and support as needed to all licenses as long as their licenses to the Morisky Widget are in effect, including adhering to all European Union Privacy regulations (including but not limited to GDPR and HIPAA). You can reach us on our website at www.moriskyscale.com.
>
> Thank you very much for your understanding and cooperation as we transition widget licenses into our company's operations.
>
> Dr. Donald Morisky
> President MMAR, LLC"

FAC ¶ 113. Morisky Defendants then posted the following update on December 26, 2021:

> Effective immediately, the Morisky Widget is being phased out of existence. Under the settlement agreement with Steven Trubow signed December 2020, MMAS Research LLC was required to transfer all MMAS 4 and 8 derivatives to Dr. Morisky by September 2021, including the Morisky Widget, Morisky.org, all language translations, all licenses including Morisky widget sub-licenses, and copyright registrations relating to MMAS4 and 8 widget software that bear the name Morisky, etc.
>
> Steven Trubow has very limited authorization to investigate specific infringement cases prior to December 2020, terminating in 2023. He is not authorized to issue new MMAS 4 and 8 licenses, only retroactive licenses relating to infringement cases. I remain the sole developer/owner/licensor of the Morisky Medication Adherence Scales 4 and 8 and derivatives. "We are transitioning all Morisky Widget users who request it to a new upgraded HIPAA and GDPR compliant digital format – the MMAR digital platform. Philip Morisky, CEO of MMAR, LLC, will notify Morisky Widget clients of this legal development and assist them in the transition process to avoid unnecessary infringement claims. Thank you very much for your understanding and cooperation during this transition period.
>
> Dr. Donald Morisky
> President MMAR, LLC

FAC ¶ 115. Plaintiff claims that this statement constituted tortious interference with Plaintiff's licensing agreement with the University of Wolverhampton ("the University").

Under the University's licensing agreement, licensees agree to "submit to MMAS Research all manuscripts that are being considered for publication to make certain that all copyright and trademark requirements are included in all manuscripts for publication." FAC ¶ 88. Plaintiff claims that the University conducted research

4.

using the Morisky Widget and authored a thesis based on this research in 2021. FAC ¶¶ 62, 73. Although the University submitted its first thesis to Plaintiff for approval, the University failed to submit a second article based on its research. FAC ¶¶ 73-77, 89. Notably, this second article altered the acknowledgement section so that it recognized Defendant Donald Morisky for granting the University use of the MMAS-8 scale, rather than acknowledging Plaintiff for granting use of the Morisky Widget. FAC ¶¶ 73, 78. Plaintiff alleges that the University violated its licensing agreement and infringed Plaintiff's copyright for the Morisky Widget by altering the acknowledgement section without receiving approval from Plaintiff. FAC ¶¶ 87-98. Plaintiff further alleges that Morisky Defendants are liable for aiding and abetting the copyright infringement and tortious interference with contract. FAC ¶¶ 103-104; 116-119.

### B. The Instant Lawsuit

Plaintiff initiated this lawsuit on July 25, 2022. Plaintiff originally named the University as a Defendant, along with University employees Hannah Morrissey and Patrick Ball. However, Plaintiff dismissed them as defendants on January 9, 2023. *See* Dkt. No. 51. Thus, Plaintiff's only remaining claims are those against the Morisky Defendants. Plaintiff has raised causes of action for copyright infringement, tortious interference with contract, violation of California's Unfair Competition Law ("UCL"), and breach of the settlement agreement.

### C. The Washington Lawsuit

On September 24, 2021, Defendant Donald Morisky filed a lawsuit against Plaintiff in the Western District of Washington. *See Morisky v. MMAS Research, LLC*, 2:21-cv-01301-DWC ("Washington Lawsuit"). In relevant part, Defendant Donald Morisky alleges that he is in fact the owner of the copyright to the Morisky Widget, as it is a derivative of the MMAS-4 and MMAS-8 Copyrights, and that Plaintiff has infringed on his copyright. Defendant Donald Morisky has therefore sued Plaintiff for, among other causes of action, copyright infringement, trademark

5.

infringement, and breach of the settlement agreement.

### D. Morisky Defendants' Motion to Dismiss

The Morisky Defendants filed a motion to dismiss on November 9, 2022. Morisky Defendants argue that Plaintiff lacks standing for its copyright infringement claim, as a Defendant Donald Morisky is the owner of the Morisky Widget copyright. Mot. at 10. Morisky Defendants also argue that the Court does not have personal jurisdiction over Defendant Donald Morisky, a resident of Nevada, and Defendant Morisky Medication Adherence Research, LLC, a Nevada limited liability company, which also means venue is improper. Mot. at 11-12. Defendants also argue that the complaint fails to state a claim for copyright infringement under Rule 12(b)(6), and because Plaintiff's remaining claims are state law claims, that the Court lacks subject matter jurisdiction over them. Mot. at 13-18. Defendants further contend that the lawsuit is barred by the *Noerr-Pennington* doctrine and California litigation privilege. Mot. 18-21. Finally, Morisky Defendants argue that the case should also be dismissed, or alternatively stayed, under the "first to file" doctrine. Mot. at 21-23.

