UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company, | CASE NO. 1:24-cv-12108-DJC |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION TO DISQUALIFY F. CHRISTOPHER AUSTIN** |
| THE CHILDREN'S HOSPITAL CORPORATION, et al., | |
| Defendants. | |

PLAINTIFF MMAS RESEARCH LLC ("MMAS") hereby moves for an Order of this Court revoking the *pro hac vice* admission of F. Christopher Austin ("Austin"), disqualifying him from further representation of Defendants in this action mainly on the ground that he is certain to be, and ought to be, a material witness at trial, and granting such further relief as the Court deems just and proper, and states as follows:

1

## I. INTRODUCTION

Pro hac vice admission is a privilege, not a right. A court has discretion to deny *pro hac vice* admission in the first instance and to revoke such admission or disqualify counsel where their continued participation would undermine the fairness of the proceedings, conflict with the professional conduct rules, or impair the Court's institutional interests. *See, e.g., Roma Const. Co. v. aRusso*, 96 F.3d 566, 576 (1st Cir. 1996) (the decision of whether to grant or deny *pro hac vice* status is purely discretionary in many District Courts); *Obert v. Republic Western Ins. Co.*, 190 F.Supp.2d 279, 298 (2002) (decisions on *pro hac vice* admissions or disqualification generally rest within the discretion of the courts).

Attorney Austin was admitted *pro hac vice* in this action on March 18, 2024. See Dkt. No. 55. He is also the author of the "Austin Letter," an operative document that is centrally woven into the fabric of this case. It is in connection with the Austin Letter that Austin has – not under oath, but from counsel table or in written submissions – made and repeated numerous material representations to the Court, to Plaintiff, and to counsel for Boston Children's Hospital ("BCH"). However, many of these representations appear to be inaccurate or at the very least are contradicted by other evidence, the record or even Austin's own representations.

The Austin Letter falsely takes the position that "neither Mr. Trubow nor MMAS Research has any authority to use or license any copyright of Dr. Morisky"

and that "MMAS Research copyright in the Morisky Widget code is an unlawfully obtained derivative of Dr. Morisky's MMAS-4 and MMAS-8 registered copyrights," concluding that neither Trubow nor MMAS has "any right to use or license the Morisky Widget copyright" or the "Morisky Widget program." Austin Letter, Apr. 21, 2022, Exhibit 10 to Motion to Amend, Dkt. 106-1. But a later Ninth Circuit decision addressing a different Morisky Widget dispute, *MMAS Research, LLC v. The Charite*, states its district court "erred in concluding that MMAS lacked standing," explains that the supposed 2020 "preliminary settlement agreement … was never finalized," and concludes that "MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget." *MMAS* Case: 23-55202, pp. 2-4 (9th Cir. 2024) a true and accurate copy of which is attached as Exhibit 1. Read together, those filings provide a concrete example of an apparent contradiction: the Austin Letter's categorical assertion that MMAS has no lawful right to use/license the Widget (and that its Widget copyright is "unlawfully obtained") versus an appellate court's determination—based on the non-finalized nature of the earlier settlement document—that MMAS "remains the registered owner" of the Morisky Widget and therefore had standing to sue. *Compare* Austin Letter.pdf, page 182–183 of 247 *with Charite,* pp 2–4.

Relatedly, the CR2A agreement between Trubow and Morisky (which Austin also helped draft) reflects that, as of July 2020, those parties were treating

3

ownership/assignment of the Morisky Widget as something MMAS Research would convey to Morisky as part of settlement mechanics ("MMAS Research, LLC will assign the Morisky Widget … to Donald Morisky …"), rather than as something MMAS never owned or had no lawful rights in at all. CR2A, p.2, attached as Exhibit 5 to the Motion to Amend, Dkt. 106-1. That framing is difficult to square with the Austin Letter's unconditional warning on page 2 that "ANY PERSON" who uses/licenses the Morisky Widget without Morisky's "express written authorization" is necessarily violating federal copyright law, because it suggests the parties themselves contemplated a transfer/assignment process—i.e., a scenario in which MMAS Research had (or claimed to have) assignable interests in the Widget to resolve. Not only is this contrary to the Ninth Circuit's ruling, but Attorney Austin's own categorization of the Morisky Widget and the Widget's intellectual property are starkly different in the Austin Letter as opposed to the CR2A.

Moreover, the Austin Letter boldly threatens all of MMAS Research's licensees with the following baseless claim:

> ANY PERSON THAT USES OR LICENSES THE MORISKY WIDGET, MMAS-4 SCALE OR MMAS-8 SCALE WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR. MORISKY WILL BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW FOR COPYRIGHT INFRINGEMENT.

