UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MMAS RESEARCH LLC, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Case No. 24-cv-12108-DJC |
| THE CHILDREN'S HOSPITAL CORPORATION, et. al., | ) ) ) ) | |
| Defendants. | ) ) | |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S

MOTION TO DISQUALIFY F. CHRISTOPHER AUSTIN

**I. INTRODUCTION**

Defendants Donald E. Morisky, Ph.D. ("Dr. Morisky") and MMAR, LLC ("MMAR") (collectively, "Defendants") oppose Plaintiff MMAS Research LLC's ("MMAS" or "Plaintiff") Motion to Disqualify F. Christopher Austin ("Motion") Mot. to Disqualify, *MMAS Research LLC v. BCH*, No. 1:24-cv-12108-DJC, Dkt. 111. The Motion should be denied because Plaintiff cannot satisfy any element of the stringent test for attorney disqualification under Massachusetts Rule of Professional Conduct 3.7.

The Austin Letter is a written document already in evidence. This Court cited it 19 times in its Memorandum and Order. Dkt. 81. Its contents are plain from its four corners, and Mr. Austin's testimony is not needed to establish what the letter says. The alleged "contradictions" Plaintiff identifies are legal arguments about the merits of the underlying claims—not factual disputes requiring attorney testimony. And Plaintiff's own concession that the Motion's purpose

Morisky Defendants' Opposition to
Plaintiff's Motion to Disqualify F.
Christopher Austin

1

Lex Tecnica Ltd.
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145

"is not to resolve those contradictions, or even to explore them" (Dkt. 111 at 5) reveals the Motion's true purpose is a tactical maneuver to deprive Defendants of their chosen counsel.

## II. FACTUAL BACKGROUND

### A. The Morisky Copyrights and the Derivative Widget

Dr. Morisky is the sole and exclusive author and owner of two copyrighted works: the MMAS-4 and the MMAS-8 scales (the "Morisky Works"). Dr. Morisky's doctoral research in the early 1980s led to the publication of adherence intervention methods, laying the groundwork for the Morisky Scales. Philip Morisky Decl. ¶2, attached as **Exhibit 1** ("Morisky Decl."); *see also* Dr. Morisky Curriculum Vitae, attached as **Exhibit 8**. In 1986, he introduced the four-item MMAS-4, later followed by the enhanced eight-item MMAS-8. *Id*. The MMAS-4 was registered with the U.S. Copyright Office on June 12, 2016 (Reg. No. TX0008285390), and the MMAS-8 was registered on September 21, 2018 (Reg. No. TX0008632533). *Id*. On June 8, 2023, Dr. Morisky assigned all of his intellectual property rights, including copyrights, trademarks, and all goodwill, to MMAR, LLC. *Id*. ¶3.

Dr. Morisky authorized Olympic Labs LLC, a company founded by Steven Trubow, to commence the creation of a derivative work to electronically display the Morisky Works. After Olympic Labs dissolved, Dr. Morisky granted the same permission to MMAS Research, LLC, which Dr. Morisky co-founded, to complete this derivative work, known as the "Morisky Widget". Answer ¶1, Counterclaim ¶ 25, Dkt. 87.

The Morisky Widget is a derivative work. Under 17 U.S.C. § 103(b), the owner of a derivative work owns only the new original material added to the prior copyrighted work; the derivative owner obtains no rights in the prior copyrighted works from which the derivative is derived. Dkt. 87, Counterclaim ¶¶28–29. The only material added to the prior copyrighted Morisky

Works, is the computer code that can be used to display the Morisky Works on a computer screen. The Morisky Widget copyright does not include, as a matter of law, any of the content from the underlying Morisky Works. The U.S. Copyright Office noted on the Widget Code copyright registration (TX 8-816-517) that the registration is expressly "limited" by the prior registered copyrights for the MMAS-4 and MMAS-8 in favor of Dr. Morisky. Dkt. 87, Answer ¶2; Counterclaim ¶26. Thus, absent a license from MMAR to use the Morisky Works in connection with the Morisky Widget, neither MMAS Research nor Trubow can lawfully license the Widget to third parties. 17 U.S.C. §§ 103, 106; Dkt. 87, Counterclaim ¶¶29–31.

