UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MMAS RESEARCH, LLC,

Plaintiff,

v.

THE CHILDREN'S HOSPITAL
CORPORATION, et al.,

Defendants.

No. 1:24-cv-12108-DJC-JDH

## ORDER ON PLAINTIFF'S MOTIONS FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

HEDGES, M.J.

Plaintiff MMAS Research LLC ("MMAS") seeks leave to file a second amended complaint to: (1) add a defamation claim; (2) add Harvard Medical School and Attorney Christopher Austin as defendants; and (3) include additional factual allegations in support of its claims. Docket Nos. 98, 106. Because I find that MMAS brings its amended claims after undue delay, I DENY MMAS's motion.[1]

## I.    FACTUAL BACKGROUND[2]

### A.  The Morisky Widget and Morisky Widget Licenses

MMAS is the registered owner of the "Morisky Widget," a copyrighted digital diagnostic assessment protocol to measure and identify medication nonadherence behaviors that allows doctors and healthcare providers to assess whether patients are taking their medications as

---

[1] Courts in this district have found that a motion to amend is a non-dispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure. *See Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-cv-11935-PBS, Docket No. 883 (D. Mass. Oct. 10, 2014); *see also Pagano v. Frank,* 983 F.2d 343, 346 (1st Cir. 1993).

[2] These facts are drawn from MMAS's amended complaint, the proposed second amended complaint, and accompanying exhibits. Docket Nos. 24, 98-2.

1

prescribed.  Docket No. 24 ¶¶ 1-2.  MMAS's CEO Steven Trubow ("Trubow"), Defendant Dr. Donald Morisky ("Morisky"), and Dustin Machi collaborated to create the Morisky Widget, which was completed in February 2017.  *Id*. ¶ 23.  The Morisky Widget is comprised of diagnostic assessments including the MMAS-4 and MMAS-8,  which were developed by Morisky in the early 2000s, and for which he registered copyrights.  *Id*. ¶¶ 31, 54-56; Docket No. 24-1 at 81-82.  The "traditional" 2006 MMAS-8 test is a "never changing static 8 questions" that measures medication adherence, whereas the Morisky Widget MMAS-8 is "dynamic[,] with constantly changing MMAS-8 questions that are condition and medication specific" and designed to "identify WHY the patient was non-adherent to their medication regimen."  Docket No. 24 ¶¶ 40, 54, 56.

Morisky and Trubow co-owned MMAS from January 2017 to July 2019.  *Id.* ¶ 3.  Dring that time, MMAS licensed the Morisky Widget software to over 200 pharmaceutical companies, universities, and hospitals, including Defendant The Children's Hospital Corporation (the "Hospital").  *Id.* ¶¶ 3, 25.  On September 4, 2019, the Hospital executed a perpetual license with MMAS for use of the Morisky Widget MMAS-8.  *Id.* ¶ 42.  Although the license required that all coding and scoring must be performed within the Morisky Widget software, MMAS alleges that the Hospital administered the Morisky Widget using paper-based tests and scored them outside the authorized platform, in breach of the license agreement.  *Id.* ¶ 5.

### B.  Morisky's Departure from MMAS and Related Litigation

In July 2019, Morisky voluntarily left MMAS and relinquished his 50% ownership interest in the company, Morisky Widget software, and Morisky Widget website.  *Id.* ¶¶ 27-28. Morisky founded a competing company, Morisky Medication Adherence Research LLC ("MMAR"), which developed a medication adherence software similar to the Morisky Widget.

2

*Id.* ¶ 26.  In December 2019, MMAS obtained copyrights to the Morisky Widget.  *Id*. ¶ 24.

MMAS alleges it "has been and continues to be the author and exclusive holder of all rights,

title, [ ] interest in, and copyright to the Morisky Widget."  *Id.* ¶ 33.

MMAS, Trubow, Morisky and MMAR have been engaged in litigation since September

2019.  *Id.* ¶¶ 29, 34-36.  In December 2020, Morisky and Trubow entered into an agreement to

settle all pending claims asserted against each other in the Washington lawsuit and Nevada

federal district court lawsuit (the "CR2A Agreement").  *Id.* ¶ 29.  In September 2021, Morisky

filed a lawsuit against MMAS for breach of the CR2A Agreement and copyright infringement in

the U.S. District Court for the Western District of Washington at Tacoma.  *Id.* ¶ 34.

