UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MMAS RESEARCH, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL<br>CORPORATION, et al.,<br><br>                    Defendants. | No. 1:24-cv-12108-DJC-JDH |

## ORDER ON PLAINTIFF'S MOTION
## TO DISQUALIFY COUNSEL

HEDGES, M.J.

On February 20, 2026, Plaintiff MMAS Research LLC ("MMAS") filed a motion to revoke the *pro hac vice* admission of F. Christopher Austin, counsel for Defendants Dr. Donald Morisky ("Morisky") and Morisky Medication Adherence Research LLC ("MMAR") (collectively, the "Morisky Defendants"), and to disqualify him from further representation of the Morisky Defendants in this action on the grounds that Mr. Austin is certain to be a material witness at trial. Docket No. 111. The Morisky Defendants opposed the motion, arguing that MMAS cannot meet its burden of showing that Mr. Austin's testimony is relevant to disputed, material questions of fact, or that Mr. Austin's testimony is the only evidence available to prove those facts. Docket No. 113.

Because I find that Mr. Austin is not a necessary trial witness, I DENY MMAS's motion.

## I.    BACKGROUND

This case involves breach of contract, copyright infringement, and tortious interference claims concerning a medical diagnostics tool called the "Morisky Widget," a copyrighted digital diagnostic assessment protocol to measure and identify medication non-adherence behaviors that

1

allows doctors and healthcare providers to assess whether patients are taking their medications as prescribed.  Docket No. 24 ¶¶ 1-2.  MMAS's CEO Steven Trubow ("Trubow") and Morisky collaborated to create the Morisky Widget, which was completed in February 2017.  *Id*. ¶ 23.  The Morisky Widget is comprised of diagnostic assessments called the MMAS-4 and MMAS-8, which were developed by Morisky in the early 2000s, and for which he registered copyrights.  *Id*. ¶¶ 31, 54-56; Docket No. 24-1 at 81-82.

Morisky and Trubow co-owned MMAS from January 2017 to July 2019.  Docket No. 24 ¶ 1.  Dring that time, MMAS licensed the Morisky Widget software to over 200 pharmaceutical companies, universities, and hospitals, including Defendant The Children's Hospital Corporation (the "Hospital").  *Id.* ¶¶ 3, 25.  In 2019, Morisky voluntarily left MMAS and founded a competing company, MMAR, which developed a medication adherence software similar to the Morisky Widget.  *Id.* ¶¶ 26-27.  In December 2019, MMAS obtained copyrights to the Morisky Widget.  *Id*. ¶ 24.  MMAS alleges it is the "exclusive holder of all rights, title, and interest in, and copyright to the Morisky Widget."  *Id.* ¶ 33.

Since September 2019, MMAS, Trubow, Morisky and MMAR have been engaged in litigation over the rightful use and ownership of the Morisky Widget, among other things.  *Id.* ¶¶ 29, 34-36.  In April 2022, Morisky's lawyer, Christopher Austin, at the request of his client and in response to an email from Trubow, prepared a letter to the "[c]olleagues of Dr. Morisky" concerning a federal copyright infringement, trademark infringement, and breach of contract action Morisky filed against MMAS and Trubow in the Federal District Court for the Western District of Washington (the "Austin Letter").  *Id.* ¶ 75; Docket No. 113-4 at 1.  The Austin Letter stated that "[a]s set forth in the federal lawsuit, neither Mr. Trubow nor MMAS Research has any authority to use or license any copyright of Dr. Morisky or any derivative of any copyright of Dr.

2

Morisky." *Id.* (emphasis omitted).  The Austin Letter further stated that "Dr. Morisky is the registered holder of copyrights in the MMAS-4 Scale . . . and the MMAS-8 Scale. . ." and that because the Morisky Widget code is derivative of Morisky's MMAS-4 and MMAS-8 registered copyrights, "neither Trubow nor MMAS Research has any lawful right to use or license the Morisky Widget copyright, which includes licensure of the Morisky Widget program." *Id.* (emphasis omitted).  MMAS alleges that the Austin Letter was published online and emailed to 200 Morisky Widget licensees, Docket No. 24 ¶ 75, and that through the Austin Letter, Morisky "intentionally tried to terminate existing Widget licenses," *id.* ¶ 79.

