AUTHORS ALLIANCE



# The Morisky Medical Adherence Scale: a case study in using flimsy copyright claims to inhibit research

By Dave Hansen / November 7, 2025

   

For anyone who is a regular reader of Retraction Watch, few things are more frustrating than seeing research retracted over copyright or licensing issues, since licensing has very little to do with the quality of the underlying research.

It is especially frustrating when retractions are based on copyrights that don't even exist. That's the case with the Morisky Medical Adherence Scale (MMAS),  a widely used, standardized medical diagnostic survey that has triggered numerous retractions for unlicensed use, along with as a lengthy history of litigation brought by the purveyors of the MMAS against researchers and their universities.

Those lawsuits often allege that using the MMAS without permission constitutes copyright infringement. Yet, despite years of litigation, most cases had settled and none had reached a final judgment on the merits until recently. In June, the District Court for the District of Nevada concluded that the MMAS is, in fact, not protected by copyright: "plaintiff fails to identify any argument grounded in legal precedent that would render their forms copyrightable" and thus dismissed their copyright claims outright.

Given the number of ongoing copyright lawsuits that are based at least in part on the MMAS, researchers and educational institutions should take note of this important decision.

## The MMAS

The Morisky Medical Adherence Scales (known as the MMAS-4 and MMAS-8, which contain four and eight questions, respectively) are "structured diagnostic self-report measures that assess medication adherence." Essentially, these are tools designed to provide a uniform measure of the likelihood of a patient's adherence to a prescribed medication regimen. It is one of a large number of "patient-reported outcome measures" to assess medication adherence among patients.

The MMAS questions are straightforward. This, for example, is the entirety of the MMAS-4 questionnaire:

1. Do you ever forget to take your medication?

2. Do you ever have problems remembering to take your medication?

3. When you feel better, do you sometimes stop taking your medication?

4. Sometimes if you feel worse when you take your medication, do you stop taking it?

The MMAS has its origins in a series of studies conducted in the early 1980s regarding the effectiveness of different educational interventions on health outcomes. The first version was published in a 1986 article co-authored by Donald Morisky, Lawrence Green, and David

Levine, with nearly identical questions (and the Adherence website has described the version of the test in this article as being in the "public domain"). The questions are below; differences with the MMAS-4 are marked in bold:

1. Do you ever forget to take your **medicine**?

2. **Are you careless at times about taking** your **medicine?**

3. When you feel better do you sometimes stop taking your **medicine**?

4. Sometimes if you feel worse when you take **the medicine**, do you stop taking it?

Dr. Donald Morisky and his associate, Steve Trubow, together with companies known as MMAS Research (controlled by Trubow), Morisky Medication Adherence Research (doing business as "Adherence"), which seems to be controlled by Dr. Morisky or his son, Philip Morisky, have made claims to own the MMAS at various points in time. (There is a whole other story about the messy relationship and multiple lawsuits between these parties that I don't have space to tell here.)

For purposes of this post, it's enough to state that combinations of these parties have engaged in licensing the MMAS to a large number of researchers, universities, hospitals, and others involved with the provision and measurement of medication. They've also initiated a number of copyright infringement suits against those who have used the MMAS without obtaining their permission.

Among the lawsuits (many of them still active):

- MMAS Research LLC v. Karolinska Institute, New York University and The University of Pennsylvania

- MMAS Research LLC  v. JIMRO Co., Ltd., Medical Corporation Tesshokai Japan, Mitsubishi Tanabe Pharma Corporation, Nihon University School of Medicine, and the University of Tokyo

- MMAS Research LLC  v. Icahn School Of Medicine At Mount Sinai, New York University, Pfizer Inc.

- MMAS Research LLC  v. Duke University (and several individuals)

- MMAS Research LLC v. University of Edinburgh

- MMAS Research LLC v. Charite Universitatsmedizin Berlin

- MMAS Research, LLC v. Kantar Health, LLC

- MMAS v. University Health Board, East and North Hertfordshire NHS Trust, Michigan State University, University College London, University of Leeds (and individual defendants)

- MMAS Research, LLC v. Kings College London (and individual defendants)

- MMAS Research, LLC v. Karolinsa Institute and the University of Oslo

- MMAS Research LLC v. Maastricht University Medical Center

- MMAS Research LLC v. Brigham and Women's Hospital Heart and Vascular Center, Dana Farber Cancer Institute, and Harvard Medical School

- MMAS Research LLC v. Boston Children Hospital

- MMAS Research LLC v. Albert Einstein College of Medicine, Cardinale Giovanni Panico General Hospital, Maastricht University Medical Center, Novartis Pharma GmbH, St. Olavs Hospital, Universita di Pavia, University of Naples Federico II, Yale University

- MMAS Research LLC v. Albert Einstein College of Medicine, Cardinale Giovanni Panico General Hospital, Maastricht University Medical Center, Morisky Medication Adherence Research LLC, Novartis Pharma GmbH, St. Olavs Hospital, Universita di Pavia, University of Naples Federico II and Yale University

- MMAS RESEARCH LLC v. Novartis Pharma GmbH

- MMAS Research, LLC v. The Regents of The University of California

- MMAS Research LLC v. Johnson and Johnson Innovative Medicine

- Adherence v. CVS Health Corporation and Asembia, LLC

## Copyright Protection 101

Copyright infringement claims are present in all of these suits, and such claims presuppose the existence of a valid copyright. Before turning to the MMAS itself and whether such scales are copyrightable, it's important to understand some basics about copyright law.

