**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MMAS RESEARCH LLC,<br><br>Plaintiff / Counter-Defendant,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL CORPORATION, d/b/a BOSTON CHILDREN'S HOSPITAL, et al.,<br><br>Defendants. | Civil Action No. 1:24-cv-12108-DJC<br><br>Chief Judge Denise J. Casper<br>Mag. Judge Jessica D. Hedges<br><br>**PLAINTIFF / COUNTER-DEFENDANT'S OPPOSITION TO THE MORISKY DEFENDANTS' MOTION TO STAY (DKT. 144)**<br><br>Oral Argument Requested |

### INTRODUCTION

The Morisky Defendants ask this Court to freeze MMAS's own motion for partial summary judgment – filed two days before this stay – so that a different court can decide a question that court has forbidden itself to reach. The Motion rests on a single premise: that the Western District of Washington is "on the verge of" resolving ownership of the Morisky Widget copyright "by default judgment," and that the result will moot Count I of this action. (Dkt. 144.) Every link in that chain is refuted by the Washington record

1

the movants themselves created – and now by the Hospital, the only defendant to the claim the Motion says will be mooted, which opposes the stay outright. (Dkt. 150.)

First, the District of Washington is structurally barred from deciding ownership on the merits. Its Limited Lift Order reopened that case "for the limited purpose of allowing Plaintiff to file a motion for sanctions" and directed that the court "will not accept any additional motions or filings" until the sanctions motion is resolved. (Wash. Dkt. 229 at 1–2.) The "about to decide" ownership ruling the stay waits for is one the first-filed court cannot make. Second, the default the movants invoke was entered as a discovery-and-conduct sanction – "not for failure to appear," and on "recent" procedural violations – and adjudicates nothing about ownership, the CR2A, or the Widget. (Wash. Dkt. 324 at 2–4.) Third, ownership has already been decided the other way: construing this very CR2A, the Ninth Circuit held the agreement "was never finalized" and that "MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget." *MMAS Research, LLC v. The Charité*, No. 23-55202, slip op. at 2–3 (9th Cir. Mar. 13, 2024) (mem.). Fourth, the only Washington instrument that purports to decide ownership is a twenty-nine-page "[Proposed] Order" the movants

2

drafted and no judge has signed – a brief appended to a Notice of Filing (Wash. Dkt. 336), not a ruling of any court. (Wash. Dkt. 336-1.)

The Hospital's opposition removes what little support the Motion had left. The Motion's premise is that ownership of the Widget is the threshold question on which the Hospital's summary-judgment motion turns, so that a Washington ownership ruling would moot Count I. The Hospital says otherwise. The movants, it states, "are wrong to say that the ownership of the Morisky Widget copyright is a key issue for the Hospital on summary judgment," because the Hospital's motion "focuses only on the lack of evidence of any damages caused by the alleged breaches of contract." (Dkt. 150 at 2.) The Hospital rejects the first-to-file leg as well: *Cianbro* "does not apply, because the two cases are not 'identical actions,'" the Hospital not being a Washington party and the only claim against it being breach of a contract to which the Morisky Defendants are not even parties. (Id. at 2–3.) And the Hospital distinguishes each of the three decisions on which the Motion's "pattern" argument depends, because – unlike this case, where the Court has dismissed the copyright claim – every one of them pleaded copyright infringement. (Id. at 3.)

Neither ground the Motion invokes survives. The first-to-file rule does not reach a claim whose only parties and conduct are absent from the

Washington pleading, and it cannot serve a rule that exists to prevent duplicative merits adjudication when the first court is forbidden to reach the merits. And a discretionary *Landis* stay fails at the threshold: the movants show no hardship from litigating a contract question, a stay would injure MMAS by freezing its pending summary-judgment motion, its opposition to the Hospital's pending summary-judgment motion, and its pending objection to a one-sided discovery record, and the stay would not avoid an inconsistent ruling but manufacture one, clearing the runway for a Washington decree that purports to adjudicate this very case in the absence of the parties before this Court. The Motion's timing lays its object bare – it was filed two days after MMAS moved for partial summary judgment and while MMAS's objection to a one-sided discovery record sits pending before this Court. The Motion should be denied.

