UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MMAS RESEARCH LLC,

        Plaintiff,

v.

THE CHILDREN'S HOSPITAL
CORPORATION d/b/a BOSTON
CHILDREN'S HOSPITAL, et al.,

        Defendants.

Civil Action No. 1:24-cv-12108-DJC

Hon. Denise J. Casper
Mag. Judge Jessica D. Hedges

**PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S
HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS
AND STATEMENT OF ADDITIONAL MATERIAL FACTS
(LOCAL RULE 56.1)**

Pursuant to Local Rule 56.1, Plaintiff MMAS Research LLC ("MMAS Research") responds to the Statement of Material Facts filed by Defendant The Children's Hospital Corporation ("BCH") (Dkt. 147) and sets forth additional

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S
HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS
AND STATEMENT OF ADDITIONAL MATERIAL FACTS
(LOCAL RULE 56.1)- 1

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

material facts as to which there exists a genuine issue to be tried.

**Preliminary statement.** Five of BCH's eighteen paragraphs rest, in whole or in part, on the transcript of June 22, 2026, deposition of Steven Trubow, which BCH attaches as its Exhibit 1. MMAS Research has not received that transcript. MMAS Research can neither admit nor deny any fact sourced to Exhibit 1 and responds to those paragraphs subject to and without waiver of its request for relief under Federal Rule of Civil Procedure 56(d). Eleven of the eighteen paragraphs rest on the declaration of Dr. Jacob Hartz, who has never been deposed in this action.

## RESPONSE TO BCH'S STATEMENT OF MATERIAL FACTS

**BCH ¶ 1.** *Dr. Jacob Hartz is a pediatric cardiologist at Boston Children's Hospital.*

**RESPONSE:** Undisputed.

**BCH ¶ 2.** *Dr. Hartz was the principal investigator on a study sponsored by BCH … He was studying ways of improving the adherence of adolescents taking anti-cholesterol drugs to their medication schedule.*

**RESPONSE:** Undisputed.

**BCH ¶ 3.** *In his study, Dr. Hartz used an eight-question scale*

*called the Morisky Medication Adherence Scale, or MMAS, both to decide which patients were eligible to take part in the study and to measure the effectiveness of the interventions he was studying.*

**RESPONSE:** **Disputed.** The instrument Dr. Hartz used was the Morisky Widget MMAS-8 — a condition- and medication-specific assessment generated in MMAS Research's copyrighted Morisky Widget software — and not the static "traditional" MMAS-8. On July 29, 2018, Dr. Hartz wrote to Dr. Donald Morisky asking whether "the MMAS-8 would be appropriate" for his study and what licensing would be required. (Dkt. 24-1 at 107.) Dr. Morisky did not license him the MMAS-8. He replied the same day that "[i]ndividual licenses are no longer given to an individual, only institutions and health care organizations are permitted to use the MMAS IP and hands-on, in-person training is required," directed Dr. Hartz to "the correct use of the Morisky Widget (see Morisky.org)," and attached a form captioned "Morisky Widget MMAS APPLICATION," returnable to MMAS Research. (Id.) On August 7, 2019, Dr. Hartz wrote: "I have completed the application for the Morisky Widget below." (Dkt. 24-1, Ex. 23.) In November 2019, Dr. Hartz and Ms. Palfrey (now Chiert) were trained and certified on the Morisky Widget and used the Widget's test editor to generate a cholesterol- and medication-specific instrument for the BCH study. (Dkt. 24 ¶¶ 49–52; Dkt. 24-1 at 126.) BCH's own citation for this

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 3

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

paragraph, Dkt. 24 ¶ 49, states that "BCH personnel were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8." BCH's own publication identifies the instrument, in its reference 46, as the "Morisky Widget MMAS."

