UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MMAS RESEARCH LLC,

    Plaintiff,

v.

THE CHILDREN'S HOSPITAL
CORPORATION d/b/a BOSTON
CHILDREN'S HOSPITAL, et al.,

    Defendants.

Civil Action No. 1:24-cv-12108-DJC

Hon. Denise J. Casper
Mag. Judge Jessica D. Hedges

**PLAINTIFF'S OPPOSITION TO DEFENDANT
THE CHILDREN'S HOSPITAL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

BCH does not dispute that it breached the License. It does not argue that

the License means something other than what it says. It does not contend that

it scored a single MMAS-8 test in the Morisky Widget, that it obtained Licensor

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

approval before administering a paper questionnaire, or that it printed the attribution notice its License required. It argues one thing only: that MMAS Research cannot prove damages, because no one has been identified who read what BCH published.

That argument depends on an evidentiary vacuum, and BCH's litigation position helped create it. BCH compelled MMAS Research to answer interrogatories and to give a full day of Rule 30(b)(6) testimony on topics keyed to a pleading this Court had not yet allowed. The Court then denied leave to file that pleading and denied MMAS Research reciprocal discovery. No MMAS Research deposition of Dr. Hartz, Ms. Chiert, Dr. de Ferranti, Dr. Powell-Wiley, or BCH has occurred. No third-party subpoena has gone to the journal or to any reader. BCH has produced no document discovery on the ClinicalTrials.gov entries, references 46 and 47, or communications about them. MMAS Research has not even received the transcript of the deposition BCH took – the transcript BCH now attaches as Exhibit 1 and cites for every damages and causation proposition in its motion. MMAS Research objected to that foreclosure under Rule 72(a) on June 29, 2026, and expressly asked this Court to preserve its Rule 56(d) rights against precisely this motion. (Dkt. 139 at 11–12.) That objection is pending. Eleven days later, BCH moved.

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

BCH says as much in its own Statement of Material Facts. Paragraph 16 offers as an undisputed material fact that "*MMAS Research acknowledged that it cannot quantify its damages without more discovery*." (Dkt. 147 ¶ 16.) A party cannot certify that its opponent needs discovery and then seek judgment because the opponent lacks it. Summary judgment is available only "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The motion should be denied under Rule 56(d), or ruling deferred, and the reciprocal discovery MMAS Research has been denied permitted.

The motion also fails on its own terms. BCH asks what its scoring choices could be to MMAS Research. The License answers. MMAS Research licenses the Morisky Widget as a diagnostic instrument and conditions every license on training and certification, because an instrument scored outside the Widget is not the instrument MMAS Research licensed. And the injury BCH says cannot be found appears on the face of BCH's own publication: BCH omitted the attribution notice the License required and, in its place, appended MMAS Research's and Steven Trubow's names, as "ed.," to a 2008 article that BCH's very next reference identifies as retracted. That is not incidental harm after the breach; it is the harm the breached term was written to prevent.

## II. BACKGROUND

**A. Dr. Hartz Asked for the MMAS-8 and Was Refused. He Was Licensed the Widget.**

On July 29, 2018, Dr. Jacob Hartz wrote to Dr. Donald Morisky asking whether "the MMAS-8 would be appropriate" for his study and what training and licensing would be required. (Dkt. 24-1 at 107.) He did not get it. Dr. Morisky answered the same evening, copying Steven Trubow:

> Individual licenses are no longer given to an individual, only institutions and health care organizations are permitted to use the MMAS IP and hands-on, in-person training is required. We are currently in Asia conducting training and certification for hundreds of practicing clinicians who are implementing the correct use of the Morisky Widget (see Morisky.org) into the patient health-care delivery system.

> Attached was a form captioned "Morisky Widget MMAS APPLICATION."

