UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MMAS RESEARCH, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> THE CHILDREN'S HOSPITAL CORPORATION, et al., <br><br> Defendants | Civ. A. No. 1:24-cv-12108-DJC |

**THE HOSPITAL'S RESPONSE TO
MMAS RESEARCH'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

**A.  The Parties and the License.**

1.      Plaintiff is the owner of the Morisky Widget software, registered under United States Copyright Registration No. TX 8-816-517 (registered December 3, 2019). Trubow Decl. ¶ 2 & Ex. 1.

**RESPONSE**: Disputed.[1] In *Morisky v. MMAS Research, LLC, et al.*, Civ. No. 2:21-cv-01301-DWC, a case pending in the Western District of Washington, Dr. Morisky asserts that he is the owner of the Widget copyright. Second Makson Decl. Ex. 1. The action is still pending. Second Makson Decl. Ex. 4. The court has entered a default against MMAS Research as a sanction, and Dr. Morisky's motion for entry of default judgment includes a request for a declaration that he owns the copyright. (Second Makson Decl. Exs. 2-3). That motion is pending.

2.      On September 4, 2019, BCH, by and through Dr. Jacob Hartz, executed a written perpetual Morisky Widget MMAS-8 license with Plaintiff. The License bears Dr. Hartz's signature and is dated 9/4/19. Trubow Decl. ¶ 4 & Ex. 2 (the "License").

**RESPONSE**:  Not Disputed.

---

[1] The statement asserts that MMAS Research owns the "Morisky Widget software." Presumably it means to say that MMAS Research owns the copyright that covers the source code for the software.

3.      Plaintiff performed its obligations under the License, including granting the license and traveling to Boston to train and certify BCH's personnel on the Morisky Widget. Trubow Decl. ¶ 7.

**RESPONSE**: Not disputed.

## B.  The License Terms Breached.

4.      The License required that all scoring and coding of MMAS-8 tests be done in the Morisky Widget. License § 3.

**RESPONSE**:  Disputed.[2] The License is a written contract that speaks for itself. The

Hospital denies that the License is a binding contract between the parties. The Hospital does not,

however, dispute that the License includes the following language: "… all scoring and coding

must be done in the Morisky Widget."

5.      The License required Plaintiff's approval before BCH could use MMAS paper or electronic questionnaires. License § 3.

**RESPONSE**:  Disputed. The License is a written contract that speaks for itself. The

Hospital denies that the License is a binding contract between the parties. The Hospital does not,

however, dispute that the License contains the following language: "With Licensor approval,

BCH can use MMAS paper or electronic questionnaires…."

6.      The License provided that the Widget's scoring and coding criteria are trade secrets that can never be divulged in any publication. License § 1.

**RESPONSE**:  Disputed. The License is a written contract that speaks for itself. The

Hospital denies that the License is a binding contract between the parties, and it denies that

parties can, by contract, declare something to be a trade secret that is not. The Hospital does not,

however, dispute that the License contains the following language: "Coding and scoring criteria

---

[2] The undisputed *fact* is that the document MMAS Research has offered as an exhibit to Mr. Trubow's declaration is the license agreement. Here and in many other places, MMAS Research offers arguments about what the license says and means as undisputed material facts. The Hospital responds in kind, but the Court should treat disputes about what the License agreement means or whether it is enforceable as a contract at all as questions of law, not questions of fact.

of the MMAS are trade secrets of MMAS and as such can never be divulged in any publication, presentation, or website without written permission from MMAS."

7.    The License required BCH to acknowledge Plaintiff as owner and to include the Appendix 1 attribution notice in all publications referencing the tests. License App. 1.

**RESPONSE**:  Disputed. The License is a written contract that speaks for itself. The Hospital denies that the License is a binding contract between the parties, and it denies that License says what MMAS Research claims. The Hospital does not, however deny, that the License contains the following language: "The MMAS required citations and licensing statement provided in Appendix 1 must be included in all manuscripts, web postings or other publication containing Morisky Widget MMAS descriptions or results."

