The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DONALD E. MORISKY, ScD, MPH, <br><br> Plaintiff, <br> v. <br><br> MMAS RESEARCH, LLC, a Washington limited liability company; STEVEN TRUBOW; POLINA FEILBACH; MMAS RESEARCH ITALY SRL; and MMAS RESEARCH FRANCE SAS, <br><br> Defendants. | Case No. 2:21-cv-01301-RSM-DWC <br><br> **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT** |

This matter came before the Court on Plaintiff Donald E. Morisky's Motion for Default Judgment (Dkt. 332). Default was entered against all Defendants on April 22, 2026 (Dkt. 325) pursuant to this Court's Order for Entry of Default entered April 21, 2026 (Dkt. 324). As set forth herein, the Court finds that default judgment is appropriate under Federal Rule of Civil Procedure 55(b)(2). Upon entry of default, the well-pleaded factual allegations of the complaint are deemed admitted. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). The Court may additionally take evidence on all allegations, including damages, and is not limited to the deemed-admitted factual record of the complaint. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–

1

18 (9th Cir. 1987). Having reviewed the Motion, supporting declarations and exhibits, the entire record of this proceeding, and being otherwise fully advised, the Court enters the following Findings of Fact, Conclusions of Law, and Judgment.

## FINDINGS OF FACT

### I.    The Parties

1.    Plaintiff Donald E. Morisky, ScD, MPH ("Plaintiff" or "Morisky") is an individual residing in the State of Nevada. Plaintiff is a distinguished professor emeritus at the UCLA Fielding School of Public Health and a leading authority in medication adherence research. (Dkt. 22, ¶¶ 11-29.) He is the author and creator of the Morisky Medication Adherence Scale ("MMAS"), a validated psychometric instrument used worldwide by healthcare providers and clinical researchers to predictively assess patient compliance with medication protocols, recognized globally as the "Gold Standard" and among the most widely cited instruments in medication adherence science. (Dkt. 22, ¶ 29.)

2.    Defendant MMAS Research, LLC ("MMAS Research") is a limited liability company organized under the laws of Washington, with its principal place of business in Washington. (Dkt. 22, ¶ 4.) MMAS Research operated a commercial licensing business built entirely upon Plaintiff's copyrighted works and the Morisky name and reputation. (Dkt. 22, ¶¶ 4, 45-47, 52-53; Dkt. 66.)

3.    Defendant Steven Trubow ("Trubow") is an individual residing in California and is a manager, member, and principal of MMAS Research who directed its licensing operations and negotiated the CR2A Agreement. (Dkt. 22, ¶ 4.)

4.    Defendant Polina Feilbach ("Feilbach") is an individual residing in California and is a Governor of MMAS Research LLC with fiduciary management responsibilities over the company. (Dkt. 22 at 2.)

5.    Defendant MMAS Research Italy SRL ("MMAS Italy") is an Italian entity owned, managed, and controlled exclusively by Trubow that received purported sublicenses from MMAS

2

Research to use Plaintiff's copyrighted works and has functioned as an integrated affiliate of MMAS Research. (Dkt. 22 at 2.)

6.      Defendant MMAS Research France SAS ("MMAS France") is a French entity owned, managed, and controlled exclusively by Trubow that received purported sublicenses from MMAS Research to use Plaintiff's copyrighted works and has functioned as an integrated affiliate of MMAS Research. (Dkt. 22 at 2.)

## II.     The Morisky Intellectual Property

7.      At the time this action was filed, Plaintiff was the sole owner of federal copyright registrations in the MMAS-4 (Reg. No. TX0008285390) and the MMAS-8 (Reg. No. TX0008632533) (Dkt. 22, ¶¶ 31-36; Dkt. 22-1; Dkt. 22-2), together with the following trademark and service marks (collectively, the "Morisky Marks"), each of which has attained common law trademark rights in connection with the provision of diagnostic procedures to assess adherence to medication protocols: MORISKY, MORISKY MEDICATION ADHERENCE SCALE, MORISKY SCALE, MORISKY MEDICATION ADHERENCE PROTOCOL, MORISKY PROTOCOL, MMAS, MMAS-4, and MMAS-8. (Dkt. 22, ¶¶ 38-43; Dkt. 22-6, Ex. 1.) The MMAS mark was also the subject of U.S. Trademark Registration No. 5,837,273; that registration was cancelled on March 6, 2026, and a petition for reinstatement pursuant to 37 C.F.R. § 2.146 is currently pending before the USPTO. (Dkt. 334; Dkt. 334-1, ¶¶ 2, 5; Dkt. 334-2; Dkt. 334-4.)

8.      The Morisky Widget copyright (Reg. No. TX0008816517) ("Widget"), is a software adaptation of the MMAS-4 and MMAS-8. (Dkt. 22, ¶¶ 2, 58, 99; Dkt. 22-7 at 1; Dkt. 332-5 at 15, 123:22–24.)[1] It was created during Plaintiff's tenure as a co-owner of MMAS Research and is registered in the name of Defendant MMAS Research. (Dkt. 22, ¶¶ 4, 52-58). MMAS Research's ability to develop and commercialize the Widget was premised entirely on rights licensed from Plaintiff. (Dkt. 22, ¶¶ 53, 62–69; Dkt. 22-7.) The Widget's functional core wholly incorporates the MMAS-4 and MMAS-8: it displays the complete text of the questions comprising those instruments,

---

[1] (Trubow Dep.: "Q. The Morisky Widget is a derivative of the MMAS-8, correct? A. Yes.")

3

presents the same response options, and applies the same scoring algorithm specified in Plaintiff's registered works. (Dkt. 43, ¶ 25; Dkt. 75-4; Dkt. 77, ¶¶ 4–5, 10; Dkt. 332 at 15; Dkt. 22-7 at 1.) Every assessment element of the Widget—questions, response options, and scoring methodology—is derived from Plaintiff's copyrighted works. (Dkt. 22, ¶¶ 53, 62–69; Dkt. 22-7.)

9.     The Widget was registered by MMAS Research in its own name. (Dkt. 22, ¶ 53; Dkt. 22-7.) The copyright registration for the Widget identifies the MMAS-4 and MMAS-8 in the "Limitation of copyright claim / Previous registration" field, designating those instruments as preexisting works incorporated in the Widget. (Dkt. 22-7.) The Copyright Act requires this identification for derivative works. 17 U.S.C. § 409(7). By making this identification, MMAS Research represented to the U.S. Copyright Office that the Widget is a derivative work of Plaintiff's MMAS-4 and MMAS-8, and that MMAS Research's copyright claim in the Widget does not extend to the underlying MMAS-4 and MMAS-8 content authored by Plaintiff. *Id.*

10.     The MMAS-4, MMAS-8, Widget, and Morisky Marks are collectively referred to as the "Morisky Intellectual Property." (Dkt. 22, ¶ 2; Dkt. 22-1; Dkt. 22-2; Dkt. 22-7.)