## III. LEGAL STANDARD

### A. First-to-File Rule

The first-to-file rule is a principle of federal comity that permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 623, 625 (9th Cir. 1991) (explaining that under the first-to-file rule, a district court may transfer, stay, or dismiss an action when a similar case has previously been filed in another federal court). "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments. Comity works most efficiently where previously-filed litigation is brought promptly to the attention of the district court, and the court defers." *Church of Scientology v. United States Dep't. of Army*, 611 F.2d 738, 750

6.

(9th Cir. 1980) (internal citations omitted).

Courts consider three factors in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade*, 946 F.2d at 625-26. Exceptions to the first-to-file rule can be made in cases of bad faith, anticipatory suit, forum shopping, or where the balance of convenience favors the later-filed action. *Id.* at 627-28; *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). Ultimately, however, "the most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Alltrade*, 946 F.2d at 627.

### B. Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted). The plaintiff has the burden of establishing that the court has the subject-matter jurisdiction to grant the relief requested. *Id.*

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction," *id.*, and the court "assume[s] [plaintiff's factual] allegations to be true and draw[s] all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). But, as with a Rule 12(b)(6) motion, courts do not accept the truth of any legal conclusions contained in the complaint. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### C. Rule 12(b)(2)

Rule 12(b)(2) allows a defendant to move to dismiss a complaint for lack of

personal jurisdiction. In opposing such a motion, the plaintiff bears the burden of establishing that the court has jurisdiction over the moving defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The court may consider evidence asserted by the parties, but the plaintiff only needs to make a prima facie showing of personal jurisdiction to overcome a motion to dismiss under Rule 12(b)(2). *Id*. For this purpose, the court assumes that uncontroverted allegations in the plaintiff's complaint are true. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). Conflicts between the parties' declarations are resolved in the plaintiff's favor. *Id*.

### D. Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id*. The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

8.

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

A court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside of the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

## IV. DISCUSSION

### A. Plaintiff's Copyright and Breach of Contract Claims Fall Within the First-to-File Rule

In this case, the chronology of the two actions is undisputed. The Washington Lawsuit was filed first. All that is left to consider is whether there is sufficient similarity of parties and issues as between the two actions to warrant application of the first-to-file rule.

#### 1. Substantial Similarity of Parties

Courts in the Ninth Circuit have adopted a flexible approach in evaluating the similarity of the parties. "[E]xact identity is not required to satisfy the first-to-file

9.

rule. The rule is satisfied if some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008). Courts have found that if the parties are not identical in the two related actions, they are "substantially similar" under the first-to-file rule if they represent the same interests. *Ruoey Lung Enter. Corp. v. Tempur–Pedic Int'l, Inc.*, No. CV 09-675 AG (ANx), 2009 WL 10675241, at *2 (C.D. Cal. Sept. 14, 2009);

The Court finds that the parties in both cases are substantially similar. The Washington Lawsuit is between Plaintiff and Defendant Donald Morisky. Plaintiff's argument that there are additional defendants named in this case that are not part of the Washington Lawsuit is undercut by its decision to dismiss the University Defendants. Additionally, Defendant Donald Morisky represents MMAR and Philip Morisky's interests. Defendant MMAR was formed by Defendant Donald Morisky and his son, Defendant Philip Morisky and are alleged in the FAC to have engaged in the exact same conduct as Defendant Donald Morisky. Defendants MMAR and Philip Morisky would be similarly impacted by, for instance, a declaratory judgment that Plaintiff was the rightful owner of the Morisky Widget copyright.

### 2.     Substantial Similarity of Issues

Like the similarity of parties prong, the issues in the two actions need not be identical, so long as they are sufficiently similar. *Inherent.com v. Martindale-Hubble*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).

Here, Plaintiff's copyright infringement and breach of contract causes of action are substantially similar, if not identical, to the issues raised in the Washington Lawsuit. Both Defendant Donald Morisky and Plaintiff claim they are the rightful owner of the Morisky Widget copyright, and allege that the other infringed on that copyright. In fact, in the Washington Lawsuit, Plaintiff raised a counterclaim for declaratory judgment as to its ownership over the Morisky Widget copyright. Thus, the central issue for resolving Plaintiff's cause of action, Defendant's first-filed cause

10.

of action, and Plaintiff's counterclaim in the first-filed action, is who owns the copyright for the Morisky Widget. Because both cases turn on the same issue, and will be resolved by looking at the same facts, these issues are substantially similar.