Austin Letter, p.2. While not binding on this Court, again, the Ninth Circuit Court of

Appeals ruled that MMAS Research currently owns the copyright in the Morisky Widget.  As for the MMAS-4 and the MMAS-8 copyrights, a recent Nevada decision in one of Morisky's recent lawsuits, *Adherence d/b/a Morisky Medication Adherence Research LLC v. CVS Pharmacy, Inc.*, held that the MMAS-4 and MMAS-8 were invalid.  Case 2:24-cv-01590-JCM-NJK, p.6 (Dist. Nev. 2025), attached as Exhibit 2 is a true and accurate copy.  In *Adherence*, the Nevada District Court stated the following regarding Morisky's company Aderence in its assertion of the copyrights for the MMAS-4 and MMAS-8: "plaintiff fails to identify any argument grounded in legal precedent that would render their forms copyrightable." *Id.*

While the Austin letter may have predated the *Charite* and *CVS* decisions, Attorney Austin has made no attempt at trying to retract its contrary statements in the face of the *Charite* and *CVS* cases. Nor has he attempted to rectify the confusion his letter caused MMAS Research's licensees—licensees he knows, as they were listed in Exhibit 4 of the CR2A Austin helped draft.  Instead, the Austin Letter, with its inaccuracies, has just been allowed to continue confusing MMAS Research's licensees.

The purpose of this motion is not to resolve those contradictions, or even to explore them.  Rather, it is to place before the Court the fact that Austin is a key percipient witness to the drafting, transmission, and intended effect of the Austin Letter, Plaintiff will be required to call him as a witness at trial. To protect

Plaintiff's right to a fair trial, therefore, to avoid prejudice to other parties, and to safeguard the integrity and appearance of integrity of these proceedings, MMAS has no choice but to seek revocation of Austin's *pro hac vice* status and his disqualification as counsel.

This Motion to Disqualify provides evidence establishing that Austin's continued representation creates conflicts of interest and violates the Massachusetts Supreme Judicial Court ("SJC") Rules of Professional Conduct, including the lawyer-as-witness rule, candor obligations, and truthfulness in statements to others, as well as implicating 18 U.S.C. § 1001.

## II.   LEGAL STANDARDS

**1. Denying and Revoking Pro Hac Vice Status On Ethics Grounds**

The First Circuit has established that pro hac vice admission is "generally considered a privilege and not a right." *Obert v. Republic Western Ins. Co.*, 190 F.Supp.2d 279, 298 (2002). "Admission before the Bar traditionally has been considered primarily and initially subject to control by the admitting court and this control is subject to review only by reason of abuse of discretion or constitutional infirmities in the exercise of the control. The Supreme Court has rejected the argument that *pro hac vice* admissions are protected by either due process or equal protection." *Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir. 1989)

While "some courts have implied that once admitted *pro hac vice*, a lawyer

must have a limited property right mandating some degree of procedural due process prior to disqualification . . . the client's interest should be paramount, not counsel's interests." *Obert v. Republic W. Ins. Co*., 190 F. Supp. 2d 279, 298–99 (D.R.I. 2002). Accord, *Panzardi-Alvarez*, 879 F.2d at 980 ("This court . . . has never adopted such requirements, nor are we inclined to do so at this time"). Plaintiff's purpose here is not to deprive Austin of the opportunity for notice and a hearing on this issue, but it is worth noting that among the grounds cited as appropriate for immediate disqualification of *pro hac vice* counsel without a hearing is "knowledge of counsel's conflict of interest." *Obert*, 190 F. Supp at 298. "Other circuits have upheld lower courts' decisions to deny pro hac vice admissions because there has been evidence of ethical violations." *Panzardi-Alvarez*, 879 F.2d at 981 (citing cases involving denial of *pro hac vice* admission based on undisclosed conflicts of interest).

**2. The Attorney-Witness Rule Under Massachusetts Rule 3.7**

The District of Massachusetts has incorporated the Massachusetts Rules of Professional Conduct through Local Rule 83.6.1(a), which adopts "the Massachusetts Rules of Professional Conduct adopted by the Massachusetts Supreme Judicial Court, as set forth as Rule 3:07 of that court." *See also Doelger v. JPMorgan Chase Bank, N.A.*, No. 21-CV-11042-AK, 2022 WL 2394031, at *2 (D. Mass. Mar. 21, 2022). Attorneys practicing in this District, therefore, are bound

7

by the same ethical standards that govern Massachusetts state court practice. *Pratt v. Nat'l R.R. Passenger Corp.*, 54 F. Supp. 2d 78, 79 (D. Mass. 1999).