After disputes between the parties arose over the operation of the MMAS Research, Dr. Morisky terminated the license to use the Morisky Works. *See* Second Amended Complaint ¶¶ 69-73, *Morisky v. MMAS Research LLC*, No. 2:21-cv-01301-DWC (W.D. Wash. Nov. 19, 2021) ("WA Complaint"), attached as **Exhibit 2**. The parties thereafter filed competing suits against each other in the state and federal courts in Washington and Nevada. All of these suits were ultimately resolved and dismissed *with prejudice* in consideration of a binding settlement agreement, known as the "CR2A Agreement." CR2A at 2–4 ("CR2A") attached as **Exhibit 3**.

**B.     The CR2A Agreement**

In December 2020, the parties entered into the CR2A Agreement, so called pursuant to Washington Civil Rule 2A. CR2A at 2–4. Under that rule, the terms of a settlement are binding on the parties regardless of whether they are later formalized. All prior claims and defenses between the parties were discharged in connection with the dismissals *with prejudice* of the prior suits in reliance on the obligations set forth in the CR2A. WA Complaint, at ¶¶ 73-91.

The CR2A provides that in exchange for Dr. Morisky's promise to give MMAS a two-year period to recover 55% from claims against a discrete list of third parties (Exhibit 3), MMAS

Research and Trubow agreed to: (1) immediately cease all use of the Widget derivative and the Morisky Works, except for pursuing the discrete list of Claim Settlements on Exhibit 3; (2) acknowledge Dr. Morisky as the sole and exclusive owner of the Widget derivative and all related intellectual property; and (3) assign the Widget code and USCO registration to Dr. Morisky, together with all license agreements MMAS had with third parties. CR2A at 2–4. Thus, under the terms of the CR2A, MMAS Research was to have transferred all activities regarding the licensure of the Morisky Works and the Morisky Widget to Dr. Morisky. MMAS Research breached these obligations. This breach is the subject of ongoing litigation between Morisky and Plaintiff filed before the U.S. District Court for the Western District of Washington in 2021, which is currently set for a jury trial commencing April 13, 2026 (the "Washington litigation"). WA Complaint, at ¶¶ 73-91.

Plaintiff's efforts to amend their complaint in this action to add claims arising from or in connection with the CR2A Agreement also should be rejected under the federal First-to-File rule, given the fact that all such claims have been pending before the Washington District Court since 2021. *See* WA Complaint; *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 349-50 (D. Mass. 2019) (holding that, "'where the overlap between two suits is 'nearly complete,' the usual practice is for the court where the case was first filed to resolve the issues, and the other court to defer by either staying, transferring, or dismissing the action'") (*quoting Thakkar v. United States*, 389 F. Supp. 3d 160, 2019 WL).

**C.    The Austin Letter**

In the spring of 2022, Steven Trubow began contacting Dr. Morisky's colleagues and licensees of the Morisky Works, misrepresenting the status and substance of the Washington litigation. Morisky Decl. ¶5 Among other things, Trubow mischaracterized a court's denial of a

---

| Morisky Defendants' Opposition to Plaintiff's Motion to Disqualify F. Christopher Austin | 4 | Lex Tecnica Ltd. 10161 Park Run Dr., Ste. 150 Las Vegas, NV 89145 |
|---|---|---|

preliminary injunction as a ruling that Morisky's case was frivolous, when in reality the court merely found insufficient evidence at that preliminary stage to grant injunctive relief in Morisky's favor while allowing the case to proceed on the merits. *Id; Morisky v. MMAS Research LLC*, No. 2:21-cv-01301-DWC, ECF 48 (W.D. Wash. Apr. 8, 2022).

In response to Trubow's misrepresentations, Dr. Morisky received inquiries from colleagues who had been contacted by Trubow requesting Dr. Morisky's response. Morisky Decl. ¶5. To do so, MMAR asked Mr. Austin to prepare a letter he could provide to colleagues who contacted him with concerns. *Id*. at ¶6. On April 21, 2022, Mr. Austin prepared the letter and provided it to MMAR. *Id*. ¶7. The letter was addressed "to the colleagues of Dr. Morisky" and stated the claims being asserted in the litigation. *See* Austin Letter, Apr. 21, 2022, attached as **Exhibit 4**. The letter further noted that it was being provided in response to false claims made by Trubow. *See* Austin Letter, Apr. 21, 2022, attached as **Exhibit 4**. MMAR, thereafter published the Austin Letter on the moriskyscale.com website and sent it to colleagues of Dr. Morisky. *Id.*