On March 13, 2024, the Ninth Circuit issued a decision in a separate copyright dispute

action between MMAS and The Charité, a German hospital, "confirming that MMAS Research

owned the copyright to the Morisky Widget" and stating that the CR2A Agreement was a

"preliminary settlement agreement" that "simply outlined terms MMAS and Dr. Morisky

'desire[d] to consent and agree to' sometime in the future [and] was never finalized."  *Id.* ¶ 36;

*see also* Docket No. 98-2 at 155 (Exhibit 11 to Proposed Second Amended Complaint).  On June

25, 2025, the Nevada District Court issued a decision in a different copyright dispute lawsuit,

*Adherence v. CVS Pharmacy, Inc.* (Case No. 2:24-cv-1590-JCM (NJK)), finding that the

MMAS-4 and MMAS-8 are not copyrightable.  *See* Docket No. 98-2 ¶ 65; *id.* at 160 (Exhibit 12

to Proposed Second Amended Complaint).  MMAS asserts that these rulings are relevant to its

proposed defamation and copyright infringement claims.  *See* Docket No. 98 ¶¶ 64-66; Docket

No. 100 at 2, 4, 5, 12.

3

### C.  The 2022 Austin Letter

In April 2022, the Morisky Defendants' lawyer, Christopher Austin, prepared a letter to the "colleagues of Dr. Morisky" at the request of his client, concerning a federal copyright infringement, trademark infringement, and breach of contract action Morisky filed against MMAS and Trubow in the Federal District Court for the Western District of Washington (the "Austin Letter").  Docket No. 24-1 at 67.[3]  The Austin Letter stated that "[a]s set forth in the federal lawsuit, neither Mr. Trubow nor MMAS Research has any authority to use or license any copyright of Dr. Morisky or any derivative of any copyright of Dr. Morisky."  *Id.* (emphasis omitted).  The Austin Letter further stated that "Dr. Morisky is the registered holder of copyrights in the MMAS-4 Scale . . . and the MMAS-8 Scale. . ." and that because the Morisky Widget code is derivative of Morisky's MMAS-4 and MMAS-8 registered copyrights, "neither Trubow nor MMAS Research has any lawful right to use or license the Morisky Widget copyright, which includes. . . licensure of the Morisky Widget program."  *Id.* (emphasis omitted).  MMAS alleges that the Austin Letter was published online and emailed to 200 Morisky Widget licensees, Docket No. 24 ¶ 75, and that through the Austin Letter, Morisky "intentionally tried to terminate existing Widget licenses," *id.* ¶ 79, and "made public defamatory statements about Trubow and MMAS," Docket No. 98-2 ¶ 52.

### D.  The Hospital Clinical Trials Article

On July 3, 2022, Trubow and MMAS wrote an email to Dr. Jacob Hartz and other Hospital employees "pointing to [the Hospital's] failure to include the Morisky Widget licensing, trademark, and copyright information on [the Hospital's] ClinicalTrials.gov posting for

---

[3] The version of the Austin Letter attached to MMAS's amended complaint is illegible. However, a readable copy of the Austin Letter is also available at Docket No. 113-4.

NCT04458766"[4] titled "The Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence in Adolescents" (the "Hospital Clinical Trials Article").  Docket No. 24 ¶ 82.  The following day, Dr. Hartz responded to Trubow, stating that the Hospital updated the website to list MMAS as a collaborator on the study.  *Id.* ¶ 83.  MMAS alleges that on January 10, 2023, Dr. Hartz removed the MMAS attribution from ClinicalTrials.gov and replaced it with "a notification that the MMAS-8 was used with permission from Dr. Morisky and licensed by MMAR."  *Id.* ¶ 95.  On January 24, 2024, the Hospital updated the ClinicalTrials.gov website again, noting that a license agreement for the MMAS-8 was available from MMAR.  *Id.* ¶¶ 97-99.  MMAS alleges that "[t]he removal of [MMAS's] attributions on the [ ] ClinicalTrials.gov website and its replacement by [Morisky's and MMAR's] copyright notification and license on a platform as public and critical as ClinicalTrials.gov was defamatory and damaging because attribution in such contexts is prime academic and professional currency" and that such removal "suggested a lack of ownership in the MMAS-8 copyright and in the legitimacy of [the Hospital's] Morisky Widget license."  Docket No. 98-2 ¶¶ 213-14.

### E.  The September and November 2024 Sanofi Emails

On August 23, 2024, MMAS entered into an agreement with Sanofi, a pharmaceutical firm, to settle breaches of Sanofi France's Morisky Widget license.  *Id.* ¶ 140.  On September 19, 2024, Philip Morisky, the CEO of MMAR, wrote an email to Sanofi lawyers, copying Mr. Austin, alerting Sanofi to a federal copyright case in Washington between Morisky and MMAS, stating "[w]e allege that Trubow does not own any rights to the MMAS-4 and MMAS-8 scales and that the 'widget' is illegally hosting the MMAS scales."  *Id.* ¶ 141.  On November 26, 2024,

---

[4] An NCT number (National Clinical Trial number) is a unique 8-digit identification code assigned to every clinical study registered on the ClinicalTrials.gov database.