MMAS filed this lawsuit on August 15, 2024, against Defendants the Hospital, Dr. Jacob Hartz, Hannah Palfrey and Dr. Sarah D. de Ferranti (collectively, the "Hospital Defendants"), Morisky and MMAR (collectively, the "Morisky Defendants"), and Does 1 through 10 (the "Doe Defendants") (collectively, "Defendants"), Docket No. 1, and filed an amended compliant on October 21, 2024, Docket No. 24.  In its amended complaint, MMAS asserted the following claims: breach of contract (Count I against the Hospital Defendants), violations of the Digital Millenium Copyright Act ("DMCA") (Count II against the Hospital and Dr. Hartz and Count III against the Morisky Defendants), tortious interference with contractual relations (Count IV against the Morisky Defendants), and misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") (Count V against the Hospital Defendants).  Docket No. 24.

On November 4, 2024, the Hospital Defendants filed a motion to dismiss the amended complaint for failure to state a claim, Docket No. 25, which the Court allowed in part and denied in part, Docket No. 64.  The Court dismissed all claims against the Hospital Defendants except for the breach of contract claim against the Hospital (Count I).  Docket No. 64.  On March 6,

2025, the Morisky Defendants filed a motion to dismiss the amended complaint for lack of personal jurisdiction, Docket No. 54, which the Court denied, Docket No. 81.

On February 20, 2026, MMAS filed the instant motion to disqualify Christopher Austin as counsel, Docket No. 111, which the Morisky Defendants opposed, Docket No. 113. The motion was referred to the undersigned on March 16, 2026. Docket No. 117.

## II.    ANALYSIS

A district court "has the duty and responsibility of supervising the conduct of attorneys who appear before it," *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984), which "includes the inherent authority to disqualify counsel," *Eaves v. City of Worcester*, No. 12-cv-10336-TSH, 2012 WL 6196012, at *2 (D. Mass. Dec. 11, 2012). The Massachusetts Supreme Judicial Court has cautioned that "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Carta ex rel. Est. of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23, 28–29 (D. Mass. 2006) (citing *Adoption of Erica,* 686 N.E.2d 967, 970 (Mass. 1997) (cleaned up)). Courts have "warned of the misuse of [ ] motions [to disqualify] by parties seeking to harass their opposition, " *id.* (cleaned up), and generally disfavor such motions, which "must be considered in light of the principle that courts should not lightly interrupt the relationship between lawyer and client," *Eaves*, 2012 WL 6196012, at *2 (cleaned up). "The burden rests on the party seeking disqualification to establish the need to interfere with the attorney-client relationship." *Devol Pond Ass'n v. Capone*, No. 23-cv-11042-MJJ, 2024 WL 3329128, at *2 (D. Mass. July 8, 2024) (citing *Mansor v. JPMorgan Chase Bank, N.A.*, No. 12-cv-10544-JGD, 2017 WL 4159935, at *2 (D. Mass. Sept. 19, 2017) (cleaned up)).

### 1. Massachusetts Rule of Professional Conduct 3.7(a)

MMAS argues that allowing Mr. Austin to continue to act as counsel to the Morisky Defendants violates Massachusetts Rule of Professional Conduct 3.7(a) ("Rule 3.7(a)") because he will need to testify at trial about the Austin Letter.  Docket No. 111 at 9.[1]  Rule 3.7(a) provides that a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work a substantial hardship on the client." *See* Rule 3.7(a).[2]  "The purpose of this rule is 'to mitigate potential jury confusion, to avoid the difficulties of cross-examining an adversary and to diminish the appearance of impropriety where an attorney leaves counsel table for the witness chair.'" *Doelger*, 2022 WL 2394031, at *2 (citing *Smaland*, 959 N.E.2d at 967).