To start, copyright law protects original expressions, not ideas. This principle has been a fundamental part of copyright for nearly 150 years.  It was first recognized and developed by the courts, and is now reflected in Section 102(b) of the Copyright Act, which states that copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery." In other words, copyright only protects the

particular way ideas are expressed, and even then, only to the extent that the expression is original.

This distinction becomes especially important when dealing with functional works like diagnostic tests and questionnaires. The heart of the issue is, what happens when there are only limited ways to express a particular idea or functional concept?

This question describes a concept that copyright law calls "merger," which can be traced back at least in part to a Supreme Court case from over a century ago, *Baker v. Selden* (1879). In that case, the Court held that a book explaining an accounting system could be protected by copyright, but the system itself could not be. Crucially, the Court ruled that copyright in the book did not prevent others from using the accounting forms and methods described within it.

The reasoning was straightforward: if copyright in the explanatory text could prevent use of the system itself, copyright law would effectively grant patent-like protection to functional methods. As the Court in *Baker* explained, "where the art it teaches cannot be used without employing the methods and diagrams used to illustrate the book, or such as are similar to them, such methods and diagrams are to be considered as necessary incidents to the art, and given therewith to the public."

Short diagnostic tests and questionnaires designed to achieve functional objectives face significant challenges in claiming copyright protection because use of the exact phrasing is often a "necessary incident" to using the underlying system. The questions must be asked in certain ways to elicit clinically meaningful responses. When the functional requirements dictate the form of expression, copyright protection must yield.

### The MMAS Licensing and Some Notes About Copyright Trolls

Despite the above background on the limits of copyright, one might be tempted to think that with so many lawsuits filed over use of the MMAS-4 and MMAS-8, surely there must be some validity to their copyright claims. How could so many lawsuits persist?

Copyright litigation is known for being expensive and high-stakes. Litigation costs can easily exceed six figures, and the risk to a defendant of losing a lawsuit is steep, with statutory damages of up to $150,000 per work infringed. Some litigants use this potential liability to

their strategic advantage when threatening as well as actually filing lawsuits, even when they have dubious copyright claims.

The Seventh Circuit Court of Appeals recently described the "copyright troll" strategy as one in which a litigant "bring[s] strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation. Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation."

That seems an apt description of the behavior of those behind the MMAS suits. These plaintiffs bring numerous suits that seem plausible at first glance, promptly settle virtually all of them, with defendants agreeing to a payment that would be far less costly than litigation. When seriously challenged, the litigants predictably fold.  For example, in one non-confidential settlement agreement that we reviewed between MMAS and the University of California, the MMAS fully released its claims against the university, granted a perpetual license to the university for use of the MMAS and the MMAS Widget (a software tool to administer the MMAS), and granted broad covenants not to sue the university. In return, MMAS secured for itself very little. The most notable things were (1) a promise from the university not to seek attorneys' fees, costs, and sanctions from MMAS, and (2) a promise of minimal compensation: $1500 for training sessions with researchers who may wish to use the proprietary "MMAS Widget." This settlement aligns with the kinds of agreements MMAS has come to in other contexts – e.g.,  this Tufts agreement for a license for $500, or this license agreement with UT Southwest Medical for $6000.

Though those examples may provide some reassurance that perhaps the MMAS financial bark is bigger than its bite, the aggressive behavior has become a major hindrance in other ways – such as disrupting publication by leading to retractions, as noted above. In fact, it has become so noxious that one university–the University of Pennsylvania–has gone so far as to publish a webpage warning its researchers against using the MMAS-4 and MMAS-8 at all.

One factor that has allowed these suits to persist is that, so far, MMAS Research, Adherence, and the other associated plaintiffs have slipped out of their many lawsuits before the courts could come to any meaningful decision on the merits about the underlying copyrights in the MMAS-4 and MMAS-8. That is, until now.

Adherence v. CVS

In August 2024, Adherence, the d/b/a of Morisky Medication Adherence Research LLC, brought a copyright infringement suit, along with a series of trademark and state law claims, against CVS and Asembia, a specialty pharmacy and healthcare solutions company. According to the filings, Asembia created the "Asembia-1 platform," a web-based platform, which is used by CVS for managing pharmacy information, and which included the MMAS-4 and MMAS-8 questionnaires.