## BACKGROUND

**A. This action and its posture.** MMAS Research's operative First Amended Complaint pleads that Boston Children's Hospital breached the parties' executed September 4, 2019 license to the Morisky Widget and misused the underlying intellectual property. (Dkt. 24.) Count I is pleaded against Boston Children's Hospital alone – the claim was dismissed as to the individual defendants (Dkt. 64), and the Morisky Defendants' own answer

4

labels it "As to Defendant BCH Only" (Dkt. 99 at 10 & n.1). BCH is not a party to the Washington action. The license it is alleged to have breached, the paper-screener use, the clinical-trial copyright-management-information conduct (NCT04458766), and the trade-secret algorithm disclosure appear nowhere in the Washington pleading. On July 6, 2026, MMAS moved for partial summary judgment (Dkt. 142), supported by the Declaration of Steven Trubow and a Local Rule 56.1 Statement of Undisputed Facts, and filed its Local Rule 7.1 certificate of consultation the next day (Dkt. 143). The Morisky Defendants filed the present stay two days after the summary-judgment motion, on July 8 (Dkt. 144). On July 10, 2026, the Hospital moved for summary judgment on Count I (Dkt. 146; Dkt. 147), and MMAS's opposition to that motion is now due.

**B. The counterclaims and the discovery record.** The Morisky Defendants – Donald Morisky and Morisky Medication Adherence Research LLC (MMAR) – assert three counterclaims against MMAS and Steven Trubow personally: trademark infringement, a Chapter 93A claim, and a declaratory-judgment claim of exclusive ownership of the Morisky marks. (Dkt. 99.) Each turns on the contested ownership chain and on U.S. Trademark Registration No. 5,837,273 – a registration cancelled effective March 6, 2026, and held of record by Dr. Morisky rather than by MMAR, the

5

entity asserting the claim. (Dkt. 139 at 9.) Fact discovery has run in one direction: on June 22, 2026, the Hospital examined MMAS's principal for a full day, individually and as MMAS's Rule 30(b)(6) designee, while MMAS has deposed no one. (Dkt. 139 at 5, 11.) The Magistrate Judge denied MMAS's motion to extend discovery, and MMAS's Rule 72(a) objection to that ruling – seeking the reciprocal chain-of-title and recordation discovery it was denied – is now pending before this Court. (Dkt. 139.)

**C. The Washington action.** In *Morisky v. MMAS Research*, No. 2:21-cv-01301 (W.D. Wash.), the Clerk entered default on April 22, 2026 (Wash. Dkt. 325) pursuant to an Order for Entry of Default that rests, by its terms, on "recent" procedural conduct under the court's inherent power – separate status reports filed against a joint-report order, an eve-of-trial disqualification motion the court read as "a litigation tactic" in bad faith, duplicative motions in limine, and a sanctions motion the court treated as "a clear delay tactic." (Wash. Dkt. 324 at 2, 4.) The order expressly states the court was "not relitigating" the prior nonpayment issue and says nothing about ownership. (Id. at 3.) The movants' default-judgment motion was itself filed out of time (Wash. Dkt. 337), and the proposed order accompanying it (Wash. Dkt. 336-1) remains unentered.

**D. The ownership question is already answered, and is off-limits in the District of Washington.** The Ninth Circuit construed this CR2A and held it effected no transfer, leaving MMAS the registered owner of the Widget. *Charité*, slip op. at 2–3. The Morisky Defendants' own answer concedes that decision issued on March 13, 2024, in No. 23-55202, and that its quoted language "appears in the decision" (Dkt. 99 ¶ 36) – disputing only its effect, not its text. And the Washington court's Limited Lift Order forecloses any merits ruling on ownership until the sanctions motion resolves. (Wash. Dkt. 229 at 1–2.)

**E. The Hospital opposes the stay.** On July 10, 2026, the Hospital filed its opposition to the Motion. (Dkt. 150.) It opposes "in full" any stay that would reach the claim against it, and states that it "objects strongly to any stay of the claim against the Hospital." (Id. at 1, 3.) It states that the movants "have not been diligent" and "could have sought a stay at any time after MMAS Research brought them into this case in October 2024." (Id. at 2.) It further recounts that the movants first told the Hospital on June 18, 2026 that they intended to seek a stay, then decided not to file; that the Hospital, so advised, proceeded to take the June 22 Rule 30(b)(6) deposition and to research and draft its summary-judgment motion; and that the movants announced their intention to move for a stay after all only on July 7, 2026,

7

"just days before the summary judgment deadline and after the Hospital had spent most of the time and money needed to prepare the motion." (Id. at 1–2.)