> **BCH ¶ 4.** *Dr. Hartz signed a license agreement on the Hospital's behalf with MMAS Research LLC, which claimed to own the copyright for the MMAS assessment. The Hospital paid $5,000.*

**RESPONSE: Disputed in part.** It is undisputed that Dr. Hartz executed a written license with MMAS Research on September 4, 2019, on BCH's behalf. It is disputed that MMAS Research merely "claimed" ownership and disputed that the $5,000 was paid for the license. MMAS Research is the registered owner of the Morisky Widget, U.S. Copyright Reg. No. TX 8-816-517. The Ninth Circuit has definitively stated that MMAS Research "never transferred its copyright and remains the registered owner of the Morisky Widget." (Dkt. 24 ¶ 36.) BCH itself represented to this Court that it "has always conceded … that MMAS Research owns the Widget copyright." (Dkt. 130 at 16, quoting Dkt. 103 at 5–6.) The perpetual Widget license was granted at no charge; $5,000 was the fee for the training and certification that Dr. Morisky's July 29, 2018, email states was a mandatory condition of any license. (Dkt. 24 ¶ 47; Dkt. 24-1, Exs.

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 4

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

11, 22.)

**BCH ¶ 5.** *Dr. Donald Morisky created the "traditional" MMAS-8, an eight-question assessment. Docket No. 24 ¶ 49; Docket No. 24-1 at Ex. 21.*

**RESPONSE: Disputed as immaterial and miscited.** The cited paragraph, Dkt. 24 ¶ 49, does not state that Dr. Morisky created the traditional MMAS-8. It states that "BCH personnel were trained and certified on the Morisky Widget MMAS-8, not the traditional MMAS-8," and that "Dr. Hartz and Ms. Palfrey customized a Morisky Widget MMAS-8 medication and condition specific test for the BCH study." The authorship of the 2006 static instrument is immaterial to whether BCH complied with the terms of the Morisky Widget license it executed.

**BCH ¶ 6.** *Scoring the MMAS-8 requires adding up the number of answers indicating that a patient was taking his or her medicine as prescribed and adding the score for the last question. Hartz Dec. ¶ 16.*

**RESPONSE: Disputed.** This paragraph is contradicted by BCH's own ¶ 8, which states that the Widget produces a numerical score "as well as two sub-scores" measuring intentional and unintentional nonadherence. It is further contradicted by Dr. Morisky's contemporaneous description of the Widget: it

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

"automatically scores, and reports adherence levels & the risk of intentional/unintentional non-adherence into databases and electronic medical records," and offers "110 MMAS-8 condition specific tests with MAPI validated translations which offer a sensitivity of 93% as compared to the generic MMAS-8 at 83% sensitivity." (Dkt. 24-1 at 54–55.) Dr. Hartz is a cardiologist, not a witness to the operation of MMAS Research's source code, and his statement about what the Widget "requires" is not competent evidence of the content of software he was licensed to use and does not own. Fed. R. Civ. P. 56(c)(4). MMAS Research has not been permitted to depose Dr. Hartz on this subject. (See Dkt. 139.)

> **BCH ¶ 7.** *The "Morisky Widget" is a third version of the MMAS. The Widget is software … that a user can use as a text editor to create customized versions of the assessment and to score the assessment. Ex. 1: Tr. 39:18–40:2.*

**RESPONSE:  Cannot be admitted or denied; Rule 56(d).** This paragraph is sourced entirely to a deposition transcript MMAS Research has not received. To the extent it characterizes the Morisky Widget as a "text editor," it is disputed. The Widget generates condition-, medication-, and dosing-specific item wording that the static instrument cannot produce; it scores in software; and it returns the intentional and unintentional nonadherence sub-scores that

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 6

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

BCH itself describes at ¶ 8. (Dkt. 24-1, Exs. 7, 27.)

> **BCH ¶ 8.** *The Widget provides a single numerical score based on a patient's answers as well as two sub-scores … The Widget also had the final multiple-choice question.*

**RESPONSE: Undisputed** — and dispositive against BCH's ¶ 6 and against its contention that Dr. Hartz's hand arithmetic is "precisely what the Widget does." (Dkt. 146 at 11.)