It states: "We NEVER License individuals or individual studies." It asks whether the applicant's organization "wants to obtain a perpetual indefinite term Morisky Widget MMAS License and will participate in training and certification on the Morisky Widget and the Morisky Medication Adherence Protocol." It is returnable to MMAS Research. (Dkt. 24-1 at 107.) There was no MMAS-8 application. There was no MMAS-8 license. On August 7, 2019, Dr. Hartz wrote: "I have completed the application for the Morisky Widget below." (Dkt. 24-1 at 110–113.)

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

Dr. Hartz executed the License on BCH's behalf, signing at Section 7 and dating his signature 9/4/19. (Trubow Decl. Ex. 8; Dkt. 1 at 15.) Section 2 states: "In consideration of MMAS granting BCH a free perpetual Morisky Widget MMAS license, BCH agrees to pay MMAS a one-time training and certification fee of $5000.00." The license was free; the $5,000 was the training fee. MMAS Research traveled to Boston at its own expense in November 2019 and trained and certified Dr. Hartz and Ms. Palfrey (now Chiert) on the Widget – including its scoring and coding algorithm and its test editor. Using that editor, they generated a cholesterol- and medication-specific instrument for the study. (Dkt. 24 ¶¶ 42, 49–52; Dkt. 24-1 at 126.)

## B. The Widget Is Not a Text Editor and Not the Scale.

BCH describes the Widget as "a text editor" (Dkt. 147 ¶ 7) and tells the Court that Dr. Hartz's hand arithmetic "is precisely what the Widget does" (Dkt. 146 at 11). BCH's own ¶ 8 says otherwise: the Widget returns a numerical score "as well as two sub-scores" for intentional and unintentional nonadherence. So does Dr. Morisky, contemporaneously: the Widget "automatically scores, and reports adherence levels & the risk of intentional/unintentional non-adherence into databases and electronic medical records," and offers "110 MMAS-8 condition specific tests with MAPI validated

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

translations which offer a sensitivity of 93% as compared to the generic MMAS-8 at 83% sensitivity." (Dkt. 24-1 at 54–55.)

The difference is visible on BCH's own documents. The static instrument asks: "Did you take your <health condition> medicine yesterday?" Statins are not taken daily. The Widget editor transformed that item, for this study, into: "Did you take all your prescription cholesterol medication the last time you were supposed to take it?" (Dkt. 24-1 at 126.) That sentence appears verbatim on the paper form BCH created and administered. (Trubow Decl. Ex. 19; Dkt. 24-1 at 120.) BCH's paper instrument is Widget output, carried out of the software and hand-scored. BCH concedes as much: its ¶ 9 states that Dr. Hartz's team "created an internal document that listed the questions from the Widget."

## C.  MMAS Research Warned BCH in Writing. BCH Asked Permission. Permission Was Withheld. BCH Had Already Breached.

On July 3, 2022, MMAS Research wrote to Dr. Hartz quoting the License: only certified BCH employees may use the Widget; "With Licensor approval, BCH can use MMAS paper or electronic questionnaires, but all scoring and coding must be done in the Morisky Widget"; and Appendix 1 requires the attribution footnote in all web postings. (Trubow Decl. Ex. 20; Dkt. 24-1 at 71–76.)

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

On July 5 at 12:11 AM, MMAS Research wrote again: "Please remember if you administer MMAS-8 tests outside of the Morisky Widget, it requires Licensor approval, to use MMAS paper or electronic questionnaires." (*Id.*)

At 10:01 AM, Dr. Hartz replied – in the future tense: "We plan on administering the questions through the widget. We were planning on having a copy of the questions in case we do not have immediate access to the widget … All questions would then be entered using the widget. Would that be okay." (*Id.*) He asked permission, which means he knew he needed it.

At 1:47 PM, MMAS Research answered that it "can discuss the use of MMAS-8 paper tests," but: "before we begin the discussion, please answer the questions below – How many MMAS-8 tests have been administered to date? How were the MMAS-8 tests administered scored and coded?" (*Id.*) Approval was withheld. It was never given.