8.    The License, at Section 5 (Terms and Termination), provides that "[i]n case of scientific, administrative or intellectual property misconduct in using the Morisky Widget, MMAS reserves the right to withdraw permission for use and to pursue all legal remedies." License § 5.  Section 1 (Terms of Usage) provides that "[t]he Morisky Widget agreed to in this license are nontransferrable from the BCH" and that the Agreement "shall be governed by and construed under the laws of Massachusetts." License § 1.

**RESPONSE**:  Disputed. The License is a written contract that speaks for itself. The Hospital denies that the License is a binding contract between the parties. The Hospital does not, however, deny that the License contains the quoted language.

**C.  BCH's Conduct.**

9.    Dr. Hartz admitted, in a July 6, 2022 email, that BCH "administered 4 [MMAS-8] tests" and that "[t]he tests were administered from memory," with scoring on the Widget planned only afterward. Trubow Decl. ¶ 9 & Ex. 3.

**RESPONSE**:  Disputed. Mr. Trubow's declaration is not admissible evidence of the contents of Dr. Hartz's email, *see* Fed. R. Evid. 1002. Contrary to the declaration, the email is not attached as an exhibit to the declaration.

3

10.    BCH created and administered its own paper MMAS-8 questionnaire, which Dr. Hartz transmitted to Plaintiff. Trubow Decl. ¶ 10 & Ex. 4.

RESPONSE:  Not disputed.

11.    BCH did not obtain Plaintiff's approval to create or use that paper questionnaire, notwithstanding Plaintiff's July 5, 2022 written reminder that use outside the Widget requires Licensor approval. Trubow Decl. ¶ 8 & Ex. 3.

RESPONSE:  Disputed. Dr. Hartz obtained Mr. Trubow's approval to use the paper questionnaire. Second Hartz Dec. ¶ 3.

12.    The face of BCH's paper test reveals the Widget's eligibility-scoring rule and the reversed scoring of Question 5. Trubow Decl. ¶ 11 & Ex. 4.

RESPONSE:  Disputed. The document that shows the scoring rule and the reversed scoring of Question 5 is the document that was used only internally and not disclosed to anybody. The document that was disclosed to patients does not show the scoring rule or the reversed scoring. (First Hartz Decl., ¶¶ 9-11 & Ex. 1; Second Hartz Decl. ¶ 2).

13.    BCH published the MMAS-8 scoring and coding on ClinicalTrials.gov without Plaintiff's written permission. Trubow Decl. ¶ 12.

RESPONSE:  Disputed. The Hospital disclosed Dr. Hartz's criterion for eligibility for the study. It did not disclose any criterion offered or suggested by MMAS Research, and there is no evidence that the Widget source code contained a criterion for participation in the study. The clinicaltrials.gov study description does not disclose any scoring or coding criteria, beyond saying that a patient whose answers to two or more questions showed nonadherence would be eligible. Docket No. 24 ¶ 90; Hartz Dec. ¶¶ 10, 12.

14.    BCH transferred the licensed Morisky Widget MMAS-8 condition- and medication-specific tests to MMAR LLC and Dr. Morisky by replacing them, on the National Institutes of Health's ClinicalTrials.gov website, with an MMAR LLC license — posting that the MMAS-8 was used "with permission from Dr Donald Morisky" and that "[a] license agreement is available from MMAR, LLC" — and BCH's Morisky Widget license was replaced with an MMAR LLC MMAS-8 license in January 2023. Trubow Decl. ¶ 13 & Ex. 5.

4

**RESPONSE**:  Disputed. MMAS Research has offered no evidence of any assignment or transfer of any rights, tests, or data. The evidence submitted simply shows that the Hospital attributed the Widget, allegedly wrongfully, to Dr. Morisky and MMAR, LLC. Dr. Hartz changed the attribution language on the study description because he was facing competing and irreconcilable demands for attribution from both Mr. Trubow and Dr. Morisky. Hartz Dec. ¶ 17.