### III.    The CR2A Settlement Agreement

11.     On or around December 6, 2020, the parties entered into a written settlement agreement pursuant to Washington Civil Rule 2A (the "CR2A Agreement") resolving prior litigation. (Dkt. 22, ¶¶ 72-73; Dkt. 22-6.) The CR2A Agreement is a valid and enforceable written contract under Washington law, supported by adequate consideration, executed by all parties, and reflecting definite material terms then binding upon the parties. (Dkt. 22-6.)

12.     The CR2A Agreement expressly required MMAS Research to execute and deliver to Plaintiff a written assignment of the copyright in the Morisky Widget (TX0008816517) and all other Morisky Intellectual Property held by Defendants, including all associated goodwill, existing licenses, sublicenses, and contractual rights arising from exploitation of the Morisky Marks and MMAS-4 and MMAS-8 copyrighted instruments. (Dkt. 22-6, §§ 1, 6-11, 15.)

13.     The CR2A Agreement further required Defendants to: (a) share with Plaintiff forty-five percent (45%) of net proceeds from Claim Settlements, which were limited to the specific

4

persons identified on Exhibit 3 to the CR2A, and to assign to Plaintiff all revenues from existing license agreements identified on Exhibit 4 upon completion of the Transition Period that ended September 3, 2021 (Dkt. 22-6, §§ 2-4, 10-12);[2] (b) disclose to Plaintiff within thirty (30) days of execution all information regarding the Exhibit 3 Claim Settlements and provide an accounting of proceeds within thirty (30) days of receipt (Dkt. 22-6, § 5); (c) cease using the Morisky Intellectual Property, including the Morisky Marks for any business name, except solely to facilitate the prosecution of Claim Settlements listed on Exhibit 3 (Dkt. 22-6, §§ 4, 8); and (d) assign the morisky.org domain name and transfer the Morisky Widget software database, and related materials to Plaintiff upon or prior to completion of the Transition Period (Dkt. 22-6, § 15). The CR2A further provided that the prevailing party "shall recover its costs and reasonable attorney's fees" in any action to enforce the CR2A. (Dkt. 22-6, § 18.)

14.     The CR2A Agreement provided that the parties would memorialize their agreed obligations in a "Final Agreement" by July 5, 2021, and established an "Appointed Decider" mechanism: if the parties could not agree on the language of the Final Agreement, they would appoint a neutral mediator from the Seattle office of JDR to serve as the Appointed Decider with authority to draft the Final Agreement for them that would be "binding on the Parties regardless of whether they ultimately execute[d] it." (Dkt. 22-6, § 17.) The CR2A further provided that if no Final Agreement was entered, the CR2A itself remained the binding agreement of the parties. (Dkt. 22, ¶¶ 80–81; Dkt. 22-6, §§ 17–18.)

15.     When the parties could not agree on Final Agreement language, they identified a prospective Appointed Decider from JDR. (Dkt. 22, ¶ 82; Dkt. 22-9.) The Appointed Decider required confirmation that the Final Agreement he would draft would be binding on the parties as provided in the CR2A. (Dkt. 22, ¶ 83; Dkt. 22-9; Dkt. 332-5.) Trubow refused to provide that

---

[2] The CR2A provided for a Transition Period ending 60 days after the execution of the Final Agreement. (Dkt. 22-6, § 7.) The Final Agreement deadline was extended by Addendum "A" to the CR2A to July 5, 2023. (Dkt. 22-6 at 34-35.) Defendants' prevention of the execution of the Final Agreement waived its execution as a condition to the termination of the Transition Period, such that it ended 60 days later on September 3, 2021.

confirmation, falsely characterizing the CR2A mechanism as providing only non-binding mediation. (Dkt. 22, ¶¶ 84–86; Dkt. 332-5.) The prospective Appointed Decider consequently withdrew from the engagement. (Dkt. 22, ¶¶ 87–91; Dkt. 22-9.) Defendants thereafter claimed that their own prevention of the Final Agreement process excused them from all substantive CR2A obligations, including the required assignment of the Morisky Widget copyright. (Dkt. 22, ¶¶ 82–91; Dkt. 22-9; Dkt. 332-5.)

16.     Plaintiff fully and timely performed all of his obligations under the CR2A Agreement. (Dkt. 22, ¶¶ 74–76.)

## IV.     Defendants' Total Repudiation and Breach

17.     Defendants materially breached the CR2A Agreement. MMAS Research failed and refused to assign the Widget copyright and license agreements. (Dkt. 22, ¶¶ 134(a)–(b); Dkt. 22-6, § 1.) Defendants' license to use Plaintiff's copyrighted works had been terminated on April 10, 2020 before the CR2A was executed (Dkt. 22 at 2; Dkt. 22, ¶¶ 61–68.) The CR2A restored only a limited, time-bounded right to pursue licensing or litigation against the persons specifically identified on Exhibit 3. (Dkt. 22, ¶¶ 47, 74(a); Dkt. 22-6, §§ 1, 8.) The CR2A granted no rights with respect to any other person. (Dkt. 22-6, §§ 3–4.) The existing MMAS Research licensees identified on Exhibit 4 were slated for assignment to Plaintiff upon completion of the Transition Period no later than September 3, 2021. (Dkt. 22-6, §§ 7, 10, and Addendum "A" (extending Transition period to 60 days after July 5, 2021).)

18.     Defendants ceased any compliance with the obligation to share Exhibit 3 settlement proceeds shortly after Plaintiff filed this action. Defendant Trubow admitted in deposition that Defendants were licensing persons outside of Exhibit 3 as early as 2021 in violation of the CR2A, expressly repudiated all obligations under the CR2A Agreement, and systematically refused to comply with any of its terms (Dkt. 22, ¶¶ 77, 134; Dkt. 332-5.)

19.     Defendants refused to transfer the morisky.org domain name and website or Widget software to Plaintiff as required. (Dkt. 22, ¶ 134(d); Dkt. 22-6, §§ 6–7, 16.) Defendants failed to

produce all financial records, and the partial 2021 bank records produced in discovery, reflect gross licensing receipts of at least $631,339 but just for that year. (Dkt. 255 at 18-20; Dkt. 332-6.)

## V.    MMAR Joinder

20.    Subsequent to the commencement of this action, Plaintiff executed an Intellectual Property Assignment Agreement (the "IP Assignment") on June 8, 2023, transferring to Morisky Medication Adherence Research LLC ("MMAR"), a company wholly owned by Plaintiff, Plaintiff's entire right, title, and interest in and to the Morisky Intellectual Property. (Dkt. 290-1.) The IP Assignment was recorded with the U.S. Copyright Office on June 16, 2023, as Document No. V15016D624, establishing constructive notice of MMAR's ownership of the Morisky Intellectual Property as Plaintiff's successor-in-interest. *See* 17 U.S.C. § 205(c); (Notice of Filing, Dkt. 335, Ex. B (USCO Recordation No. V15016D624)).

21.    On October 20, 2025, Plaintiff moved pursuant to Federal Rule of Civil Procedure 25(c) to join MMAR as co-plaintiff and real party in interest as Plaintiff's successor-in-interest to the Morisky Intellectual Property. (Dkt. 290.) Defendants opposed the motion (Dkt. 294) and Plaintiff replied (Dkt. 297). The motion was fully briefed and remained pending when this Court entered its Order for Entry of Default (Dkt. 324) and directed Plaintiff to file the instant motion. MMAR appeared through counsel and is a participant in this action as successor-in-interest to Plaintiff. (Dkt. 325; Dkt. 332.)