Similarly, Plaintiff has already raised its breach of contract causes of action. Plaintiff, as Coutnerdefendant in the Washington Lawsuit, asserted a counterclaim for breach of the settlement agreement. In both the counterclaim and FAC, Plaintiff alleges violations of the same provisions of the settlement agreement. Thus, the breach of contract issues to be resolved in both cases are identical.

### 3. Dismissal

Where the similarity requirements are satisfied, courts have broad discretion to dismiss, transfer, or stay an action under the first-to-file rule. *See Adoma*, 711 F. Supp. 2d at 1146. Because the issues relating to these causes of action have already been raised in the Washington Lawsuit, the Court finds dismissal of these causes of action appropriate. Accordingly, Morisky Defendants' Motion is **GRANTED** and Plaintiff's Second and Fifth Causes of Action shall be dismissed **WITHOUT PREJUDICE**.

### B. Plaintiff has not Established the Court's Subject Matter Jurisdiction Over the Remaining State Law Claims

Federal courts are courts of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute. *Kokkonen*, 511 U.S. at 377. Under the federal question statute, 28 U.S.C. § 1331, the district court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. Under the diversity statute, 28 U.S.C. § 1332, the district court has original jurisdiction when complete diversity exists between the parties and the amount in controversy exceeds $75,000. Pursuant to 28 U.S.C. § 1367(a), the district court has supplemental jurisdiction over state law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a). If the district

11.

court has dismissed all federal question claims over which it has original jurisdiction, the district court may decline to exercise supplemental jurisdiction over remaining claims. *See* 28 U.S.C. § 1367(c)(3).

Morisky Defendants contend that the Court does not have subject matter jurisdiction over Plaintiff's remaining state law claims without Plaintiff's copyright claim which arises under federal law, and should not retain supplemental jurisdiction. However, Plaintiff alleges that it is a Washington limited liability company and that Morisky Defendants are residents of California and Nevada, meaning complete diversity exists between the parties. *See* FAC ¶¶ 1, 5-7. Nevertheless, it is not clear from the face of the complaint that the amount in controversy as to the remaining state law claims exceeds $75,000. Plaintiff alleges that it is entitled to $1,670,250 statutory damages due to the alleged copyright infringement. FAC ¶ 109. However, because this claim shall be dismissed under the first-to-file rule, the Court turns to the remaining state law causes of action. Because Plaintiff only alleges that it is entitled to "damages . . . in an amount to be proven at trial," as to its tortious interference claim, FAC ¶¶ 122, and specifies no amount of damages as to its UCL claim, the Court finds that Plaintiff has not alleged facts sufficient to demonstrate Court's subject matter jurisdiction.

### C. Plaintiff has not Alleged Facts Sufficient to Demonstrate Personal Jurisdiction as to Defendants Donald Morisky and MMAR

Consistent with due process, a court may exercise personal jurisdiction over a nonresident defendant only if that defendant has "certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2006) (internal citation and quotation marks omitted). A court comports with due process when it has either general jurisdiction or specific jurisdiction over a defendant. *See Schwarzenegger v. Fred Martin Motor Co.*, 374

F.3d 797, 801 (9th Cir. 2004). As Plaintiff does not seek a finding that this Court has general personal jurisdiction over Defendants, the Court focuses its analysis on whether specific personal jurisdiction exists. *See generally* Opp'n at 14-17.

The Ninth Circuit applies a three-part test to determine whether a district court may exercise specific jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct [their] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [they] purposefully avails [themselves] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendants' forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*, 715 F.3d 716, 741-42 (9th Cir. 2013) (citing *Schwarzenegger*, 374 F.3d at 802). Once the plaintiff meets the burden of establishing the first two prongs, the burden shifts to the defendant, who must put forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Plaintiff seeks to establish the first prong through the purposeful direction, or "effects" test, derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See generally* Opp'n 15-17. Thus, Plaintiff must allege facts showing Defendants Donald Morisky and MMAR "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix*, 647 F.3d at 1228.

      Plaintiff has failed to demonstrate Defendants Donald Morisky or MMAR expressly aimed their conduct at California. The "express aiming" analysis requires something more than a foreign acts with foreseeable effects in the forum state. *AirWater Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014). "The Court must focus on the 'defendant's 'own contacts' with the forum, not . . . the defendant's knowledge of a plaintiff's connections to a forum.' " *San Diego Cnty Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1099 (S.D. Cal. 2018) (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)).

      Plaintiff alleges Morisky Defendants tortiously interfered with Plaintiff's licensing agreement with the University by posting a statement relating to the parties' settlement agreement, and by directing the University Defendants to modify the acknowledgement section of their second thesis. However, Plaintiff has not alleged how any of these actions were meant to target California specifically. The University Defendants are not located in the United States, let alone California. Additionally, Morisky Defendants' website reaches more than California, and nothing within the statement appears to be directed at California audiences.