Massachusetts Rule of Professional Conduct 3.7(a) provides that "a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work a substantial hardship on the client." This Rule "strives to mitigate potential jury confusion, to avoid the difficulties of cross-examining an adversary and to diminish the appearance of impropriety where an attorney leaves counsel table for the witness chair . . ." S*maland Beach Ass'n, Inc. v. Genova*, 461 Mass. 214, 226, n. 18 (2012) (internal quotes and citation omitted). While cases distinguish between a lawyer's representation in pretrial proceedings and actual conduct of a trial, the ABA has cautioned that "a lawyer-witness should not represent his client at the lawyer-witness's own pretrial deposition, nor should the lawyer-witness argue a pretrial motion where his testimony is material to the substance of that motion." *Id.*, *quoting* ABA Standing Committee on Ethics and Professional Responsibility Informal Opinion 89–1529 (1989).

### III.   LEGAL ARGUMENT

Because he is a necessary witness in connection with the Austin Letter – which has already been central to one motion before this Court – Attorney Austin should be disqualified from representing any Defendants in this action.

A party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer is likely to be a necessary witness by demonstrating that "the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to prove those facts." *Carta ex rel. Est. of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23, 29 (D. Mass. 2006) (internal quotes and citations omitted). "Necessity" of the attorney's testimony is determined by consideration of factors as "the significance of the matters, weight of the testimony, and availability of other evidence." *Id.* citing *Paretti v. Cavalier Label Co., Inc.*, 722 F. Supp. 985, 986 (S.D.N.Y., 1989). The Rule 3.7 issue, moreover, "is not solved . . . by electing not to call the attorney as a witness, if the client is thereby deprived of evidence that cannot be presented by some other means" *Bank v. Thermo Jarrell Ash Corp.*, 15 Mass. L. Rptr. 156, 2002 WL 31188441, *1 (Mass. Super., Aug.9, 2002), quoted in *Lumberman's, supra*.

Here there is nothing speculative or remote about the necessity of Austin's testimony concerning the Austin Letter, which has already been so central to this

case that in the Court's Memorandum and Order dated December 3, 2025, it is specifically cited 19 times and is the subject of extensive substantive discussion, as it was during oral argument of that motion. (Doc. 81.) As this Court explained in *Lumberman's*:

> The proposed testimony of the plaintiff's lawyers is certainly relevant and material-indeed, her two attorneys are the only people who will be able to testify on the plaintiff's behalf about the settlement negotiations with the defendants, the correspondence that went back and forth between the parties, the meetings that were had between the plaintiff's counsel and defense counsel and the strategic decisions made during the settlement process. Even the plaintiff herself likely would not be able to testify about such matters since they were undertaken by the attorneys themselves, not by the plaintiff, and they involve technical legal nuances that the plaintiff herself probably would not understand.

419 F. Supp. 2d at 29–30. The same is true regarding the Austin Letter in this case, which involves the effect of the Austin Letter on Plaintiff's commercial relationships as well as the intent of certain Defendants in sending it. Thus, this is not a case involving "a witness whose only testimony is the authentication of documents." *Coface v. Optique Du Monde, Ltd.*, 521 F. Supp. 500, 509, n. 4 (S.D.N.Y. 1980). Austin's testimony regarding this correspondence is of inevitable importance in this litigation.

## IV.   CONCLUSION

In view of the foregoing, Plaintiff respectfully requests that this Court (1) revoke Austin's pro hac vice admission; (2) disqualify him from further representation of Defendants in this action; and (3) grant such other and further relief

as the Court deems just and proper, including, if appropriate, referral of this matter to the appropriate disciplinary authorities and the imposition of sanctions under the Court's inherent authority or applicable rules.

Respectfully submitted,
MMAS RESEARCH LLC
By its attorneys,

*/s/ A. Neil Hartzell*
A. Neil Hartzell, BBO #544752
Freeman Mathis & Gary, LLP
One Boston Place
201 Washington Street, Suite 2200
Boston, MA 02108
Tel: (617) 963-5966
neil.hartzell@fmglaw.com

Ronald D. Coleman (*Pro Hac Vice*)
Coleman Law Firm, PC
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611
rcoleman@colemanlaw-pc.com

Dated: February 20, 2026

**CERTIFICATE OF COMPLIANCE**

Counsel for Plaintiff attempted to confer F. Christopher Austin by email on Monday, February 16, 2026, and again on February 17, 2026, in an effort to schedule a time to discuss the issues raised in this Motion. These emails were attempts to meet and confer, but Austin has not responded to either email. Despite their efforts, counsel for Plaintiff has been unable to meet and confer with Austin in an attempt to narrow the issues raised in this Motion.

*/s/ Ronald D. Coleman*
Ronald D. Coleman (*pro hac vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February 2026, a true and correct copy of the foregoing Motion to Disqualify was served upon all counsel of record via the Electronic Case Filing system.

/s/ A. Neil Hartzell
A. Neil Hartzell, BBO #544752