The Austin Letter states that "neither Mr. Trubow nor MMAS Research has any authority to use or license any copyright of Dr. Morisky," that the Widget is "a . . . derivative of Dr. Morisky's MMAS-4 and MMAS-8 registered copyrights," and that any unauthorized use would violate federal copyright law. *Id.*

Trubow then moved in the Washington action for a Temporary Restraining Order and a Preliminary Injunction to require Dr. Morisky to take the Austin Letter down and to enjoin him from sending it out on the allegation that it was defamatory. *Morisky v. MMAS Research LLC*, No. 2:21-cv-01301-DWC, ECF 69. (Aug. 1, 2022). The Washington court denied the motion, finding, among other things that the statements in the Austin Letter appeared to be "accurate statements of

Morisky Defendants' Opposition to
Plaintiff's Motion to Disqualify F.
Christopher Austin

5

Lex Tecnica Ltd.
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145

[Dr. Morisky's] contentions in this lawsuit."[1] *Morisky v. MMAS Research LLC*, No. 2:21-cv-01301-DWC, ECF 84, 9-10, (Aug. 22, 2022). The Washington Court has already addressed the regurgitated claims of Plaintiff regarding the Austin Letter in this action and found them meritless. *Id.*

Mr. Austin did not distribute the letter, nor did he prepare it for distribution to licensees of Plaintiff. Austin Decl. ¶5, attached as **Exhibit 5**. ("Austin Decl."). He prepared it for his client. MMAR distributed it to his colleagues in response to false claims first made by Trubow to those same colleagues. Morisky Decl. ¶8.

## III. LEGAL ARGUMENT

### A.    Legal Standard

Massachusetts Rule of Professional Conduct 3.7(a) provides that "a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" unless one of three exceptions applies. *Commonwealth v. Scanlon*, 493 Mass. 1020, 1020 n.1 (2024). The party seeking disqualification bears the burden of showing that "the lawyer's testimony is relevant to

---

[1] "[F]ollowing the Court's April 15, 2022 Report and Recommendation Defendants [MMAS Research and Trubow] 'commenced a wide-ranging campaign to contact numerous colleagues and licensees of [Dr. Morisky's] Copyrighted Scales to misrepresent and misuse the Court's denial of [Dr. Morisky's] preliminary injunction as a dispositive finding in favor of MMAS and against [Dr. Morisky] in this matter." Dkt. 75 at 10. So in response, 'Plaintiff directed [his counsel] to prepare a general response to [his] Colleagues." Dkt. 75 at 11; *See* also n. 2, supra. While the Court finds some of the language in the communications Defendants seek to enjoin may be confusing to recipients (all of whom are users of [Dr. Morisky's] intellectual property), **most appear to be accurate statements of [Dr. Morisky's] contentions in this lawsuit, which is a matter of public record.** Dkt. 69 at 4, 22. For instance, the statement that Plaintiff has filed a federal lawsuit alleging Defendants [MMAS Research and Trubow] are infringing registered copyrights in the MMAS-4 and MMAS-8 is true. This allegation encompasses [MMAS Research's] copyright registration in the Morisky Widget, which [Dr. Morisky] claims [MMAS Research and Trubow] improperly registered to MMAS Research and which [MMAS Research and Trubow] have agreed to reassign to [Dr. Morisky] under paragraph seven of the [CR2A Settlement Agreement (SA)]. See Dkt. 69 at 61. . . . . Finally, [Dr. Morisky's] statement that he must sign off on all use of his IP, including the Morisky Widget, is also consistent with paragraph five of the SA, which requires [Dr. Morisky] to co-sign on retroactive licensing agreements that [MMAS Research and Trubow]. *See* Dkt. 22-6 at 22-23" [emphasis added].

disputed, material questions of fact and that there is no other evidence available to prove those facts." *Carta*, 419 F. Supp. 2d at 29. The "necessity" of the attorney's testimony is determined by considering "the significance of the matters, weight of the testimony, and availability of other evidence." *Id.*

Disqualification is a "drastic measure" that courts "should hesitate to impose except when absolutely necessary." *Adoption of Erica*, 426 Mass. 55, 58 (1997) (quoting *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). The SJC has "noted [its] concern about the high cost to litigants and to the court system occasioned by motions to disqualify attorneys, especially when such motions are used as harassment and dilatory tactics." *Id.* at 64. Courts must guard against the rule being "brandished for tactical advantage." *Serody v. Serody*, 19 Mass. App. Ct. 411, 414 (1985); see also *Commonwealth v. Shraiar*, 397 Mass. 16, 22 (1986) (stating that devices such as stipulations are necessary to prevent opposing counsel from "maneuver[ing] the withdrawal of his adversary simply by scheduling him to testify on a trivial or uncontested matter").

Rule 3.7(a) applies only "at a trial." The SJC emphasized that "[b]y its plain language, *rule 3.7(a)* prohibits a lawyer from acting 'as an advocate at trial'" and held that "any disqualification that might extend to pretrial activities must derive from a different source." *Smaland Beach Ass'n, Inc. v. Genova*, 461 Mass. 214, 225, 227 (2012). The First Circuit confirmed this: "[S]hould [Rule 3.7] be read as broadly prohibiting the rendition of case-related out-of-court services prior to trial? We think not." *Culebras Enters. Corp. v. Rivera-Rios*, 846 F.2d 94, 99 (1st Cir. 1988).

B.     **Mr. Austin Is Not a "Necessary Witness"**

Plaintiff's Motion rests on the premise that Mr. Austin must testify about the Austin Letter. This premise fails because the Austin Letter is an unambiguous written document whose meaning

is established by its text. It is not an ambiguous contract requiring parol evidence of the drafter's intent. *See Bank v. Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008). It is not a record of oral settlement discussions accessible only through attorney testimony. It is a written advocacy document whose contents are apparent from its four corners, and those contents are already part of the record before this Court.

Disqualification based on speculation about what testimony might prove useful is "plainly insufficient to serve as a basis for disqualification." *Steinert v. Steinert*, 73 Mass. App. Ct. 287, 290 (2008). "[D]isqualification is not required in every case in which counsel could give testimony on behalf of his client on other than formal or uncontested matters." *Byrnes v. Jamitkowski*, 29 Mass. App. Ct. 107, 109 (1990). Plaintiff identifies no fact within Mr. Austin's exclusive knowledge. Philip Morisky, manager of MMAR, and other witnesses can testify to the circumstances surrounding the letter's creation and distribution. *See Smaland Beach*, 461 Mass. at 221 (judges must "consider whether the information sought from the attorney-witness can be presented in a different manner" and "whether the attorney-witness's testimony would be cumulative or marginally relevant"). That Mr. Austin drafted the document does not make him a necessary trial witness on the separate questions of how Dr. Morisky chose to use it. *See id.* at 223 (even where an attorney played an active role in preparing errata sheets altering deposition testimony, the trial judge erred in concluding that the attorney was a necessary witness without examining whether "alternate sources for this information were available").

### C. The Alleged "Contradictions" Are Legal Arguments, Not Factual Disputes Requiring Attorney Testimony

Disqualification based on speculation about what testimony might prove useful is "plainly insufficient to serve as a basis for disqualification." *Steinert v. Steinert*, 73 Mass. App. Ct. 287,

Morisky Defendants' Opposition to
Plaintiff's Motion to Disqualify F.
Christopher Austin

8

Lex Tecnica Ltd.
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145

290 (2008). "[D]isqualification is not required in every case in which counsel could give testimony"; the movant must demonstrate that the testimony is not merely cumulative and is "unobtainable elsewhere." *Byrnes*, 29 Mass. App. Ct. at 109. Here, Plaintiff has identified no testimony Mr. Austin could offer that is not available from the document itself, from Mr. Morisky, or from the existing record.

The core of Plaintiff's Motion rests on the assertion that the Austin Letter is "contradicted" by the Ninth Circuit's decision in *MMAS Research, LLC v. The Charité*, Case No. 23-55202 (9th Cir. 2024), and by the Nevada district court's ruling in *Adherence v. CVS Pharmacy, Inc.*, Case No. 2:24-cv-01590 (D. Nev. 2025). Dkt. 111 at 2–5. These are legal arguments about the merits of the underlying claims. Whether the Austin Letter's legal positions are correct is a question for this Court, not for a witness.

Plaintiff's reliance on *Charité* 2024 order is misplaced. That decision came out two years after the Austin Letter. It is a non-precedential memorandum that upheld the dismissal of MMAS Research's complaint against Charite but disagreed with the district court's finding that MMAS Research did not have standing to sue because it had assigned the Widget to Dr. Morisky pursuant under the CR2A. Notably, the Morisky Defendants were not parties. *See*, *MMAS Research, LLC v. The Charité*, Case No. 23-55202 (9th Cir. 2024). The Ninth Circuit found that while Plaintiff represents in the CR2A that Dr. Morisky owns the Widget derivative, the assignment of the registration was never made because the deadline to do so—60 days after the execution of a "final agreement" formalizing the terms of the CR2A—was never triggered. *Charité*, Case No. 23-55202 at 2. It never occurred because MMAS Research breached the CR2A by refusing to engage in the process set forth in the CR2A for finalizing the agreement. WA Complaint, at ¶¶ 80-91.

The Ninth Circuit did not address Dr. Morisky's underlying ownership rights to the Morisky Works, the derivative nature of the Widget, or the enforceability of the CR2A's substantive terms, including the terms requiring the finalization of the Agreement. Defendants were not parties to that proceeding and had no opportunity to present argument on the interpretation of the CR2A, including arguments that the finalization of the agreement was not a condition precedent to—nor could Plaintiff's bad faith actions to prevent such a finalization excuse Plaintiff of its obligations under—the CR2A to assign to Dr. Morisky the Widget derivative work, including the Widget copyright registration, Widget code, and all Widget licensees.

The 2025 *Adherence v. CVS* interlocutory order, which issued some three years after the Austin Letter and the occurrence of all the facts at issue in this case, is irrelevant to Plaintiff's argument for disqualification. That order in an unrelated matter to which Plaintiff was not a party granted the defendant CVS's motion to dismiss MMAR's claims for infringement of its MMAS-4 and MMAS-8 copyrights. That matter subsequently settled out of court without the issuance of a final appealable judgment. No order ever issued directing the USCO to invalidate either registration for the MMAS-4 or the MMAS-8, both of which remain registered by the USCO in the name of Dr. Morisky, and by assignment, MMAR.

None of these legal arguments require Mr. Austin to take the stand at trial. Whether the CR2A is enforceable, whether the Widget is a derivative work, and whether Plaintiff has any rights to use the Morisky Works or the Morisky Widget derived from the Morisky Works without the express authorization of MMAR, which Plaintiff does not have, are legal questions, all of which have now been improperly raised again in this action after have been pending before the U.S. District Court for the District of Western Washington for approximately 5 years. Mr. Austin's testimony would add nothing to the resolution of these questions that is not already extensively

briefed in the Washington action, this action, the CR2A, the copyright registrations, and all the evidence gathered in discovery.

**D.     Plaintiff's Reliance on *Carta v. Lumbermens* Is Misplaced**

In *Carta*, the court found disqualification warranted because the plaintiff's two attorneys were "the only people who [would] be able to testify on the plaintiff's behalf about the settlement negotiations with the defendants, the correspondence that went back and forth between the parties, the meetings that were had." 419 F. Supp. 2d at 29–30. The attorneys were the sole repositories of knowledge about unrecorded oral settlement negotiations that formed the factual backbone of the case.

The present case differs greatly from the facts in *Carta*. The Austin Letter is a written document already in evidence, to which the Court has cited 19 times. Its contents are available to the Court and to every party. Unlike the attorneys in *Carta* who were the only witnesses to unrecorded oral discussions, Mr. Austin authored a document whose contents are established by its text. A party seeking disqualification must show the attorney's testimony is "not cumulative and unobtainable elsewhere." *Id.* at 31. Here, everything Plaintiff claims to need from Mr. Austin is available from the document itself, from Mr. Morisky, from the other defendants to this action, or from the existing record.

**E.     The Austin Letter's Statements Are Consistent with the Undisputed Record**

Every position articulated in the Austin Letter is asserted in Defendants' pleading in this case. The Austin Letter states Dr. Morisky's MMAS-4 and MMAS-8 are "registered copyrights" belonging to Dr. Morisky. This is a true statement. The Counterclaims assert that "MMAR is the owner and exclusive rights holder of valid and federally registered copyrights in the MMAS-4 and MMAS-8 instruments." Dkt. 87, Counterclaim ¶45; *see also id.* ¶19 (USCO Reg. Nos.

Morisky Defendants' Opposition to  
Plaintiff's Motion to Disqualify F.  
Christopher Austin

11

Lex Tecnica Ltd.  
10161 Park Run Dr., Ste. 150  
Las Vegas, NV 89145

TX0008285390 and TX0008632533). This is verifiably true. The Austin Letter states the Widget is a derivative of the Morisky Works. Plaintiff's acknowledge this fact, and the Counterclaims assert the same. *Id.* ¶¶26–27. The Austin Letter warns that unauthorized use would constitute infringement. The Counterclaims allege precisely that. *Id.* ¶¶46, 30.

Plaintiff contends the CR2A's assignment language contradicts the Austin Letter. Dkt. 111 at 3–4. It does not. The CR2A's assignment provision was a remedy for Dr. Morisky's claims in the dismissed lawsuits that MMAS Research breached a prior agreement requiring the Widget copyright to have been registered in the name of Dr. Morisky. The settlement provision in the CR2A resolves that prior claim by requiring MMAS to transfer to Dr. Morisky the Widget copyright registration that had been wrongfully obtained in its name. It is not an acknowledgment that MMAS ever had legitimate rights to the Widget copyright. CR2A at 2. Defendants' Affirmative Defense No. 6 asserts that "Plaintiff's Widget copyright is a derivative limited by 17 U.S.C. § 103(b) to display code only, granting no rights to MMAR's MMAS-4/MMAS-8" and that "[u]nauthorized use of the underlying works voids any 'license.'" Dkt. 87 at 15. These are legal positions squarely presented in the pleadings for this Court's adjudication, should the court proceed with this duplicative action.

No order has been issued directing the United States Copyright Office to cancel or invalidate either the MMAS-4 or MMAS-8 registrations. Both remain registered in the name of Dr. Morisky and, by assignment, MMAR. *See* Intellectual Property Assignment Agreement, dated June 8, 2023 (the "IP Assignment"), attached hereto as **Exhibit 6.** The representation in the Austin Letter that Dr. Morisky is the owner of the registered copyrights, which have now been assigned to MMAR, was accurate when made in April 2022 and still is. That a court in an unrelated proceeding expressed a preliminary view on the scope of the CR2A in reviewing a Rule 12(b)

motion (not on the merits—but in the light most favorable to Plaintiff) cannot retroactively render the Austin Letter false.

**F.      Disqualification Would Cause Substantial Hardship to Defendants**

Even if Plaintiff could demonstrate necessity, Rule 3.7(a)(3) provides an express exception where "disqualification of the lawyer would work a substantial hardship on the client." Courts require "something beyond the normal incidents of changing counsel, such as the loss of extensive knowledge of a case based upon a long-term relationship between the client and counsel and substantial discovery conducted in the actual litigation." *Carta*, 419 F. Supp. 2d at 31–32. Each of these factors is present here.

Mr. Austin has represented Defendants for nearly a decade across multiple related proceedings, including the underlying Washington State litigation, this action, and actions brought by Trubow and MMAS across various jurisdictions. Since the inception of this dispute, the parties have been involved in over a dozen separate actions across multiple jurisdictions, including proceedings in Washington, Nevada, California, and Massachusetts. Mr. Austin has served as lead counsel for Defendants in each of these matters. Morisky Decl. ¶ 9. This institutional knowledge—spanning nearly a decade of complex copyright, trademark, and contract disputes involving multi-jurisdictional settlements—cannot be replicated by substitute counsel on any reasonable timeline.

Motion, discovery, and trial deadlines are approaching. Replacing lead counsel at this stage would require significant continuances for new counsel to absorb a complex intellectual property case with a multi-jurisdiction procedural history and a voluminous record, spanning nearly a decade and over a dozen other related suits brought by the parties across the nation. Plaintiff Ex Parte Application to Continue Trial at 4, *Morisky v. MMAS*, No. 2:21-cv-01301-RSM (Feb. 4, 2026), attached as **Exhibit 7**. This is not the "relatively straightforward unfair settlement practices

case" where *Carta* found no hardship because "[a] lawyer taking over this case would not need any specialized or unique knowledge." *Carta,* 419 F. Supp. 2d at 32. Here, the intersection of copyright law, derivative works doctrine, and multi-jurisdictional settlement agreements demands precisely the kind of specialized knowledge and case history that Mr. Austin uniquely possesses. The Court should respect Defendants' choice of counsel. *Smaland Beach*, 461 Mass. at 221, 225.

**G.     The Motion Is a Tactical Maneuver**

Plaintiff's own concession confirms this Motion is tactical. Plaintiff states that the purpose "is not to resolve those contradictions, or even to explore them." Dkt. 111 at 5. If Plaintiff does not intend to probe these issues at trial, then Mr. Austin is not a necessary witness, and the Motion should be denied on that basis alone. A movant cannot simultaneously disclaim any intent to call an attorney as a witness while asserting that the attorney is a "necessary" witness.

Trubow has a documented pattern of contacting Defendants' licensees under false pretenses, misrepresenting himself and MMAS Research as the rightful owners of the MMAS-4 and MMAS-8 copyrights, in explicit violation of the terms of the CR2A, and of demanding "settlement fees" without any legal basis. Dkt. 87, Counterclaim ¶¶24–25, 33–34. This pattern has continued as recently as May 2025. *Id.* ¶¶35–39. This disqualification motion is a strategy aimed at disrupting Defendants' representation rather than addressing any legitimate ethical concern. *See Adoption of Erica*, 426 Mass. at 64; *Serody*, 19 Mass. App. Ct. at 413–14.

Plaintiff's references to 18 U.S.C. § 1001 and its request for "referral of this matter to the appropriate disciplinary authorities" are gratuitous and inflammatory. Dkt. 111 at 10–11. These unsupported accusations are designed to prejudice rather than to address any legitimate ethical concern, and they further confirm the tactical nature of this Motion.

H.     **Plaintiff's Motion Improperly Seeks to Relitigate the CR2A Agreement Pending Before the Washington District Court**

The core of Plaintiff's disqualification argument depends on this Court construing the CR2A Agreement to determine whether the Austin Letter's representations of ownership are "contradicted" by the CR2A's terms. But the meaning and enforceability of the CR2A Agreement is the central issue in *Morisky v. MMAS Research LLC*, No. 2:21-cv-01301-DWC (W.D. Wash.), which has been pending since 2021 and is set for a jury trial commencing April 13, 2026. WA Complaint ¶¶ 73-91.

The Austin Letter is a representation of what Defendants own. MMAR owns the Morisky Works because that is what the parties agreed to in the CR2A. The Austin Letter does not derive its authority from the copyright registrations alone; it reflects the operative terms of a binding settlement agreement under which MMAS Research acknowledged Dr. Morisky as the sole and exclusive owner of the Morisky Works and all derivatives, including the Widget, and agreed to assign the same. WA Complaint ¶ 74(a)-(b). Plaintiff's attempt to characterize the Austin Letter as false is, in substance, an argument that the CR2A is unenforceable—a question squarely before the Washington court.

Entertaining Plaintiff's disqualification arguments on this basis would require this Court to interpret the obligations of MMAS Research under the CR2A, including without limitation: the effect of the finalization deadline, and whether MMAS Research's refusal to comply with the finalization process constitutes a breach prohibiting MMAS Research from avoiding its obligations under the CR2A to transfer the Widget, the Widget copyright registration, the Widget code and all Widget license agreements to Dr. Morisky, and barring MMAS Research from ever using or licensing the Morisky Works or the Morisky Widget. WA Complaint ¶¶ 80-91. These are the very

same issues presently pending and set for trial in the Washington Action. Adjudicating them here, even in the context of a collateral motion, risks inconsistent findings of fact and conclusions of law between two federal district courts on the same agreement. *Waithaka*, 404 F. Supp. 3d at 349-50. The Court should decline to wade into these issues on a motion to disqualify and should instead leave the interpretation of the CR2A to the court that has had jurisdiction over it for over four years.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion to Disqualify F. Christopher Austin in its entirety.

DATED: March 6, 2026

**LEX TECNICA, LTD.**

*/s/ F. Christopher Austin*
F. CHRISTOPHER AUSTIN, ESQ.
Nevada Bar No. 6559
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
*Attorney for the Morisky Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on March 6, 2026.


Dated: March 6, 2026                          Respectfully submitted,

                                                       /s/ Brianna Show