Philip Morisky again emailed the Sanofi lawyers, copying Mr. Austin, "attaching recent motions in the Boston case" and stating that "the Washington case [ ] will ultimately prove that Trubow does not own any rights to" the MMAS scales and the Morisky Widget and that "any settlements regarding the MMAS must go through our party." *Id.* ¶ 144. MMAS alleges that through these emails, Defendants MMAR and Austin "interfere[d] with [its] . . . confidential settlement agreements . . . using [court pleadings] to convince Sanofi to breach the Sanofi Morisky Widget License and recent Settlement Agreement and turn over the financial proceeds to Defendants MMAR and Austin or face a lawsuit." *Id.* ¶ 146.

### F. The August 2025 Publication

On August 14, 2025, the Hospital and Harvard Medical School published an article titled, "In the Use of Mobile Health Technology and Behavioral Economics to Encourage Adherence to Statins and Blood Pressure—Lowering Medication in Adolescents with Familial Hypercholesterolemia or Hypertension: Protocol for a Pre-Post Cohort Study" (the "August 2025 Publication"). Docket No. 98-2 ¶ 112. The August 2025 Publication included the following "Acknowledgments" statement:

> Boston Children's Hospital and the authors personally have been named as defendants in a lawsuit brought by MMAS Research, LLC, which is ongoing, that concerns the attribution of the Morisky Medication Adherence Scale (MMAS). We have received competing demands from MMAS Research LLC, and another entity, Morisky Medication Adherence Research, LLC, concerning the proper attribution for the MMAS. Because we are uncertain how the MMAS should be attributed and who owns the intellectual property rights, we are providing the attribution that both MMAS Research LLC, and Morisky Medication Adherence Research, LLC, have demanded that we use.

*Id.* ¶ 118. MMAS alleges that this statement was "false in numerous respects." *Id.* ¶ 120. MMAS also alleges that the August 2025 Publication "attributes" the Morisky Widget to references which in turn cite to an article from 2008 titled "Predictive validity of a medication adherence measure in an outpatient setting" which was co-authored by Morisky and published by

6

the Journal of Clinical Hypertension. *Id.* ¶ 121. The August 2025 Publication's reference to the 2008 article included: "Morisky Widget MMAS, Steven Trubow, MMAS Research LLC…," which MMAS alleges was a "false and humiliating attribution of copyright for the Morisky Widget for MMAS Research and Steven Trubow." *Id*. ¶¶ 121, 123. The reference also included a "[FREE Full text]" link that, MMAS alleges, "confused" the reader by "making it appear … that a free article on the Morisky Widget was available to users clicking on the words 'free full text.'" *Id.* ¶ 123. MMAS alleges that the "false copyright attribution" harmed MMAS and Trubow's economic relations and opportunities, and "caused Steven Trubow significant physiological damage." *Id.* ¶¶ 130-131.

## II.    PROCEDURAL HISTORY

On August 15, 2024, Plaintiff MMAS filed this lawsuit against Defendants the Hospital, Dr. Jacob Hartz, Hannah Palfrey and Dr. Sarah D. de Ferranti (collectively, the "Hospital Defendants"), Morisky, and MMAR (collectively, the "Morisky Defendants") and Does 1 through 10 (the "Doe Defendants") (collectively, "Defendants") alleging breach of contract (Count I as to all Defendants), violations of the Digital Millenium Copyright Act ("DMCA") (Count II as to all Defendants), tortious interference with contractual relations (Count III as to the Morisky Defendants), misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") (Count IV as to the Hospital and Dr. Hartz) and copyright infringement (Count V as to all Defendants). Docket No. 1. After the Hospital Defendants filed a motion to dismiss for failure to state a claim, Docket No. 20, MMAS filed an amended complaint as of right on October 21, 2024, Docket No. 24. In the first amended complaint, MMAS did not assert

7

any claims against Dr. de Ferranti, did not reassert its copyright infringement claim,[5] and withdrew its breach of contract claim against the Morisky Defendants.  Docket No. 24.

The Hospital Defendants again filed a motion to dismiss the complaint for failure to state a claim, Docket No. 25, which the Court allowed in part and denied in part, Docket No. 64.  The Court dismissed all claims against the Hospital Defendants except for the breach of contract claim against the Hospital (Count I).  Docket No. 64.  The Morisky Defendants also filed a motion to dismiss the claims against them (Count III – violations of the DMCA and Count IV - tortious interference with contractual relations) for lack of personal jurisdiction, Docket No. 54, which the Court denied, Docket No. 81.

On December 8, 2025, the parties filed a joint scheduling proposal pursuant to Local Rule 16.1 where MMAS stated that it "intend[ed] to seek leave to amend the complaint to assert a claim of willful copyright infringement against the Hospital and the authors of a June 2025 article, and to add Christopher Austin, counsel for the Morisky [D]efendants, as a defendant on the claim for tortious interference."  Docket No. 82 at 2.  Following a scheduling conference, the Court ordered that, except for good cause shown, any motions for leave to add new parties or to amend the pleadings to assert new claims must be filed by January 15, 2026, and set a fact discovery deadline of May 8, 2026.  Docket No. 86 at 1.

On January 13, 2026, MMAS filed a letter request seeking the Court's guidance concerning the approaching January 15, 2026 deadline in light of Local Rule 15.1(b)'s requirement that "[a] party moving to amend a pleading to add a new party shall serve, in the manner contemplated by Fed. R. Civ. P. 5(b), the motion to amend upon the proposed new party

---

[5] At the hearing on the Hospital Defendant's subsequent motion to dismiss, counsel for MMAS confirmed that it was no longer pursuing its copyright infringement claim.  Docket No. 51 at 7:23-8:6; *id.* at 15:23-24.

at least 14 days in advance of filing the motion." Docket No. 92; *see also* Local Rule 15.1. The following day, on January 14, 2026, MMAS filed an emergency motion for extension of time to file its motion for leave to file a second amended complaint, noting that MMAS "is trying to effectuate service on newly added defendants in accordance with Local Rule 15.1" but that it "will not be able to file [its motion for leave to amend] by the January 15, 2026, deadline … because of the 14-day waiting period." Docket No. 95 at 1. The Defendants opposed MMAS's emergency motion. Docket Nos. 96, 97.

On January 15, 2026, MMAS filed its motion for leave to file a second amended complaint, seeking to (1) add Harvard Medical School and Christopher Austin as defendants, (2) add a claim of defamation arising from statements it claims were published after the filing of the first amended complaint, and (3) include additional factual allegations "reflecting significant developments including the Ninth Circuit's March 2024 ruling affirming [MMAS's] copyright ownership." Docket No. 98 at 1.[6] MMAS stated that pursuant to Local Rule 15.1, it "sent its motion to amend and proposed second amended complaint out for service on January 14, 2026." Docket No. 98-2 at 1. MMAS noted that, notwithstanding its noncompliance with Local Rule 15.1, it filed its motion "out of an abundance of caution" and that it would refile its motion again after the 14-day period provided in Local Rule 15.1. *Id.* Nearly a month later, on February 10, 2026, MMAS filed its "final" motion for leave to file a second amended complaint certifying compliance with Local Rule 15.1. Docket No. 106.[7] Defendants timely opposed both of

---

[6] As explained below, *infra* Section IV.A, although MMAS makes no mention of this in its motion, its proposed second amended complaint also seeks to add a breach of contract claim against the Morisky Defendants (Count I) and a copyright infringement claim against the Hospital Defendants and Harvard Medical School (Count II). *See* Docket No. 98; Docket No. 98-2 at 39-45.

[7] Because MMAS simply reasserts the same arguments it made in its initial motion for leave to file a second amended complaint, I cite primarily to the initial motion in this order.

9

MMAS's motions for leave to amend. *See* Docket Nos. 103, 105, 108, 109.[8] The motions for leave to amend were referred to the undersigned on March 16, 2026. Docket No. 117.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." However, the liberal amendment policy of Rule 15 "does not mean . . . that a trial court must mindlessly grant every request for leave to amend." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006). A court "enjoys significant latitude in deciding" these motions. *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008). Reasons for denying leave to amend include "undue delay, bad faith, futility, or the absence of due diligence on the movant's part," *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20 (1st Cir. 2017) (cleaned up), and the court's decision receives deference "if any adequate reason for the denial is apparent on the record," *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (quotation marks omitted).

Moreover, "the longer a party waits before filing its motion to amend, the more exacting the standard [for granting leave to amend] becomes." *Viscito v. Nat'l Plan. Corp.*, No. 3:18-cv-30132-MGM, 2019 WL 7578462, at *2 (D. Mass. July 5, 2019). "Once the deadline for amendment set in a scheduling order has passed, 'the liberal rule [to freely give leave to amend] is replaced by the more demanding good cause standard of Fed. R. Civ. P. 16(b).'" *Id.* (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). A motion for leave to amend the

---

[8] On February 17, 2026, in an addendum to MMAS's final motion to amend the complaint, counsel for MMAS admitted that he "was mistaken" in certifying in the motion that Mr. Austin agreed to accept service on behalf of himself and stated that MMAS "has arranged for personal service … on Mr. Austin." Docket No. 110 at 2-3. On February 24, 2026, MMAS filed an affidavit evincing service of the motion for leave and proposed second amended complaint on Harvard Medical School (on January 27, 2026) and Mr. Austin (on February 16, 2026). Docket No. 112.

complaint filed just before the deadline set in the scheduling order "falls into that part of the spectrum between the permissive and more exacting standards." *Id.* at *5 (quoting *Martins v. 3PD, Inc.*, No. 11-cv-11313-DPW, 2013 WL 1320454, at *4 (D. Mass. Mar. 28, 2013)).

## IV.    DISCUSSION

### A.  Previously Abandoned Breach of Contract and Copyright Infringement Claims (Proposed Counts I and II)

In its proposed second amended complaint, MMAS seeks to reassert its previously abandoned breach of contract claim against the Morisky Defendants (Count I) and copyright infringement claim against the Hospital Defendants (Count II).[9]  Docket No. 98-2 at 39-45. However, MMAS makes no mention of these proposed amendments in its motion for leave to amend and provides no arguments in support of either claim.  *See* Docket No. 98.

As to the breach of contract claim, MMAS initially asserted a breach of contract claim against all Defendants (including the Morisky Defendants) in Count I of its original complaint filed on August 15, 2024.  *See* Docket No. 1 at 31.  MMAS then voluntarily withdrew its breach of contract claim against the Morisky Defendants in its first amended complaint on October 21, 2024, seeking only to pursue the claim against the Hospital Defendants.  *See* Docket No. 24 at 22-25.  By omitting this claim from its first amended complaint, MMAS expressly abandoned it. *See Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003).  With the breach of contract claim no longer at issue, the Morisky Defendants moved to dismiss the complaint for lack of personal jurisdiction.  Docket No. 54.  On October 23, 2025, at the hearing on the Morisky Defendants' motion to dismiss the first amended complaint, the Court confirmed that

---

[9] MMAS also seeks to assert a new copyright infringement claim against Harvard Medical School.  For the reasons explained below, *infra* Section IV.C, I deny MMAS's motion with respect to its claims against Harvard Medical School for failure to comply with the procedural requirements governing amendments set forth in Local Rule 15.1.

"the breach [of contract] claim is only between the Hospital and the plaintiff." Docket No. 114 at 33:6-8. The Court subsequently denied the Morisky Defendants' motion to dismiss the two claims asserted against them for violation of the DMCA and tortious interference with contractual relations. Docket No. 81.

Months later, in its proposed second amendment to Count I, MMAS seeks to reassert its breach of contract claim against the Morisky Defendants, alleging that they violated their contractual obligations under the CR2A Agreement in various respects. Docket No. 98-2 ¶¶ 161-166. "Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend." *Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 20 (1st Cir. 2013) (citation omitted). "[W]hen considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has at the very least the burden of showing some valid reason for his neglect and delay." *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (cleaned up) (finding seventeen-month delay between filing complaint and seeking leave to amend unjustified where all relevant facts were settled since inception of the case). Here, MMAS fails to specify what new information it gained since the filing of its second amended complaint to justify its fifteen-month delay in reasserting its breach of contract claim against the Morisky Defendants. Indeed, MMAS previously asserted the same facts underlying this new breach of contract claim in both its initial complaint, *see* Docket No. 1 ¶¶117-129, and its first amended complaint, *see* Docket No. 24 ¶¶ 70-73, 139-144. Thus, I find no justifiable reason for MMAS's dilatory conduct. *See Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390-91 (1st Cir. 2013) (affirming denial of motion for leave to amend for undue delay where plaintiff waited nearly nine months to assert new theories of liability based on facts pled in original complaint, and, even then, offered no explanation for delay in seeking leave to amend).

12

I reach a similar conclusion with respect to the copyright infringement claim MMAS seeks to reassert against the Hospital Defendants. MMAS initially asserted a copyright infringement claim against all Defendants (including the Hospital Defendants) in Count V of its original complaint. *See* Docket No. 1 at 49. MMAS then voluntarily withdrew its copyright infringement claim entirely in its first amended complaint. *See* Docket No. 24. On February 20, 2025, at the hearing on the Hospital Defendants' motion to dismiss the first amended complaint, counsel for MMAS confirmed that it was no longer pursuing its copyright infringement claim. Docket No. 51 at 7:23-8:6 (confirming that copyright infringement claim is "off the table"); *id.* at 15:23-24 ("there's no copyright claim here"). The Court then dismissed most claims against the Hospital Defendants, including MMAS's other copyright claim under the DMCA, leaving only a breach of contract claim against the Hospital. Docket No. 64 at 16.

Nearly a year later, MMAS filed its proposed second amended complaint reasserting its previously abandoned copyright infringement claim against the Hospital Defendants. Docket No. 98-2 at 43-45. The only material difference between the copyright infringement claim MMAS initially asserted in August 2024 and the "new" copyright infringement claim is that MMAS now includes an additional allegation that the Hospital Defendants' "claims … to have not infringed on the Morisky Widget copyright . . . are proved false by . . . the Nevada District Court's decision that the 2006 MMAS-8 test is not copyright protectable subject matter." *Id.* ¶ 171. The Nevada District Court decision that MMAS relies on was issued on June 25, 2025—seven months prior to MMAS filing the instant motion. *See id.* ¶ 65; *see also id.* at 160 (Exhibit 12 to Proposed Second Amended Complaint). Thus, even assuming *arguendo* that the Nevada decision presents new information that MMAS could not have been aware of at the time it abandoned its copyright infringement claim in its first amended complaint, MMAS fails to

justify its considerable delay in seeking to amend its complaint to reassert this claim.  *See Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (per curiam) (affirming finding of undue delay where four months had elapsed); *Kay v. N.H. Dem. Party*, 821 F.2d 31, 34 (1st Cir. 1987) (per curiam) (affirming finding of undue delay where three months had elapsed). "Without any explanation as to why [this claim was] not seasonably advanced, the delay in formulating [it] looms large." *Nikitine*, 715 F.3d at 391.

Allowing MMAS to reassert claims it previously abandoned more than a year earlier and mere months before the close of fact discovery would unduly prejudice Defendants.  "[T]he longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir*, 383 F.3d at 12 (citing *Acosta–Mestre v. Hilton Int'l of P.R., Inc.,* 156 F.3d 49, 52–53 (1st Cir. 1998)).  "Particularly disfavored are motions to amend whose timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy." *Id.* (cleaned up).

Because I find that these claims were asserted after undue delay and would unduly prejudice Defendants, I DENY MMAS's motion with respect to these claims.

### B.  Defamation Claim (Proposed Count V)

MMAS's proposed defamation claim is premised on four alleged defamatory statements and/or actions: (1) the Hospital Defendants' removal of MMAS's attribution from the Hospital's Clinical Trials Article and replacement with the Morisky Defendants' copyright and license information on January 10, 2023 and January 24, 2024, Docket No. 98-2 ¶¶ 211-15; (2) the Hospital Defendants and Harvard Medical School's "false and defamatory" statements in the August 2025 Publication about MMAS's ownership of the Morisky Widget MMAS-8 copyright

and the ongoing litigation, *id.* ¶¶ 216-35; (3) the 2022 Austin Letter's "false and malicious defamatory statements" to over 200 Morisky Widget licensees that neither Trubow nor MMAS had any right to use or license the Morisky Widget copyright, *id.* ¶ 237; and (4) the Morisky Defendants and Mr. Austin's "false statements" in September and November 2024 "to persuade Sanofi that [MMAS] was not the owner of the Morisky Widget copyright and to cancel or rescind the settlement agreement," *id.* ¶¶ 141-45, 238-43.

MMAS asserts that "[u]nlike cases where courts have found undue delay, [it] is not attempting to introduce claims or theories that could have been raised earlier." Docket No. 100 at 4. Yet many of the facts underlying the above alleged defamatory statements, were known to MMAS before it initiated this lawsuit and were alleged in the original complaint to support other theories of liability. In its initial complaint, MMAS asserts that: (1) the Hospital Defendants breached the license agreement by failing to include the Morisky Widget licensing and copyright information in the ClinicalTrials.gov posting for the Hospital's Clinical Trials Article on January 10, 2023 and January 24, 2024, Docket No. 1 ¶¶ 70-71; and (2) the Morisky Defendants tortiously interfered with MMAS's license agreements when they sent the April 2022 Austin Letter to 200 Morisky Widget licensees, *id.* ¶¶ 53-54, 123. Thus, these are not "newly discovered allegedly defamatory statements" or "significant developments" that excuse MMAS's significant delay in seeking leave to assert these new theories of liability. Docket No. 100 at 4-5. Rather, MMAS is "scrambling to devise new theories of liability based on the same facts pled in [its] original complaint . . . that could and should have been put forward in a more timeous fashion." *Nikitine*, 715 F.3d at 391. "Plaintiffs may not, having the needed information, deliberately wait in the wings for a year and a half with another amendment to a complaint. . ." *ACA Fin. Guar. Corp.*, 512 F.3d at 57; *see also Palmer v. Champion Mortg.,* 465 F.3d 24, 30–31

15

(1st Cir. 2006) (affirming rejection of request for leave to amend made fifteen months after commencement of action based on previously available information).

With respect to the alleged defamatory statements made by the Morisky Defendants and Mr. Austin to Sanofi in September and November 2024 and by the Hospital Defendants and Harvard Medical School in the August 2025 Publication, MMAS offers no explanation for its delay in raising these theories of liability, and instead simply states, correctly, that "amendments based on newly discovered information are generally not considered unduly delayed." *See* Docket No. 100 at 5. Yet, as the Morisky Defendants point out, MMAS was aware of the 2024 communications prior to filing the first amended complaint, and chose not to assert claims against Mr. Austin at that time. Docket No. 105 at 7. And even though the August 2025 Publication postdates the first amended complaint, MMAS provides no justification for waiting five months after the allegedly defamatory statements to file its motion for leave to amend. *See Kay*, 821 F.2d at 34 (finding undue delay where plaintiff failed to justify waiting almost three months after learning new information to seek complaint amendment).

I am also not persuaded by MMAS's assertion that the Ninth Circuit's March 13, 2024 decision "affirming [its] ownership" of the Morisky Widget copyright is a "significant development" that requires amending the complaint based on "newly discovered information." Docket No. 100 at 4-5. As Defendants assert, the Ninth Circuit's "ruling affirming the never contested fact that [MMAS] received a copyright registration of the Morisky Widget predates the original complaint by five months and does not introduce any new operative facts." Docket No. 105 at 6; *see also* Docket No. 103 at 5-6 (noting that MMAS "made allegations about [the Ninth Circuit decision] in the First Amended Complaint, filed in October 2024" and that, in any event, the Hospital "has always conceded … that MMAS Research owns the Widget copyright").

16

"[W]hen considerable time has elapsed between the filing of the complaint and the motion to amend," MMAS must show "some valid reason for [its] neglect and delay." *In re Lombardo*, 755 F.3d at 3 (cleaned up). "Delays for periods as short as eleven months, four months, and less than three month[s] have been found to constitute undue delay." *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 343 (D. Mass. 2015) (collecting cases). Here, MMAS's failure to offer any reason for its delay is fatal.[10]

Additionally, to allow MMAS to amend its complaint for a second time to assert this new theory of liability, including against two newly added defendants, seventeen months after initiating this action, and only months before the close of fact discovery, would be unduly prejudicial to Defendants. "[H]arm . . . from the lengthy delays and repeated efforts to amend the complaint are sufficient to establish the requisite degree of prejudice." *United States ex rel. Hagerty*, 146 F. Supp. 3d at 345 (noting that "a separate showing of prejudice is not necessary for the Court to deny a motion to amend on the basis of undue delay, which is inherently prejudicial to the opposing party") (citation omitted); *see also Viscito*, 2019 WL 7578462, at *2 ("As the deadline for the close of discovery approaches, the possibility of undue prejudice to the opposing party increases, and courts particularly disfavor motions to amend whose timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, and a likely major alteration in trial tactics and strategy.") (cleaned up).

---

[10] MMAS also argues that because "the defamation claim is based on new developments that occurred after the First Amended Complaint was filed" it should be permitted as a supplemental pleading under Federal Rule of Civil Procedure 15(d). Docket No. 100 at 9. However, because MMAS seeks to replace its earlier complaints by adding new claims and parties rather than seeking to supplement them, Rule 15(d) is inapplicable. *See Hunter v. McCoy*, No. 25-cv-30143-KAR, 2025 WL 3527110, at *2 (D. Mass. Dec. 9, 2025) (applying Rule 15(a) where plaintiff sought to file new amended complaint to replace prior complaints after noting that both "[p]arties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is common.").

17

Accordingly, I DENY MMAS's motion with respect to these claims.

### C. Claims against Mr. Austin (Counts III-V) and Harvard Medical School (Counts II and V)

Finally, I find that to the extent the proposed amended complaint seeks to add as new defendants attorney Christopher Austin[11] and Harvard Medical School, MMAS's failure to abide by the requirements of Local Rule 15.1 serves as a separate basis for denying MMAS's motion. "[F]ailure to comply with the local rules may be an independent ground for denial of a motion to amend." *Martins*, 2013 WL 1320454, at *4 (noting failure to comply with Local Rule 15.1); *see also Ali v. Univ. of Mass. Med. Ctr.*, 140 F. Supp. 2d 107, 111 (D. Mass. 2001) (denying leave to amend because plaintiff did not serve motion on new defendant within timeframe required by Local Rule 15.1); *In re TelexFree Sec. Litig.*, No. 4:14-md-02566-TSH, 2021 WL 5771730, at *10 (D. Mass. Dec. 6, 2021) (denying leave to amend to add new parties because plaintiff's motion was untimely under Local Rule 15.1 and the Federal Rules of Civil Procedure).

MMAS indicated its intent to seek leave to amend its complaint to add the new defendants as early as December 8, 2025.  Docket No. 82 at 2.  However, MMAS did not file its motion until more than a month later, on January 15, 2026—the deadline set forth in the Court's scheduling order.  Docket No. 98.  And even then, MMAS failed to comply with both requirements set forth in Local Rule 15.1.  First, MMAS failed to comply with the mandate that a party seeking leave to add new defendants must serve the proposed amended complaint on those new parties at least 14 days before filing the motion in the manner contemplated by Fed. R. Civ.

---

[11] Although MMAS makes no mention of this in its motion, its proposed second amended complaint seeks to add claims for violations of the DMCA and tortious interference against Mr. Austin.  Docket No. 98-2 at 44-49.

P. 5(b).  *See* Local Rule 15.1(b).[12]  In its motion, MMAS concedes that it failed to comply with this requirement, noting that it "sent its motion to amend and proposed second amended complaint out for service" one day before filing its motion—on January 14, 2026—but would "refile the documents again after the 14 day period as provided in Rule 15.1."  *See* Docket No. 98-2 at 1.[13]  As the Morisky Defendants note in their opposition to MMAS's motion, "the 14-day service rule is a substantive notice requirement, not a mere technicality."  Docket No. 105 at 4.

Second, with respect to Mr. Austin, MMAS did not comply with the requirement that "[a]mendments adding parties … be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party."  *See* Local Rule 15.1(a).  The newly asserted claims against Mr. Austin stem from a 2022 letter (based on allegations included in the initial complaint), Docket No. 98-2 ¶¶ 34, 237, and from emails that he was copied on in 2024, *id.* ¶¶ 141-45, 238-43.  MMAS cannot claim that it did not have sufficient information to name Mr. Austin in the complaint until January 2026.[14]  *See Stuart v. Town of Framingham,* No.

---

[12] Although MMAS sought an extension of the January 15, 2026 deadline for filing its motion for leave to amend the day before it was due, Docket No. 95, this does not cure its lack of compliance with the Local Rules, particularly where MMAS indicated its intent to add the new defendants more than a month earlier, *see* Docket No. 82 at 2.

[13] While MMAS certified in its motions that it served the new parties in a manner contemplated by Fed. R. Civ. P. 5(b), Docket No. 98 at 2; Docket No. 106 at 2, the Morisky Defendants contend that MMAS had not properly effectuated service of the proposed amended complaint on Mr. Austin either at the time of the January 15, 2026 filing or at the time of the February 10, 2026 filing.  Instead, on January 16, 2026—the day after filing its first motion for leave to amend—MMAS emailed Mr. Austin asking whether it could "deem [him] as having been served … as a 'new party,'" Docket No. 109-2 at 2, to which Mr. Austin did not reply, Docket No. 109-1 at 2.  On February 17, 2026, in an addendum to MMAS's final motion to amend the complaint, counsel for MMAS admitted that he "was mistaken" in certifying in his motions that Mr. Austin agreed to accept service on behalf of himself and stated that MMAS "has arranged for personal service … on Mr. Austin."  Docket No. 110 at 2-3.  Mr. Austin was subsequently served on February 16, 2026.  Docket No. 112-2 at 2.  Thus, service was not actually effectuated on Mr. Austin until more than a month *after* MMAS filed its motion for leave to amend.

[14] Because I deny this motion pursuant to Fed. R. Civ. P. 15(a) and Local Rule 15.1 based on undue delay and failure to comply with procedural requirements, I need not address the Morisky

19

16-cv-12559-IT, 2018 WL 11241962, at *1-2 (D. Mass. Nov. 15, 2018) (finding motion

untimely under Local Rule 15.1 where plaintiff knew of newly added defendant's identity when

it initiated its lawsuit).

Accordingly, I DENY MMAS's motion with respect to Mr. Austin and Harvard Medical

School.

## V.    CONCLUSION

For the reasons set forth above, I DENY Plaintiff MMAS Research LLC's motions for

leave to file a second amended complaint (Docket Nos. 98 and 106).[15]

SO ORDERED.

Dated: May 28, 2026

/s/ Jessica D. Hedges
United States Magistrate Judge

---

Defendants' statute of limitations arguments with respect to the defamation claim asserted against Mr. Austin based on the 2022 Austin Letter, and thus I do not address MMAS's relation-back arguments under Fed. R. Civ. P. 15(c)(1)(C). *See* Docket No. 105 at 12-13; Docket No. 100 at 10-11. Likewise, I do not address MMAS's argument that joinder of the new defendants was proper under Federal Rules of Civil Procedure 20 and 21. Docket No. 100 at 7-8.

[15] The parties are advised that under Federal Rule of Civil Procedure 72(a) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determinations and this order must serve and file any objections within fourteen days of being served a copy of this order, unless a different time is prescribed by the magistrate judge or the district judge.

20