"[D]isqualification is not required in every case in which counsel could give testimony on behalf of his client on other than formal or uncontested matters, nor is it automatically granted where a party attempts to call opposing counsel." *Smaland*, 959 N.E.2d at 963 (cleaned up). Rather, this analysis "requires a more searching review to determine whether the lawyer's continued participation as counsel taints the legal system or the trial of the case before it." *Id.*

---

[1] The Massachusetts Rules of Professional Conduct, as set forth by Rule 3:07 of the Massachusetts Supreme Judicial Court, comprise this Court's rules of professional conduct.  *See* Local Rule 83.6.1(a); *see also Doelger v. JPMorgan Chase Bank, N.A.*, No. 21-cv-11042-AK, 2022 WL 2394031, at *2 n. 2 (D. Mass. Mar. 21, 2022).

[2] Although Rule 3.7(a) disqualifies counsel from serving as an advocate at trial where the lawyer is likely to be a necessary witness, "[a]ny disqualification that might extend to pretrial activities must derive from a different source." *Mansor*, 2017 WL 4159935, at *2 (citing *Smaland Beach Ass'n, Inc. v. Genova*, 959 N.E.2d 955, 967 (Mass. 2012)). "The limiting phrase 'at a trial' is significant: As the Massachusetts Supreme Judicial Court, which enacted the rule, has held, Rule 3.7(a) does not 'encompass a lawyer-witness's pretrial representation' of their client." *Doelger*, 2022 WL 2394031, at *3.  For the reasons discussed further below, I find no separate basis to disqualify Mr. Austin from participating in any *pretrial* activities.

(cleaned up). Thus, courts must carefully "consider whether the information sought from the attorney-witness can be presented in a different manner, whether the attorney-witness's testimony would be cumulative or marginally relevant, or whether disqualification was a foreseeable outcome." *Id.* (citations omitted); *see also Carta*, 419 F. Supp. 2d at 29 ("A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere" (citations omitted)).

MMAS contends that the Austin Letter is "central to this case" and that Mr. Austin's testimony concerning the "effect of the Austin Letter on [MMAS's] commercial relationships as well as the intent of certain Defendants in sending it" is "of inevitable importance in this litigation." Docket No. 111 at 9-10. While the Austin Letter may be relevant to MMAS's tortious interference claim, MMAS fails to demonstrate why testimony concerning the letter is unobtainable elsewhere and identifies no facts within Mr. Austin's exclusive knowledge. It is uncontested that Mr. Austin prepared the letter at MMAR's direction, and that Philip Morisky, the manager of MMAR, distributed the letter to MMAR's colleagues. Docket No. 113-1 ¶ 9 (Declaration of Philip Morisky); *see also* Docket No. 113-5 ¶¶ 3-7 (Declaration of Christopher Austin).

This information is obtainable elsewhere. Philip Morisky can testify to the circumstances surrounding the Austin Letter's creation and distribution and has indicated his willingness to do so. Docket No. 113-1 ¶ 4. This is not a situation where the attorney is the "sole source of . . . factual allegations" central to the "backbone" of the case. *Cf. Carta*, 419 F. Supp. 2d at 29-30 (disqualifying counsel where "without the testimony of the plaintiff's lawyers, there would be no one who could testify about the factual 'backbone' of the case—i.e., the circumstances underlying the defendants' purportedly unfair settlement practices"). Rather, there are alternate

6

sources for this information, including the Austin Letter itself, such that disqualification of the Morisky Defendants' chosen counsel is unwarranted. *See Smaland*, 959 N.E.2d at 966–67 (vacating disqualification order where although attorney played active role in preparing errata sheets that altered deposition testimony, there was inadequate justification for concluding that no other witnesses could offer relevant testimony). Because I find that MMAS has failed to establish that Mr. Austin is a necessary witness at trial, I decline to disqualify him as counsel on that basis.

### 2. Local Rule 83.6.4

MMAS also argues that Mr. Austin's *pro hac vice* admission should be revoked "on ethics grounds." Docket No. 111 at 6. Admission to practice *pro hac vice* before this Court is governed by Local Rule 83.5.3 and can be revoked after a finding of misconduct pursuant to Local Rule 83.6.4(a)(2). "Pro hac vice admission is generally considered a privilege and not a right." *Siupa v. Astra Tech, Inc.*, No. 10-cv-10525-LTS, 2012 WL 6622492, at *3 (D. Mass. Dec. 18, 2012) (citing *Obert v. Republic W. Ins. Co.*, 190 F. Supp. 2d 279, 298 (D.R.I. 2002)). A court has the power to "regulate the conduct" of attorneys admitted on a *pro hac vice* basis, *see United States v. Panzardi Alvarez,* 816 F.2d 813, 817 (1st Cir. 1987), and "consistent with such power… courts have disqualified attorneys and revoked pro hac vice admission as a sanction for improper or unethical conduct," *Siupa*, 2012 WL 6622492, at *3; *see also* Local Rule 83.6.4(a)(2) (listing revocation of *pro hac vice* admission as potential discipline for attorney misconduct). Courts have revoked *pro hac vice* admission where an attorney "falsified evidence and lied point black with premeditation to the court," *Ryan v. Astra Tech, Inc.*, 772 F.3d 50, 63 (1st Cir. 2014), or filed "a false and misleading affidavit . . . in support of a frivolous motion to disqualify," *Obert*, 190 F. Supp. 2d at 299. No such circumstances are present here.

MMAS contends that Mr. Austin has a conflict of interest that requires his immediate disqualification as *pro hac vice* counsel. Docket No. 111 at 7. But MMAS offers no additional information about this apparent conflict, and thus, I find that this argument lacks merit.[3] MMAS also claims that Mr. Austin has "made and repeated numerous material representations" to the Court and to the parties in this case that are "inaccurate." *Id.* at 2. In support of this claim, MMAS unpersuasively argues that statements made by Mr. Austin in the 2022 Austin Letter were false or contradictory because two subsequent legal decisions rendered them so: (1) a Ninth Circuit decision issued on March 13, 2024, which determined that MMAS "remains the registered owner" of the Morisky Widget, *id.* at 3, and (2) a recent Nevada District Court decision issued on June 25, 2025, which found that the MMAS-4 and MMAS-8 are not copyrightable, *id.* at 5. Although MMAS acknowledges that the Austin Letter predates those decisions, it contends that Mr. Austin "has made no attempt at trying to retract [his] contrary statements . . . [n]or has he attempted to rectify the confusion his letter caused" to MMAS's licensees. *Id.* I am not persuaded by these arguments and find no other basis whatsoever for MMAS's claims that Mr. Austin has engaged in unethical misconduct. Accordingly, I decline to revoke Mr. Austin's *pro hac vice* admission.

That MMAS sought drastic, disfavored relief—disqualification of its adversaries' chosen counsel based on largely meritless grounds—is concerning. MMAS's motion levels serious allegations against Mr. Austin, including an alarming and seemingly gratuitous claim that Mr. Austin has violated federal law, *see* Docket No. 111 at 6, without any meaningful evidence. MMAS filed a very similar motion to disqualify Mr. Austin as counsel in another litigation

---

[3] To the extent MMAS is attempting to argue that Mr. Austin's potential of being called as witness at trial presents a conflict of interest, I have already found this argument unpersuasive.

between Morisky and MMAS in the U.S. District Court for the Western District of Washington.[4] *See* Docket No. 125-1 at 2; *see also* Motion to Disqualify F. Christopher Austin, *Morisky v. MMAS Research LLC et al.*, No. 2:21-cv-01301-RSM (W.D. Wash. Oct. 16, 2025), ECF No. 286.  I caution MMAS to heed Rule 11's prohibition against filing motions for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

### III.    CONCLUSION

For the foregoing reasons, MMAS's motion is DENIED.

SO ORDERED.[5]

Dated: May 28, 2026

/s/ Jessica D. Hedges
United States Magistrate Judge

---

[4] The court did not rule on MMAS's motion to disqualify prior to entering a default judgment against them, but noted that "the Court fails to see Defendants' 'motion to disqualify opposing counsel as [anything but] a litigation tactic' deployed in bad faith at the last minute." Docket No. 125-1 at 4.

[5] The parties are advised that under Federal Rule of Civil Procedure 72(a) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determinations and this order must serve and file any objections within fourteen days of being served a copy of this Order, unless a different time is prescribed by the magistrate judge or the district judge.