By November 2024, CVS and Asembia moved for partial dismissal, asking the court to dismiss Adherence's copyright claims because, as CVS & Asembia argued, Adherence had no valid copyright in the MMAS-4 and MMAS-8.

The defendants pointed to *Bibbero Systems, Inc. v. Colwell Systems, Inc.*, a controlling 9th Circuit case applying *Baker v. Selden* and the line of cases it spawned. *Bibbero* addressed copyright in the context of forms to help doctors structure health insurance reimbursement requests by recording relevant patient and care information. In that case, the court held that "it is well-established that blank forms which do not convey information are not copyrightable," citing with approval the Copyright Office's regulation on the subject which defines such forms as including "time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information." The court went on to explain that "the fact that there is a great deal of printing on the face of the form —because there are many possible diagnoses and treatments—does not make the form any less blank."

Applying this precedent to the MMAS, the district court easily found that the works were not protectible, and therefore the copyright claims failed. The court held that "The MMAS algorithm, even if useful in application, constitutes a method or system, and the forms used to implement it are functional tools for data collection, not original expression entitled to copyright protection."

Shortly after the district court's order was issued, the parties "reached a private, and confidential settlement agreement" involving a dismissal of all remaining claims and counterclaims of the parties.

Takeaways

The *Adherence v. CVS* decision clarifies that the MMAS-4 and MMAS-8, like many short diagnostic surveys and functional tools, are not suitable subject matter for copyright protection. The MMAS consists solely of conventional, factual questions, designed for efficiency and clinical functionality. The aim of copyright has always been to encourage new research and discoveries, not stand in the way of researchers by preventing use of important tools.

The Copyright Office should receive notice of the District of Nevada's *Adherence* decision pursuant to Section 508 of the Copyright Act. The Office can take notice of this action and could cancel the registration, though it is not obligated to do so. If it were to take this step, it would have an immediate impact on other ongoing litigation. Regardless, defendants in other suits would do well to bring the *Adherence* case to the attention of the court overseeing their suits.

That said, the *Adherence* case likely won't end all the MMAS litigation – most of the suits include other claims too. Some of them include copyright claims about a related tool, the "MMAS Widget," a basic electronic tool to administer the MMAS. The courts have not yet ruled on whether it is protectable (we have our doubts).  They also include a variety of trademark claims about use of the MMAS or Morisky name. The cases above include some good arguments against those claims (especially the CVS/Asembia motion for summary judgment on the trademark claims, though we will never hear the court's view on that motion since the parties settled the remaining claims).

Unfortunately, many researchers and institutions may still feel compelled to pay licensing fees simply to avoid the risk of litigation in cases such as this. Other widely used scales and functional tools may leave researchers and clinicians in the same uncomfortable position: either pay to "settle," or brace for litigation. This is clearly not a sustainable state for the scientific community.

Collective action on issues like this can be challenging – for any individual institution, the costs of litigation can far exceed the alternative of paying a small licensing fee. But, especially for those nonprofit research universities that have an interest in broad public benefits of their work, I think this case illustrates the value of vigorously defending against claims that conflict with fundamental legal principles that support research.

## Discover more from Authors Alliance

Subscribe to get the latest posts sent to your email.

Type your email... | Subscribe

# Related Posts

## What Does "Exclusive" Mean?

June 11, 2026

When the owner of, say, a research paper assigns an exclusive license in a work to a publisher, any prior nonexclusive licenses are carved out...

Read Post »

## Grant Accounting as Publishing Policy: OMB's Proposed Rule Changes

June 4, 2026

Grant administration rules are not where most authors look for news that affects their work. But, the so-called "Uniform Guidance" published in Title 2 of...

Read Post »

## Leave a Comment

Your email address will not be published. Required fields are marked *

Type here..

Name

Email

Website

☐ Notify me of follow-up comments by email.

☐ Notify me of new posts by email.

Post Comment

---

## 2 thoughts on "The Morisky Medical Adherence Scale: a case study in using flimsy copyright claims to inhibit research"

Pingback: Debunking 'When Prophecy Fails'; 'Godfather of AI' first to reach 1 million citations; 'Cake causes herpes?' – Retraction Watch – Cyptea

Pingback: The Complicated Fight Over the Morisky Scale - Plagiarism Today

Search...

Subscribe for our latest news and analysis on law, policy, and authorship for the public good.

Email Address

Subscribe

# Categories

Select Category

Unless otherwise indicated, Authors Alliance blog content is made available under a Creative Commons Attribution 4.0 International License.



Disclaimer

Privacy Policy

Donate

## Contact Us

2108 N ST # 8898
Sacramento, CA 95816

info@authorsalliance.org

## Subscribe to Blog via Email

Email Address

Subscribe

Copyright © 2026 Authors Alliance