## ARGUMENT

### I.    THE FIRST-TO-FILE RULE DOES NOT SUPPORT A STAY.

#### A.    The rule is discretionary and reaches only substantially similar parties and issues.

In this Circuit the first-filed rule is a discretionary guide, not a command; it yields to the balance of convenience and to equitable exceptions. *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987); *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). Its office is to avoid duplicative litigation of substantially the same parties and issues in two courts; in this District it "normally applies to cases where the issues and parties involved in both lawsuits are identical." *EMC Corp. v. Parallel Iron, LLC,* 914 F. Supp. 2d 125, 127 (D. Mass. 2012). Where the parties and issues that matter to the claim at hand are absent from the earlier case, the rule does not apply.

8

**B.    The claim the Motion says Washington will moot runs against a single defendant absent from Washington, on conduct absent from the Washington pleading – as the Hospital itself confirms.**

The Motion cannot show the overlap the rule requires as to Count I. That claim runs against Boston Children's Hospital alone (Dkt. 99 at 10 & n.1) – not a Washington party – on the executed Hospital license, a contract the Washington Second Amended Complaint never pleads. (Dkt. 24; Wash. Dkt. 22.) The Washington pleading's claims arise from the CR2A and the parties' own dealings; they do not touch the Hospital license, the paper-screener breach, the NCT04458766 copyright-management-information conduct, or the trade-secret disclosure that Count I and this action put at issue. Plaintiff does not contend there is no party overlap anywhere in the two cases – Morisky, MMAR, and MMAS appear in both – but as to the single defendant and the conduct that matter for Count I, there is none.

The Hospital agrees, and says so in terms. The first-to-file rule of Cianbro "does not apply, because the two cases are not 'identical actions'": "[t]he parties are not identical, as the Hospital is not a party to the Washington case, and the issues are not identical, as the only claim against the Hospital in this case is a claim of breach of a contract to which the Morisky defendants are not even parties." (Dkt. 150 at 2–3 (citing *EMC Corp.*, 914 F. Supp. 2d at 127).) That is dispositive of the first-to-file leg as applied

9

to Count I. Every party actually adverse on that claim – the Hospital and MMAS – tells this Court the rule does not reach it. The only litigants urging the rule are the two parties who are not parties to the contract at all.

### C.    The first-filed court is forbidden to reach the shared question, so the rule's rationale has nothing to serve.

Even where ownership of the Widget is a common thread, the first-to-file rule exists to prevent two courts from deciding the same merits question. Here the first-filed court has forbidden itself to reach that question: the Limited Lift Order accepts no filing other than the sanctions motion until it resolves. (Wash. Dkt. 229 at 1–2.) A rule designed to avoid duplicative merits adjudication cannot justify a stay when the earlier court is structurally barred from adjudicating the merits at all. Nor is the ownership question genuinely "first" anywhere but the Ninth Circuit, which already decided it. Charité, slip op. at 2–3.

### D.    The three decisions the Motion invokes are not this case – and the one it leans on hardest is on appeal.

The Motion's appeal to "three courts across two circuits" applying the rule does not change the analysis, because each of the three actions pleaded a claim this case does not have. As the Hospital demonstrates, "[u]nlike in the cases against Johnson & Johnson, the Charité Hospital, and NYU that the Morisky defendants cite, there is no claim for copyright

10

infringement in this case. The Court has already dismissed that claim." (Dkt. 150 at 3.) The Hospital attaches the operative complaints in all three actions, each of which pleads copyright infringement. (Dkt. 150-1; Dkt. 150-2; Dkt. 150-3.) The overlap that persuaded those courts – a federal copyright-infringement claim over the same registrations at issue in Washington – is precisely what this Court removed from this case when it dismissed the copyright count. (Dkt. 64.) What remains is a state-law contract claim against a non-Washington party on a contract no Washington pleading mentions. The Motion's "pattern" proves the opposite of what it is offered to prove.

Nor is the lead decision in that pattern final. The California dismissal the movants rely on was entered without prejudice and, on the movants' own account, is now pending before the Ninth Circuit as No. 26-793, where the movants have moved to hold the appeal in abeyance so the Washington default can be entered first. A first-to-file ruling that is itself on appeal, and that the movants are asking the appellate court not to resolve yet, is not a basis to stay this Court.

## II.    A DISCRETIONARY STAY UNDER LANDIS IS NOT WARRANTED – AND THE BALANCE RUNS DECISIVELY AGAINST ONE.

Because first-to-file fails, the Motion stands or falls on Landis. It falls. A stay of proceedings is "an exercise of judicial discretion" that must be "kept within the bounds of moderation," and the movant bears a heavy burden: it

11

"must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay … will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). The First Circuit enforces that burden strictly, granting *Landis* stays "only in rare circumstances." *Marquis v. FDIC*, 965 F.2d 1148, 1154–55 (1st Cir. 1992). Six points, each independently sufficient, defeat the Motion.

### A.    The movants identify no hardship to themselves from litigating Count I.

*Landis* places the burden on the party seeking delay to make out a clear case of hardship or inequity from being required to go forward. The movants identify none. Count I presents a discrete, largely legal question – whether MMAS held an enforceable license capable of being breached – suited to summary judgment on a documentary record. Litigating it imposes no hardship on the Morisky Defendants, who are not the counterparties to that license and who bear no burden of proof, discovery, or trial preparation on it. A movant who identifies no hardship to itself has not carried the burden *Landis* places on the party seeking delay, and that failure alone defeats the Motion. *Marquis*, 965 F.2d at 1154–55.

The hardship the Motion does assert is not hardship from Count I at all. The movants say that summary judgment here "is not likely to be a light undertaking" because the parties would have to brief "copyright ownership,

chain of title, validity, … infringement, counterclaim liability," and more. (Dkt. 144.) But that is a description of the movants' own counterclaims, which they were free not to bring and remain free not to press. It is not a description of Count I. The only summary-judgment motion directed at Count I is the Hospital's – and the Hospital states that ownership "is [not] a key issue" on that motion, which "focuses only on the lack of evidence of any damages caused by the alleged breaches of contract." (Dkt. 150 at 2.) The Motion's central factual premise – that Count I turns on the ownership question Washington is said to be about to decide – is contradicted by the party that filed the motion the movants say ownership will resolve.

### B.    A stay would freeze both a pending motion by MMAS and MMAS's opposition to a pending dispositive motion against it – the precise damage Landis forbids.

Against that empty showing stands not a mere "fair possibility" but a certainty of "damage to someone else." *Landis*, 299 U.S. at 255. MMAS moved for partial summary judgment on July 6, 2026 (Dkt. 142), supported by the Declaration of Steven Trubow and a Local Rule 56.1 Statement, and certified its Local Rule 7.1 conferral the next day (Dkt. 143). The Morisky Defendants filed this stay two days later (Dkt. 144). The Motion therefore asks the Court to freeze a ripe, fully-supported dispositive motion at the

threshold of its consideration – the paradigm of the injury Landis weighs against the party seeking delay.

The damage is now concrete on both sides of the ledger. On July 10, 2026, the Hospital moved for summary judgment against MMAS on Count I. (Dkt. 146; Dkt. 147.) A stay entered now would suspend MMAS's opposition to a dispositive motion already filed against it, leaving that motion pending and unanswered for the duration of a stay of indefinite length. A litigant facing summary judgment has an interest in being heard on it. Landis does not permit a stay whose effect is to leave an adverse dispositive motion hanging over the non-movant while the movant pursues, in another forum, a decree it says will dispose of the case without any ruling on the merits here. That the stay followed on the heels of MMAS's motion, rather than on any independent schedule, confirms its object: not to conserve judicial resources, but to overtake a pending merits ruling in this Court with a default judgment engineered in another forum.

**C.    The stay's object – laid bare by its alternative request – is to freeze a one-sided discovery record and evade the reciprocal discovery MMAS needs to defend the counterclaims.**

The Motion's fallback exposes what the stay is really for. Failing a full stay, the movants ask the Court "at minimum" to stay "the claims and counterclaims between the Morisky Defendants and MMAS Research." (Dkt.

14

144.) That is precisely the track on which MMAS has been denied discovery and now faces summary judgment. The Morisky Defendants assert three counterclaims against MMAS and Mr. Trubow personally – trademark infringement, Chapter 93A, and declaratory judgment – and plead that those counterclaims "aris[e] out of the same case or controversy" as this action (Dkt. 99 ¶ 2 (Countercls.)), resting them on the identical ownership premise that the Widget Code "merely displays" works owned by MMAR and that "MMAS Research LLC has no rights in the MMAS-4 or the MMAS-8 whatsoever" (id. ¶¶ 26–34; see id. ¶ 60). The trademark count depends on the "federally registered MMAS Mark (Reg. No. 5837273)" (id. ¶¶ 20, 38) – a registration cancelled effective March 6, 2026 and held of record by Dr. Morisky, not by MMAR, the entity asserting the claim. (Dkt. 139 at 9.)

Discovery on that same-controversy track has run one way. The Hospital examined MMAS's principal for a full day on June 22, 2026, individually and as MMAS's Rule 30(b)(6) designee; MMAS has deposed no one. (Dkt. 139 at 5, 11.) The Magistrate Judge denied MMAS the reciprocal chain-of-title and recordation discovery bearing on MMAR's standing and the registration's validity, and MMAS's Rule 72(a) objection to that ruling is pending before this Court. (Dkt. 139.) A stay of the counterclaims entered now would suspend that objection, lock the one-sided record in place, and

15

leave the movants free to press counterclaims resting on a cancelled registration without ever submitting to discovery of the very ownership chain their own pleading makes the heart of the dispute. That is not the relief of a party facing hardship from going forward; it is the preservation of a tactical advantage secured through the discovery rulings MMAS is contesting. *Landis* withholds a stay sought not to avoid inequity but to entrench one. 299 U.S. at 254–55.

Nor does the movants' reliance on the Hospital's position change the analysis. The Hospital does not object only to a stay of the Morisky–MMAS claims and counterclaims; as to Count I it opposes the Motion outright and "objects strongly." (Dkt. 150 at 1, 3.) A third party's non-objection to that sideshow is neither a hardship showing by the movants nor consent to staying Count I.

**D.    A stay would not simplify this case or avoid inconsistency – it would manufacture the inconsistency the movants invoke.**

The usual justification for a *Landis* stay – that awaiting another proceeding will simplify or narrow the issues – is absent and inverted here. The shared ownership question is already resolved by the Ninth Circuit, which held this CR2A transferred nothing. *Charité*, slip op. at 2–3 (persuasive under Fed. R. App. P. 32.1 and 9th Cir. R. 36-3). Waiting on Washington

16

cannot simplify what the Court of Appeals has already decided; and because Washington is barred from a merits ownership ruling (Wash. Dkt. 229), waiting produces no ruling to defer to at all – only, at most, a sanction-based default that by its terms decides nothing about ownership (Wash. Dkt. 324 at 2–4) and that, as an unlitigated default, would carry no issue-preclusive force on that question in any event.

What a stay would accomplish is the opposite of avoiding inconsistency. The movants' draft order would have a district court declare that the same never-finalized agreement did transfer the same copyright "by operation of law" (Wash. Dkt. 336-1 ¶¶ 4, 11) – in direct conflict with the Court of Appeals that construed it. The movants cannot invoke the risk of inconsistent judgments as a reason to stay while simultaneously engineering the inconsistency. Their position is also judicially estopped. In 2023 these same parties told the Washington court that the risk of "inconsistent judgments" on ownership was reason to halt proceedings, and obtained a stay on that basis (Wash. Dkt. 206; Wash. Dkt. 220 at 3); in 2026 they seek to create the very inconsistency they once invoked. A party may not prevail on one position and then advance its opposite to gain a second advantage. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

17

### E.    The stay's object is ultra vires relief that would adjudicate this case in the absence of the parties before this Court.

The Motion is candid that the stay is meant to let the Washington draft order take effect and dispose of this case. But that draft would do far more than resolve a contract between Morisky and MMAS. It purports to assign to the movants all of MMAS's claims "known or unknown" in "any pending or future proceeding," to enjoin MMAS from "advancing any claim or position as to any individual defendant," and to reach conduct and parties by name – including "the Massachusetts litigants." (Wash. Dkt. 336-1 ¶¶ 11, 22–24.) It would separately enjoin petitioning of "any governmental, regulatory, administrative, or prosecutorial body, whether domestic or foreign" (id. ¶ 8(f)), and void a non-party's settlement (id. ¶ 11).

A default judgment cannot adjudicate the rights of persons not before the rendering court, and "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Boston Children's Hospital – the sole defendant to Count I – is not a Washington party; neither is MMAS in its capacity as plaintiff here. A Washington default cannot decide Count I – or strip MMAS of the ability to prosecute it – in their absence. The consequence for the Landis balance is decisive: the harm the movants offer as their reason to stay (a purportedly inconsistent, duplicative ruling) is precisely the harm the stay would cause, by clearing the runway for a decree

18

that adjudicates this action without this Court. A stay that facilitates an ultra vires ruling on the stayed case is not "moderation"; it is abdication. *Landis*, 299 U.S. at 254–55.

### F.      The Motion is not diligent, and the Hospital's account of its timing confirms it.

Landis is an equitable doctrine, and delay in seeking a stay counts against the party asking for one. The movants have been in this case since October 2024. They knew of the Washington action – they filed it. They have known of the default since April 21, 2026. Yet they moved to stay only on July 8, 2026, two days after MMAS moved for partial summary judgment and two days before the dispositive-motion deadline.

The Hospital – which has no stake in the movants' quarrel with MMAS – describes the sequence in detail. The movants "have not been diligent" and "could have sought a stay at any time after MMAS Research brought them into this case in October 2024." (Dkt. 150 at 2.) They told the Hospital on June 18, 2026 that they intended to seek a stay, then "decided not to file the motion at that time." (Id. at 1.) On the strength of that representation the Hospital took the June 22 deposition and researched and drafted its summary-judgment motion – and only then, on July 7, "just days before the summary judgment deadline and after the Hospital had spent most of the time and money needed to prepare the motion," did the movants say they

would go forward with the stay after all. (Id. at 1–2.) The Motion's own explanation – that its timing "reflects diligence, not neglect" because counsel were occupied with the Washington briefing (Dkt. 144) – does not answer that account, and does not explain why a stay unavailable to be sought for twenty months became urgent forty-eight hours after MMAS filed for summary judgment. A movant who waits until his adversary's dispositive motion is on file, and until a co-defendant has spent the cost of its own, has not made the "clear case of hardship" *Landis* requires; he has made a case of timing. See, *Landis*, 299 U.S. at 255.

## III.    THE UNENTERED "[PROPOSED] ORDER" CANNOT BEAR THE WEIGHT THE MOTION PLACES ON IT.

Stripped to its foundation, the Motion asks this Court to defer to a document, not a ruling. The instrument on which the entire stay depends is captioned "[PROPOSED] ORDER," bears a blank signature and date block, and was submitted by the movants' own counsel. (Wash. Dkt. 336-1 at 1, 28–29.) On its face it is advocacy, not a decree: appended to a Notice of Filing (Wash. Dkt. 336), it conducts a full seven-factor Eitel analysis, makes affirmative findings of willfulness, and marshals authorities – the work of a brief, not a proposed order awaiting signature. The Motion's characterizations of that draft do not survive contact with it, as Exhibit 4 details statement by statement. In particular: the "Related Matters provision

20

that specifically addresses this action" is a splice of a Findings-of-Fact section that names no case (id. ¶¶ 22–24) onto a generic decretal paragraph reaching "any … proceeding … known or unknown" (id. ¶ 11); the "Related Matter No. 1" label appears only in the movants' own filed exhibit (Wash. Dkt. 332-4), not in any order; and the assignment the Motion calls "effective immediately" is, in the draft's own words, effective only "upon entry of this Order" (id. ¶ 11) – an entry that has not occurred and may never. A stay cannot rest on the predicted future entry of an unsigned draft.

## CONCLUSION

The Motion should be denied in full, including its alternative request. MMAS's partial summary-judgment motion is pending against a defendant who is not before the Washington court, on a license that court has never been asked to construe, and the ownership question the Motion says Washington is "about to decide" is one the Ninth Circuit has already decided and the Washington court has forbidden itself to reach. The Hospital – the only defendant to the claim the Motion says a Washington ruling will moot – opposes the stay, disclaims ownership as a key issue on its own summary-judgment motion, and tells this Court that the first-to-file rule does not reach this case. (Dkt. 150 at 1–3.) The alternative request – to stay "the claims and counterclaims between the Morisky Defendants and MMAS Research" –

21

should fare no better: it would freeze the very counterclaim track on which MMAS was denied discovery and now faces summary judgment, entrenching a one-sided record rather than relieving any hardship. Rather than stay any part of this case, the Court should resolve MMAS's pending Rule 72(a) objection (Dkt. 139) and permit this action to proceed to decision on the summary-judgment motions now before it.

Dated: July 13, 2026

Respectfully submitted,

MMAS RESEARCH LLC,
Plaintiff / Counter-Defendant

By its attorneys,

Ronald D. Coleman (pro hac vice)
COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
rcoleman@colemanlaw-pc.com

/s/ A. Neil Hartzell
A. Neil Hartzell (BBO #544752)
FREEMAN MATHIS & GARY, LLP
201 Washington Street, Suite 2200
Boston, MA 02108
neil.hartzell@fmglaw.com
Local Counsel for Plaintiff / Counter-Defendant

22

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on the date below.

_____
Ronald D. Coleman

Dated: July __13__, 2026