> **BCH ¶ 9.** *After Mr. Trubow traveled to Boston to "train" Dr. Hartz and a staff member, Dr. Hartz and his team created an internal document that listed the questions from the Widget … [and] also created a separate document which only contained the questions, to present to potential participants.*

**RESPONSE: Undisputed in substance, and dispositive.** BCH concedes that the questions on its paper instrument came *from the Widget*, and that BCH thereafter scored and coded those questions outside the Widget. The License required that "all scoring and coding must be done in the Morisky Widget." MMAS Research disputes BCH's implication that the training was nominal. In-person training and certification was a mandatory precondition of any license (Dkt. 24-1 at 107), it is the service for which BCH paid $5,000, and MMAS Research traveled to Boston at its own expense to provide it (Dkt. 24 ¶ 50).

> **BCH ¶ 10.** *Dr. Hartz scored each answer indicating non-adherence as a "1." Even though the final question had five*

*possible answers, Dr. Hartz assigned a score of "1" to the bolded answer and 0 for all other answers. Dr. Hartz determined the criteria that an adolescent who had two or more responses for medication nonadherence eligible for the study.*

**RESPONSE: Undisputed as to the first two sentences, and dispositive.** BCH concedes that Dr. Hartz applied a flat scoring scheme of his own devising, collapsed the graded five-level final item to a binary value, and made no use of the Widget's intentional and unintentional sub-scores. The License conditioned any modification to the wording, phrasing, or scoring of the tests on certification and written permission. **The third sentence is disputed.** Dr. Hartz wrote to MMAS Research on July 6, 2022, that "[o]ur enrollment protocol was answering a positive (i.e., consistent with lower adherence) to *at least one question*." (Trubow Decl. Ex. 20; Dkt. 24-1 at 122.) His 2026 declaration states the criterion was two or more. The conflict between Dr. Hartz's contemporaneous writing and his litigation declaration raises a credibility question for the factfinder.

**BCH ¶ 11.** *Dr. Hartz and his staff administered the test using the paper form at least nine times. The questions from the paper form may have been shown to some adolescents, but the scoring and instructions were not disclosed.*

**RESPONSE: Disputed.** First, Dr. Hartz wrote on July 6, 2022, that BCH "have

administered 4 tests" and that "[t]he tests were administered *from memory*." (Trubow Decl. Ex. 20; Dkt. 24-1 at 122.) Second, "nine" is the number of participants *enrolled*, not the number of administrations. BCH's own publication states that recruitment ran from August 2019 to August 2024, that the study drew on a preventive-cardiology database of approximately 400 patients, and that "the clinician determined the patient's eligibility based on self-reported adherence [46,47]" for each patient approached. The screening instrument was therefore administered an unknown number of times far exceeding nine, and the records are in BCH's exclusive possession. Third, the assertion that "the scoring and instructions were not disclosed" is hedged ("may have been shown"), is a statement about what persons other than the declarant did or did not perceive and is not competent evidence. Fed. R. Civ. P. 56(c)(4). The scoring criterion appears on the face of the paper form itself: the nonadherent answer is bolded in the answer column of each item, the coding of Question 5 is reversed, and the instrument states "How many answers did they give that are in BOLD UPPERCASE? ___ (≥ 2 → ELIGIBLE)." (Trubow Decl. Ex. 19; Dkt. 24-1 at 120.)

> **BCH ¶ 12.** *Due to COVID, the study did not enroll enough participants for the study to proceed; it enrolled only nine. The study never proceeded beyond the enrollment phase.*

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 9

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

**RESPONSE: Disputed.** BCH's own publication states that "[d]ata collection was ongoing throughout the trial," that the study "is currently undergoing recruitment and collection of data from the first participants," and that study completion was "expected in December 2025 or January 2026." Dr. Hartz wrote on July 6, 2022, that "[t]he last MMAS will be administered within the next 2 years once we have completed enrollment." (Trubow Decl. Ex. 20; Dkt. 24-1 at 122.) The assertion that the study never proceeded beyond enrollment is contradicted by BCH's own peer-reviewed publication.

**BCH ¶ 13.** *Dr. Hartz published a description of the study on clinicaltrials.gov …*

**RESPONSE: Undisputed** that BCH published a description of the study on ClinicalTrials.gov. MMAS Research adds that BCH revised that description on January 10, 2023, to remove MMAS Research's attribution and to state that the MMAS-8 was used "with permission from Dr Donald Morisky" and that "[a] license agreement is available from MMAR, LLC," and again on January 24, 2024, to the same effect. (Dkt. 24 ¶¶ 95–99; Dkt. 24-1, Ex. 18.) BCH's ClinicalTrials.gov postings never contained the attribution notice required by Appendix 1 of the License.

**BCH ¶ 14.** *There is no evidence that anyone, other than Mr.*

*Trubow himself or people working for him, ever read the study description on clinicaltrials.gov. Ex. 1: 103:10–104:23.*

**RESPONSE:  Disputed; not a fact; Rule 56(d).** This is not a statement of fact but a characterization of the state of a record MMAS Research was foreclosed from developing. Its sole citation is the deposition transcript MMAS Research has not received. The proposition it supports is that MMAS Research's principal did not name a reader while under examination — not that no reader exists. MMAS Research has deposed no one, has served no third-party subpoenas, and has taken no document discovery from BCH or from the journal on the question of readership. (Dkt. 139.) BCH simultaneously asks this Court to take judicial notice that ClinicalTrials.gov listed between 325,000 and 360,000 studies in 2020 and nearly 600,000 today. (Dkt. 146 at 5.)

> **BCH ¶ 15.**  *There is no evidence that the Hospital's use, or as MMAS Research claims, misuse of the MMAS harmed any of the adolescents to whom the Hospital administered the questionnaire. Ex. 1: 94:3-6.*

**RESPONSE:  Immaterial; disputed; Rule 56(d).** Harm to study participants is not an element of a claim for breach of contract and is immaterial under Local Rule 56.1. To the extent BCH has made it material by including it, it is disputed and cannot be established on this record. BCH administered the instrument "from memory" (Trubow Decl. Ex. 20), never entered the results in the Widget, and produced no record of what questions were asked or how any

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

answer was scored. BCH cannot prove the absence of harm from an administration for which, by its own admission, no instrument and no record exist. The paragraph is sourced to a transcript MMAS Research has not received.

> **BCH ¶ 16.** *MMAS Research produced no documents relating to damages in discovery … MMAS Research acknowledged that it cannot quantify its damages without more discovery. Ex. 1: 98:15– 99:2.*

**RESPONSE:  The second sentence is undisputed and is dispositive of this motion.** BCH certifies, as an undisputed material fact offered in support of its own motion for summary judgment, that MMAS Research cannot quantify its damages without more discovery — while MMAS Research's objection seeking that very discovery is pending and undecided before this Court. (Dkt. 139.) That certification is itself the predicate for relief under Rule 56(d). As to the first sentence, MMAS Research responds subject to Rule 56(d); the paragraph is sourced in part to a transcript it has not received.

> **BCH ¶ 17.** *Mr. Trubow and Dr. Morisky, and their entities, were engaged in litigation against each other by at least July 2019.*

**RESPONSE:  Undisputed and immaterial** to whether BCH performed its obligations under the License.

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 12

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

**BCH ¶ 18.** *MMAS Research attributes the entire loss of revenue to the Hospital's publication of the study description, and also to Dr. Hartz's publication of an article in 2025 that he claims was defamatory. Ex. 1: 123:18–23.*

**RESPONSE: Cannot be admitted or denied; Rule 56(d).** Sourced to a transcript MMAS Research has not received. MMAS Research notes that BCH has certified the August 14, 2025, publication as a material fact of the damages case in this paragraph, while contending in its memorandum that "the 2025 article forms no part of the basis of this lawsuit." (Dkt. 146 at 12.) The Court's May 28, 2026, order denied leave to add a *claim* concerning the article on grounds of undue delay and non-compliance with Local Rule 15.1 and expressly declined to reach any question of futility. (Dkt. 130 at 12–20 & n.14.) No order excludes the article from evidence.

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

1. On July 29, 2018, Dr. Hartz wrote to Dr. Donald Morisky asking whether "the MMAS-8 would be appropriate" for his study, and what training and licensing would be needed. (Dkt. 24 ¶ 44.)

2. Dr. Morisky replied the same day, at 8:15:36 PM PDT, from dmorisky@ucla.edu to Jacob.Hartz@cardio.chboston.org, copying Steven

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 13

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

Trubow. He wrote: "Individual licenses are no longer given to an individual, only institutions and health care organizations are permitted to use the MMAS IP and hands-on, in-person training is required." He directed Dr. Hartz to "the correct use of the Morisky Widget (see Morisky.org)," and attached a form captioned "Morisky Widget MMAS APPLICATION," which states "We NEVER License individuals or individual studies" and instructs the applicant to return it to MMAS Research to "receive consideration for a Morisky Widget MMAS License." (Dkt. 24-1 at 107.)

3. Dr. Hartz was never licensed to use the traditional MMAS-8. On August 7, 2019, he wrote: "I have completed the application for the Morisky Widget below." (Dkt. 24-1 at 110–113; Dkt. 24 ¶ 46.)

4. The License is dated August 24, 2019, in its body. Dr. Hartz executed it on behalf of BCH, signing at Section 7 and dating his signature 9/4/19. (Trubow Decl. Ex. 8; Dkt. 1 at 15.)

5. In November 2019, MMAS Research traveled to Boston at its own expense and trained and certified Dr. Hartz and Ms. Palfrey (now Chiert) on the Morisky Widget, including the Widget's scoring and coding algorithm and its test editor. (Dkt. 24 ¶¶ 49–52.)

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 14

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

6.    Using the Widget's test editor, Dr. Hartz and Ms. Palfrey generated a cholesterol- and medication-specific Morisky Widget MMAS-8 instrument for the BCH study. The editor session is captured at Dkt. 24-1 at 126, which shows the generic template item "Did you take your MEDICATION yesterday?" transformed into "Did you take all your prescription cholesterol medication the last time you were supposed to take it?"

7.    The paper instrument BCH created and administered carries that same Widget-generated wording. (Trubow Decl. Ex. 19; Dkt. 24-1 at 120.)

8.    Section 3 of the License (Duties of BCH) provides: "BCH can use the Morisky Widget, Morisky Kiosk Apple I Phone APP, and the Morisky API to administer Morisky Widget MMAS tests. With Licensor approval, BCH can use MMAS paper or electronic questionnaires, but all scoring and coding must be done in the Morisky Widget." (Trubow Decl. Ex. 8; Dkt. 24-1 at 59.)

9.    Section 1 of the License (Terms of Usage) provides that changes or modifications to the wording, phrasing, or scoring of the MMAS "require certification on the Morisky Widget editor and translator"; that the coding and scoring criteria "are trade secrets of MMAS and as such can never be divulged in any publication, presentation, or website without written permission from

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 15

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

MMAS"; that "[t]he MMAS required citations and licensing statement provided in Appendix 1 must be included in all manuscripts, web postings or other publication containing Morisky Widget MMAS descriptions or results"; that the Agreement is "governed by and construed under the laws of Massachuset[t]s"; and that "[t]he Morisky Widget agreed to in this license are non-transferrable from the BCH." (Trubow Decl. Ex. 8; Dkt. 24-1 at 58–59.)

10.   Section 2 of the License (Fees) provides: "In consideration of MMAS granting BCH a free perpetual Morisky Widget MMAS license, BCH agrees to pay MMAS a one-time training and certification fee of $5000.00." The six-hour training and certification was to take place in Boston for up to thirty-five participants. (Trubow Decl. Ex. 8; Dkt. 24-1 at 59.)

11.   Section 4 of the License (Duties of MMAS) provides: "Only BCH employees trained and certified by the Licensor may use the Morisky Widget MMAS." (Trubow Decl. Ex. 8; Dkt. 24-1 at 59–60.)

12.   Section 5 of the License (Terms and Termination) provides: "In case of scientific, administrative or intellectual property misconduct in using the Morisky Widget, MMAS reserves the right to withdraw permission for us[e] and to pursue all legal remedies." (Trubow Decl. Ex. 8; Dkt. 24-1 at 60.)

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS (LOCAL RULE 56.1)- 16

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

13. Appendix 1 to the License sets out the "[r]equired citations, acknowledgement and footnote for the 8-item MMAS." Its citation block includes: "Morisky DE, Ang A, Krousel-Wood M, Ward H. Predictive Validity of a Medication Adherence Measure in a Patient Setting. J Clin Hyper 2008; 10(5):348-354. Berlowitz DR, Foy CG, Kazis LE, Bolin L, Conroy LB, Fitzpatrick P, Gure TR, Kimmel PL, Kirscner K, Morisky DE, Newman J, Okney C, Oparil S, et al. for the SPRINT Study Research Group. Impact of Intensive Blood Pressure Therapy on Patient-Reported Outcomes: Outcomes Results from the SPRINT Study. N Engl J Med 2017; 377:733-44." It further requires the following footnote in "all articles, presentations, web postings, reports and submitted manuscripts": "A Morisky Widget license agreement is available from MMAS Research LLC 14725 NE 20th St., Bellevue Washington or strubow@morisky.org." (Trubow Decl. Ex. 8; Dkt. 24-1 at 61–62.)

14. Reference 46 of BCH's August 14, 2025, publication reproduces the opening of Appendix 1's required SPRINT citation — "Berlowitz DR, Foy CG, Kazis LE, Bolin L," — truncates that citation after the fourth author, and substitutes in its place the phrase "Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed." The required Appendix 1 footnote appears nowhere in the publication.

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S
HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS
AND STATEMENT OF ADDITIONAL MATERIAL FACTS
(LOCAL RULE 56.1)- 17

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

15. On July 3, 2022, MMAS Research wrote to Dr. Hartz quoting those terms and the Appendix 1 attribution requirement. (Trubow Decl. Ex. 20; Dkt. 24-1 at 71–76.)

16. On July 5, 2022, at 12:11 AM, MMAS Research wrote to Dr. Hartz: "Please remember if you administer MMAS-8 tests outside of the Morisky Widget, it requires Licensor approval, to use MMAS paper or electronic questionnaires." (Trubow Decl. Ex. 20; Dkt. 24-1 at 71–76.)

17. On July 5, 2022, at 10:01 AM, Dr. Hartz replied: "We plan on administering the questions through the widget. We were planning on having a copy of the questions in case we do not have immediate access to the widget … All questions would then be entered using the widget. Would that be okay." (Trubow Decl. Ex. 20; Dkt. 24-1 at 71–76.)

18. On July 5, 2022, at 1:47 PM, MMAS Research replied that it "can discuss the use of MMAS-8 paper tests," but that "before we begin the discussion, please answer the questions below," and asked how many tests had been administered to date, how they were administered, scored and coded, when they were first administered, and when the last would be administered. (Trubow Decl. Ex. 20; Dkt. 24-1 at 71–76.) MMAS Research

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

never granted Licensor approval for the use of a paper questionnaire.

19. On July 6, 2022, Dr. Hartz wrote: "We have administered 4 tests. The tests were administered from memory. Our enrollment protocol was answering a positive (i.e., consistent with lower adherence) to at least one question. and then I had planned on entering and scoring the tests on the widgets. … The last MMAS will be administered within the next 2 years once we have completed enrollment. If any of this is serious breach of contract and you feel it necessary to end our agreement, we would understand." (Trubow Decl. Ex. 20; Dkt. 24-1 at 122.)

20. BCH never scored or coded any MMAS-8 test in Morisky Widget.

21. On January 10, 2023, BCH removed MMAS Research's attribution from the ClinicalTrials.gov record for NCT04458766 and replaced it with a notice that the MMAS-8 was used "with permission from Dr Donald Morisky" and that "[a] license agreement is available from MMAR, LLC." BCH repeated that notice on January 24, 2024. (Dkt. 24 ¶¶ 95–99.)

22. On August 15, 2024, MMAS Research filed this action, pleading BCH's failure to include the Appendix 1 attribution notice in its publications. (Dkt. 1.)

23. On August 12, 2025, this Court dismissed all claims against Dr. Hartz, Ms. Palfrey (Chiert), and Dr. de Ferranti, leaving only the breach-of-contract claim against BCH. (Dkt. 64; Dkt. 130 at 12.)

24. On August 14, 2025 — two days later — BCH and Harvard Medical School published Hartz J, Chiert H, de Ferranti S, Powell-Wiley T, JMIR Res Protoc 2025;14:e65105. The publication does not contain the Appendix 1 attribution notice.

25. The publication's Acknowledgments state: "Boston Children's Hospital and the authors personally have been named as defendants in a lawsuit brought by MMAS Research, LLC, which is ongoing … Because we are uncertain how the MMAS should be attributed and who owns the intellectual property rights, we are providing the attribution that both MMAS Research, LLC, and Morisky Medication Adherence Research, LLC, have demanded that we use."

26. Dr. Tiffany Powell-Wiley is an employee of the National Institutes of Health and has never been named as a defendant in any action brought by MMAS Research. The publication states that "[t]he contributions of the NIH author(s) were made as part of their official duties as NIH federal employees."

COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

27. The publication's Conflicts of Interest statement reads, in its entirety: "None declared."

28. The publication's Methods state that "the clinician determined the patient's eligibility based on self-reported adherence [46,47]." References 46 and 47 are the only authority cited for eligibility determination.

29. Reference 46 reads: "Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich). May 2008;10(5):348-354. Berlowitz DR, Foy CG, Kazis LE, Bolin L, Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed. [FREE Full text]." MMAS Research and Steven Trubow are not authors, editors, or contributors of the 2008 article, and never authorized that attribution.

30. Reference 47 is the identical 2008 article, cited as: "Retracted in: J Clin Hypertens (Greenwich). 2023 Sep;25(9):889. [**doi**: 10.1111/jch.14718]."

31. The body of the publication contains no disclosure that the 2008 article cited at reference 46 as the validation of the adherence measure is the same article cited at reference 47 as retracted, and no disclosure of the effect of that retraction on the validity of the adherence determinations reported.

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

32. The 2008 article was retracted in September 2023 after an independent statistical review; the retraction notice states that "the results of the article were misleading due to issues regarding the sensitivity and specificity of the medical adherence scale used," and that the journal "no longer has confidence in the reported conclusions."

33. BCH represented to this Court that it "has always conceded … that MMAS Research owns the Widget copyright." (Dkt. 130 at 16, quoting Dkt. 103 at 5–6.)

Respectfully submitted this 20th day of July 2026.

MMAS RESEARCH LLC
By its attorneys,

_____
Ronald D. Coleman (pro hac vice)
COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
rcoleman@colemanlaw-pc.com

/s/ A. Neil Hartzell (BBO #544752)
FREEMAN MATHIS & GARY, LLP
201 Washington Street, Suite 2200
Boston, MA 02108
neil.hartzell@fmglaw.com
Local Counsel for Plaintiff

PLAINTIFF'S RESPONSE TO DEFENDANT THE CHILDREN'S
HOSPITAL CORPORATION'S STATEMENT OF MATERIAL FACTS
AND STATEMENT OF ADDITIONAL MATERIAL FACTS
(LOCAL RULE 56.1)- 22

COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611