The next day, Dr. Hartz answered:

> We have administered 4 tests. The tests were administered from memory. Our enrollment protocol was answering a positive (i.e., consistent with lower adherence) to at least one question. and then I had planned on entering and scoring the tests on the widgets. … If any of this is serious breach of contract and you feel it necessary to end our agreement, we would understand.

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

(Trubow Decl. Ex. 20; Dkt. 24-1 at 122.) Four tests were already done when he asked whether it "would be okay." He had "planned on" scoring in the Widget. He never did.

**D. BCH's Publication.**

On August 12, 2025, this Court dismissed all claims against Dr. Hartz, Ms. Chiert, and Dr. de Ferranti, leaving only the contract claim against BCH. (Dkt. 64.) Two days later, on August 14, 2025, BCH and Harvard Medical School published Hartz J, Chiert H, de Ferranti S, Powell-Wiley T, JMIR Res Protoc 2025;14:e65105. Dr. Powell-Wiley is a federal employee of the National Institutes of Health; the article states that the NIH authors' contributions "were made as part of their official duties as NIH federal employees."

The publication does not contain the Appendix 1 notice. Its Acknowledgments state that "the authors personally have been named as defendants in a lawsuit brought by MMAS Research, LLC, which is ongoing," and that "we are uncertain how the MMAS should be attributed and who owns the intellectual property rights." Dr. Powell-Wiley has never been a defendant in any action brought by MMAS Research. Its Conflicts of Interest statement reads, in full: "None declared."

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

The Methods state that "the clinician determined the patient's eligibility based on self-reported adherence [46,47]." References 46 and 47 are the sole authority for that determination. Reference 46 cites Dr. Morisky's 2008 predictive-validity study – and appends: "Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed." Reference 47 cites the identical 2008 study, marked: "Retracted in: J Clin Hypertens (Greenwich). 2023 Sep;25(9):889." The body of the publication says nothing about the retraction.

### III.  ARGUMENT

**A.  The Motion Is Premature. Rule 56(d) Requires Denial or Deferral.**

Summary judgment is proper only "after adequate time for discovery." *Celotex*, 477 U.S. at 322; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party invoking Rule 56(d) must make an authoritative and timely proffer that, "at a bare minimum, articulates a plausible basis" for believing that discoverable materials exist which would raise a trial-worthy issue. *Resolution Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203–04 (1st Cir. 1994). A continuance is warranted where discovery is incomplete, where summary judgment is premature, and where the facts essential to the nonmovant are in the exclusive control of the moving party; and the request is

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

not dilatory where "multiple delays in proceedings resulted from court's failure to act on pending motions." *Id.* at 1205.

### 1. BCH has certified MMAS Research's Rule 56(d) predicate as an undisputed fact.

BCH's Statement of Material Facts ¶ 16 states, as an undisputed material fact offered in support of its motion: "*MMAS Research acknowledged that it cannot quantify its damages without more discovery*." MMAS Research does not dispute it. That satisfies Rule 56(d). BCH seeks judgment for want of evidence while certifying that the evidence requires discovery MMAS Research has been denied and is presently seeking. (Dkt. 139.)

### 2. MMAS Research has not received the transcript on which the motion is built.

BCH deposed Mr. Trubow for a full day on June 22, 2026. MMAS Research has never received the transcript. (Trubow Decl. ¶ 19.) BCH attaches it as Exhibit 1 and cites it as the sole or principal support for ¶¶ 7, 14, 15, 16, and 18 of its Statement of Material Facts, and for every damages and causation proposition in its memorandum. MMAS Research is unable to verify a quotation, check a pincite, supply the omitted question, or identify favorable testimony BCH left out. Mr. Trubow has not had the review and correction to

which Rule 30(e) entitles him. A party should not be required to oppose a motion built on a document it has never seen.

### 3. The evidence BCH says does not exist is evidence MMAS Research was forbidden to seek.

BCH's argument is a syllogism with a missing premise: no witness has been identified who read the study description or the article; therefore no one read them; therefore no damage. The middle step works only if MMAS Research had a fair opportunity to find those witnesses. It did not.

The missing evidence is not missing because MMAS Research chose not to look for it. Dr. Hartz, Ms. Chiert, Dr. de Ferranti, Dr. Powell-Wiley, and BCH have not been deposed by MMAS Research under Rule 30(b)(6) or otherwise. The journal and readers have not been subpoenaed. BCH's documents concerning the ClinicalTrials.gov entries, references 46 and 47, and communications about them remain undiscovered. MMAS Research identified that discovery by name in its pending Rule 72(a) objection. (Dkt. 139 at 11.) It was refused.

Meanwhile BCH was permitted to compel MMAS Research's answers and testimony on topics keyed to the proposed Second Amended Complaint and its Exhibit 20 – the very publication – over MMAS Research's objection;

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

the Court then denied leave to file that pleading; and BCH now offers the testimony it extracted as its affirmative proof, while telling this Court that "the 2025 article forms no part of the basis of this lawsuit." (Dkt. 146 at 12.) That asymmetry is the product of the Court's rulings, not of any indifference by MMAS Research, and it is the subject of a pending objection. (Dkt. 139 at 7–8.)

BCH can claim no prejudice from a limited, symmetrical reopening. It has had its day-long examination of MMAS Research's principal. MMAS Research has had nothing. Sixty days is what MMAS Research asked for on June 29, and it is what it asks for now.

## B. Even on This Record, BCH Is Not Entitled to Judgment.

### 1. Eleven of BCH's eighteen facts rest on a declaration that contradicts the declarant's own contemporaneous writings.

Dr. Hartz has never been deposed. His 2026 declaration is the sole support for ¶¶ 1–4, 6, and 9–12 of BCH's Statement. It cannot be reconciled with what he wrote at the time:

- The declaration says the eligibility criterion was two or more nonadherent responses (¶ 10). Dr. Hartz wrote in 2022 that the protocol was a positive answer "to at least one question." (Trubow Decl. Ex. 20.)

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

• The declaration says the test was administered "using the paper form at least nine times" (¶ 11). Dr. Hartz wrote in 2022 that BCH "have administered 4 tests" and that "[t]he tests were administered from memory." (Trubow Decl. Ex. 20.)

• The declaration says the study "never proceeded beyond the enrollment phase" (¶ 12). BCH's own publication states that "[d]ata collection was ongoing throughout the trial" and that completion was expected in December 2025 or January 2026. Dr. Hartz wrote in 2022 that "[t]he last MMAS will be administered within the next 2 years." (Trubow Decl. Ex. 20.)

These are not immaterial discrepancies; they concern the number of administrations, the manner of administration, and the criterion applied – the facts on which BCH's own motion turns. A declaration in conflict with the declarant's contemporaneous writing presents a credibility question, and credibility questions are not resolved on summary judgment. The record must be viewed in the light most favorable to MMAS Research. *See Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015).

### 2. *"Nine" is the enrollment figure, not the number of administrations.*

BCH states the instrument was administered "at least nine times." (¶ 11.) Nine is the number of participants BCH *enrolled*. BCH's publication states that recruitment ran from August 2019 to August 2024, that the study drew on a preventive-cardiology database of approximately 400 patients, that the investigators expected to see twenty eligible patients per month, and that "the

PLAINTIFF'S OPPOSITION TO DEFENDANT
THE CHILDREN'S HOSPITAL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT
- 13

clinician determined the patient's eligibility based on self-reported adherence [46,47]" for each patient approached. The screening instrument was administered an unknown number of times over five years. The records are BCH's. MMAS Research has been permitted to obtain none of them.

## C. The Term BCH Breached Is the Term That Protected the Science.

BCH asks what its scoring choices could possibly be to MMAS Research. (Dkt. 146 at 11.) The License answers the question.

MMAS Research does not license the Morisky Widget as a form. It licenses it as a diagnostic instrument, and it conditions every license on training and certification. Before BCH was a licensee – on July 29, 2018 – Dr. Hartz asked to use the MMAS-8 and was refused: "Individual licenses are no longer given to an individual, only institutions and health care organizations are permitted to use the MMAS IP and *hands-on, in-person training is required*." (Dkt. 24-1 at 107.) The application BCH completed is captioned "Morisky Widget MMAS APPLICATION." The instrument Dr. Hartz requested was not available. The instrument he received was the Widget, and the condition of receiving it was that he be certified to use it correctly.

That condition is not ceremonial. The Widget scores in software: it applies condition- and medication-specific item wording, preserves the graded

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

final item, and returns the intentional and unintentional sub-scores that distinguish a diagnostic assessment from a tally. (Dkt. 24-1 at 54–55, 126; Dkt. 147 ¶ 8.) The requirement that "all scoring and coding must be done in the Morisky Widget" is what guarantees that an instrument bearing MMAS Research's name produces a valid result.

BCH did not do that. The consequences are a single course of conduct, reflected in three places.

**The contract.** BCH agreed to score and code within the Widget. It did not. Dr. Hartz administered from memory, applied a flat 1/0 tally, collapsed the five-level final item to a binary value, invented his own cut point, and scored on paper. (Trubow Decl. Ex. 20; Dkt. 147 ¶¶ 9–10.) He did so after MMAS Research warned him in writing that administration outside the Widget required Licensor approval, and after he asked for that approval and it was withheld. (Trubow Decl. Ex. 20.)

**The research record.** What Dr. Hartz reconstructed by hand was the flat 2006 scoring paradigm – the paradigm whose sole validation, the 2008 predictive-validity study, was retracted in September 2023 for overstating sensitivity and specificity. J Clin Hypertens 2023;25(9):889. BCH published that study as its validating authority at reference 46, cited the identical study

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

*as retracted* at reference 47, and disclosed nothing to the reader. It represented an eligibility determination as validated while printing the retraction of its validation one line below.

**The participants.** The instrument BCH used to screen was applied to patients aged 12 to 19 with familial hypercholesterolemia and hypertension. Independent reconstruction of the retracted study's own patient-level data placed real-world sensitivity at approximately 38 percent. The error is asymmetric: it records the non-adherent patient as adherent. Used as an enrollment screen, the error would tend to exclude from an adherence intervention the patients the intervention was designed to identify.

These are not separate grievances. They are one breach, seen from three angles. Each is exactly what the breached term was written to prevent. That answers BCH's causation argument: MMAS Research's injury does not merely follow BCH's breach in time; it is the injury the contract assigned BCH to avoid. *Cf. Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–63 (1931) (distinguishing proof that damage occurred from proof of amount; the wrongdoer does not take the benefit of uncertainty its own conduct created).

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

### D. BCH's Own Publication Is the Injury BCH Says Cannot Be Found.

BCH argues that no damage can flow from an attribution nobody read. But Appendix 1 exists for exactly one purpose: to control how MMAS Research and the Morisky Widget are identified in publications. It is the anti-misattribution term. BCH breached it – and what appeared, on the face of the very publication that omitted it, was misattribution.

And reference 46 is not a mystery. It is BCH's own attempt to perform Appendix 1, incorrectly. Appendix 1 requires, verbatim: "Morisky DE, Ang A, Krousel-Wood M, Ward H. Predictive Validity of a Medication Adherence Measure in a Patient Setting. J Clin Hyper 2008; 10(5):348-354. **Berlowitz DR, Foy CG, Kazis LE, Bolin L**, Conroy LB, Fitzpatrick P, Gure TR, Kimmel PL, Kirscner K, Morisky DE, Newman J, Okney C, Oparil S, et al. for the SPRINT Study Research Group. Impact of Intensive Blood Pressure Therapy on Patient-Reported Outcomes … N Engl J Med 2017; 377:733-44." (Trubow Decl. Ex. 8.) BCH's reference 46 reads: "Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich). May 2008;10(5):348-354. **Berlowitz DR, Foy CG, Kazis LE, Bolin L,** Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed." (Trubow Decl. Ex. 23.)

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

The four names are Appendix 1's. They are the opening authors of the SPRINT citation the License required BCH to print. BCH reproduced them, cut the citation off after the fourth author, and in the space where the rest of the SPRINT citation belonged, inserted "Morisky Widget MMAS, Steven Trubow, MMAS Research LLC, ed." It then omitted Appendix 1's required footnote – "A Morisky Widget license agreement is available from MMAS Research LLC" – altogether.

BCH therefore had Appendix 1 in hand and was working from it. Its memorandum quotes the clause. (Dkt. 146 at 3.) What it published was not an oversight but a material alteration of the required text: it truncated a mandated citation and converted MMAS Research and Mr. Trubow into the editors of Dr. Morisky's 2008 article. Neither MMAS Research nor Mr. Trubow authored, edited, or contributed to that article. Reference 47 is the same article, marked retracted. The resulting Methods section tells the reader that eligibility rests on [46,47], identifies the instrument as the "Morisky Widget MMAS," places Steven Trubow and MMAS Research LLC behind it, and then points one line below to the same article's withdrawal from the literature.

At least as to this point, no discovery, expert, or reader testimony is needed. It is a comparison of two documents: BCH's contract and BCH's

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

publication; both are already in the record.

Had BCH printed the Appendix 1 notice – which identifies MMAS Research as the owner of the Morisky Widget, the instrument that is not the retracted flat scale – reference 46 could not have taken the form it did. The breached term and the harm are not related by coincidence. They are related by design.

BCH cannot escape this by disclaiming the article. Its Statement of Material Facts certifies, as a material fact, that MMAS Research attributes its loss of revenue in part to "Dr. Hartz's publication of an article in 2025." (Dkt. 147 ¶ 18.) Its memorandum says the article "forms no part of the basis of this lawsuit." (Dkt. 146 at 12.) BCH cannot rely on the article as material while denying its evidentiary relevance. And this Court's May 28, 2026 order denied leave to add a *claim* concerning the article on grounds of undue delay and Local Rule 15.1 – expressly declining to reach futility. (Dkt. 130 at 12–20 & n.14.) No order excludes the article from evidence, and the Court recited its contents, including reference 46 and the "free full text" link, in that very order. (*Id*. at 6–7.)

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

## E. BCH's Breach Is Not a Past Event. It Is Publishing Today.

BCH's motion treats its ClinicalTrials.gov conduct as a closed episode from January 2023 that no one happened to see. It is neither.

Section 1 of the License requires that "[t]he MMAS required citations and licensing statement provided in Appendix 1 must be included in all manuscripts, *web postings* or other publication containing Morisky Widget MMAS descriptions or results." (Trubow Decl. Ex. 8.) The ClinicalTrials.gov record for NCT04458766 is a web posting. It has never contained the Appendix 1 notice. In its place, BCH posted – and, as of the date of this filing, continues to publish – the statement that the MMAS-8 is used "with permission from Dr Donald Morisky" and that "[a] license agreement is available from MMAR, LLC." (Trubow Decl. Ex. J.)

That is a continuing breach of two express terms: the Appendix 1 requirement and Section 1's provision that "[t]he Morisky Widget agreed to in this license are non-transferrable from the BCH." BCH has now maintained that posting for three and a half years – through this litigation, through the Ninth Circuit's determination that MMAS Research remains the registered owner of the Widget, and through BCH's own representation to this Court that it "has

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

always conceded … that MMAS Research owns the Widget copyright." (Dkt. 130 at 16, quoting Dkt. 103 at 5–6.)

This disposes of BCH's central premise. BCH argues that no reasonable jury could find that anyone read the study description while asking this Court to take judicial notice that ClinicalTrials.gov hosts nearly 600,000 studies and is the public federal registry of clinical research. (Dkt. 146 at 5.) The proposition that a misattribution published continuously on that registry for three and a half years, and still there, reached no one cannot be treated as a fact established as a matter of law. It is a question for a jury, and it is a question MMAS Research has been foreclosed from developing.

The falsity of what BCH continues to publish is also no longer open. The only court to have addressed the question has held that the MMAS-4 and MMAS-8 are not copyrightable subject matter. (See Dkt. 130 at 3.) BCH nonetheless continues to publish, on a federal registry, that the MMAS-8 is protected by United States copyright and that a license to it is available from MMAR, LLC. MMAS Research does not ask the Court to treat that ruling as making BCH's 2023 posting false when made; it asks the Court to recognize that the posting is being published *now,* without the attribution required by the License, and that BCH has never corrected it.

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

## F. BCH's Alternative-Causation Theory Refutes BCH's Own Motion.

In a footnote, BCH offers an alternative explanation for MMAS Research's losses: the lawsuits it has brought, and "published warnings from universities, scientists, and others against using the MMAS." (Dkt. 146 at 13 n.6.) That theory presupposes that published statements about the MMAS drive licensing decisions in this market – which is the premise BCH spends the rest of its brief denying.

BCH cannot argue in the body of its memorandum that no one reads what it publishes about the MMAS, and in its footnotes that what is published about the MMAS destroyed MMAS Research's business. At a minimum, BCH has raised a genuine dispute of material fact against itself.

Nor is the record on injury empty. The misattribution printed on the face of BCH's own publication – addressed above – is itself injury to the interest Appendix 1 exists to protect, and it requires no discovery to establish. As to the company's finances, the accompanying Declaration of Rodney Watkins, CPA – who has served as MMAS Research's accountant since June 2018 and prepared its federal returns – authenticates MMAS Research's Form 1120-S returns for tax years 2021 through 2025 and states the company's total gross receipts for each year. (Watkins Decl. ¶¶ 6, 9 & Ex. 1.) Mr. Watkins offers no

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

opinion on the amount of any damages, and he states that those total receipts do not, standing alone, disclose what portion of the company's receipts in any year came from licensing the Morisky Widget. (Watkins Decl. ¶¶ 5, 7.) That licensing-specific figure is precisely what the reciprocal discovery MMAS Research has been denied would develop; its present absence is a product of that foreclosure, not proof that no injury occurred. MMAS Research does not offer the declaration to fix the amount of its damages – the amount is not before the Court. It offers it for the narrower proposition BCH's motion requires the Court to reject: that no reasonable jury could find that MMAS Research was injured at all.

**G. BCH Told This Court It Concedes Ownership but Told the World It Was Uncertain.**

To this Court, BCH represented that it "has always conceded … that MMAS Research owns the Widget copyright." (Dkt. 130 at 16, quoting Dkt. 103 at 5–6.) In its Statement of Material Facts, BCH now describes MMAS Research as an entity that merely "claimed to own the copyright." (Dkt. 147 ¶ 4.) And in its August 14, 2025 publication, BCH told the medical literature that "we are uncertain how the MMAS should be attributed and who owns the intellectual property rights."

PLAINTIFF'S OPPOSITION TO DEFENDANT
THE CHILDREN'S HOSPITAL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT
- 23

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

Those inconsistent positions preclude judgment as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, MMAS Research respectfully requests that the Court deny BCH's motion for summary judgment, or in the alternative defer ruling on it under Federal Rule of Civil Procedure 56(d) and permit a limited, defined period of reciprocal fact discovery directed to the matters identified in the accompanying Declaration of Steven Trubow.

Respectfully submitted this 20th day of July, 2026.

MMAS RESEARCH LLC
By its attorneys,

Ronald D. Coleman (pro hac vice)
COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
rcoleman@colemanlaw-pc.com

/s/ A. Neil Hartzell (BBO #544752)
FREEMAN MATHIS & GARY, LLP
201 Washington Street, Suite 2200
Boston, MA 02108
neil.hartzell@fmglaw.com
Local Counsel for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANT
THE CHILDREN'S HOSPITAL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT
- 24

COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611

# CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants on the date below.

_____
Ronald D. Coleman

July 20, 2026

**COLEMAN LAW FIRM, PC**
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611