**D.  BCH's 2025 Publication.**

15.    Plaintiff alleged the attribution breach in the Complaint filed August 15, 2024. Trubow Decl. ¶ 14.

**RESPONSE**:  Disputed. No evidence is offered in support of this statement, and the Hospital does not understand what MMAS Research seeks to show is undisputed.

16.    On August 14, 2025 — approximately one year after the Complaint — BCH published an article (the "Article," e65105) authored by its personnel. The Article omits the required Appendix 1 notice entirely and, in its place, appends a non-conforming attribution string to reference 46. Trubow Decl. ¶¶ 15–16 & Ex. 6 (Article, ref. 46).

**RESPONSE**:  Disputed. The article was not published or submitted for publication by the Hospital, but by its authors. (Second Hartz. Decl. ¶ 5). Not all of the authors were "personnel" associated with the Hospital. (*Id.*). The Article does omit the "Appendix 1 notice," but that notice is only required when the "manuscripts, web postings or other publication [contains] Morisky Widget MMAS *descriptions or results*." Docket No. 24-1 at Ex. 8 (emphasis added). The text of the article does not contain "Morisky Widget MMAS descriptions or results." Further, the Article is not at issue in this action. Docket No. 130 at 14-18; Docket 147-1 at 102:21-103:6.

17.    Because the Article postdates the Complaint by approximately one year, it independently confirms, on its own face, the attribution breach Plaintiff pleaded before the Article existed. Trubow Decl. ¶ 17 & Ex. 6.

**RESPONSE**:  Disputed. The Hospital admits that the article came after the complaint but is uncertain what material fact the remainder of ¶ 17 seeks to establish.

### E.  Injury.

18.     Plaintiff has sustained reputational and business injury flowing from BCH's conduct. Trubow Decl. ¶ 18.

**RESPONSE**:  Disputed. Paragraph 18 of Mr. Trubow's declaration is simply a statement asserting that injury has occurred without providing any supporting facts. There is no evidence that MMAS Research was harmed by anything the Hospital did or failed to do. Docket No. 136 at 7:6-8:22; Docket No. 147-1 at 98:15-99:2; 103:1-104:23.

<u>**The Hospital's Statement of Additional Material Facts**</u>

19.     Dr. Morisky asserts that he exclusively owns the copyright to the Morisky Widget in ongoing litigation in *Morisky v. MMAS Research, LLC,* No. 21-1301 (W.D. Wash.) ("the Washington Case"). Second Makson Decl. Ex. 1.

20.     In the Washington Case, the court entered a default against MMAS Research and found "prior sanctions have not been sufficient to discourage Defendants from continuing to defy the Court's orders and rules and engage in delay tactics in this case." Second Makson Decl. Ex. 2 at 4. The court considered MMAS Research's "failure to participate in discovery" and to "pay sanctions" as well. *Id.* at 1.

21.     Dr. Morisky filed a motion for default judgment in the Washington Case, seeking a declaration that "Donald E. Morisky, and his successor-in-interest Morisky Medication Adherence Research LLC (MMAR), are the sole and exclusive owners of all copyright interests in the Morisky Widget." Second Makson Decl. Ex 3 at 23.

22.     Dr. Morisky's motion for default judgment in the Washington Case is pending before the court. Second Makson Decl. Ex. 4.

Respectfully submitted,

THE CHILDREN'S HOSPITAL
CORPORATION

By its attorneys,

*/s/Theodore J. Folkman*

Theodore J. Folkman (BBO No. 647642)
Taylor M. Makson (BBO No. 697476)
Elizabeth L. Gardon (BBO No. 711867)
RUBIN AND RUDMAN LLP
53 State St.
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com
tmakson@rubinrudman.com
egardon@rubinrudman.com

Dated:  July 27, 2026