## VI.    Related Matters

22.    Subsequent to the commencement of this action, Defendants filed at least twelve (12) lawsuits in federal courts across multiple jurisdictions asserting copyright infringement and related claims premised on intellectual property rights that belong to Plaintiff and his successor-in-interest MMAR. (Dkt. 332 at 5, 8; Dkt. 332-4; Dkt. 22-6, § 18; Dkt. 332-4.) Beyond these judicial actions, Defendants have also asserted the claims through extrajudicial means, including demand letters and complaints to administrative, regulatory, and governmental bodies, demanding payment from and coercive action against persons using the Morisky Intellectual Property. (Dkt. 94, ¶¶ 31–32, 34–35, 45–46; Dkt. 69; Dkt. 129.) As used in this Order, "Related Matters" means all such actions and

proceedings, and any other judicial, arbitral, administrative, regulatory, or governmental proceeding, demand, claim, notice, complaint, or other assertion of right, whether now pending, previously concluded, or hereafter initiated, and whether known or unknown.

23.     In connection with the Sanofi Related Matter, MMAR reached out to Sanofi after learning of its settlement with MMAS Research and informed Sanofi that MMAR was the true rights holder. (Dkt. 272; Dkt. 275; *see* Notice of Filing, Dkt. 335, Ex. A (*MMAS Research LLC v. Boston Children's Hosp.*, No. 1:24-cv-12108-DJC (D. Mass.) ("BCH") Dkt. 98-2 ¶¶ 141-144).) In response to that notice, Sanofi negotiated an indemnification provision in its settlement agreement with MMAS Research specifically requiring MMAS Research to reimburse Sanofi for any claims subsequently brought by Plaintiff or MMAR. (BCH Dkt. 98-2 ¶¶ 147, 243, Ex. 25.) MMAS Research, acting through Trubow, agreed to that indemnification, and Defendants were paid the $115,000 settlement amount. (*Id.*)

24.     Despite the CR2A's requirement that Defendants assign the Widget copyright to Plaintiff, Defendants refused and have continued to assert ownership of that registration in the Related Matters. (Dkt. 22, ¶¶ 74(a), 134(b); Dkt. 22-6, § 1; Dkt. 22-7; BCH Dkt. 98-2, ¶¶ 5–6.) This has consequently impaired Plaintiff's and MMAR's ability to independently prosecute its claims in the Related Matters. (*See,* Dkt. 332 at 5.) Federal copyright registration constitutes prima facie evidence of ownership. 17 U.S.C. § 410(c). So long as Defendants could point to the federal registration as evidence of ownership, any court in which MMAR sought to assert successor-in-interest rights faced a threshold title dispute that could not be resolved without adjudication of the underlying CR2A Agreement—the very issue presented in this action. MMAR therefore diligently pursued its ownership claims in this Court as the predicate to effective enforcement of its rights in the Related Matters.

## VII.    Discovery Misconduct, Sanctions, and Entry of Default

25.     Throughout this litigation, Defendants engaged in pervasive, willful, and systematic discovery and litigation misconduct, including refusing to produce documents, failing to appear for depositions, repeatedly filing privileged documents, destroying or failing to preserve evidence,

violating multiple discovery orders, asserting dismissed claims and defenses, and disregarding previously-imposed monetary sanctions. (Dkt. 123; Dkt. 124; Dkt. 141; Dkt. 151; Dkt. 184; Dkt. 194; Dkt. 195; Dkt. 226; Dkt. 255; Dkt. 257.)

26.    On August 20, 2024, United States Magistrate Judge David W. Christel entered a Report and Recommendation recommending entry of case-ending sanctions against Defendants, finding that their discovery misconduct was willful and in bad faith. (Dkt. 255.)

27.    On September 10, 2024, this Court adopted the Report and Recommendation in full and entered case-ending sanctions against all Defendants pursuant to the Court's inherent power and Federal Rule of Civil Procedure 37. (Dkt. 257.) The Court confirmed the sanctions and imposed unpaid monetary sanctions totaling $82,877.40. (Dkt. 278.)

28.    In November 2024, this Court ordered Defendants to pay $46,531.48 in court-ordered sanctions by December 23, 2024. (Dkt. 267.) Defendants represented to this Court that they lacked the financial means to satisfy that obligation. (Dkt. 272, at 2; Dkt. 271 at 2–4.) Defendants' representations of financial inability were false. Defendants subsequently disclosed in federal court filings in the District of Massachusetts that on December 16, 2024 (one week before the payment deadline) Defendants received a $115,000 settlement payment from Sanofi Winthrop Industrie pursuant to an extrajudicial licensing demand asserted in the name of rights belonging to Plaintiff. (BCH Dkt. 98-2 ¶¶ 147, 243, Ex. 25; Dkt. 272 at 2; Dkt. 272-1; Dkt. 275, ¶¶ 2–5.) Rather than satisfy the court-ordered sanctions obligation with those funds, Defendants retained the $115,000.00 and continued to misrepresent their financial condition to this Court. (Dkt. 271 at 2–4; Dkt. 272 at 2–3; Dkt. 320 at 4; Dkt. 326 at 2–3.) This conduct is consistent with Trubow's statement that he "would never pay a dollar of sanctions, or any judgment entered against him to Morisky." (Dkt. 255 at 7–8.)

29.    On March 26, 2026, this Court issued an Order to Show Cause why default should not be entered against all Defendants based on their continued failure to comply with prior court orders. (Dkt. 319.) Defendants failed to make any adequate showing of cause. (Dkt. 324 at 4–5.)

9

30.     On April 21, 2026, this Court entered its Order directing entry of default against all Defendants. (Dkt. 324.) On April 22, 2026, the Clerk of Court entered Default against all Defendants. (Dkt. 325.)

31.     The default against Defendants was entered as a sanction for willful and systematic defiance of court orders, not for failure to appear. Defendants were represented by counsel throughout this litigation and had actual notice of all proceedings and obligations.

## VIII.   Adverse Inference and Willfulness

32.     This Court previously entered an adverse inference instruction against Defendants pursuant to Federal Rule of Civil Procedure 37(e)(2), authorizing the Court to presume that any destroyed, withheld, or unproduced evidence would have been adverse to Defendants' interests in this case. (Dkt. 257 at 1; Dkt. 278 at 1.)

33.     Defendants' infringement of Plaintiff's copyrights and trademarks was willful. Defendants had actual knowledge of Plaintiff's copyright registrations for the MMAS-4 and MMAS-8, and the Morisky Marks, continued to exploit those works and marks without authorization, and concealed licensing revenues while flouting court orders. (Dkt. 255 at 9–10; Dkt. 257; Dkt. 324 at 4–5.)

34.     Steven Trubow admitted in sworn testimony that MMAS Research derived substantial revenue from licensing the MMAS instruments. (Dkt. 332-5, Trubow 30(b)(6) Dep. Vol. 1, 179:12–15.) Defendants' 2021 bank records establish gross licensing receipts of $631,339 for that year. (Dkt. 332-6.) The adverse inference applies to confirm that Defendants' total revenue over the period of breach substantially exceeds this documented amount.

## IX.    The Eitel Factors

35.     This Court finds that all seven factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), weigh in favor of entry of default judgment.

36.     ***First factor*:** Plaintiff would suffer substantial prejudice if default judgment is denied. Defendants have repudiated all CR2A obligations, are actively exploiting Plaintiff's copyrighted

10

works and the Morisky Marks for commercial gain and have demonstrated through years of defiance that no process short of a judgment will afford Plaintiff relief.

37.    ***Second and third factors***: Plaintiff's claims are meritorious and substantiated. The CR2A Agreement is a valid written contract. Defendants' breach is total and uncontested. Plaintiff's copyright registrations are valid and establish ownership. Plaintiff's Morisky Marks are valid and establish ownership. The claims are legally sound and fully supported by the record.

38.    ***Fourth factor***: The sum at stake, $3,417,294 in contract, trademark, and copyright damages plus attorney's fees and costs, is proportionate to the severity and duration of Defendants' misconduct and the actual harm to Plaintiff. (Dkt. 255 at 21–24; Dkt. 257 at 1; Dkt. 278 at 1; Dkt. 332 at 7.)

39.    ***Fifth factor***: There is no genuine dispute of material fact. The adverse inference ruling, facts established by the default, Defendants' own admissions, and the documentary record leave no contested material factual questions.

40.    ***Sixth factor***: Default was not the result of excusable neglect. Defendants were represented by counsel during the events giving rise to the default sanctions and were fully on notice of all court orders and litigation obligations.

41.    ***Seventh factor***: The policy favoring decisions on the merits is outweighed by Defendants' deliberate obstruction through systematic destruction of evidence, defiance of court orders, and bad-faith litigation conduct over multiple years. Defendants forfeited their right to a merits determination through their own willful conduct.

## X.    Damages

42.    Plaintiff is entitled to contract damages for Defendants' total breach of the CR2A Agreement. Based on Defendants' documented 2021 licensing revenues of $631,339 and the 4.7-year period of ongoing breach and exploitation, Plaintiff's contract damages are $2,967,294.00. (Dkt. 332-6.)

43.    Plaintiff is entitled to maximum willful copyright statutory damages of $150,000 per work under 17 U.S.C. § 504(c)(2) for three separately registered works (MMAS-4, MMAS-8, and the Widget), for a total copyright damages award of $450,000.00.[3]

44.    Plaintiff is entitled to attorney's fees pursuant to 17 U.S.C. § 505, Federal Rule of Civil Procedure 37, the Court's inherent power, and the CR2A Agreement.

45.    Section 18 of the CR2A Agreement expressly provides that the prevailing party in any action or proceeding to enforce the CR2A shall recover its costs and reasonable attorney's fees. (Dkt. 22-6, § 18; Dkt. 332-8, ¶¶ 12–17.) Plaintiff is the prevailing party within the meaning of CR2A § 18, on his breach of the CR2A Agreement, breach of the implied covenant of good faith and fair dealing, and declaratory judgment claims.

46.    Plaintiff achieved complete success on all copyright claims, including a declaratory judgment of sole and exclusive ownership of the MMAS-4, MMAS-8, and Morisky Widget copyrights, $450,000.00 in maximum statutory damages for willful infringement, a permanent injunction, and a court-ordered copyright assignment effective immediately upon entry of this Order. Defendants presented no substantive defense to liability for copyright infringement. (Dkt. 255 at 7–8.)

47.    Defendants' trademark infringement and unfair competition were willful and in bad faith. Defendants willfully continued to use the Morisky Marks after the CR2A expressly required their cessation. (Dkt. 22, ¶¶ 74(c), 92–95, 134; Dkt. 22-6, § 1; Dkt. 332 at 11–12.)

48.    Defendants' legal positions were objectively unreasonable. Defendants asserted exclusive copyright ownership of the Morisky Widget despite the CR2A Agreement's express assignment obligation to Plaintiff, to which they were parties. (Dkt. 22; Dkt. 22-6.) Defendants used the wrongfully maintained Morisky Widget copyright registration to prosecute at least twelve (12) federal lawsuits asserting infringement claims against third-party licensees after the CR2A was

---

[3] As discussed in the Conclusion of Law on Widget Copyright regarding Beneficial Ownership and Statutory Damages herein, MMAS Research held the Widget copyright in constructive trust for Plaintiff as equitable owner, entitling Plaintiff to statutory damages from Defendants' infringement of the Widget.

executed. (Dkt. 332 at 5; Dkt. 332-4.) An award of attorney's fees is necessary to compensate Plaintiff and to deter future misconduct of this character.

49.     The declarations of F. Christopher Austin (Dkt. 332-8, ¶¶ 1–11), Amanda Bruss (Dkt. 332-9), Scott Whitworth (Dkt. 332-10), and Nicholas Anderson (Dkt. 332-11) establish that Plaintiff's counsel expended reasonable hours at reasonable hourly rates, and that the costs incurred were reasonable and necessary. The lodestar fee award of no less than $852,578.89 (inclusive of $82,877.40 in prior unpaid court-ordered sanctions) is the product of the reasonable hours expended by Plaintiff's counsel multiplied by reasonable hourly rates consistent with the prevailing market rates for attorneys of comparable skill, experience, and reputation in this legal community, as previously found reasonable in this action (Dkt. 267 at 2) and as established by the supporting declarations of counsel and their detailed billing records. (Dkt. 332-8, ¶¶ 1–11; Dkt. 332-9; Dkt. 332-10; Dkt. 332-11.)

## CONCLUSIONS OF LAW

### I.    Jurisdiction and Venue

50.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) (federal question and copyright), and 28 U.S.C. § 1332 (diversity of citizenship). Supplemental jurisdiction over state-law claims is proper under 28 U.S.C. § 1367. (Dkt. 22.) This Court has personal jurisdiction over all Defendants. Venue is proper under 28 U.S.C. §§ 1391 and 1400(a). (Dkt. 22.)

### II.    Default Judgment Standard

51.     Default judgment is appropriate under Federal Rule of Civil Procedure 55(b)(2). Upon entry of default, the well-pleaded factual allegations of the complaint are deemed admitted. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). The Court may additionally take evidence on all allegations, including damages, and is not limited to the deemed-admitted factual record of the complaint. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). All seven *Eitel* factors favor entry of default judgment. Default entered as a sanction under the Court's inherent power is reviewed for abuse of discretion and is upheld where lesser

sanctions were tried and failed. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Facts established by default cannot be relitigated on appeal. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

**III.     Standing and Joinder of Successor in Interest**

52.     Plaintiff had standing to bring this action as the legal owner of the Morisky Intellectual Property at the time the complaint was filed. A copyright plaintiff's standing is assessed at the time the complaint is filed, and the post-filing assignment to MMAR does not affect Plaintiff's standing with respect to infringement claims and other rights that accrued prior to the date of the IP Assignment. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (en banc).

53.     Under Federal Rule of Civil Procedure 25(c), when an interest is transferred during a pending action, the action may continue by or against the original party. Fed. R. Civ. P. 25(c). MMAR's motion for joinder (Dkt. 290), together with its participation in this action through counsel, constitutes ratification of this action under Federal Rule of Civil Procedure 17(a)(3), which relates back to the date of filing and cures any real-party-in-interest deficiency with respect to prospective relief. Fed. R. Civ. P. 17(a)(3).

54.     The Intellectual Property Assignment Agreement (Dkt. 290-1) was recorded with the U.S. Copyright Office on June 16, 2023, as Document No. V15016 D624 (Pages 1–3), prior to entry of this Order. The Court finds that constructive notice of MMAR's ownership of the Morisky Intellectual Property as Plaintiff's successor-in-interest has been provided to all third parties pursuant to 17 U.S.C. § 205(c).

55.     The joinder of MMAR as co-plaintiff and successor-in-interest is appropriate under Rule 25(c). Joinder presents no new issues of law or fact and causes no cognizable prejudice to any Defendant.

**IV.     Liability on All Claims**

56.     ***Breach of Contract***. The CR2A Agreement is a valid, binding written contract under Washington law. *See, Lehrer v. State, Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 516 (2000). Plaintiff fully performed. Defendants breached in every material respect. Plaintiff suffered damages

as a direct and proximate result. Judgment on the breach of contract claim is warranted against all Defendants, jointly and severally.

57. ***Final Agreement Not a Condition Precedent***. Defendants claim that the absence of a "Final Agreement" under CR2A § 17 excuses their performance of the CR2A's substantive obligations, including the required copyright assignment. Whether the Final Agreement was a condition precedent to the CR2A's obligations is a question of contract interpretation resolved by the court as a matter of law. *In re Bubble Up Del., Inc*., 684 F.2d 1259, 1262 (9th Cir. 1982). That defense fails on the face of the CR2A. Section 17 expressly provided that if no Final Agreement was entered, the CR2A itself "remained the binding agreement of the parties." (Dkt. 22-6.) The CR2A's substantive obligations were therefore self-executing and not conditioned on execution of a Final Agreement. Where the material terms of an agreement are fixed and a subsequent document is contemplated only to implement those terms, the original agreement is binding and enforceable. *Condon v. Condon*, 177 Wn.2d 150, 163 (2013).

58. ***Prevention Doctrine***. Even if the Final Agreement were a condition precedent to Defendants' obligations—which the CR2A's express fallback language forecloses—Washington law bars a party from exploiting the non-occurrence of a condition it caused. "[I]f a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991); *Tiegs v. Watts*, 135 Wn.2d 1, 11 (1998). By refusing to confirm the binding nature of the Appointed Decider's determination and falsely characterizing the CR2A mechanism as providing only non-binding mediation, Trubow directly caused JDR's withdrawal and prevented production of a Final Agreement. Defendants cannot now invoke the absence of the process they sabotaged to excuse nonperformance of the obligations they undertook in the CR2A.

59. ***Washington State Court Characterization***. To the extent Defendants rely on any Washington state court ruling characterizing the CR2A's § 17 mechanism as providing only non-binding mediation, that ruling does not bar enforcement of the CR2A's substantive obligations here. This Court has exclusive federal subject matter jurisdiction over Plaintiff's copyright claims

pursuant to 28 U.S.C. § 1338(a) and trademark claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(b); the state court had no jurisdiction over and did not adjudicate the copyright assignment obligation at the core of this action. Moreover, a state court's characterization of the dispute-resolution mechanism is immaterial to Defendants' obligation to perform: by the CR2A's own express terms, even in the absence of a Final Agreement, "the CR2A Agreement remained the binding agreement of the parties." Whether § 17 provided for mediation or arbitration, the CR2A's substantive obligations were independently enforceable.

60.    ***Breach of Implied Covenant***. By systematically repudiating all CR2A obligations and obstructing Plaintiff's ability to obtain the benefit of the bargain—most critically, the copyright assignment of the Widget—Defendants breached the covenant of good faith and fair dealing implied in every Washington contract. *Badgett v. Security State Bank*, 116 Wn.2d 563, 569 (1991); *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (2014).

61.    ***Copyright Infringement***. Plaintiff and his successor in interest MMAR owned valid, registered copyrights in the MMAS-4 (TX0008285390) and MMAS-8 (TX0008632533) at the time of the infringing acts; those registrations remain valid and subsisting. Defendants, without authorization, reproduced, distributed, and commercially exploited works derived from those registered works. Defendants are liable for willful copyright infringement under 17 U.S.C. § 501. Maximum statutory damages of $150,000 per work are warranted under 17 U.S.C. § 504(c)(2). *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

62.    ***Widget Copyright: Beneficial Ownership and Statutory Damages***. MMAS Research registered the Morisky Widget copyright (TX0008816517) in its own name pursuant to a license that terminated upon its breach of the CR2A Agreement, and subject to an express contractual obligation to assign that registration to Plaintiff. From the moment of breach, MMAS Research held the Widget copyright in constructive trust for Plaintiff as equitable owner. *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (en banc); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990). As the beneficial owner of all exclusive rights in the Widget, Plaintiff is entitled to assert all copyright remedies, including statutory damages under 17 U.S.C. §

16

504(c)(2), with respect to Defendants' post-breach exploitation of the Widget. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of any of the exclusive rights under a copyright is entitled . . . to institute an action for any infringement of that particular right."); *Silvers,* 402 F.3d at 884.

63.    ***Trademark Infringement***. Plaintiff and his successor-in-interest MMAR own the Morisky Marks. Defendants' continued use of the Morisky Marks, including maintenance of "MMAS Research LLC" as an entity name and exploitation of those marks in licensing and enforcement activities, constitutes infringement of Plaintiff's marks under 15 U.S.C. § 1125(a). Defendants' trademark infringement was willful. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116(a), an accounting and disgorgement of Defendants' profits from infringing activities, and damages under 15 U.S.C. § 1117(a). *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992).

64.    ***Declaratory Judgment***. Plaintiff is entitled to a declaratory judgment under 28 U.S.C. § 2201 that Donald E. Morisky, and his successor-in-interest MMAR, are the sole and exclusive owners of all copyright interests in the Morisky Widget (TX0008816517). The Widget is a derivative work of Plaintiff's MMAS-4 and MMAS-8. The CR2A Agreement obligated MMAS Research to assign the Widget Copyright to Plaintiff. An actual and justiciable controversy exists, and declaratory relief will finally resolve it.

65.    ***Derivative Work***. The Widget qualifies as a "derivative work" within the meaning of 17 U.S.C. § 101 because it recasts Plaintiff's copyrighted MMAS-4 and MMAS-8 into an interactive electronic format, reproducing their protected expression in "concrete or permanent form." *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998). Under 17 U.S.C. § 103(b), a copyright in a derivative work extends only to the new matter contributed by the author of the derivative work and does not enlarge or affect the copyright in the preexisting material. Because the Widget's assessment content—questions, response options, and scoring methodology—derives entirely from Plaintiff's registered works, MMAS Research's copyright in the Widget extends only to the electronic delivery elements it added and confers no rights in the underlying MMAS-4 and MMAS-8 expression authored by Plaintiff. MMAS Research's identification of the MMAS-4 and MMAS-8

as "limitations" on the Widget registration constitutes an admission to the Copyright Office pursuant to 17 U.S.C. § 409(7) that the Widget is a derivative work of Plaintiff's preexisting works and that MMAS Research's copyright claim does not extend to that underlying content. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003).

66.     ***Prior Unpublished Ruling***. Defendants have asserted that *MMAS Research, LLC v. The Charité*, No. 23-55202 (9th Cir. Mar. 13, 2024) (unpublished), establishes MMAS Research's ownership of the Widget free of its CR2A obligations. That contention fails for three independent reasons. First, the *Charité* opinion is an unpublished disposition that carries no precedential weight in any court. Fed. R. App. P. 32.1(a); 9th Cir. R. 36-3(a). Second, the *Charité* proceeding adjudicated a copyright infringement claim between MMAS Research and a third-party institution; it did not adjudicate MMAS Research's contractual assignment obligations to Plaintiff under the CR2A. Third, the standing finding in *Charité* is necessarily premised on MMAS Research's status as the registered copyright owner of the Widget, only a copyright owner or exclusive licensee has standing to sue for infringement; a bare licensee does not. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013); 17 U.S.C. § 501(b). MMAS Research held that registration only because it breached the CR2A's requirement to assign the copyright to Plaintiff. The *Charité* court never adjudicated whether MMAS Research was entitled to retain that registration as against Plaintiff which is precisely the question this Court resolves here, and the CR2A resolves it in Plaintiff's favor.

## V.     Permanent Injunction

67.     Plaintiff is entitled to a permanent injunction under 17 U.S.C. § 502 and the Court's equitable powers. Under *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006): (1) Plaintiff has suffered irreparable harm from ongoing infringement; (2) monetary remedies are inadequate because Defendants will not comply and the harm to Plaintiff's control of his work is inherently irreparable; (3) the balance of hardships tilts decisively to Plaintiff, as Defendants have no legitimate interest in exploiting Plaintiff's works without authorization; and (4) the public interest is served by protecting copyright integrity.

68.     The CR2A Agreement expressly obligated Defendants to cease using the Morisky name and MMAS marks in commerce, which encompasses use of "MMAS" as part of a legal entity name by the end of the Transition Period on September 3, 2021.  The Court may enforce this contractual obligation through specific performance and may direct compliance by order under Federal Rule of Civil Procedure 70(a). Independently, 15 U.S.C. § 1116(a) authorizes injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent trademark violations, and courts within the Ninth Circuit have ordered corporate entity name changes as part of such relief where a defendant's legal name itself constitutes or facilitates ongoing infringement or confusion.

## VI.     Copyright Assignment by Operation of Law

69.     This Court has authority to transfer the Morisky Widget copyright by operation of law without requiring any act by Defendants. Section 201(d)(1) of Title 17 provides that copyright ownership may be transferred "by any means of conveyance or by operation of law." A court-ordered transfer satisfies this requirement and does not implicate the signed-writing requirement of 17 U.S.C. § 204(a), which applies only to voluntary transfers. *Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 1001 (9th Cir. 2014).

70.     Federal Rule of Civil Procedure 70(a) authorizes the Court, when a judgment directs a party to perform a specific act and the party fails to comply, to direct that the act be done at the disobedient party's expense by the clerk of court or a person appointed for that purpose, with the same legal effect as if done by the party. The Clerk of Court is therefore authorized to execute a formal copyright assignment on behalf of any non-complying Defendant. *See Ager v. Murray*, 105 U.S. 126, 131 (1881).

71.     A certified copy of this Order constitutes an "official certification" qualifying as a document recordable with the U.S. Copyright Office under 17 U.S.C. § 205(a), providing constructive notice of Plaintiff's ownership to all third parties without requiring any signature or further act by Defendants. U.S. Copyright Office Compendium § 2307.

## VII.    Related Matters: Assignment of Claims, Anti-Suit Relief, and Equitable Tolling

72.    A copyright owner's accrued causes of action for infringement and breach of license are personal property that pass with an assignment of the underlying copyright. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); accord *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (en banc). The intellectual property Assignment ordered herein therefore carries with it all claims, causes of action, and choses in action of MMAS Research arising from the Morisky Intellectual Property, known or unknown, in any pending or future proceeding. MMAS Research lacked authority under the CR2A Agreement to release or settle claims that were required to be assigned to Plaintiff; any such purported release or indemnification obligation is void as to Plaintiff and MMAR to the extent it exceeds MMAS Research's limited enforcement authority against those persons identified on Exhibit 3 under that Agreement in which Plaintiff was paid his share of any settlement proceeds.

73.    A federal court may enjoin a party from prosecuting litigation in another court where: (a) the parties are the same or in privity; (b) resolution of the enjoining court's case is dispositive of the litigation to be enjoined; and (c) equitable considerations support the injunction. *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012). All three elements are satisfied: MMAS Research is a defendant here and the named plaintiff in any proceeding encompassed by the assignment; this Court's adjudication of Morisky Intellectual Property ownership is directly dispositive of MMAS Research's standing to bring such claims; and equity requires that Defendants not be permitted to prosecute claims based on rights this Court has stripped from them, extract further settlements from those claims, or otherwise frustrate enforcement of this Order. The same equitable authority extends to non-judicial proceedings, including administrative and regulatory complaints filed in any forum, where the asserting party (Defendants or any of them) lacks the substantive right to assert the underlying claims and the conduct conflicts with this Court's jurisdiction over those rights.

74.    Equitable tolling of a limitations period is warranted where a defendant's own wrongdoing prevented the plaintiff from timely asserting its claims. *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). Defendants' wrongful maintenance of the

20

Morisky Widget copyright registration in the name of MMAS Research created a cloud on Plaintiff's and MMAR's title that materially impaired their ability to independently prosecute claims in proceedings where MMAS Research could invoke the federal registration as evidence of ownership under 17 U.S.C. § 410(c). Plaintiff and MMAR, as his assignee, diligently pursued their ownership claims in this Court and gave actual notice to at least one opposing party in such a proceeding that a settlement with MMAS Research would not extinguish Plaintiff's or MMAR's independent claims. Equitable tolling for the period of that impairment is appropriate.

## VIII. Attorney's Fees and Costs

75.    Plaintiff is entitled to recover his reasonable attorney's fees and costs as the prevailing party under Section 18 of the CR2A Agreement, which expressly provides that "the prevailing party shall recover its costs and reasonable attorney's fees incurred in any such action or proceeding." (Dkt. 22-6, § 18.) Plaintiff prevailed on all claims, including the claim for breach of the CR2A.

76.    Plaintiff is also entitled to attorney's fees and costs as the prevailing party in this copyright action under 17 U.S.C. § 505. The Court considers five factors in exercising its discretion: (1) the degree of success obtained; (2) frivolousness of the losing party's claims; (3) motivation; (4) objective unreasonableness of the losing party's factual and legal positions; and (5) the need for compensation and deterrence. *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006). All five factors favor Plaintiff. Plaintiff achieved complete success on all copyright claims. Defendants advanced no substantive defense to liability. (Dkt. 255 at 7–8.) Defendants' positions were objectively unreasonable in light of the CR2A's express assignment obligation and the overwhelming evidence of willful infringement. Willful infringement independently supports a fee award. *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018). An award is necessary to compensate Plaintiff for years of costly litigation caused by Defendants' willful misconduct and to deter similar conduct.

77.    This is an "exceptional" case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiff to attorney's fees on his Lanham Act claims as a third independent ground. *Rio Props., Inc.*

*v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002). Defendants willfully continued to use the Morisky Marks after the CR2A required cessation and engaged in persistent bad-faith litigation conduct. (Dkt. 324 at 4–5; Dkt. 332 at 7.) Defendants' misconduct, taken together with their willful disobedience of court orders and obstruction of discovery, renders this case exceptional under § 1117(a).

78.    The fee declarations submitted in support of the Motion for Default Judgment (Dkt. 332-8 [Austin Decl. ¶¶ 1–11]; Dkt. 332-9 [Bruss Decl.]; Dkt. 332-10 [Whitworth Decl.]; Dkt. 332-11 [Anderson Decl.]) establish that Plaintiff's counsel expended a reasonable number of hours at rates consistent with the prevailing market for attorneys of comparable skill, experience and reputation, and incurred reasonable costs in the prosecution of this action. *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); (*see also* Dkt. 267 at 2, finding counsel's fees reasonable). A lodestar fee award of no less than $852,578.89, inclusive of $82,877.40 in previously imposed but unpaid court-ordered sanctions (Dkt. 267; Dkt. 272), is reasonable and supported by the record. *See, Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Additional fees and costs related to this action, the enforcement of the CR2A, or in any Related Matters incurred after the fees and costs reported in the Motion for Default Judgment are also recoverable and shall be determined upon further application.

## <u>ORDER</u>

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.    **The Motion is GRANTED.** Plaintiff's Motion for Default Judgment (Dkt. 332) is GRANTED.

2.    **Joinder of Successor-in-Interest GRANTED.** The Motion to Join Morisky Medication Adherence Research LLC as Co-Plaintiff and Successor-in-Interest (Dkt. 290) is GRANTED. Morisky Medication Adherence Research LLC ("MMAR") is hereby joined as co-plaintiff in this action as successor in interest to Plaintiff Donald E. Morisky's rights in the Morisky

Intellectual Property pursuant to Federal Rule of Civil Procedure 25(c). All relief awarded in this Order inures to the benefit of Plaintiff Donald E. Morisky and MMAR as his successor-in-interest.

3. **Declaratory Judgment.** The Court DECLARES that Donald E. Morisky, and his successor-in-interest Morisky Medication Adherence Research LLC (MMAR), are the sole and exclusive owners of all copyright interests in the Morisky Widget, U.S. Copyright Registration No. TX0008816517, including all exclusive rights under 17 U.S.C. § 106. This declaration is effective immediately upon entry of this Order.

4. **Copyright Assignment: Self-Executing Transfer by Operation of Law.** Pursuant to 17 U.S.C. § 201(d)(1) and the inherent equitable power of this Court, effective immediately upon entry of this Order, all copyright interests in the Morisky Widget (Registration No. TX0008816517), including all exclusive rights under 17 U.S.C. § 106 and all associated goodwill, are hereby transferred to and vested in Donald E. Morisky and his successor-in-interest, Morisky Medication Adherence Research LLC (MMAR), by operation of law. This transfer is self-executing. No signature, authorization, or further action by any Defendant is required to effectuate the transfer of title.

5. **Copyright Assignment: Rule 70(a) Direction to Execute Formal Assignment.** Within fourteen (14) days of entry of this Order, Defendants shall execute a formal written Assignment of Copyright, in recordable form, transferring to Donald E. Morisky and/or his successor-in-interest, Morisky Medication Adherence Research LLC (MMAR), all copyright interests in the Morisky Widget (Registration No. TX0008816517). Counsel for Plaintiff shall prepare and tender the form of assignment. If any Defendant fails to execute and deliver the assignment within the time specified, the Clerk of Court is hereby authorized, directed, and empowered pursuant to Federal Rule of Civil Procedure 70(a) to execute the assignment on behalf of such Defendant, with the same force and legal effect as if executed by the Defendant, and at Defendants' expense.

6. **U.S. Copyright Office Recordation.** Plaintiff and/or MMAR are authorized to record this Order, or a certified copy thereof, with the U.S. Copyright Office pursuant to 17 U.S.C.

§ 205(a) to provide constructive notice of their ownership of the Morisky Widget copyright. No signature or act by any Defendant is required to effectuate such recordation.

7. **Assignment of All Remaining Morisky Intellectual Property.** Within fourteen (14) days of entry of this Order, Defendants, jointly and severally, shall assign and transfer to Plaintiff all intellectual property associated with the Morisky Marks and Morisky Intellectual Property including, all domain names incorporating "Morisky" or "MMAS"; all source code, object code, databases, and documentation for the Widget software; and all existing license and sublicense agreements, together with all accrued royalties and fees. If any Defendant fails to comply, the Clerk of Court is directed to execute such instruments pursuant to Federal Rule of Civil Procedure 70(a).

8. **Permanent Injunction.** Defendants, and each of their officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them who receive actual notice of this Order, are hereby PERMANENTLY ENJOINED from:

(a)    reproducing, distributing, displaying, transmitting, or preparing derivative works of, the MMAS-4, MMAS-8, or the Morisky Widget, or any substantially similar work, without written authorization from Plaintiff;

(b)    using any Morisky Mark (MORISKY, MORISKY MEDICATION ADHERENCE SCALE, MORISKY SCALE, MORISKY MEDICATION ADHERENCE PROTOCOL, MORISKY PROTOCOL, MMAS, MMAS-4, and MMAS-8) or any confusingly similar designation, in connection with any product, service, or business activity;

(c)    licensing or sublicensing any rights in the MMAS-4, MMAS-8, the Morisky Widget, or any other Morisky Intellectual Property;

(d)    operating or controlling any website or domain name that includes any Morisky Mark or confusingly similar designation; and

(e)    collecting, retaining, or disposing of any licensing fees, royalties, or other revenue derived from use of any Morisky Intellectual Property, including the Morisky Marks, the MMAS-4, the MMAS-8 or the Morisky Widget copyrighted works; and

24

(f)      initiating, filing, pursuing, or maintaining any complaint, petition, demand, notice, or other communication with any governmental, regulatory, administrative, or prosecutorial body, whether domestic or foreign, that asserts any right in, or demands payment for any person's use of, the MMAS-4, MMAS-8, the Morisky Widget, or any other Morisky Intellectual Property, or that seeks coercive action against any person based on their use of such Intellectual Property.

9.      **Domain Name and Software Transfer.** Within seven (7) days of entry of this Order, Defendants shall transfer to Plaintiff the morisky.org domain name and all domain names incorporating any Morisky Mark. Within fourteen (14) days, Defendants shall deliver to Plaintiff's counsel all source code, object code, databases, documentation, and backup copies relating to the Morisky Widget software. If any Defendant fails to comply, the Clerk of Court is directed to execute such transfer instruments pursuant to Federal Rule of Civil Procedure 70(a).

10.     **Corporate Name Change.** Within thirty (30) days of entry of this Order, Defendants MMAS Research, LLC, MMAS Research Italy SRL, and MMAS Research France SAS shall each file with the applicable state or foreign authority all documents necessary to amend their respective legal entity names to remove "MMAS" or any other Morisky Mark therefrom, and any confusingly similar term or designation. Within forty-five (45) days of entry of this Order, each such Defendant shall file with this Court proof of the amended filing. If any Defendant fails to comply, the Clerk of Court is hereby authorized and directed to execute such amendment instruments on behalf of that Defendant pursuant to Federal Rule of Civil Procedure 70(a), with the same force and legal effect as if executed by the Defendant, at Defendants' expense.

11.     **Assignment of Related Matter Claims; Stay of MMAS Research.** All claims, causes of action, and choses in action of MMAS Research arising from or relating to the Morisky Intellectual Property (including all affirmative claims asserted or assertable in any pending or future judicial or non-judicial proceeding, whether or not known to Plaintiff at the time of this Order, in which MMAS Research is or could be a plaintiff or claimant based on any Morisky Intellectual Property right) are hereby assigned to and vested in Plaintiff Donald E. Morisky and his successor-

in-interest Morisky Medication Adherence Research LLC (MMAR) as part of the intellectual property transfer ordered herein. Any purported settlement, release, or indemnification by MMAS Research of claims arising from the Morisky Intellectual Property that exceeds MMAS Research's authority under the CR2A Agreement, including any release and any indemnification obligation undertaken by MMAS Research in connection with any such settlement, is void as to Plaintiff and MMAR. Effective immediately upon entry of this Order, Defendants are permanently enjoined from taking any affirmative action in any such proceeding, including settling, voluntarily dismissing, stipulating to judgment, or advancing any claim or position as to any individual defendant or claimant, without the prior written consent of Plaintiff or MMAR. MMAR is authorized to act, in its own name and as successor-in-interest, as to each claim and each defendant individually in any such proceeding; nothing in this Order requires MMAR to take uniform action across an entire lawsuit, and MMAR may prosecute, settle, or direct the dismissal of any claim against any individual defendant separately and independently of any other claim or defendant in the same proceeding.

12. **Equitable Tolling; Licensee Protection.** Any applicable statute of limitations on claims of Plaintiff or MMAR arising from the Morisky Intellectual Property (including claims assigned to MMAR pursuant to the preceding paragraph) is equitably tolled for the period during which Defendants' wrongful maintenance of the USCO copyright registration for the Morisky Widget in the name of MMAS Research materially impaired Plaintiff's and MMAR's ability to establish and enforce title, from the effective date of the IP Assignment through the date of entry of this Order. Nothing in this paragraph limits Plaintiff's or MMAR's right to enforce the scope limitations of any Morisky Widget license against any licensee that has exceeded the authorization granted under that license.

13. **Contract and Trademark Damages.** Judgment is entered in favor of Plaintiff and against Defendants MMAS Research, LLC, Steven Trubow, Polina Feilbach, MMAS Research Italy SRL, and MMAS Research France SAS, jointly and severally, in the amount of <u>$2,967,294.00</u> for breach of the CR2A Agreement, breach of the implied covenant of good faith and fair dealing, and infringement of the Morisky Marks under 15 U.S.C. § 1125(a). Trademark damages arise from the

same course of unauthorized commercial exploitation and overlap with contract damages; this award is entered once on all theories without duplication. (Dkt. 332-6; 15 U.S.C. § 1117(a).)

14.     **Copyright Statutory Damages.** Judgment is entered in favor of Plaintiff and against Defendants MMAS Research, LLC and Steven Trubow, jointly and severally, in the amount of $450,000.00 in statutory damages for willful copyright infringement of three separately registered works (MMAS-4, MMAS-8, and Morisky Widget) at the maximum willful rate of $150,000.00 per work pursuant to 17 U.S.C. § 504(c)(2).

15.     **Total Damages.** Total judgment is $3,417,294.00, comprised of: (i) $2,967,294.00 against all Defendants jointly and severally as provided in Order 14; and (ii) $450,000.00 against Defendants MMAS Research, LLC and Steven Trubow jointly and severally as provided in Order 15.

16.     **Prior Unpaid Sanctions.** The previously-imposed but unpaid monetary sanctions of $82,877.40 are incorporated into and made part of this Judgment. (Dkt. 257; Dkt. 267; Dkt. 278) Payment of this amount is included within the attorney's fees and costs awarded by this Order.

17.     **Attorney's Fees and Costs.** Plaintiff is awarded attorney's fees and costs in the amount of $852,578.89 (inclusive of $82,877.40 in prior unpaid sanctions), with any additional fees and costs incurred in this action through entry of this Order to be submitted by supplemental motion within thirty (30) days of entry of this Order. This award is entered against all Defendants, jointly and severally. Plaintiff's right to seek additional attorney's fees and costs is further expressly preserved as follows: (a) fees and costs incurred after entry of this Order in enforcing this Order or Judgment, including any Rule 70 proceedings, contempt proceedings, or other enforcement actions in this Court; and (b) fees and costs incurred in connection with any Related Matter (as defined herein), including fees incurred until such proceedings are terminated pursuant to this Order, may each be submitted by supplemental motion within thirty (30) days of the conclusion of the relevant proceeding, or within such other time as the Court may allow for good cause shown. The Court's retention of jurisdiction under this Order expressly encompasses adjudication of all such supplemental fee requests.

18.     **Post-Judgment Interest.** Post-judgment interest shall accrue on all monetary awards at the federal statutory rate under 28 U.S.C. § 1961 from the date of entry of this Judgment until paid in full.

19.     **Retention of Jurisdiction.** This Court retains jurisdiction over this action and the parties for purposes of: (a) enforcing the terms of this Order and Judgment, including all equitable directives; (b) addressing any motion to modify, correct, or vacate; (c) adjudicating any supplemental fee request; (d) ensuring compliance with the copyright assignment directives, including any proceedings under Federal Rule of Civil Procedure 70; and (e) resolving any motion by Plaintiff or MMAR arising from the Related Matters orders herein, including motions to direct dismissal pursuant to Federal Rule of Civil Procedure 70(a) and motions to enforce the stay of Defendants' litigation activity.

**IT IS SO ORDERED.**

DATED:_____

_____
THE HONORABLE RICARDO S. MARTINEZ
United States District Judge

Submitted by:

*s/ William J. Crowley*_____
William J. Crowley, WSBA No. 18499
CROWLEY LAW OFFICES, P.S.
600 University Street Suite 1901
Seattle, WA 98101
Tel. (206) 224-7069
will@crowleylawoffices.com

F. Christopher Austin, Esq.
*Pro Hac Vice* (Nevada Bar No. 6559)
Scott T. Whitworth, Esq.
*Pro Hac Vice* (Nevada Bar No. 15671)
LEX TECNICA

28

10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (725) 239-8413
chris@lextecnica.com
scott@lextecnica.com

Amanda L. Bruss
BRUSS LEGAL PLLC
7550 E. 53rd Place #172464
Denver, CO 80217

*Attorneys for Plaintiff*

29