      Plaintiff's contention – that "it can be presumed" that Morisky Defendants "directed activities" towards California because Defendant Philip Morisky resides in California and Defendant Donald Morisky is alleged to own property in California – is incorrect. Defendant Philip Morisky's residence and Donald Morisky's property in California have no bearing on whether Defendants Donald Morisky and MMAR aimed their business activities at California. Plaintiff's alternative argument does not fare any better. Plaintiff argues that the effects of Morisky Defendants' actions were felt in California because the University's original acknowledgement noted that licenses could be obtained from Petaluma, CA, and Morisky Defendants caused this to be changed. However, the fact that effects were felt in California does not mean Morisky Defendants' directed their activities at California. Rather, Morisky

14.

Defendants' alleged conduct was aimed at the University Defendants, who are located outside of the United States.

Accordingly, because Plaintiff has not alleged any facts showing Defendants Donald Morisky and MMAR purposefully directed their activities at the forum state, the Court does not have personal jurisdiction over either of them.

### D. Plaintiff's remaining state law claims are barred under the *Noerr-Pennington* doctrine

The *Noerr-Pennington* doctrine provides absolute immunity from statutory liability for conduct when petitioning the government for redress. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Immunity under the *Noerr-Pennington* doctrine includes communications made to the court during the course of a lawsuit. Such communications include "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." *Id.* at 933 (citation omitted). "Conduct incidental to a lawsuit, including a pre-suit demand letter, [also] falls within the protection of the *Noerr-Pennington* doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). The doctrine's application is not limited to lawsuits; it has also been applied to quasi-judicial proceedings. *See, e.g., Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (holding that *Noerr-Pennington* applies when petitioning state and federal agencies); *EcoDisc Tech. AG V. DVD Format/LOGO Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) (defendant's communications with licensees and website announcements about potential litigation could be "accurately characterized as sufficiently related to litigation to fall within the scope of the *Noerr-Pennington* doctrine.")

However, the Ninth Circuit has recognized an exception to the *Noerr-Pennington* doctrine. *Noerr-Pennington* immunity does not apply to conduct that, although "ostensibly directed toward influencing governmental action, is a mere sham

to cover what is actually nothing more than an attempt to interfere" with the defendant's business practices. *Sosa*, 437 F.3d at 938 (citation omitted). As a result, "'[s]ham' petitions don't fall within the protection of the doctrine." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183-84 (9th Cir. 2005). The Ninth Circuit has identified three circumstances when the sham exception applies: (1) where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; (2) where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and (3) if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy. *Sosa*, 437 F.3d at 938 (internal quotation marks and citations omitted).

Plaintiff does not appear to dispute that Morisky Defendants' conduct, on its face, fall within the *Noerr-Pennington* doctrine;[1] indeed, the blog posts Plaintiff points to were posted after Defendant Donald Morisky initiated the Washington Lawsuit and reflect Defendant's legal position regarding the ongoing litigation. Rather, Plaintiff argues that that the *Noerr-Pennington* doctrine should not apply because the "sham exception" applies. However, Plaintiff has failed to articulate in its opposition any reason why the Washington Lawsuit is a sham, and instead argues that Morisky Defendants' Motion to Dismiss is a sham. This argument is incorrect, and misunderstands the sham exception standard. Because Plaintiff has made no effort in its FAC to plead facts demonstrating that the Washington lawsuit is a sham, Plaintiff's FAC fails to state a claim for tortious interference.

### E.  Plaintiff is Granted Leave to Amend

In total, Plaintiff has failed to allege facts sufficient to demonstrate the amount

---

[1] Plaintiff also concedes the claim is barred by California's litigation privilege. Seeing no dispute as to this claim, and because the *Noerr-Pennington* doctrine applies, the Court will not address the California litigation privilege.

16.

in controversy as to Plaintiff's tortious interference and UCL claim exceed $75,000, that Defendants Donald Morisky and MMAR have purposefully directed their activities at California, or that this case falls within the sham exception to the *Noerr-Pennington* doctrine. However, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). This principle is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir.2003) (per curiam). Because Plaintiff could conceivably allege facts to resolve these deficiencies, the Court grants Plaintiff leave to amend as to its Third and Fourth Causes of Action for tortious interference and violation of the UCL.

## V. CONCLUSION

Accordingly, Defendants' Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**. Plaintiff is **GRANTED** leave to amend as to its Third and Fourth causes of action. Plaintiff's Second Amended Complaint shall be due within **fourteen (14) days** of this order, or the dismissal shall be with prejudice.

Dated: February 10, 2023

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE